IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-CV-3047 |
| v. | ) | |
| | ) | |
| LESLIE A. WULF, BRUCE A. HALL, | ) | |
| JAMES REA, JOHN E. REA, | ) | |
| and KEITH DRIVER, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, VeroBlue Farms USA, Inc. ("VBF"), through its undersigned counsel, complain of Defendants, Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), James Rea ("James Rea"), John E. ("Ted") Rea ("Ted Rea"), and Keith Driver ("Driver") (collectively, "Defendants"), as follows:

**Introduction**

Defendants controlled VBF for almost three years from 2014 through 2017. VBF recently discovered that Defendants, while serving as VBF officers and/or directors, misappropriated millions of dollars from VBF and otherwise wasted VBF assets. This suit seeks recovery of damages due VBF and other relief.

**Parties and Jurisdiction**

1. VBF is a Nevada corporation with its principal place of business in Webster City, Iowa.

2. All Defendants are Canadian citizens, except for Hall.

#2987974

3. Driver, upon information and belief, resides in Calgary, Alberta, Canada. Driver served as an officer and employee (and/or contractor) of VBF from October 1, 2014 through on or about January 13, 2017, when VBF terminated his employment and officer status.

4. James Rea, upon information and belief, has permanent resident alien status in the United States. James Rea served as a director, officer and employee (and/or consultant) of VBF October 1, 2014 through on or about January 8, 2018 when VBF terminated his employment (and/or contractor), director, and officer status.

5. Ted Rea, upon information and belief, has permanent resident alien status in the United States. Ted Rea served as a director, officer and employee (and/or consultant) of VBF from October 1, 2014 through on or about October 27, 2017 when VBF terminated his employment (and/or contractor), director, and officer status.

6. Hall, upon information and belief, is a U.S. citizen and a citizen of Texas. Hall served as a director, officer and employee (and/or consultant) of VBF from October 1, 2014 through on or about October 27, 2017 when VBF terminated his employment (and/or contractor), director, and officer status.

7. Wulf, upon information and belief, has permanent resident alien status in the United States. Wulf served as a director, officer and employee (and/or contractor) of VBF from October 1, 2014 through on or about November 6, 2017, when VBF terminated his employment (and/or consultant), director, and officer status.

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(3) as all Defendants except Hall are citizens of a foreign state, Hall is not a citizen of the same state as VBF, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

9. Venue in this District is proper because the transactions and associated misconduct at issue in this case occurred in whole or in part in Hamilton County, in the Northern District of Iowa.

10. This Court has personal jurisdiction over Defendants pursuant to Iowa Code § 617.3 as the Defendants committed torts in part in Iowa, and against an Iowa resident, VBF.

**Defendants' Misappropriations Of VBF Cash And Other Assets**

11. VBF was incorporated on September 5, 2014, and operates a sustainable fish farm ("Farm") business in Webster City, Iowa.  Its website can be found at http://verobluefarms.com/.

12. Defendants, shortly thereafter, came into control of VBF, starting October 1, 2014.

13. VBF conducted an investigation through which VBF, by March 2018, discovered the misappropriations and other misconduct alleged herein.  VBF did not know, nor could it have known, of Defendants' misconduct until that time, especially since Defendants fraudulently concealed their misconduct from VBF, as further alleged herein.

14. VBF has discovered at least ten schemes consummated by the Defendants to accomplish this misconduct over a time period of approximately three years.  Defendants accomplished these schemes without the approval of disinterested VBF directors with knowledge and notice of such schemes.

**BAJJER Stock Scheme**

15. BAJJER LLC ("BAJJER") is owned and controlled by some or all Defendants or their affiliates.  On September 18, 2014, Defendants directed VBF to transfer 1,250,000 shares of VBF's Canadian affiliate to BAJJER, for a grand total of $1.25.  A true and correct copy of documentation regarding this transaction is attached hereto and incorporated herein as Exhibit A.

3

16.     Such stock was sold to others around that same time for $0.90 per share, meaning that Defendants received at least $1,125,000 worth of stock for free.  Unfortunately, due to Defendants' misconduct, stock in VBF and its affiliates has since lost significant value.

