IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| VEROBLUE FARMS USA, INC., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> LESLIE A. WULF, BRUCE A. HALL, § <br> JAMES REA, JOHN E. REA, and KEITH § <br> DRIVER, § <br> § <br> Defendants. § | CIVIL ACTION NO. 18-CV-3047 <br><br><br> DEFENDANT KEITH DRIVER'S BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE AND 12(b)(6) MOTION TO DISMISS |

Pursuant to Local Rules 7, Defendant Keith Driver ("Driver") files this Brief in Support of his Motion to Transfer Venue and 12(b)(6) Motion to Dismiss.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ 1

MOTION TO TRANSFER VENUE .............................................................................................. 2

    I.   The Parties' Forum-Selection Clause Requires Transfer. .................................................. 3

    II.  The Forum Selection Provision Applies to VeroBlue's Allegations against Defendants. . 4

    III. The Statutory Factors Under § 1404(a) Weigh in Favor of Transferring this Case to the Northern District of Texas. ................................................................................................. 6

        A. The Forum Selection Provision Outweighs any Convenience to Parties and Witnesses of Proceeding in Iowa. ................................................................................................. 6

        B. The Interests of Justice Weigh in Favor of Transfer to the Texas District Court. ......... 7

MOTION TO DISMISS ................................................................................................................. 8

    I.   Legal Standard for Rule 12(b)(6) Motions to Dismiss. ...................................................... 8

    II.  VeroBlue's Complaint Overall Fails to State Any Claim Upon Which May be Granted Because Plaintiff Employs an Impermissible Style of Pleading. ..................................... 11

    III. Fraudulent Conduct Complained of is Not Sufficiently Plead (Counts II, III, IV, and V). ........................................................................................................................................ 14

        A. Plaintiff Fails to Sufficiently Allege that Any Purported Conduct was Fraudulent, False, or Misleading. ..................................................................................................... 14

    IV. VeroBlue's Claims Against Driver are Barred by VeroBlue's Release in the Business Relationship Restructuring Agreement. ........................................................................... 16

        A. VeroBlue Released All Claims Against Driver. ........................................................... 16

CONCLUSION ................................................................................................................ 18

Defendant Keith Driver ("Driver") files this Brief in Support of his Motion to Transfer Venue and 12(b)(6) Motion to Dismiss, filed contemporaneously herewith and incorporated herein, and in support would respectfully show the Court as follows:

## **MOTION TO TRANSFER VENUE**

The Court should transfer this action pursuant to 28 U.S.C. § 1404(a) because Plaintiff brought its Complaint in a venue that is not the exclusive venue agreed upon by the parties for any claims arising out of Driver's employment or Release Agreement, such as the claims pled in the Amended Complaint. 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." The parties agreed to a **mandatory** forum-selection clause, which requires venue in Texas.

In assessing a motion to transfer under 28 U.S.C. § 1404, this Court must weigh: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Terra Internat'l., Inc. v. Mississippi Chem. Corp.*, 119 F. 3d 688, 691 (8th Cir. 1997). Although typically the party seeking transfer bears the burden of proving that transfer is warranted, when a forum selection clause is at issue, then the burden shifts to the party trying to avoid the contractually chosen venue. *High Plains Const., Inc. v. Gay*, 831 F. Supp. 2d 1089, 1099 (S.D. Iowa 2011) (*citing Terra Internat'l*, 119 F. 3d at 691). But before shifting the burden, this Court must first determine whether the forum selection clause proposed is enforceable and applicable to the claims before it. *Zamora Entertainment, Inc. v. William Morris Endeavor Ent., LLC,* 667 F. Supp. 2d 1032, 1036 (S.D. Iowa 2009).

I. **The Parties' Forum-Selection Clause Requires Transfer.**

In general, a forum selection clause is enforceable unless it is found to be invalid or its enforcement would be unjust or unreasonable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Marano Enters, of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (noting that general allegations of fraudulent inducement were insufficient to render the forum-selection clause unenforceable unless the clause was itself the product of fraud or coercion). A forum selection clause "should control absent a strong showing that it should be set aside." *M/S Bremen*, 407 U.S. at 15. A choice of forum made in an "arm's-length negotiation by experienced and sophisticated businessmen" should be honored by the parties and enforced by the courts "absent some compelling and countervailing reason." *Id.* at 12. In order for a forum selection clause to be unenforceable, VeroBlue must establish that "enforcement would be unreasonable and unjust" or that the clause is "invalid for such reasons as fraud or overreaching." *Id.* at 15. It is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18. Given VeroBlue's signature to both the Release Agreements, it is unlikely that Plaintiff challenges the general validity of the forum-selection clauses contained therein. Moreover, Release Agreements were drafted by VeroBlue when its principal place of business was in Plano, Texas. (App. 48; 55). Thus, it was reasonable for both VeroBlue and Driver to expect that the VeroBlue would choose to pursue and defend litigation in north Texas.

