**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-CV-3047 |
| v. | ) | |
| | ) | **DEFENDANTS WULF, HALL, J. REA,** |
| LESLIE A. WULF, BRUCE A. HALL | ) | **T. REA'S BRIEF IN SUPPORT OF** |
| JAMES REA, JOHN E. REA, and | ) | **MOTION TO QUASH SUBPOENAS OR** |
| KEITH DRIVER, | ) | **FOR PROTECTIVE ORDER** |
| | ) | |
| Defendants. | ) | |

**COME NOW** Defendants Leslie Wulf, Bruce Hall, James Rea, and John ("Ted") Rea,

pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c) and Local Rule 7(d), and for

their Brief in Support of Motion to Quash Subpoenas or for Protective Order, state:

## I.     INTRODUCTION

Plaintiff VeroBlue Farms, Inc. ("VBF") issued notice of its intent to serve 10 subpoenas

on third parties,[1] including law firms and multiple banks, not to discover information relevant to

its claims against Defendants, but to unearth communications among parties that have objected to

VBF's Chapter 11 reorganization plan pending in the Bankruptcy Court in this District.  In addition

to being irrelevant, the communications sought by these subpoenas are protected by the attorney-

client and common interest privileges. Three of the subpoenas are directed to VBF shareholders

that have objected to VBF's reorganization plan, and specifically objected to its pursuit of this

case. Three other respondents are attorneys representing creditors and VBF shareholders in the

---

[1] These 10 subpoenas are attached hereto as **Exhibits A-1 through A-7**. Between February 12 and 21, 2019, VBF served notices of intent to subpoena 26 third parties for documents.  As set forth in Section II.D., *infra*, Defendants' counsel asked VBF's counsel to confirm which of these subpoenas have been served on respondents, but to date, VBF's counsel has not responded to this request.

bankruptcy. In fact, one law firm represented Defendants, as VBF shareholders, in the bankruptcy. The other four subpoenas are directed at every bank account record ever held by Defendants.

Together these subpoenas are oppressive, harassing, and seek privileged information that has no bearing on VBF's pending claims here. This Court should not permit VBF to use this litigation to thwart valid objections to its reorganization plan, especially while a motion challenging venue in this district remains pending. All of these subpoenas should be quashed, or at a minimum, severely limited.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  This District Court Action[2]

Defendants were the founders, minority shareholders, directors, and officers of VBF, a sustainable fish farming business, each from approximately October 2014 until late 2017/early 2018. In August 2017, after Defendants reported certain inappropriate conduct and sexual/workforce harassment by VBF board member, Jens Haarkoter, to the rest of VBF's board, they were sequentially terminated as officers from VBF. Defendants Wulf, Hall, and Ted Rea entered into individual separation agreements with VBF in late October-early November 2017. VBF improperly terminated James Rea on the pretext of violating his employment agreement in January 2018. All of Plaintiff's claims stem from actions Defendants allegedly took in their capacity as officers and directors of VBF and as fiduciaries to the Company. By VBF's own allegations, the improper conduct ran from 2014 through Defendants' last termination in January 2018. (Am. Compl., District ECF No. 9, ¶¶ 13, 14, 44, 52, 81.)

---

[2] The suit pending before this Court, *VeroBlue Farms USA, Inc. v. Wulf, et al.,* Case No. 3:18-cv-03047-LTS-MAR, will be referred to as the "District Case" and VBF's Chapter 11 proceeding, *In re: VeroBlue Farms, Inc. et al.,* Case No. 18-01297, will be referred to as the "Bankruptcy Case."

VBF filed this suit on July 31, 2018. (District ECF Dkt. No. 1). VBF filed for protection under Chapter 11 of the Bankruptcy Code in the Northern District of Iowa Bankruptcy Court on September 21, 2018.  On October 15, 2018, Defendants filed a motion to dismiss Plaintiff's claims in the District Court, on the grounds that certain termination agreements between them and VBF either: released VBF's claims against them or required those claims to be litigated in the Northern District of Texas District Court. (District ECF Dkt. No. 19.) This motion remains pending before this court, having been fully submitted on November 5, 2018. (*See* District ECF Dkt Nos. 25, 30.)

