**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**


| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-03047 |
| | ) | |
| LESLIE A. WULF, *et al.*, | ) | |
| Defendants. | ) | |


**PLAINTIFF'S RESPONSE TO CERTAIN DEFENDANTS'
MOTION TO QUASH SUBPOENAS OR FOR PROTECTIVE ORDER**

## TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ....................................................................... 1

II.   PROCEDURAL AND OTHER BACKGROUND OMITTED BY
      DEFENDANTS ............................................................................................ 3

      A.    The Subpoenas To The Bankruptcy Attorneys ...................................... 4

      B.    The Subpoena To Turk .......................................................................... 7

      C.    The Subpoenas To FishDish And Lockard ............................................ 7

      D.    The Bank Subpoenas............................................................................. 8

      E.    Defendants' Bad Faith Violations Of Meet And Confer Requirements ................ 9

III.  LAW AND FURTHER ARGUMENT .......................................................... 10

      A.    Defendants' Failure To Meet And Confer Is Fatal To Their Motion ................. 10

      B.    Alternatively, The Subpoenas Are Permissible In Scope ..................... 11

            1.    The Non-Bank Subpoenas Are Entirely Permissible............................. 12

            2.    The Bank Subpoenas Are Permissible ...................................... 14

                  a.    VBF Is Entitled To Defendants' Bank Records Because
                        Defendants' Misconduct Was Financial In Nature, Bank
                        Records Are Reasonably Calculated To Lead to Admissible
                        Evidence On Such Misconduct, And, Alternatively,
                        Because Defendants Owed VBF Fiduciary Duties....................... 14

                  b.    Alternatively, VBF Is Entitled To Defendants' Bank
                        Records Because VBF Seeks Punitive Damages Against
                        Defendants. ................................................................ 17

                  c.    VBF Would Be Agreeable To A Reasonable Protective
                        Order ........................................................................ 17

      C.    No Privilege Log Was Provided And Therefore No Privilege Can Be
            Claimed........................................................................................... 18

      D.    VBF Is Entitled To Recovery Of Its Reasonable Attorneys' Fees ....... 19

Plaintiff, VeroBlue Farms USA, Inc. ("VBF") for its Response to the Motion  ("Motion") to Quash Subpoenas ("Subpoenas") or for Protective Order [Dkt. 37] submitted by certain Defendants (referred to as "Wulf," "J. Rea," "T. Rea," and "Hall") states as follows:

## I.   SUMMARY OF ARGUMENT

The Motion should be denied since movants ignored their meet and confer obligations before filing their 17-page Motion. This alone shows the spurious nature of the Motion, which would not have been filed if a genuine meet and confer had occurred.

Otherwise, the Subpoenas seek information that is reasonably calculated to lead to the discovery of admissible evidence in this case.  The Subpoenas can be broken down as follows, and only the Lockard and Turk subpoenas also are for oral depositions[1]:  (1) Attorneys in the pending Chapter 11 Bankruptcy Case ("Bankruptcy Attorneys"), who have communicated with the Defendants about this case; (2) William Turk ("Turk"), whom movants deceptively identify as nothing more than a "former member of the Creditors Committee," but who has actually responded to his Subpoena and has produced relevant documents (demonstrating the folly of the Motion);  (3) FishDish LLC ("FishDish") and one of its owners, Kenneth Lockard ("Lockard"), whom movants deceptively identify as nothing more than an "owner of FishDish and member of the Equityholders Committee" (the "equityholders committee"[2]), when FishDish is a major VBF shareholder and Lockard was a VBF director for several years; and (4) Subpoenas to four banks that seek not only VBF's own bank records during the time period of Defendants' reign, but also Defendants' bank records personally since VBF alleges that the Defendants personally misappropriated or squandered tens of millions of dollars.

---

[1] This Response shall employ all "defined terms" of the Motion unless otherwise defined herein.

[2] Referred to herein as the "AHC," to reflect its true status as an "Ad Hoc Committee" in the Bankruptcy Case.

Defendants raise three arguments. *First*, they argue that VBF's subpoenas to the Bankruptcy Attorneys, Turk, and Lockard "all" seek "irrelevant" information related to VBF's Bankruptcy Case. Defendants fail to inform the Court that the Bankruptcy Attorneys are repositories of information discoverable in this case. G&M admitted that the Defendants provided the firm with information about this case as part of Defendants' failed effort to leverage the dismissal of this case for zero dollars in consideration to VBF in the Bankruptcy Case. HMB joined in such efforts, is no longer Defendants' counsel, and also undeniably has information about this case. Beecher also apparently has participated in discussions with the Defendants and has information about this case. Turk has actually produced documents and a privilege log to Plaintiff in response to the Subpoena, and is a former alleged VBF contractor paid over $150,000 by VBF from on or about December 31, 2016 through on or about November 30, 2017. (Exhibit A at ¶ 1.) Turk is also a relative of J. Rea and T. Rea (and presumably the Rea's introduced Turk to VBF), and will soon be listed as a person with knowledge on VBF's supplemental Rule 26(a)(1) Disclosures, in addition to being a "former member" of the Creditors' Committee (he was forced to resign due to obvious conflicts-of-interest). (*Id.*)

Lockard is the principal of one of VBF's lead investors (FishDish), a long-time board member of VBF, listed on VBF's and movants' Rule 26 Disclosures, and will have a wealth of knowledge about this case. Lockard, beginning in early 2016, even assisted the Defendants in soliciting VBF investors, possibly including Alder Aqua Ltd. ("Alder"), the single largest victim of Defendants' fraud. Defendants also neglect to inform the Court that most of the Subpoenas do not seek communications with the Bankruptcy Attorneys.

