**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| VEROBLUE FARMS USA, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-03047 |
| ) | |
| LESLIE A. WULF, *et al*., ) | |
| Defendants. ) | |

**PLAINTIFF'S RESISTANCE TO "NONPARTIES" (NELSONS') MOTION TO QUASH
SUBPOENAS OR FOR PROTECTIVE ORDER**

Plaintiff, VeroBlue Farms USA, Inc. ("VBF") for its Resistance to the Motion ("Motion") to Quash Subpoenas ("Subpoenas") or for Protective Order [Dkt. 41-1] submitted by "Nonparties" Grace Nelson, Mark Nelson, Jeff Nelson, Jerita Nelson, Korrine Nelson, and SNB Farms Partnership (individually, "Grace," "Mark," "Jeff," "Jerita," "Korrine" and "SNB" or collectively, the "Nelsons") states as follows:

**I.   INTRODUCTION**

The Nelsons are critical witnesses in this case. In 2014, they sold their Iowa-based fish farm to the Defendants. That fish farm became VBF. The Nelsons are VBF shareholders and they have been VBF employees for years. The Nelsons unfortunately have taken a starkly similar approach to the Subpoenas directed to them as the Defendants have taken to the ten subpoenas directed to them that are the subject of Defendants' pending Motion to Quash or for Protective Order [Dkt. 37-1] ("Defendants' Motion"), to which VBF has responded. [Dkt. 42.] The Nelsons repeat the tactics and arguments of the Defendants, such as: (1) the Nelsons failed to conduct any meet and confer before filing their Motion, requiring denial of their Motion for that reason alone; (2) the Nelsons seek to quash all of the Subpoenas to them, in their entirety, while raising a relevance objection addressed to only several of the requests as going to the

Bankruptcy Case[1]; and (3) the Nelsons claim privilege, but provide no privilege log.  VBF will not repeat all of the arguments of its Resistance to Defendants' Motion that also go to the Nelsons' Motion, but will only summarize them here.  The Nelsons also raise an objection that the Subpoenas are overbroad and unduly burdensome, something that a genuine meet and confer would have resolved (and the requests are not overbroad).  For the reasons set forth in this Resistance, VBF not only seeks a denial of the Motion, but also all of its reasonable attorney's fees in resisting the Motion.

As stated, the Nelsons repeat the Defendants' meritless privilege objections. Therefore, VBF will also expose how the Nelsons' and Defendants' claims of privilege are based on misrepresentations either to this Court or the Bankruptcy Court in VBF's pending Bankruptcy Case.  In this case, the Nelsons and the Defendants (collectively, the "Movants") claim that the Defendants are members of the so-called "Ad Hoc Equityholder's Committee" ("AHC") in the Bankruptcy Case, and therefore are entitled to shield communications between the Defendants/their counsel and AHC counsel (which includes Horwood Marcus and Berk, "HMB," and Beecher, Field, "Beecher").  In the Bankruptcy Case, however, the AHC has asserted, under oath, to the Bankruptcy Court that the Defendants are not AHC members.  It appears that Movants are not telling the truth to at least one court. As explained further on March 13, 2019, AHC counsel John Guzzardo of HMB admitted as follows about the claims of privilege by Defendants and the Nelsons in this case:  "**The information or the statements in the …District Court Motion to Quash are not correct.**"

## II.    BACKGROUND OMITTED BY THE NELSONS

Pursuant to a December 31, 2014 Purchase Agreement, Jeff, Jerita, Mark, and Korrine,

---

[1] This Resistance will use all defined terms of VBF's Resistance to Defendants' Motion unless otherwise stated.

sold their fish farm business (including assets of their entity, SNB) to VBF. (Exhibit A, McCowan Declaration, ¶ 1.)  Thereafter, Mark worked for VBF as its Director of Special Projects from on or about January 10, 2015 through on or about October 21, 2018.  (*Id.* at ¶ 2.)  Jeff worked for VBF in "Special Projects," and Grace worked for VBF as its Production Quality & Planning Manager, during roughly the same time period.  (*Id.*)  Mark, Jeff, and Grace are also VBF shareholders.  (*Id.*)

