## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

VEROBLUE FARMS USA, INC.,

        Plaintiff,

vs.

LESLIE A. WULF, et al.,

        Defendants.

No.  C18-3047-LTS

**ORDER**

---

## *I.    INTRODUCTION*

This case is before me on (1) a motion (Doc. No. 19) by defendants Bruce Hall, James Rea, John E. (Ted) Rea and Leslie Wulf to dismiss for improper venue or motion to transfer venue, and (2) a motion (Doc. No. 20) by defendant Keith Driver to dismiss for failure to state a claim and motion to transfer venue.  Plaintiff VeroBlue Farms USA, Inc. (VeroBlue) has filed resistances (Doc. Nos. 24, 25) and defendants have filed replies (Doc. Nos. 29, 30).  I find that oral argument is not necessary.  *See* Local Rule 7(c).

## *II.    FACTUAL BACKGROUND*

VeroBlue operates a sustainable fish farm business in Webster City, Iowa.  *See* Doc. No. 9 at 3.  It is a Nevada corporation with its principal place of business in Webster City, Iowa.  *Id.* at 1.  The defendants served as officers and/or directors of VeroBlue from approximately 2014 through 2017.  All defendants are Canadian citizens, except for Hall, who is a citizen of Texas.  *Id.* at 1-2.  VeroBlue states venue is proper because the transactions and alleged misconduct in this case occurred in Hamilton County, Iowa, which is located in the Northern District of Iowa.  *Id.* at 3.

VeroBlue states that it discovered at least 10 schemes in which defendants engaged in misconduct by misappropriating VeroBlue assets and concealing their misconduct. *Id.* VeroBlue details each of the alleged schemes in its amended complaint. *Id.* at 3-9. It alleges the following claims against all defendants:

- Count I – Breach of Fiduciary Duty
- Count II – Fraudulent Concealment
- Count III – Fraudulent Misrepresentation
- Count IV – Constructive Fraud
- Count V – Civil Conspiracy
- Count VI – Aiding and Abetting
- Count VII – Unjust Enrichment
- Count VIII – Equitable Accounting
- Count IX – Declaratory Judgment

*Id.* at 9-19.

Defendants state that in July 2016, each defendant entered into an Employment Agreement with VeroBlue that governed the terms of his employment. *See* Doc. No. 19-1 at 2 (citing Doc. Nos. 19-2, 19-3, 19-4, 19-5). They contend that after reporting certain inappropriate conduct and sexual/workforce harassment by a VeroBlue board member to the rest of the board, defendants were terminated as officers of VeroBlue. *Id.* VeroBlue entered into individual separation agreements (Termination Agreements) with Wulf, Hall and Ted Rea in late October and early November 2017. *Id.* at 3 (citing Doc. Nos. 19-2, 19-4, 19-5). VeroBlue terminated James Rea's employment in January 2018 without a Termination Agreement. Defendants argue VeroBlue improperly terminated James Rea on the pretext of violating his employment agreement in January 2018. *Id.* (citing Doc. No. 19-3).

VeroBlue entered into a "Business Relationship Restructuring Agreement" with Driver on January 13, 2017.[1]  *See* Doc. No. 20-2 at 49.  It contains the same forum-selection clause as the one in the Termination Agreements for Wulf, Hall and Ted Rea, which states in part:

> Each party irrevocably submits to the exclusive jurisdiction of the Federal District Court for the Northern District of Texas (the "District Court") for the purposes of any suit, action or other proceeding arising out of this Agreement.  Each party agrees to commence any action, suit or proceeding relating to this Agreement in the District Court . . . . Each party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the District Court, and  . . . shall not assert by way of motion, defense or otherwise, that . . . such proceeding is brought in an inconvenient forum, that the venue of the proceeding is improper or that the Agreement may not be enforced in or by the District Court.

Doc. Nos. 19-2, 19-4, 19-5, 20-2 at 55.  Based on the Employment Agreements and Termination Agreements, defendants argue that VeroBlue's claims must be litigated in the Northern District of Texas.  Defendants Wulf, Hall, James Rea and Ted Rea request that VeroBlue's amended complaint be dismissed or transferred to that forum as agreed upon by the parties.  Defendant Driver requests that the case be transferred to the Northern District of Texas and that the claims against him be dismissed for other reasons. *See* Doc. No. 20-1.

