## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
| Defendants/Counter-Plaintiffs, | § | |

### THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S MOTION TO DISMISS THIRD-PARTY CLAIMS PURSUANT TO THE TEXAS CITIZENS PARTICIPATION ACT AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

I.     Factual and Procedural Background ................................................................1

II.    Summary of the Argument...........................................................................1

III.   Relevant Legal Standard ............................................................................4

IV.   Arguments and Authorities ........................................................................5

    A.    The TCPA applies in federal court diversity cases. .................................. 5

        1.    The TCPA provides substantive rights under Texas law........................... 6

        2.    The TCPA does not conflict with Federal Rules of Civil Procedure 12(b)(6) and 56. ............................................................................. 8

        3.    The TCPA furthers the "twin aims" of *Erie*. ............................................. 9

    B.    The Third-Party Claims should be dismissed under the TCPA............................ 11

        1.    The TCPA applies to the Third-Party Claims because they are based on McCowan's exercise of his right of free speech and right to petition. ............................................................................. 11

        2.    The Third-Party Plaintiffs cannot establish, by clear and specific evidence, a prima facie case on each essential element of their tortious-interference claims. ................................................................. 13

            a.    As an officer of VBF, McCowan cannot tortiously interfere with the Termination Agreements to which VBF was a party. ..............................................................................13

            b.    VBF was exercising its rights under the Termination Agreements. ..............................................................................16

            c.    There are no allegations or evidence that McCowan actively persuaded VBF to breach the Termination Agreements........ **Error! Bookmark not defined.**

            d.    Ted Rea and Hall fail to meet their burden to prove damages, an essential element of a tortious-interference claim....................19

            e.    The Third-Party Claims should be dismissed because McCowan can conclusively establish valid defenses. ..................20

    C.    The Court should award McCowan his costs and attorneys' fees. ....................... 22

V.    Conclusion ..........................................................................................22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abraham v. Ryland Mortg. Co.*,
   995 S.W.2d  (Tex. App.—El Paso 1999, no pet.) .................................................... 22

*ACS Investors, Inc. v. McLaughlin*,
   943 S.W.2d 426 (Tex. 1997) ........................................................................... 15, 17

*Adams v. Starside Custom Builders, LLC*,
   547 S.W.3d 890 (Tex. 2018) ........................................................................... 12, 13

*All Plaintiffs v. All Defendants*,
   645 F.3d 329 (5th Cir. 2011) ................................................................................. 6

*Allen v. Heath*,
   No. 6:16-CV-51-MHS-JDL, 2016 WL 7971294 (E.D. Tex. May 6, 2016) .............. 8

*Alma Grp., L.L.C. v. Palmer*,
   143 S.W.3d 840 (Tex. App.—Corpus Christi 2004, pet. denied) ........................... 20

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*,
   521 F.3d 472 (5th Cir. 2008) ............................................................................... 19

*Baty v. ProTech Ins. Agency*,
   63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001, pet. denied ..................... 21

*Bedford v. Spassoff*,
   520 S.W.3d 901 (Tex. 2017) ................................................................................... 4

*Benningfield v. City of Houston*,
   157 F.3d 369 (5th Cir. 1998) ............................................................................... 15

*Better Bus. Bureau of Metro. Dallas v. BH DFW, INC.*,
   402 S.W.3d 299 (Tex. App.—Dallas 2013, pet. denied) ......................................... 5

*Block v. Tanenhaus*,
   867 F.3d 585 (5th Cir. 2017) ................................................................................. 6

*Cates v. Sears, Roebuck & Co.*,
   928 F.2d 679 (5th Cir. 1991) ............................................................................... 10

*Celanese Corp. v. OneBeacon Am. Ins. Co.*, 3:15-CV-03822-N,
2016 WL 6496354 (N.D. Tex. May 20, 2016) ........................................................ 15

*Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*,
848 S.W.2d 232 (Tex. App.—Dallas 1992, no writ) ............................................... 15

*Charalambopoulos v. Grammer*,
No. 3:14-CV-2424-D, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015) ......................... 6

*Coker v. Select Energy Servs., LLC*,
161 F. Supp. 3d 492 (S.D. Tex. 2015) .................................................................. 11

*Community Health Sys. Prof'l Servs. v. Hansen*,
525 S.W.3d 671 (Tex. 2017) ................................................................. 14, 15, 16, 22

*Cuba v. Pylant*,
814 F.3d 701 (5th Cir. 2016) ............................................................................... 6, 9

*Culbertson v. Lykos*,
790 F.3d 608 (5th Cir. 2015) ................................................................................... 6

*Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*,
283 F. Supp. 3d 580 (S.D. Tex. 2017) ................................................................... 17

*Davis v. Hyd-Pro, Inc.*,
839 S.W.2d 137 (Tex. App.—Eastland 1992, writ denied) ...................................... 20

*Desch v. Wheatley*,
SA-08-CA-0922-FB, 2010 WL 11506404 (W.D. Tex. Jan. 19, 2010) ...................... 22

*Diamond Consortium, Inc. v. Hammervold*,
733 Fed. App'x 151 (5th Cir. 2018) ........................................................................ 6

*Eloise Bauer & Assocs., Inc. v. Elec. Realty Assocs., Inc.*,
621 S.W.2d 200 (Tex. Civ. App.—Texarkana 1981, writ ref'd n.r.e. ....................... 22

*Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*,
No. 05-13-00506-CV, 2015 WL 6750047 (Tex. App.—Dallas Nov. 4, 2015, no pet.) ........... 19

*Friendswood Dev. Co. v. McDade & Co.*,
925 S.W.2d 280 (Tex. 1996) ................................................................................. 22

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996) ............................................................................................... 5

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ..................................................................................... 9

iv

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) ..................................................... 10

*Hambric Sports Mgmt., LLC v. Team AK, Inc.*, 3:09-CV-1662-L,
  2010 WL 2605243 (N.D. Tex. June 29, 2010) .......................... 19

*Hammond v. Lovings*,
  No. 5:15-CV-00579-RP, 2016 WL 9049579 (W.D. Tex. May 25, 2016) ................................ 6

*Haynes v. Crenshaw*,
  166 F. Supp. 3d 773 (E.D. Tex. 2016) ....................................... 6

*Henry v. Lake Charles Am. Press, LLC*,
  566 F.3d 164, 168-69 (5th Cir. 2009) ........................................ 9

*Holloway v. Skinner*,
  898 S.W.2d 793 (Tex. 1995) ............................................... 14, 15

*Immobiliere Jeuness Establissement v. Amegy Bank*,
  525 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ......................... 19

*In re Lipsky*,
  460 S.W.3d 579 (Tex. 2015) .................................................... 4, 7

