IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VEROBLUE FARMS USA, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 3:19-cv-00764-L |
| LESLIE A. WULF, BRUCE A. HALL, § | |
| JAMES REA, JOHN E. REA, and KEITH § | |
| DRIVER § | |
| § | |
| Defendant. § | |

## REPLY IN SUPPORT OF KEITH DRIVER'S 12(b)(6) MOTION TO DISMISS

Defendant, Keith Driver ("Driver"), files his Reply to Plaintiff VeroBlue Farms USA, Inc.'s ("Plaintiff" or "VeroBlue") Response and Brief in Support to Defendant Keith Driver's 12(b)(6) Motion to Dismiss (the "Response").[1]

## ARGUMENTS AND AUTHORITIES

**A.  Plaintiff's Claims Clearly Fall Within the Scope of the Release Agreement.**

At no time in the year that Plaintiff has been prosecuting its claims against Driver has Plaintiff denied the existence of the Release Agreement that releases all claims of any nature, known or any known, against Driver. As demonstrated below, that all-encompassing Release Agreement covers each and every of the claims currently in Plaintiff's live pleading, but also the new claims raised by the Second Amended Complaint which Plaintiff seeks leave to file.

However, in an effort to circumvent the clearly valid and enforceable Release Agreement executed by both Driver and Plaintiff, Plaintiff relies on insufficiently pled accusations and outright misrepresentations to the Court regarding the scope of the Release Agreement and how it

---

[1] All undefined capitalized terms used herein shall have the meaning as set out in the Resistance or Driver's Motion to Dismiss [Dkt. Nos. 67-69].

was procured. Despite these efforts, it is clear that Plaintiff's claims fall directly within the scope of the Release Agreement, which should result in all of Plaintiff's claims against Driver being dismissed.

Plaintiff alleges that the Release Agreement "speaks specifically only to the 'Egregious Clause Claims'" and argues that this definition does not include fraud, breach of fiduciary duty, or conspiracy. [Dkt. No. 103, p. 22]. However, the Release Agreement in actuality states that Plaintiff releases Driver from all "VBF Releasee Claims," which is defined as:

> *any and all* charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), *of any nature whatsoever, known or known* … which VBF Releasees now have, own, hold or to which the VBF Releasees at anytime heretofore had, owned, or held against each of the Driver Releasers, *including without limitation*, the Egregious Clause Claims.

(App. 0052) (emphasis added).[2] With this broad language, the parties clearly agreed to release *all* claims, including fraud, breach of fiduciary duty, and conspiracy, not carve them out as argued by Plaintiff. Further, it is clear that this Release Agreement — which Plaintiff drafted — included all actions, known or unknown, Driver took as an employee of Plaintiff. The recitations alone show this by stating that "VBF USA has claims against Driver that he has breached the Employment Agreement because, among other things … Driver has engaged in other business interests and engagements outside of VBF USA (the "Egregious Cause Claims")." (App. 0049). If Plaintiff wished to retain the right to sue for any unknown claims that it discovered after execution, including fraud, breach of fiduciary duty, and conspiracy, it could have carved those claims out of the Release Agreement. This is especially true because: (1) Plaintiff has specifically plead that it was suspicious of Driver in 2017; and

---

[2] All references to an Appendix (App. ___) refer the Court to Driver's Appendix to Brief in Support of Rule 12(b)(6) Motion to Dismiss [Dkt. No. 69].

**REPLY IN SUPPORT OF KEITH DRIVER'S 12(b)(6) MOTION TO DISMISS**  PAGE 2

(2) the Release Agreement's recitations show that Plaintiff believed it had current causes of actions against Driver.

