## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC.,<br>　　Plaintiff<br><br>v.<br><br>LESLIE A. WULF, BRUCE A. HALL, JAMES<br>REA, JOHN REA, and KEITH DRIVER,<br>　　Defendants/Counterplaintiffs | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION No. 3:19-cv-00764-L |

## FOUNDER DEFENDANTS' RESPONSE TO PLAINTIFF VEROBLUE FARM USA, INC.'S MOTION FOR LEAVE TO AMEND ITS AMENDED COMPLAINT

## TABLE OF CONTENTS

I.       INTRODUCTION.................................................................   3

II.      STATEMENT OF FACTS......................................................   5

III.     ARGUMENTS AND AUTHORITIES........................................   7

A. VBF Released All Claims against Hall and Ted Rea in the Termination

Agreements, thus the Claims Alleged Against them in the SAC are Futile

(Counts I-XIX)..................................................................   7

  1.  The Releases Contained in Ted Rea's and Hall's Termination

     Agreements Encompass VBF's Claims Against Them............   8

  2.  VBF Has Not and Cannot Sufficiently Allege Fraudulent Inducement

     to Avoid the Releases.................................................   9

B. Plaintiff Cannot Adequately Plead A Civil RICO Claim, Rendering

That Portion of Its Amendment Futile.....................................   13

  1.  Plaintiff fails to allege any predicate acts of mail or wire fraud

     with the requisite specificity.........................................   13

  2.  Plaintiff fails to adequately allege a pattern of activity............   17

  3.  Plaintiff fails to adequately plead the existence of a RICO

     Enterprise..............................................................   19

# TABLE OF AUTHORITY

Page(s)

Cases

*Abraham v. Singh,*
  480 F.3d 351 (5th Cir. 2007)..................................................................................... 22

*Acosta v. Insignia Energy Grp., Inc.,*
  2014 WL 5295320 (N.D. Tex. Oct. 16, 2014) ............................................................ 22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................... 10

*Atkinson v. Anadarko Bank and Trust Co.,*
  808 F.2d 438 (5th Cir.)........................................................................................ 22, 23

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
  343 F.3d 719 (5th Cir. 2003)..................................................................................... 20

*Boyle v. United States,*
  556 U.S. 938 (2009) ................................................................................................... 22

*Carpenter v. United States,*
  484 U.S. 19 (1987) ..................................................................................................... 17

*Clapper v. Am. Realty Inv'rs, Inc.,*
  2016 WL 302313, n. 14 (N.D. Tex. Jan. 25, 2016)..................................................... 21

*Crowe v. Henry,*
  43 F.3d 198 (5th Cir. 1995)........................................................................................ 23

*Delta Truck & Tractor, Inc. v. J.I. Case,*
  855 F.2d 241 (5th Cir. 1988)...................................................................................... 23

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
  822 F.2d 1242 (2nd Cir. 1987).................................................................................... 17

*Dresser Indus. v. Page Petroleum,*
  853 S.W.2d 505 (Tex. 1993)....................................................................................... 12

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
  385 F.3d 159 (2d Cir. 2004)....................................................................................... 21

*Flood v. Makowski,*
  2004 WL 1908221 (M.D. Pa. Aug. 24, 2004).............................................................. 24

*FMC Int'l A.G. v. ABB Lummus Glob., Inc.,*
  2006 WL 213948 (S.D. Tex. Jan. 25, 2006) ............................................................... 17

*Foufas,*
  867 F.2d 877 (5th Cir. 1989)...................................................................................... 23

*Gentry v. Resolution Trust Co.,*
  937 F.2d 889 (3rd Cir. 1991)...................................................................................... 16

*Ginsburg v. ICC Holdings, LLC,*
  2017 WL 5467688 (N.D. Tex. Nov. 13, 2017)............................................................. 22

*H.J., Inc. v. Nw. Bell Tel. Co.,*
  492 U.S. 229 (1989) ................................................................................................... 20

*Hack v. Executive Flight, Inc.,*
  1998 WL 460294 (N.D. Tex. 1998)............................................................................. 10

