IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
|     Defendants/Third Party Plaintiffs, | § | CIVIL ACTION NO. 3:19-cv-00764-L |
| | § | |
| v. | § | |
| | § | |
| EVA EBSTEIN, JENS HAARKOETTER, BJORN | § | |
| THELANDER, ANDERS WESTER, NORMAN | § | |
| MCCOWAN, DR. OTTO HAPPEL and ALDER | § | |
| AQUA, LTD. | § | |
|     Third-Party Defendants | § | |

---

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' RESPONSE AND BRIEF IN
OPPOSITION TO THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S MOTION
RULE 12(B)(6) MOTION TO DISMISS THE THIRD PARTY COMPLAINT**

---

## TABLE OF CONTENTS

FACTUAL BACKGROUND..............................................................................................2

ARGUMENT ...................................................................................................................3

I.   McCowan Was Acting for His Personal Self Interest, and not as Agent for VBF, in Encouraging VBF to Breach its Contracts with Founders. ....................................................3

II.  McCowan Cannot Assert VBF's "Justification" in Breaching its Contacts with Founders as a Basis for Dismissal..........................................................................5

   A. The Releases in the Termination Agreement Act as a Bar to VBF's Claims against T.Rea and Hall......................................................................................................6

   B. Whether Egregious Cause Existed Under the Employment Agreement Justifying VBF's Termination of James Rea is A Question of Fact........................................7

III. VBF's Confirmation Plan Explicitly Carved Out Founders' Pending Claims against McCowan and the Third-Party Defendants from Release and Discharge....................8

IV.  McCowan Actively Participated in VBF's Breach of Founders' Contracts. ....................10

V.   Founders' Damages and Prayer for Attorneys' Fees are Well Plead..................................11

   A.  Hall and T. Rea Can Recover the Attorneys' Fees Incurred in Defending against VBF's Claims as Damages for Interference in their Releases ..............................................12

   B.  All Founders Can Recover Attorneys' Fees Incurred in Pursuing their Third Party Claims pursuant to Contract and Texas Statute........................................................13

   C.  Founders Have Adequately Alleged Fraud and Malice to Support an Award of Exemplary Damages. ................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Alma Group, LLC v. Palmer*, 143 S.W. 3d 840, 845 (Tex. App. – Corpus Christi – Edinburg 2004)........14

*Bell Atlantic Corp v. Twombly*, 550 U.S. 540, 570 (2007)...........................................................................3

*Conley v. Gibson*, 335 U.S. 41, 48 (1957)...................................................................................................3

*Cypress Engine Access., LLC v. HDMS Ltd. Co*, 283 F. Supp. 3d 580 (S.D. Tex. 2017)...........................6

*Cypress Engine,* 283 F. Supp. 3d at 587 ......................................................................................................7

*Ed Rachel Foundation v. D'Unger*, 117 S.W. 3d 348,  (Tex. App. – Corpus Christi – Edinburg 2003)....14

*Ganske v.  WRS Group, Inc.*, Cause No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App. – Waco April
    18, 2007, no pet.),.................................................................................................................................6

*Ganske*, 2007 WL 1147357 at * 3 ...............................................................................................................12

*Holloway v. Skinner*, 898 S.W.2d 793, 795-95 (Tex. 1995) ........................................................................4

*National Property Holdings, L.P. v.  Westergren*, 453 S.W.3d 419, 428-29 (Tex. 2015) ...........................6

Sterner, 767 S.W.2d at 691 ...........................................................................................................................5

*VeroBlue Farms USA, Inc.*, Case No. 18-01297 (Bankr. N.D. Iowa) ...........................................................2

## Statutes

Fed. R. Civ. P. 12(b)(6)................................................................................................................................3

Rule 12(b)(6)...............................................................................................................................................15

Tex. Civ. Prac. & Rem. Code § 38.011 ......................................................................................................13

Tex. CPRC § 38.001 ...................................................................................................................................13

