UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER | § | |
|    Defendants/Counterplaintiffs. | § | |

**THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S REPLY IN SUPPORT OF
RULE 12(B)(6) MOTION TO DISMISS THIRD-PARTY CLAIMS**

Applying the wrong legal standard,[1] Third-Party Plaintiffs[2] contend that they have alleged sufficient facts to state claims for tortious interference, attorneys' fees, and exemplary damages against McCowan. But the Third-Party Complaint—which does not in any way distinguish the alleged actions of McCowan from the actions of the other "Alder Defendants"—fails to meet the basic requirements of Rule 8. Rather than formally amend their pleading to cure the defects, Third-Party Plaintiffs improperly attempt to amend the Third-Party Complaint via their Response. Such after-the-fact-allegations, however, are not to be considered in determining the sufficiency of a complaint.[3] Even when liberally construed, Third-Party Plaintiffs' conclusory allegations in the

---

[1] Third-Party Plaintiffs apply the wrong legal standard to test the sufficiency of their claims. Third-Party Plaintiffs apply the "no set of facts" standard, see Resp. at 3, from *Conley v. Gibson*, which was retired by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*. 550 U.S. 544, 562-63 (2007) ("We could go on, but there is no need to pile up further citations to show that *Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, ***this famous observation has earned its retirement.*** The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.") (internal citations omitted) (emphasis added).

[2] Defined terms have the same definitions as in McCowan's *Rule 12(b)(6) Motion to Dismiss Third-Party Claims & Brief in Support* [Dkt. No. 113], unless otherwise specified.

[3] *See Roebuck v. Dothan Sec., Inc.*, 515 Fed. App'x. 275, 280 (5th Cir. 2013) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted).

**THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S REPLY IN SUPPORT OF RULE 12(B)(6)
MOTION TO DISMISS THIRD-PARTY CLAIMS – PAGE 1**

Third-Party Complaint do not contain sufficient factual matter to survive McCowan's motion to dismiss. Accordingly, the Court should grant McCowan's 12(b)(6) Motion to Dismiss.

## I.    ARGUMENT & AUTHORITIES

**A.    Third-Party Plaintiffs cannot rely on allegations that have not been pleaded.**

    1.    <u>The Third-Party Complaint is completely devoid of allegations that McCowan was acting in his own self-interest.</u>

Under Texas law, a corporate agent like McCowan cannot be liable for tortious interference with the corporation's contracts unless the plaintiff can show that he "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017), reh'g denied (Sept. 22, 2017) (citations and internal quotation marks omitted). Furthermore, the Fifth Circuit instructs that "[i]f a corporation does not complain about it's agents actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) (citations omitted).

Here, the Third-Party Complaint fails to sufficiently allege that McCowan was acting in his own self-interest or can otherwise be held liable for tortious interference with VBF's agreements. To begin with, Third-Party Plaintiffs have not alleged that VBF complained about McCowan's actions. Thus, under the guidance provided by the Fifth Circuit, this means that McCowan "cannot be held to have acted contrary to the corporation's interests." *See id.* Moreover, in their Response, Third-Party Plaintiffs argue that "McCowan also followed the 'Alder Defendants' direction to use their counsel" and followed a VBF director's "direction" to consult with legal counsel regarding VBF's agreements, and that this somehow demonstrates "McCowan was acting in the interest of himself." Resp. at 4. At best, the Third-Party Complaint alleges that McCowan was "directed" by others to take certain actions, and this alone does not establish the

necessary conduct to find that McCowan—in any way, but especially as an officer of VBF—acted tortiously. Even assuming McCowan followed such directions—which the Court is not required to do as it is not pleaded—the Third-Party Complaint fails to allege facts that demonstrate how following directions from VBF board members were actions that McCowan carried out in his own self-interest or that the company disagreed with. The Court need only make reasonable inferences in Third-Party Plaintiffs' favor; inferences unsupported by facts cannot defeat a 12(b)(6) motion.

