**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff | § | |
| | § | |
|   v. | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
|     Defendants | § | |

**PLAINTIFF VEROBLUE FARMS USA INC.'S MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

I.      Summary of Argument ..................................................................................1

II.     Background ...................................................................................................2

        A.      Factual Background ..........................................................................2

        B.      Procedural Background.....................................................................3

III.    Argument & Authorities ...............................................................................4

        A.      Relevant Legal Standard ..................................................................4

        B.      The Responding Founders' objections to specific Document Requests
                should be overruled..........................................................................4

                1.      Financial Information related to the Responding Founders.......5

                2.      Documents relating to the Nelson Family or Randy Chalfant ...6

        C.      Wulf's Insufficient Interrogatory Responses ....................................8

                1.      Wulf's objections to financial interrogatories should be overruled...........9

                2.      Wulf's objections to providing information on compensation paid
                        by VBF to Wulf's family should be overruled. ........................10

        D.      Hall's Insufficient Interrogatory Responses .....................................11

        E.      James Rea's Insufficient Interrogatory Responses .............................12

        F.      Ted Rea's Insufficient Interrogatory Responses.................................13

                1.      Ted Rea's objections to financial interrogatories should be
                        overruled. .................................................................................13

                2.      Ted Rea's objections to providing information on compensation he
                        received from any Sheriff Entities should be overruled. ...........14

IV.     Conclusion ...................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Areizaga v. ADW Corp.*,
　314 F.R.D. 428 (N.D. Tex. 2016) .......................................................................... 11

*In re Manion*,
　No. 07-08-0318-CV, 2008 WL 4180294 (Tex. App. Sept. 11, 2008)................................... 6, 8

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*,
　No. 3:14-CV-2498-B, 2016 WL 2997744 (N.D. Tex. May 25, 2016) ...................................... 4

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
　894 F.2d 1482 (5th Cir. 1990) .............................................................................. 4

Plaintiff VeroBlue Farms USA Inc. ("**VBF**") moves to compel Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John E. Rea, (the "**Responding Founders**") (the Responding Founders, together with Keith Driver, the "**Founders**") to produce documents responsive to Plaintiff's First Request for Production of Documents and to provide full responses to Plaintiff's First Set of Interrogatories.

## I.   SUMMARY OF ARGUMENT

In three short years, the Founders of VBF squandered tens of millions of dollars others invested into the company and drove VBF into bankruptcy, all while draining the company of cash and assets for their own benefit, as well as the benefit of their family members and other entities that they owned or controlled. After discovering the wrongful actions of the Founders, VBF filed this lawsuit to recover damages from the Founders for the harm they caused. In this lawsuit, VBF asserts claims for breach of fiduciary duty and an equitable accounting to account for funds distributed from VBF, among other claims.

Through written discovery, VBF requested that the Founders provide certain information directly related to these allegations and claims of wrongful conduct, including misappropriation, corporate waste, and squandering of VBF's assets to benefit themselves, their family members, and their affiliated entities. Remarkably, the Responding Founders have objected to these requests as seeking "irrelevant" information. These relevance objections are wholly without merit, and VBF respectfully requests that this Court overrule the Responding Founders' relevance objections and compel the Responding Founders to produce responsive documents and sufficient answers to the following requests for production and interrogatories:

*First Request for Production of Documents to Defendants* Nos. 5, 6, 8, 9, 81

*First Set of Interrogatories to Leslie Wulf* Nos. 1, 3, 4, 13, 16

*First Set of Interrogatories to Bruce Hall* Nos. 1, 2, 3, 20

*First Set of Interrogatories to James Rea* Nos. 1, 2, 3, 17, 18

*First Set of Interrogatories to Ted Rea* Nos. 1, 2, 3, 4, 17, 22

## II.   BACKGROUND

### A.   Factual Background

The Founders founded VBF, a sustainable fish farm business, in 2014.  *See* Amended Complaint ("**Compl.**") (Dkt. 9) ¶¶ 11-12; *see also* Proposed Second Amended Complaint ("**SAC**") (Dkt. 102-1) ¶ 1.[1]  The Founders did not invest any of their own money into VBF, but between 2014 and early 2018, when the last of the Founders was terminated by VBF, the Founders had misappropriated or otherwise squandered over $90,000,000 in debt and equity invested by others. *See* Compl. ¶ 41; *see also* SAC ¶ 1.

