UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., <br>    Plaintiff | § § § | |
| v. | § § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES REA, JOHN REA, and KEITH DRIVER, <br>    Defendants/Founders | § § § § | CIVIL ACTION NO. 3:19-CV-00764-L |
| v. | § § § | |
| EVA EBSTEIN, JENS HAARKOETTER, BJORN THELANDER, ANDERS WESTER, NORMAN MCCOWAN, DR. OTTO HAPPEL and ALDER AQUA, LTD. <br>    Third-Party Defendants | § § § § § | |

**FOUNDER DEFENDANTS' RESPONSE TO PLAINTIFF VEROBLUE FARMS USA INC.'S MOTION TO COMPEL DISCOVERY**

Defendants, Leslie Wulf ("Wulf"), Bruce Hall ("Hall"), John E. (Ted) Rea ("T. Rea") and James Rea ("J. Rea") (collectively, the "Founders") respond in opposition to Plaintiff, VeroBlue Farms USA, Inc.'s ("VBF") Motion to Compel Discovery [Dkt. No. 135]. VBF's Motion is predominantly directed at conducting a sweeping review and examination of the financial dealings of not only the Founders, but also their "***parents, spouses, children, siblings,*** " ***business ventures and partners***.[1] This broad and intrusive discovery into persons who are not party to this litigation is neither warranted nor proportional in this case, and is another step in VBF's a campaign to harass and intimidate anyone associated with Founders. The motion must be denied.

## ADDITIONAL PROCEDURAL BACKGROUND

VBF alleges that the Founders, who dedicated almost four years of their lives to growing and developing VBF's fish farming business, misappropriated company funds in ever ballooning amounts. But that is only half the story. As Founders allege in their Answer and Third-Party Claims, VBF's now-controlling shareholder, Alder Aqua, Ltd., began exerting increasing control over the company's daily operations through debt and equity warrants it owned. By late 2017, Founders were attempting to protect the company and its employees from a now-all too familiar MeToo crisis created by VBF Director Jens Haarkoetter (a representative of Alder). Immediately upon reporting the results of VBF's human resources' investigation of Mr. Haarkoetter and recommending that he be asked to step down from VBF's Board, Alder's other representatives on VBF's Board began serially terminating Founders from their management positions. Since then, VBF has missed no opportunity to scapegoat them for all of VBF's business failings, including its filing for bankruptcy over a year after their termination.

---

[1] VBF's own definition of "Defendants' Family", included in each of the nine sets discovery requests it served on Founders is "one or more of the family members of one or more of the Defendants including Defendants' parents, spouse, children and siblings." (*See e.g.,* Exhibit A p. 3)**.**

This lawsuit is Alder's primary vehicle for scapegoating the Founders and anyone and everyone associated with them. VBF initiated discovery in this case, not against the Founders themselves, but by serving 10 subpoenas on their lawyers, bank accounts, and colleagues. (*See* Mot. to Quash, Dkt. No. 41). This Court recently granted Founders' Motion to Quash six of these subpoenas as being irrelevant to this matter. Once VBF did initiate discovery against Founders, it served 87 requests for production, 436 requests for admission, and 98 interrogatories upon them (collectively). Founders responded to these requests and VBF has only raised disputes with 5 of Founders RFP responses and 20 of their interrogatory answers.[2] The responses at issue fall into three categories:

I. Requests for financial information, assets and bank accounts for Founders, their family members, affiliates, and business partners (RFP Nos. 5, 6, 8, 9; Wulf Interrog. 1, 4, 13, 16; Hall Interrog 1, 2, 3, 20; J. Rea Interrog. 1, 2, 3; T. Rea Interrog. 1, 2, 3, 17 and 22);

II. Requests for communications with persons who participated in the Ad Hoc Equityholders' Committee's objection to VBF's Chapter 11 reorganization Plan (J. Rea Interrog. 17, 18; RFP 81); and

III. Requests that have been answered either by document production or otherwise, but that VBF has attempted to broaden via letter (Wulf Interrog. 3, T. Rea Interrog. 4).

