UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
|     Defendants | § | |

PLAINTIFF VEROBLUE FARMS USA, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY

Plaintiff VeroBlue Farms USA, Inc. ("Plaintiff" or "VBF") submits the following reply in support of its Motion to Compel Discovery [Dkt. 135] ("Motion"):

A.     **VBF's requests for financial information are both relevant and proportional.**

    1.     **Responding Founders' financial information is relevant to more than VBF's punitive damages claim.**

Responding Founders incorrectly argue that the discovery sought regarding the Responding Founders' financial information is relevant only to Founders' net worth for the purpose of VBF's punitive damages claim. *See* Resp. at 6.  To the contrary, the Responding Founders' financial information is relevant to claims at issue in this case other than VBF's punitive damages claim, including, but not limited to, VBF's fraudulent concealment, fraudulent misrepresentation, and breach of fiduciary duty claims.

Indeed, this Court has already held that information pertaining to Responding Founders' personal bank accounts is relevant under Rule 26.  Order, Dkt. 141 at 3.  Since VBF filed its Motion, this Court issued an opinion granting in part and denying in part the Responding Founders' Motion to Quash Subpoenas or for Protective Order on August 20, 2019 [Dkt. 37].  Importantly, this Court held that the discovery sought by VBF relating to Responding Founders' personal bank

1

account records from July 2014 to the present "was relevant to the claims in, and proportional to the needs of, this case — even without reaching the issue of whether discovery related to possible punitive damages is appropriate at this time." Dkt. 141 at 3.

As indicated by the Court's opinion, the Founders' financial records are generally relevant to the claims in this case.[1] Those claims encompass VBF's allegations that Responding Founders squandered tens of millions of dollars in VBF funds and drained VBF of cash and assets for the benefit of themselves, their relatives, and other entities that they owned and/or controlled. In order for VBF to fully understand the extent to which Responding Founders wasted and misappropriated company funds for their personal use, VBF needs information regarding Responding Founders' income, finances, bank accounts, and affiliated entities.[2] As explained in further detail in Section I.A.2, the financial information that is in VBF's possession is insufficient to understand whether certain transactions were fraudulent.

Citing a state statute, Texas Civil Practice & Remedies Code Section 41.0115, Responding Founders argue that procedurally, VBF must first submit a motion demonstrating a substantial likelihood of success on the merits of a claim for exemplary damages before it is allowed to obtain net worth discovery. Resp. at 7. Yet, the Responding Founders do not—and cannot—cite a single case to support that Section 41.0115 applies in federal court. In fact, VBF could not locate one

---

[1] Responding Founders argue the wrong relevance standard in their objections to VBF's discovery. As this Court previously ruled, the 2015 amendments to Rule 26 deleted from the definition of relevance information that appears "reasonably calculated to lead to the discovery of admissible evidence." Dkt. 141 at 3.

[2] As indicated in the undersigned counsel's July 2, 2019 deficiency letter, VBF intended Request for Production No. 5 to request financial records relating to Defendants' Affiliated Entities. *See* Mot., Ex. J, App. 180. Further, as reflected in that same correspondence, VBF intended to limit Wulf Interrogatory No. 13 to request the identity of professionals that "performed services for him, any other Defendant, and any Defendants' Affiliated Entities, or any other member of Defendants' Family who were paid with VBF funds." *Id.* at 174.

federal court decision holding that this procedural statute applied in federal court, and other federal courts have found that statutes similar to Section 41.0115 are procedural rules that do not apply in federal court.[3]   Further, that this information is also relevant to VBF's punitive damages claim does not discount its relevance to underlying substantive claims at issue, such as VBF's fraudulent concealment, breach of fiduciary, fraudulent misrepresentation, constructive fraud, civil conspiracy, unjust enrichment and equitable accounting claims, to which this statute would not apply in any case.

### 2.    VBF's requests for financial information are proportional.

Plaintiff seek to enforce their requests only as to financial documents from July 2014 to the present, consistent with the Court's recent ruling on the relevant time frame for the bank subpoenas previously issued by VBF.  *See* Dkt. 141 at 3.[4]

Here, VBF's discovery requests seeking information regarding the finances, bank accounts, and property of the Founders and others that they may have fraudulently transferred VBF funds to, is proportional to the needs of the case.  To begin with, as the Amended Complaint

