UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., <br>    Plaintiff | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. 3:19-CV-00764-X |
| LESLIE A. WULF, ET AL., <br>    Defendants | § <br> § <br> § | |

**THIRD-PARTY DEFENDANT BJORN THELANDER'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD-PARTY CLAIMS PURSUANT TO <u>RULES 12(B)(2) & 12(B)(6)</u>**

Applying the wrong legal standard[1] and citing out-of-circuit case law, Third-Party Plaintiffs ("Founders") contend they have (i) established general and specific jurisdiction over Thelander; and (ii) stated claims for tortious interference, attorneys' fees, and exemplary damages. But Founders fail to identify any minimum contacts in Texas made by Thelander in his individual capacity that are directly related to their claims or otherwise provide a basis to confer specific jurisdiction over Thelander. Moreover, the Third-Party Complaint—which does not in any way distinguish the alleged actions of Thelander from those of the other "Alder Defendants"—fails to satisfy Rule 8. Founders improperly attempt to amend the Third-Party Complaint via their Response. Such after-the-fact-allegations are not to be considered in determining the sufficiency of a complaint under Rule 12(b)(6).[2] Thelander's Motion to Dismiss should be granted.

A.      **Founders fail to establish general jurisdiction.**

Unlike specific jurisdiction, "[w]hen general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities within the forum state." *Yasinosky v. River Oaks Farms Inc.*, 4:17-CV-214-A, 2017 WL 2709736, at *2 (N.D. Tex. June 22, 2017). General jurisdiction exists if a "defendant's affiliations with the state are so continuous and systematic so as to render [him] 'essentially at home' in the forum state." *Id.* (citation omitted).[3]  The paradigm forum for the exercise of general jurisdiction for an individual is his domicile. Thelander undisputedly is not a Swiss national and is not domiciled in Texas.

---

[1] Founders apply the wrong legal standard to test the sufficiency of their claims—the "no set of facts" standard, see Resp. at 3, from *Conley v. Gibson*, which was retired by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*. 550 U.S. 544, 562-63 (2007).
[2] *See Roebuck v. Dothan Sec., Inc.*, 515 Fed. App'x. 275, 280 (5th Cir. 2013) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted).
[3] Founders in describing the test inappropriately cite to language in *Daimler* regarding a corporation's—not an individual—"continuous corporate operations" that relate to general jurisdiction applicable to a "foreign corporation" rather than an individual. *See* Resp. at 5.

Nonetheless, Founders argue general jurisdiction exists based on three 2016 corporate filings submitted by VBF-owned entities wherein those entities listed a Texas address for Thelander, but these do not provide a sufficient basis for general jurisdiction. *See* Resp. at 5, 7-8.[4]

First, the filings were submitted by wholly-owned subsidiaries of VBF (when Founders controlled VBF)—not Thelander personally. *See* Resp. Exs. A-8, A-9, A-11. Second, the Texas address listed on each of the filings is the address for VBF's Plano office[5] and is provided as an address for **all** directors, not just Thelander. Third, none of the filings suggest that the Texas address noted for Thelander is his personal address; indeed, it is clear that the Texas address is a business address listed for Thelander in his capacity as a director of the corporation, not individually. The mere listing of a Texas address for Thelander in his corporate capacity on three corporate filings, made during the Founders' tenure, fail to demonstrate his contacts with Texas are so continuous and substantial that he is "essentially at home" in Texas.

Moreover, general jurisdiction based on these three isolated contacts alone is barred by the fiduciary shield doctrine, which generally prohibits a court from exercising personal jurisdiction over an individual for actions take in a corporate capacity. *See, e.g., Ragan & Massey, Inc. v. Voluntary Purchasing Groups, Inc.*, 4:09-CV-00039, 2009 WL 3157468, at *5 (E.D. Tex. Sept. 28, 2009) (citation omitted). There are no allegations that the identification of a VBF corporate office as his address on corporate filings was done outside of his capacity as a director of those entities or constituted tortious conduct that would support jurisdiction over him in his individual

---

[4] The three corporate filings at issue are VBF IP, Inc.'s Amended and Restated Certificate of Formation and Iowa's First, Inc.'s Restated Articles of Incorporation and Application for Authority to Transact Business in Illinois.