**American Growth Funding Loan Scheme**

17.     BAJJER II, LCC ("BAJJER II") is also owned and controlled by some or all Defendants or their affiliates (and third parties). American Growth Funding, LLC ("AGF") loaned $78,000 to BAJJER II, which grew to $101,000, with interest, and which AGF wrote off as bad debt on or before December 31, 2015.  AGF is a factoring/finance company, and its affiliates have been sued for fraud by the United States Securities and Exchange Commission, in the United States District Court for the Southern District of New York, as summarized in this press release: https://www.sec.gov/news/pressrelease/2016-21.html.

18.     AGF loaned BAJJER another $200,000, which BAJJER transferred to VBF.

19.     On July 8, 2016, the Defendants directed VBF to pay AGF $375,000, even though VBF never had a direct borrowing relationship with AGF.  Upon information and belief, this $375,000 amount encompasses not only the $200,000 referenced in paragraph 18 above, but also the $101,000 amount referenced in paragraph 17 above.

20.     Therefore, Defendants utilized VBF funds to repay an alleged debt to AGF representing funds that did not benefit VBF, but instead that benefitted Defendants personally.

**Wulf Lake House Scheme**

21.     Wulf owns, or owned at relevant times, a vacation home on a lake in Texas ("Wulf Lake House").  The Wulf Lake House was destroyed by a fire in early 2015.

22.     Wulf rebuilt the Wulf Lake House from in or around May 2015 through in or around July 2017.

23. VBF employee Tracy Arbanas ("Arbanas") oversaw the reconstruction of the Wulf Lake House, and VBF paid her to do so at an annual cost to VBF of approximately $97,500, which represented Arbanas' compensation and benefits. Further, VBF funded housing for Arbanas close to the lake house, and refreshments for the construction crew on this project. All told, VBF incurred approximately $107,490.51 for compensation and benefits to Arbanas.

**Sedun Stock Scheme**

24. Gregg Sedun ("Sedun"), upon information and belief, has had social and/or business relationships with the Defendants outside of VBF, and preexisting VBF's incorporation.

25. On December 11, 2015, Sedun loaned $200,000 to VBF, and Sedun loaned another $50,000 to VBF through an entity owned and controlled by Sedun, Alcaron Capital Corp. ("Alcaron") on June 23, 2016.

26. On July 12, 2016, VBF paid Alcaron $326,056, representing about $76,000 in interest on $250,000 in loans made only months before the repayment. That same day, July 12, 2016, Wulf authorized VBF to issue 1,500,000 shares of VBF to Alcaron, purportedly for Sedun's procurement of other investment in VBF, with Alcaron paying nothing for this stock (again, the stock was valued at $0.90/share at the time, rendering this allotment of stock to be worth about $1,350,000 at the time.) Two days later, on July 14, 2016, Sedun loaned Wulf $225,000 for the Wulf Lake House and Wulf promoted Sedun to be a VBF director.

**Compensation Scheme**

27. The five Defendants set their own compensation from VBF at $400,000 annually for each Defendant besides Driver, who made $325,000 annually, for a total for all five Defendants of $1,925,000 per year. For the sake of reference, there is now one person that has replaced

5

Defendants as VBF's President, and VBF pays him $250,000 per year.  Therefore, Defendants were overpaying themselves at least, and approximately, $1,675,000 per year.

28. Additionally, at Defendants' direction, and for no good reason, VBF paid the five Defendants twice their monthly compensation in July 2016.

**Christine Gagne Scheme**

29. Christine Gagne ("Gagne") is Wulf's daughter. Gagne is a Canadian citizen without any legal immigration status to work in the United States.  VBF, at Wulf's direction, purportedly employed Gagne or contracted with her for alleged services. Gagne would often drive from Canada allegedly to work at VBF in Webster City, Iowa.

30. VBF, at Wulf's direction, paid Gagne not under her real name, but under the name "Ronnie O'Brien" to conceal VBF's payments to her.

31. Gagne abruptly left VBF in November 2017, when VBF terminated Wulf's employment and other statuses with VBF.  At that time, Gagne said the following words to those present at VBF's Webster City, Iowa facility at the time, in recognition of the misconduct represented by her relationship with VBF as fostered by some or all Defendants: "None of you have ever seen me and you do not know who I am."

32. VBF incurred approximately $52,264.28 for compensation and benefits to Gagne. Further, this and other schemes demonstrate the general manner with which the Defendants played "fast and loose" with applicable laws and regulations.