Moreover, the language of the forum-selection clauses create **mandatory** and **exclusive** venue in the Northern District of Texas. (App. 55) ("Each Party irrevocably submits to the exclusive jurisdiction of the Federal District Court for the Northern District of Texas" and "Each Party agrees to commence any action, suit or other proceeding relating to this Agreement" in the Northern District of Texas). Generally speaking, the circuits that have addressed whether to

enforce mandatory forum selection clauses similar to the one here agree: where venue is specified in a forum selection clause with mandatory or obligatory language, **the clause will be enforced.** *K & V Sci. Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 499 (10th Cir. 2002) (*citing Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992); *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrib. Inc.*, 22 F.3d 51, 52 (2d Cir.1994); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989)).

There is no argument that the forum selection provisions in the Release Agreement selecting the Northern District of Texas as the exclusive forum for disputes between VeroBlue and Defendants should not be enforced against VeroBlue. *Terra Internat'l.*, 119 F. 3d at 695 (finding parties could have anticipated tort claims being governed by forum selection provision at time of contracting).

## II. The Forum Selection Provision Applies to VeroBlue's Allegations against Defendants.

VeroBlue artfully avoided referring to the Release Agreement in its Amended Complaint, perhaps to avoid the forum selection provision it drafted. "Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause." *Terra Internat'l.*, 119 F. 3d at 695. The clauses expressly apply to "any suit, action or other proceeding relating to this [Release] Agreement." (App. 0052). The Employment and Release Agreement cover Driver's employment with VeroBlue as well as his stock ownership in the Company. (App. 0033-0063). Importantly, the Release Agreement includes a release that applies to "***any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages actions, cause of action, suits, rights, demands, costs, losses debts and expenses … of any nature whatsoever, known or unknown***" against VeroBlue and its affiliates or against Driver. (App. 0052). Certainly, if Driver and VeroBlue's releases can extend to anything occurring prior

to Driver's termination, then the forum selection provisions in those very same agreements should be constructed to extend to actions taken prior to his termination as well.

All of VeroBlue' allegations involve actions that Driver and the other defendants took while employees and officers of VeroBlue.  For example:

- Defendants "directed" VeroBlue to transfer 1.25M shares of its Canada affiliate to Bajjer (App. 0005, ¶ 15)
- VeroBlue employee oversaw the reconstruction of the Wulf Lake House and VeroBlue funded housing for her nearby (App. 0007, ¶ 23);
- Defendants directed VeroBlue to set their compensation at $400k annually (App. 0007-0008, ¶ 27);
- Defendants handled VeroBlue's money with "general recklessness" (App. 0009, ¶ 35);
- Defendants "orchestrated VeroBlue's expenditure of funds" for their personal benefit, including travel expenses, cell phones, vehicles leases, etc. (App. 0010,  ¶ 39); and
- Defendants mismanaged capital expenditures, business plans, overpaid for real estate, squandered investments, and wasted corporate assets (App. 0011, ¶ 41.)

Driver could only have allegedly committed each of these acts of misfeasance while acting as COO of VeroBlue, even though he was only COO for six months, otherwise he would not have had access to VeroBlue's funds or property.  If Driver's employment relationship with VeroBlue had not been terminated, then VeroBlue's claims would undoubtedly arise under Driver's Employment Agreement. *High Plains Constr.*, 831 F. Supp. 2d at 1100 (applying forum selection clause in dealer agreement to claim for tortious interference because tort claim, ultimately depended on existence of a contract between the parties).  Since the Release Agreement was designed to terminate the parties' entire "business relationship," it applies to all actions taken by Driver during his tenure as COO of VeroBlue.  VeroBlue's claims thus arise out of Driver's employment and, therefore, also arise out of the Release Agreement which mandates that the Northern District of Texas hear this case. *See Terra Internat'l.,* 119 F. 3d at 695 (applying forum selection provision in emissions technology license agreement to tort claims arising from explosion at fertilizer plant using technology).