### B.  VBF's Bankruptcy Case and Challenges to its Reorganization Plan

In the interim, VBF's Bankruptcy Case has proceeded. On October 24, 2018, the Bankruptcy Court appointed an Official Committee of Unsecured Creditors to represent the interests of VBF's creditors in any reorganization plan ("Creditors Committee"). (Bankr. ECF No. 88.)  That Creditors Committee is represented by the law firm of Goldstein & McClintock, LLP ("G&M"), one of the subpoena respondents. (Bankr. ECF No. 149.) On November 8, 2018, Defendants retained the law firm of Horwood, Marcus & Berk ("HMB") to represent them individually in the Bankruptcy Case. This representation terminated on December 18, 2018, after other VBF shareholders learned of VBF's objectionable reorganization strategy and formed an Ad Hoc Equityholders' Committee to collectively raise those objections. HMB and the law firm of Beecher Field, Walker, Morris, Hoffman & Johnson PC (the "Beecher Firm") now represent the Ad Hoc Equityholders' Committee ("Equityholders' Committee") in the Bankruptcy Case, and Defendants are members of that committee. HMB and the Beecher Firm both are subpoena respondents.

On December 19, 2018, G&M, on behalf of the Creditors Committee, sent a Notice of Challenge to VBF, which, in part, objected to VBF's pursuit of District Case against Defendants

as "entirely meritless," "a waste of corporate assets," "likely warrants a grant of sanction," and demanded that VBF dismiss the case.[3] On December 20, 2018, HMB, on behalf of the Equityholders' Committee, sent a Notice of Challenge to VBF, which objected to certain liens and claims and urged VBF to pursue actions against VBF's current directors for various breaches of fiduciary duty.[4] The Equity Challenge did not reference the District Case or VBF's allegations against Defendants.

On December 10, 2018, VBF filed its Disclosure Statement and Reorganization Plan in the Bankruptcy Case (which has since been modified). On January 9, 2019, the Creditors Committee and the Equityholders' Committee submitted objections to VBF's Disclosure Statement and Reorganization Plan. (Bankr. ECF Dkt. Nos. 237, 238.) The US Trustee also objected to VBF's Disclosure Statement, citing some of the issues raised in the Creditors Challenge. (Bankr. ECF Dkt. No. 235.) VBF's Disclosure Statement and Chapter 11 Plan are scheduled for hearing on April 3, 2019.

### C. VBF Subpoenas Defendants' Counsel and Co-Challengers to VBF's Bankruptcy Case in the District Case.

On February 12, 2019, VBF sent notice of 10 subpoenas to be served in this case, on the following respondents:

1) G&M – Counsel to the Official Committee of Unsecured Creditors ("GM Subpoena"), attached hereto as **Exhibit A-1**.

2) HMB – Counsel to the Ad Hoc Committee of Equityholders, including Defendants ("HMB Subpoena"), attached hereto as **Exhibit A-2**.

3) The Beecher Firm – Counsel to the Ad Hoc Committee of Equityholders, including VBF shareholders, FishDish and Kenneth Lockard ("Beecher Firm Subpoena"), attached hereto as **Exhibit A-3**.

---

[3] A copy of G&M's Notice of Challenge dated December 19, 2018, ("Creditors Challenge") is attached hereto as **Exhibit B**.
[4] A copy of HMB's Notice of Challenge dated December 20, 2018 ("Equity Challenge"), is attached hereto as **Exhibit C.**

4)  Fish Dish LLC – VBF Shareholder and member of Equityholders' Committee ("FishDish Subpoena"), attached hereto as **Exhibit  A-4**.

5)  William Turk – former member of Creditors Committee ("Turk Subpoena"), attached hereto as **Exhibit A-5**.

6)  Kenneth Lockard – owner of FishDish and member of Equityholders Committee ("Lockard Subpoena"), attached hereto as **Exhibit A-6**.