*Second*, Defendants raise privilege, ignoring the well-known process for claiming privilege under the Federal Rules of Civil Procedure, which starts with Defendants' submission

of a privilege log.  Defendants have submitted no log.  Once again, Defendants flout the rules that are designed to relieve the courts from unnecessary burdens like the Motion.  Although the Defendants' claim of a "joint privilege" with the Bankruptcy Attorneys, Turk, and Lockard only indicates that those parties are aiding the Defendants, that privilege claim should have been left to Defendants' provision of a privilege log and then a genuine meet and confer.  Defendants chose not to do so, and therefore have waived any claims of privilege.

*Third*, Defendants assert that the Bank Subpoenas improperly seek the Defendants' confidential and personal information.  One of the bank respondents has partially produced documents in response to the Subpoena, and these records reveal potentially significant information relating to Defendants' fraud.  Defendants ignore that a protective order can address their confidentiality concerns, that VBF's claims against the Defendants arise in part out of their misappropriation of VBF's funds and VBF therefore needs discovery to track Defendants' misappropriation (and VBF has a constructive trust claim), and that VBF is seeking punitive damages against Defendants which allows discovery into their net worth.

None of the Subpoena Respondents have joined in the Motion, nor has Defendant Keith Driver.  For the reasons set forth in this Resistance, VBF not only seeks a denial of the Motion, but also all of its reasonable attorney's fees in resisting the Motion.

## II.    PROCEDURAL AND OTHER BACKGROUND OMITTED BY DEFENDANTS

The following is alleged in VBF's First Amended Complaint ("Complaint") [Dkt. 9]: VBF operated a fish farm based in Webster City, Iowa.  The Defendants founded VBF on or before September 5, 2014 when the company was incorporated (and this is why Defendants are often defined as VBF's "Founders").  The Defendants ran VBF until the last of them was terminated in January 2018.  During that time, they squandered tens of millions of dollars in debt

and equity investment[3], to the point that VBF filed for bankruptcy in September 2018. Defendants did so in two basic ways:  First, they misappropriated millions of dollars in VBF funds and other assets by giving themselves stock effectively for free (there is no evidence that the Defendants ever invested their own money in VBF), by paying off loans to Defendants' other businesses with VBF funds, by Wulf's reconstruction of his lake house with VBF funds and other VBF assets, by paying themselves close to $2,000,000 per year for running a business that was never profitable and now bankrupt, by ghost-payrolling at least one of their children, by using VBF funds for a variety of personal expenses or expenses related to the Defendants' other businesses,  and other schemes that VBF is still discovering.

Second, the Defendants violated their fiduciary duty of due care, and other duties, by mismanaging VBF, including, but not limited to, overbuilding facilities, presenting highly flawed and intentionally manipulated business plans, mismanaging and misrepresenting technology, mismanaging other financial and operational issues, and purchasing or overpaying for unnecessary real and personal property.  VBF's current claims are for breach of fiduciary, fraud, conspiracy, aiding and abetting, unjust enrichment, equitable accounting, and a declaratory judgment regarding the validity of certain Defendant transactions.  VBF seeks compensatory and punitive damages, a constructive trust, and other relief.

### A.        The Subpoenas To The Bankruptcy Attorneys

VBF served the Subpoenas on Defendants' counsel on February 12, 2019, and the Subpoenas required a February 26, 2019 compliance date.  (Exhibit B, Notice of Subpoenas.) The impetus to VBF's issuance of the Subpoenas to the Bankruptcy Attorneys came when VBF realized that the <u>Defendants</u> were actively working with the Bankruptcy Attorneys in the

---

[3] It now appears that the precise figure is closer to $81,000,000.  (Exhibit A at ¶ 1.)

Bankruptcy Case.  Defendants' Motion references a "Notice of Challenge" submitted by G&M in the Bankruptcy Case ("Challenge Notice"), which was adopted by the AHC.  [Dkt. 37-9.]  The Challenge Notice has since been withdrawn by the Creditors Committee, who never acted on it, and for good reason.  (Exhibit C, Creditors' Committee withdrawal of Challenge Notice, at p. 4, ¶ 4.)  This renders Defendants' reliance on the Challenge Notice, a document withdrawn by the party who propounded it, to be without merit.  [Dkt. 37-1 at pp. 3-5.]