During VBF's early years, Mark promoted VBF and its technology, which ultimately proved to be an utter failure.  (*Id*. at ¶ 3, citing a presentation given by Mark referencing VBF, and making certain representations regarding VBF metrics that proved untrue, starting at the "End Result: Exceeding Expectations" section of the presentation, just after the 17:08 mark: https://www.youtube.com/watch?v=XA609zQBAo8.)  The Defendants misrepresented this technology to investors and others.  (*Id.*)

Mark also has significant other information about the Defendants' fraud. For example, Mark's daughter, Kelsey Clarken ("Kelsey"), submitted an affidavit in which she corroborates the Defendants' fraudulent hiring of Defendant Wulf's daughter, Christine Gagne, an illegal alien improperly placed on VBF's payroll, and Kelsey avers that Mark knew all about this situation. (Exhibit B, Kelsey's Affidavit, ¶¶ 6-14.)  (This scheme is alleged in VBF's First Amended Complaint, Dkt. 9 at ¶¶ 29-32.)  Kelsey also averred to the Defendants' manipulation of data concerning key aquaculture (VBF's industry) metrics, one of the schemes employed by Defendants to accomplish their $81,000,000 fraud.  (Exhibit B at ¶ 18.)  Kelsey also testified to the Defendants' other improper expenditures of VBF funds.  (*Id*. at ¶¶ 20-21.)  Kelsey corroborates her father Mark's knowledge about Defendants' other businesses, and that he has been asked by Defendants to partner with Defendants.  (*Id.* at ¶ 22.)

Kelsey's affidavit testifies to one of the Defendants' repeated tactics, to attack those who were trying to expose Defendants' misconduct. (*See e.g.*, Exhibit B at ¶ 14.) The Defendants did so again, targeting a representative of Alder Aqua, Ltd. ("Alder"), the single largest victim of Defendants' fraud (losing tens of millions of dollars), when Alder began exposing Defendants' fraud. The Defendants defamed Alder's representative by unfairly accusing him of sexual harassment, disparagement that was exposed as false by Mark, Grace, Jeff, Korrine, Jerita, and other Nelsons in their March 2018 letter, portions of which state as follows (referring to the Defendants as the "Dallas Group" or "con artists"):

> We are writing this letter to convey messages to you that we feel like over the course of the last two years, have been lost in translation, or perhaps were never translated at all. As a family who feels the pains and joys of being in business together so deeply, we felt we needed to reach out to you in hopes that you will understand our sincerity and truthfulness. **Nothing is more painful than feeling like your name, your dignity, and your dedication, has been conformed to a group of con artists**….
>
> **We truly feel that the Dallas group lied, manipulated, and took advantage of not only our family's good will, but the good will of our many friends and community members who invested their hard-earned money into this business.**
>
> … From very early on in our venture with the Dallas group, we felt our knowledge, information, and expertise was ignored, dismissed, and even hid from you, your team, and members of the board. **However, it wasn't until after these individuals were terminated that we fully understood the magnitude of their corruption and deceitfulness.** It was a betrayal unlike any other.
>
> It's important for us to place emphasis on the fact that because we live in a small, rural community, it has been and will be our reputation on the line. To many, VeroBlue Farms is the Nelson family. When bills are not paid to local vendors, these businesses call Jeff or Mark. The Nelsons are a century old farm in Hamilton County, meaning many of these relationships go back over decades and decades. Unfortunately, it won't be the Dallas group who must worry about rebuilding trust and repute amongst the community, it will be our family. We've built such strong relationships with our employees and co-workers because it is what comes natural for us. When we bring these people into our homes for holidays, spot them a couple hundred dollars to make it until payday, or simply treat them like they are a part of our family, it is because we genuinely care. VeroBlue Farms has employed some of the hardest, most dedicated workers a

company could have. As we let more and more employees go, we are mourning with them, but also mourning the loss of something we all felt so proud to call our own. Many of these people uprooted their whole lives to move to Iowa to accomplish a common dream. **Just like us, they were lied to and manipulated by the Dallas group.** Just like the Nelsons, they were ignored, pushed aside, and even fired for wanting to convince the Dallas partners of the VeroBlue Farms business model reality.