VeroBlue argues the Employment Agreements do not contain forum-selection clauses and the narrow scope of the forum-selection clauses in the Termination Agreements do not extend to the allegations in its amended complaint.  *See* Doc. No. 25 at 3.  Second, it argues that because there is no forum-selection clause relating to James Rea, all defendants (as James Rea's coconspirators) should be barred from relying on the forum-selection clauses.  *Id.*  Third, VeroBlue argues in the alternative that the

---

[1] For simplicity, all references to the Termination Agreements throughout this order include the "Business Relationship Restructuring Agreement."

Termination Agreements were fraudulently procured making the forum-selection clauses therein unenforceable. *Id.* Finally, it argues that extraordinary circumstances exist such that the forum-selection clauses should not apply and that balancing all factors under § 1404(a) demonstrates that transfer is inappropriate. *Id.* Alternatively, VeroBlue requests that it be permitted to conduct discovery prior to ruling on the motion so that it may investigate how the Termination Agreements came about and why defendants are the sole signatories. *Id.* at 3-4. Because defendants were in control of VeroBlue at all relevant times, VeroBlue argues it is entitled to take discovery relating to the Termination Agreements, statements made in the affidavits submitted by defendants and statements relating to the defendants' other arguments. *Id.* at 4.

### III.    APPLICABLE STANDARDS

Federal Rule of Civil Procedure 12(b)(3) provides that a party may make a pre-answer motion to dismiss an action that is not filed in the proper venue. "Rule 12(b)(3) allows dismissal only when venue is 'wrong' or 'improper.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.* Venue is governed by 28 U.S.C. § 1391, which provides, in relevant part:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine Const. Co.*, 571 U.S. at 56. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.*

The existence of a valid forum-selection clause does not necessarily render venue improper. *See Atl. Marine Const. Co.*, 571 U.S. at 55 ("Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."). The Eighth Circuit has noted that "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." *City of Benkelman, Nebraska v. Baseline Engineering Corp.*, 867 F.3d 875, 880 (8th Cir. 2017) (citing *Atl. Marine Const. Co.*, 571 U.S. at 55)). The Court in *Atlantic Marine* stated:

> a forum-selection clause may be enforced by a motion to transfer under § 1404(a) . . . , which provides that '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.'

*Atl. Marine Const. Co.*, 571 U.S. at 52. The Court directed that when such a motion is filed, the district court "should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.*

## IV.   DISCUSSION

Based on the above standards, I must first determine whether venue is proper in the Northern District of Iowa. If not, the case may be dismissed. If venue is proper, I will go on to consider whether this matter should be transferred to the Northern District of Texas pursuant to section 1404(a). If I determine that the matter should remain in this

district, I will then consider defendant Driver's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A.      Is Venue in the Northern District of Iowa Proper?

VeroBlue argues that venue is proper in the Northern District of Iowa under 28 U.S.C. § 1391(b) because it is where a substantial part of the defendants' alleged misconduct occurred and where VeroBlue's business is located.  *See* Doc. No. 25 at 8. Defendants Wulf, Hall James Rea and Ted Rea fail to acknowledge Supreme Court precedent that a case cannot be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) based on a forum-selection clause.  They also do not challenge VeroBlue's argument that venue is proper under 28 U.S.C. § 1391(b) on grounds that this is the district in which the alleged misconduct occurred.  Instead, they focus on the enforceability of the forum-selection clauses and whether the alleged conduct falls within the scope of the Employment and Termination Agreements.  *See* Doc. Nos. 29, 30.

Given that there appears to be no real dispute as to whether venue in this district is proper, I agree with VeroBlue that the Northern District of Iowa is a proper venue under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to VeroBlue's claims occurred in this district.  Therefore, I will consider whether this case should be transferred to another venue pursuant to 28 U.S.C. § 1404(a) based on the arguments raised by defendants.

### B.      Should This Case Be Transferred to the Northern District of Texas?

#### 1.      Applicability and Enforceability of the Forum-Selection Clauses

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  *Atl. Marine Const. Co., Inc.*, 571 U.S. at 62 (footnote omitted). Here, I must determine not only whether the forum-selection clauses are valid and

enforceable, but also whether they apply to the alleged claims.  I will consider their applicability to VeroBlue's claims first.  Because VeroBlue is the party challenging the forum-selection clause, it bears "a heavy burden of proof" in attempting to avoid enforcement of the forum-selection clauses.  *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006).