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
  854 F.3d 797 (5th Cir. 2017) ............................................... 14, 21

*John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*,
  17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet. denied) .............................. 17

*Lincoln Gen. Ins. Co. v. Autobuses Tierra Caliente, Inc.*, CIV. A. 3:04CV1535–L,
  2006 WL 2474096 (N.D. Tex. Aug. 28, 2006) ........................ 11

*Mumfrey v. CVS Pharmacy, Inc.*,
  719 F.3d 392 (5th Cir. 2013) ............................................... 16, 17

*Nat'l Prop. Holdings, L.P. v. Westergren*,
  453 S.W.3d 419 (Tex. 2015) ................................................... 18

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
  745 F.3d 742 (5th Cir. 2014) .................................................... 6

*O'Gara v. Binkley*,
  No. 3:18-CV-2603-B, 2019 WL 1864099 (N.D. Tex. Apr. 24, 2019) ....................... 7

*Powell Indus. v. Allen*,
  985 S.W.2d 455 (Tex. 1998) ............................................... 16, 17

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
  29 S.W.3d 74 (Tex. 2000) ................................................................................. 14, 21

*Rudkin v. Roger Beasley Imports, Inc.*,
  2017 WL 6622561 (W.D. Tex. Dec. 28, 2017), *report and rec. accepted*, 2018 WL 2122896
  (W.D. Tex. Jan. 31, 2018) ........................................................................................... 7

*Star Sys. Int'l Ltd. v. Neology, Inc.*,
  No. 4:18-cv-00574, 2019 WL 215933 (E.D. Tex. Jan. 16, 2019) ............................................. 7

*Sullivan v. State Farm Lloyds*, 3:05-CV-2000-L,
  2007 WL 1626077 (N.D. Tex. June 6, 2007) .......................................................................... 21

*Sw. Airlines Co. v. Roundpipe, LLC*,
  No. 3:18-CV-0033-G, 2019 WL 1315896 (N.D. Tex. Mar. 22, 2019) ..................................... 7

*Victoria Bank & Trust Co. v. Brady*,
  811 S.W.2d 931 (Tex. 1991) .................................................................................................. 22

*William Noble Rare Jewels, L.P. v. Sky Glob. L.L.C.*,
  No. 3:18-CV-01566-N, 2019 WL 935954 (N.D. Tex. Feb. 25, 2019) ..................................... 7

*Williams v. Cordillera Commc'ns, Inc.*,
  No. 2:13-CV-124, 2014 WL 2611746 (S.D. Tex. June 11, 2014) ........................................... 7

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 38.001 ..................................................................................... 3

TEX. CIV. PRAC. & REM. CODE §§ 27.001 ........................................................................... 1, 4, 20

TEX. CIV. PRAC. & REM. CODE § 27.001(3) ............................................................................... 10

TEX. CIV. PRAC. & REM. CODE § 27.001(7)(B) ......................................................................... 10

TEX. CIV. PRAC. & REM. CODE § 27.002 ..................................................................................... 7

TEX. CIV. PRAC. & REM. CODE § 27.005(b) ................................................................................. 4

TEX. CIV. PRAC. & REM. CODE § 27.005(c) ............................................................................ 5, 11

TEX. CIV. PRAC. & REM. CODE § 27.009(a) ............................................................................ 5, 19

**Other Authorities**

Local Civil Rule 5 ..................................................................................................................... 22

RESTATEMENT (SECOND) OF TORTS §§ 766, 767 ....................................................................... 19

Pursuant to the Texas Citizens Participation Act, Third-Party Defendant Norman McCowan ("**McCowan**") files this Motion to Dismiss the Third-Party Claims and Brief in Support to dismiss the Third-Party Claims brought by Defendants Leslie A. Wulf ("**Wulf**"), Bruce A. Hall ("**Hall**"), James Rea ("**James Rea**"), and John (Ted) Rea ("**Ted Rea**") (collectively, the "**Third-Party Plaintiffs**" and the "**Third-Party Claims**") (Dkt. 66) under the Texas Citizens Participation Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001 *et seq*.

## I.     SUMMARY OF THE ARGUMENT

The Court should dismiss the Third-Party Claims pursuant to the Texas Citizens Participation Act ("**TCPA**") because the allegations and claims are based on, related to, or in response to McCowan's exercise of his rights of free speech and to petition regarding a matter of public concern.  The Third-Party Claims are based on allegations regarding McCowan's opinions and actions as an officer of VBF in terminating VBF's business relationships with the Third-Party Plaintiffs and initiating suit against the Third-Party Plaintiffs for malfeasance.  The Third-Party Plaintiffs have not alleged any facts sufficient to state a claim for tortious interference with a contract, much less bring forth clear and specific evidence to support each essential element of their prima facie case, which would be required under the TCPA.  Nor have they alleged sufficient facts to rebut McCowan's valid legal defenses to their claims.  Therefore, the Court should dismiss the Third-Party Claims in their entirety and award McCowan his attorneys' fees and costs pursuant to the TCPA.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In 2014, the Third-Party Plaintiffs founded Plaintiff VeroBlue Farms USA, Inc. ("**VBF**"), a sustainable fish farm.  The Third-Party Plaintiffs served as directors, officers, and employees of VBF from its founding in 2014 through the termination of their employment and removal as

officers and directors in late 2017 and early 2018.  Specifically, (1) VBF terminated it business

relationship with Hall and Ted Rea on October 27, 2017, and each signed a Business Relationship

Termination Agreements (Dkt. 66-1, Exs. C & D); (2) VBF terminated its business relationship

with Wulf on December 1, 2017, and he signed a Separation Agreement (Dkt. 66-1, Ex. B); and

(3) VBF terminated its business relationship with James Rea on January 8, 2018 for "Egregious

Cause" pursuant to his Employment Agreement (Dkt. 66 at Exhibit A).  (These agreements signed

by the Third-Party Plaintiffs are collectively referred to as the "**Termination Agreements**.")  On

November 6, 2017, McCowan became the president of VBF, and he currently remains in that role.

(*See* Dkt. 66, Third-Party Claims at ¶ 7).[1]

Following the removal and discharge of the last of the Third-Party Plaintiffs in January

2018, VBF discovered that the Third-Party Plaintiffs misappropriated and misused millions of

dollars in corporate assets and knowingly misrepresented VBF's operations, technology, and

finances.  (*See* Compl. ¶¶ 13-42).  In July 2018, VBF filed the instant lawsuit against the Third-

Party Plaintiffs, asserting claims for breach of fiduciary duty, fraudulent concealment, fraudulent

misrepresentation, constructive fraud, civil conspiracy, aiding and abetting, unjust enrichment,

equitable accounting, and declaratory judgment.[2]

As a result of the misdeeds of the Third-Party Plaintiffs, VBF also filed for bankruptcy

under Chapter 11 (the "**VBF Bankruptcy**").  *See In re VeroBlue Farms USA, Inc. et al.*, No. 18-

01297 (Bankr. N.D. Iowa, filed Sept. 21, 2018) ("**VBF Bankr.**").  The U.S. Bankruptcy Court for

the Northern District of Iowa (the "**Bankruptcy Court**") confirmed the Amended Joint Chapter

---

[1] The Third-Party Claims erroneously state that McCowan is the chief executive officer of VBF.