While Plaintiff now alleges that "[Plaintiff] did not learn of the fraudulent concealment, fraudulent misrepresentation, misappropriations or other misconduct by Driver until at least March 2018," this statement is belied by Plaintiff's prior pleadings. [Dkt. No., p. 20]. Specifically, Plaintiff alleges in its Resistance to Defendant's Motion to Dismiss filed in Iowa that "[b]y 2017, non-Defendant VBF directors became suspicious of Defendants and VBF fired Defendants. VBF terminated Driver on January 13, 2017…." [Dkt. No. 25, p. 4] (the "Resistance"). Thus, Plaintiff admitted that it executed the Release Agreement with some level of knowledge regarding Driver's alleged bad acts, which means Plaintiff knew it could have drafted the agreement to exclude certain claims.

Further, Plaintiff alleges in the Complaint that the other "Founders," which includes Defendants Wulf, Hall, James Rea, and Ted Rea, participated with or directed Driver's activities. [Dkt. No. 102-8, ¶ 18-229]. Since the other "Founders," who included the CEO of VeroBlue at the time, knew of these activities, Plaintiff is also charged with their knowledge. Plaintiff is attempting to artfully plead around the fact that Plaintiff — through the CEO and other officers/directors at the time — knew everything Driver did prior to the Release Agreement by arguing that the *current* control persons of Plaintiff did not know at that time, even though every other director and officer knew at the time. The current control persons are not suing on behalf of themselves, only on behalf of Plaintiff. And by Plaintiff's own pleading, they admit that the other officers and directors knew about Driver's actions at the time of the Release Agreement. Thus, Plaintiff's attempt to plead lack of knowledge is negated by its own pleading.

Finally, the Chief Judge of the District Court for the Northern District of Iowa not only rejected the argument that Plaintiff's claims were not covered by the Release Agreement, but made the following findings in his Order:

- "Any claims that could arise under the Employment Agreements implicate the Termination Agreements." [Dkt. No. 50, p. 9].

- "Based on the alleged facts, I find that Plaintiff's claims arise under the Termination Agreements…" [Dkt. No. 50, p. 10].[3]

Plaintiff, with coaching from the Iowa Northern District's Order, is now trying to revise history to avoid enforcement of the Release Agreement. However, Plaintiff's claims fall directly within the scope of the Release Agreement. Therefore, Plaintiff's claims should be dismissed.

**B.     Plaintiff Pled Insufficient Facts that the Release Agreement Was Entered into Fraudulently.**

Plaintiff's First Amended and Second Amended Complaint fail to allege any claim not barred by the Release Agreement because Plaintiff does not provide sufficient pled facts of: (1) any material misrepresentations or non-disclosures in the negotiations of the Release Agreement; and (2) any reliance by Plaintiff on any alleged material misrepresentation or non-disclosure in the negotiations of the Release Agreement. Instead, Plaintiff attempts to artfully plead around these requirements by providing vague and conclusory allegations of lack of knowledge of *potential*

---

[3] The Chief Judge of the Northern District of Iowa made other significant findings in his Order, including:

- "The amended complaint contains no reference to the Termination Agreements." [Dkt. No. 50, p. 12].

- "Plaintiff's allegations of fraud in its amended complaint do not extend to the creation and execution of the Termination Agreements." [Dkt. No. 50, p. 13].

- "The Parties appeared to have relatively the same experience and sophistication in negotiating the Termination Agreements and each were represented by counsel." [Dkt. No. 50, p. 13, n. 3].

- "Plaintiff has not set forth any facts to suggest that discovery would reveal the forum-selection clauses or Termination Agreements were fraudulently procured. Nor has it sought to rescind those agreements based on fraud." [Dkt. No. 50, p. 13, n. 4].

*claims* that allegedly occurred many months prior to the Release Agreement being entered into, which are insufficient to support a claim that the Release Agreement was procured by fraud.