*Havard v. Collins,*

2013 WL 12363628 (N.D. Tex. Aug. 21, 2013) ............................................................ 18, 20, 22
*Hawkins v. Hutchison,*
  2007 WL 9758161 (N.D. Tex. May 10, 2007) .......................................................................... 18
*In re Burzynski,*
  989 F.2d 733 (5th Cir.1993) ...................................................................................................... 17
*Jackson v. BellSouth Telecommunications,*
  372 F.3d 1250 (11th Cir. 2004) ................................................................................................. 21
*Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.,*
  20 S.W.3d 692 (Tex. 2000) ........................................................................................................ 12
*Little v. Liquid Air Corp.,*
  37 F.2d 1069, 1074 n.8 (5th Cir. 1994) (5th Cir. 1994) ......................................................... 10
*Malvino v. Delluniversita,*
  840 F.3d 223 (5th Cir. 2016) ..................................................................................................... 21
*Matter of Southmark Corp.,*
  88 F.3d 311 (5th Cir. 1996) ....................................................................................................... 10
*Mills v. Polar Molecular Corp.,*
  12 F.3d 1170 (2nd Cir. 1993) .................................................................................................... 17
*Montesano v. Seafirst Commercial Corp.,*
  818 F.2d 423 (5th Cir. 1987) ..................................................................................................... 16
*Moore v. Town N. Auto, Inc.,*
  2014 WL 3396100 (N.D. Tex. July 11, 2014) ......................................................................... 20
*Nat'l Org. for Women, Inc. v. Scheidler,*
  510 U.S. 249 (1994) .................................................................................................................... 24
*Null v. Easley,*
  2009 WL 3853765 (N.D. Tex. Nov. 18, 2009) ......................................................................... 22
*Oblio Telecom, Inc. v. Patel,*
  2009 WL 1650481 (N.D. Tex. June 10, 2009) .......................................................................... 22
*Paul v. Aviva Life & Annuity Co.,*
  2010 WL 5105925 (N.D. Tex. Dec. 14, 2010) .......................................................................... 18
*Schlumberger Technology Corp. v. Swanson,*
  959 S.W.2d 171 (Tex. 1997) ................................................................................................ 14, 15
*Shakeri v. ADT Sec. Servs., Inc.,*
  2013 WL 6498268 (N.D. Tex. Dec.11, 2013) ........................................................................... 20
*Sharif v. Wellness Int'l Network, Ltd.,*
  2007 WL 9711726 (N.D. Tex. May 9, 2007) ...................................................................... 17, 23
*Smith v. Ayres,*
  845 F.2d 1360 (5th Cir. 1988) .............................................................................................. 17, 18
*Spool v. World Child Int'l Adoption Agency,*
  520 F.3d 178 (2d Cir. 2008) ...................................................................................................... 21
*Stanissis v. Dyncorp Int'l LLC,*
  2015 WL 1931417 (N.D. Tex. Apr. 29, 2015) .......................................................................... 19
*Tel–phonic Services, Inc. v. TBS Int'l, Inc.,*
  975 F.2d 1134 (5th Cir. 1992) ................................................................................................... 21
*Thomas v. Chevron U.S.A., Inc.,*
  832 F.3d 586 (5th Cir. 2016) ..................................................................................................... 10
*TransFirst Holdings, Inc. v. Phillips,*

4

2007 WL 1468553 (N.D. Tex. May 18, 2007)..................................................................17, 18
*United States v. Bustamante,*
45 F.3d 933 (5th Cir. 1995)..........................................................................................21
*United States v. Phillips,*
664 F.2d 971 (5th Cir. 1981).........................................................................................22
*Victoria Bank and Trust Co. v. Brady,*
811 S.W.2d 931 (Tex. 1991).........................................................................................12
*Walker v. Allianz Life Ins. Co. of N. Am.,*
2009 WL 1883418 (N.D. Tex. June 30, 2009)..............................................................20
*Walsh v. America's Tele-Network Corp.,*
195 F. Supp. 2d 840 (E.D. Tex. 2002)...........................................................................18
*Whelan v. Winchester Prod. Co.,*
319 F.3d 225 (5th Cir. 2003).........................................................................................23
*Wildridge v. IER, Inc.,*
65 F.Supp.2d 429 (N.D. Tex. 1999)..............................................................................10
*Williams v. WMX Techs., Inc.,*
112 F.3d 175 (5th Cir. 1997).........................................................................................17
*Wimm v. Jack Eckerd Corp.,*
3 F.3d 137 (5th Cir. 1993).............................................................................................10

## Statutes

18 U.S.C. § 1961(3) ...............................................................................................................16
18 U.S.C. § 1962(c) ...................................................................................................7, 11, 23
18 U.S.C. § 1962(c), (d)........................................................................................................22
Iowa Code § 684.4(1)(a) .........................................................................................................6
Iowa Code § 684.4(1)(b)..........................................................................................................6
Tex. Bus. & Comm. Code § 24.005.......................................................................................11

## Rules

Fed. R. Civ. P. 15(a) ................................................................................................................6
Federal Rule of Civil Procedure 9(b).............................................................................17, 20
Rule 15 ...................................................................................................................................10

Defendants, Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), John E. Rea ("Ted Rea"), and James Rea ("James Rea") (collectively "Founder Defendants"), pursuant to Fed. R. Civ. P. 15(a), and file this Response ("Response") to Plaintiff VeroBlue Farms USA, Inc.'s ("VBF") Motion for Leave to Amend its Amended Complaint ("Motion for Leave"). In further support of this Response, Founder Defendants state:

## I.      INTRODUCTION

Plaintiff seeks leave to file a Second Amended Complaint ("SAC"), not because it has discovered additional information about Founder Defendants' actions as officers of VBF, but to further the campaign of its formerly-majority, now-sole shareholder, Alder Aqua, Ltd., to punish Founder Defendants and anyone else who questioned its control and direction of VBF.[1]   VBF seeks to double the number of claims against Founder Defendants, adding the following 11 claims against them to the 9 previously pled:

(1)      Uniform Voidable Transfer Act (Iowa Code § 684.4(1)(a);

(2)      Uniform Voidable Transfer Act (Iowa Code § 684.4(1)(b);

(3)      Actual Fraudulent Transfer (Tex. Bu. & Comm. Code § 24.005(a)(1);

(4)      Constructive Fraudulent Transfer (Tex. Bu. & Comm. Code § 24.005(a)(2);

(5)      Rescission – Termination Agreements, Selective Provisions and Declaratory Judgment;

(6)      Declaratory Judgment – James Rea;

(7)      Rescission – Employment Agreement – James Rea;

(8)      Rescission – Separation Agreement – Wulf;

(9)      Declaratory Judgment – Separation Agreement – Wulf;

---

[1] VBF filed for bankruptcy under Chapter 11 on September 21, 2018. Alder Aqua, Ltd. ("Alder") was the majority shareholder of VBF, and then the sole sponsor of VBF's Reorganization Plan. This Plan was confirmed on May 7, 2019. Alder is now the sole shareholder of VBF and directs its actions, including this litigation.