Texas Civ. Prac. & Rem. Code § 38.001 ....................................................................................................13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC.,<br>    Plaintiff | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
|     Defendants/Third Party Plaintiffs, | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
| v. | § | |
| | § | |
| EVA EBSTEIN, JENS HAARKOETTER, BJORN | § | |
| THELANDER, ANDERS WESTER, NORMAN | § | |
| MCCOWAN, DR. OTTO HAPPEL and ALDER | § | |
| AQUA, LTD. | § | |
|     Third-Party Defendants | § | |

---

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' RESPONSE AND BRIEF IN
OPPOSITION TO THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S MOTION
RULE 12(B)(6) MOTION TO DISMISS THE THIRD PARTY COMPLAINT**

---

Defendants/Third Party Plaintiffs, Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), John E. Rea ("Ted Rea"), and James Rea ("James Rea") (collectively "Founders"), hereby respond to Third Party Defendant, Norman McCowan ("McCowan")'s Rule 12(b)(6) Motion to Dismiss the Third Party Complaint against him. [Dkt. No. 113.] In further opposition to McCowan's Motion, Founders state:

1

## FACTUAL BACKGROUND

Founders were the founders, officers, and directors of VeroBlue Farms, USA, Inc. ("VBF") In late 2017 and early 2018, Founders were serially terminated from VBF by McCowan and the other Third-Party Defendants. (Third Party Complaint, Dkt. No. 66 ("TPC"), ¶¶ 25-30, 34-35,39, 47-48.) McCowan took over as President of VBF in November 2017. (TPC, ¶ 7.) Since then, Founders have discovered that the other Third-Party Defendants, all of whom are affiliated with or representativeness of VBF's controlling shareholder, Alder Aqua, Ltd., engaged in an intentional scheme to oust Founders from management and avoid VBF's contractual obligations to them. Specifically, each Founder had a separate employment and/or termination agreement with VBF which governed his employment and/or separation from the company.[1]

On July 31, 2018, VBF filed suit against Founders claiming they had misappropriated funds and committed other misdeeds while officers and directors of the company. Later, on September 21, 2018, VBF filed for Chapter 11 bankruptcy protection in the Northern District of Iowa (*In re: VeroBlue Farms USA, Inc.*, Case No. 18-01297 (Bankr. N.D. Iowa) ("*In re VBF*"). On April 10, 2019, the Founders filed their Third-Party Complaint ("TPC") against McCowan and six other directors and investors in VBF. [Dkt. No. 66.] In the TPC, each Founder has asserted that McCowan and the other Third-Party Defendants tortiously interfered with his respective agreement with VBF, which lead to VBF breaching its obligations to the Founders under these

---

[1] Founders' respective agreements with VBF are defined herein as they are in the Third-Party Complaint: J. Rea Employment Agreement, (TPC, Ex. A), Wulf Separation Agreement, (TPC, Ex. B), Hall Termination Agreement (TPC, Ex. C), T. Rea Termination Agreement (TPC, Ex. D).

contracts.[2]  McCowan's motion is not well-founded; Founders claims are adequately pled and should proceed.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) should be granted *only* if it appears beyond a doubt that the plaintiff can prove *no set of facts* in support of its claim which would entitle it to relief. *Conley v. Gibson*, 335 U.S. 41, 48 (1957) (emphasis added); *see also* Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp v. Twombly*, 550 U.S. 540, 570 (2007). Such a motion merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 556-57. A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. *Id.*

McCowan argues that Founders' separate claims for tortious interference against him fail to allege sufficient facts. The elements for tortious interference with an existing contract under Texas law include: (1) an existing contract subject to interference and (2) a willful and intentional act of interference with the contract (3) that proximately caused the plaintiff's injury and (4) caused actual damages or loss. Founders have alleged more than adequate facts to establish each of these elements and their claims should proceed accordingly.

## I.    McCowan Was Acting for His Personal Self Interest, and not as Agent for VBF, in Encouraging VBF to Breach its Contracts with Founders.