In an effort to support their strained reading of the Third-Party Complaint as alleging facts that McCowan acted in his own interests, the Response characterizes McCowan's appointment to replace Wulf as CEO as a "reward" for "carrying out [a director's] direction to breach VBF's agreements with the Founders." Resp. at 4. The Third-Party Complaint, however, does not allege that McCowan was directed to breach VBF's agreement with the Founders (Third-Party Plaintiffs), much less allege that he was appointed acting CEO as a "reward." At best, the Third-Party Complaint alleges that McCowan was directed to seek legal advice "as to the legal position of the company with respect to the requirements of severance payments" (Third-Party Complaint Ex. E), which cannot be reasonably construed as a "direction to McCowan to breach VBF's agreements." In fact, the Third-Party Complaint alleges that "VBF"—not McCowan—"began ginning up reasons to avoid paying [Wulf] the amounts due, consistent with [the directors'] communications and directions." Third-Party Complaint ¶ 42.

To find, based on the allegations in the Third-Party Complaint, that McCowan was acting in his own self-interest or can otherwise be held liable for tortious interference with VBF's agreements would be speculative, and Third-Party Plaintiffs' factual allegations must "rise above mere speculation." *See, e.g.*, *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th Cir. 2014) (per curiam) ("The plaintiff's factual allegations must support a claim to relief that is

plausible on its face and rises above mere speculation.") (citations omitted); *see also, e.g.*, *Gipson v. Deutsche Bank Nat. Tr. Co.*, 3:13-CV-4820-L, 2015 WL 2079514, at *5 (N.D. Tex. May 4, 2015) (Lindsay, J.) ("The alleged facts must 'raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

    2.    <u>Third-Party Plaintiffs have not pleaded that McCowan actively persuaded VBF to breach its Termination Agreements</u>.

While Third-Party Plaintiffs contend that they established that "McCowan actively participated in VBF's breach of founders' contracts," this is not the standard that applies with respect to whether Third-Party Plaintiffs have sufficiently pleaded a claim for tortious interference. Rather, to state a claim for tortious interference with a contract, Third-Party Plaintiffs must allege that McCowan took an active role in *persuading* VBF to breach the Termination Agreements—not simply that he "participated" in VBF's breach. *See* Motion at 13 (collecting cases).

Further, Third-Party Plaintiffs again rely on allegations that appear nowhere in the Third-Party Complaint to argue that they have satisfied Rule 12(b)(6)'s pleading requirements. For example, the Response contends that "McCowan consulted with Alder's lawyers"—yet this allegation was never pleaded. Rather, the Third-Party Complaint alleged that McCowan was merely "directed" "to engage" Alder's lawyers, and it never alleges that he engaged them as directed. Further, mere consultation with Alders' lawyers does not amount to actively *persuading* VBF to breach the Termination Agreements. Nor does the fact that McCowan—the company's CEO—signed Wulf's separation agreement on behalf of VBF equate to an active role in *persuading* VBF to breach its contracts. That Third-Party Plaintiffs cite only to allegations that McCowan performed his regular job duties as the company's CEO as the basis for supporting their tortious interference claim highlights the improper nature of the claim.

Further, Third-Party Plaintiffs' contention that the Third-Party Complaint alleges McCowan was "involved in VBF's decision to engage a consultant to perform a second investigation of [a director's] behavior" and to "only share the results of that investigation with some of VBF's directors," is similarly false. Resp. at 11 (citing Third-Party Complaint ¶ 43). Neither paragraph 43 nor the remainder of the Third-Party Complaint alleges that McCowan was personally "involved" in any decision to investigate such claims or in the decision as to whom the report of any such investigation would be disseminated. Instead, paragraph 43 merely alleges "VBF's Board engaged an outside firm," and does not attribute the decision as to who would see the report to anyone, let alone McCowan.