As detailed in the Amended Complaint, VBF, at the Founders' direction, sunk millions of dollars into what the Founders knew to be a losing proposition, to the benefit of the Founders and to the detriment of VBF.  VBF's current claims against the Founders for their wrongful conduct and gross misuse of VBF assets include: (1) breach of fiduciary duty, (2) fraudulent concealment, (3) fraudulent misrepresentation, (4) constructive fraud, (5) civil conspiracy, (6) aiding and abetting, (7) unjust enrichment, (8) equitable accounting, and (9) declaratory judgment.  *See* Compl. ¶¶ 43-85.  In addition, VBF alleges that the Founders violated their fiduciary duties by, mismanaging VBF, including but not limited to, presenting highly flawed and intentionally manipulated business plans, mismanaging technology, mismanaging capital expenditures, and mismanaging other financial and operational issues.  *See, e.g.,* Compl. ¶ 41.[2]

---

[1] Plaintiff's Motion for Leave to file its second amended complaint is still pending. (Dkt. 102).

[2] In the SAC, VBF also asserts claims against the Founders and the other Defendants of (10) & (11) violations of the Uniform Voidable Transfer Act (under Iowa law), (12) actual fraudulent transfer (under Texas law), (13) constructive

**B.     Procedural Background**

On February 26, 2019, VBF served its first set of discovery requests on the Responding Founders: (1) *First Request for Production of Documents to Defendants* (the "**Document Requests**"); (2) *First Set of Interrogatories* to each of the Responding Founders (collectively, the "**Interrogatories**," individually referred to as, the "**Hall Interrogatories**;" "**Wulf Interrogatories**;" "**T. Rea Interrogatories**;" and "**J. Rea Interrogatories**"); and (3) *First Request for Admission of Fact* to each of the Founders (collectively, the "**Requests to Admit**"). On April 4, 2019, the Responding Founders served joint objections and responses to the Document Requests[3] and each served responses and objections to the Requests to Admit.[4]  On April 9, 2019, the Responding Founders served their responses to the Interrogatories.[5]

On April 15, 2019, counsel for VBF and the Responding Founders participated in a meet and confer teleconference regarding the Responding Founders' discovery responses and document production, including deficiencies in the Responding Founders' interrogatory responses.

By letter dated July 2, 2019, VBF's counsel informed Responding Founders of unresolved deficiencies in the Responding Founders' discovery responses and document production.[6] Specifically, VBF's counsel raised, *inter alia*, issues with the Responding Founders' relevance

---

fraudulent transfer (under Texas law), (14) rescission and declaratory judgment relating to Hall, Driver, and Ted Rea's termination agreements, (15) declaratory judgment relating to James Rea's employment agreement, (16) rescission relating to James Rea's employment agreement, (17) rescission relating to Wulf's separation agreement, (18) declaratory judgment relating to Wulf's separation agreement, (19) restitution relating to Hall, Ted Rea, and Driver's termination agreements and Wulf's separation agreement, (20) and violations of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**").  SAC ¶¶ 255-288, 309-357, 400-434.

[3] Attached hereto as **Exhibit A** is a true and correct copy of the Responding Founders' responses to the Document Requests.

[4] Attached hereto as **Exhibits B–E** are true and correct copies of the Responding Founders' responses to the Requests to Admit.

[5] Attached hereto as **Exhibits F–I** are true and correct copies of the Responding Founders' responses to the Interrogatories.

[6] Attached as **Exhibit J** is a true and correct copy of the July 2, 2019 correspondence.

objections to interrogatories and requests for production related to financial information and net worth of the Responding Founders, their entities, and family members.  Counsel discussed the issues, and the Responding Founders' counsel also responded by letter dated July 22, 2019.[7] Despite these ongoing efforts to resolve the discovery disputes, the parties have not been able to reach an agreement on the requests and issues discussed below.

### III.   ARGUMENT & AUTHORITIES

#### A.   Relevant Legal Standard

The Federal Rules of Civil Procedure provide for broad discovery—parties are entitled to discover any non-privileged matter relevant to any party's claim or defense in proportion to the case's needs. *See* FED. R. CIV. P. 26(b)(1). To that end, when a party fails to answer a discovery request, the requesting party may move to compel an answer. *See* FED. R. CIV. P. 37(a)(3). "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  FED. R. CIV. P. 37(a)(4).