Founders have addressed some of VBF's requests (Categories II and III) with supplemental interrogatory responses they served on August 23, 2019,[3] documents that they have or will produce, and with the production of a privilege log. Founders continue to believe that the remaining requests (Category I) are irrelevant, overbroad, and an effort to harass and intimidate Founders and their families and colleagues. VBF's Motion to compel these items must be denied.

---

[2] It is unclear why VBF attached Founders' Responses to the over-400 Requests for Admission since none of them are the subject of its motion to compel. (Mot., Exs. B-E).

[3] These supplemental interrogatory responses are attached here to as Exhibit B.

## ARGUMENT

Under Fifth Circuit law, the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 584 (N.D. Tex. 2018). As to the proper scope of discovery, Fed. R. Civ. P. 26(b)(1) states:

> that a party may obtain discovery regarding any nonprivileged matter ***that is relevant to any party's claim or defense and proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

VBF has made no attempt to argue why its expansive request are proportional to the needs of the case – a fact that alone would support denial on its merits. *Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 594-95 (N.D. Tex. 2017). But even if the movant does not address proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes," *Id.* at 467 (quoting FED. R. CIV. P. 26, 2015 comm. note). Here, the three categories of request that VBF seeks to compel are not relevant or proportional to the needs of the case, seek privileged information, and/or have been addressed.

I. **VBF's Sweeping Requests for Every Piece of Financial Information from Founders, Their Families, and Their Affiliates, is Overbroad, Irrelevant and Meant Solely to Harass and Intimidate. (Category I)**

VBF's Motion seeks to compel responses to the following requests to Founders:

- To identify all their "Affiliated Entities" defined as "*entities in which one or more Defendants or one or more of Defendants' Family has held a direct or indirect beneficial, equitable or other legal interest*" and produce all related documents (Wulf Interrog. 1, Hall Interrog. 1, T. Rea Interrog. 1, J. Rea Interrog. 1, RFP Nos. 5);

- To *identify banks or other financial institutions to which you, Defendants' Affiliated Entities, or Defendants' Family have been named an account holder*, had rights to withdraw funds, and/or did withdraw funds, including account numbers, name of account holder(s), dates

account has been held and type of account and produce all related documents (Hall Interrog. 2, T. Rea Interrog. 2, J. Rea Interrog. 2, RPF No. 6);

- To produce all documents relating to Founders' *federal and state income, including income tax returns* (RFP No. 8);

- To identify *all real estate owned by you, any member of Defendants' Family, and/or any of Defendants' Affiliated Entities, directly or indirectly* (i.e, through a trust or other entity) by address, purchase price, listed sales price and identify lenders and produce all related documents (Wulf Interrog. 4, Hall Interrog. 3, T. Rea Interrog 3, J. Rea Interrog. 3; RFP No. 9);

- To identify *all entities (including trusts) in which Defendants, any member of Defendants family; and/or any of Defendants' Affiliated Entities owns a beneficial or equitable interest, is serving as trustee,* or by which Defendant has been employed or compensated and produce all related documents (Wulf Interrog. 16; Hall Interrog. 20, T. Rea Interrog. 22); and

- To identify *all professionals who have performed any services for Defendant, any member of Defendants' Family*; and/or any of Defendants' Affiliated Entities and produce all related documents; (Wulf Interrog. 13, T. Rea Interrog 17).

### A. The Financial Requests are Too Expansive to be Relevant to VBF's Claims or Proportional to the Need of this Case.

On their face alone, these requests constitute a fishing expedition into the personal financial condition of numerous people who are not parties to this lawsuit, and who only have the pleasure of being targeted by this invasive and punitive discovery because of their personal and professional relationships with Founders. These requests would encompass every home, vehicle, bank account, tax return, business, loan, credit card, asset or liability of Founders' parents, siblings, in-laws, children, children's spouses, or business partners. These requests do not meet the "reasonable particularity" test under Rule 34. *Lopez v. Don Herring*., 327 F.R.D. 567, 575-76 (N.D. Tex. 2018) ("'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A).").