---

[3] *See, e.g.*, *Hullinger v. Anand*, CV 15-7185-SJO (FFMx), 2016 WL 7444625, at *1–2 (C.D. Cal. Oct. 12, 2016) ("California Civil Code section 3295 ("Section 3295") provides that a plaintiff seeking punitive damages may not obtain pretrial discovery regarding the defendant's financial condition unless the plaintiff obtains a court order upon a showing of "substantial probability" that the plaintiff will prevail on the claim. Defendants contend that plaintiffs are not entitled to the information they seek because they failed to obtain a Section 3295 order permitting discovery. With respect to state law claims, federal courts apply federal procedural law and state substantive law. Whether a plaintiff is entitled to punitive damages is a substantive matter and thus a question of state law. However, Section 3295 is 'clearly a procedural law,' as it 'merely restricts when and how evidence of a defendant's financial condition is obtained.' Discovery 'is a procedural matter governed in the federal courts by the Federal Rules of Civil Procedure. Thus, state discovery practices are usually irrelevant.' Accordingly, the *Erie* doctrine precludes application of Section 3295 in federal court.") (internal citations omitted).

[4] In the alternative, the Court should compel the production of financial information from July 2014 up until the time each of the Responding Founders left VBF.

indicates, the amount in controversy exceeds millions ($90 million as set forth in VBF's proposed second amended complaint) , which is the amount that VBF alleges the Responding Founders wasted and pilfered from the company.  The issues to be resolved in this case are important—the extent to which the Founders' squandered and misappropriated company money invested by others for their personal benefit.  The Responding Founders' actions were so grave that they drove VBF into bankruptcy.  It is important that VBF understand where this money went so that it may try to recover any funds that were misappropriated by the Responding Founders.

While the Responding Founders argue that VBF is in possession of all the information it needs, this is not the case.  Responding Founders were not merely fiduciaries to VBF, but they also controlled VBF at all relevant times.  This includes control over VBF's finances and financial records. Prior to, and throughout this litigation, Responding Founders have not been forthcoming on financial issues. Thus, VBF cannot be sure that all of the company's financial records were properly created, kept, and/or maintained.  Further, although VBF's books and records reveal numerous transactions to and from entities controlled or owned by Responding Founders, VBF's financial information is insufficient to understand the necessary details of these transactions to determine and show whether they were fraudulent (or otherwise improper).  As they were in control of VBF during the relevant time, the Responding Founders—not VBF—are in the best position to know whether, and to what extent, VBF funds were wasted and misappropriated and to have and know about records that go to those issues.

The Responding Founders' conclusory assertions alone fail to establish that the requested discovery was designed to harass and intimidate the Responding Founders and their families or is otherwise improper.  The Responding Founders do not explain why discovery regarding the financial information of their relatives is improper, and the allegations in this lawsuit show that it

is not. The Responding Founders involved their family members, associates, and affiliated entities in the fraudulent scheme and in particular the use and receipt of VBF funds, which is why discovery regarding their family and affiliated entities is necessary.  Moreover, the Responding Founders' concern that the discovery requests seek sensitive financial information concerning the Founders' family members and affiliated entities does not permit them to resist discovery, as their concerns are safeguarded by the agreed protective order issued in this case.  *See* Dkt. 112.[5]

### 3. Responding Founders' tax returns are relevant and there is a compelling need for their disclosure.

Responding Founders do not deny that they were fiduciaries to VBF, and that the nature of the misconduct alleged by VBF against them is financial.  "One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts."  *Giebink v. Giebink*, No. 08-CV-4184, 2009 WL 1350805, at *5 (D.S.D. May 12, 2009).  And those material facts that must be disclosed can include personal financial information such as tax returns.  For example, the Responding Founders' personal income tax returns may reveal whether the Responding Founders treated any of the alleged misappropriations of VBF funds for their personal benefit as income on their personal tax returns and the amount of income or other tax benefits accrued to the Founders by VBF.  The Responding Founders' personal tax returns may reveal related business entities (and possible alter-egos of the Responding Founders) that they own and in which they drew any income or dividends while at VBF.  Only through the Responding Founders' personal tax returns will VBF be able to understand the amount of income or other tax benefits accrued to the Founders by VBF and the landscape of the interest, capital returns, distributions, and dividends that they have earned between 2014-18.

---

[5] *See also Alvarez v. Aldi (Texas) LLC*, 3:13-CV-4122-L, 2014 WL 3624929, at *3 (N.D. Tex. July 22, 2014).

Moreover, the Responding Founders have not—and cannot—show that the information contained in their tax returns is otherwise readily available through alternative forms of discovery. *See* Resp. at 8. As noted above, the Responding Founders were in control of VBF during the relevant time, and VBF cannot be sure that all of the records were properly created, kept, and/or maintained. Because tax returns are signed under penalty of perjury, they are generally more reliable than other sources of information. While deposition testimony and answers to interrogatories are sworn to under the penalty of perjury, they cannot depict the requested financial information as accurately and reliably as a tax return.