[5] VBF's Plano office was originally located at 1507 Capital Avenue, Suite 101, Plano Texas 75074, until sometime in 2016, when it relocated its Plano office to 3369 Premier Drive, Suite 300, Plano, Texas 75023.

capacity. *See id.*; *Kaye/Bassman Intern. Corp. v. Dhanuka*, 418 S.W.3d 352, 359 (Tex. App.—Dallas 2013, no pet.) ("Absent pleading and proof that an officer's conduct was solely for the officer's benefit and contrary to the interest of the business entity, an officer's 'acts on the corporation's behalf are deemed corporate acts.'"). These three contacts alone cannot be used to establish general jurisdiction over Thelander individually.

**B.     Founders fail to establish specific jurisdiction.**

For specific jurisdiction to exist, a defendant's contacts with the forum state must arise from or relate directly to the asserted cause of action. *Freudensprung v. Offshore Tech. Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citations omitted).  Because Founders have no evidence of conduct by Thelander that was purposefully directed towards Texas, they rely instead on actions taken solely in his corporate capacity that neither arise from nor relate directly to their tortious interference claim against him. For instance, Founders point to Thelander's acceptance of a board position of a corporation with a principal office in Plano, and that as a board member, he attended "at least one Board meeting and participated in numerous other telephonically with the officers there." Resp. at 6, 9, 12. However, mere acceptance of a board position of a company with a presence in Texas and participation in board meetings (most of which were attended telephonically) is wholly insufficient to establish purposeful availment. *See, e.g., Ragan,* 2009 WL 3157468, at *5 (citing *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977) (accepting position as officer or director does not demonstrate personal availment)).

Furthermore, Founders argue that specific jurisdiction exists because Thelander was "actively involved" in the negotiation of the underlying contracts.  Resp. at 9, 11-12. Founders do not assert a breach of contract claim against Thelander, and he is not a party, signatory, or third-party beneficiary under the alleged contracts. The mere act of engaging in communications related to the execution and performance of a contract is insufficient to establish the minimum contacts

3

necessary to support specific jurisdiction over the nonresident defendant. *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (citations omitted).

Founders also point to a November 6, 2017 email sent by another nonresident board member with Thelander as one of its recipients. Thelander did not author this e-mail, and there is no allegation that this email was sent, received, or forwarded to someone in Texas. Mere receipt of an e-mail, let alone one that was transmitted from one foreign defendant to another foreign defendant, likely outside the forum state, does not amount to purposeful direction of one's activities towards Texas. *See Fairchild v. Barot*, 946 F. Supp. 2d 573, 580 (N.D. Tex. 2013) ("[A] court does not have specific personal jurisdiction over a defendant alleged to have tortiously interfered with a contract, where that interference happened outside of the forum state.") (citations omitted). Founders also allege, without support, that Thelander allegedly agreed to participate in and carry out a scheme to "reach into the Northern District of Texas and breach legally binding contracts with the Founders." Resp. at 11. The Court, however, need not credit Founders' conclusory allegations in determining whether they have presented a prima facie case. *See, e.g., Sealed Appellant 1*, 625 Fed. App'x 628, 631 (5th Cir. 2015) (footnote omitted).

To attribute to Thelander, a Swiss national, actions taken by the corporations and their representatives that have nothing to do with the Founders' tortious interference claims would not comport with fair play and substantial justice. Such contacts are far too attenuated for him to reasonably anticipate being haled into court in Texas. *See Irvin v. S. Snow Mfg., Inc.*, 517 Fed. App'x. 229, 231 (5th Cir. 2013) ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however,

where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.") (internal quotation marks and citation omitted).