**Tractor-Trailer Scheme**

33. VBF has sold live fish to its customers at all relevant times, from its Webster City, Iowa facility.  Per industry standard, it is the customer's obligation to arrange for the pick-up and

transport of the live fish from the facility, not VBF's. Therefore, VBF generally does not need any tractor-trailers.

34. Regardless, in or around July and August 2016, some or all Defendants orchestrated VBF's purchase of six (6) tractor-trailers at a total cost to VBF of approximately $375,237.77. These tractor-trailers sat dormant at VBF's Webster City, Iowa facilities. Ultimately, after Defendants were terminated by VBF, VBF sold one tractor-trailer. VBF is attempting to use two of the tractor-trailers, and the other three have sat dormant at VBF's facilities, despite VBF's attempts to sell them.

35. At a minimum, this large purchase with VBF funds demonstrates the general recklessness with which Defendants handled VBF's money.

**OFA Scheme**

36. Defendants incorporated Opposing Flows Aquaculture, Inc. ("OFA") on July 31, 2014 in anticipation of VBF's operations. VBF grows its fish in tanks that are housed at the Farm ("Tanks").

37. The Defendants formed OFA to buy Tanks from a third-party, and then to resell Tanks to VBF at a profit to OFA and the Defendants ("OFA Scheme").

38. Of course, it was more beneficial to VBF not to pay OFA a profit as an unnecessary "middleman." Instead, VBF could buy directly from the third party without paying any amount to OFA, which VBF ultimately has done. Upon information and belief, VBF did not engage in any transactions with OFA, but, through its count for an equitable accounting, VBF seeks a full accounting of OFA from Defendants.

**Other Misappropriations Of VBF Funds For Personal Use**

39. Defendants engaged in a variety of other schemes through which they orchestrated VBF's expenditure of its funds or other assets for Defendants' personal benefit, not VBF's, including, but not limited to, the following:

   a. travel and other expenses relating to a July 2014 trip by some or all Defendants to Denver, Colorado in relation to a non-VBF business known as ChipMeds, Inc.;

   b. Wulf's personal cell phone bills well beyond a reasonable amount, or even the amount expensed by the other Defendants;

   c. James Rea's personal living expenses in Ames, Iowa, about forty miles from Webster City, Iowa in or around August 2017;

   d. exorbitant travel expenses for the Defendants to travel to or from Canada or Texas to Webster City, Iowa;

   e. the unnecessary leasing of twenty-two company vehicles, including Ford Explorers for Defendants' personal use;

   f. payment of personal travel expenses for Defendants and some or all of Defendants' friends and family, including trips to Australia and Norway;

   g. directing VBF's controller to perform accounting services for the Defendants' non-VBF business ventures while on VBF company time and while he was being paid by VBF;

   h. $310,000 for the purchase of a house in Webster City, Iowa, when the house was worth $240,000, if not less, and the home was not necessary for legitimate business reasons given Defendants' maintenance of their residence in Texas or Canada. Indeed, VBF, through Hall and possibly other Defendants, purchased this home on August 9, 2016 for $310,000 and VBF sold this home on May 25, 2018 for $232,000. True and correct copies of the relevant closing statements are attached as Exhibit B; and,

   i. other improper expenditures of VBF funds for some or all of Defendants' personal expenses.

**Other Mismanagement Of VBF**

40. Defendants' misappropriations of VBF funds and assets are alleged above.

41. Further, Defendants violated their fiduciary duty of due care by mismanaging VBF, including, but not limited to, overbuilding its facilities, presenting highly flawed and intentionally manipulated business plans, mismanaging technology, mismanaging capital expenditures (CapEx), mismanaging other financial and operational issues, purchasing unnecessary real and personal property, overpaying for real and personal property, and otherwise, in a period of three years, squandering what had been an investment of approximately $100,000,000 in debt and equity in VBF. Just one example is VBF's purchase, at the direction of some or all Defendants, of a building and underlying property unnecessary to VBF's business and located in Webster City for $400,000 on July 28, 2016, which VBF sold for $135,000 on April 13, 2018. True and correct copies of the relevant closing statements are attached as Exhibit C.

42. Consequently, due to Defendants' mismanagement and waste of corporate assets, above and beyond their misappropriations alleged above, the value of VBF has plummeted from about $0.90 per share to a dramatically lower value.