### III. The Statutory Factors Under § 1404(a) Weigh in Favor of Transferring this Case to the Northern District of Texas.

Because there is an exclusive forum selection provision here, the burden falls to VeroBlue to prove why the forum selection clause should not be enforced. Returning to the analysis required by §1404, transfer is warranted where the convenience of the parties and witnesses and the interests of justice support it. *High Plains*, 831 F. Supp. 2d at 1103. These factors weigh in favor of transfer to the Northern District of Texas here.

#### A. The Forum Selection Provision Outweighs any Convenience to Parties and Witnesses of Proceeding in Iowa.

The convenience of the parties and witnesses is belied by the existence of the exclusive forum selection provision also. VeroBlue cannot argue that it will be inconvenienced by proceeding with suit in the very forum that it selected in the Release Agreement. As the U.S. Supreme Court stated:

> Whatever 'inconvenience' plaintiff would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting. In such circumstances ***it should be incumbent on the party seeking to escape its contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that it will for all practical purposes be deprived of its day in court.*** Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to its bargain.

*M/S Bremen,* 407 U.S. at 17-18. For almost four years, VeroBlue's principal place of business was in Plano, Texas. (App. 0032, ¶ 5). That only changed in April 2018, when VeroBlue renewed its registration with the Nevada Secretary of State indicating that its new principal office was in Webster City, Iowa. Although the company records may now be in Iowa, all the witnesses to Driver's alleged misfeasance remain in Texas. All other Defendants except for Driver, all individuals, reside in the Northern District of Texas. (App. 0032, ¶ 6). VeroBlue's outside corporate counsel, Rick Dahlson, who documented many of the transactions that are at issue in the Complaint, practices at the firm of Jackson Walker in Dallas, Texas. Defendant Wulf's lakehouse,

referenced in Paragraphs 21-23 of the Amended Complaint, is in Texas. The only allegations relevant to conduct that took place in Iowa are James Rea's purchase of a home in Webster City and VeroBlue's purchase of certain tractor trailers that are being stored at the company's Webster City farm.

Many of the witnesses, who are former employees and officers of VeroBlue live in or near north Texas. Anyone who is currently employed by VeroBlue is certainly within VeroBlue's control and would not need to be subpoenaed to appear at trial. But almost any witness that Defendants were to call, would be outside of the Iowa district court's subpoena power. Four of the five Defendants live in North Texas, most of the allegations at issue took place there, and Plaintiff only recently became headquartered in Iowa, therefore, VeroBlue simply cannot show that proceeding in the Northern District of Texas will be so "gravely difficult and inconvenient" that it will be deprived of its day in court. *M/S Bremen*, 407 U.S. at 17-18.

**B.** The Interests of Justice Weigh in Favor of Transfer to the Texas District Court.

The interests of justice are also best served by transferring this matter to the Northern District of Texas. Factors relevant to weighing the interests of justice include: (1) judicial economy; (2) plaintiff's choice of forum; (3) comparative costs to each party of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) advantages of having a local court determine questions of local law. *Terra Internat'l.,* 119 F. 3d at 696.

Plaintiff's choice of forum bears little weight here since there is an enforceable, exclusive, and mandatory forum selection provision in favor of Texas. Moreover, VeroBlue is a Nevada corporation, which for the last four years, had its principal office in Plano, Texas. Its connection to the Northern District of Iowa is tenuous and limited.

Defendants' costs of litigating in Iowa far outweigh the costs to VeroBlue of litigating in Texas. All Defendants other than Driver reside in Texas and will have to travel to Iowa for court appearances and trial. Driver's counsel is also located in Texas. VeroBlue's counsel is located in Chicago, Illinois, and therefore, will have to travel regardless of where the case proceeds. VeroBlue's witnesses will likely include many employees located in Texas and its corporate counsel, who is in Dallas. At best, this factor is neutral because it would merely shift costs from one party to another. *Terra Internat'l.*, 119 F. 3d at 696-97.