7)  First State Bank

8)  Wells Fargo

9)  Comerica Bank

10)  Bank of America N.A. (together, these subpoenas are referred to as "Bank Subpoenas" and attached hereto as **Group Exhibit A-7**.

All 10 of the subpoenas are returnable February 26, 2019.

All of these subpoena respondents (except for the four banks) are parties to VBF's Bankruptcy Case and have raised objections to VBF's reorganization plan. All of VBF's requests to these respondents are identical: they seek documents and communications regarding: i) Defendants (Exs. A-1 thru A-7, Item 3), 2) Defendants' counsel (Staci [sic] Codr, Finley Law Firm, Kim Annello, Exall + Wood PLLC, Heath Cheek, and Bell Nunnally & Martin LLP) (*id.*, Item 4), 3) the Creditors Challenge (*id.*, Item 5), 4) the Equity Challenge (*id.*), and 5) any investigation related to those Challenges (*Id.*, Items 6, 7.) The only reference to the District Case or VBF's allegations against Defendants in any of these subpoenas are two vague requests for "any and all documents relating to the Complaint [and] to VBF." (*See id.*, Items 2 and 3.) The Bank Subpoenas run even further afield of the pending allegations. They ask each of these four banks to produce every single "statement, copies of checks, cancelled checks, online records, signature

cards, loan agreements, loan committee documents, correspondence, withdrawal slips or other documents relating to any and all accounts held by [Defendant]." (Group Ex. A-7, Items 2-6.)

### D.  Local Rule 7(k) Statement Regarding VBF's Position on Subpoenas.

On February 22, 2019, Kimberly Annello and Stacie Codr, Defendants' counsel, spoke by telephone with Holly Logan, VBF's counsel. Ms. Annello asked Ms. Logan to confirm whether the 10 subpoenas currently at issue were served on respondents. Ms. Annello outlined the privileged and confidential nature of the documents requested and informed Ms. Logan that Defendants planned to file  motion to quash before the February 26 return date. Ms. Annello also questioned why this discovery was served in the District Court action as opposed to in the Bankruptcy Case. Ms. Logan responded that Plaintiff's co-counsel, the law firm of Thompson Coburn, was handling the subpoenas; therefore, she could not confirm whether they had been served and could not address Defendants' objections. She indicated that Thompson Coburn would respond to Ms. Annello's questions. Later that day, Ms. Annello sent an email to Ms. Logan as well as three attorneys at Thompson Coburn outlining Defendants' issues with the subpoenas.[5] VBF's counsel has not responded to this email or addressed these questions. Over the weekend, Defendant Hall received a notice from Bank of America that it was planning to respond to the subpoena on Monday, February 25, 2019.  Defendants were forced to file this motion before that date to prevent premature production of documents.

### III.   <u>MOTION TO QUASH SUBPOENAS</u>

All ten of the subpoenas should be quashed by this Court because they seek documents relevant to VBF's bankruptcy plan confirmation and not its allegations pending here. More importantly, given the nature of the Bankruptcy Case, six of the subpoenas seek privileged

---

[5] A copy of the email from K. Annello to H. Logan, S. Codr, R. Lang, C. Pritkin and E. Boyle Perich, dated February 22, 2019, is attached hereto as **Exhibit D.**

information and materials. The four Bank Subpoenas are impossibly overbroad and seek literally every bank record in Defendants' names for all time. These subpoenas must be quashed. Alternatively, the Court should issue a protective order prohibiting the discovery sought by Plaintiffs via subpoena.

### A. The GM, HMB, Beecher Firm, Fish Dish, Turk and Lockard Subpoenas All Seek Information Related to VBF's Bankruptcy Plan Confirmation and are Irrelevant to the District Case.