The Challenge Notice itself, however, was a document prepared based on information that the Defendants provided to G&M about this case.  Indeed, the Challenge Notice attempted to do the Defendants' bidding, trying to leverage a dismissal of this case (referred to as the "Founders Action") for no consideration by Defendants.  [Dkt. 37-9 at 14-17 and 21: demanding that the bankruptcy Debtors "immediately" dismiss "the Founders Action with prejudice."]  Of course, it seemed strange to VBF that the Creditors Committee would seek the dismissal of this case in its Challenge Notice with no recovery to VBF.  On January 9, 2019, VBF counsel met with Tom Fawkes of G&M to discuss the Challenge Notice, and he acknowledged that the Defendants themselves were the impetus of the Challenge Notice and that the Defendants were essentially the sole source of background information for that document.  (See, Exhibit A-2, January 9, 2019 letter from VBF's bankruptcy counsel to G&M, and follow-up email to the United States Trustee copying G&M, and G&M has never disputed these facts.)  At that point it became clear to VBF that the Defendants have transmitted information about this case to G&M.[4]

Like Defendants do in their Motion to Quash [Dkt. 37-1 at 2], the Challenge Notice shamefully repeated the Defendants' defamatory accusations of sexual harassment against a

---

[4] This blatant attempt to short-circuit the judicial process in this case failed, as the Creditors Committee never pursued that dismissal and has since settled with Debtors.

representative of Alder Aqua Ltd. ("Alder"), the largest victim of Defendants' misconduct (to the tune of about $50,000,000). [Dkt. 37-9 at 13-14.] Defendants have regularly attempted to deflect attention from their loss of about $81,000,000 of VBF's money with these defamatory statements, but such claims have been debunked as nothing more than a tactic, including by the Nelson family, which consists of longstanding VBF employees and shareholders, through their March 2018 letter attached as Exhibit A-1 (which refers to Defendants as "the Dallas Group").

The AHC, which has not been recognized by the Bankruptcy Court and no order has been entered granting the AHC any status in the Bankruptcy Case, was at the time working with the Defendants and the Creditors Committee, as evidenced by the AHC's December 20, 2018 letter. [Dkt. 37-10.] Further, HMB, counsel for the AHC, also has represented the Defendants in the Bankruptcy Case, firmly establishing the Defendants' intrusion into the Bankruptcy Case. (*See* Exhibit D at ¶ 5, where HMB admits that "HMB has previously provided limited services to Ted Rea, James Rea, Bruce Hall, and Leslie Wulf (the "Founding Shareholders") for several weeks in conjunction with these Chapter 11 proceedings"….). It also became probable that Beecher, which represents FishDish, and the AHC, was involved in the joint discussions with the Defendants. (*See e.g.,* Exhibit E, Beecher additional appearance for AHC.)

Accordingly, all of the Bankruptcy Attorneys, in their interactions with the Defendants about this case, would likely have information discoverable in this case. The Defendants are critical witnesses in this case, and those witnesses have communicated about this case to the Bankruptcy Attorneys. Further, the Motion ignores that the Subpoenas to the Bankruptcy Attorneys not only request their communications with others, but also documents relating to VBF, this Complaint, the Defendants, communications with Defendants' counsel in this case, and documents that could be characterized as witness statements.

B.      **The Subpoena To Turk**

As HMB and Defendants are aware, Turk has <u>responded</u> to his Subpoena, providing documents and even a privilege log (and HMB is aware of this production). (*See*, Exhibit A-3.) Later, HMB, **AHC counsel**, has claimed to represent Turk.  Defendants omit in their Motion that Turk is a former VBF alleged consultant who will have knowledge of discoverable facts in that capacity, as evidenced by the fact that he has already produced such facts as touched upon in Exhibit A-3.  Defendants also omit that Turk is family to the Rea Defendants, and was forced to resign from the Creditors Committee due to this conflict. This was a further example of Defendants' attempted subterfuge of <u>this case</u> through the Bankruptcy Case.  Like the other Subpoenas, the Turk Subpoena not only seeks Turk's communications with the Bankruptcy Attorneys, but also other documents and communications relating to Defendants, VBF, and the Complaint.  [Dkt. 37-6.]  Amongst the documents produced by Turk were some from 2016 relating to VBF's alleged technology and representations made to investors and/or lenders, many of which have proven to be false.  (Exhibit A-3, sampling of Turk production.)  Therefore, assuming that Turk has produced all documentation other than that listed on his privilege log, VBF only needs to take Turk's deposition.

C.      **The Subpoenas To FishDish And Lockard**

FishDish has been the second largest VBF shareholder since mid-2016 and Lockard was FishDish's appointed VBF board member from around that time through March 2018 when Lockard resigned.  (*See e.g.,* Exhibit A-4.)  Lockard, despite his former director status, has refused to meet with VBF's lawyers so that they may informally interview him.  (*See e.g.,* Exhibit A-5.)  **The Movants (and VBF) have disclosed Lockard as a "person with knowledge" in their Rule 26(a)(1) disclosures**.  In a December 28, 2017 letter to

representatives of Alder, Lockard indicated that his testimony would be relevant to this case and was for sale (the "Gang of Four" refers to the four Defendant-Movants):

> I wish to put the "preferred stock" of FishDish today to Otto, for our original investment of 6 million along with FishDish's board seat on VeroBlue. I would be willing to sign an NDA regarding the sale and a willing and truthful witness if you decide to bring suit against the Gang of Four.