**Mark's personal statement**: When I was in Australia with Jens, I was able to have a one on one conversation in the lobby at the hotel with Jens. During this conversation, Jens and I spoke specifically about Jens questioning Grace while in the Iowa office, which had happened a few weeks previously. I felt that Jens and I had come to a mutual and sincere understanding of what had happened. I felt like the conversation resulted in both of us truly respecting each other's point of view. In the weeks that followed the Australia trip, the Dallas group pursued a sexual harassment case against Jens. As I stated in my deposition, I never witnessed or heard Jens say anything inappropriate to the females in the Iowa office. **Knowing what I know now, I deeply regret being blinded by the fact that the Dallas group was using this situation to hide their deceits.**

**Grace's personal statement**: An hour prior to Jens speaking with me in private in the Iowa office, I was pulled aside by Ted Rea and Eric Simms. The purpose of their conversation was to inform me that Jens was a "sexual predator" and that I must be aware of this and careful to let him near me. I was terrified. They told me he was a professional interrogator. I truly believe that this situation skewed my perception of Jens' character. I know I was manipulated and tricked so that everyone else would be distracted from the bigger and more pressing issue. I deeply wish I could go back and change my perception of the situation knowing what I know now. It has never, ever been in my nature to maliciously go after someone else's reputation and I believe many can attest to that fact. My sister, Kelsey, knew from the very beginning this was a diversion tactic by the Dallas group, but felt her reputation and job would be in jeopardy if she spoke up. Especially, after she was required to fire Randi Hagen in the week leading up to the board's visit. I believe Jens wanted some honest answers that he knew were being hid from him.

(Exhibit A at ¶ 5, Attachment A-1) (emphasis added). These harassment allegations are irrelevant to VBF's case, and have nothing to do with the Defendants' misappropriation and squandering of about $81,000,000 of debt and equity investment in VBF (except to show Defendants' tactics when they fear exposure of their misconduct). Defendants' shamefully repeat this defamatory allegation in their filings in this case. [*See e.g.*, Dkt. 37-1 at 2, where Defendants' blame their departure from VBF on their false allegations, rather than their loss of

$81,000,000; Dkt. 19-1 at 2, same allegation.] But exposure of Defendants' scorched-earth tactics is useful to show Defendants' *modus operandi*, and includes the Defendants' attempted manipulation and subterfuge in the Bankruptcy Case, as further documented in VBF's Resistance to Defendants' Motion. [Dkt. 42 at 4-6.]

There is other support for the Nelsons' extensive knowledge of the rise and fall of VBF, too voluminous to list here. Indeed, the Nelsons have perhaps been involved in the VBF fiasco longer than anyone.

In December 2018, VBF counsel was set to informally interview the Nelsons, with their counsel. (*See* Exhibit C, emails between counsel.) Unfortunately, that interview never occurred. Instead, the Nelsons, through counsel, initially agreed to provide information to VBF, cooperatively, in response to subpoenas in this case. (*See* Exhibit D, further counsel emails.) The Nelsons' counsel even agreed to accept service of the Subpoenas. (*Id.* where counsel states: "If you have any formal requests of Mark or Jeff you may direct them to me and we will do our best to respond promptly.") Then, counsel initially attempted to renege on this agreement to accept service of the Subpoenas. (*See* Exhibit E.) Counsel to the AHC advised VBF that Mark and Jeff joined the AHC in February 2019. (*Id.* at ¶ 4.) After that event, the Nelsons changed their tune and now refuse to comply with their Subpoenas. This paints the picture of witnesses who have something to hide.

### III. THE SUBPOENAS

The Subpoenas request far more than the Nelsons' communications with Defendants' counsel or counsel to the AHC, seeking all documents and communications relating to VBF, regarding VBF's current complaint ("Complaint"), all documents and communications with Defendants, all witness statements (in any format), all documents and communications with

current or former VBF employees, and any audio-visual recordings or data relating to VBF (and it is quite likely that the Nelsons will have a lot of audio-visual data given their extensive involvement with VBF).