### a.    *Do the Forum-Selection Clauses Apply to VeroBlue's Claims?*

VeroBlue argues the forum-selection clauses do not apply to its claims because its claims arise out of duties imposed by the law and not the Employment Agreements or Termination Agreements.  Defendants argue that VeroBlue purposely avoided reference to the Employment and Termination Agreements to avoid the forum-selection clauses and that this intentional avoidance does not prevent their application.  *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) ("Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause.").  As noted above, the forum-selection clauses are contained within the Termination Agreements for defendants Wulf, Hall and Ted Rea and the Business Relationship Restructuring Agreement for defendant Driver and state, in part:

> Each party irrevocably submits to the exclusive jurisdiction of the Federal District Court for the Northern District of Texas (the "District Court") for the purposes of any suit, action or other proceeding arising out of this Agreement.  Each party agrees to commence any action, suit or proceeding relating to this Agreement in the District Court . . . . Each party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the District Court, and  . . . shall not assert by way of motion, defense or otherwise, that . . . such proceeding is brought in an inconvenient forum, that the venue of the proceeding is improper or that the Agreement may not be enforced in or by the District Court.

Doc. Nos. 19-2, 19-4, 19-5, 20-2 at 55.  The Eighth Circuit has not determined whether state or federal law controls when the applicability of a forum selection clause is at issue but has followed the parties' lead in applying federal law.  *See Rainforest Café, Inc. v.*

7

*EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003).  The parties in this case cite federal law in addressing the applicability of the forum-selection clauses.  *See* Doc. Nos. 20-1 at 4-5 and 25 at 10-11.  As such, I will also apply federal law.

"Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case."  *Terra Int'l, Inc.*, 119 F.3d at 693.  In determining whether tort claims "arise" out of a contract, the Eighth Circuit has cited the following tests from the Third, First and Ninth Circuits as particularly useful: (1) whether the tort claims "ultimately depend on the existence of a contractual relationship" between the parties, (2) "whether resolution of the claims relates to interpretation of the contract" and (3) whether the claims involve "the same operative facts as a parallel claim for breach of contract."  *Id.* at 694 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993)).  In *Terra*, the court concluded that plaintiffs' tort claims involved the same operative facts as would a parallel claim for breach of contract even though plaintiff did not raise any claims for breach of contract in its complaint.  *Id.* at 695.  *See also Kleiman v. Kings Point Capital Mgmt., LLC*, No. 4:17CV2278HEA, 2018 WL 3328012, at *3-4 (E.D. Mo. July 6, 2018) (concluding forum selection clause applied despite plaintiff's argument that claims of negligence and breach of fiduciary duty were not based on contractual relationship because those claims involved same operative facts as a breach of contract claim); *Witt v. Nation-Wide Horse Transp., Inc.*, 197 F. Supp. 3d 1146, 1156-57 (S.D. Iowa 2016) (concluding that all of plaintiffs' claims fell within the scope of the forum selection clause because plaintiffs' non-contract claims depended on the existence of the parties' contractual relationship and that non-contract claims would require some interpretation of the contract).

I find that VeroBlue's claims satisfy at least the third and possibly the first test utilized by the Eighth Circuit.  The claims involve "the same operative facts as a parallel

claim for breach of contract." *Terra Int'l, Inc.*, 199 F.3d at 694 (quoting *Lambert*, 983 F.2d at 1121-22). The operative facts for VeroBlue's allegations concern the alleged mismanagement and waste of corporate assets (often in favor of defendants' own interests) resulting in the reduced value of VeroBlue. *See* Doc. No. 9 at 9. The Employment Agreements discuss the duties of employees and exclusive services to the company, which could form the basis of a breach of contract claim. *See* Doc. No. 19-2 at 7, 19-3 at 6, 19-4 at 7 and 19-5 at 7 (stating employee would "devote [his] full business time and shall use [his] best efforts, energy and ability exclusively toward advancing the business, affairs, and interests of the Company."). The amended complaint (Doc. No. 9) references the terminations of each defendants' employment and status as an officer and/or director. It avers that the defendants owed fiduciary duties to VeroBlue until they were terminated as employees, contractors, officers and/or directors of VeroBlue. *See* Doc. No. 9 at 9.