[2] VBF has a pending Motion for Leave to Amend its Amended Complaint [Dkt. 102], seeking to add additional claims against the Third-Party Plaintiffs for fraudulent transfer, restitution, violations of the Racketeer Influenced and Corrupt Organizations Act, and rescission of the Termination Agreements that are the basis of the allegations in the Third-Party Claims.

11 Plan of Reorganization of VeroBlue Farms USA, Inc. and Its Affiliated Debtors (the "**VBF Reorganization Plan**") and entered a final judgment on May 7, 2019, which became final on May 22, 2019.  (*Id.* at Dkt. 515, 516).[3]  The Bankruptcy Court also allowed McCowan to continue in his role as President of VBF during the bankruptcy and in the confirmation order.  (*E.g.*, *id.* at Dkt. 96 (Chapter 11 Monthly Operating Report)[4]; Ex. 2 at 10).  The Third-Party Plaintiffs were parties-in-interest to the VBF Bankruptcy, received notice of the proceedings, including those related to the confirmation, and participated in the proceedings.  (*E.g.*, *id.* at Dkt. 411 (Notice of Attorney Appearance for the Third-Party Plaintiffs)[5]; *see also id.* Dkt. 446, 466 (Objections to Confirmation of Plan by the Third-Party Plaintiffs)).

On April 10, 2019, the Third-Party Plaintiffs brought claims for tortious interference against third parties McCowan, Eva Ebstein, Jens Haarkoetter, Bjorn Thelander, Anders Wester, Dr. Otto Happel, and Alder Aqua, Ltd. (collectively, the "**Third-Party Defendants**").  The Third-Party Defendants are current and former directors, officers, or shareholders of VBF.  (Dkt. 66, Third-Party Claims ¶¶ 3-9).  The Third-Party Plaintiffs assert the Third-Party Defendants tortiously interfered with the Termination Agreements by allegedly inducing VBF to (1) file suit against Hall and Ted Rea, in violation of the releases in the Termination Agreements (Dkt. 66, Third-Party Claims ¶¶ 58, 66); (2) refuse to pay Wulf severance payments allegedly due to him under the Separation Agreement (*Id.* ¶ 77); and (3) terminate James Rea based on an allegedly false claim of "Egregious Cause," and refuse to pay him amounts allegedly due under the

---

[3] A true and correct copy of the Bankruptcy Court's judgment ("**Judgment**") is attached hereto as Exhibit 1. A true and correct copy of the Bankruptcy Court's confirmation order ("**Order**"), which includes a copy of the VBF Reorganization Plan, is attached hereto as Exhibit 2.  There were Minor Modifications to the VBF Reorganization Plan [Dkt. 511] incorporated into the Order and attached hereto as Exhibit 3.

[4] A true and correct copy of the Chapter 11 Monthly Operating Report is attached hereto as Exhibit 4.

[5] A true and correct copy of the Notice of Appearance and Request for Service is attached hereto as Exhibit 5.

Employment Agreement. (*Id.*   ¶ 87).   Ted Rea and Hall each claim damages "in an amount of expense he has incurred in defending against claims brought against him by VBF in violation of the release," and seek punitive damages and attorneys' fees (pursuant to Section 7(i) of their Termination Agreements). (*Id.*   ¶¶ 61-63, 70-72).   Wulf seeks damages, punitive damages, and attorneys' fees (pursuant to Section 7(i) of the Separation Agreement). (*Id.* ¶¶ 81-83).   James Rea seeks damages, punitive damages, and attorneys' fees (pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code). (*Id.* ¶¶ 90-92).   On May 31, 2019, McCowan filed a Rule 12(b)(6) Motion to Dismiss Third-Party Claims [Dkt. 113].

### III.        RELEVANT LEGAL STANDARD

The TCPA is the Texas anti-SLAPP law that protects defendants from retaliatory claims that arise out of the exercise of a defendant's First Amendment rights. TEX. CIV. PRAC. & REM. CODE Ch. 27; *see also In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them.") (citing TEX. CIV. PRAC. & REM. CODE §§ 27.001 *et seq.*)).   To effect this protection, the TCPA provides for "a special motion for an expedited consideration of any suit that appears to stifle the defendant's communication on a matter of public concern." *Id.*

For the TCPA to apply, a defendant must show that the plaintiff's claims are based on, relate to, or are in response to the defendant's exercise of: (1) the right of free speech, (2) the right to petition, or (3) the right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b).[6]   If the plaintiff's claim implicates the right of free speech, the right to petition, or the right of association, the TCPA applies, and the burden shifts to the plaintiff to establish by "clear and specific evidence"

---

[6] When determining if the TCPA applies, the trial court must consider all pleadings, as well as supporting and opposing affidavits stating the facts on which a claim of liability is based. *Id.* § 27.006; *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)).

a prima facie case for each essential element of the claim in question. TEX. CIV. PRAC. & REM. CODE § 27.005(c).  If the plaintiff cannot meet that burden, the claim is dismissed.  And even if the plaintiff does meet that burden, the defendant can still secure dismissal of the plaintiff's claim by establishing "each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d); *Better Bus. Bureau of Metro. Dallas v. BH DFW, INC.*, 402 S.W.3d 299, 305 (Tex. App.—Dallas 2013, pet. denied).

If a defendant is successful in dismissing any of the plaintiff's claims, in whole or in part, the trial court must award the defendant his (a) court costs and attorneys' fees, (b) any other expenses incurred in defending against the lawsuit, and (c) such sanctions as may be needed to deter similar actions in the future. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a).

## IV.   ARGUMENTS AND AUTHORITIES

### A.   The TCPA applies in federal court diversity cases.

A federal court sitting in diversity applies state substantive law and federal procedural rules. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Under *Erie* and its progeny, courts perform a three-step analysis to determine whether a state's substantive law applies in federal court. *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333-36 (5th Cir. 2011). First, the court determines whether the law is procedural or substantive in nature. *Id.*  Second, if the law is deemed substantive, the court must then determine whether the law conflicts with federal procedural rules. *Id.*  Third, if the law does not conflict with federal procedural rules, the court evaluates whether the law serves to discourage forum shopping and avoid inequitable administration of the laws. *Id.*  The TCPA satisfies all three *Erie* factors and applies in this case.