As with the Amended Complaint [Dkt. No. 9], the factual allegations in the Second Amended Complaint are simply not pled with the particularity required in a complaint alleging multiple counts of fraud against numerous defendants. Rule 9(b) "prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009). The goals of Rule 9(b) are to "provide[] defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to their reputation and goodwill, reduce[] the number of strike suits, and prevent[] plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Grubbs*, 565 F.3d at 190 (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)). A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002); *United States, ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (Rule 9(b)'s particularity requirement generally means, "at a minimum . . . that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."). Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *United States ex rel. Williams v. McKesson Corp.*, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

In this case, the First and Second Amended Complaints fail to satisfy the Fifth Circuit's stringent pleading standards for claims of fraud, including that the Release Agreement was procured by fraud. Plaintiff fails to identify the "circumstances" of the alleged fraudulent

concealment, misrepresentations, constructive fraud, and conspiracy to commit fraud. *Herrmann Holdings Ltd.,* 302 F.3d at 564-65. Specifically, Plaintiff states that Driver's "direct misrepresentations related to VBF's technology and finances and concealment of the misappropriation of tens of millions of dollars from VBF constitute fraud on VBF" and that "VBF did not have knowledge of these misrepresentations and omissions prior to signing the Driver Agreement." [Dkt. 103, p. 28]. The only other "nondisclosure" Plaintiff relies on to allege fraud related to the Release Agreement is Jackson Walker's alleged representation of both parties, which Driver will show is an outright falsity. [Dkt. 103, p. 28].

First, Plaintiff's allegation that it had no knowledge of these misrepresentations and omissions prior to signing the Release Agreement directly contradicts Plaintiff's allegations in both the First and Second Amended Pleading. As admitted by Plaintiff, at the time of the Release Agreement, Driver and the other Defendants comprised VeroBlue Farms USA, LLC's corporate suite and board of directors. Plaintiff also alleges that Driver and the other Defendants conspired together to conduct the complained of fraud. Accordingly, Plaintiff's own pleadings allege that the persons in control of VeroBlue Farms USA, LLC as of January 13, 2017, were completely aware of Driver's alleged bad acts and entered into the Release Agreement with such knowledge. Therefore, there can be no fraudulent inducement or fraud in the procurement of the Release Agreement when Plaintiff is alleging that it in fact knew about all of the alleged bad acts at the time it executed the Release Agreement. What is unclear is who specifically Plaintiff is now alleging that Driver should have informed of the alleged misrepresentations and omissions, since the entire board (or at least a majority of it) allegedly knew of the information at the time of the Release Agreement.

Second, the Release Agreement was created in order to terminate Driver's Employment Agreement and separate Driver from Plaintiff due to Plaintiff being suspicious of certain breaches of Driver's Employment Agreement. Plaintiff has not plead any facts showing how the misrepresentations and omissions it alleges "induced" Plaintiff into terminating Driver via the Release Agreement. Nor would it make sense that Driver had to do so as part of a termination agreement. Plaintiff's argument is that: (1) prior to the Release Agreement, it had suspicions about Driver, at best, or the other officers and directors knew about Driver's activities, at worst; (2) it decided to terminate Driver and release all claims; and (3) it now complains that it did not know how bad Driver was until after the Release Agreement was entered into. Plaintiff would have the Court believe that there was some sort of legal duty on Driver to disclose every potential "bad act" to one non-Defendant board member (even though all the other board members knew) prior to obtaining a Release Agreement, otherwise it is voidable. That position has no support in the law. Even if it were, it appears from the face of Plaintiff's Complaint that the other officers and directors of Plaintiff knew about Driver's actions anyways because they participated in them. [Dkt. No. 102-8, ¶¶ 18-229]. Under either scenario, Plaintiff's Complaints (all versions of them) are not viable under the law.

Third, the alleged vague "misrepresentations" contained in the Second Amended Complaint regarding Plaintiff's technology and finances occurred prior to Driver being an employee or fiduciary of Plaintiff (which is the sole basis of its non-disclosure claim), and, thus, cannot be used to support Plaintiff's claims based on Driver's employment. [Dkt. No. 102-8, ¶¶ 97, 101-02, 117-18, 127, 130, 143-44].[4] Moreover, Plaintiff fails to allege that these

---

[4] Driver did not become an employee of Plaintiff until July 1, 2016. (App. 0049).

misrepresentations were to actual investors of Plaintiff, which is necessary to support its fraud claims. [Dkt. No. 102-8, ¶¶ 97, 101-02, 117-18, 127, 130, 143-44].