(10)    Restitution; and

(11)    Violations of Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962(c)).

Via the SAC, VBF also seeks to bring in one of Founder Defendants' attorneys (Sean Maniaci), their investment advisor (Canaccord), Mr. Wulf's daughter (Christine Gagne), and accuse a reputable Texas law firm of being complicit in Founder Defendants' racketeering (Jackson Walker).   VBF's damages prayer has ballooned from approximately $5M in its Complaint to over $90,000,000 now. The Court must reign in this scorched earth campaign, as many of these claims cannot be pursued by VBF and would substantially prejudice Founder Defendants.

Allowing VBF's proposed SAC would substantially prejudice Founder Defendants, in part because VBF executed a release of Defendants Hall and Ted Rea from any liability stemming from alleged actions or inactions taken while they were officers of VBF.   The Chief Judge of the U.S. District Court for the Northern District of Iowa already found that the agreements which contained these releases were enforceable, and in fact, ordered transfer of this case from the Iowa District Court to this District based on those very same agreements. It would be futile to permit VBF to add claims against Hall and Ted Rea considering these agreements and the prior rulings in this case.

Similarly, it would be futile to permit VBF to amend its Complaint to add a woefully inadequate RICO claim. The proposed RICO claim is inadequate on three levels. First, Plaintiff fails to meet Rule 9(b)'s pleading requirements for any of its predicate acts as the SAC is completely lacking in specific allegations regarding the "who, what, when, where, how, and why" of the allegations of mail fraud and wire fraud. Also, Plaintiff fails to establish a pattern of activity because it does not plead predicate acts that "amount to or pose a threat of continued criminal

activity." Finally, the SAC fails to distinguish between the RICO persons and the RICO enterprise, alleging that VBF is simultaneously the RICO enterprise and the victim of racketeering. Leave should not be granted to VBF to re-characterize transactions between sophisticated business parties as involving fraud and illicit activity. For these and the other reasons set out below, the Court should deny the Motion for Leave.

## II.   STATEMENT OF FACTS

Founder Defendants were the founders, minority shareholders, directors, and officers of VBF, a sustainable fish farming business. (Compl., ¶¶ 4-7.) After establishing VBF in October 2014, Wulf served as Chief Executive Officer; Hall served as Chief Financial Officer; Ted Rea served as Chief Operating Officer; and James Rea served as Director of Construction, Design and Tank Production, each from October 2014 until late 2017 - early 2018. (*Id.*, ¶¶ 4-7.)

In July 2016, each Defendant entered into an Employment Agreement with VBF that governed the terms of his employment and any eventual termination from VBF.[2] In late 2017, Wulf, Hall, and Ted Rea were all terminated by VBF *without* cause, and executed separate agreements (as to Ted Rea and Hall, the "Termination Agreements," as to Wulf, the "Separation Agreement") to that effect.[3] Hall's and Ted Rea's Termination Agreements contain release provisions, which provide, in part:

> *the Company*, on its own behalf and on behalf of the other Company Releasees, hereby irrevocably and unconditionally *release, acquit and forever discharge the [Defendant] Releasers from any and all charges, complaints, claims*, liabilities, obligations, promises, agreements, controversies, *damages, actions, causes of action, suits*, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), *of any nature*

---

[2] A copy of James Rea's Employment Agreements is attached to Defendants' Answer, Affirmative Defenses and Third-Party Claims (Dkt. No. 66) as Exhibit A. The other Defendants' Employment Agreements are substantially the same.

[3] These Termination Agreements and Wulf's Separation Agreements are attached to Defendants' Answer, Affirmative Defenses and Third-Party Claims (Dkt. No. 66) as Exhibits B, C, and D. Hall's and Ted Rea's Termination Agreements are again attached for reference here as **Exhibits 1 and 2.**

*whatsoever, known or unknown* ... which the Company Releasees now have, own, hold, or to which the Company Releasees at any time heretofore had, owned or held against each of the [Defendant] Releasers.

(Term. Ags., Ans., Dkt. No. 66, Exs. C, D, ¶ 4(b) (emphasis supplied)).

On July 31, 2018, Plaintiff filed this lawsuit in the U.S. District Court for the Northern District of Iowa, and purposefully omitted any reference to the Termination Agreements. These agreements not only contained the above-quoted releases, but also contained forum selection provisions naming the Northern District of Texas as the agreed forum for disputes. Founder Defendants immediately moved to transfer this suit to the Northern District of Texas, in accordance with these forum selection provisions. Chief Judge Leonard Strand of the Northern District of Iowa granted the Motion to Transfer, finding that the forum selection provisions of the Termination Agreements were enforceable, not obtained by fraud, and directed this matter to proceed in the Northern District of Texas.[4]

Plaintiff's amended claims squarely address actions Founder Defendants allegedly took, or failed to take, while employed by and as officers of VBF.   Any claims related to Founder Defendants' actions as officers and employees of VBF are governed by their Employment Agreements and, as to Hall and Ted Rea, were released pursuant to the Termination Agreements. VBF's other new claims: including over 150 paragraphs of factual allegations, all relate to actions that Founder Defendants took in connection with soliciting investments in VBF almost five years ago. This information is not new, it is just being raised now that Alder has taken sole control of VBF through bankruptcy. And despite the sheer volume of allegations, the SAC completely fails to sufficiently recharacterize Founder Defendants' actions as an illicit racketeering enterprise to support a civil RICO claim. This Court should not permit VBF to amend its complaint, broaden

---

[4] A copy of the Chief Judge Leonard Strand's March 27, 2019 Order Granting Transfer (Dkt. No.50) ("March 27, 2019 Order") is attached hereto as **Exhibit 3** and incorporated herein by reference.