McCowan first suggests that element two was not met because, as president of VBF, he was an agent of VBF and not legally capable of tortious interference with VBF's contracts. To be

---

[2] This is the first of two Motions to Dismiss that McCowan has filed against the TPC. McCowan also filed a Motion to Dismiss pursuant to the Texas Citizen Participation Act. [Dkt. No. 114]. This Response addresses McCowan's Rule 12(b)(6) Motion to Dismiss [Dkt. No. 113]. His TCPA Motion is addressed separately.

legally capable of tortious interference, McCowan must be a "stranger to the contract" with which he allegedly interfered. *Holloway v. Skinner*, 898 S.W.2d 793, 795-95 (Tex. 1995) (recognizing the fundamental principle that a party to a contract cannot tortiously interfere with its own contract.) A corporation's agent is not a stranger to the contract and cannot tortiously interfere with the corporation's contract, ***unless the agent is acting in his or her own self-interest***. *Id.* at 795-96 (holding that for an agent to be liable for tortious interference, the plaintiff had to show that the agent acted so contrary to the principal's best interests that his actions could only have been motivated by personal interests).

Founders have alleged how McCowan was acting to benefit himself and the other Alder Defendants, not VBF, in directing VBF to breach their respective termination and employment agreements.   One of the first acts that VBF director Eva Ebstein asked McCowan to undertake was to consult with legal counsel to find a way to avoid the obligations to the Founders due to their "political agendas," notably, not due to their performance as officers. (TPC, ¶ 36 and Ex. F thereto). Ebstein was not an officer of VBF when she sent this email, but purportedly an independent director (and the daughter of the largest shareholder). Thus, in following her direction, McCowan was acting in the interest of himself and the majority shareholder, not that of VBF. This is further evidenced by the fact that Ebstein appointed McCowan to replace Wulf as CEO – he was personally rewarded with a promotion for carrying out Ebstein's direction to breach VBF's agreements with Founders. (TPC, ¶ 35.) McCowan also followed the Alder Defendants' direction to use their counsel, Davis Graham & Stubbs (DGS), instead of VBF's corporate counsel, Jackson Walker, to negotiate and document Wulf's Separation agreement, (*id,*) further evidence that McCowan's motive was to benefit himself and the Alder Defendants and not VBF.  McCowan was able to keep his position as President throughout VBF's Chapter 11 proceeding, due to support

from Alder and the other Alder Defendants. (McCowan MTD on TCPA, Dkt. No. 114, p. 9 and Ex. 4 thereto.)

Founders cannot know what all McCowan was promised and given in exchange for carrying out the Alder Defendants' orders without further discovery, but the present facts alleged clearly establish that McCowan was not acting to benefit VBF, but to benefit himself by currying favor with Alder and the other Alder Defendants, and in fact, not even attempting to distinguish between the interests of VBF and Alder. These allegations are sufficient to permit Founders to pursue a tortious interference claim against McCowan, even though he was an officer of VBF.

## II.   McCowan Cannot Assert VBF's "Justification" in Breaching its Contacts with Founders as a Basis for Dismissal.

Next, McCowan argues that Plaintiffs did not allege sufficient facts to demonstrate that McCowan actively persuaded VBF to breach the Termination Agreements. Specifically, McCowan asserts that VBF had a contractual right to take the actions it did (invoking the justification defense). Legal justification is an affirmative defense, which requires the defendant to show that the interference: (1) was done in a bona fide exercise of the defendant's own rights, or (2) the defendant's interest in the contract's subject matter was equal or superior to the plaintiff's. *Sterner, 767 S.W.2d at* 691.   McCowan appears to argue only the first type of justification: that VBF was within its rights to terminate James Rea and to file suit against Hall and T. Rea, despite having previously released them. (MTD, p. 9-11.)[3] McCowan then claims that VBF was "justified" in bringing suit, despite the broad releases in T. Rea's and Hall's Termination

---

[3] Part of this argument relies on VBF's claim that the Termination Agreements are not enforceable because they were fraudulently procured. (*Id.*) But invalidity of a contract is a separate defense from justification. Fed. R. Civ. P. 8(c)(1).

Agreements because those contracts did not include a covenant not to sue. (MTD, p. 10.) Neither

of these arguments holds merit.