In fact, McCowan's name is only referenced individually in factual allegations five times in the entire Third-Party Complaint. *See* Third-Party Complaint at Introduction (identifying McCowan as current CEO of VBF and referring to "assistance of McCowan"), ¶¶ 31 (another "directed" McCowan), 33 (a Third-Party Plaintiff "met with" McCowan), 35 (others "directed" McCowan), and 41 (others "specifically approved" McCowan's execution of an agreement). And Third-Party Plaintiffs cannot rely on group pleading to state a claim against McCowan for tortious interference, especially considering that each of the Third-Party Defendants is in a different position relative to VBF (e.g., being an employee versus a director). *See, e.g.*, *Del Castillo v. PMI Holdings N. Am. Inc,* 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) ("[L]umping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2) and 12(b)(6).") (citation omitted).[4]

---

[4] *See also Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019) ("[T]o give the requisite notice to each Defendant, Plaintiff needs to avoid improper 'group pleading' that does not distinguish the conduct of the individual Defendants."); *Gurganus v. Furniss*, 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) (holding plaintiff's "group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8" and "makes it impossible to ascertain which particular Defendants(s) are supposedly responsible for the acts allegedly creating the WARN Act violation") (citations omitted).

Finally, Third-Party Plaintiffs do not allege in the Third-Party Complaint but speculate in their Response that "McCowan must have approved the filing of this lawsuit against Founders in July 2018." Resp. at 11. These speculative arguments are not proper and, regardless, are insufficient to demonstrate that McCowan actively persuaded VBF to breach the Termination Agreements.

3. <u>Third-Party Plaintiffs make unreasonable inferences to support their exemplary damages claim against McCowan</u>.

In support of their argument that they have adequately alleged fraud, malice or gross negligence on McCowan's part and have stated a claim for exemplary damages, Third-Party Plaintiffs rely on allegations not in the Third-Party Complaint and allegations that do not specifically reference and/or identify McCowan. Resp. at 14-15. For example, Third-Party Plaintiffs argue the Third-Party Complaint alleges that the "Alder Defendants (which include McCowan) withheld funds from VBF's credit facility," see *id.* (citing Third-Party Complaint ¶ 25), and "McCowan imposed additional conditions on Hall and T. Rea's severance payments after the fact" and that this shows "vindictiveness," see *id.* (citing Third-Party Complaint ¶ 31), but neither of these is true. Rather, paragraphs 25 and 31 each reference another director by name as taking action—not McCowan. *Id.* And nowhere in the Third-Party Complaint does it allege that McCowan followed those directions.

Further, Third-Party Plaintiffs argue the unreasonable inference that paragraph 33's allegations that McCowan was present at a meeting demonstrates that he engaged in fraud. *See* Response at 13-14 (citing Third-Party Complaint ¶ 33). The mere presence of a corporate officer at a company meeting does not amount to fraud and alone is wholly insufficient to demonstrate "fraud" to justify an award of exemplary damages. While the Court must indulge all reasonable inferences in favor of the plaintiff, the Court, however, cannot assume that the plaintiff can prove

facts it has not alleged. *See, e.g., Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986) ("It is not, however, necessary or proper to assume that the plaintiffs can prove facts that they have not alleged or that the defendants violated the [law] in ways that have not been alleged.") (citing *Assoc. General Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

**B.     Third-Party Plaintiffs fail to state a claim for attorneys' fees.**

Third-Party Plaintiffs' statements in the Third-Party Complaint that they are entitled to recover attorneys' fees are legal conclusions that are "not entitled to the assumption of truth." *Lawson v. Jason Pharm., Inc.*, 3:17-CV-2648-L, 2019 WL 2448849, at *3 (N.D. Tex. June 12, 2019) (Lindsay, J.) (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)). In order to state a claim for attorneys' fees, Third-Party Plaintiffs must plead sufficient facts to state a plausible claim for relief, which they have failed to do.