The burden is on "[t]he party resisting discovery [to] show specifically how each discovery request is not relevant or [is] otherwise objectionable." *See McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 2997744, at *4 (N.D. Tex. May 25, 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

#### B.   The Responding Founders' objections to specific Document Requests should be overruled.

In response to certain Document Requests seeking highly relevant information, the Responding Founders all lodged relevancy objections.  As set forth below, the Responding Founders' objections are without merit and should be overruled.

---

[7] Attached as **Exhibit K** is a true and correct copy of the July 22, 2019 correspondence.

1.  **Financial Information related to the Responding Founders**
    *Request for Production Nos. 5, 6, 8, and 9*

Even with the detailed allegations of their wrongful conduct, including corporate mismanagement and waste of corporate assets, in the Amended Complaint (and in the SAC), the Responding Founders refuse to produce their own financial information or information related to the transfer of their assets.  Specifically, VBF sought the following categories of documents from the Responding Founders:

- Documents relating to their affiliated entities;

- Documents relating to bank accounts or accounts at other financial institutions at which Defendants, their affiliated entities, or their family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds;

- Documents relating to Defendants' income, including income tax returns; and

- Documents relating to title to property or real estate owned by Defendants or from which Defendants receive an income.

The Responding Founders objected to each of these requests as seeking irrelevant information and overbroad in that the requests seek personal and confidential information, and refused to produce any documents in response to these requests.

Despite their attempts to avoid production of the requested information, the Responding Founders are improperly withholding information that is relevant to VBF's claims and allegations against the Responding Founders. The Responding Founders' financial information (including information regarding their affiliated entities, bank accounts, and real estate) goes directly to the heart of VBF's allegations in this lawsuit regarding their mismanagement and misappropriation of VBF funds for the benefit of themselves, their families, or their affiliated entities, as well as VBF's accounting claim against the Responding Founders.  *See* Compl. ¶¶ 14-39, 40-42, 80-82; *see also* SAC ¶¶ 55, 56, 171-175, 233, 315, 333, 339, 342, 437-450.    VBF has alleged that the Founders

squandered tens of millions of dollars from VBF over a period of about 3 years. *See* Compl. ¶ 41; *see also* SAC ¶ 25. The Amended Complaint outlines several schemes involving the Founders and their affiliated entities through which the Founders siphoned millions of dollars from VBF. *See* Compl. ¶¶ 15-38; *see also* SAC ¶¶ 27–27, 28-31, 49-51. VBF is entitled to information that may lead to the discovery of where those funds were transferred or spent, by whom, and for what purpose. Further, information related to the Responding Founders' affiliated entities is necessary in order for VBF to determine the extent of the misappropriation and harm caused to VBF.

In sum, VBF is entitled to information related to the financial position of the Responding Founders, which includes information relating to any real estate or personal property, as well as other information that may lead to the discovery as to where VBF's corporate assets went, whether directly to the Responding Founders or directed to the Responding Founders' family members or affiliated entities. *See, e.g., In re Manion*, No. 07-08-0318-CV, 2008 WL 4180294, at *3 (Tex. App. Sept. 11, 2008) (holding that financial information was relevant and discoverable in action alleging that defendant used his position for financial gain in violation of his fiduciary duties).

Furthermore, any concerns that the Founders may have relating to the disclosure of financial information obtained during discovery can be adequately safeguarded by the agreed protective order recently issued in this case. *See* Dkt. 112.

Accordingly, VBF requests that this Court overrule the Responding Founders' unfounded objections and compel the Responding Founders' to produce the information requested.

### 2. Documents relating to the Nelson Family or Randy Chalfant
   *Request for Production No. 81*

VBF requested documents related to the Nelson family (including Grace Nelson, Mark Nelson, Jeff Nelson, Korrine Nelson and/or Jerita Nelson) or Randy Chalfant (a former employee of VBF), on the one hand, and the Responding Founders or their counsel, on the other hand. The

Responding Founders objected that the request seeks irrelevant information and refused to produce any documents.[8]

This request seeks information that is relevant to this case because of the Nelsons' involvement in the predecessor company to VBF, Iowa's First, Inc. ("**Iowa's First**") and because of the Nelsons' continued involvement in VBF during the Responding Founders' tenure. As further explained in VBF's Resistance to the Nelsons' Motion to Quash Subpoenas or for Protective Order (*see* Dkt. 44),[9] the Nelsons are critical witnesses in this case.