VBF's explanation for why this financial version of a proctology exam is essentially one phrase: it is relevant to "VBF's claims that the Defendants misappropriated and wasted VBF corporate funds and used VBF funds for the benefit of themselves, their families or their affiliated

entities." (Mot. at pp. 5, 6, 9, 10, 11, 12, 13). This argument strains logic given that VBF has maintained exclusive access to all of its own records of payments and expenditures, and as a result has identified on its own, the payments and expenditures it believes have been misappropriated.[4] VBF's Amended Complaint and proposed Second Amended Complaint[5] contain detailed statements that identify by name and amount the person or entity, and the alleged amount of funds misappropriated. (*See* Am. Compl., Dkt. No. 9 at pp. 3-9). VBF is in the best position to determine from its records, what money it believes was allegedly misappropriated.

Moreover, VBF's assertion that it needs these documents and information to determine "where its corporate assets went" is belied by the sheer breadth of these requests. These requests are not limited to persons or entities that VBF may have paid or purchased goods or services from. They encompass every financial transaction, home purchase, loan, business venture, bank account, and more for these nonparties from January 2014 to the present. Thus, they encompass financial transactions by the Founders and their families well after they had any control or access to VBF's assets. While the Federal Rules encourage broad discovery, that discovery must be proportional based on the factors described in Rule 26(b)(1)(A) and reasonably particular under Rule 34. This is not discovery related to VBF's claims, but pre-judgment collection efforts and an attempt to harass and intimidate everyone in the Founders' circle. VBF has already embarked on this campaign, having served almost 100 subpoenas on third parties, including at least three law firms representing Founders, two accountants, four banks where Founders have personal bank accounts, and multiple family holding entities. The broad discovery of sensitive financial information

---

[4] It must be noted that Founders were all terminated from VBF between October 2017 and January 2018, almost two years ago. They have not had any access to VBF's accounting and financial records since then.
[5] VBF repeatedly cites to the Second Addend Complaint to establish the relevance of its discovery requests. *See e.g.*, Mot. to Compel, p. 3, fn.2, pp. 5, 6, 9-13.) But VBF's Motion for Leave to Amend and submit this Second Addend Complaint has not been ruled upon, so these allegations are not presently at issue.

concerning the Founders' family members and "Affiliated Entities" is not proportional to needs of the case, and VBF's motion does not discuss any of the proportionality factors listed in Rule 26.

### B. Discovery into the Founders' Net Worth is Premature.

VBF's position regarding the relevance of these Category I Requests has significantly changed. Initially, during the parties' April 15, 2019 telephone conference, VBF argued that these requests were relevant to its claims for an accounting and to establish the Founders' net worth in relation to an award of punitive damages. VBF repeated this "net worth" justification in its July 2, 2019 letter, (Mot., Ex. J, p. 2), citing to a Houston Court of Appeals case *In re Jacob,* in support of its discovery concerning net worth. *In re Jacob,* 300 S.W.3d 35, 40 (Tex.App.-Houston [14th Dist.] 2009) (citations omitted) ("parties may discovery and offer evidence of a defendant's net worth."). VBF seems to have dropped the "net worth" relevance argument, but Founders' objections to these Category I Requests as improper net worth discovery is well supported. TEXAS CIV. PRAC. & REM. § 41.0015, enacted in 2015, requires a party to first submit a motion to demonstrating a substantial likelihood of success on the merits of a claim for exemplary damages before being allowed to obtain net worth discovery. Then, after notice and a hearing, if the party has met its burden, only the least burdensome method of obtaining the requested evidence will be authorized. TEX. CIV. PRAC. & REM. CODE § 41.0115(a) (2015).

Therefore, the Court should sustain the Founder's objections as to VBF's Category I request unless and until VBF can establish a valid claim for punitive damages, and the appropriate limitations can be implemented on the scope and use of that discovery, if permitted.