Moreover, only by issuing a subpoena to each and every bank in existence will VBF get a full picture of the Responding Founders' bank accounts.[6] This is burdensome, inefficient, and VBF cannot possibly find all of the banks, especially because they may be in Canada, where the Responding Founders are from. As such, the Responding Founders' tax returns may be the only means of obtaining information into all the other brokerage/investment accounts that the Responding Founders may have, as business bank information through Experian or other third-party source can be incomplete. Furthermore, the sheer number of corporations in which the Responding Founders have a possible ownership or equity interest would require an individual inquiry (at a significant cost) of each entity.[7] Tax returns would be cost effective and the only guaranteed way to get the information about the Responding Founders' businesses.

---

[6] To date, VBF has only subpoenaed records about individual accounts known to VBF, but this does not necessarily include all accounts associated with the Responding Founders' social security numbers.

[7] Based on VBF's research, VBF believes that the Responding Founders may have owned and/or had an interest in as many as 95 different business entities.

**B.**     **VBF's request for Responding Founders' communications with the Nelson Family and Randy Chalfant is relevant to the claims in this action and proportional.**

Responding Founders contend that VBF's Request for Production No. 81, seeking communications with the Nelson Family or Randy Chalfant, is targeted toward "those who objected to VBF's bankruptcy reorganization plan, actions that took place long after Founders were terminated." Resp. at 8-9.[8] This is patently wrong.

The Nelsons and Randy Chalfant are key witnesses to the underlying events alleged in VBF's Amended Complaint (as well as VBF's pending Proposed Second Amended Complaint)— events that occurred *long before* the Founders were terminated and VBF filed for bankruptcy. The Nelsons are the original owners of VBF and sold their business to the Founders in 2014 and continued to work at VBF in various capacities along with the Founders.   Nelson family members like Mark Nelson were involved in promoting the technology at issue that ultimately proved to be an utter failure and which the Founders' misrepresented to investors.  Furthermore, Chalfant, who was the maintenance manager at VBF starting in 2016, may be able to testify as to the Founders' waste and misappropriation of VBF funds.  As such, Responding Founders' communications with these key witnesses are directly relevant to VBF's allegations regarding the Responding Founders' fraudulent misrepresentations and waste and misappropriation of VBF funds and proportional to

---

[8] With respect to Interrogatory No. 18 directed at James Rea, seeking "communications between Defendants or Defendants' counsel on the one hand, and Kenneth Lockard, Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., FishDish LLC, Goldstein & McClintock LLP, or Horwood Marcus & Berk Chartered, on the other hand," VBF withdraws this interrogatory, in light of the Court's recent August 20, 2019 Order.  Dkt. 141 at 2-3.

Unlike the non-bank subpoenas that the Court previously quashed, the discovery sought regarding the Responding Founders' communications with the Nelsons and Chalfant are not related to the bankruptcy proceeding, but are directly related to VBF's fraud allegations in the lawsuit.  That they were involved in the VBF bankruptcy does not automatically render these requests irrelevant or disproportionate.

7

the needs of this case.  To the extent that Responding Founders argue that this Court "already found" that communications the Responding Founders had with the Nelsons are not relevant to VBF's claims, this is incorrect.  *See* Resp. at 9. None of the subpoenas subject to their Motion to Quash were to the Nelsons, and the Court has made no findings as to the relevance or proportionality of these requests.  As the Nelsons are material witnesses to this lawsuit, the Court should allow discovery of the Responding Founders' communications with the Nelsons.

## C.   <u>Responding Founders cannot stand on unsupported privilege objections.</u>

Responding Founders contend that their communications with the Nelsons and Chalfant are "protected by the attorney-client, work product, and/or common interest privilege."  Resp. at 9 n.6 (citation omitted).  Like the privilege assertions made in their Motion to Quash [Dkt. 37], the Responding Founders have wholly failed to support their privilege claims here.

> To comply with the requirements to support withholding any responsive document or information as privileged or protected work product, a privilege log or equivalent document complying with Federal Rule of Civil Procedure 26(b)(5)(A)'s requirements must be produced for any documents, communications, or other materials withheld from production on the grounds of attorney-client privilege, work product, or other privilege, immunity, or protection.

*Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014) (citations omitted).  Rule 26(b)(5) requires that a party claiming a privilege "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  The "party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability."  *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (footnote and citations omitted).