## C. There are no allegations that Thelander was acting in his own self-interest.

Under Texas law, a corporate agent like Thelander cannot be liable for tortious interference with the corporation's contracts unless the plaintiff can show that he "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017), reh'g denied (Sept. 22, 2017) (citations and internal quotation marks omitted). Furthermore, the Fifth Circuit instructs that "[i]f a corporation does not complain about it's [sic] agents actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) (citations omitted).

Here, the Third-Party Complaint fails to sufficiently allege that Thelander was acting in his own self-interest or can otherwise be held liable for tortious interference with VBF's agreements. The Founders have not alleged that VBF complained about Thelander's actions, and under the guidance provided by the Fifth Circuit, this means that Thelander "cannot be held to have acted contrary to the corporation's interests." *See id.* At best, the Third-Party Complaint alleges that Thelander discussed with other board members "ways to avoid payments that might be due to Wulf or the other Defendants" but this alone does not establish the necessary conduct to find that Thelander—in any way, but especially as a director of VBF—acted tortiously.

To find, based on the allegations in the Third-Party Complaint, that Thelander was acting in his own self-interest or can otherwise be held liable for tortious interference with VBF's agreements would be speculative, and Founders' factual allegations must "rise above mere speculation." *See, e.g.*, *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th Cir. 2014) (per curiam); *Gipson v. Deutsche Bank Nat. Tr. Co.*, 3:13-CV-4820-L, 2015 WL 2079514,

5

at *5 (N.D. Tex. May 4, 2015). The Court need only make reasonable inferences in Founders' favor; inferences unsupported by facts cannot defeat a 12(b)(6) motion.

D.  **There are no allegations that Thelander actively persuaded VBF to breach its Termination Agreements.**

Founders must allege that Thelander took an active role in *persuading* VBF to breach the Termination Agreements—not simply that he "participated" in VBF's breach, which is all they have argued. *See* Motion at 16-17 (collecting cases); Resp. at 21 (Founders claiming they established Thelander "[a]ctively [p]articipated" in VBF's breach of Founders' contracts"). Founders also again rely on allegations that appear nowhere in the Third-Party Complaint. For example, the Founders allege that "Thelander along with the Alder Defendants engaged an outside firm to investigate [a director's] behavior and later, James Rea's expenditures, but then refused to share the results of these reports with anyone but themselves." Resp. at 25 (citing Third-Party Complaint ¶¶ 43, 51). However, paragraph 43 merely alleges that "VBF's Board engaged an outside firm" and does not attribute the decision as to who would see the report to anyone, let alone Thelander. And Founders cannot rely on group pleading to state a claim against Thelander for tortious interference, especially considering that each of the Third-Party Defendants is in a different position relative to VBF (e.g., being an employee versus a director). *See Del Castillo v. PMI Holdings N. Am. Inc,* 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) ("[L]umping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2) and 12(b)(6).") (citation omitted).[6]

---

[6] *See also Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019) ("[T]o give the requisite notice to each Defendant, Plaintiff needs to avoid improper 'group pleading' that does not distinguish the conduct of the individual Defendants."); *Gurganus v. Furniss*, 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) (holding plaintiff's "group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8" and "makes it impossible to ascertain which particular Defendants(s) are supposedly responsible for the acts allegedly creating the WARN Act violation") (citations omitted).