## COUNT I-BREACH OF FIDUCIARY DUTY-ALL DEFENDANTS

43. VBF adopts and reincorporates paragraphs 1 through 42.

44. Defendants owed fiduciary duties to VBF from in or around October 1, 2014, when they came to control VBF, through and including January 2018, when the last of the Defendants was terminated as an employee, contractor, officer, and/or director of VBF.

45. Defendants' fiduciary duties to VBF included, but were not limited to, those of obedience, loyalty, honesty, good faith, and due care.

46. Defendants breached their fiduciary duties to VBF in one ore more of the following ways:

   a. by misappropriating VBF funds for Defendants' personal benefit;

   b. by misappropriating other VBF assets for Defendants' personal benefit;

   c. by self-dealing and by concealing their self-dealing from VBF;

   d. by mismanagement and other waste of corporate assets that led to a dramatic devaluation of VBF to be determined at trial; and

   e. by otherwise breaching their fiduciary duties to VBF, including but not limited through misconduct that led to a devaluation of VBF.

47. VBF suffered injuries as a direct and proximate result of Defendants' breaches of fiduciary duty, and Defendants gained a personal benefit from such breaches. VBF's compensatory damages are millions of dollars for Defendants' misappropriations, and are an additional millions of dollars for Defendants' mismanagement and other waste of VBF corporate assets, thereby devaluing VBF.

48. Further, Defendants' breaches of fiduciary duty were willful and egregious, and therefore punitive damages against Defendants and in favor of VBF are warranted, in an amount to be determined at trial. Additionally, Defendants' self-dealing transactions with VBF are presumed invalid, and the burden of proof lays with Defendants to prove the fairness of such transactions by clear and convincing evidence. Also, Defendants Hall and Ted Rea have verbally advised at least one third party that they are "judgment proof," or words to that effect, implying that they could commit wrongful acts without recourse.

WHEREFORE, Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, in an amount in excess of $75,000, but to be determined at trial, as compensatory damages for misappropriations, plus compensatory damages representing the devaluation of Plaintiff due to Defendants' mismanagement and other waste of corporate assets, plus punitive damages, costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

## COUNT II-FRAUDULENT CONCEALMENT-ALL DEFENDANTS

49. VBF adopts and reincorporates paragraphs 1 through 48.

50. Defendants concealed material facts from VBF, including, but not limited to, the following, as alleged *supra*:

   a. the BAJJER stock scheme;

   b. the American Growth Funding Loan scheme;

   c. the Wulf Lake House scheme;

   d. the Sedun stock scheme;

   e. the compensation scheme;

   f. the Gagne scheme;

   g. the tractor-trailer scheme;

   h. the OFA Scheme;

   i. Defendants' other misappropriations of VBF funds or other assets for personal use;

   j. Defendants' devaluation of VBF's stock through their misconduct and other breaches of their duties of due care; and,

   k. other material facts that would have revealed the existence of Defendants' misconduct.

51.     Defendants, as fiduciaries to VBF, owed VBF a duty to disclose these material facts to VBF.

52.     Defendants knew that VBF lacked knowledge of these concealed material facts until after Defendants were ousted from their positions at VBF by January 2018. Alternatively, Defendants intended to induce VBF and its shareholders to refrain from attempting to halt Defendants' misconduct, mismanagement, and corporate waste by concealing these material facts from VBF.

53.     Defendants knowingly failed to disclose these material facts to VBF, also knowing full well that VBF would not approve of Defendants' blatant misconduct.

54.     VBF justifiably relied on Defendants' failure to disclose these material facts given Defendants' status as fiduciaries to VBF and its shareholders. Further, VBF did not have opportunities equal to Defendants to discover Defendants' misconduct until after Defendants were ousted from their positions at VBF.

55.     VBF suffered injuries as a direct and proximate result of Defendants' fraudulent concealment. VBF's compensatory damages are millions of dollars for Defendants' misappropriations, in addition to millions of dollars representing the devaluation of VBF caused by Defendants' mismanagement and other corporate waste.

56.     Further, Defendants' fraudulent concealment was willful and egregious, and therefore punitive damages against Defendants and in favor of VBF are warranted, in an amount to be determined at trial. Also, Defendants Hall and Ted Rea have verbally advised at least one third party that they are "judgment proof," or words to that effect, implying that they could commit wrongful acts without recourse.