Transfer here is between two federal district courts, thus, there can be little concern for fair trial in either location. *Fimco, Inc. v. Funk,* No. C16-4109-LTS, 2016 WL 7106520 at #5 (N.D. Iowa Dec. 5, 2016). Similarly, because VeroBlue is a Nevada corporation, its claims will be governed by Nevada law. Neither the Iowa district court nor the Texas district court has any advantage in applying Nevada law. *Id.* (noting that federal district courts of Iowa or Nebraska were equally capable of applying South Dakota law).

In sum, most of the interests of justice factors are neutral, but judicial economy and access to witnesses clearly weighs in favor of Texas. The forum selection provision in Driver's Release Agreement is a "significant factor[] that figures centrally in the district's court's calculus in a motion to transfer." *Terra Internat'l.*, 119 F.3d at 697. These other factors simply do not present a "compelling and countervailing reason" why the forum selection provision should not be enforced. *M/S/ Bremen,* 407 U.S. at 12. Accordingly, pursuant to 28 U.S.C. §1404, this matter should be transferred to the Northern District of Texas for all further proceedings.

## MOTION TO DISMISS

I. **Legal Standard for Rule 12(b)(6) Motions to Dismiss.**

For most claims, Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.

R. C<small>IV</small>. P. 8(a)(2). However, when the claims involve fraud, as in this case, the complaint must also satisfy Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud[.]" F<small>ED</small>. R. C<small>IV</small>. P. 9(b). "The particularity requirement of Rule 9(b) 'has been strictly applied in the context of securities fraud litigation as a means of deterring frivolous suits.'" *Jakobe v. Rawlings Sporting Goods Co.*, 943 F. Supp. 1143, 1152 (E.D. Mo. 1996) (*quoting Weisburgh v. St. Jude Medical, Inc.*, 158 F.R.D. 638, 642 (D. Minn. 1994), aff'd, 62 F.3d 1422 (8th Cir. 1995)). Also, "where, as here, 'multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his [or her] alleged participation in the fraud.'" *In re Parmalat Securities Litigation*, 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) (citation omitted); *see also, e.g., Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1094 (N.D. Okla. 2003) ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth.").

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court expressly "retired" the 50-year old statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." As stated by the Supreme Court, "after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969. Instead, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could

satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 1965 n.3. "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" *Id.* at 1965 n.3 (*quoting* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1202, at 94, 95 (3d ed. 2004)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," and "'the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Id.* at 1965 (*quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss." *Twombly*, 127 S. Ct. at 1964-65. When reviewing a complaint under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the nonmoving party." *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010); *see also Broadcast Music, Inc. v. MWS, LLC*, 2012 WL 368736, at **1-2 (E.D. Mo. Feb. 3, 2012). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." *Moses.com Securities v. Comprehensive Software Systems, Inc.*, 406 F.3d. 1052, 1062 (8th Cir. 2005) (*citing Schaller Tel. Co. v. Golden Sky Systems*, 298 F.3d. 736, 740 (8th Cir. 2002)); *see also Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) ("[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal

under Rule 12(b)(6) is appropriate") (*citing Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

Further, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986). In deciding whether a claim for relief is supported, a court must consider only the facts that are alleged, and not un-alleged facts that a plaintiff might later prove. *Assoc. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 902 (1983). As the Eighth Circuit recently explained, "to survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *See Northern Valley Communications, LLC v. Qwest Communications Co., LLC*, 2012 WL 523683, at *2 (D.S.D. Feb. 16, 2012) (unpublished) (*quoting Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (in turn *quoting Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009))).

**II.   VeroBlue's Complaint Overall Fails to State Any Claim Upon Which May be Granted Because Plaintiff Employs an Impermissible Style of Pleading.**

Veroblue's Complaint inappropriately engages in "shotgun" and/or "puzzle" pleading and should be dismissed as a whole. "Shotgun" pleadings are those that "incorporate all or nearly all antecedent allegation by reference to each subsequent claim for relief or affirmative defense," leaving the court and defendants to parse which allegations support which claims. *See S.E.C. v. Fraser*, 2010 WL 5776401, at *14 (D. Ariz. Jan. 28, 2010) (unpublished) (internal quotations and citations omitted) (dismissing certain SEC claims for relief where the complaint engages in shotgun pleading). "Puzzle" pleadings require the court and the defendant to match alleged statements with the reason they are false or misleading. *S.E.C. v. Fraser*, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009) (unpublished) (citation omitted). Courts have stated that a complaint

relying on shotgun or puzzle pleading fails to meet the particularity requirements of Rule 9(b). *Id.* (*quoting Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 617 F. Supp. 2d 763, 784 (D. Ariz. 2009), *vacated on other grounds*, 690 F. Supp. 2d 959 (D. Ariz. 2009)); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (noting that the complaint at issue was a shotgun pleading "incorporating every antecedent allegation by reference into each subsequent claim for relief"); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007).