Relevance for discovery purposes is broadly defined by Rule 26, but even so, is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *See, e.g., Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1992). In the District Case here, VBF asserts nine claims against Defendants, all variations of breach of fiduciary duty, fraud, and conspiracy in their actions as VBF's officers and directors. By VBF's own allegations, Defendants' wrongful conduct began sometime in September 2014, after they obtained control of VBF, and continued until VBF completed its investigation in March 2018, after Defendants were "ousted" from the company. (Am. Compl., ECF No. ¶¶ 13, 14, 44, 52, 81.) Pursuant to Rule 26(b)(1), discovery in this matter is limited to VBF's claims regarding Defendants' wrongful conduct while they controlled VBF until VBF completed its investigation of that conduct in March 2018.

The subpoenas directed to GM, HMB, Beecher Firm, FishDish, Turk, and Lockard are not directed to anything related to Defendants' conduct while in control of VBF. The subpoenas are all related to the Creditors Challenge and the Equity Challenge and the investigation leading to them, (*see* Exs. A-1 through A-6, Item 5, 6, 7). Both of these Challenges were not sent until

months after VBF completed its investigation of Defendants and filed this suit. The Subpoenas seek communications among Defendants, the Creditors Committee, the Equityholders' Committee, and each of their respective attorneys regarding these Challenges and investigation (*See id.,* Items 3, 4). The only vague reference to the District Case is in a broadly worded request for "all documents and communications relating to the Complaint." (*Id.,* Item 2). These subpoenas are not designed to discover documents related to VBF's claims against Defendants, but to subvert the challenge to their bankruptcy plan. This is not within the scope of Rule 26(b)(1).

While Defendants believe the subpoenas are objectionable on several other grounds, as further explained in this Motion, VBF certainly could have avoided this relevance argument by serving discovery requests on the Creditors Committee, the Equityholders' Committee, Mr. Turk, Mr. Lockard, and/or their counsel in the Bankruptcy Case. But VBF has not served any discovery in the Bankruptcy Case. A fee application submitted in the Bankruptcy Case by VBF's counsel, Brown, Koehn, Shors & Roberts, P.C., indicates why they may have chosen this forum instead. On February 11, 2019, ***the day before VBF served the Notice of Subpoenas,*** its counsel held a conference call to discuss "***whether to answer discovery from ad hoc creditors committee in bankruptcy case and whether to send subpoena in federal case***[.]"[6] It appears that VBF is using this forum to shield it from answering discovery that has been served on it in the Bankruptcy Case related to its plan confirmation, while simultaneously using this forum as a sword in which to investigate that very same issue. This tactic has also forced Defendants to respond to discovery in the District Case, which Defendants maintain is the wrong venue, while a motion on that issue remains pending. Procedural gamesmanship does not establish relevance for discovery purposes.

---

[6] *See* Excerpts from Fee Application filed by Brown, Koehn, Shors & Roberts, P.C, filed February 20, 2019 (Bankr. ECF Dkt. No. 314) p. 95, attached hereto as **Exhibit E**.

These subpoenas are outside the scope permitted by Rule 26(b)(1), and that justifies the Court

quashing all of them. Fed. R. Civ. P. 26(b)(2)(C)(iii).[7]

### B.  The HMB and Beecher Firm Subpoenas Seek Attorney-Client Privileged Materials.

Even if this Court finds that discovery into valid challenges to VBF's Chapter 11

reorganization plan is somehow related to VBF's claims for breach of fiduciary duty against

Defendants, that finding alone does not save the subpoenas. They also seek communications that

are privileged. As explained, HMB was Defendants' individual counsel and now represents

Defendants as members of the Equityholders' Committee in the Bankruptcy Case. The Beecher

Firm also represents the Equityholders' Committee, and thus, represents Defendants as members

of that committee. Thus, communications among HMB and/or the Beecher Firm, Defendants

and/or Defendants' counsel in the District Case are subject to attorney-client privilege. The

application of the attorney-client privilege is governed by state law. *St. Paul Reinsurance Co., Ltd.*

*v. Commercial Fin. Corp.*, 197 F.R.D. 620, 627 (N.D. Iowa 2000). In Iowa, the attorney-client

privilege is created by statute:

> A practicing attorney ... shall not be allowed, in giving testimony, to
> disclose any confidential communication properly entrusted to the person
> in the person's professional capacity, and necessary and proper to enable
> the person to discharge the functions of the person's office according to the
> usual course of practice or discipline.