(Exhibit A-6.)  Needless to say, Alder did not take the bribe, but Lockard nonetheless remains a central figure in VBF's story.

Lockard's willingness to testify according to financial interests only makes the need for a subpoena, and the force of law behind it, more necessary.  Lockard, on behalf of FishDish, interacted heavily with the Defendants, as evidenced by Group Exhibit A-7, which also demonstrates that Lockard and FishDish may have solicited investors for VBF and participated in the drafting of VBF corporate documents relating to Alder.  Obviously, as demonstrated by this sampling, Lockard and FishDish should have a plethora of documents responsive to VBF's Subpoenas [Dkt. 37-5 and 37-7], outside of communications with Bankruptcy Attorneys.

### D.     The Bank Subpoenas

Defendants conducted their misappropriation and other squandering of more than $80,000,000 while concealing the same from VBF, and therefore a key source of information will be Defendants' bank records. While some of these tens of millions of dollars were squandered on technology blatantly misrepresented by the Defendants, there are tens of millions of other dollars that VBF cannot trace. Where did that money go?  Accordingly, the Bank Subpoenas [Dkt. 37-8] are necessary to that highly relevant question, and the requests include all documents relating to accounts held by VBF or its affiliates, documents related to Defendants' personal accounts, and communications with Defendants or their counsel.

Further, one of the bank respondents, Wells Fargo, has made a limited production in response to the Bank Subpoenas. (*See,* Exhibit F, February 15, 2019 Wells Fargo letter advising of its upcoming production, which was made by electronic transfer to VBF's counsel on February 26, 2019.)  Wells Fargo has produced <u>VBF's own bank records</u> during the time that Defendants controlled VBF and its bank accounts, and also the bank records of Defendant Wulf. Upon the Court's request, VBF can submit this production for the Court's *in camera* inspection as there appears to be potentially suspicious and large transactions.

### E.   Defendants' Bad Faith Violations Of Meet And Confer Requirements

Local Rule 37 is simply stated to avoid unnecessary motions like Defendants':  "**No motion related to discovery may be filed**" unless moving counsel conducts a personal "meet and confer" with opposing counsel, or certifies that the same was "impossible." L.R. 37.  The rule provides even more guidance, "[a]n exchange of written communications or a single telephone message will not, by itself, satisfy the requirements of this section." *Id*.  Unfortunately, the 17-page motion does not mention Local Rule 37, let alone indicate any compliance with it. Defendants did not comply with Local Rule 37.

Instead, Defendants claim compliance with Rule 7(k), in ignorance of Local Rule 37. [Dkt. 37-1 at 6.]  There was no good faith compliance by Defendants with Local Rule 7(k) either. The document claimed by Defendants to support compliance with Local Rule 7(k) is Exhibit D to the Motion. [Dkt. 37-11.]  This is a February 19 to February 22, 2019 email chain, **initiated by VBF's counsel**, for the purpose of complying with local courtesies of coordinating the scheduling of depositions subpoenaed or noticed **by VBF** with Defendants' counsel.  Indeed, after Defendants' counsel failed to respond to the February 19 email of VBF's counsel, VBF's counsel followed up again, **to schedule those depositions**.  [Dkt. 37-11 at 3.]  Defendants' counsel replied to that follow-up email, mentioning only the scheduling of deposition dates, not

the Subpoenas.  [*Id.*]  Counsel had a telephone call on February 22, again to discuss deposition scheduling, and in a follow up email after the call Defendants' counsel referenced that she touched on the Subpoenas at the call. As indicated by counsel's own words from that email, there was no good faith discussion of the Subpoenas:

> I asked if the 26 subpoenas that VBF has recently noticed have been served. Specifically I asked if the 10 subpoenas directed to various attorneys and participants in VBF's bankruptcy, and certain banks (notice issued on Feb. 12) have been served.  The notice indicated that these subpoenas bear a return date of February 26.  These subpoenas appear directed at plan confirmation and not the allegations in the district court case. Also, these subpoenas seek privileged communication and personal financial records. We intend to file a motion to quash these subpoenas on Monday. So pursuant to local rule, **please advise** whether these subpoenas have been served, will be withdrawn, **or VBF's position on our objections.**

[Dkt. 37-11 at 1, emphasis added.] The Motion followed the next business day, Monday February 25, **without Defendants waiting for VBF's counsel to "advise" on those Subpoenas, including "VBF's position on our objections."**   Therefore, Defendants' own Motion establishes their own violation of Local Rule 37 and/or Local Rule 7(k).

## III.   <u>LAW AND FURTHER ARGUMENT</u>

### A.   **Defendants' Failure To Meet And Confer Is Fatal To Their Motion**

Local Rule 37 is stated in mandatory terms, "**[n]o motion relating to discovery** may be filed" without an affidavit averring to a genuine meet and confer or that the same was impossible.  Although the title of Local Rule 37 pertains to "Motions to Compel," the body of the rule thus applies to all discovery motions, such as Defendants' Motion.