## IV.     THE NELSONS' FAILURE TO MEET AND CONFER IS FATAL TO THEIR MOTION

The Nelsons filed their Motion at approximately 3:54 P.M. on March 1, 2019. [Dkt. 41-1.]  There was no attempt to meet and confer until just after noon that same day, where their counsel left a voice-mail and email for VBF counsel.  (Exhibit F, counsel's email.)  Counsel's email establishes the Nelsons' violation of meet and confer requirements, and unfortunate duplication of the Defendants' tactics:

> Rob:
>
> This email follows my voicemail to you a few minutes ago. My firm represents non-parties SNB Farms Partnership, Grace Nelson, Mark Nelson, Jeff Nelson, Jerita Nelson, and Korrine Nelson with respect to the subpoenas issued by you on behalf of your client, VeroBlue Farms USA, Inc. (VBF) in the Northern District of Iowa litigation, Case No. 18-cv-03047. As indicated on my voicemail, we have drafted a motion to quash the subpoenas, along similar grounds as the motion to quash filed by Bruce Hall, et al. on February 24, 2019 (Dkt. No. 37).
>
> Pursuant to Local Rule 7(k), I am reaching out to personally confer, and request that VBF withdraw the subpoenas to my clients. If you would like to discuss, please reach out to me directly at one of the numbers below. We plan to file our motion shortly after 3:00 pm this afternoon.

(Exhibit E.)

VBF's position that Local Rule 37 applies here is set forth in its Resistance to Defendants' Motion [Dkt. 42 at 10-11].  Local Rule 37 specifically addresses and rejects half-hearted meet and confer attempts such as the Nelsons': "[a]n exchange of written communications or a single telephone message will not, by itself, satisfy the requirements of this section." That is precisely all the Nelsons did here, "a single telephone message" and "exchange

- 7 -

[of one] written communication[]," a mere hours before filing the Motion. Regardless, the Nelsons violated Local Rule 7(k) even if Local Rule 37 did not apply to the Motion.

The obvious implication is that the Nelsons, given their wealth of knowledge and discoverable information, ignored meet and confer requirements because they did not want to produce anything. Regardless, Local Rules 7(k) and 37 require no inquiry into the Nelsons' motive for failing to adhere to well-known requirements to <u>genuinely</u> meet and confer. The undisputed fact is that they did not do so, requiring a denial of the Motion for this reason alone.

### V. <u>THE NELSONS' RELEVANCE OBJECTION IS WITHOUT MERIT</u>

The Nelsons never actually claim in their Motion that they do not possess data responsive to the Subpoenas, including information that has nothing to do with their communications with Bankruptcy counsel, nor could they do so in good faith. The Nelsons' first argument is similar to Defendants' in their Motion, that <u>all</u> requests of the Subpoenas seek irrelevant information and VBF is trying to seek discovery for the Bankruptcy Case through this case. That argument is addressed by VBF in its resistance to Defendants' Motion. [Dkt. 42 at 4-6 and at 11-14.] The Nelsons' relevance argument, given their undisputed and <u>central</u> involvement in VBF from "cradle to grave," is as meritless as the Defendants' same argument.

Worse yet, the Nelsons' Motion contains demonstrably false allegations. For example, the Nelsons represent to the Court that "[t]he only vague reference to the District Court case" in the Subpoenas "is in a broadly worded request for 'all communications relating to the Complaint." [Dkt. 41-1 at 7.] Besides that referenced request, which is not vague since it is directed at the well-pleaded Complaint (Request No. 2), the following requests seek documents without reference or limitation to the Bankruptcy Case: No. 1 (relating to VBF), No. 3 (relating to Defendants), No. 4 (communications with Defendants' counsel), No. 7 (witness statements),

No. 15 (communications with current or former VBF employees), and No. 16 (audio-visual recordings relating to VBF). [*See e.g.* Dkt. 41-2 at 3-4, and the Subpoenas all contain the same requests.] Like the Defendants, the Nelsons' "Bankruptcy Case objection" has no applicability to these requests. And, the Nelsons did not even join the AHC until February 11, 2019, and therefore the "Bankruptcy Case objection" could only be limited to documents generated after that time period.