While VeroBlue does not explicitly allege that defendants' employment was terminated pursuant to the Termination Agreements based on the alleged misconduct described in the amended complaint, that is certainly VeroBlue's implication in its resistance. *See* Doc. No. 25 at 6 ("By 2017, non-Defendant [VeroBlue] directors became suspicious of Defendants and [VeroBlue] fired Defendants."). Because defendants' duties to VeroBlue were imposed by law as well as the Employment Agreements, it is apparent that the same operative facts could support a claim of breach of contract. While the Employment Agreements themselves do not contain forum-selection clauses, the Termination Agreements terminated the Employment Agreements. Therefore, any claims that could arise under the Employment Agreements implicate the Termination Agreements, containing the forum-selection clauses.

Arguably, the claims also "ultimately depend on the existence of a contractual relationship between the parties" because the alleged misconduct occurred based on defendants' positions as officers and directors of VeroBlue. *See Terra Int'l, Inc.*, 199 F.3d at 694 (quoting *Coastal Steel Corp.*, 709 F.2d at 203). While the claims are based

on violations of common law tort duties, defendants would not have been in the position to commit these alleged violations without being employees of VeroBlue and subject to the Employment Agreements. Based on the alleged facts, I find that VeroBlue's claims arise under the Termination Agreements containing the forum-selection clauses and therefore, the forum-selection clauses apply to VeroBlue's claims against defendants Wulf, Hall, James Rea, Ted Rea and Driver.

### b.      Are the Forum-Selection Clauses Enforceable?

VeroBlue argues the forum-selection clauses are not enforceable because the Termination Agreements were fraudulently procured. Alternatively, it seeks discovery related to statements that defendants made in their affidavits and specifically, how the Termination Agreements came about, including why the defendants are the sole signatories. *See* Doc. No. 25 at 3-4.

Again, the Eighth Circuit has not resolved whether federal or state law applies when determining the enforceability of forum selection clauses. *See Servewell Plumbing, LLC*, 439 F.3d at 789 ("Because 'the enforceability of a forum selection clause concerns both the substantive law of contracts and the procedural law of venue,' . . . there is some disagreement among the circuits over whether state or federal law applies, . . . and we have yet to adopt a definitive position on the issue.") (internal citations omitted). Because both parties apply federal law and the Eighth Circuit has done the same in past cases, I will follow suit. *See Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 971 (8th Cir. 2012); *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009).

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *Union Elec. Co.*, 689 F.3d at 973 (quoting *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999)).

> To set aside a forum selection clause for fraud, the contesting party must allege that the clause was itself a product of fraud, specify facts supporting claims of fraud, or allege that courts in the designated state would be biased or incompetent or unwilling to apply another state's law if applicable.

*Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*, 431 F. Supp. 2d 955, 962 (S.D. Iowa 2006) (citing *M.B. Rests.*, 183 F.3d at 752-53). *See also Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) ("A forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.") (internal quotations omitted) (emphasis in original); *M.B. Rests.*, 183 F.3d at 752-53 (finding general allegations that franchise agreements were procured by fraud (without an allegation that forum-selection clause itself was a product of fraud) did not meet Rule 9(b) standards and did not overcome the presumption of validity of the forum-selection clause).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (internal quotation marks omitted). In determining the reasonableness of a forum-selection clause, important factors to consider are: "whether the clause was the result of an arm's-length transaction, the experience and sophistication of the parties involved in the negotiation, the comparative bargaining positions of the parties, and representation of the parties by legal counsel." *RK Dixon Co. v. Dealer Marketing Servs., Inc.*, 284 F. Supp. 2d 1204, 1209 (S.D. Iowa 2003) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). Here, VeroBlue alleges that the Termination Agreements were fraudulently procured because at the time the Termination Agreements were drafted, defendants were still in control of VeroBlue and controlled the language of the Termination Agreements. Doc. No. 25 at 12. All

11

Termination Agreements were signed by Wulf as CEO except for Wulf's Termination Agreement, which was signed by current VeroBlue President, Norman McCowan. VeroBlue argues that nearly all of the Termination Agreements are signed on both sides by alleged co-conspirators. *Id.* VeroBlue suggests, without stating any particular facts, that VeroBlue entered into a Texas forum-selection clause for the same reasons it expended funds to open an office in Texas – for defendants' own benefit. *Id.* at 13. VeroBlue argues the forum-selection are "one-sided terms contained in one-sided agreements with Defendants on both sides." *Id.*