Applying the TCPA in this case is consistent with Fifth Circuit precedent, which has repeatedly "assumed" without the deciding that the TCPA applies in federal diversity actions under *Erie*. *Diamond Consortium, Inc. v. Hammervold*, 733 Fed. App'x 151, 154 (5th Cir. 2018), *reh'g*

*denied* (Jun. 4, 2018) (assuming without deciding that the TCPA applies in federal court); *Cuba v. Pylant*, 814 F.3d 701, 706 (5th Cir. 2016) ("To decide whether the appeals are timely, we first review the TCPA framework, which we assume—without deciding—controls as state substantive law in these diversity suits.").[7]

Applying the TCPA is also consistent with the holding of some federal district courts in Texas, including the Northern District of Texas. *See, e.g.*, *Hammond v. Lovings*, No. 5:15-CV-00579-RP, 2016 WL 9049579, at *2-3 (W.D. Tex. May 25, 2016); *Haynes v. Crenshaw*, 166 F. Supp. 3d 773, 776 (E.D. Tex. 2016); *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2015 WL 390664, at *1 (N.D. Tex. Jan. 29, 2015); *Williams v. Cordillera Commc'ns, Inc.*, No. 2:13-CV-124, 2014 WL 2611746, at *1 (S.D. Tex. June 11, 2014).[8]

## 1.   The TCPA provides substantive rights under Texas law.

As noted above, under the first step of the three-step *Erie* analysis, the court evaluates whether the state law is substantive or procedural in nature. The TCPA confers significant *substantive* protections under Texas law. The express purpose of the TCPA is "to encourage and safeguard constitutional rights of citizens to petition, speak freely, associate freely, and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (providing

---

[7] *See also Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) ("The applicability of state anti-SLAPP statutes, such as the TCPA, in federal court is an important and unresolved issue in this circuit."); *Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2015) (citing *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 753 (5th Cir. 2014)) ("We have not specifically held that the TCPA applies in federal court; at most we have assumed without deciding its applicability.").

[8] Other federal district courts in Texas, including the Northern District of Texas, have found that the TCPA does not apply. *See O'Gara v. Binkley*, No. 3:18-CV-2603-B, 2019 WL 1864099, at *1 (N.D. Tex. Apr. 24, 2019) (Boyle, J.); *Sw. Airlines Co. v. Roundpipe, LLC*, No. 3:18-CV-0033-G, 2019 WL 1315896, at *9 (N.D. Tex. Mar. 22, 2019) (Fish, J.); *William Noble Rare Jewels, L.P. v. Sky Glob. L.L.C.*, No. 3:18-CV-01566-N, 2019 WL 935954, at *1 (N.D. Tex. Feb. 25, 2019) (Godbey, J.); *Star Sys. Int'l Ltd. v. Neology, Inc.*, No. 4:18-cv-00574, 2019 WL 215933 (E.D. Tex. Jan. 16, 2019), appeal filed, No. 19-40053 (5th Cir. Jan. 25, 2019); *Mathiew v. Subsea 7 (US) LLC*, No. 4:17-cv-3140, 2018 WL 1515264 (S.D. Tex. Mar. 9, 2018); *Rudkin v. Roger Beasley Imports, Inc.*, 2017 WL 6622561, at *2-3 (W.D. Tex. Dec. 28, 2017), *report and rec. accepted*, 2018 WL 2122896 (W.D. Tex. Jan. 31, 2018).

---

that the TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern").  "To achieve this, the TCPA provides a means for a defendant, early in the lawsuit, to seek dismissal of certain claims in the lawsuit. If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." *NCDR, LLC v. Mauze & Bagby, PLLC*, 745 F.3d 742, 746 (5th Cir. 2014) (citations omitted).  One court in the Southern District of Texas has observed that the TCPA is effectively substantive because its procedural features (most notably its expedited disposition provision) "are designed to prevent substantive consequences—the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit under state law . . . ." *Williams v. Cordillera Commc'ns, Inc.*, No. 2:13-CV-124, 2014 WL 2611746, at *1 (S.D. Tex. June 11, 2014); *see Allen v. Heath*, No. 6:16-CV-51-MHS-JDL, 2016 WL 7971294, at *3 (E.D. Tex. May 6, 2016), *report and recommendation adopted,* No. 6:16-CV-51, 2016 WL 3033561 (E.D. Tex. May 27, 2016) (finding that the TCPA is substantive).

In addition to providing an opportunity for early dismissal of non-meritorious, retaliatory lawsuits, the TCPA provides for the award of court costs, reasonable attorneys' fees, and expenses to a successful movant, as well as sanctions "as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE § 27.009(a). The allocation of the burden of proof and the right to affirmative relief are substantive in nature and controlled by state law.  *See Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 21 (2000); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461-62 (5th Cir. 2002).

Because the TCPA protects substantive First Amendment rights of free speech, petition, association, and advocacy with mechanisms that aid in safeguarding those values, the TCPA should be applied in federal court under *Erie*.

> **2.      The TCPA does not conflict with Federal Rules of Civil Procedure 12(b)(6) and 56.**

Under the second step in the three-step *Erie* analysis, the court evaluates whether the state law conflicts with federal procedural rules.  The Fifth Circuit has not yet decided the issue of whether the TCPA conflicts with the Federal Rules. *See Block v. Tenenhaus*, 867 F.3d 585, 589 n.2 (5th Cir. 2017).  In this context, neither Rule 12(b)(6) nor Rule 56 conflicts with the operation of the TCPA in federal proceedings. Texas did not create a substitute to Federal Rules 12(b)(6) and 56. Rather, Texas created supplemental and substantive rights and remedies to provide added protection, beyond those provided in Rules 12(b)(6) and 56, to defendants who are sued under Texas law because of constitutionally protected activities. Moreover, Rules 12(b)(6) and 56 should be interpreted to avoid abridging the substantive rights protected by the TCPA, thereby avoiding any violation of the Rules Enabling Act.

The First Circuit embraced this reasoning in *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) by holding that Maine's anti-SLAPP statute, which includes a provision for expedited consideration of an anti-SLAPP motion, applied in federal court because Rules 12(b)(6) and 56 did not address the same subject as the anti-SLAPP statute. *Id.* at 88. Rather, Maine's anti-SLAPP expedited motion-to-dismiss provision and the Federal Rules were "addressed to different (but related) subject matters." *Id.*  The court reasoned that "Maine has not created a substitute to the Federal Rules, but instead created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities." *Id.; see also Henry v. Lake Charles Am. Press, LLC*, 566 F.3d

164, 168-69 (5th Cir. 2009) (holding Louisiana's anti-SLAPP law, which contains an expedited motion-to-dismiss provision, applicable in federal court); *Cuba v. Pylant*, 814 F.3d 701, 706 n.6 (5th Cir. 2016) ("The [*Henry*] court reasoned that even though the Louisiana anti-SLAPP statute was built around a procedural device—a special motion to dismiss—it nonetheless applied in federal court under the Erie doctrine because it was functionally substantive.").