Finally, Plaintiff's allegation that Jackson Walker represented both Plaintiff and Driver in procuring the Release Agreement is demonstrably false and Plaintiff has no evidence to support this serious accusation. In fact, the First and Second Amended Complaint contain no factual allegations supporting its contention that Jackson Walker represented both parties in relation to the Release Agreement. Instead, Plaintiff only offers the Court a bare, unsupported, and conclusory statement that "Jackson Walker essentially represented both parties to Driver's Termination Agreement." [Dkt. No. 103, p. 31]. Contrary to Plaintiff's baseless allegations, Driver was not represented by Jackson Walker at any time while negotiating or executing the Release Agreement. Driver was represented by Jay Wallace, an employment attorney at the same law firm currently representing Driver in this matter, Bell Nunnally & Martin LLP.[5] The negotiations included multiple drafts and months of negotiating different terms and language, all of which Mr. Wallace provided Driver legal advice and guidance on. Accordingly, Plaintiff's argument that the Release Agreement is invalid or unconscionable due to Jackson Walker's role in the transaction is entirely meritless.

Plaintiff's ability to make such a bold accusation against Driver without *any evidentiary support* for the veracity of the claim is significant to the Court's analysis of Plaintiff's other claims. This is especially true given how easily Plaintiff could have learned facts that establish its allegations regarding Driver's representation were wrong. Plaintiff has served dozens of subpoenas in this lawsuit and evidence of Jackson Walker's non-representation of Driver would have been

---

[5] Contemporaneously with this Reply, Driver files his Response to Plaintiff's Motion for Leave to Amend its Amended Complaint and Appendix thereto. [Dkt. Nos 117-18]. Driver refers the Court to page 0066 of the Appendix to Driver's Response to Plaintiff's Motion for Leave for an affidavit of Jay Wallace regarding his representation of Driver in negotiations for the Release Agreement.

evident from the documents in their possession. Moreover, this falsehood calls into question the reliability of all of the remaining allegations in Plaintiff's Amended Complaint, including: (1) what Plaintiff knew at the time it negotiated and executed the Release Agreement; and (2) whether Driver made any material misrepresentation or nondisclosure. Accordingly, Driver's Rule 12(b)(6) Motion to Dismiss should be granted and all claims brought by Plaintiff against Driver should be dismissed with prejudice.

C. **The Release Agreement Is Valid and Enforceable Because Plaintiff Waived Any Claim of Reliance.**

Texas law favors and encourages voluntary settlements and orderly dispute resolution, which is what occurred between Driver and Plaintiff in January of 2017. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). The ability of parties to fully resolve disputes between them with a release is a compelling concern for courts. *Id.* Plaintiff argues that the Release Agreement is void because it was procured by fraud. However, Driver and Plaintiff waived the right to assert fraud in procuring the Release Agreement.

Reliance by the party asserting fraud is an element of the defenses of fraudulent inducement, fraudulent concealment, and fraud by nondisclosure. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (false representation "was intended to be and was relied upon by the injured party" as element of fraudulent inducement); *Wise v. SR Dall., LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.) ("the listener relies on the nondisclosure resulting in injury" is element of fraud by nondisclosure); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied) ("plaintiff's reasonable reliance on the deception" is an element of fraudulent concealment).

In general, a contract is subject to avoidance on the ground of fraudulent inducement. However, in some situations, the parties can agree in the contract to waive the right to assert fraud

by expressly disclaiming reliance. *See Leibovitz v. Sequoia Real Estate Holdings, L.P.,* 465 S.W.3d 331, 342 (Tex. App.—Dallas 2015, no pet.); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 58 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997).

The factors most relevant to whether there was a waiver of reliance precluding an affirmative defense of fraud are whether:

1. the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute;

2. the complaining party was represented by counsel;

3. the parties dealt with each other in an arm's length transaction;

4. the parties were knowledgeable in business matters; and

5. the release and non-reliance language was clear.