1444671v1 - V0265.00001 Resp to VBF Mot_Amend (final)

the scope of discovery and allegations by another two years, and turn this matter into a quasi-criminal action on behalf of a disgruntled investor.  Plaintiff should not be granted leave to amend and this case and should proceed on the initial claims pled.

## III.   ARGUMENTS AND AUTHORITIES

"Although Rule 15 . . . prescribes a liberal standard for the amendment of pleadings, leave to amend is by no means automatic." *Hack v. Executive Flight, Inc.*, 1998 WL 460294 at *1 (N.D. Tex. 1998) (citing *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996), cert. denied, 117 S.Ct. 686 (1997); *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1074 n.8 (5th Cir. 1994) (en banc)). Rather, leave to amend remains within the discretion of the district court. *Id.* The Court should consider: "(1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) undue prejudice to the opposing party; and (3) *futility of the amendment.*" *Wildridge v. IER, Inc.*, 65 F.Supp.2d 429,430 (N.D. Tex. 1999) (emphasis added) (citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

### A.  VBF Released All Claims against Hall and Ted Rea in the Termination Agreements, thus the Claims Alleged Against them in the SAC are Futile (Counts I-XIX).

VBF should not be permitted to add claims against Hall and Ted Rea that are futile, specifically when VBF has broadly released both individuals.  While courts are lenient in permitting amendments, such an amendment may be denied where that amendment would be futile. *See Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 592 (5th Cir. 2016). An amendment is futile if "the theory presented in the amendment lacks legal foundation." *Id.* at 591. The test for determining futility is the same one applied under Rule 12(b)(6), that is, whether the pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* at 592 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Here, the releases are

broad and encompass all claims, even future ones.   Although VBF has attempted to plead

fraudulent inducement to avoid these releases, as the Iowa District Court previously alluded to, the

facts as plead belie such a finding, and the agreements and their releases must be enforced.

> 1. <u>The Releases Contained in Ted Rea's and Hall's Termination Agreements Encompass VBF's Claims Against Them.</u>

All of Plaintiffs' pending 9 claims against Founder Defendants for fraud, breach of

fiduciary duty, conspiracy, and others, as well as its proposed claims for Uniform Voidable

Transfer Act under Iowa statute [Counts V and VI]; Fraudulent Transfer under Tex. Bus. & Comm.

Code § 24.005 [Counts VII and VIII]; Rescission – Termination Agreements [Count XIV];

Declaratory Judgment [Count XIII]; Restitution [Count XIX]; and Violations of Racketeer

Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962(c)) [Count XXVII], have

been released in  Hall and Ted Rea's Termination Agreements.  There, VBF agreed to:

> hereby ***irrevocably and unconditionally release, acquit and forever discharge*** the [Defendant] Releasers from ***any and all charges, complaints, claims, liabilities,*** obligations, promises, agreements, controversies, ***damages, actions, causes of action, suits,*** rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), ***of any nature whatsoever, known or unknown***…

(Term. Ags.  Exs. 1, 2, ¶ 4(b) (emphasis supplied).)  Accordingly, any cause of action brought

against Hall or Ted Rea is futile on its face, as VBF has released both Defendants "irrevocably and

unconditionally" from "any and all … causes of action … of any nature whatsoever, known or

unknown".

Releases are subject to the usual rules of contract construction.  *Baty v. ProTech Ins.

Agency*, 63.S.W.3d 841, 848 (Tex.App.—Houston [14th Dist.] 2001, pet. denied).  A release of

claims operates to discharge the released parties from these claims and to extinguish these claims

against the released parties as effectively as would a prior judgment between the parties. *See El*

*Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8. S.W.3d 309, 314 n. 15 (Tex. 1999); *Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1993). Therefore, a release of a claim is an *absolute bar* to any right of action by the releasing party on the claim. *See Dresser Indus.*, 853 S.W.2d at 508. Although a "release must 'mention' the claim to be effective" the parties need not "anticipate and identify each potential cause of action relating to the release's subject matter." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000).

The releases present in Hall and Ted Rea's Termination Agreements do include a laundry list of claims, including age discrimination, ERISA, Title VII, regulatory violations, wage and salary violations. But that clause also specifically releases any agreements, arrangements, or understandings that the parties may have had *"for anything occurring prior to"* Defendants' termination. (Term. Ags., Exs. § 4(a) (emphasis supplied).) The releases, then, are not expressly limited to a specific claim or transaction, but rather purport to cover *"any and all ... causes of action ... of any nature whatsoever, known or unknown,"* "irrevocably and unconditionally." No Texas law prohibits such broad form release. *Victoria Bank and Trust Co. v. Brady*, 811 S.W.2d 931 (Tex. 1991). Although, releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims and future damages. *Id* at 698. The lump sum payments that VBF made to Hall and Ted Rea in consideration for their mutual releases and separation form the company evidence that these releases were intended to be broad and forward looking. There is no way to read the releases in the Termination Agreement, except to extend to all claims, "known or unknown," as encompassing both existing and future claims.

2. **VBF Has Not and Cannot Sufficiently Allege Fraudulent Inducement to Avoid the Releases.**

Once Founder Defendants placed the Termination Agreements, including their broad releases and forum selection provisions, before the Iowa District Court, VBF argued the

Termination Agreements were procured by fraud.  VBF raised many of the same allegations it

brings in the SAC to attempt to void these agreements as fraudulently induced, including: that

VBF was not yet aware of Founder Defendants "bad acts"  (SAC, ¶¶ 216, 225 compare to VBF

Resp. to Motion to Transfer, Dkt. No. 25, pp. 5, 10-12) and that Founder Defendants were on both

sides of these agreements. (SAC, ¶¶ 213, 225 compare to Dkt No. 25, pp. 10-12).  These facts

alone do not allege fraud enough to ignore the clear, broad releases of Hall and Ted Rea.