### A. The Releases in the Termination Agreement Act as a Bar to VBF's Claims against T. Rea and Hall.

McCowan cites *National Property Holdings, L.P. v. Westergren,* 453 S.W.3d 419, 428-29

(Tex. 2015) for the proposition that a release is not a covenant not to sue. (MTD, p. 10.)  But

whether a release or settlement agreement operates as a covenant not to sue depends on the

particular language used.  In *Westergren*, the parties simply agreed to "release all liability" related

to a lis pendens and related claims in a pending lawsuit, and the release specifically provided that

it could be plead as an affirmative defense. *Id.* at 422. Similarly, in *Cypress Engine Access., LLC*

*v. HDMS Ltd. Co*, 283 F. Supp. 3d 580 (S.D. Tex. 2017), also cited by McCowan, the parties could

not even agree on what constituted their settlement agreement, disputing what portion of a series

of emails and a one-page outline was the final agreement. *Id.* at 583.  That case also related to

claims already pending in a lawsuit.  The releases granted by VBF to Hall and T. Rea each are

much broader and clearly evidence the parties' intent not to sue each other in the future.  VBF not

only agreed to "release, acquit and forever discharge" Hall and T. Rea from "claims" and

"liabilities" but also from "***charges, complaints, actions, causes of action, suits***." (Term. Ag.,

TPC, Exs. C, D, § 4(b) (emphasis supplied).) This language clearly encompasses more than merely

a release of potential liability or pending claims, but an agreement to discharge the right to bring

a "charge," "complaint," (like the Amended Complaint), "cause of action" or "suit."

To that end, this case is more on point with *Ganske v. WRS Group, Inc.*, Cause No. 10-06-

00050-CV, 2007 WL 1147357 (Tex. App. – Waco April 18, 2007, no pet.), where a company was

found liable for breach of the release in a settlement agreement with its former officer by bringing

suit (and the former officer was awarded attorneys' fees incurred in enforcing the release as

compensatory damages). Although *Ganske* was decided before *Westergren*, the Texas Supreme Court did not overrule *Ganske* in its decision and as noted by the district court in *Cypress Engine*, the language in the *Ganske* release was more specific.[4] *Cypress Engine,* 283 F. Supp. 3d at 587. As the *Ganske* court found: "There could be no more foreseeable consequence of a breach of the settlement agreement that the cost of litigation than it was specifically designed to avoid." *Id.*, 2007 WL 1147357 at * 3. Hall and T. Rea did not merely agree to a defense to any claim by VBF, but negotiated to avoid any "*charges, complaints, actions, causes of action, [and] suits*" from VBF. This language constitutes more than a release, but a complete discharge of any action against them. By bringing the Amended Complaint against Hall and T. Rea, VBF has breached that obligation and McCowan is liable for inducing and encouraging VBF to do so.

### B. Whether Egregious Cause Existed Under the Employment Agreement Justifying VBF's Termination of James Rea is A Question of Fact.

Also, McCowan claims VBF was justified in denying James Rea amounts due to him under his Employment Agreement, because that contract permitted termination for Egregious Cause. (MTD, p. 10.) J. Rea and the Founders have alleged how VBF's "Egregious Cause" was fabricated, after the fact, as part of Alder Defendants plan to come up with any legal reason to avoid payments to J. Rea and the Founders under their respective contracts. (TPC, ¶¶ 42-43, 47-51.) Regardless, this defense is fact-dependent, and cannot be ruled upon at the pleading stage. This defense requires an inquiry into VBF's ability to terminate the relevant contracts, and VBF's impetus to terminate and/or breach the agreements. The ultimate decision as to which party is factually correct will reside with the jury and cannot be resolved via this motion.

---

[4] The language in the *Ganske* release included a statement that it was intended to "buy his peace and avoid costly and time costing [sic] litigation" by the company's former president. *Ganske*, 2007 WL 1147357 at *3. Similar to the situation at bar, in *Ganske*, the company's majority shareholder chose to ignore the negotiated release with the former president and filed suit for various business torts. *Id.* at *1, *4.

### III.   VBF's Confirmation Plan Explicitly Carved Out Founders' Pending Claims against McCowan and the Third-Party Defendants from Release and Discharge.