The Third-Party Complaint wholly failed to plead the specific statutory ground under Section 38.001 that serves the basis of James Rea's claim for attorneys' fees. And James Rea's belated attempt to identify subsection (8) of section 38.001 as the statutory ground in the Response does not save his claim from dismissal, as a "plaintiff may not amend its complaint in response to a motion to dismiss." *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013). In addition, James Rea's failure to allege prior presentment of a claim as required by Section 38.002 is also fatal to his claim for attorneys' fees. Further, Third-Party Plaintiffs cite no authority or allegations to support that Section 38.001 permits a party to recover attorneys' fees from a nonparty to the contract containing the relevant provision, which is what they seek here.

Likewise, Hall, T. Rea, and Wulf cannot seek to recover attorneys' fees from *McCowan* personally under the contractual provisions in their respective agreements with *VBF*. Third-Party Plaintiffs cite no authority to support this proposition and certainly allege no facts to state a claim to relief that is plausible on its face. The contractual provisions in Hall, T. Rea, and Wulf's

**THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS THIRD-PARTY CLAIMS – PAGE 7**

respective termination agreements authorizing recovery of attorneys' fees clearly limit the persons from whom attorneys' fees can be recovered to a "Party" or the "Parties," a definition that does not include McCowan. *See* Ex. B at p. 1 and ¶ 7(i); Ex. C at p. 1 and ¶ 7(i); Ex. D at p. 1 and ¶ 7(i).

Finally, Third-Party Plaintiffs cite no relevant authority to contradict the well-established principle that attorneys' fees cannot be awarded as damages for tortious interference in the same suit. Contrary to what Third-Party Plaintiffs suggest, *Ganske v. WRS Group, Inc.*, No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App.—Waco April 18, 2007, no pet.) does not support that attorneys' fees can be recovered as damages for tortious interference in the same suit in which they were incurred. In fact, the plaintiffs in *Ganske* sought to recover in a later lawsuit payment of "*prior* attorney's fees as damages," that is, fees that were incurred in an earlier, separate lawsuit. *Id.* at *1 (emphasis added). Unlike the plaintiffs in *Ganske*, Third-Party Plaintiffs seek to recover fees incurred in defending VBF's claims in this instant lawsuit; thus any claim for attorneys' fees are in the nature of costs, not damages.

**C.      There are no covenants not to sue in the Termination Agreements.**

The Texas Supreme Court has made clear that a party who releases a claim and later files suit on that claim does not necessarily breach the agreement containing the release. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428 (Tex. 2015). Rather, a court must review the "release language to determine whether [the] agreement includes a contractual obligation not to sue." *Id.* Third-Party Plaintiffs incorrectly equate the language releasing and discharging claims with a covenant not to sue. The releases contain no promises not to sue. To the contrary, and like the agreement in *National Properties Holdings*, the Termination Agreements contemplate that the parties may bring suit by including language regarding the recovery of attorneys' fees in any litigation brought to enforce any provision of the agreement. *See, e.g.*, Ex. C at ¶ 7(i); Ex. D at ¶ 7(i). As the Texas Supreme Court noted, such an attorneys' fees provision "indicates that a suit

may be brought, even though the agreement is in effect, and in no way suggests that filing a suit concerning the [agreement's] release claims results in a breach." *Nat'l Prop. Holdings*, 453 S.W.3d 419 at 428. Indeed, there are other provisions in the Termination Agreements that unambiguously demonstrate that the parties contemplated future litigation. *See* Motion at 10 n.6.