As background, VBF began when the Founders took over an existing aquaculture business started by the Nelson family. The Nelson family started their aquaculture business, known as Iowa's First, in 2012. SAC ¶ 18. Effective December 31, 2014, the Nelsons sold their business to VBF (incorporated by the Founders on September 5, 2014) through a transaction in which the Nelsons and their wives retired $1,200,000 in debt and received stock in VBF. *Id.* In addition, members of the Nelson family were also shareholders, including Grace Nelson, Mark Nelson, Jeff Nelson, and Korrine Nelson. Further, after the purchase of Iowa's First by the Founders, certain Nelson family members became employees of VBF, including (i) Grace Nelson, who worked for VBF as its Production Quality & Planning Manager; (ii) Mark Nelson, who worked as VBF's Director of Special Projects; and (iii) Jeff Nelson, who also worked in Special Projects. *See* Dkt. 44 at 3.

During VBF's early years, Mark Nelson promoted VBF and its technology, which ultimately proved to be an utter failure. The Founders misrepresented this technology to investors

---

[8] The Responding Founders also objected to this request "to the extent it seeks" privileged communications. Counsel for the Responding Founders has represented that they will be providing a privilege log on August 23. As a result, VBF will address the privilege assertion separately after review of the privilege log.

[9] The Nelsons have since withdrawn their Motion to Quash Subpoenas or for a Protective Order, and it is no longer pending before this Court. *See* Dkts. 86, 89.

and others.  Mark Nelson also has significant other information about the Founders' fraud.  For example, Mark Nelson's daughter, Kelsey Clarken, submitted an affidavit in which she corroborated the Founders' fraudulent hiring of Defendant Wulf's daughter, Christine Gagne, an illegal alien improperly placed on VBF's payroll, and Kelsey Clarken averred that Mark Nelson knew all about this situation.  *Id.* at 3; *see also* Compl. ¶¶ 29-32.  Kelsey Clarken also corroborated her father Mark Nelson's knowledge about the Founders' other businesses.  Dkt. 44 at 3.

Moreover, documents relating to Randy Chalfant are also relevant to VBF's allegations regarding the Founders' waste and mismanagement of VBF funds.  Chalfant was the maintenance manager for VBF from October 2016 to October 2018, and may be able testify to the Founders' purchase of various properties on behalf of VBF, unnecessary and excess equipment (*e.g.*, tractor-trailers and company vehicles), unnecessary travel expenses, as well as the Founders' attempt to overbuild VBF facilities.  *See* Dkt. 25-1 at 4.

VBF is entitled to information that may lead to the discovery of the extent of the misappropriation and fraud perpetrated by the Founders while they were in control of VBF.  Documents related to the Nelsons and Chalfant are necessary in order for VBF to determine the extent of the misappropriation and harm caused to VBF.  Accordingly, VBF requests that this Court enter an order overruling the Responding Founders' objections and compelling the Responding Founders to produce all documents responsive to Request for Production No. 81.

## C.  Wulf's Insufficient Interrogatory Responses

As set forth below, VBF requests that this Court enter an ordering overruling Wulf's objections to certain interrogatories and compelling Wulf to respond adequately to certain interrogatories.

1. **Wulf's objections to financial interrogatories should be overruled.**
   *Wulf Interrogatory Nos. 1, 4, 13, and 16*

Similar to the requests for production, VBF served specific interrogatories seeking information regarding Wulf's finances, including information that could show where VBF's corporate assets went (including to Wulf's family members, trust accounts, affiliated entities, and related professionals) and the extent of the misappropriation and other wrongful conduct by Wulf, including through his affiliated entities and related professionals. Specifically, VBF's interrogatories ask Wulf to identify or state the following:

- All Defendants' affiliated entities;

- All real estate owned by Defendant, any member of Defendants' family; and/or any of Defendants' affiliated entities;

- All professionals who have performed any services for Defendant, any member of Defendants' family; and/or any of Defendants' affiliated entities;

- All entities (including trusts) in which Defendants, any member of Defendants' family; and/or any of Defendants' affiliated entities owns a beneficial or equitable interest, is serving as a trustee, or by which Defendant has been employed or compensated.

Wulf objected to each of these interrogatories as seeking irrelevant and confidential/personal information and refused to respond.