### C. VBF's Request for Income Tax Returns Is Improper (RFP 8).

VBF's RFP 8, directed to all Founders, seeks "all documents relating to your federal and state income, including but not limited to income tax returns." (Appx. at 004). In addition to the objections previously discussed this request especially fails to meet the twin requirements of

relevance and proportionality under Rule 26. This court has recognized the sensitive nature to tax returns. "Tax returns are neither privileged nor undiscoverable. They do, however, contain sensitive information and should be produced only after a showing of relevance by the party seeking production, after which 'the burden shifts to the party opposing production to show other sources exist from which the information contained in the returns may be readily obtained.'" *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 587–88 (N.D. Tex. 2016) *citing Rafeedie v. L.L.C., Inc.*, No. A-10-CA-743, 2011 WL 5352826, at *2 (W.D. Tex. 2011) (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995)). This court should hold VBF to the same standard as other district courts in the 5th Circuit and determine that unless VBF can demonstrate a compelling need for tax returns, and the information cannot be obtained elsewhere, then the Founder's objection to this request is sustained. *Gondola v. USMD PPM, LLC,* 223 F. Supp. 3d 575, 588 (N.D. Tex. 2016) *quoting Williams v. United States Envtl. Servs., LLC,* No. CV 15-168-RLB, 2016 WL 684607, at *2 (M.D. La. 2016) ("The court will only compel their production where the requesting party demonstrates both: (1) that the tax information is relevant to the subject matter of the action; and that there is a compelling need for the information because the information contained in the tax returns is not otherwise readily obtainable through alternative forms of discovery." (internal quotation marks omitted.").

    II.    **VBF's Requests for Communications with the Nelson Family and Founders' Attorneys' Have Already been Found Irrelevant and Disproportional and Invade the Common Interest and Attorney Client Privilege. (Category II – J. Rea Interrog. Nos. 17,18; RFP 81)**

Category II of the discovery sought in VBF's Motion is directed at those who objected to its bankruptcy reorganization plan, actions that took place long after Founders were terminated from the Company. Specifically, VBF asks James Rea to identify "all communications" between him and any parties (Kenneth Lockard, FishDish LLC), law firms and/or attorneys that assisted Founders and other equity holders in contesting VBF's Chapter 11 reorganization plan, including

Horwood Marcus & Berk Ctd., Goldstein & McClintock, LLP, Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C. and even Founders' own counsel here (J. Rea Interrog. No. 18). VBF also asks Mr. Rea to identify any communications with any member of the Nelson family (also members of the Ad Hoc Equity holder's Committee) and Randy Chalfant, a VBF employee. (J. Rea Interrog. No. 17, RFP 81). Neither of these requests are relevant to VBF's pending claims.

With respect to J. Rea Interrog. No. 18, VBF already attempted to subpoena these same parties earlier in this case, and this Court quashed those subpoenas finding they sought discovery "that is not relevant to claims and defenses in this case and proportion to the needs of this case, as ***opposed to the related bankruptcy proceeding***." (Order [Dkt. No. 141], p. 2). VBF has not set forth any new relevance basis for these requests, merely repeating that "this information is highly relevant to VBF's claims of wrongdoing, including misappropriation and waste of corporate assets." (Mot, p. 12). VBF's bankruptcy happened long after Founders are alleged to have, or even would have been capable of, wasting VBF's corporate assets. Any communications Founders had with lawyers and/or parties about VBF's bankruptcy cannot bear on VBF's claims for misappropriation. This Court should sustain Founders' objection to Interrogatory 18 for the same reasons it quashed VBF's subpoenas seeking the very same information.[6]

A similar argument can be made with regard to J. Rea Interrog. No. 17 and RFP 81 seeking communications with the Nelson family. Certain members of the Nelson family were members of the Ad Hoc Equityholders' Committee and Mark Nelson testified in opposition to VBF's Chapter 11 reorganization plan. Any communications that Founders have had with the Nelsons or their attorneys are not relevant to VBF's claims, as this Court has already found. And these communications are subject to the same privilege assertions as communications with other

---

[6] Moreover, as Founders have asserted, these communications are protected by attorney-client, work product, and/or common interest privilege, and will be logged on a privilege log as such. (*See* July 22, 2019 letter, Ex. K, pp. 2-3).

members of the equityholders' committee. With respect to communications Founders may have had with the Nelsons prior to their termination from VBF, those communications are within VBF's exclusive control. With respect to VBF's request for Founders' communications with Randy Chalfant, since he is an employee of VBF, those communications, if any, are subsumed in Response to RFP 3 and will be produced. Again, VBF has access to the communications of its own employees and need not burden former officers with such a request. VBF's Motion on Category II is misplaced and should be denied accordingly.