To date, Responding Founders "have not submitted a privilege log or otherwise complied with Federal Rule of Civil Procedure 26(b)(5)," nor have they "submitted any evidence to

substantiate the elements of each asserted privilege." Dkt. 141 at 2.  Responding Founders again attempt to avoid responding to discovery by making unsupported privilege claims.  This Court, however, has already advised Responding Founders that they need to comply with Rule 26(b)(5) when asserting privilege objections.  *Id.*  Accordingly, the Court should overrule the Responding Founders' unsupported privilege objections and compel production of documents responsive to Request for Production No. 81.

D.    **<u>Responding Founders have not already answered the remaining interrogatories at issue.</u>**

Responding Founders assert that they have already answered the remaining requests at issue, including Wulf Interrogatories Nos. 3 and 7 and Ted Rea Interrogatories Nos. 4 and 17. Resp. at 10.  To the contrary, and as Responding Founders admit, Mr. Wulf refuses to answer the interrogatories, specifically No. 7, with respect to any of his family members other than his daughter, Christine Gagne, or the other defendants' family members.  *Id.*  According to Responding Founders, Mr. Wulf "is unlikely to have knowledge with respect to the payments to other Founders or their families."  That he is "unlikely" to have knowledge of such payments is insufficient.  Either Mr. Wulf has or does not have personal knowledge with respect to the payments to other Founders or their families.  He cannot hide behind an objection based on an assertion that "he is unlikely to have" such knowledge.  An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. Civ. R. P. 37(a)(4).  For the same reasons explained above in Section I.A, payments made by VBF to Mr. Wulf's family members or the other defendants' family members is both relevant and proportional to VBF's claims in this case.  Accordingly, the Court should overrule Mr. Wulf's objections to Interrogatories Nos. 3 and 7.

Nor has Mr. Ted Rea fully answered Interrogatories Nos. 4 and 17 as Responding Founders suggest. *See* Resp. at 10-11. With respect to Interrogatory No. 4, the follow-up questions in the undersigned counsel's deficiency letter do not constitute discrete questions. Rather, the questions merely asked for additional clarification and specifics on the bare-bones answer already provided by Mr. Ted Rea as responsive to the interrogatory. Moreover, the answers go to whether Mr. Ted Rea is properly characterizing himself as not receiving these payments. But, to the extent the court finds that they are separate interrogatories or subparts, VBF understands they would exceed the limit and withdraw them. Mr. Ted Rea also objected to providing information in response to Interrogatory No. 17, which asked him to identify professionals, including attorneys, accountants, consultants, etc. who performed any services for VBF. He objected to the extent  it "ask[ed] him to attest to the collective decisions of VBF," and sought information and records that he did not have access to, but "subject to these objections," he stated that "he cannot recall every service provider who may have performed services for VBF during his tenure." Mot. Ex. H, App. 152. His response indicates that there were indeed service providers that performed services for VBF. That Mr. Ted Rea states he cannot recall ***every*** service provider is insufficient. *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307 (5th Cir. 1973) ("[T]he fact that an interrogatory calls for a list does not make it improper . . . ."). He must fully respond to the interrogatory and state those service providers that he can recall. If he cannot recall ***any*** service providers at all, then he must state so in his response. *See* Wright, Miller, & Marcus, Fed. Prac. & Proc. Civ. § 2177 (3d ed.) ("If a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available.").

Dated: September 6, 2019.                    Respectfully submitted,

_/s/ Nicole Williams_ _____
Nicole Williams
Texas Bar No. 24041784
nicole.williams@tklaw.com
William L. Banowsky
Texas Bar No. 01697125
bill.banowsky@tklaw.com
Jasmine S. Wynton
Texas Bar No. 24090481
jasmine.wynton@tklaw.com
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-1149

_/s/ Robert H. Lang_ _____
Robert H. Lang
(appearing _pro hac vice_)
rhlang@thompsoncoburn.com
Patrick Morales-Doyle
(appearing _pro hac vice_)
pmoralesdoyle@thompsoncoburn.com
Caroline Pritikin
(appearing _pro hac vice_)
cpritikin@thompsoncoburn.com
Eileen E. Boyle Perich
(appearing _pro hac vice_)
eboyleperich@thompsoncoburn.com
Adam C. Decker
(appearing _pro hac vice_)
adecker@thompsoncoburn.com
THOMPSON COBURN LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

ATTORNEYS FOR PLAINTIFF
VEROBLUE FARMS USA, INC.

## <u>CERTIFICATE OF SERVICE</u>

This document was filed electronically on September 6, 2019, and, in compliance with Local Civil Rule LR 5.1(d), a copy of this document has been served on all counsel of record.

*/s/ Nicole Williams*
Nicole Williams