### E. Founders make unreasonable inferences to support their exemplary damages claim.

Founders again rely on allegations not in the Third-Party Complaint or that do not specifically reference and/or identify Thelander in support of exemplary damages. Resp. at 25. For example, Founders argue the Third-Party Complaint alleges that the "Alder Defendants (including Thelander) withheld funds from VBF's credit facility until the Founders were terminated" and that "Thelander planned to create ways to avoid payments due to Founders under their agreements" *see id.* (citing Third-Party Complaint ¶¶ 25. 36), but neither of these is true. Rather, paragraph 25 references another director by name—not Thelander—as representing to the other directors that Amstar would no long fund draws on VBF's credit facility. Absent from this paragraph is any allegation as to the party that was responsible for such withholding of funds. *Id.* Moreover, paragraph 36 merely alleges that Thelander discussed ways to avoid payments under the Employment Agreements, it does not state that he "planned to create ways to avoid" such payments. While the Court must indulge all reasonable inferences in favor of the plaintiff, the Court cannot assume that the plaintiff can prove facts it has not alleged. *See, e.g., Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986) ("It is not, however, necessary or proper to assume that the plaintiffs can prove facts that they have not alleged or that the defendants violated the [law] in ways that have not been alleged.") (citation omitted).

### F. Founders fail to state a claim for attorneys' fees.

Statements in the Third-Party Complaint regarding entitlement to attorneys' fees are legal conclusions that are "not entitled to the assumption of truth." *Lawson v. Jason Pharm., Inc.*, 3:17-CV-2648-L, 2019 WL 2448849, at *3 (N.D. Tex. June 12, 2019) (citation omitted). No specific statutory ground under Section 38.001 was pled as the basis of James Rea's claim for attorneys' fees. James Rea's belated attempt to identify subsection (8) of section 38.001 as the statutory ground in the Response does not save his claim from dismissal, as a "plaintiff may not amend its

7

complaint in response to a motion to dismiss." *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013). Further, James Rea's failure to allege prior presentment of a claim as required by Section 38.002 is also fatal to his claim for attorneys' fees.

Founders also cannot seek to recover attorneys' fees from **Thelander** personally under the contractual provisions in their respective agreements with **VBF**, under Section 38.001 or otherwise. Founders cite no authority and allege no facts to support this proposition. The contractual provisions in Hall, T. Rea, and Wulf's respective termination agreements authorizing recovery of attorneys' fees clearly limit the persons from whom attorneys' fees can be recovered to a "Party" or the "Parties," a definition that does not include Thelander. *See* Ex. B at p. 1 and ¶ 7(i); Ex. C at p. 1 and ¶ 7(i); Ex. D at p. 1 and ¶ 7(i).

Contrary to what Founders suggest, *Ganske v. WRS Group, Inc.*, No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App.—Waco April 18, 2007, no pet.) does not support that attorneys' fees can be recovered as damages for tortious interference in the same suit in which they were incurred. In fact, the plaintiffs in *Ganske* sought to recover in a later lawsuit payment of "*prior attorney's fees as damages*," that is, fees that were incurred in an earlier, separate lawsuit. *Id.* at *1 (emphasis added). Unlike *Ganske* plaintiffs, Founders seek to recover fees incurred in defending VBF's claims in this instant lawsuit; these fees are in the nature of costs, not damages.

G.     **There are no covenants not to sue in the Termination Agreements.**

The Texas Supreme Court has made clear that a party who releases a claim and later files suit on that claim does not necessarily breach the agreement containing the release. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428 (Tex. 2015). Rather, a court must review the "release language to determine whether [the] agreement includes a contractual obligation not to sue." *Id.* Founders incorrectly equate the language releasing and discharging claims with a covenant not to sue. The releases contain no promises not to sue. To the contrary, and like the

8

agreement in *National Properties Holdings*, the Termination Agreements contemplate that the parties may bring suit by including language regarding the recovery of attorneys' fees in any litigation brought to enforce any provision of the agreement. *See, e.g.*, Ex. C at ¶ 7(i); Ex. D at ¶ 7(i). As the Texas Supreme Court noted, such an attorneys' fees provision "indicates that a suit may be brought, even though the agreement is in effect, and in no way suggests that filing a suit concerning the [agreement's] release claims results in a breach." *Nat'l Prop. Holdings*, 453 S.W.3d 419 at 428. Indeed, there are other provisions in the Termination Agreements that unambiguously demonstrate that the parties contemplated future litigation. *See* Motion at 14 n.6.