WHEREFORE, the Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, in an amount in excess of $75,000, but to be determined at trial, as compensatory damages for misappropriations, plus compensatory damages representing the devaluation of Plaintiff due to Defendants' mismanagement and other waste of corporate assets, plus punitive damages, costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

### COUNT III-FRAUDULENT MISREPRESENTATION-ALL DEFENDANTS

57. VBF adopts and reincorporates paragraphs 1 through 56.

58. Pleading in the alternative, Defendants' silence in the face of their duties to disclose their misconduct alleged herein to VBF and its shareholders, constitutes fraudulent misrepresentation of the material facts alleged in Count II.

59. Defendants knew that their failures to disclose these material facts, and therefore what are deemed to be misrepresentations in light of Defendants' duties of disclosure to VBF and its shareholders, were false or alternatively in reckless disregard of the truth.

60. Defendants intended to deceive VBF and its shareholders and to induce them to refrain from attempting to halt Defendants' misconduct by misrepresenting material facts to VBF.

61. VBF and its shareholders justifiably and detrimentally relied on Defendants' misrepresentations given Defendants' status as fiduciaries to VBF and its shareholders.

62. VBF suffered injuries as a direct and proximate result of Defendants' fraudulent misrepresentation. VBF's compensatory damages are millions of dollars for Defendants'

misappropriations, in addition to millions of dollars representing the devaluation of VBF caused by Defendants' mismanagement and other corporate waste.

63. Further, Defendants' fraudulent misrepresentation was willful and egregious, and therefore punitive damages against Defendants and in favor of VBF are warranted, in an amount to be determined at trial.

WHEREFORE, the Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, in an amount in excess of $75,000, but to be determined at trial,  as compensatory damages for misappropriations, plus compensatory damages representing the devaluation of Plaintiff due to Defendants' mismanagement and other waste of corporate assets, plus punitive damages, costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

### COUNT IV-CONSTRUCTIVE FRAUD-ALL DEFENDANTS

64. VBF adopts and reincorporates paragraphs 1 through 63.

65. Defendants' misconduct, committed while they were fiduciaries to VBF, constitutes constructive fraud regardless of Defendants' intent.

66. VBF suffered injuries as a direct and proximate result of Defendants' constructive fraud.  VBF's compensatory damages are millions of dollars for Defendants' misappropriations, in addition to millions of dollars representing the devaluation of VBF caused by Defendants' mismanagement and other corporate waste.

67. Further, Defendants' fraudulent concealment was willful and egregious, or at least wanton, and therefore punitive damages against Defendants and in favor of VBF are warranted, in an amount to be determined at trial.

WHEREFORE, the Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, in an amount in excess of $75,000, but to be determined at trial, as compensatory damages for misappropriations, plus compensatory damages representing the devaluation of Plaintiff due to Defendants' mismanagement and other waste of corporate assets, plus punitive damages, costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

### COUNT V-CIVIL CONSPIRACY-ALL DEFENDANTS

68. VBF adopts and reincorporates paragraphs 1 through 67.

69. From the outset of their misconduct alleged herein, Defendants had a meeting of the minds and agreed to engage in the breaches of fiduciary duties and fraud alleged herein, for their personal benefit, to cause harm to VBF, while concealing the same from VBF and its shareholders (the "Conspiracy").

70. Defendants' aim, through the Conspiracy, was to accomplish the unlawful objective of personally benefiting Defendants at the expense of VBF, while concealing the same from VBF, and/or making fraudulent misrepresentations to VBF and its shareholders in the face of Defendants' duties of disclosure.

71. Through the Conspiracy, the Defendants facilitated and accomplished their breaches of fiduciary duty, fraudulent concealment, constructive fraud, and fraudulent misrepresentation.

72. VBF suffered injuries as a direct and proximate result of Defendants' Conspiracy. VBF's compensatory damages are millions of dollars for Defendants' misappropriations, in

addition to millions of dollars representing the devaluation of VBF caused by Defendants' mismanagement and other corporate waste.

73. Further, Defendants' misconduct was willful and egregious, or at least wanton, and therefore punitive damages against Defendants and in favor of VBF are warranted, in an amount to be determined at trial.

WHEREFORE, the Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, in an amount in excess of $75,000, but to be determined at trial, as compensatory damages for misappropriations, plus compensatory damages representing the devaluation of Plaintiff due to Defendants' mismanagement and other waste of corporate assets, plus punitive damages, costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

## COUNT VI-AIDING AND ABETTING-ALL DEFENDANTS

74. VBF adopts and reincorporates paragraphs 1 through 73.

75. From the outset of their misconduct alleged herein, Defendants knowingly and substantially assisted each other in their breaches of fiduciary duties alleged herein, for their personal benefit, while concealing the same from VBF and its shareholders.