In *Wagner*, the court concluded that the central problem was that the factual particularity of the previously stated allegations was "not connected to the otherwise generally pled claim in any meaningful way." *Wagner*, 464 F.3d at 1279. The problem, the court stated, "was not that Plaintiffs did not allege enough facts, or failed to recite magic words; the problem lay in the fact that while Plaintiffs introduced a great deal of factual allegations, the amended complaint did not clearly link any of those facts to its causes of action." *Id.* at 1280. In similar fashion, VeroBlue's Amended Complaint in this case jumbles together a host of allegations with little organization and no specificity to Mr. Driver. At times, VeroBlue cites to specific actions and transactions as evidence that the Defendants engaged in fraudulent conduct, never specifying whether Mr. Driver participated in the actions or transactions. *(*App. 0003-0011, ¶¶ 11-42). VeroBlue routinely refers to "Defendants" generically, rather than alleging specific facts regarding how Mr. Driver in particular misled or defrauded VeroBlue. *(*App. 0003-0011, ¶¶ 11-42). VeroBlue's style of pleading unfortunately forces Mr. Driver and the Court to comb through the Complaint, determine which fraud or deceit was allegedly perpetrated by Mr. Driver or the other Defendants, determine which misrepresentations or omissions were made by which Defendant(s), and then evaluate the adequacy of that factual support as to the various claims against the Defendants. No list or chart is

provided that would identify for each claim which Defendant(s) committed the fraud or deceit or which Defendant(s) participated in which action or transaction. This is especially problematic, here, where most of the allegations involve conduct *that occurred while Driver did not even work for VeroBlue*. VeroBlue's parroting of the language of various causes of actions leaves Defendants and this Court with the task of parsing the Complaint and inferring what specific conduct VeroBlue might believe to be a violation of the law. *See Fraser*, 2009 WL 2450508, at *14. Indeed, this Court is tasked with "untangling which (if any) act(s) engaged in by which (if any) defendant(s) applies to which (if any) claim(s)." *Id.* at *13.

Moreover, VeroBlue brings nine causes of actions against Driver relating to fraud. The style of pleading used by VeroBlue is inappropriate for a complaint alleging multiple charges of fraud against multiple defendants. For this reason alone, the Complaint should be dismissed. Indeed, one court recently noted that district courts are encouraged to dismiss "shotgun" complaints as they impermissibly burden the trial court: "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.,* all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund v. Spear, Leeds & Kellogg*, 305 F.3d 1293, 1295 n. 9 (11th Cir. 2002). Shotgun complaints impose a heavy burden on the trial court because it must sift through each and every count to determine which allegations are relevant to the cause of action purportedly stated. *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 (11th Cir. 2006). District courts are encouraged to dismiss such complaints, as permitting such pleadings results in much more judicial labor in the long run. *Johnson Ent. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998); *see also S.E.C. v. Mercury Interactive*, 2008 WL 4544443, at *8 (N.D. Cal. Sept. 30, 2008) (explaining that shotgun pleading makes it "difficult to discern

which filings form the bases for each claim"); *S.E.C. v. Patel*, 2009 WL 2015794, at **1-2 (D. N.H. July 7, 2009) (criticizing this pleading style because "to reasonably determine that any particular claim should not be dismissed would require the court to first comb the complaint in search of factual support for each element of the multiple claims pled as to each defendant, and then evaluate the adequacy of that factual support," which "is, of course, plaintiff's job in the first instance, not the court's.").

While VeroBlue finds it sufficient to simply cross-reference the same 42 paragraphs of its Complaint under each of the nine causes of action charged against Driver, its failure to plead with particularity concerning the factual allegations as they relate to the specific causes of action cited in the Complaint reveals a yet greater failing of the Complaint: a general inability to plead with the particularity required in order to enable this Court to conclude that Driver did indeed commit fraud actionable under Iowa law.