Iowa Code § 622.10(1). "Any confidential communication between an attorney and the attorney's

client is absolutely privileged from disclosure against the will of the client." *Keefe v. Bernard,* 774

N.W.2d 663, 669 (Iowa 2009) (quoting *Shook v. City of Davenport,* 497 N.W.2d 883, 885 (Iowa

---

[7] At a minimum, VBF must establish how these requests for information about its Bankruptcy Case is relevant to this action. When a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Marook v. State Farm Mut. Auto. Ins. Co.,* 259 F.R.D. 388, 394-95 (N.D. Iowa 2009).

1993), overruled on other grounds by *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.,* 690 N.W.2d 38, 43 (Iowa 2004)); *Progressive Cas. Ins. Co. v. F.D.I.C.*, 302 F.R.D. 497, 501–02 (N.D. Iowa), *aff'd,* 49 F. Supp. 3d 545 (N.D. Iowa 2014). The attorney-client privilege focuses on the nature of the relationship involved and is "not dependent whatsoever upon the anticipation of litigation." *Meighan v. TransGuard Ins. Co. of Am.*, 298 F.R.D. 436, 447 (N.D. Iowa 2014).

Additionally, "[w]hen two or more persons, each having an interest in some problem, or situation, jointly consult an attorney, their confidential communications with the attorney, though known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world, that is, with parties claiming adversely to both or either of those within the original charmed circle." *City of Coralville v. Iowa Dist. Court for Johnson Cty.*, 634 N.W.2d 675, 677 (Iowa 2001) (citing 1 John W. Strong, MCCORMICK ON EVIDENCE § 91, at 365-66 (5th ed.1999)).

The Subpoenas to HMB and the Beecher Firm directly seek communications protected by the attorney-client privilege. HMB was Defendants' individual counsel in the Bankruptcy Case from November 8 through December 18, 2018. Thus, any communications between Defendants and HMB (Exs. A-2, A-3, Item 3) or between HMB and Defendants' undersigned counsel, Stacie Codr, Kim Annello, and their firms (*id.,* Item 4) are privileged. Also, since December 18, 2018, Defendants have been members of the Equityholders' Committee that HMB and the Beecher Firm now represent, therefore, all communications related to the Equityholders' Committee's investigation of VBF and its challenges to VBF's reorganization plan are also privileged. Such communications would be subsumed in Items 1, 2, 5, 6 and 7 in the HMB and Beecher Firm Subpoenas. Essentially there is nothing that could be produced in response to these two subpoenas

that is not subject to attorney-client privilege. The HMB and Beecher Firm Subpoenas should be quashed on this ground alone.

### C. The GM, FishDish, Turk, and Lockard Subpoenas Seek Materials Protected by the Common-Interest Doctrine.

Similarly, the subpoenas to GM, FishDish, Turk and Lockard improperly seek privileged communications. (Exs. A-1, A-4, A-5, A-6.) As VBF is aware, FishDish and Kenneth Lockard are members of the Equityholders' Committee, along with Defendants. The Beecher Firm is counsel to FishDish, Mr. Lockard, as well as the Equityholders' Committee. Mr. Turk was a member of the Creditors' Committee, which is represented by GM. Both committees have raised similar objections to VBF's reorganization plan. The subpoenas to these entities and attorneys are clearly directed at unearthing the Creditors Committee's and Equityholders' Committee's strategy and investigation into VBF's Bankruptcy Case and reorganization plan and squelching any dissent. These communications are protected by the common-interest privilege.

Privileges are not waived if the privileged information is disclosed between entities with a common legal interest. "The common interest may be either legal, factual, or strategic in character." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997). "The common interest privilege ... applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Nidec Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 578 (N.D. Cal. 2007). *See also In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990) (stating "Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their

respective attorneys and with each other to more effectively prosecute or defend their claims."); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (stating "'common interests' should not be construed as narrowly limited to co-parties. So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary.").