Therefore, Local Rule 37 should be applied to the Motion, and the Motion should be rejected because Defendants violated the rule.  This is consistent with the letter and spirit of Local Rule 37. The current discovery cutoff is mid-October, this case involves the loss of an approximate $81,000,000 principal amount by VBF, and therefore it is important for the Parties to adhere to the meet and confer requirement going forward in the case, so as to avoid inundating

the Court with motions such as Defendants' in the future. *See e.g., Hansen v. Vista Outdoors Inc.*, No. 17-CV-3002-LTS, 2017 WL 1380457, at *5 (N.D. Iowa Apr. 17, 2017) ("Before the parties can file discovery motions with the Court, they must meet and confer in good faith with each other in an attempt to resolve the dispute without court intervention."); *Williams v. Central Transport Intern., Inc.*, No. 4:13-CV-2009, 2014 WL 6463306, at *2 (E.D. Mo. Nov. 17, 2014) ("The meet-and-confer requirement is 'not an empty formality.' 'Good faith' requires 'a genuine attempt to resolve the discovery dispute through nonjudicial means,' and 'conferment' requires the parties 'to have had an actual meeting or conference.'" (citations omitted)); *Rasch v. Tyson Fresh Meats, Inc.*, No. 16-CV-3006-LTS, 2017 WL 3091458, at *3 (N.D. Iowa Feb. 27, 2017) (attempting a meet and confer a mere hours before a discovery motion filing failed to provide the parties a realistic opportunity to "meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention."). Defendants failed to have a genuine meet and confer whether Local Rule 7(k) or Local Rule 37 is applied.

### B.    Alternatively, The Subpoenas Are Permissible In Scope

Defendants have sought to quash the Subpoenas, in their entirety, on only two bases: (1) the Bank Subpoenas seek information related to Defendants' personal bank accounts without any time limitation; and (2) the other Subpoenas seek information related to the Bankruptcy Case. Defendants in no way seek to modify the Subpoenas as to the few requests that they actually find objectionable, an omission that is especially glaring as to the non-Bank Subpoenas. Indeed, these scope issues could have been easily resolved by reasonable counsel, but it must be addressed here due to Defendants' violation of the meet and confer requirements.

"The general legal principles that apply to the scope of discovery in the course of federal civil litigation are well-known. The Federal Rules of Civil Procedure authorize broad discovery." *Cornell v. Jim Hawk Truck Trailer, Inc.*, 298 F.R.D. 403, 406 (N.D. Iowa 2014) (denying motion

11

to quash subpoenas and citing Fed.R.Civ.P. 26(b)(1)) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Id.* (citations omitted). "Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case." *Id.* (citations omitted). "The party resisting production of requested information bears the burden of establishing the lack of relevancy, unless that lack of relevancy is obvious." *Id.* (citations omitted). *See also Weiss v. Amoco Oil Co.,* 142 F.R.D. 311, 314 (S.D. Iowa 1992) ("The spirit of Rule 26(a) of the Federal Rules of Civil Procedure is that discovery be self-effectuating, without need to resort to the court, and that its scope be liberal, extending to all matters reasonably calculated to lead to admissible evidence. This standard is well-ensconced, and is generally known and understood by civil practitioners (citation omitted). Streebin has not met her burden of demonstrating that the information sought is both irrelevant and that it is not reasonably calculated to lead to the discovery of admissible evidence.")

### 1.     The Non-Bank Subpoenas Are Entirely Permissible

Defendants have supplied information to the Creditors Committee counsel for the Challenge Notice, which made some of the same allegations that Defendants make in <u>this case</u>, and that sought a dismissal of <u>this case</u>.   Defendants forget the broad scope afforded for discovery under the Federal Rules.   Each of the Non-Bank Subpoenas contains seven requests. Defendants address only those requests that they feel "crossover" to the Bankruptcy Case, but they cite no law for their implicit proposition that discovery requested in one case cannot be

sought in that case because that discovery may also be sought in another case.[5]  Further, VBF has

not sought the discovery sought in the Subpoenas in the Bankruptcy Case, which is currently

scheduled to proceed to final confirmation of VBF's Plan of Reorganization in April 2019.

Regardless, the requests for communications between Defendants and the Bankruptcy

Attorneys are reasonably calculated to lead to the discovery of admissible evidence.  Defendants

clearly communicated with the Bankruptcy Attorneys about <u>this case</u>.  It is therefore permissible

for VBF to discover all such communications, and any other attendant documents.  This is not to

mention those documents responsive to VBF requests to the Bankruptcy Attorneys that have

nothing to do with their communications with the Defendants.

Additionally, one of the requests of VBF's non-Bank Subpoenas is for <u>any form</u> of

witness statements relating to this case, which obviously would include any statements made by

the Defendants regarding VBF.  The Bankruptcy Attorneys have no basis to withhold such

documents, merely because they may be in the hands of those attorneys.  *See e.g., Schipp v. Gen.*

*Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) ("[A]ny verbatim non-party witness

statements are neither privileged nor work product and must be produced."); *Murphy v. Kmart*

*Corp.,* 259 F.R.D. 421, 426-32 (D.S.D. 2009) (affidavits by third-party witnesses discoverable

because affidavits, by their very nature, are statements of facts within the personal knowledge of

the witness-affiant); *Matter of Am. River Transp. Co.*, No. 11-CV-523, 2017 WL 1429856, at *3

(E.D. Mo. Apr. 20, 2017) (ordering disclosure of signed non-party witness statements); and,

*Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Prods., Inc.,* 140 F.R.D. 373,

378-79 (E.D. Wis. 1991) (factual statements of non-party witnesses did not fall within scope of

---

[5] VBF makes no admission regarding discovery in the Bankruptcy Case.

work product doctrine even though the statements were secured by defense counsel in anticipation of litigation).