Regardless, the Bankruptcy Case objection is frivolous, as addressed in VBF's Resistance to Defendants' Motion. [Dkt. 42 at 4-6 and at 11-14.] The AHC has schemed with Defendants about <u>this case</u>. The reality is that the Nelsons, the AHC, and the Defendants all have something to hide, which is why they are so desperately and spuriously fighting to avoid any production.

## VI.     THE SUBPOENAS ARE NOT OVERBROAD

The Nelsons generally assert that the Subpoenas (issued on February 15 with a March 1 compliance date) did not provide sufficient time to respond, seek sensitive documents, and do not have time limitations. None of these objections are well-grounded, and none would support the wholesale quashing of the Subpoenas in their entirety. Further, none of these objections would have survived a genuine meet and confer.

If the Nelsons wanted a reasonable extension to respond, they could have asked for that extension. They never did so because they are not interested in good faith compliance, just delay and obfuscation. Similarly, if the Nelsons are concerned about confidentiality, they could have sought an agreed protective order from VBF, but they never did so for the same reasons. Finally, the absence of time limitations is of no import. VBF was only founded in September 2014 [Dkt. 42 at 17] and therefore there is a natural time limitation on the requests.

## VII. THE NELSONS ALSO WAIVED PRIVILEGE OBJECTIONS

Like the Defendants, the Nelsons chose to ignore the well-known process to preserve privilege that would have started with their submission of a privilege log instead of a Motion to Quash partly based on "privilege." [Dkt. 42 at 18-19.] Accordingly, the Nelsons waived privilege. [*Id.*] Further, the Defendants' and the Nelsons' assertion of privilege is frivolous, and even if not frivolous could only apply to a time period of somewhere in or well after December 2018 through the present. What about the other four to five years of information sought by the Subpoenas? The Motion consistently ignores this question since the vast majority of the Subpoena requests seek documents previous to this short window of alleged privileged communications.

## VIII. FURTHER, THE MOVANTS HAVE APPARENTLY MISREPRESENTED FACTS TO SUPPORT THEIR MERITLESS PRIVILEGE CLAIMS

In Defendants' Motion, Defendants assert that that the Defendants are AHC members to shield communications by and between the Defendants/their counsel and AHC counsel, the Creditors' Committee Counsel, and other members of the AHC (as the subpoenas attacked in the February 24, 2019 Defendants' Motion include those to AHC and Creditors Committee Counsel and Turk, Lockard, and FishDish, who are alleged AHC representatives). Thus, Defendants assert the following in Defendants' Motion, that Defendants are AHC members to support a claim of common privilege with other AHC member, and their counsel, which would include the Nelsons and their counsel: "As VBF is aware, FishDish and Kenneth Lockard are members of the Equityholders' Committee, along with Defendants." [Dkt. 37-1 at 11, emphasis added.]

However, in a February 27, 2019 verified statement submitted to the Bankruptcy Court, AHC counsel (Aaron Hammer of HMB) represented the following, under oath, to the Bankruptcy Court: "None of the Founding Shareholders are members of the Equity Committee

- 10 -

or have consented to jurisdiction of the Court for any purpose." [Dkt. 42-1 at p. 151, ¶ 5, verified statement of Aaron L. Hammer, specifically stated under penalties of perjury.]

Similarly, Defendants, in Defendants' Motion, also represent that HMB and Beecher, and the AHC and other clients they represent (including FishDish and Lockard as to Beecher), are aligned. [Dkt. 37-1 at 10: "[S]ince December 18, 2018, Defendants have been members of the Equityholders' Committee that HMB and the Beecher Firm now represent, therefore, all communications related to the Equityholders' Committee's investigation of VBF and its challenges to VBF's reorganization plan are also privileged."] In Bankruptcy Court, however, AHC counsel Hammer of HMB verified under oath and penalties of perjury, asserted that the interests of Defendants have *diverged* from other members of the AHC (referring to Defendants as the "Founders"): "When it became apparent that (a) the interests of the other equity holders in the Debtors needed to be protected; and (b) that the Founders' interests *in the bankruptcy case* required a different course of action, the Founders referred Mr. Kenneth Lockard of FishDish LLC to HMB." [Exhibit F, March 12, 2019 filing in Bankruptcy Case by AHC.] [*See also,* Dkt. 42-1 at p. 150, ¶ 1, which certifies under oath that "Exhibit A" thereto lists all AHC members, and Exhibit A, at pp. 154-158, <u>does not list the Defendants</u> as AHC members.]