Defendants argue that VeroBlue has not alleged in its complaint that the Termination Agreements were fraudulently induced, nor has it requested to rescind them. Doc. No. 30 at 2. They also argue that VeroBlue does not allege the forum-selection clauses themselves were induced by fraud. *Id.* Defendants contend that each defendant was separately represented in the negotiation of the Termination Agreements and that VeroBlue was also represented by counsel, including counsel who is believed to be counsel to VeroBlue's majority shareholder and its lender. *Id.* n.5.

The amended complaint contains no reference to the Termination Agreements nor the forum-selection clauses. VeroBlue also does not allege in either of its resistances to the instant motions that the forum-selection clauses themselves were fraudulently induced. VeroBlue's only argument that the Termination Agreements were fraudulently procured is that Wulf (an alleged co-conspirator) signed the Termination Agreements for Driver, Hall and Ted Rea on behalf of VeroBlue. In other words, it contends the forum-selection clauses were drafted and executed in defendants' self-interest. However, Wulf's Termination Agreement is signed by McCowan (VeroBlue's current President) and contains the same forum-selection clause. *See* Doc. No. 19-5 at 34. James Rea is the only other defendant whose employment was terminated after Wulf's. *See* Doc. No. 24-

1 at 7.   His employment was terminated for cause on January 8, 2018, without a Termination Agreement or release.[2]   *Id.*

VeroBlue has failed to meet its burden that the forum-selection clauses within the Termination Agreements were the result of fraud.   VeroBlue's allegations of fraud in its amended complaint do not extend to the creation and execution of the Termination Agreements, and more importantly, to the forum-selection clauses therein.   Even with regard to the general allegations in its resistances, VeroBlue fails to allege that the forum-selection clauses were the result of fraud and its theory that they were drafted solely for defendants' own personal benefit is diminished by the fact that the forum-selection clause remained in Wulf's Termination Agreement, which was signed by VeroBlue's current President on behalf of VeroBlue.   Without a sufficiently-pleaded allegation that the forum-selection clauses were the result of fraud, I find that they remain enforceable as long as they are reasonable,[3] and in the absence of any extraordinary circumstances.   *See Marano Enterprises of Kan.*, 254 F.3d at 757 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)) (A "forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.") (emphasis in original)).

VeroBlue argues that the forum-selection clauses should not be applied due to extraordinary circumstances based on: (1) its same allegations that the clauses were drafted in defendants' own self-interest and (2) VeroBlue's bankruptcy action, which is currently pending in the Northern District of Iowa.   *See* Doc. No. 25 at 14.   There is little guidance on what constitutes an "extraordinary circumstance" in this context.   The

---

[2] I will address the absence of a forum-selection clause as to James Rea *infra* section IV(B)(2).

[3] I find no issue with regard to reasonableness of the forum-selection clauses.   The parties appeared to have relatively the same experience and sophistication in negotiating the Termination Agreements and each were represented by counsel.   While VeroBlue suggests that self-dealing was involved, it does not allege so as to the forum-selection clauses themselves and, as stated above, this suggestion is diminished by the presence of the forum-selection clause in Wulf's Termination Agreement, which was signed by VeroBlue's current President.

Supreme Court has stated that it must be unrelated to the convenience of the parties and that "[i]n all but the most unusual cases . . . the interest of justice is served by holding parties to their bargain." *Atl. Marine Const. Co.*, 571 U.S. at 66.