Similar to Maine's anti-SLAPP statute, the TCPA does not displace or conflict with Federal Rules 12(b) and 56. The TCPA provides a "special" burden-shifting framework for dismissing claims based on or relating to the exercise of a right that the TCPA protects. It is confined to a limited category of cases targeting First Amendment activity. *See Godin,* 629 F.3d at 88.  Significantly, the TCPA does not contain a mechanism for testing the sufficiency of the complaint's allegations as provided for Rule 12(b)(6), nor does it contemplate granting judgment as a matter of law in the absence of a genuine dispute of material facts, as provided for by Rule 56.  Rather, the TCPA offers additional substantive protections beyond the procedures set forth by Rules 12(b) and 56, which can be reconciled with Rules 12(b) and 56.  Accordingly, the TCPA should control as the substantive law in federal court, as there exists no conflict between the TCPA and federal procedure.

### 3.      The TCPA furthers the "twin aims" of *Erie*.

The final step in the three-step *Erie* analysis considers whether application of the state law in federal court serves to further *Erie's* "twin aims" of discouraging forum shopping and avoiding inequitable administration of the laws. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003) (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679 (5th Cir. 1991)). Here, the twin interests promoted by *Erie* favor application of the TCPA in federal court. If the Court were to refuse to give effect to the TCPA, it would encourage filers to avoid initiating state court actions

and instead opt to file SLAPP suits in only certain federal forums in an effort to evade the TCPA's

protections, which undermines the stated purpose of the TCPA.

Because the TCPA is substantive, does not conflict with federal procedural rules, and

discourages forum shopping and inequity, the Court should apply the TCPA and dismiss the Third-

Party Plaintiffs' claims on this additional basis.

**4.      Alternatively, the Court should stay this case until the Fifth Circuit rules on the applicability of the TCPA.**

Presently on appeal before the Fifth Circuit is *Klocke v. UT Arlington*, No. 17-11320 (5th

Cir.), a Northern District of Texas case that is projected to resolve the issue of whether the TCPA

applies in federal court under *Erie* and its progeny. Oral argument on this matter was held on

September 5, 2018, and a decision has yet to be issued.  Because the Fifth Circuit's decision in

*Klocke* will likely inform the Court's assessment of the Third-Party Claims brought in this action,

McCowan requests, in the alternative, that if the Court is inclined to deny the TCPA motion to

dismiss, that the Court instead stay its disposition of the TCPA motion to dismiss pending the Fifth

Circuit's decision in *Klocke*.

Generally, a stay is appropriate "when the district court anticipates that the Fifth Circuit

will issue a ruling in an unrelated case that addresses unresolved issues in the stayed case." *Coker*

*v. Select Energy Servs., LLC,* 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015) (citing *Lincoln Gen. Ins.*

*Co. v. Autobuses Tierra Caliente, Inc.*, CIV. A. 3:04CV1535–L, 2006 WL 2474096, at *1 (N.D.

Tex. Aug. 28, 2006) (staying case where similar issues were on appeal before the Fifth Circuit)).

Here, the issuance of a brief stay of this matter would promote judicial economy, as the

Fifth Circuit's decision will likely simplify or resolve threshold questions of law that will

significantly impact the course of this litigation. Furthermore, a limited stay of this matter will not

prejudice the Third-Party Plaintiffs given the Third-Party Claims have only been pending since

April 2019 and no Third-Party Defendant other than McCowan has been served. Finally, a stay of this matter would work to prevent any hardship that McCowan might suffer by having to continue to defend the Third-Party Claims that are subject to early dismissal.

**B.     The Third-Party Claims should be dismissed under the TCPA.**

Because the Third-Party Claims are based on, related to, and in response to McCowan's exercise of his rights of free speech and right to petition, McCowan is entitled to invoke the substantive protections of the TCPA and seek dismissal of the Third-Party Claims unless the Third-Party Plaintiffs meet their burden to present "clear and specific" evidence of a prima facie claim for tortious interference. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c).  Additionally, McCowan is entitled to dismissal of the Third-Party Claims because he can conclusively establish valid defenses to the claims. *Id.* at § 27.005(d).

**1.     The TCPA applies to the Third-Party Claims because they are based on McCowan's exercise of his right of free speech and right to petition.**

"Exercise of the right of free speech' means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3).  Texas courts recognize that the statute "casts a wide net," and "[a]lmost any imaginable form of communication, in any medium, is covered." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018), *reh'g denied* (Jun. 22, 2018).  A "matter of public concern" is defined as including "an issue related to . . . environmental, economic, or community well-being," and "a good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(B), (E).

The Third-Party Claims are based on McCowan's alleged interference with the Termination Agreements by inducing VBF to: (1) file the instant suit against Ted Rea and Hall, including for fraud and breach of fiduciary duty in relation to VBF's business (Dkt. 66 ¶¶ 58, 60, 67); (2) refuse to pay severance payments to Wulf, in violation of his Termination Agreement (*Id.*

¶ 77); and (3) terminate and refuse to pay James Rea based on an allegedly false claim of Egregious Cause for his actions in relation to VBF's business (which is also the subject of the lawsuit claims against James Rea for fraud and breach of fiduciary duty) (*Id.* ¶ 87).   VBF allegedly terminated, refused to pay, and ultimately filed suit against the Third-Party Plaintiffs when it learned that the Third-Party Plaintiffs had defrauded VBF. (*Id.* ¶ 46 ("VBF informed Wulf that it would not pay him the remaining amounts due under his Separation Agreement . . . because it had conducted an internal investigation and concluded that [Wulf] had defrauded the company"); ¶ 47 ("VBF terminated James Rea from his employment at VBF, claiming Egregious Cause").[9]   Thus, any alleged inducement by McCowan would be based on, related to, or in response to McCowan's exercise of his rights to (1) free speech in providing his opinions and advising the company in his role as President of VBF; and (2) petition in authorizing filings with the courts, both in connection with a matter of public concern, *i.e.*, economic and community well-being and also a good, product, or service in the marketplace.   *See* TEX. CIV. PRAC. & REM. CODE § 27.001(7)(B); *see, e.g, Lona Hills Ranch, LLC v. Creative Oil & Gas Operating, LLC*, 549 S.W.3d 839, 848 (Tex. App.—Austin 2018, pet. filed), reh'g denied (July 2, 2018) (holding that the exercise of the right to petition under the TCPA includes a party's right to "initiate a lawsuit"); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (holding that blog and email communications related to homeowners' association (HOA) and real estate developer's misconduct in not following city ordinances raised issues related to the HOA's products or services in the marketplace as well  to the community and environmental well-being of the subdivision).