*Leibovitz,* 465 S.W.3d at 342; *Forest Oil Corp.*, 268 S.W.3d at 60. The court also added a sixth factor, stating the fact that an agreement is a "once and for all" settlement constitutes an additional factor for rejecting fraud-based claims. *Id*. at 58.

> **i. Both Plaintiff and Driver were Represented by Counsel, Negotiated the Language, Dealt with Each Other in an Arm's Length Transaction, and have Knowledge in Business Matters.**

The first factor set forth in *Forest Oil Corp.* for determining whether a disclaimer of reliance is enforceable is whether "the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute." *Leibovitz,* 465 S.W.3d at 342; *Forest Oil Corp.*, 268 S.W.3d at 60. Under *Forest Oil Corp.,* "the topic of the subsequent dispute" is the *specific contract term* being asserted against the party claiming fraud. *Id.* In this case, the sole purpose of the Release Agreement was for Plaintiff and Driver to terminate the Employment Agreement, release claims against each other, and move forward. The recitations show that both Plaintiff and Driver were

aware that each had potential claims against the other for breaches of the Employment Agreement and that each wanted resolve the situation by to releasing those claims:

> WHEREAS, on November 16, 2016, Driver delivered to VBF USA a letter providing notice that VBF USA was in breach of the Agreement and such breach constituted "Good Reason" under the Employment Agreement allowing Driver to terminate the Employment Agreement if such breach was not cured within thirty (30) days after such notice (the "**Good Reason Claims**"); and
>
> WHEREAS, VBF USA denies that Driver has "Good Reason" to terminate the Employment Agreement, and VBF USA has claims against Driver that he has breached the Employment Agreement because, among other things, Driver has failed to maintain his main office in Dallas, Texas, and Driver has engaged in other business interests and engagements outside of VBF USA (the "**Egregious Cause Claims**"); and
>
> WHEREAS without admitting any liability on the part of any Party, and in order to resolve their claims against each other, the Parties desire to restructure their business relationship to the extent provided herein;

Thus, it is clear that the parties discussed the issues of the claims between then and both decided to release *all claims, known or unknown, between them.* These recitations also make clear that the Agreement was an arm's-length transaction. At the time of the Release Agreement, Plaintiff and Driver were aware of competing claims of breach of the Employment Agreement, and there were attorneys on all sides. Despite Plaintiff's allegations regarding Jackson Walker, Driver was represented by Jay Wallace at Bell Nunnally & Martin LLP in the negotiation of the Release Agreement, while Plaintiff was admittedly represented by Jackson Walker.

Moreover, as noted in the Chief Judge from the Northern District of Iowa's Order Transferring the Case to the Northern District of Texas "[t]he Parties appeared to have relatively the same experience and sophistication in negotiating the Termination Agreements and each were represented by counsel." [Dkt. 50, p. 13, n. 3]. Plaintiff is not an inexperienced person relying upon Driver for information; it is a sophisticated business that drafted the Release Agreement with its own interests in mind. Accordingly, the first four factors establish that the parties waived reliance as it relates to the Release Agreement.

### ii. *The Release Agreement is Intended to be a "Once and For All" Settlement.*

While the Release Agreement does not specifically contain express non-reliance language, the Release Agreement does make it clear that it is intended to be a "once and for all" settlement that did not carve out any future claims. The Release Agreement states:

- "Whereas without admitting any liability on the part of any Party, and in order to resolve their claims against each other…." (App. 0049).

- "[i]t being agreed and understood that all obligations of the Driver and VBF USA under the Employment Agreement (payment or otherwise), the Stock Option Agreement and the Stock Option Grant Notice are terminated in their entirety." (App. 0049).