Perhaps most curious is VBF's allegation that it "knew of no separate counsel representing

Ted Rea as to [his] Termination Agreement or Hall as to [his] Termination Agreement." (SAC, ¶

213.)  Founder Defendants' current counsel in this litigation, Kimberly Annello, represented the

Defendants in connection with the Termination and Separation Agreements, adverse to both

Jackson Walker and the Denver law firm of Davis Brown & Stubbs, who is believed to be Alder's

counsel, but who also reviewed and consulted with VBF on the Termination and Separation

Agreements.[5]  VBF's attorneys who filed the initial Complaint in this matter, (a separate Davis

Brown Law Firm of Des Moines, Iowa) corresponded with Ms. Annello about Defendant Wulf's

purported breach of his Separation Agreement and James Rea's purported termination for

"egregious cause" in early 2018, long before this case was filed.   And Ms. Annello's

correspondence with Jackson Walker and Davis Brown (of Denver) related to the Termination

Agreements, some of which was contentious, was produced to VBF in discovery in this case on

April 30, 2019, before the SAC was filed. But most importantly, this fact regarding Founder

Defendants' separate representation was part of the basis for the Iowa's District Court's order

enforcing the forum selection provisions of the Termination Agreements: "The parties appeared

to have relatively the same experience and sophistication in negotiations of the Termination

---

[5] This fact was set forth in Defendants' Reply in Support of their Motion to Transfer [Dkt. No. 30], p. 2 n. 5.

Agreement and *each were represented by counsel.*" (March 27, 2019 Order, **Ex. 3**, p. 13, n. 3 (emphasis supplied).)

The Iowa District Court was already presented with the question of whether the forum selection provisions in the Termination Agreements were procured by fraud. The Court not only found that VBF did not establish that those specific provisions were not procured by fraud, but went farther to find:

1) "VeroBlue's claims *arise under* the Termination Agreements" (March 27, 2019 Order, Ex. 3, p. 10); and

2) "VeroBlue has not set forth any facts to suggest discovery would reveal the forum selection clauses *or the Termination Agreements were fraudulently procured.* (Id., p. 14, n.4 (emphasis supplied).)

Although the Iowa District Court also noted that VBF had not plead fraudulent inducement of the Termination Agreements or attempted to rescind them, those facts were not the primary basis of its holding. If the Iowa District Court found that the Termination Agreements governed VBF's claims such that the forum selection provision should apply, then the other provisions of those agreements, including the releases, should also apply. VBF has mischaracterized the facts already presented to and ruled upon by the Iowa District Court to undo this ruling and avoid the clear and broad releases that VBF (and its counsel) negotiated.

This case is squarely on point with *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997). There, the Texas Supreme Court found that a release executed as part of a settlement barred one of the party's later claim to rescind the settlement based on fraud. The basis of that holding is whether the release negates the element of reliance in a suit for fraudulent inducement. *Id* at 179. The Court further held that "parties should be able to bargain for and execute a release barring all further dispute...." The Court noted other factor relevant to its

enforcement: the parties executed the agreements to end their "deal" and resolve a dispute regarding the project at issue, both were represented by highly competent legal counsel, they dealt at arm's length, and both were "knowledgeable and sophisticated business players." *Id.* at 180.

Here, Hall's and Ted Rea's Termination Agreements were executed to end the deal both had with VBF (i.e. their employment) and resolved disputes regarding their operation and performance as officers of VBF. (*See* Term. Ags., Exs. 1, 2, Recital 4: "Whereas the parties desire to terminate their business relationship and to resolve any claims they may have against each other[.]") These were both sophisticated parties (Alder is an offshore entity owned by a wealthy Swiss family's investment office), separately represented by counsel (in VBF's case, represented by multiple sets of counsel). By including the terms "irrevocably," "unconditionally," and the phrase "of any nature whatsoever, known or unknown," Plaintiff has effectively disclaimed reliance on any representations made by Defendants Hall and Ted Rea that could support a fraudulent inducement or rescission claim. Plaintiff hopes to avoid this by adding the allegations that it "did not know nor could it have known" of the Founder Defendants' misconduct when the Termination Agreements were executed. (SAC, ¶¶ 20, 22.) But VBF also alleges "By late 2017, with mounting losses, the disinterested VBF directors recommended that Hal and Ted Rea be fired." (SAC, ¶ 211.)[6] By VBF's own allegations, they knew of sufficient misconduct to justify terminating Hall and Ted Rea, but still agreed to release them from *"any and all claims, whether known or unknown"* in the Termination Agreements.[7]

---

[6] This is contrary to the terms of the Termination Agreements, which provide that both Hall and Ted Rea would resign their positions and be paid the amounts due to them under the Employment Agreements for termination without cause. (Term.Ag., Exs. 1, 2, ¶¶ 1(b), 5(a).)

[7] Wulf's Separation Agreement executed only one month later, although purportedly part of the "unraveling" of Founder Defendants' fraud (SAC, ¶ 57) notably did not include mutual releases.