VBF urges this Court to dismiss Founders claims against McCowan because they were encompassed in the discharge in VBF's Reorganization Plan. (MTD, pp. 3, 11-12.) This ignores several specific modifications that Founders negotiated with VBF's counsel in the bankruptcy proceeding (and with VBF's litigation counsel, who was present at the bankruptcy confirmation hearing) that carved out Founders' claims from the discharge and releases in the Reorganization Plan. The only appearance that Founders made in VBF's Chapter 11 proceeding was to object to the nondebtor releases in the Reorganization Plan to the extent they could apply to the affirmative defenses against VBF and claims against all Third-Party Defendants, including McCowan, plead here.[5]  Founders' TPC was already pending against McCowan and the Alder Defendants (filed April 10, 2019) when VBF's Reorganization Plan was set for confirmation (April 17-18). To that end, Founders objected to VBF's plan, arguing that its releases of certain nondebtor third parties, including all of the Third-Party Defendants, violated Bankruptcy Code §§ 524(e) and 1129 (a), as well improperly deprived Founders of their right to assert claims against Third Party Defendants and seek set off and recoupment against VBF. (Founders Plan Objections, Dkt. No. 446, ¶¶ 3, 4, 11, 14, 15, 16.) Founders explicitly objected to the discharge in § 9.13 of the Plan, the very section that VBF relies upon, on these grounds. (Founders Plan Objections, Dkt. No. 466, ¶ 2.)

During the confirmation hearing on VBF's Reorganization Plan, held before the Bankruptcy Court in the Northern District of Iowa on April 17-18, 2019, Founders raised these

---

[5] See Objection of [Founder Defendants] to Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and its Affiliated Debtors, filed April 12, 2019, in *In re VBF*, Dkt. No. 446 and Supplement to Objection of [Founder Defendants] Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and its Affiliated Debtors, filed April 15, 2019 (*In re VBF*, Dkt. No. 466). Together, the Bankruptcy Docket Items 446 and 466 filed by Founders are referred to as "Founders' Plan Objections."

objections.  The parties, including VBF and both sets of its counsel, and Alder Aqua, agreed to

certain modifications to VBF's Reorganization Plan to address Founders' objections, and VBF

submitted these to the Court as part of its final Reorganization Plan. (*In re VBF,* Bankr. Dkt. No.

511 (the "Modification"), attached as part of MTD, Ex. 2, p.144-45 thereto.]   The Modification

was included in Exhibit 2 to McCowan's Motion to Dismiss, but are wholly ignored in his

argument.   As relevant to McCowan's claims, the VBF Reorganization Plan, as clarified by the

agreed Modification, provides:

- As to Section 9.15 of the Plan, which released McCowan and the other
Alder Defendants, the parties agreed: "For the avoidance of doubt, ***Section
9.15 does not apply to the claims of any party to the litigation pending as
19-cv-764 in the United Stated District Court for the Northern District of
Texas***, provided that such party does not receive payment or distribution
under the Plan. (Modification, MTD, Ex. 2, p. 144, ¶ 2 (emphasis supplied).)

- The parties agreed to add a statement: "***Notwithstanding any provision in
the Plan,*** upon entry of the Confirmation Order, parties in the litigation
pending as 19-cv-764, in the United States District Court for the Northern
District of Texas, may to the full extent the Bankruptcy Code permits, plead
any and all defenses for an amount up to but not exceeding any recovery
that may be obtained by the Debtors ,without prejudice to each parties' right
to dispute such claims" (*Id.*, MTD Ex. 2, pp. 144-45, ¶ 4.)

The Confirmation Order signed by the Bankruptcy Court recites that Founders' Plan Objections

were resolved via the Modification and that document was incorporated into the Confirmation

Order. (MTD, Ex. 2, pp. 1, 8, ¶ L.)  As Modification ¶ 2 provides, any release of McCowan or any

of the other Third-Party Defendants provided in VBF's Reorganization Plan does not apply to

Founders' claims in this litigation, as long as they do not receive distributions or payments under

the Plan.  McCowan did not inform the Court of this provision and did not argue that it did not

apply because any of the Founders received distributions or payments under the Plan.[6]

---

[6] In fact, Founders did not submit proofs of claim in VBF's Chapter 11 proceeding and will not receive any
distributions under VBF's Reorganization Plan.