Third-Party Plaintiffs, however, ignore the above-referenced authorities from the Texas Supreme Court and point instead to *Ganske* for support—an unpublished case from the Waco Court of Appeals case (with no petition history) that *pre-dates* the *National Property Holdings* opinion. Notably, the *Ganske* court did not undertake an analysis as to whether the agreement at issue included a contractual obligation not to sue, which *National Properties Holdings* instructs is the relevant inquiry. Furthermore, the *Ganske* case is factually distinguishable. Third-Party Plaintiffs concede "the language in the Ganske release was more specific." Indeed, unlike the releases in this case, the settlement agreement in *Ganske* specifically provided that the Ganskes paid a sum to the other contracting party "solely to buy his peace and avoid costly and time costing [sic] litigation." *Ganske*, 2007 WL 1147357 at *3. *Ganske* has little to no precedential value and does not change that the Termination Agreements contain no contractual obligations not to sue.

**D.** **Third-Party Plaintiffs cannot establish an underlying breach of contract to support their claims for tortious interference of contract.**

McCowan does not dispute that Third-Party Plaintiffs' tortious interference claims against him were excluded from the release in paragraph 9.15 of VBF's Reorganization Plan. That those claims against McCowan were carved from the release, however, does not save Third-Party Plaintiffs' claims from dismissal. Third-Party Plaintiffs must still allege sufficient facts to demonstrate a plausible claim to relief for tortious interference, which requires that they demonstrate that VBF breached the Termination Agreements. This they cannot do as their claims against VBF for breach of contract were discharged and released. Stated differently, Third-Party

Plaintiffs released the cause of action that they would need to prove in order to prove tortious interference. Furthermore, that paragraph 4 of the modification permits Third-Party Plaintiffs to "plead any and all *defenses*" in this action does not permit them to plead any and all facts with respect to its affirmative *claims* in this case. And contrary to Third-Party Plaintiffs' suggestion, breach of contract is not a defense to the claims asserted by VBF in the live complaint.

E.   **VBF had a contractual right to terminate James Rea for Egregious Cause.**

The Third-Party Complaint itself alleges that James Rea's employment contract permitted termination for Egregious Cause and that VBF terminated Rea pursuant to the Egregious Cause provisions. *See* Third-Party Complaint ¶¶ 49-50. Even accepting as true the Third-Party Complaint's allegations that the Egregious Cause was fabricated, the Third-Party Complaint nonetheless fails to allege enough facts that McCowan played a part in the allegedly sham investigation that served the basis of the "false claim of Egregious Cause" or otherwise played a role in fabricating a claim of Egregious Cause. *See id.* ¶ 87. Indeed, the Third-Party Complaint is silent as to what role, if any, McCowan played in this alleged scheme to terminate James Rea. As noted by this Court, it is not required "to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *Lawson*, 2019 WL 2448849, at *3.

## II.   CONCLUSION

For the foregoing reasons, Third-Party Defendant Norman McCowan respectfully requests that this Court grant the Motion, deny the relief requested in the Response, and grant such other and further relief to which he may show himself justly entitled.

Dated: July 19, 2019

*/s/ Nicole Williams*
Nicole Williams
Texas Bar No. 24041784
nicole.williams@tklaw.com
William L. Banowsky
Texas Bar No. 01697125
bill.banowsky@tklaw.com
Jasmine S. Wynton
Texas Bar No. 24090481
jasmine.wynton@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-2102
214-999-9210 (facsimile)

*s/ Robert H. Lang*
Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com
Patrick Morales-Doyle
(appearing *pro hac vice*)
pmoralesdoyle@thompsoncoburn.com
Caroline Pritikin
(appearing *pro hac vice*)
cpritikin@thompsoncoburn.com
Eileen E. Boyle Perich
(appearing *pro hac vice*)
eboyleperich@thompsoncoburn.com
Adam C. Decker
(appearing *pro hac vice*)
adecker@thompsoncoburn.com

**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

**ATTORNEYS FOR THIRD-PARTY DEFENDANT NORMAN MCCOWAN**

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that on July 19, 2019 this document was filed and served to all counsel of record via the Court's ECF system.

                */s/ Jasmine Wynton*
                Jasmine Wynton