As with the related Document Requests discussed above, the information sought in each of these interrogatories goes directly to at least VBF's claims that the Defendants misappropriated and wasted VBF corporate funds and used VBF funds for the benefit of themselves, their families, or their affiliated entities, which would include through trust accounts or paid professionals as well as to VBF's accounting claim against the Responding Founders. *See* Compl. ¶¶ 14-39, 40-42, 80-82; *see also* SAC ¶¶ 55, 56, 171-175, 233, 315, 333, 339, 342, 437-450. In other words, the information is highly relevant to this case. And, any concerns that the Founders may have relating

to the disclosure of financial information obtained during discovery can be adequately safeguarded by the agreed protective order recently issued in this case.  *See* Dkt. 112.

Therefore, Wulf's relevance objections to Interrogatory Nos. 1, 4, 13, and 16 should be overruled, and this Court should compel Wulf to respond to each of these interrogatories.

> **2. Wulf's objections to providing information on compensation paid by VBF to Wulf's family should be overruled.**
> *Wulf Interrogatory No. 3*

VBF asked Wulf to identify all amounts that Defendants' Family, including Christine Gagne, received from VBF.  In response, Wulf provided information of compensation paid by VBF to him, but he failed to identify *any* amounts that Christine Gagne or any other family member received from VBF.

Wulf does not get to avoid responding to an interrogatory by asserting that the interrogatory seeks personal information about him or his family members.  Wulf was involved in a fraudulent scheme of misappropriating and squandering funds for the benefit of himself and his family.  *See* Compl. ¶ 39.  As alleged in the SAC, Wulf caused VBF to pay his daughter, Defendant Gagne, over $50,000 in compensation and benefits.  *See* SAC ¶¶ 42-45.  In doing so, Wulf caused VBF to pay Gagne under a false name—"Ronnie O'Brien"—to conceal VBF's payments to her.  *Id.* ¶ 43.

Further, this interrogatory does not seek "personal" information, as Wulf suggests.  And even if this Court finds that compensation paid by the Plaintiff is personal information, any concerns Wulf has about protecting the confidentiality of such information are appropriately addressed under the protective order issued by the Court.  *See* Dkt. 112.  This interrogatory is tailored to obtain information of other payments VBF made to him or his family members and directly relevant to VBF's accounting claim.  *See, e.g.,* Compl. ¶ 39, 80-82.

VBF requests that this Court compel Wulf to fully and adequately respond to Interrogatory No. 3 with all information reasonably available to him.  *See Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016), No. 3:14-cv-2899-P (N.D. Tex. April 4, 2016).

**D.      Hall's Insufficient Interrogatory Responses**
         *Hall Interrogatory Nos. 1, 2, 3, and 20*

VBF requests that this Court enter an ordering overruling Hall's relevancy objections to certain interrogatories.  Specifically, VBF's interrogatories ask Hall to identify or state the following:

- All Defendants' affiliated entities;

- All banks or other financial institutions at which Defendants, their affiliated entities, or their family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds;

- All real estate owned by Defendant, any member of Defendants' family; and/or any of Defendants' affiliated entities; and

- All entities (including trusts) in which Defendants, any member of Defendants' family; and/or any of Defendants' affiliated entities owns a beneficial or equitable interest, is serving as a trustee, or by which Defendant has been employed or compensated.

Like Wulf, Hall also objected to each of these interrogatories as seeking irrelevant and personal, confidential information and refused to respond to these interrogatories.

As discussed in detail above, this information is highly relevant to VBF's claims of wrongdoing, including misappropriation and waste of corporate assets.  *See* Compl. ¶¶ 14-39, 40-42, 80-82; *see also* SAC ¶¶ 55, 56, 171-175, 233, 315, 333, 339, 342, 437-450.  Any concerns regarding protecting personal, confidential information are appropriately addressed by the protective order issued by the Court. Dkt. 112.  This Court should, therefore, overrule Hall's objections and enter an order compelling Hall to respond to Interrogatory Nos. 1, 2, 3, and 20.

E.      **James Rea's Insufficient Interrogatory Responses**
        *James Rea Interrogatory Nos. 1, 2, 3, 17, and 18*

VBF requests that this Court enter an ordering overruling James Rea's objections to certain interrogatories and compelling James Rea to adequately respond to certain interrogatories. Specifically, VBF's interrogatories ask James Rea to identify or state the following:

- All Defendants' affiliated entities;

- All banks or other financial institutions at which Defendants, their affiliated entities, or their family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds;

- All real estate owned by Defendant, any member of Defendants' family; and/or any of Defendants' affiliated entities; and

- Communications between any member of the Nelson family (Grace Nelson, Mark Nelson, Jeff Nelson, Korrine Nelson and/or Jerita Nelson) or Randy Chalfant (a former employee of VBF), on the one hand, and the Responding Founders or their counsel on the other.