### III. Founders Have Already Answered the Remaining Requests. (Category III – Wulf Interrog. 3, T. Rea Interrog. 4, 17).

VBF's Motion also demand that Founders provide information and documents that they have already provided or have stated they cannot answer. Specifically, Wulf Interrog. No. 3 asks Mr. Wulf to "identify all amounts … that Defendants' or Defendants' Family received directly or indirectly from VBF through compensation, stock…, any kind of payment, reimbursement of expenses or otherwise…" Wulf answered this interrogatory with details about payments he received from VBF. (Mot., Ex. I, p. 2). He also answered regarding payments made to his daughter, Christine Gagne, in Wulf Interrog. No. 7. (*Id*., p. 3-4). Wulf objects to answering this Interrogatory with respect to any of his other family members, any of the other Defendants or their family members because: i) he is unlikely to have knowledge with respect to payments to other Founders or their families, ii) VBF has all records of any payments that were made to any Founders or family members at any time, iii) and seeking financial information regarding Founders' family members is overbroad and irrelevant as discussed in Section I, *supra*. This request has been adequately answered to the extent of its relevance and Mr. Wulf's personal knowledge.

Similarly, T. Rea Interrog. No. 4 asks Ted Rea to "identify all to payments received by you from any Sheriff entities." (Mot., Ex. H, p. 2). Mr. Rea answered this interrogatory stating he did not receive any payment from the Sherriff entities. (*Id*). Mr. Rea then went beyond what was

requested to describe a loan that Sherriff made to Bajjer, an entity that is described in Paragraphs 15 - 20 of the Amended Complaint. Then, in its July 2, 2019 discovery letter, VBF propounded a series of new questions regarding Mr. Rea's answer. (Mot., Ex. J, p. 8). Discovery requests are not to be made and/or expanded via letter, but again, Mr. Rea answered further and indicated that documents would be produced related to this transaction. (*See* July 22, 2019 Letter, Mot., Ex. K). VBF does not claim Mr. Rea's answer is not complete, but instead "vague and confusing." VBF's request is actually one to compel an entirely different interrogatory regarding an "SSi" entity, a description of "SSi", an explanation of several specific loans that were dispersed by Mr. Sheriff, including what the loans where for, and why a Bajjer paid off the loan." (See Dkt. No. 135 at 14). This is an improper attempt to exceed the permitted number of interrogatories by shoehorning new requests into an old one. (T. Rea has already answered 24 of the permitted 25 interrogatories). *Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-2408-P, 2013 WL 12124329, at *2 (N.D. Tex. Dec. 23, 2013) (short paren) *citing Krawczyk v. City of Dallas,* No. 3:03-cv-584-D, 2004 WL 614842, at *2-*3 (N.D. Tex. Feb. 27, 2004). (collecting cases).

## **CONCLUSION**

For all these reasons, Founders respectfully urge the Court deny Plaintiff's Motion to Compel and grant such other and further relief, legal and equitable, including but not limited to an award of attorneys' fees, to which Founders shows themselves entitled.

Date:   August 30, 2019             LESLIE WULF, BRUCE HALL,

                                                                                       JOHN (TED) REA, JAMES REA

                                                                                       By: */s/ Kimberly D. Annello*
                                                                                            Kimberly D. Annello
                                                                                            Texas Bar No. 24093704
                                                                                            Eli D. Pierce
                                                                                            Texas Bar No. 24092972
                                                                                            David Campbell
                                                                                           Texas Bar No. 03698500
                                                                                           Underwood Perkins, P.C.
                                                                                           5420 LBJ Freeway, Suite 1900
                                                                                           Dallas, Texas 75240
                                                                                           Phone: 972.661.5114
                                                                                           Email: kannello@uplawtx.com
                                                                                                  epierce@uplawtx.com
                                                                                                  dcampbell@uplawtx.com

                                                                                         **Attorneys for Defendants, Leslie Wulf, Bruce Hall, John (Ted) Rea, and James Rea**