Founders ignore the above-referenced authorities from the Texas Supreme Court and point instead to *Ganske* for support—an unpublished case from the Waco Court of Appeals case (with no petition history) that *pre-dates* the *National Property Holdings* opinion. Notably, the *Ganske* court did not undertake an analysis as to whether the agreement at issue included a contractual obligation not to sue, which *National Properties Holdings* instructs is the relevant inquiry. Furthermore, the *Ganske* case is factually distinguishable. Founders concede "the language in the Ganske release was more specific." Indeed, unlike the releases in this case, the settlement agreement in *Ganske* specifically provided that the Ganskes paid a sum to the other contracting party "solely to buy his peace and avoid costly and time costing [sic] litigation." *Ganske*, 2007 WL 1147357 at *3. *Ganske* has little to no precedential value and does not change that the Termination Agreements contain no contractual obligations not to sue.

**H.** **Founders cannot establish an underlying breach of contract to support their claims for tortious interference of contract.**

Thelander does not dispute that Founders' tortious interference claims against him were excluded from the release in paragraph 9.15 of VBF's Reorganization Plan. That those claims against Thelander were carved from the release, however, does not save Founders' claims from

9

dismissal. Founders must still allege sufficient facts to demonstrate a plausible claim to relief for tortious interference, which requires that they demonstrate that VBF breached the Termination Agreements. This they cannot do as their claims against VBF for breach of contract were discharged and released. Stated differently, Founders released the cause of action that they would need to prove in order to prove tortious interference. Furthermore, that paragraph 4 of the modification permits Founders to "plead any and all *defenses*" in this action does not permit them to plead any and all facts with respect to its affirmative *claims* in this case. Contrary to Founders' suggestion, breach of contract is not a defense to the claims asserted by VBF in the live complaint.

I.   **VBF had a contractual right to terminate James Rea for Egregious Cause.**

The Third-Party Complaint itself alleges that James Rea's employment contract permitted termination for Egregious Cause and that VBF terminated Rea pursuant to the Egregious Cause provisions. *See* Third-Party Complaint ¶¶ 49-50. Even accepting as true the Third-Party Complaint's allegations that the Egregious Cause was fabricated, the Third-Party Complaint nonetheless fails to allege enough facts that Thelander played a part in the allegedly sham investigation that served the basis of the "false claim of Egregious Cause" or otherwise played a role in fabricating a claim of Egregious Cause. *See id.* ¶ 87. Indeed, the Third-Party Complaint is silent as to what role, if any, Thelander played in this alleged scheme. As noted by this Court, it is not required "to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *Lawson*, 2019 WL 2448849, at *3.

## CONCLUSION

Third-Party Defendant Bjorn Thelander respectfully requests that this Court grant the Motion and grant such other and further relief to which he may show himself justly entitled.

Dated:  October 1, 2019                     */s/ Nicole Williams*
                                                                Nicole Williams
Texas Bar No. 24041784
nicole.williams@tklaw.com
William L. Banowsky
Texas Bar No. 01697125
bill.banowsky@tklaw.com
Jasmine S. Wynton
Texas Bar No. 24090481
jasmine.wynton@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-2102
214-999-9210 (facsimile)

*s/ Robert H. Lang*
Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com
Patrick Morales-Doyle
(appearing *pro hac vice*)
pmoralesdoyle@thompsoncoburn.com
Caroline Pritikin
(appearing *pro hac vice*)
cpritikin@thompsoncoburn.com
Eileen E. Boyle Perich
(appearing *pro hac vice*)
eboyleperich@thompsoncoburn.com
Adam C. Decker
(appearing *pro hac vice*)
adecker@thompsoncoburn.com

**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

**ATTORNEYS FOR THIRD-PARTY DEFENDANT BJORN THELANDER**

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on October 1, 2019 this document was filed and served to all counsel of record via the Court's ECF system.

                */s/ Jasmine Wynton*
                Jasmine Wynton