76. VBF suffered injuries as a direct and proximate result of Defendants' aiding and abetting. VBF's compensatory damages are millions of dollars for Defendants' misappropriations, in addition to millions of dollars representing the devaluation of VBF caused by Defendants' mismanagement and other corporate waste.

16

77. Further, Defendants' misconduct was willful and egregious, or at least wanton, and therefore punitive damages against Defendants and in favor of VBF are warranted, in an amount to be determined at trial.

WHEREFORE, the Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, in an amount in excess of $75,000, but to be determined at trial, as compensatory damages for misappropriations, plus compensatory damages representing the devaluation of Plaintiff due to Defendants' mismanagement and other waste of corporate assets, plus punitive damages, costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

### COUNT VII-UNJUST ENRICHMENT-ALL DEFENDANTS

78. Plaintiffs adopt and reincorporate paragraphs 1 through 77.

79. VBF has conferred millions of dollars' worth of benefit upon Defendants for which Defendants have not compensated VBF. It would be unjust and contrary to principles of equity and good conscience to allow Defendants to retain this benefit conferred upon them by VBF without just consideration as Defendants have been unjustly enriched at VBF's expense.

WHEREFORE, the Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, in an amount in excess of $75,000, but to be determined at trial, plus costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

### COUNT VIII-EQUITABLE ACCOUNTING-ALL DEFENDANTS

80. Plaintiffs adopt and reincorporate paragraphs 1 through 79.

81. As a result of Defendants' fiduciary duties to account to VBF, breaches of fiduciary duties, fraud, and unjust enrichment, as well as the existence of complex mutual accounts and the need for discovery, VBF is entitled to an order requiring Defendants to account for every dollar deposited, received, or otherwise transferred to or from VBF or any of its affiliates and Defendants from on or before October 1, 2014 through January 2018, and entering a judgment against Defendants as to any amounts for which Defendants cannot account, or which are shown by the accounting to have been misappropriated by Defendants.

82. Pleading in the alternative, money damages are inadequate to VBF because VBF cannot fully learn the extent of Defendants' misconduct, of which Defendants' have superior knowledge, without an accounting.

WHEREFORE, the Plaintiff, VeroBlue Farms USA, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, jointly and severally, requiring Defendants to produce an equitable accounting detailing every dollar deposited, received, or otherwise transferred to or from VBF or any of its affiliates and Defendants from on or before October 1, 2014 through January 31, 2018, and entering a judgment against Defendants as to any amounts for which Defendants cannot account, or which are shown by the accounting to have been misappropriated by Defendants, plus costs, allowable pre-judgment interest, and other relief deemed just.

### COUNT IX-DECLARATORY JUDGMENT-ALL DEFENDANTS

83. Plaintiffs adopt and reincorporate paragraphs 1 through 82.

84. VBF disputes the validity of any and all transactions wherein Defendants personally benefitted, or which were otherwise improper, including the funds and other assets

that were misappropriated, and the stock that was transferred to Sedun and BAJJER for grossly inadequate consideration.

      85.     Pursuant to 22 U.S.C. § 2201, there is an actual controversy between VBF, on the one hand, and Defendants on the other hand, as to such transactions, wherein VBF asserts that all such transactions should be declared null and void *ab initio*, whereas Defendants presumably seek to uphold these transactions.

      WHEREFORE, VeroBlue Farms USA, Inc., respectfully requests that this Court enter a declaratory judgment in its favor and against the Defendants, Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea, and Keith Driver, plus costs, allowable pre-judgment interest, and other relief deemed just.

Dated: July 31, 2018

**JURY TRIAL DEMANDED**

/s/ Matthew E. Laughlin
Matthew E. Laughlin   AT0004515
Holly M. Logan   AT0004710
Katelynn T. McCollough   AT0013443
DAVIS, BROWN, KOEHN, SHORS
 & ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, IA 50309
Telephone: 515-288-2500
Email: MattLaughlin@davisbrownlaw.com
       HollyLogan@davisbrownlaw.com
       KatelynnMccollough@davisbrownlaw.com

ATTORNEYS FOR PLAINTIFF