### III. Fraudulent Conduct Complained of is Not Sufficiently Plead (Counts II, III, IV, and V).

As already noted, Plaintiff's Counts II, III, IV, and V merely parrot the factors of each cause of action allegedly violated. Many of the counts contain no identification whatsoever of the conduct which allegedly violated the law by which defendant, other than to incorporate by reference the entire Complaint. The counts simply recite the boilerplate language, and the Defendants are left to scour through the Complaint's vague factual narrative to guess what conduct by which Defendant supposedly comprised these fraudulent actions, misrepresentations or omissions.

#### A. Plaintiff Fails to Sufficiently Allege that Any Purported Conduct was Fraudulent, False, or Misleading.

Moreover, the factual allegations themselves are not pled with the particularity required in a complaint alleging multiple counts of fraud against numerous defendants. The Plaintiff

complains generally of facts that were "concealed" from VeroBlue and/or "misrepresented." Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The Eighth Circuit has applied Rule 9(b) strictly, requiring details as to any alleged misrepresentations:

> This Court has explained that, for Rule 9(b), "'[c]ircumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.... [C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (quotations and citations omitted); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("[T]he circumstances [constituting fraud] must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story. None of this appears in the complaint, although the flood of information released about Continental Bank since 1984 offers ample fodder if there is indeed a tale to tell." (quotations omitted)); . . . *In re Lifecore Biomedical, Inc. Sec. Litig.*, 159 F.R.D. 513, 516 (D. Minn. 1993) (Rule 9(b) requires that "the complaint must allege the time, place, speaker and sometimes even the content of the alleged misrepresentation."). Where "allegations of fraud are explicitly or, as in this case, implicitly, based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991).

*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir. 1997)(some citations omitted). In *Parnes*, the court dismissed the plaintiffs' securities fraud claims under Rule 9(b). *Id.* at 550 ("The Plaintiffs provide the barest clue as to when the alleged fraud took place, and the Defendants are left to guess which controlling shareholders were responsible for this alleged fraud. Neither this nor the Plaintiffs' other allegations of fraud meet Rule 9(b)'s particularity requirements, and the district court properly struck them."). These strict pleading requirements apply equally to omissions. *See Stewart v. Fry*, 575 F. Supp. 753, 756 (E.D. Mo. 1983) ("there must be a specific identification of what statements were made in what reports and in what respects they were false, misleading or inaccurate or what omissions were made and why the statements made are believed to be misleading.'")(citation omitted).

In this case, the Complaint fails to satisfy the Eighth Circuit's stringent pleading standards for Counts II, III, IV, and V. The Plaintiff fails to identify the "circumstances" of the alleged fraudulent concealment, misrepresentations, constructive fraud, and conspiracy to commit fraud – the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Parnes*, 122 F.3d at 549. For example, the Complaint states that "Defendants' silence in the face of their duties to disclose their misconduct alleged herein to VeroBlue and its shareholders, constitutes fraudulent misrepresentation of the material facts alleged in Count II." (App. 0015, ¶ 58). There is no specific information as to the time(s), identity of person(s) making the misrepresentations, or contents of these alleged representations. Accordingly, Plaintiff's Amended Complaint should be dismissed due to Plaintiff's failure to plead Counts II, III, IV, and V with the particularity required by this Court.

## IV. VeroBlue's Claims Against Driver are Barred by VeroBlue's Release in the Business Relationship Restructuring Agreement.

Driver further moves to dismiss all causes of actions against him in the Amended Complaint because the plain and unambiguous terms of the Release Agreement bar VeroBlue from bringing such claims. Whether the Amended Complaint should be dismissed based on Release Agreement should be analyzed under Texas law because the language specifically states "This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, regardless of the laws that might otherwise govern the applicable principles of conflicts of law thereof." (App. 0055).

### A. VeroBlue Released All Claims Against Driver.

A release extinguishes a claim or cause of action and is an absolute bar to any right of action on the released matter. *D.R. Horton-Texas, Ltd. v. Savannah Properties Associates, L.P.,*

416 S.W.3d 217, 226 (Tex. App.—Fort Worth 2013, no pet.) (*citing Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993); *see also Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d 692, 698 (Tex. 2000); *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex. 1991); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.,* 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd,* 20 S.W.3d 692 (Tex. 2000). It is not necessary, however, for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *Savannah,* 416 S.W.3d at 226. Although releases include claims existing at the time of execution, they may also include unknown claims and damages that develop in the future. *Id.*

> Here, the Release Agreement specifically states that as of January 7, 2017, VeroBlue:
>
> hereby irrevocably and unconditionally release, acquit and forever discharge [Driver] from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, known or unknown . . . which the [VeroBlue] Releasees now have, own, hold, or to which the [VeroBlue] Releasees at any time heretofore had, owned, or held against [Driver], including, without limitation, the Egregious Cause Claims.