The common interest doctrine serves as an exception to the general rule that voluntary disclosure of privileged material to a third party waives any applicable privilege. *See, e.g., Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.,* 284 F.R.D. 132, 139 (S.D.N.Y.2012). "At its core, the common interest doctrine applies when multiple persons are represented by the same attorney. Communications made to the shared attorney to establish a defense strategy remain privileged." *North River Insurance Co. v. Columbia Casualty Co.,* 1995 WL 5792, *2 (S.D.N.Y.1995). The doctrine applies where, as here, parties are represented by separate counsel that engage in a common legal enterprise. *Id.* at *3.

The Iowa Supreme Court also recognizes the "joint-client exception." *Brandon v. West Bend Mut. Ins. Co.,* 681 N.W.2d 633, 644 (Iowa 2004). This exception applies when two or more persons jointly consult the same attorney to act for them in a matter of common interest. *Id.* The exception is based largely on the concept that joint clients have no intention or expectation to keep their communications confidential as between themselves. *Id.* The rationale for this exception is "simply that if it appears the secret or imparted communication is such that the attorney is under a duty to divulge it for the protection of the others he has undertaken to represent in the involved

transaction, the communication is not privileged." *Henke v. Iowa Home Mut. Cas. Co.,* 87 N.W.2d 920, 924 (Iowa 1958).

The Creditors' Committee, the Equityholders' Committee, the Committees' attorneys, the committee members, and the members' respective counsel all are pursuing a common interest in challenging VBF's reorganization plan. Both committees and their counsel have shared information in their investigation of VBF's plan and in preparing their challenges. The communications among any of these committees, their members, and their collective and/or individual counsel are privileged. *Brandon,* 681 N.W.2d at 644. The subpoenas to GM, FishDish, Turk, and Lockard all seek communications with Defendants and their undersigned counsel (Exs. A-1, A-4, A-5, A-6, Items 3, 4) and communications related to their investigation and notice of challenges to VBF's reorganization plan. (*Id.,* Items 1, 2, 5, 6 and 7). These matters are all the subject of a "common interests [with Defendants] on a particular issue against a common adversary," thus they are privileged. The subpoenas to GM, FishDish, Turk, and Lockard should all be quashed as they seek documents and information subject to the common-interest privilege.

### D. The Bank Subpoenas Seek Confidential Personal and Commercial Information.

VBF's overreach in serving these subpoenas is best illustrated by the overbreadth of the Bank Subpoenas, served on First State Bank, Wells Fargo, Comerica Bank, and Bank of America, N.A. (*See* Group Exhibit A-7.) These subpoenas seek every document related to any bank account owned by any of the Defendants at any of these four banks. This is an impermissible fishing expedition into confidential personal financial and commercial information. *See* Fed. R. Civ. P. 45(d)(3)B)(i). VBF has no legitimate need for the full range of information described in the subpoena.

13

Again, a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. *See* Fed. R. Civ. P. 26(b)(1). Moreover, discovery must not only be relevant, it must also be proportional to the needs of the case. *See* Fed.R.Civ.P. 26(b)(2)(C). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit…" Fed. R. Civ. P. 26(b)(1). The rule of proportionality is intended to "guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989).

The Bank Subpoenas are neither relevant nor proportional to VBF's need for information. The Bank Subpoenas do not seek information about business accounts, accounts owned by or on behalf of VBF, or even transactions between VBF and Defendants, but request  every record of Defendants' ***personal*** bank accounts, some of which may be held jointly with their spouses or other family members. (Group Ex. A-7, Items 2-6.) The Bank Subpoenas do not specify any date range – ***they seek every transaction in any and all of Defendants' personal bank accounts ever*** – even though Defendants have not been associated with VBF or had access to VBF funds for over a year. Essentially, this would require Defendants to open their entire personal financial accounts to VBF for examination. By VBF's own allegations, it conducted a thorough investigation of Defendants' purported misappropriations of VBF funds, many of which are detailed to the penny in its Amended Complaint. VBF certainly controls all of its own bank accounts and accounting

records and not only can but has reviewed them to identify transactions between the company and the individual Defendants. VBF does not need, and cannot show any justification, for performing an audit of the Defendants personal financials and those of their families. The Bank Subpoenas are overbroad and seek confidential and personal financial information from the Defendants that is beyond the scope permitted by Rule 26(b)(1)[8]; they must be quashed. Fed. R. Civ. P. 26(b)(2)(C)(iii).