> 2.      **The Bank Subpoenas Are Permissible**

Again demonstrating their shotgun approach, Defendants seek to quash the entirety of the Bank Subpoenas even though some of the requests of those Subpoenas seek <u>VBF's own bank records</u> and any other documents <u>regarding VBF</u>.  Defendants object to the Bank Subpoenas as seeking "personal and confidential information," an objection that can only apply the requests of the Bank Subpoenas for Defendants' personal bank records.  VBF is also entitled to such records as further detailed in this section.

> a.      **VBF Is Entitled To Defendants' Bank Records Because Defendants' Misconduct Was Financial In Nature, Bank Records Are Reasonably Calculated To Lead to Admissible Evidence On Such Misconduct, And, Alternatively, Because Defendants Owed VBF Fiduciary Duties.**

Again, this lawsuit involves the Defendants' misappropriation and other squandering of a staggering sum of money, about $81,000,000.  Defendants do not deny that they were fiduciaries to VBF, and that the nature of the misconduct alleged by VBF against them is financial.  "One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts."  *Giebink v. Giebink*, No. 08-CV-4184, 2009 WL 1350805, at *5 (D.S.D. May 12, 2009).  In *Giebank,* the court granted plaintiffs' motion to compel financial information over defendants' objections that the same were confidential and that plaintiffs had no right to see the same.  *Id.* at *5.  The court further explained:  "the crux of plaintiffs' claim of breach of fiduciary duty against Joan has to do with Joan's management of the assets of the trust. Documents relative to those assets are clearly relevant to plaintiffs' claims. It is doubtful that plaintiffs could prove their breach of fiduciary duty claim without the documents."  *Id.*

Other courts have agreed, regardless of whether or not defendants owed fiduciary duties

to the party seeking discovery of bank records or other personal financial information. *See e.g.,*

*Sierra Rutile Ltd. v. Katz*, No. 90-CV-4913, 1994 WL 185751, *4 (S.D.N.Y. May 11, 1994)

("While cognizant of the fact that the subpoenas [issued to financial institutions and seeking

personal financial information] intrude on personal financial affairs ..., I am unable to conclude

that the personal intrusion is so great that it outweighs defendants' right to pursue relevant

material through the subpoenas in issue"); *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y.

1990) ("The Court determines that whatever privacy interests the moving defendants have in the

material sought do not outweigh the plaintiff's right to pursue relevant material that the

subpoenas [issued to financial institutions for records relating to defendants and their family

members] must be quashed"); *Larson Mfg. Co. of S. Dakota, Inc. v. W. Showcase Homes, Inc.*,

No. 16-CV-4118, 2017 WL 4351459, at *3 (D.S.D. Sept. 29, 2017) (bank records relevant where

allegations that owner of defendant entities converted monies intended for plaintiff for his own

personal use) ("As pointed out in the FACTS section of this opinion, *supra*, plaintiffs have made

multiple allegations that defendant Thomas has converted monies to his own personal use that

were supposed to be routed to plaintiffs. Thomas is the principal agent and owner of both

AMHG entities. Thus, the court finds the US Bank records are relevant to plaintiffs' claims.");

*Peoples Nat'l Bank, N.A. v. Mehlman*, No. 15-CV-996, 2016 WL 3268761, at *2 (E.D. Mo. June

7, 2016) (bank records of defendants relevant and discoverable where complaint contained

allegations that individual defendant fraudulently induced plaintiff into extending loan and all

defendants engaged in fraudulent transfers to prevent plaintiff from collecting on judgment)

("Here the Court concludes that given the nature of this lawsuit, the financial statements, tax

returns, accounting records, records of consideration received by one Defendant from another,

bank records, and (capital) contributions made to MSM Homes and MHR Realty by other

Defendants are relevant and generally discoverable. . . The Court notes that a protective order is in place in this case pursuant to which Defendants can designate as "confidential," documents they believe contain confidential information."); and, *Blake v. Rozowicz*, No. 09-CV-942, 2010 WL 11565154, at *2 (N.D.N.Y. July 29, 2010) (defendant's personal bank records are relevant in light of allegations that "all of [corporation's] property was transferred to [defendant] personally in the months leading to [corporation's] dissolution"); *Domanus v. Lewicki*, 891 F. Supp. 2d 929, 934 (N.D. Ill. 2012) (bank records relevant to alleged scheme to defraud in shareholder derivative suit); and, *Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1370 (S.D. Fla. 2009) ("The Court agrees with Plaintiffs, that under the circumstances presented, the bank account records sought are highly relevant to this action and reasonably calculated to lead to the discovery of admissible evidence in that such records may shed light on how the funds given White Oak were used and whether they were used for purposes consistent with the terms of the subscription agreement.").