VBF's Subpoenas to the Nelsons also seek communications between the Defendants/their counsel and the Nelsons, other AHC members, and/or AHC counsel and the Nelsons have asserted privilege similarly to the Defendants. [Dkt. 41-1 at 2, 8-9.] Such spurious privilege claims would certainly be rejected even if Defendants and the Nelsons had preserved privilege objections by submitting a log, which they failed to do. Regardless, these circumstances show that there really were not  privileged communications to protect anyway, at least not to the extent

represented in Defendants' and the Nelsons' Motions.[2]

On March 13, 2019, John Guzzardo, Mr. Hammer's partner at HMB, as counsel for the AHC, represented the following to the Bankruptcy Court about the Defendants' assertions in their Motion to Quash that HMB continues to be the Defendants' counsel:  "**The information or the statements in the …District Court Motion to Quash are not correct.**"  When asked by the Bankruptcy Court whether the Defendants have corrected the incorrect allegations made to this Court, Mr. Guzzardo replied "[n]ot to my knowledge."  At this time, VBF only has the audio of this hearing, but will supplement with relevant excerpts from the written transcript of the hearing.  This exchange can be found at the 53:12-54:40 mark of this audio:

https://spmb.filetransfers.net/downloadPublic/wnmcystb0sbid08.

Later, the Bankruptcy Court asked Mr. Guzzardo of HMB to further explain the Defendants' role in the Bankruptcy Case, if any, when the AHC has represented to that court that the Defendants are <u>not</u> involved in that case.  Mr. Guzzardo stated that  "there have been communications with the Founders and they <u>are</u> a source of factual information for us as to we continue to prosecute claims and try to defend the interests of minority shareholders in this case." *Id.* at 1:05-1:08 mark (referring to the Defendants as the "Founders").

These admissions are significant for numerous reasons:  (1) AHC counsel HMB, who the Defendants (and essentially the Nelsons) claim to represent them for purposes of privilege, have

---

[2] And even if there were, these circumstances, along with the circumstances of Defendants' underlying misconduct, certainly would raise the crime/fraud exception to the privilege if it were properly asserted and preserved. *See e.g., In re Berkley & Co., Inc.*, 629 F. 2d 548, 552 (8th Cir. 1980) (citations omitted):

> There is, however, an equally well-established exception to the privilege. Attorney-client communications lose their privileged character when the lawyer is consulted not with respect to past wrongdoings but rather to further a continuing or contemplated criminal or fraudulent scheme. . . "The privilege takes flight if the relation is abused." The government is not required to prove the existence of a crime or fraud in order to overcome a claim of privilege. Rather, a prima facie showing that the legal advice was obtained in furtherance of illegal or fraudulent activity is sufficient to secure disclosure.

represented to another branch of this Court (the Bankruptcy Court) that those allegations are "incorrect" (false).  This corroborates the contradictions pointed out above by VBF in filings in this case and the Bankruptcy Case; (2)  VBF's subpoena to HMB is not only attacked in Defendants' Motion to Quash, but the Nelsons also claim joint privilege as to communications with HMB, even if those communications also include the Defendants [Dkt. 41-1 at 3, 9]; and (3) it corroborates the high relevance of Defendants' communications with the Nelsons, HMB, Beecher, Lockard, FishDish and others whose subpoenas by VBF have been attacked by the Defendants' Motion and the Nelsons' Motion-**the Defendants are an active source of information to those parties,** only supporting the high relevance of the information to be sought through such subpoenas.