Because I have determined that valid forum-selection clauses exist, I cannot take into account the plaintiff's choice of forum or the parties' private interests related to convenience. *Id.* at 63-64. VeroBlue has not alleged any circumstances that fall outside of those factors. As such, I find that the parties should be held to their bargain and this case should be litigated in the Northern District of Texas.[4]

### 2.    *Should the Case Be Severed?*

Unlike the other defendants, James Rea is not a contracting party to a forum-selection clause. However, he joins his co-defendants in advocating for transfer to the Northern District of Texas.[5] The Eighth Circuit has not yet addressed how forum-selection clauses affect the § 1404(a) transfer analysis when the case involves both contracting and non-contracting defendants. Other circuit courts have applied a multiple-step analysis. *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 403-05 (3d Cir. 2017); *In re Rolls Royce Corp.*, 775 F.3d 671, 679-83 (5th Cir. 2014). In *Howmedica*, the court followed the following four steps in determining whether a claims against a non-contracting party should be transferred along with claims against a contracting party pursuant to a valid and enforceable forum-selection clause: (1) the forum-selection clauses

---

[4] I decline to grant VeroBlue's alternative discovery request regarding the circumstances surrounding the Termination Agreements. VeroBlue has not set forth any facts to suggest that discovery would reveal the forum-selection clauses or Termination Agreements were fraudulently procured. Nor has it sought to rescind those agreements based on fraud.

[5] Neither party addresses the possibility of severance as an option. All defendants argue that this case should be litigated in the Northern District of Texas and VeroBlue argues that this case cannot be transferred to that district based, in part, on the lack of a forum-selection clause that applies to James Rea.

themselves, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests. *Howmedica*, 867 F.3d at 403-04. "If . . . the Step One and Step Two analyses point to the same forum, then the court should allow the case to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there." *Howmedica*, 867 F.3d at 404.

With regard to the forum-selection clauses themselves, I have already determined that the clauses apply to the claims against the contracting defendants and are valid and enforceable. In following *Atlantic Marine*, the Fifth Circuit acknowledged that "the private factors of the parties who have signed a forum agreement must, as [a] matter of law, cut in favor of severance and transfer to the contracted for forum." *Rolls Royce*, 775 F.3d at 681. Here, I have determined that all defendants but James Rea contracted for the Northern District of Texas as the exclusive forum to resolve disputes arising out of the Termination Agreements.

Regarding James Rea's private and public interests, this inquiry mimics a § 1404 transfer motion in the absence of a forum-selection clause. *See Howmedica*, 867 F.3d at 404. *See also Terra Int'l, Inc.*, 119 F.3d at 691 (noting that courts must consider "three general categories of factors . . . when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice."). James Rea is a Canadian citizen and a resident of Texas, along with all of the other defendants except Driver. James Rea signed an Employee Agreement with VeroBlue effective July 1, 2016, and was terminated for cause on January 8, 2018. *See* Doc. No. 19-3 at 2-3. While employed, VeroBlue provided James Rea with an office and support

services in Plano, Texas.[6]  *Id.*  James Rea and the other defendants list witnesses they would likely call to defend the claims against them.  These witnesses live in Switzerland, Iowa, British Columbia, Texas (three witnesses) and Colorado (two witnesses).  *Id.* at 4-5.  With regard to public interests, the Supreme Court has noted that "section 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute." *In re Rolls Royce Corp.*, 775 F.3d at 679 (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).  Judicial economy "retains a cardinal role" in determining whether a case should be severed and transferred.  *Id.* at 681.  Both James Rea's private interests and judicial economy favor transfer (and non-severance) in this case.

Because Steps One and Two support transferring the claims against James Rea to the Northern District of Texas along with the claims against the other defendants subject to the forum-selection clauses, the claims against James Rea will not be severed, but instead will be transferred pursuant to section 1404(a).

## V.    CONCLUSION

For the reasons stated herein:

1.    Defendants' motion (Doc. No. 19) to dismiss for improper venue or motion to transfer venue is **denied in part** and **granted in part**.  It is **denied** as to the motion to dismiss and is **granted** as to the motion to transfer venue.

2.    Defendant Driver's motion (Doc. No. 20) to dismiss for failure to state a claim and motion to transfer venue is **granted in part**.  It is **granted** as to the motion to transfer venue.  This court takes no position on Driver's motion (Doc. No. 20) to dismiss for failure to state a claim upon which relief may be granted, which is reserved for adjudication by the transferee court.

---

[6] Plano, Texas, was VeroBlue's principal place of business until April 2018, when it renewed its registration with the Nevada Secretary of State and listed its principal place of business as Webster City, Iowa.  *See* Doc. No. 20-1 at 6.

     3.     The Clerk shall transfer this entire case to the United States District Court for the Northern District of Texas.

**IT IS SO ORDERED.**

**DATED** this 27th day of March, 2019.

_____

Leonard T. Strand, Chief Judge