---

[9] "Egregious Cause" is defined under James Rea's Employment Agreement to include the employee's commission of any "willful act or willful omission involving dishonesty or fraud with respect to the Company" and "damage to or misappropriation or conversion of any funds or assets of the Company." (Dkt. 66 at Ex. A, § 5(c)(ii)).

Therefore, the TCPA applies, and the Third-Party Claims are subject to dismissal under the TCPA. *Id.* § 27.005(b).

### 2. The Third-Party Plaintiffs cannot establish, by clear and specific evidence, a prima facie case on each essential element of their tortious-interference claims.

The Third-Party Claims must be dismissed unless the Third-Party Plaintiffs establish "by clear and specific evidence a prima facie case for each essential element of the claims in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). To state a claim for tortious interference with an existing contract under Texas law, the Third-Party Plaintiffs must allege that there was (1) an existing contract subject to interference and (2) a willful and intentional act of interference with the contract (3) that proximately caused the plaintiff's injury and (4) caused actual damages or loss." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 813 (5th Cir. 2017) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)); *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). The Third-Party Plaintiffs fail to meet their burden under the TCPA because their allegations are insufficient to state a *prima facie* case, including for the reasons set forth below, and further, the Third-Party Plaintiffs have no clear and specific evidence to support claims they cannot adequately plead.

### a. As an officer of VBF, McCowan cannot tortiously interfere with the Termination Agreements to which VBF was a party.

The Third-Party Plaintiffs cannot allege or prove, by clear and specific evidence, that McCowan was legally capable of tortious interference. *See Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). To be legally capable of tortious interference, McCowan must be a "stranger to the contract" with which he allegedly interfered. *Id.* at 794-95. Because corporations can act only through human agents, the general rule is that "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Id.* at 795 (citations omitted). Thus, a corporation's agent is not a stranger to the contract and cannot tortiously interfere with the

corporation's contract. *Hansen*, 525 S.W.3d at 690 (citing *Holloway*, 898 S.W.2d at 795-96)); *see also also Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) ("Generally, as agents of the Defendant, the Defendants cannot be liable for interference with the city's contracts.") (citation omitted); *Celanese Corp. v. OneBeacon Am. Ins. Co.*, 3:15-CV-03822-N, 2016 WL 6496354, at *4 (N.D. Tex. May 20, 2016) ("Under Texas law, the parties to an ongoing business relationship cannot interfere with their own relationship.  In fact, 'a person must be a stranger to a contract to tortiously interfere with it.'  With very few exceptions, only a third party who is an outsider to the business relationship can be liable for tortious interference.  Because a corporation's agents share its legal identity, corporate agents . . . generally cannot be held liable for tortious interference with their principal's business relations.") (internal citations omitted); *Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 242 (Tex. App.—Dallas 1992, no writ) ("Where a . . . principal agent relationship exists, there can be no tortious interference with a contract as a matter of law.") (citation omitted).

Thus, to prove that a corporate agent interfered with the corporation's contract, the claimant must show that the agent "'acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests,' and thus could not have been acting within the scope of his agency at the time of the interference." *Hansen*, 525 S.W.3d at 691 (quoting *Holloway* 898 S.W.2d at 795-97)); *see also Benningfield*, 157 F.3d 369 at 379 (same); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997) (corporate officer or director cannot be held liable for interfering with corporation's contractual obligations as long as she is acting in good faith on corporation's behalf).  As explained by the Fifth Circuit, "[t]he Texas Supreme Court has provided guidance on determining when a corporation's agent is acting against the corporation's interests: If a corporation does not complain about its agents' actions, then the

agent cannot be held to have acted contrary to the corporation's interests." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) (citing *Powell Indus. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998)); *see also Hansen*, 525 S.W.3d at 695 ("Additionally, because a principal is a superior judge of its own best interests, we consider the principal's evaluation of the agent's actions when determining whether the corporate agent acted against the principal's interests.  If the principal 'does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests.'") (citations omitted).

Here, it is undisputed and the allegations and evidence establish that VBF was a party to each of the Termination Agreements and that McCowan is and was VBF's corporate agent at all relevant times, and is, therefore, not a stranger to VBF's contracts with the Third-Party Plaintiffs. (*See* Dkt. 66 at ¶ 7 (pleading that McCowan "has served as the chief executive officer of VBF since November 6, 2017"); *id.* at 16 ("McCowan is the current CEO of VBF."); *id.* at Ex. B (McCowan signing Wulf's Separation Agreement on behalf of VBF)); *id.* at Exs. A-D (showing VBF as a party to each contract)).  Because the Third-Party Plaintiffs seek to hold McCowan (the corporate agent) liable for tortiously interfering with VBF's (the corporation) contracts, the Third-Party Plaintiffs must prove, by clear and specific evidence, that McCowan acted so contrary to VBF's interests that his actions could *only* have been motivated by personal interest. *Hansen*, 525 S.W.3d at 694. The Third-Party Plaintiffs have not met this burden.  Indeed, the Third-Party Plaintiffs offer no allegations or evidence that McCowan acted in any way other than in good faith on VBF's behalf in relation to each of the Termination Agreements addressed in Counts 1-4. Furthermore, the Third-Party Plaintiffs do not allege or provide any evidence that McCowan ever acted willfully and intentionally to serve his own personal interests over VBF's interests with respect to the Termination Agreements.  And, even if the Third-Party Claims are construed to

allege that McCowan sought to benefit himself *and* VBF, such "mixed motives" are "insufficient to establish liability." *Powell Indus.*, 985 S.W.2d at 457; *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) ("Even an agent's mixed motives—benefitting himself and the corporation—are insufficient."). Finally, the Third-Party Plaintiffs fail to allege or provide any evidence that VBF objected to any of McCowan's actions as an agent of VBF.

### b.     VBF was exercising its rights under the Termination Agreements.

The Third-Party Plaintiffs cannot allege or prove, by clear and specific evidence, that McCowan's conduct amounted to a knowing inducement to VBF to breach its contract with each Third-Party Plaintiff. *See John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet. denied). Inducing a third party to do what it has a legal right to do does not constitute tortious interference. *ACS Investors*, 943 S.W.2d at 430. Here, because the allegations themselves show that VBF was acting well within its rights under the Termination Agreements with Hall, Ted Rea, and James Rea, there is no claim for tortious interference.