- "Driver and Driver Co., on their own behalf and on behalf of their respective equityholders … hereby irrevocably and unconditionally release, acquit and forever discharge VBF USA and VBF Canada … from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses … **of any nature whatsoever, known or unknown … which the Driver Releasers now have own, hold, or which the Driver Releasers at any time heretofore had, owned, or held against each of the VF Releasees**." (App. 0052).

- "VBF USA and VBF Canada … hereby irrevocably and unconditionally release, acquit and forever discharge the Driver Releasers from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or known … which VBF Releasees now have, own, hold or to which the VBF Releasees at anytime heretofore had, owned, or held against each of the Driver Releasers, including without limitation, the Egregious Clause Claims." (App. 0052).

This Release Agreement could not be clearer that the parties intended the Release Agreement to be a "once and for all" settlement of all claims related to Driver's employment. As the Texas Supreme Court stated in *Forest Oil Corp.,* the fact that an agreement is "once and for all" settlement is an additional factor for rejection of fraud-based claims. *See Forest Oil Corp.,* 268 S.W.3d at 58.

Finally, Plaintiff cites no authority concluding that a disclaimer of reliance is not enforceable by a fiduciary against a party to whom the duty was owed. See *Tex. Std. Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 774–76 (Tex. App.— Houston [14th Dist.] 2012, no pet.) (holding that the supreme court has not expressly held that fiduciary relationship bars disclaimer of reliance).

After considering all six factors under *Leibovitz,* and *Forest Oil Corp.,* the Court should conclude that Plaintiff and Driver disclaimed the element of reliance necessary to bring fraudulent concealment, fraudulent inducement, or by fraud by nondisclosure affirmative defenses and that the Release Agreement bars all of Plaintiff's claims against Driver.

**D.     Plaintiff Should Not be Given a Fourth Chance to Plead Additional Facts Regarding the Non-Existent Fraud it Seeks to Establish.**

Plaintiff — knowing its Second Amended Complaint still fails to state any claim for fraud that would void the Release Agreement — requests that "[a]s to the [Second Amended Complaint], if the Court finds that pleading is still deficient, Plaintiff requests leave to file a further motion for leave and proposed amended complaint to address the Court's ruling." [Dkt. No. 103, p. 24]. Plaintiff's Original Complaint was filed on July 31, 2018, nearly 11 months prior to this filing. [Dkt. No. 1]. Plaintiff has already amended once and sought leave to amend yet again in the year following its Original Complaint.  As discussed above, the First and Second Amended Complaints are vague, conclusory, and do not plead sufficient facts to support a claim that the Release Agreement was procured by fraud. This is true even after Plaintiff received coaching from the Iowa Northern District Court's Chief Judge's Order regarding the multiple short falls in Plaintiff's pleadings. [Dkt. No. 50]. If Plaintiff failed to plead facts to support its fraud claim in its first three complaints and after conducting ample discovery, it should not be given another chance to harass Driver with additional false, meritless, and trumped up allegations. Moreover, giving Plaintiff

another opportunity will prejudice Driver because Driver will be forced to incur additional attorneys' fees and costs related to filing another motion to dismiss based on the valid and enforceable Release Agreement. This is bolstered by the fact that Plaintiff has already harassed Driver into incurring the cost of filing two motions to dismiss and responding to an unwarranted Motion for Leave. Accordingly, Driver's Rule 12(b)(6) should be granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Driver should be dismissed for failure to state a claim in its inadequate pleadings and because all claims brought against Driver in the Amended Complaint were released in the Release Agreement.

Respectfully submitted,

By: */s/ Heath Cheek*
R. Heath Cheek
State Bar No. 24053141
hcheek@bellnunnally.com
Katie R. Beaird
Texas Bar No. 24092099
kbeaird@bellnunnally.com
**Bell Nunnally & Martin LLP**
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Telephone: (214) 740-1400
Telecopy: (214) 740-1499

**ATTORNEYS FOR DEFENDANT KEITH DRIVER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon counsel of record for all parties via ECF Service.

**DATED** this 14th day of June, 2019.

*/s/ Heath Cheek*

4499521_1.docx  /  10700.1