Allowing Plaintiff to rescind the Termination Agreements by making the argument that they "did not know" of Defendants' misconduct is anathema to the standards governing the construction of contracts. Both Hall and Ted Rea have been unequivocally released from any and all claims that could be brought by VBF. As such, VBF's proposed new claims against Hall and Ted Rea would be futile and this Court should not permit amendment of these claims.

**B. Plaintiff Cannot Adequately Plead A Civil RICO Claim, Rendering That Portion of Its Amendment Futile.**

Plaintiff's attempt to add a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(3), in the SAC is futile because it fails to adequately allege:  (1) racketeering activity, i.e. predicate acts of wire or mail fraud; (2) a pattern of activity; or (3) the existence of a RICO enterprise.

Initially it must be noted that the purpose of the civil RICO statute was to empower "private attorneys' general" to address the harm of racketeering that may be dispersed among the public at large; it was not merely to provide compensation for individual victims. *Gentry v. Resolution Trust Co.*, 937 F.2d 889, 912 (3rd Cir. 1991). The gist of Plaintiff's RICO claim is that VBF is a RICO enterprise that was controlled by Founder Defendants as part of their "scheme to loot and defraud VBF." (SAC, ¶ 402).  To allege this type of RICO violation "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 424 (5th Cir. 1987). Plaintiff's RICO claim is woefully inadequate on its face, and Defendants should not be granted leave to include this claim and send both the parties and this Court down a long and expensive path of discovery on attempt to paint what could be addressed by the pending fraud and breach of fiduciary claims into a quasi-criminal investigation.

**1. Plaintiff fails to allege any predicate acts of mail or wire fraud with the requisite specificity.**

16

All the predicate acts Plaintiff seeks to allege sound in fraud and, therefore, must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). (*See* SAC ¶ 411 (claiming all Predicate Acts constitute mail or wire fraud)); *TransFirst Holdings, Inc. v. Phillips*, 2007 WL 1468553, at *2 (N.D. Tex. May 18, 2007). RICO mail fraud requires a showing of: "(1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mails by the defendant connected with scheme [sic], and (4) actual injury to the plaintiff." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993) (citation omitted). RICO wire fraud requires a showing of essentially the same elements, except the communication must be interstate. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6 (1987); *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988). Accordingly, any complaint must specify "how *each* act of mail or wire fraud furthered the fraudulent scheme, who caused what to be mailed or wired when, and how the mailing or wiring furthered the fraudulent scheme." *Sharif v. Wellness Int'l Network, Ltd.*, 2007 WL 9711726, at *7 (N.D. Tex. May 9, 2007) (emphasis in original); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'").[8]

Here, Plaintiff fails to meet Rule 9(b)'s pleading requirements for any of its predicate acts as the SAC is completely lacking in specific allegations regarding the "who, what, when, where,

---

[8] Additionally, Plaintiff's "allegations must 'inform each defendant of the nature of his alleged participation in the fraud.'" *Id.* at *7 (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987)). In other words, the Court must reject Plaintiff's attempt to "'attribute vaguely the alleged fraudulent activity to the [Founder Defendants] collectively.'" *Sharif*, 2007 WL 9711726, at *7 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1993)); *FMC Int'l A.G. v. ABB Lummus Glob., Inc.*, 2006 WL 213948, at *4 (S.D. Tex. Jan. 25, 2006) (same).

how, and why" of the allegations of mail fraud and wire fraud. *Hawkins v. Hutchison*, 2007 WL 9758161, at *4 (N.D. Tex. May 10, 2007), *aff'd*, 277 F. App'x 518 (5th Cir. 2008).

*First*, Plaintiff's vague allegations that Founder Defendants were "involve[d] in other businesses while at VBF" and "distributed marketing materials, contracts, e-mail communications, and other documents containing material misrepresentations related to the business Metrics, technology, and finances of VBF that were transmitted by mail and wire in interstate commerce," without more detail as to who, when, or how such materials were transmitted is insufficient to plead wire or mail fraud. (SAC ¶ 411-12; *see Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *5 (N.D. Tex. Dec. 14, 2010) (holding that allegations in complaint failed to provide sufficient detail when allegations stated that "false and misleading [documents] were prepared and disseminated directly by [Defendant] and/or its agents using the U.S. mails or wires in interstate commerce and induced Plaintiffs and those they seek to represent to purchase [Defendant's] life insurance policies").)[9]

*Second*, when describing various excel or PowerPoint files self-styled as "representations," Plaintiff fails to include any allegations regarding the "who, what, when, where, how, and why" these files were communicated through either interstate or intrastate mail or wires. Plaintiff tries to avoid its pleading requirements by using misleading defined terms that imply a document was communicated on a certain date. However, Plaintiff fails to include any specificity regarding who transmitted those documents, much less the time or place of any such statements. *See Havard*,

---

[9] Plaintiff inaccurately alleges that payments made to Christine Gagne can constitute a predicate act of wire fraud. (SAC ¶ 411(a)). A critical element of wire fraud is that the use of the wire must be interstate. *See Walsh v. America's Tele-Network Corp.*, 195 F. Supp. 2d 840, 846 (E.D. Tex. 2002) (citing *Smith v. Ayres*, 845 F.2d at 1366); *TransFirst Holdings, Inc.*, 2007 WL 1468553, at *5. However, Plaintiff fails to allege that any wire transfers to Gagne were interstate and, therefore, compensation sent to Gagne cannot constitute a predicate act. *See e.g., Havard v. Collins*, 2013 WL 12363628, at *4 (N.D. Tex. Aug. 21, 2013) (rejecting wire fraud claim as a predicate act where the complaint failed to "assert facts or even conclusions alleging that the phone calls and emails in question used *interstate* wires."). Furthermore, Plaintiff fails to provide any details regarding the timing of such payments.