But McCowan asks this Court to circumvent the Modification by arguing the discharge of VBF, provided in § 9.13 of the Plan, makes it impossible for Founders to allege breach against VBF and therefore, makes it impossible to allege tortious interference against McCowan. (MTD, pp. 11-12.)  This is precisely why Founders objected to VBF's discharge, to the extent it would affect their defenses to VBF's Complaint and the TPC and why they insisted on the additional language in Paragraphs 2 and 4 of the Modification. These provisions apply ***notwithstanding any provision of the plan*** and allows Founders to assert defenses against VBF in this litigation. This provision was specifically included to address Founders' affirmative defenses against VBF, which allege breach of Founders' various agreements with VBF, and seek set off and/or recoupment against VBF for any such breach. (Ans., Dkt. No. 66, Third, Fourth, Sixth, Seventh Aff. Def.) Thus, VBF's Reorganization Plan, as clarified by the Modification, specifically contemplated and permits Founders to allege that VBF breached its contracts with Founders, and to seek setoff from VBF for any such breach.  It follows then, that any such breach by VBF, even if in the nature of setoff only, can then also serve as the basis for a finding that McCowan induced that breach through his tortious interference. The Modification was negotiated to address these very claims and therefore, the Plan does not discharge VBF's liability, or McCowan's liability to Founders for these same claims.

## IV.   McCowan Actively Participated in VBF's Breach of Founders' Contracts.

McCowan argues Founders' claims must be dismissed because he was merely acting on directions from some of VBF's directors (the other third-party Defendants) and did not take an "active role" in persuading VBF to breach the agreements. (MTD, p. 12-13.)  Founders alleged multiple facts to the contrary.  McCowan took over as interim CEO of VBF immediately upon Wulf's termination on November 6, 2017. (TPC, ¶ 7.)  There are multiple facts alleged about his

actions after that date that were directed at the Founders' agreements with VBF. McCowan was present at a meeting with Wulf and James Rea, where Defendants Dr. Happel and his daughter Ebstein, questioned Wulf's actions with respect to Haarkoetter, just days before Wulf was terminated. (*Id.*, ¶ 33.)   McCowan consulted with Alder's lawyers, DGS, instead of VBF's longtime counsel, Jackson Walker, about terminating Wulf and J. Rea and later, about refusing to make payment due to each of them under their respective agreements. (*Id.*, ¶¶ 35, 47.) As set forth in Ebstein's email, McCowan, as CEO, was tasked with coming up with a plan regarding "hiring and firing," to consult with legal counsel "with respect to the requirements of severance payments" and "to try and avoid this." (*Id.*, ¶ 35, Ex. F.)   McCowan signed Wulf's Separation Agreement on behalf of VBF, three weeks after the direction from Ebstein to "try and avoid" a "golden parachute of other people' money," and sent a termination notice to James Rea just a few weeks later.  (TPC, ¶¶ 35, 39, 47-51, 80, 87-89, and Exs. A, B.)

As President, McCowan was also involved in VBF's decision to engage a consultant to perform a second investigation of Haarkoetter's behavior, but then only share the results of that investigation with some of VBF's directors, specifically the Alder Defendants. (TPC, ¶ 43.) Also, as VBF's CEO, McCowan must have approved the filing of this lawsuit against Founders in July 2018, despite clear releases of at least two of them. (TPC, ¶¶ 52-54, 57-60, 66-69.) All these facts establish that McCowan actively participated in not merely a contract violation, but a plan between himself and the other Alder Defendants to ignore Founders' legal rights and embroil them in litigation.

### V.   Founders' Damages and Prayer for Attorneys' Fees are Well Plead

McCowan argues against three aspects of Founders' requested relief: 1) that Hall and T. Rea cannot seek attorneys' fees as damages, 2) that none of the Founders are entitled to attorneys' fees separately, and 3) there is no basis for exemplary damages. (MTD pp. 15-16.)