Like the other Responding Founders, James Rea also objected to each of these interrogatories as seeking irrelevant and personal, confidential information.[10]   As discussed in detail above, this information is highly relevant to VBF's claims of wrongdoing, including misappropriation and waste of corporate assets. *See* Compl. ¶¶ 14-39, 40-42, 80-82; *see also* SAC ¶¶ 55, 56, 171-175, 233, 315, 333, 339, 342, 437-450.   Any concerns regarding protecting personal, confidential information are appropriately addressed by the protective order issued by the Court. Dkt. 112.

This Court should, therefore, overrule James Rea's objections and enter an order compelling him to respond to Interrogatory Nos. 1, 2, 3, 17, and 18.

---

[10] As to Interrogatory Nos. 17 and 18, James Rea also asserted the attorney-client privilege, work product doctrine, and/or common interest privilege.  Counsel for the Responding Founders has represented that they will be providing a privilege log on August 23.  As a result, VBF will address the privilege assertion separately after review of the privilege log.

### F.     Ted Rea's Insufficient Interrogatory Responses

VBF requests that this Court enter an ordering overruling Tea Rea's objections to certain interrogatories and compelling Ted Rea to adequately respond to certain interrogatories.

**1.  Ted Rea's objections to financial interrogatories should be overruled.**
   *Interrogatory Nos. 1, 2, 3, 17, and 22*

VBF requests that this Court enter an ordering overruling Ted Rea's relevancy objections to certain interrogatories.  Specifically, VBF's interrogatories ask Ted Rea to identify or state the following:

- All Defendants' affiliated entities;

- All banks or other financial institutions at which Defendants, their affiliated entities, or their family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds;

- All real estate owned by Defendant, any member of Defendants' family; and/or any of Defendants' affiliated entities;

- All professionals who have performed any services for Defendant, any member of Defendants' family; and/or any of Defendants' affiliated entities; and

- Names of any trusts to which any Defendant, Defendant's affiliated entities, or any member of Defendants' family is a trustee or beneficiary.

Like the other Responding Founders, Ted Rea objected to each of these interrogatories as seeking irrelevant and personal, confidential information.  As discussed in detail above, this information is highly relevant to VBF's claims of wrongdoing, including misappropriation and waste of corporate assets.  *See* Compl. ¶¶ 14-39, 40-42, 80-82; *see also* SAC ¶¶ 55, 56, 171-175, 233, 315, 333, 339, 342, 437-450.  Any concerns regarding protecting personal, confidential information are appropriately addressed by the protective order issued by the Court.  Dkt. 112.  This Court should, therefore, overrule Hall's objections and enter an order compelling Hall to respond to Interrogatory Nos. 1, 2, 3, 17, and 22.

**2.  Ted Rea's objections to providing information on compensation he received from any Sheriff Entities should be overruled.**
*Interrogatory No. 4*

Rick Sheriff allegedly sold the Founders the rights to the "Opposing Flows Technology" that the Founders fraudulently promoted.  Sheriff also allegedly worked for VBF in its early years as its "Chief Technology Officer."  VBF's interrogatory asked Ted Rea to identify all amounts that he received from any "Sheriff Entities," which is defined as "one or more entities in which Rick Sheriff has held or holds a direct or indirect beneficial, equitable or other legal interest or is an employee, manager, director or owner including but not limited to, RL Sheriff Custom Contracting, Inc."  Ted Rea objected on the basis that the interrogatory sought information not relevant to this case.

Subject to his relevance objection, Ted Rea provided some information, but the information is vague and confusing.  Specifically, Mr. Rea stated that he has "not received any payments from the Sheriff Entities. Sheriff did loan funds to Bajjer to pay off a loan on behalf of SSi to Green Bank in November 2016. Bajjer carries a note receivable from SSi for this loan payoff and Bajjer owes Sheriff for this payoff, but T. Rea did not receive any of these funds."  Ex. H at No. 4.

As a result, VBF requests that this Court enter an order compelling Ted Rea to provide full and adequate information in response to this interrogatory.  Specifically, Ted Rea should provide additional information relating to "SSi," including (i) an explanation as to why Sheriff loaned funds to Bajjer to pay off a loan on behalf of SSi to Green Bay; (ii) a description of SSi; (iii) a description of what the loan to Green Bay was for; (iv) why Bajjer paid off the loan; and (v) any other relevant details that clarify the response.