(App. 0052). "Egregious Cause Claims" is narrowly defined as Driver failing to maintain his main office in Dallas, Texas and Driver engaging in "other business interests and engagements outside of [VeroBlue]. (App. 0049). The broad language chosen by the parties establishes the intent for the Release Agreement to be complete, full, and final. Therefore, the Release Agreement precludes all claims Plaintiff has asserted against Driver in this case. *See, e.g., D.R. Horton-Texas,* 416 S.W.3d at 227 (holding that release of "all past, present, or future claims, actions, demands, and causes of action, of whatever kind or character, known or unknown, asserted or unasserted" with respect to certain contracts and property barred claims for breach of contract, warranty, and negligence relating to the same contracts and property).

Out of all the vague actions allegedly taken by all of the Defendants, the only facts that VeroBlue alleges occurred after it released Driver from any and all causes of actions are on January 13, 2017:

1. Wulf rebuilt the Wulf Lake House from in or around May 2015 through in or around July 2017. (App. 0007, ¶ 23).
2. VeroBlue employee Tracy Arbanas ("Arbanas") oversaw the reconstruction of the Wulf Lake House, and VeroBlue paid her to do so at an annual cost to VeroBlue of approximately $97,500, which represented Arbanas' compensation and benefits. Further, VeroBlue funded housing for Arbanas close to the lake house, and refreshments for the construction crew on this project. All told, VeroBlue incurred approximately $107,490.51 for compensation and benefits to Arbanas. (App. 0007, ¶ 24).
3. Defendants paid for James Rea's personal living expenses in Ames, Iowa, about forty miles from Webster City, Iowa in or around August 2017 from VeroBlue's funds. (App. 0010, ¶ 39(c)).
4. Defendants sold a home in Webster City, Iowa for less than what it purchased it for on May 25, 2018. (App. 0010, ¶ 39(h)).
5. Plaintiff purchased, at the direction of some or all Defendants, of a building and underlying property unnecessary to VeroBlue's business and located in Webster City for $400,000 on July 28, 2016, which VeroBlue sold for $135,000 on April 13, 2018. (App. 0011, ¶ 41).

As all of the foregoing actions were taken, Driver was not an officer or director of VeroBlue, was merely acting as a consultant to VeroBlue, owed no duties to VeroBlue, and was not involved in the actions. (App. 0031-0033). In fact, Plaintiff does not allege that Driver was involved at all in many of the listed actions occurring after January 13, 2017. (App. 0003-0030).

Accordingly, the Court should dismiss Plaintiff's First Amended Complaint because VeroBlue released all claims brought against Driver by executing the Release Agreement.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Driver's Motion to Transfer Venue and 12(b)(6) Motion to Dismiss, the Court should transfer Plaintiff's Amended Complaint to the United States District Court of the Northern District of Texas pursuant to the **mandatory** forum

selection clauses covering the claims made in the Amended Complaint. Alternatively, Plaintiff's claims against Driver should be dismissed for failure to state a claim in its inadequate pleadings and because all claims brought against Driver in the Amended Complaint were released in the Release Agreement.

Respectfully submitted,

By: */s/ Stacie M. Codr*
Stacie M. Codr
scodr@finleylaw.com
**Finley Law Firm, P.C.**
699 Walnut Street, Suite 1700
Des Moines, IA 50309
Telephone: (515) 288-0145

R. Heath Cheek
State Bar No. 24053141
hcheek@bellnunnally.com
Katie R. Beaird
Texas Bar No. 24092099
kbeaird@bellnunnally.com
*Pro Hac Vice Pending*
Bell Nunnally & Martin LLP
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Telephone: (214) 740-1400
Telecopy: (214) 740-1499

**ATTORNEYS FOR DEFENDANT KEITH DRIVER**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon counsel of records for all parties via ECF Service.

**DATED** this 15th day of October, 2018.

*/s/ Joseph Moser*

4060476_1.docx // 10700.1