### IV.   <u>MOTION FOR PROTECTIVE ORDER</u>

In the alternative to quashing the subpoenas served on non-parties by the Plaintiffs, Defendants respectfully request this Court enter a protective order forbidding the disclosure or discovery sought by the subpoenas at issue. Federal Rule of Civil Procedure 26(c) provides, in relevant part:

(c) **Protective Orders.**

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending— . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

. . .

(A) forbidding the disclosure or discovery;

. . .

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

. . .

 (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way…

---

[8] These subpoenas also fail to comply with TEX. FIN. CODE §59.006, which among other things, requires Plaintiff to have provided the bank respondents with 24 days' notice. TEX. FIN. CODE §59.006(b)(1).

*See* Fed.R.Civ.P. 26(c). As subpart (G) suggests, the permissible scope of a protective order is not limited to trade secrets but may include "other confidential ... information." Documents may be protected if, for example, they contain "information about manufacturing processes, budgeting and ***finance issues***, testing and other matters that would not generally be released for public consumption." *See, e.g., Eggerling v. Advanced Bionics, LLC,* No. C11–4104, 2013 WL 835974, at *3 (N.D.Iowa Mar. 6, 2013)(emphasis supplied).

> The Supreme Court has explained the purpose of Rule 26(c) as follows:
>
> Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression.... Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; ***discovery also may seriously implicate privacy interests of litigants and third parties.*** The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34–35 (1984) [citations and footnotes omitted] (emphasis supplied). The rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36.

A protective order is warranted here, to protect Defendants' privileged communications and personal financial information from being disclosed to wield in VBF's campaign to squelch dissent in its Bankruptcy Case. Specifically, this Court should enter a protective order barring VBF from seeking communications among any of the: a) Defendants, b) their attorneys, c) members of the Equityholders' Committee, d) the Equityholders' Committee's counsel, e) members of the Creditors' Committee, f) the Creditors' Committee's counsel, and/or g) individual counsel to any member of the Equityholder's Committee or Creditors' Committee. This Court should also enter

a protective order barring VBF from requesting Defendants' personal bank accounts and financial records unless and until good cause is shown that evidence of specific transactions is needed and not available from VBF's own records or discovery requests to Defendants.

## V.   **CONCLUSION**

WHEREFORE, Defendants Leslie Wulf, Bruce Hall, James Rea, and John ("Ted") Rea respectfully request the Court enter an Order quashing the subpoenas issued to the above-mentioned entities.

Date:   February 24, 2019

LESLIE WULF, BRUCE HALL,
JOHN (TED) REA, JAMES REA

By: */s/ Kimberly D. Annello*
     Kimberly D. Annello
     Texas Bar No. 24093704
     Exall + Wood, PLLC
     3838 Oak Lawn Ave., Suite 1750
     Dallas, Texas 75219
     T: (469) 619-6230
     F: (469) 619-6511
     Email: kannello@exallwood.com
     *(pro hac vice)*

     Stacie M. Codr
     Finley Law Firm, P.C.
     699 Walnut Street, Suite 1700
     Des Moines, IA 50309
     Phone: 515.288.0145
     Email: scodr@finleylaw.com
     **Attorneys for Defendants, Leslie Wulf, Bruce Hall, John (Ted) Rea, and James Rea**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 25, 2019 a true and correct copy of the above and foregoing was served upon counsel of records for all parties via ECF Service.

_/s/ Kimberly D. Annello_