Here too, Defendants, fiduciaries to VBF, have a duty regardless of discovery obligations to fully account to all money in and all money out of VBF during the Defendants' reign. Even without such fiduciary status, however, VBF would be entitled to discover bank records. VBF requires Defendants' bank records to fully trace that money to its current location, and to potentially find other avenues through which Defendants misappropriated VBF's funds.

Also, VBF seeks a constructive trust in its Complaint, which provides for the tracing of misappropriated funds. *See e.g., Cox v. Waudby*, 433 N.W. 2d 716, 718 (Iowa S.C. 1988) ("As a general proposition, a party in whose favor a constructive trust has been established may trace the property to where it is held and may reach whatever has been obtained through the use of it, including profits or income generated through its use."); *Frink v. Comm'l Bank of Emmetsburg*,

195 N.W. 513, 517 (Iowa S.C. 1923) (applying same rule, but pre-judgment, and allowing for the tracing of fraudulently misappropriated funds through a constructive trust theory); and *Benson v. Richardson*, 537 N.W.2d 748, 760–61 (Iowa S.C. 1995) ("A constructive trust is an equitable remedy courts apply to provide restitution and prevent unjust enrichment…Three types of constructive trusts exist: (1) those arising from actual fraud; (2) those arising from constructive fraud; and (3) those based on equitable principles other than fraud.").

**b.      Alternatively, VBF Is Entitled To Defendants' Bank Records Because VBF Seeks Punitive Damages Against Defendants.**

Further, VBF has sought punitive damages against Defendants and therefore information about Defendants' net worth, as would be contained in bank records, is discoverable.  In *N. Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D.N.D. 2004), the court held that a plaintiff seeking punitive damages is entitled to engage in discovery relating to the defendant's financial worth in advance of trial:

> The discovery of financial records of a defendant in order to prepare a case on the issue of punitive damages is permissible. *See Bessier v. Precise Tool & Engineering Co., Inc.*, 778 F.Supp. 1509, 1514 (W.D.Mo.1991)… It is well-established that under federal law, evidence of the defendants' financial worth is relevant to a claim for punitive damages. Such evidence is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded. *United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 932 (8th Cir.1999).

The *Allen* Court further noted that "[a]ny concerns relative to the disclosure of financial information obtained during discovery can be adequately safeguarded by the issuance of a protective order and the plaintiffs have clearly indicated they are willing to so stipulate." *Id.*

**c.      VBF Would Be Agreeable To A Reasonable Protective Order**

VBF would be agreeable to a date limitation on the Bank Subpoenas of January 1, 2012 through the present.  Defendants formed VBF in or around September 2014, but VBF seeks discovery dating back to January 1, 2012 so it can ascertain Defendants' financial status prior to

that time to assess Defendants' current net worth, and also Defendants' financial practices.  VBF, however, will be agreeable to any other reasonable temporal limitation. This is obviously an issue that could have been resolved by a meet and confer.  Further, there is not yet any protective order entered in the case, but VBF would agree to the same.

### C.      No Privilege Log Was Provided And Therefore No Privilege Can Be Claimed

Defendants claim a privilege with HMB as their former counsel, and with Beecher by virtue of Defendants' alleged membership on the AHC, which also was represented by Beecher. [Dkt. 37-1 at 9.]  Defendants also claim a "common interest privilege" among G&M, FishDish, Turk, and Lockard.  Defendants, however, provided no privilege log, which is required as set forth in *Baranski v. U.S.*, 283 F.R.D. 520, 524-25 (E.D. Mo. 2012):

> The purpose of Rule 45's requirement of a privilege log is to allow the subpoenaing party whose discovery is restricted by a claim of privilege to evaluate whether the claim of privilege is justified, and to resist if it seems unjustified…To comply with Rule 45, the party claiming privilege must necessarily provide a copy of its privilege log to the subpoenaing party.

*See also Bredemus v. Int'l Paper Co.*, No. 06-CV-1274, 2008 WL 11348492, *6 (D. Minn. Aug. 22, 2008) (requiring the submission of a "full privilege log" to the subpoenaing party); *Rakes v. Life Investors Ins. Co. of Am.*, No. 06-CV-99, 2008 WL 429060, *4 (N.D. Iowa Feb. 14, 2008) ("Defendant has the initial burden of proving a factual basis establishing the applicability of the privilege."); *St. Paul Reinsurance Co. v. Commercial Financial Corp.,* 197 F.R.D. 620, 627 (N.D. Iowa 2000) (party asserting a privilege meets its burden "when it produce[s] a detailed privilege log stating the basis of the claimed privilege for each document in question").  Courts have the authority to hold that a party waives privilege when it does not adequately assert the same, admittedly an extreme sanction.  *Id.; Northwest Airlines, Inc. v. Phillips*, No. 07-CV-4803, 2009 WL 10687806, *3 (D. Minn. Jan. 16, 2009).

Defendants not only violated the well-known requirements of providing a privilege log.