## IX.     <u>VBF IS ENTITLED TO ITS REASONABLE ATTORNEY'S FEES</u>

The Nelsons, after agreeing to accept service of the Subpoenas and to cooperate with them, initially tried to dodge service, failed to meet and confer, failed to proffer a privilege log, and have sought to quash each and every request of all the Subpoenas even though the Nelsons' arguments clearly do not address all requests, even if such arguments had merit.  The Nelsons are AHC members, have used that status to claim privilege similar to Defendants, and therefore are subject to bound by the apparent misrepresentations either to this Court or the Bankruptcy Court as to Defendants' membership on the AHC, or lack thereof, depending on the circumstances at hand and the courtroom.

Under these circumstances, and to gain the Nelsons compliance with discovery rules in the future, the Nelsons should be required to pay all of Plaintiff's reasonable attorney's fees in resisting the Motion. *See e.g., American Seeds, LLC v. Watson,* No., 2010 WL 3843002, *1-2 (D.S.D. Sept. 27, 2010) (the courts have "inherent authority to impose sanctions that are

necessary to deter frivolous filings and ensure compliance with subpoenas issued in the Court's name" and assessing attorney's fees against movant on unsuccessful motion to quash subpoenas) and *citing U.S. v. Gonzalez-Lopez*, 403 F. 3d 558, 564 (8th Cir. 2005); *Rotoworks Int'l Ltd v. Grassworks USA, Inc.,* No. 2007 WL 1364911, *1 (W.D. Ark. May 8, 2007) (sanctioning movant for protective order in part due to the failure to hold a genuine meet and confer before filing the motion: "The lack of cooperation evidenced by such actions is not favored by the Court. The Court again emphasizes the duty of the parties to fully cooperate in the discovery process and to proceed, in good faith, where reasonably able, without court intervention."). If allowed, Plaintiff will submit a fee petition.

**WHEREFORE**, Plaintiff respectfully requests that the Court deny the Motion [Dkt. 41-1], award Plaintiff all of its reasonable attorney's fees in resisting the Motion, and for such other and further relief deemed just.

**VEROBLUE FARMS USA, INC**.

/s/ Robert H. Lang
One of its Attorneys

| | |
|---|---|
| Robert H. Lang | Matthew E. Laughlin AT0004515 |
| Caroline Pritikin | Holly M. Logan AT0004710 |
| Eileen Boyle Perich | Katelynn T. McCollough AT0013443 |
| Thompson Coburn LLP | Davis, Brown, Koehn, Shors & Roberts, P.C. |
| 55 East Monroe, 37th Floor | 215 10th Street, Suite 1300 |
| Chicago, IL 60603 | Des Moines, IA 50309 |
| 312-346-7500 (main) | 515-288-2500 |
| rhlang@thompsoncoburn.com | mattlaughlin@davisbrownlaw.com |
| cpritikin@thompsoncoburn.com | hollylogan@davisbrownlaw.com |
| eboyleperich@thompsoncoburn.com | katelynnmccollough@davisbrownlaw.com |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| VEROBLUE FARMS USA, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-cv-03047-LTS |
| | ) |
| LESLIE A. WULE, BRUCE A. HALL, JAMES REA, JOHN E. REA, AND KEITH DRIVER,, | ) ) ) |
| Defendants.. | ) |

## NOTICE OF FILING

**PLEASE TAKE NOTICE** that on March 15, 2019, we caused to be filed with the Northern District of Iowa, Central Division, **Plaintiff's Resistance to "NonParties" (Nelsons') Motion to Quash Subpoenas or For Protective Order**, a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

VEROBLUE FARMS USA, INC

/s/ Robert H. Lang
One of its Attorneys

Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough AT0013443
DAVIS, BROWN, KOEHN, SHORS & ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, IA 50309
515-288-2500
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrownlaw.com

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500 (main)
rhlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com

## **CERTIFICATE OF SERVICE**

      Arianna Thornton, a non-attorney, hereby certifies under penalties as provided by law, that on March 15, 2019, she caused a true and correct copy of the foregoing **Plaintiff's Resistance to "NonParties" (Nelsons') Motion to Quash Subpoenas or For Protective Order** to be served upon counsel of record via ECF system of Iowa:

      /s/ Arianna Thornton