The only inducement alleged by the Third-Party Plaintiffs related to the Termination Agreements for Ted Rea and Hall (Counts 1 and 2) was for VBF to file this lawsuit against Ted Rea and Hall. Even assuming these Termination Agreements are enforceable (they are not, as explained in VBF's Proposed Second Amended Complaint (Dkt. 102-1 at ¶¶ 309-352) and VBF's Response and Brief in Support to Defendant Keith Driver's 12(b)(6) Motion to Dismiss (Dkt. 103 at 19-23)), neither agreement prohibits VBF from bringing a lawsuit. There is no covenant not to sue in the Termination Agreements. (*See* Dkt. 66, Exs. C, D). The sole basis for this claim by Ted Rea and Hall is the purported release provision in the Termination Agreements. But Texas law distinguishes between releases (which are affirmative defenses that do not automatically bar later claims) and covenants not to sue (which indeed bar later claims). *See Cypress Engine Accessories,*

*LLC v. HDMS Ltd. Co.*, 283 F. Supp. 3d 580, 587-88 (S.D. Tex. 2017) (noting "[u]nder Texas law, the court cannot imply a covenant not to sue on released claims from a settlement releasing those claims," as Texas Supreme Court precedent provides that "a release of a claim does not equate to a covenant not to sue on that claim. The issue is whether the specific release language 'includes a contractual obligation not to sue.'") (citation omitted); *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428–29 (Tex. 2015) ("Although the release provides an affirmative defense to future suits, we cannot construe it as including a covenant not to sue where, in fact, the plain language does not bar future suits.").[10]

The only inducement alleged by the Third-Party Plaintiffs related to the Employment Agreement for James Rea (Count 4) was for VBF to terminate James Rea for "Egregious Cause." But James Rea's Employment Agreement provided VBF with the legal right to terminate his employment for "Egregious Cause," which it exercised. (*See* Dkt. 66 at Ex. A, §§ 5(c)(i)-(iii) ("Employee's employment hereunder may be terminated by the Company for Cause," which means "either Egregious Cause or Non-Egregious Cause.")).

### c.      All claims against VBF have been discharged, released, and enjoined.

The Third-Party Plaintiffs cannot allege or prove, by clear and specific evidence, that McCowan induced or caused a breached of any agreement by VBF. Each of the Third-Party Claims is wholly derived from and dependent upon the Third-Party Plaintiffs' allegations that VBF breached their agreements.   Any underlying breach claim against VBF, however, has been discharged, released, and enjoined as a matter of law by the VBF Bankruptcy Plan. *See, e.g.,*

---

[10] Moreover, any interpretation that the release could constitute a covenant not to sue contravenes other provisions in the agreements that unambiguously demonstrate that the parties contemplated future litigation based on the agreements.  (*E.g.*, Dkt. 66 at Ex. C, § 7(i) ("In the event it becomes necessary to bring suit to enforce any provision of this Agreement…"); § 7(l) ("Each Party agrees to commence any action, suit or proceeding relating to this Agreement in the District Court.")).

*Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 485–86 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (holding patient's tortious-interference claim against doctors failed where patient waived any claim for breach of contract against hospital); *Hamlett v. Holcomb*, 69 S.W.3d 816, 820 (Tex. App.—Corpus Christi 2002, no pet.) (affirming dismissal of plaintiff's tortious-interference claim against one defendant because plaintiff's tortious-interference claim was premised on the other defendant's breach, and the other defendant did not breach the contract with plaintiff) (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) (failure of a claim for breach of contract necessarily defeated claim for breach of fiduciary duty that depended on breach of contract)); Ex. 1 (Judgment) at ¶ 6; Ex. 2 (Order confirming VBF Reorganization Plan) at Art. 9.13 at 26 (discharges and releases for VBF), Art. 9.17 at 29 (injunction on claims against VBF).

### d.    There are no allegations or evidence that McCowan actively persuaded VBF to breach the Termination Agreements.

The Third-Party Plaintiffs cannot allege or prove, by clear and specific evidence, that McCowan's interference proximately caused their injury. *Immobiliere Jeuness Establissement v. Amegy Bank*, 525 S.W.3d 875, 880 (Tex. App.—Houston [14th Dist.] 2017, no pet.).   The proximate-cause element requires allegations that McCowan took an active role in persuading VBF to breach the Termination Agreements.  *See Hambric Sports Mgmt., LLC v. Team AK, Inc.*, 3:09-CV-1662-L, 2010 WL 2605243, at *9 (N.D. Tex. June 29, 2010) (Lindsay, J.) ("To properly show proximate cause, a plaintiff must allege that 'the defendant took an active part in persuading a party to a contract to breach it.'") (quoting *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 493 (5th Cir. 2008)).  "It is necessary that there be some act of interference or of persuading a party to breach, e.g., by offering better terms or other incentives, for tort liability to arise."  *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL

6750047, at *24 (Tex. App.—Dallas Nov. 4, 2015, no pet.); *see also Davis v. Hyd-Pro, Inc.*, 839 S.W.2d 137, 139-40 (Tex. App.—Eastland 1992, writ denied)).

Here, the Third-Party Plaintiffs provide no allegations (let alone clear and specific evidence) that McCowan took an active role in persuading VBF to (1) file suit against Ted Rea or Hall; (2) terminate James Rea for cause; or (3) refuse to pay Wulf or James Rea amounts allegedly due to them.  At most, the Third-Party Claims allege that some of McCowan's actions on behalf of VBF were allegedly "consistent with" the "directions" of other third-party defendants. (*E.g.*, Dkt. 66 ¶¶ 35, 42, 48).  But this is not enough for tort liability to arise, especially because there is not a single allegation or shred of evidence that ***McCowan*** actively persuaded or directed VBF to act.

### e.   Counts 1 and 2 fail as a matter of law because attorneys' fees cannot be awarded as actual damages for tortious interference.

The Third-Party Plaintiffs cannot allege or prove, by clear and specific evidence, any actual damage or loss for Counts 1 and 2.  The only alleged damage with respect to Counts 1 and 2 is the "amount of expense" that Ted Rea and Hall have "incurred in defending against claims brought against [them] by VBF in violation of the release." (Dkt. 66 at ¶¶ 61, 70).  Attorneys' fees, however, generally "are in the nature of costs, not damages" and cannot be awarded as damages for alleged tortious interference.  *See Alma Grp., L.L.C. v. Palmer*, 143 S.W.3d 840, 846 (Tex. App.—Corpus Christi 2004, pet. denied) (reversing trial court award of attorneys' fees as damages for tortious interference); *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (same).  An exception to this general rule is that a plaintiff can recover attorneys' fees as damages "where a plaintiff has been involved in litigation with a third party as a result of the tortious act of another, plaintiff may recover in a ***separate*** suit for his reasonable and necessary expenses of the ***prior*** litigation." *Turner v. Turner*,

385 S.W.2d 230, 234 (Tex. 1964). Here, the Third-Party Plaintiffs do not allege or present evidence that the attorneys' fees they seek to recover were incurred in the prosecution or defense of a prior action, and the fees to which they refer are those incurred in this litigation. They cannot recover attorneys' fees through a cross-claim in the same suit. *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 399 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("Certain prerequisites must, however, be met. These include: (1) the plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action, and (2) the litigation must have involved a third party and must not have been brought against the defendant in the same action in which the fees are sought.").