2013 WL 12363628, at *3 (holding plaintiffs failed to allege predicate acts of mail fraud where plaintiffs had not "alleged the time, the place, or the person making any false representations").

A particularly egregious example is Plaintiff's labeling of an excel file as "June 2014 Written Representations." Although Plaintiff alleges that the file was subsequently shared with investors, it provides no information as to when, where, or how the file was shared beyond stating that an individual defendant first created the document on June 25, 2014—months before VBF ever existed or any of the Founder Defendants became involved with VBF. (*See* SAC ¶¶ 9, 18, 95).[10] Without any allegations regarding time, place, or person communicating the excel file, Plaintiff has not adequately alleged the June 2014 Written Representations is a predicate act of mail or wire fraud.

Plaintiff's remaining allegations regarding the delineated predicate acts suffer from similar deficiencies. (*See* SAC ¶ 411(b)-(h)). For example, although Plaintiff makes allegations, primarily upon information and belief, that certain documents were shared with individuals other than Founding Defendants—including the May 2015 Written Representations (SAC ¶ 166-7), the July 2015 Fisheries Report (SAC ¶ 100-1), the November 2015 Written Representations (SAC ¶ 110), the January 2016 Written Representations (SAC ¶ 128), and the April 2016 Written Representations (SAC ¶ 131)—Plaintiff provides no specific information as to when those documents were shared, by whom they were shared, or who received copies of the documents. Without this critical information, Plaintiff cannot adequately allege predicate acts of wire or mail fraud occurred and, therefore, any attempt to amend the complaint is futile and must be rejected. *See, e.g., Stanissis v. Dyncorp Int'l LLC*, 2015 WL 1931417, at *6 (N.D. Tex. Apr. 29, 2015)

---

[10] The Court should certainly reject any proposal by Plaintiff to assume that documents were communicated on or around the time they were drafted. This is particularly true where the document was created months before the alleged enterprise even existed. (*See* SAC ¶ 18 (VBF incorporated by Founders on September 5, 2014)).

(rejecting allegations of mail and wire fraud that did not specify when, where, or by whom the representations were made); *Moore v. Town N. Auto, Inc.*, 2014 WL 3396100, at *4 (N.D. Tex. July 11, 2014) (holding that plaintiff did not meet Rule 9(b) requirements where he alleged misrepresentations, but did not specify other particulars required by Rule 9(b), such as which defendants made representations, when representations were made, and in what context they were made); *Shakeri v. ADT Sec. Servs., Inc.*, 2013 WL 6498268, at *3 (N.D. Tex. Dec.11, 2013) (same); *cf. Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (holding that plaintiff satisfied Rule 9(b) where it alleged specifically who made misrepresentations, when they made them, and what they said).

### 2. Plaintiff fails to adequately allege a pattern of activity.

Plaintiff fails to establish a pattern of activity because it does not plead predicate acts that "amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Continuity can take one of two forms—either "closed-ended" or "open-ended." *Id.* Here, Plaintiff admits that Defendants "exercised continuous authority over the Enterprise on an ongoing basis, *up through and including November 2017*." (SAC, ¶ 422). Defendants, as acknowledged by Plaintiff, no longer have any modicum of control over VBF and, therefore, any alleged conduct cannot be grounds for establishing "open-ended continuity." *See e.g., Havard*, 2013 WL 12363628, at *4 (finding plaintiffs failed to adequately plead open-ended continuity where "[n]o facts in the complaint suggest that there is a plausible threat of repetition, not least because [defendant] is apparently no longer associated with" the RICO enterprise); *Walker v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 1883418, at *5 (N.D. Tex. June 30, 2009).

Plaintiff cannot establish closed-ended continuity either. Although Plaintiff alleges that Founder Defendants executed unlawful racketeering activity between September 5, 2014 and the present, the SAC only defines certain activity as wire or mail fraud sufficient to constitute a

20

"predicate act" of racketeering activity. (*See* SAC ¶ 411.) However, any predicate acts not plead with particularity cannot be used to establish continuity. *See Clapper v. Am. Realty Inv'rs, Inc.*, 2016 WL 302313, at *9, n. 14 (N.D. Tex. Jan. 25, 2016) (refusing to consider predicate acts for purposes of continuity analysis where plaintiff failed to describe what defendant committed the predicate act or when such act occurred); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184–85 (2d Cir. 2008); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180–81 (2d Cir. 2004). As discussed in Section B. 1 above, none of the alleged predicate acts were plead with sufficient particularity and should, therefore, be disregarded.

Nevertheless, should the Court find that certain of the predicate acts described were plead with sufficient particularity given their defined terms—which the Court should not—the alleged misrepresentations occurred at best between May 2015 and April 2016, a period of only eleven months.[11] Close-ended continuity requires "predicate acts that extend over a 'substantial period of time.'" *Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016). Acts occurring over a period of less than one year cannot constitute closed-ended continuity. *See e.g., Tel–phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992); *contrast United States v. Bustamante*, 45 F.3d 933, 941–42 (5th Cir. 1995) (racketeering acts extending nearly four years suffice); *see also Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1266-67 (11th Cir. 2004) (citing multiple circuit court cases holding that closed-end continuity is not established where predicate acts occur over a period of less than one year). Thus, even assuming that Plaintiff adequately pleads the written representations were predicate acts, Plaintiff fails to plead a pattern of such acts.