### A. Hall and T. Rea Can Recover the Attorneys' Fees Incurred in Defending against VBF's Claims as Damages for Interference in their Releases.

Addressing these in turn, McCowan first asserts that Hall and T. Rea cannot recover attorneys' fees they incur in defending themselves from VBF's claims against them in the Amended Complaint because that is not a separate lawsuit with a third party. (MTD, p. 14.)   Hall and T. Rea negotiated full and complete releases from VBF in their Termination Agreements. McCowan, along with the other Third-Party Defendants, induced VBF to breach these contracts and sue Hall and T. Rea on a plethora of matters that are clearly encompassed by the releases. If not for McCowan's interference with Hall's and T. Rea's agreements with VBF and the releases contained therein, Hall and T. Rea would not have been pursued by VBF.  This is not an instance where Hall and Rea are trying to recover fees from McCowan *in a case brought by him against them*.  He is not a party to the Termination Agreements, and he has not brought claims against Hall or T. Rea.  This is not a cross claim against VBF for its breach of the agreements.  It is a third-party claim and involves McCowan's individual liability to Hall and T. Rea deriving from VBF's liability to them under the agreements. Thus, this is the precise type of exception in which attorneys' fees are recoverable as damages:  McCowan's tortious acts, which were outside of his office as VBF's President, lead Hall and T. Rea to be sued by VBF.  The fees Hall and T. Rea incur in defending against VBF's claims are therefore, are damages resulting from McCowan's individual torts and recoverable as damages. *Ganske*, 2007 WL 1147357 at * 3 ("There could be no more foreseeable consequence of a breach of the settlement agreement than the cost of litigation that it was specifically designed to avoid.").

### B. All Founders Can Recover Attorneys' Fees Incurred in Pursuing their Third Party Claims pursuant to Contract and Texas Statute.

Separately, McCowan claims that he cannot be liable for attorney's fees to Wulf or J. Rea under TEXAS CIV. PRAC. & REM. CODE § 38.001 resulting from his tortious interference with their respective Separation and Employment Agreements because Texas law does have a statute providing for such recovery and there is no contract between Wulf and/or J. Rea, on the one hand, and McCowan, on the other hand, permitting the recovery of attorney's fees. (MTD, pp.14-15.) It is important to note Founders' requests for an award of attorneys' fees under their agreements and TEX. CPRC § 38.001 is different from those requested by Hall and T. Rea in Counts 1 and 2. In their claims for tortious interference, Hall and T. Rea seek the attorneys' fees that they have incurred (and continued to incur) *in defending against VBF's claims* against them in the Amended Complaint. Those attorneys' fees flow as consequential *damages* from; i) VBF's breach of its obligations under the release provisions of Hall's and T. Rea's Termination Agreements, and ii) McCowan's inducement of VBF's breach (his tortious interference).

All four Founders also seek recovery of the attorneys' fees they incur *in pursuing their third-party claims against McCowan and the other third-party defendants*, pursuant to the provisions of their respective agreements (Hall, T. Rea, Wulf) and under TEX. CIV. PRAC. & REM. CODE § 38.011 (J. Rea). Again, to the extent McCowan induced VBF to breach those agreements, then the Founders are entitled to recover attorneys' fees for that breach. VBF's agreements with Hall, T. Rea and Wulf all contain specific provisions awarding attorney's fees for a breach. And § 38.001 allows for the recovery of attorneys' fees "if the claim is for … (8) an oral or written contract." The statute does not specify that the contract breached must be one between the same parties to the litigation. It follows then, that a party who tortiously interferes with another party's contract, and thereby causes that contract to be breached, should bear the full cost of inducing such

13

breach, including contractually provided attorneys' fees. Otherwise, the victim would be deprived of part of relief for which he contracted.