VBF requests that this Court compel Ted Rea to fully and adequately respond to Interrogatory No. 4.

## IV.   CONCLUSION

Therefore, Plaintiff VBF respectfully requests that this Court overrule the Responding Founders' relevance objections and compel the Responding Founders to produce all responsive documents within their possession, custody, or control and to fully respond to the interrogatories for each of these requests: (1) *First Request for Production of Documents to Defendants* Nos. 5, 6, 8, 9, 81; (2) *First Set of Interrogatories to Leslie Wulf* Nos. 1, 3, 4, 13, 16; (3) *First Set of Interrogatories to Bruce Hall* Nos. 1, 2, 3, 20; (4) *First Set of Interrogatories to James Rea* Nos. 1, 2, 3, 17, 18; and (5) *First Set of Interrogatories to Ted Rea* Nos. 1, 2, 3, 4, 17, 22.

Dated:  August 16, 2019

*/s/ Nicole Williams*
Nicole Williams
Texas Bar No. 24041784
nicole.williams@tklaw.com
William L. Banowsky
Texas Bar No. 01697125
bill.banowsky@tklaw.com
Jasmine S. Wynton
Texas Bar No. 24090481
jasmine.wynton@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-2102
214-999-9210 (facsimile)

*s/ Robert H. Lang*
Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com
Patrick Morales-Doyle
(appearing *pro hac vice*)
pmoralesdoyle@thompsoncoburn.com
Caroline Pritikin
(appearing *pro hac vice*)
cpritikin@thompsoncoburn.com
Eileen E. Boyle Perich
(appearing *pro hac vice*)
eboyleperich@thompsoncoburn.com
Adam C. Decker
(appearing *pro hac vice*)
adecker@thompsoncoburn.com

**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

**ATTORNEYS FOR PLAINTIFF**
**VEROBLUE FARMS USA INC.**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Federal Rule of Civil Procedure 37(a)(1) and Northern District of Texas Local

Civil Rule 7.1, Plaintiff has in good faith conferred with Defendants Leslie A. Wulf, Bruce A.

Hall, James Rea, and John E. Rea in an effort to obtain the discovery the subject of this Motion to

Compel without court action. I certify that the parties conferred about the relief requested in this

motion as follows:

- On July 2, 2019, Plaintiff's counsel sent a letter to counsel for Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John E. Rea, identifying unresolved deficiencies in the their discovery responses and document production, including, but not limited to issues with their relevance objections to interrogatories and requests for production.

- On July 22, 2019, counsel for Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John E. Rea sent a letter to Plaintiff's counsel, in part, reasserting their original objections on the issues addressed in the Motion.

- On July 22, 2019, Plaintiff's counsel had a telephone conference with counsel for Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John E. Rea, during which counsel for both parties were unable to resolve the issues addressed in the Motion.

- On August 15, 2019, Plaintiff's counsel e-mailed counsel for Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John E. Rea, to confer on the outstanding discovery deficiencies the subject to this Motion.

- On August 15, 2019, counsel for Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John E. Rea, confirmed that the parties had reached an impasse on the discovery deficiencies that are the subject of this Motion and that Plaintiff's counsel may proceed with filing the instant Motion, subject to one issue (T. Rea Interrogatory No. 4) that may potentially be resolved by a supplemental production.

*/s/ Nicole Williams*
Nicole Williams

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing instrument was

served upon all counsel of record, as listed below, via email, on this 16th day of August 2019.

      Kimberly D. Annello
      David Campbell
      UNDERWOOD PERKINS P.C.
      Two Lincoln Centre
      5420 LBJ Freeway, Suite 1900
      Dallas, Texas 75240
      Telephone: (972) 661-5114
      Facsimile: (972) 661-5691
      kannello@uplawtx.com
      dcampbell@uplawtx.com

      R. Heath Cheek
      Katie R. Beaird
      Bell Nunnally & Martin LLP
      2323 Ross Avenue, Suite 1900
      Dallas, Texas 75201
      Telephone: (214) 740-1400
      Telecopy: (214) 740-1499
      hcheek@bellnunnally.com
      kbeaird@bellnunnally.com

                                  */s/ Nicole Williams*
                                  Nicole Williams