HMB clearly claims to have had only "limited" representation of Defendants for what appears to be a short time period, as Defendants claim that representation lasted only from November 8, 2018 through December 18, 2018 (the day before the December 19, 2018 Challenge Notice, no coincidence), when it was underlined terminated.  (*See* Exhibit D; Motion, Dkt. 37-1 at p. 3.)  Therefore, HMB's communications with the Defendants outside of those dates would not be privileged.  Additionally, it is interesting to VBF that Lockard's and FishDish's cooperation with the Defendants, the ones who misappropriated or squandered about $81,000,000, is so entrenched that they are now claiming a joint privilege.  This circumstance makes the need for a privilege log all the more necessary.  Was such cooperation ongoing during Defendants' three-year reign over VBF (roughly September 2014 through in or before January 2018)?  The Subpoenas seek information that pre-date the Bankruptcy Case (which started in September 21, 2018).  It would even more significant if Defendants are claiming a joint privilege with Lockard and FishDish dating back to September 2014 or earlier.

Regardless, this not only warrants the denial of the Motion.  Under the circumstances, including Defendants' abject failure to meet and confer, their wholesale moving to quash every request of the Subpoenas without regard to modifying the same, and their failure to provide a privilege log clearly warrant the extreme sanction of waiver.  Otherwise, Defendants will have been rewarded for their game-playing in willful violation of the most basic rules.

**D.     VBF Is Entitled To Recovery Of Its Reasonable Attorneys' Fees**

Defendants failed to meet and confer, failed to proffer a privilege log, and have sought to quash each and every request of all ten Subpoenas even though Defendants' arguments clearly do not address all requests, even if such arguments had merit.  Under these circumstances, and to gain Defendants' compliance with discovery rules in the future, Defendants should be required to pay all of Plaintiff's reasonable attorney's fees in resisting the Motion. *See e.g., American Seeds,*

*LLC v. Watson,* No. 10-CV-1012, 2010 WL 3843002, *1-2 (D.S.D. Sept. 27, 2010) (the courts have "inherent authority to impose sanctions that are necessary to deter frivolous filings and ensure compliance with subpoenas issued in the Court's name" and assessing attorney's fees against movant on unsuccessful motion to quash subpoenas) and *citing U.S. v. Gonzalez-Lopez*, 403 F. 3d 558, 564 (8th Cir. 2005); *Rotoworks Int'l Ltd v. Grassworks USA, Inc.,* No. 07-CV-5009, 2007 WL 1364911, *1 (W.D. Ark. May 8, 2007) (sanctioning movant for protective order in part due to the failure to hold a genuine meet and confer before filing the motion: "The lack of cooperation evidenced by such actions is not favored by the Court. The Court again emphasizes the duty of the parties to fully cooperate in the discovery process and to proceed, in good faith, where reasonably able, without court intervention."). If allowed, Plaintiff will submit a fee petition.

**WHEREFORE**, Plaintiff respectfully requests that the Court denies the Motion [Dkt. 37-1], awards Plaintiffs all of its reasonable attorney's fees in resisting the Motion, and for such other and further relief deemed just.

**VEROBLUE FARMS USA, INC**.

/s/ Robert H. Lang
One of its Attorneys

Robert H. Lang
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500 (main)
rhlang@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com

Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough AT0013443
Davis, Brown, Koehn, Shors & Roberts, P.C.
215 10th Street, Suite 1300
Des Moines, IA 50309
515-288-2500
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrownlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| VEROBLUE FARMS USA, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-03047-LTS |
| ) | |
| LESLIE A. WULE, BRUCE A. HALL, ) | |
| JAMES REA, JOHN E. REA, AND KEITH ) | |
| DRIVER,, ) | |
| Defendants.. ) | |

## NOTICE OF FILING

**PLEASE TAKE NOTICE** that on March 11, 2019, we caused to be filed with the Northern District of Iowa, Central Division, **Plaintiff's Response to Certain Defendants' Motion to Quash Subpoenas or for Protective Order**, a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

VEROBLUE FARMS USA, INC

/s/ Robert H. Lang
One of its Attorneys

| | |
|---|---|
| Matthew E. Laughlin AT0004515 | Robert H. Lang |
| Holly M. Logan AT0004710 | Renato Mariotti |
| Katelynn T. McCollough AT0013443 | Caroline Pritikin |
| DAVIS, BROWN, KOEHN, SHORS & | Eileen Boyle Perich |
| ROBERTS, P.C. | Thompson Coburn LLP |
| 215 10th Street, Suite 1300 | 55 East Monroe, 37th Floor |
| Des Moines, IA 50309 | Chicago, IL 60603 |
| 515-288-2500 | 312-346-7500 (main) |
| mattlaughlin@davisbrownlaw.com | rhlang@thompsoncoburn.com |
| hollylogan@davisbrownlaw.com | rmariotti@thompsoncoburn.com |
| katelynnmccollough@davisbrownlaw.com | cpritikin@thompsoncoburn.com |
| | eboyleperich@thompsoncoburn.com |

## <u>CERTIFICATE OF SERVICE</u>

Arianna Thornton, a non-attorney, hereby certifies under penalties as provided by law, that on March 11, 2019, she caused a true and correct copy of the foregoing **Plaintiff's Response to Certain Defendants' Motion to Quash Subpoenas or for Protective Order** to be served upon counsel of record via ECF system of Iowa:


/s/ Arianna Thornton