Therefore, because the Third-Party Plaintiffs cannot establish, by allegations or clear and specific evidence, a prima facie case on each essential element of their tortious-interference claims, the Third-Party Claims should be dismissed pursuant to the TCPA.

### 3.  McCowan can conclusively establish valid defenses to the Third-Party Claims.

McCowan can conclusively establish the defenses of privilege and justification to the Third-Party Claims for tortious interference. A defendant has a privilege to interfere when he (1) is exercising his own rights in good faith or (2) has a right that is equal to or greater than that of the contracting party in the subject matter of the contract. *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 813–14 (5th Cir. 2017) (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 857 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). "Under Texas law, a defendant is justified in interfering with a plaintiff's contract if [he] exercises (1) [his] own legal rights, or (2) a good-faith claim to a colorable legal right, even if that claim ultimately proves to be mistaken. *Sullivan v. State Farm Lloyds*, 3:05-CV-2000-L, 2007 WL 1626077, at *7 (N.D. Tex. June 6, 2007) (Lindsay, J.) (citing *Prudential Ins. Co. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex.

2000); *Friendswood Dev. Co. v. McDade & Co.*, 925 S.W.2d 280, 282 (Tex. 1996); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991).

Both privilege and justification are applicable here, where all of McCowan's actions were taken in his capacity as a corporate agent of VBF, as set forth in Third-Party Plaintiffs' own allegations, and providing VBF with truthful information and honest advice also is privileged. *See* Section B(2)(a); *Community Health*, 525 S.W.3d at 697 (noting that the relationship between an agent and principal "give[s] rise to a legal right to interfere with another's contract, as required to support a justification defense to a tortious interference with contract claim"); *Eloise Bauer & Assocs., Inc. v. Elec. Realty Assocs., Inc.*, 621 S.W.2d 200, 203 (Tex. Civ. App.—Texarkana 1981, writ ref'd n.r.e.) ("[A]n employee, acting in good faith to further the interests of his employer, is privileged to induce his employer to breach a contract with a third person, so long as he does not use wrongful means.") (citing RESTATEMENT (SECOND) OF TORTS §§ 766, 767, 770 (1979)); . Further, the assertion of a lawsuit to determine or enforce legal rights is a valid justification. *See, e.g., Desch v. Wheatley*, SA-08-CA-0922-FB, 2010 WL 11506404, at *7 (W.D. Tex. Jan. 19, 2010), report and recommendation adopted, SA-08-CA-922-FB, 2010 WL 11506405 (W.D. Tex. Mar. 18, 2010), aff'd, 421 Fed. App'x. 394 (5th Cir. 2011) ("[D]efendants contend that they had a legal right to file suit . . . seeking a declaration that the 'corrected deed' to Unit #301 was fraudulent and void . . . ."); *Abraham v. Ryland Mortg. Co.*, 995 S.W.2d 80, 895 (Tex. App.—El Paso 1999, no pet.) ("Ryland established that the note secured by the deed of trust was in default, and that the deed of trust gave Ryland the right to foreclose on 1905 North Kansas in the event of default. . . . Accordingly, Ryland conclusively established that it was acting within its rights under the deed of trust . . . when it foreclosed on 1905 North Kansas.").

Both of these defenses are supported by the VBF Bankruptcy and the VBF Reorganization Plan and are either supported by or not contradicted by the allegations in the Third-Party Claims. Therefore, McCowan can conclusively establish valid defenses to the Third-Party Claims, and the Third-Party Claims should be dismissed pursuant to the TCPA.

## C.     The Court should award McCowan his costs and attorneys' fees.

In addition to dismissing the Third-Party Claims in their entirety, the TCPA requires the Court to award McCowan "(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE § 27.009(a).  Therefore, upon the dismissal of any part of the Third-Party Claims against McCowan pursuant to the TCPA, McCowan will submit an application for fees, costs, expenses, and sanctions for consideration by the Court.

## V.     CONCLUSION

For the reasons set forth above, Third-Party Defendant Norman McCowan respectfully requests that the Court dismiss the Third-Party Claims (Counts 1-4) pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE §§ 27.001, *et seq*.  McCowan further requests that the Court award him court costs, attorneys' fees, expenses, and any additional sanctions that the Texas Citizens Participation Action or justice and equity may require. McCowan also requests all other relief to which he may be entitled.

Dated: June 1, 2019                    Respectfully submitted,

                                       */s/ Nicole L. Williams*

                                       Nicole L. Williams
                                       Texas Bar No. 24041784
                                       nicole.williams@tklaw.com

                                       William L. Banowsky
                                       Texas Bar No. 01697125
                                       bill.banowsky@tklaw.com

                                       Jasmine S. Wynton
                                       Texas Bar No. 24090481
                                       jasmine.wynton@tklaw.com

                                       **THOMPSON & KNIGHT LLP**
                                       One Arts Plaza
                                       1722 Routh Street, Suite 1500
                                       Dallas, Texas 75201
                                       (214) 969-1700
                                       (214) 969-1751 (facsimile)

                                       */s/ Robert H. Lang*
                                       Robert H. Lang
                                       (appearing *pro hac vice*)
                                       rhlang@thompsoncoburn.com
                                       Patrick Morales-Doyle
                                       (appearing *pro hac vice*)
                                       pmoralesdoyle@thompsoncoburn.com
                                       Caroline Pritikin
                                       (appearing *pro hac vice*)
                                       cpritikin@thompsoncoburn.com
                                       Eileen E. Boyle Perich
                                       (appearing *pro hac vice*)
                                       eboyleperich@thompsoncoburn.com
                                       Adam C. Decker
                                       (appearing *pro hac vice*)
                                       adecker@thompsoncoburn.com

                                       **THOMPSON COBURN LLP**
                                       55 East Monroe, 37th Floor
                                       Chicago, IL 60603
                                       312-346-7500

                                       ***ATTORNEYS FOR THIRD-PARTY DEFENDANT
                                       NORMAN MCCOWAN***

## <u>CERTIFICATE OF SERVICE</u>

This document was filed electronically on June 1, 2019, and, in compliance with Local Civil Rule L.R. 5.1(d), a copy of this document has been served on all counsel of record.

*/s/ Jasmine Wynton*
Jasmine Wynton