---

[11] Even if the Court considers some of the alleged predicate acts in its analysis, any use of a date in June 2014 for the June 2014 Written Representations must be disregarded because VBF did not exist until September 5, 2014, and the aquaculture business that is the subject of the SAC was not sold to VBF until December 31, 2014. (*See* SAC ¶ 18.)

Additionally, the alleged predicate acts were all part of a single, allegedly lawful endeavor—the collection of funds necessary to run VBF—and therefore cannot "amount to or pose a threat of continued criminal activity." *See Ginsburg v. ICC Holdings, LLC*, 2017 WL 5467688, at *22 (N.D. Tex. Nov. 13, 2017) (rejecting RICO claim where the alleged acts of fraud were all part of a single endeavor); *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (same); *Acosta v. Insignia Energy Grp., Inc.*, 2014 WL 5295320, at *5 (N.D. Tex. Oct. 16, 2014) (same).

### 3. Plaintiff fails to adequately plead the existence of a RICO Enterprise.

In order to plead a cognizable RICO claim, Plaintiff must also plead the existence of an enterprise, which may be a legal entity or a non-legal entity that is a "group of individuals associated in fact." 18 U.S.C. § 1962(c), (d); § 1961(4); *United States v. Phillips*, 664 F.2d 971, 1013 (5th Cir. 1981). Here, Plaintiff alleges two separate "enterprises:" (1) Founder Defendants, and (2) VBF. (*See* SAC ¶¶ 402-3.) Plaintiff's RICO claim fails under both theories.

*First*, Plaintiff's conclusory allegations of personal relationships between Founder Defendants is insufficient to establish an enterprise based on an association in fact theory.[12] (SAC ¶ 403.) An association in fact enterprise may consist of a collection of individuals not formally bound together as a legal entity so long as there is "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938 (2009). Accordingly, to establish an association in fact enterprise a plaintiff must show evidence of "an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440–41 (5th Cir.) (per curiam),

---

[12] The SAC must plead facts, not mere conclusions, to state a plausible claim. *See e.g., Null v. Easley*, 2009 WL 3853765, at *5 (N.D. Tex. Nov. 18, 2009) (dismissing where complaint lacked facts showing, *inter alia*, existence of decision making structure); *Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) (same); *Havard*, 2013 WL 12363628, at *5.

*cert. denied*, 483 U.S. 1032 (1987); *Delta Truck & Tractor, Inc. v. J.I. Case*, 855 F.2d 241, 243 (5th Cir. 1988); *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

Importantly, the fact that "officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003); *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *Sharif*, 2007 WL 9711726, at *8; *Atkinson*, 808 F.2d at 441.

Here, Plaintiff alleges Defendants "have been associated in fact outside of VBF, and have functioned outside of VBF in an organized fashion, having a joint purpose of acting together for each other's benefit in VBF and other businesses... and the [Defendants] have therefore had business and, upon information and belief, personal relationships with each other outside of VBF over an extended period of time." (SAC ¶ 403.) This is the only portion of the SAC addressing an association in fact; thus, it appears Plaintiff contends that Founder Defendants' "personal relationships" "outside of VBF", generally, constitute an "enterprise" under RICO.

This loose interpretation is not support by any case precedent, and in fact, would subject virtually any start up business enterprise among friends or colleagues to RICO liability. *See Whelan*, 319 F.3d at 230 ("Company officers and employees not associated other than through the activities of the company do not constitute an enterprise for purposes of § 1962(c)."). Even if the Court were inclined to infer that Defendants had a common purpose in forming an enterprise, the SAC does not allege that they maintained the necessary relationships among themselves to give their purported association any structure. One need only note how far removed the allegations in this case are from those in *Boyle* to see how the evidence of "pattern" in that case could suffice

(dozens of coordinated bank robberies involving a core, though informally organized group of participants sharing proceeds over the course of a decade) where the allegations here do not.

*Second*, Plaintiff's allegations that VBF was the victim corporation drained of its assets by Founder Defendants preclude VBF from being the enterprise through which the unlawful pattern of activity is committed. *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994) (the "enterprise" in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity); *see e.g.*, *Flood v. Makowski*, 2004 WL 1908221, at *7 (M.D. Pa. Aug. 24, 2004) ("in instances in which the racketeering activity is committed by people within the company and the victim of the racketeering activity is the corporation, the enterprise is not the corporation itself; an association-in-fact of the board members or corporate officers constitutes the enterprise").

Plaintiff's cursory and conclusory statements are insufficient to establish that either VBF or Founder Defendants were an enterprise for purposes of its RICO claim. As such, Plaintiff's RICO claim is futile, and this Court should not allow Plaintiff to file the SAC drafted.

## CONCLUSION

For all these reasons, Founder Defendants respectfully request that this Court deny VBF leave to file the Second Amended Complaint and grant them any and all other relief that it deems necessary and just, including the costs of opposing this Motion.

Date:   June 14, 2019                              LESLIE WULF, BRUCE HALL,

                                                   JOHN (TED) REA, JAMES REA

                                            By: /s/ Kimberly D. Annello
                                                   Kimberly D. Annello
                                                   Texas Bar No. 24093704
                                                   David Campbell
                                                   Texas Bar No
                                                   Eli Pierce
                                                   Texas Bar No.
                                                   Underwood Perkins, P.C.
                                                   5420 LBJ Freeway, Suite 1900
                                                   Dallas, Texas 75240
                                                   Phone: 972.661.5114
                                                   Email: kannello@uplawtx.com
                                                          dcampbell@uplawtx.com
                                                          epierce@uplawtx.com


                                            **Attorneys for Defendants, Leslie Wulf,
                                            Bruce Hall, John (Ted) Rea, and James
                                            Rea**