None of the cases that McCowan cites addresses this particular issue. In both cases he cites, the court found that a breach of the underlying contract had *not* been established and there was no separate basis for the recovery of attorneys' fees. (MTD, p. 15; *Alma Group, LLC v. Palmer*, 143 S.W. 3d 840, 845 (Tex. App. – Corpus Christi – Edinburg 2004)(defendant failed to prove breach of contract or tortious interference); *Ed Rachel Foundation v. D'Unger*, 117 S.W. 3d 348, (Tex. App. – Corpus Christi – Edinburg 2003)(defendant failed to recover damages on breach of contract claim). Here, if Founders were to prevail, they would have established a breach of multiple written contracts and § 38.001 would apply to permit the recovery of their fees incurred pursuing that breach.

### C. Founders Have Adequately Alleged Fraud and Malice to Support an Award of Exemplary Damages.

Finally, McCowan claims Founders have not adequately alleged fraud, malice, or gross negligence on his part to justify an award of punitive damages. (MTD, p. 16.) McCowan points to Founders' allegations that his conduct, along with that of the other Defendants, was "intentional, malicious, and vindictive" and states that such a conclusion is insufficient. (*Id.*) But this ignores multiple other factual allegations in the TPC, including:

- The Alder Defendants (which include McCowan) withheld funds from VBF's credit facility until certain of the Founders were terminated (evidence of fraud) (TPC, ¶ 25);

- McCowan imposed additional conditions on Hall and T. Rea's severance payments after the fact (vindictiveness) (TPC, ¶ 31);

- McCowan supported Happel's implication that Wulf should not have reported Haarkoetter's harassment and inappropriate behavior (fraud) (TPC, ¶ 33);

14

- The Alder Defendants planned to create ways to avoid payments due to Founders under their agreements and tasked McCowan with coming up with this plan (malice) (TPC, ¶ 36);

- McCowan, along with the other Alder Defendants, knew that Wulf's wife had multiple sclerosis and agreed to a provision in Wulf's Separation Agreement to pay his health insurance for 12 months, but then failed to make these payments, resulting in Wulf and his wife being denied medication coverage (fraud and malice) (TPC, ¶¶ 40, 45);

- McCowan along with the Alder Defendants engaged an outside firm to investigate Haarkoetter's behavior and later, James Rea's expenditures, but then refused to share the results of these reports with anyone but themselves, (fraud and malice) (TPC, ¶¶ 43, 51); and

- McCowan and the Alder Defendants considered Founders to have a "political agenda" with regard to Haarkoetter and wanted to terminate anyone who "willing[ly] collude[d]" with them in that agenda (malice) (TPC, ¶ 37).

The campaign Founders allege in the TPC is not merely a soured business relationship or sharp-elbowed economic competition. This was a premeditated, intentional, vindictive plan to punish Founders for trying to protect their employees from a harassing and bullying director and owner and to enable the Alder Defendants to usurp control of VBF to the exclusion of hundreds of other investors. There are more than sufficient allegations of fraud and malice, just based on the information that Founders know today, to support their claims for exemplary damages.

## CONCLUSION

For all the reasons set forth herein, Third-Part Plaintiffs, Leslie Wulf, John E. (Ted) Rea, Bruce Hall, and James Rea, respectfully request that this Court deny Third-Party Defendant, Norman McCowan's Rule 12(b)(6) Motion to Dismiss the Third-Party Complaint and award them any and all other relief that it deems necessary and just.

Date:   July 3, 2019

LESLIE WULF, BRUCE HALL,

JOHN (TED) REA, JAMES REA

By: */s/ Kimberly D. Annello*
      Kimberly D. Annello
      Texas Bar No. 24093704
      David Campbell
      Texas Bar No. 0369850
      Eli Pierce
      Texas Bar No. 24092972
      Underwood Perkins, P.C.
      5420 LBJ Freeway, Suite 1900
      Dallas, Texas 75240
      Phone: 972.661.5114
      Email: kannello@uplawtx.com
            dcampbell@uplawtx.com
            epierce@uplawtx.com

**Attorneys for Defendants, Leslie Wulf, Bruce Hall, John (Ted) Rea, and James Rea**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of July, 2019 a true and correct copy of the above and foregoing was served upon counsel of records for all parties via ECF Service.

*/s/ Kimberly D. Annello*
Kimberly D. Annello