# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff, | § | |
| | § | |
|  v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
| | § | |
| Defendants/Third-Party Plaintiffs. | § | |

## THIRD-PARTY DEFENDANT BJORN THELANDER'S MOTION TO DISMISS THIRD-PARTY CLAIMS PURSUANT TO RULES 12(B)(2) & 12(B)(6) & BRIEF IN SUPPORT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III. RELEVANT LEGAL STANDARDS ........................................................................5

    A.   Rule 12(b)(2) Motion to Dismiss Standard.................................................5

    B.   Rule 12(b)(6) Motion to Dismiss Standard.................................................5

IV.  ARGUMENTS AND AUTHORITIES...........................................................................6

    A.   The Court lacks personal jurisdiction over Thelander. ...........................6

        1.   Third-Party Plaintiffs have not established general jurisdiction over Thelander. ...........................................................................7

        2.   Third-Party Plaintiffs have not established specific jurisdiction over Thelander. ...........................................................................8

    B.   The Third-Party Plaintiffs fail to allege sufficient facts to state a tortious-interference claim...........................................................................9

        1.   As a director of VBF, Thelander cannot tortiously interfere with the Termination Agreements to which VBF was a party................................11

        2.   VBF was exercising its rights under the Termination Agreements. ..........13

        3.   All claims against VBF have been discharged, released, and enjoined.................................................................................15

        4.   There are no allegations that Thelander actively persuaded VBF to breach the Termination Agreements. .........................................17

        5.   Counts 1 and 2 fail as a matter of law because attorneys' fees cannot be awarded as actual damages for tortious interference. ...........................18

        6.   The claims for attorneys' fees fail as a matter of law. ...............................19

        7.   The Third-Party Plaintiffs' allegations do not support exemplary damages..................................................................................21

V.   CONCLUSION.........................................................................................22

# TABLE OF AUTHORITIES

## CASES

*ACS Investors, Inc. v. McLaughlin,*
  943 S.W.2d 426 (Tex. 1997).........................................................................11, 13

*Alma Grp., L.L.C. v. Palmer,*
  143 S.W.3d 840 (Tex. App.—Corpus Christi 2004, pet. denied).....................18, 19

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.,*
  521 F.3d 472 (5th Cir. 2008) ...........................................................................17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..........................................................................................5

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)........................................5

*Benningfield v. City of Houston,*
  157 F.3d 369 (5th Cir. 1998) ...........................................................................11

*Bluevine Capital, Inc. v. UEB Builders, Inc.,*
  No. 3:17-CV-3265-L,2019 WL 142350 (N.D. Tex. Jan. 9, 2019) ...........................5

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
  137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017)..........................................................7

*Brown & Brown of Texas, Inc. v. Omni Metals, Inc.,*
  317 S.W.3d 361, 399 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)............18

*Campbell v. Wells Fargo Bank, N.A.,*
  781 F.2d 440 (5th Cir. 1986) ...........................................................................18

*Celanese Corp. v. OneBeacon Am. Ins. Co.,* 3:15-CV-03822-N,
  2016 WL 6496354 (N.D. Tex. May 20, 2016) ....................................................11

*Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.,*
  848 S.W.2d 232 (Tex. App.—Dallas 1992, no writ) ............................................11

*Community Health Sys. Prof'l Servs. v. Hansen,*
  525 S.W.3d 671 (Tex. 2017).............................................................10, 11, 12, 19

*Cypress Engine Accessories, LLC v. HDMS Ltd. Co.,*
  283 F. Supp. 3d 580 (S.D. Tex. 2017) ...............................................................14

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014)..........................................................................................7

*Davis v. Hyd-Pro, Inc.*,
   839 S.W.2d 137 (Tex. App.—Eastland 1992, writ denied)......................................... 17

*Delgado v. Methodist Hosp.*,
   936 S.W.2d 479 (Tex. App.—Houston [14th Dist.] 1996, no pet.)........................................ 15

*Devries v. Bulldog Well Testing LLC*,
   7:16-CV-00338, 2017 WL 1134318 (S.D. Tex. Mar. 27, 2017) ............................................ 8

*Ed Rachal Found. v. D'Unger*,
   117 S.W.3d 348 (Tex. App.—Corpus Christi 2003), *rev'd in part on other grounds*,
   207 S.W.3d 330 (Tex. 2006)................................................................................................ 19

*Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*,
   No. 05-13-00506-CV, 2015 WL 6750047 (Tex. App.—Dallas Nov. 4, 2015, no pet.)........... 17

*Freudensprung v. Offshore Technical Services, Inc.*,
   379 F.3d 327 (5th Cir. 2004) .............................................................................................. 7

*Gen. Retail Services, Inc. v. Wireless Toyz Franchise, LLC*,
   255 Fed. App'x 775 & n.76 (5th Cir. 2007) ...................................................................... 8

*Gibson v. Cuellar*,
   440 S.W.3d 150 (Tex. App.–Houston [14th Dist.] 2013, no pet.)........................................ 20

*Gregory v. Dillard's, Inc.*,
   565 F.3d 464 (8th Cir. 2009) ........................................................................................... 9

*Guidry v. American Pub. Life Ins. Co.*,
   512 F.3d 177 (5th Cir. 2007) ............................................................................................ 5

*Gurganus v. Furniss*,
   3:15-CV-03964-M, 2016 WL 3745684 (N.D. Tex. July 13, 2016)........................................ 21

*Hambric Sports Mgmt., LLC v. Team AK, Inc.*,
   3:09-CV-1662-L, 2010 WL 2605243 (N.D. Tex. June 29, 2010) ........................................ 17

*Hamlett v. Holcomb*,
   69 S.W.3d 816 (Tex. App.—Corpus Christi 2002, no pet.) .................................................. 15

*Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*,
   393 S.W.3d 492 (Tex. App.–Dallas 2013, pet. denied)......................................................... 20

*Holland v. Wal-Mart Stores, Inc.*,
   1 S.W.3d 91 (Tex. 1999)...................................................................................................... 19

*Holloway v. Skinner*,
   898 S.W.2d 793 (Tex. 1995).......................................................................................... 10, 11

*Immobiliere Jeuness Establissement v. Amegy Bank*,
  525 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.)......................................... 17

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
  854 F.3d 797 (5th Cir. 2017) ..................................................................................... 9

*Jim Howe Homes, Inc. v. Rogers*,
  818 S.W.2d 901 (Tex. App.–Austin 1991, no writ)................................................... 20

*John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*,
  17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied ............................................ 13

*Lopez v. Munoz, Hockema & Reed, L.L.P.*,
  22 S.W.3d 857 (Tex. 2000)......................................................................................... 15

*Martin–Simon v. Womack*,
  68 S.W.3d 793 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) .................... 19

*Merritt Hawkins & Associates, L.L.C. v. Gresham*,
  861 F.3d 143, 151 (5th Cir. 2017) ............................................................................ 21

*Mitchell v. Am. Eagle Airlines, Inc.*,
  2016 WL 4203826 (M.D. La. Aug. 5, 2016) ............................................................. 3

*Mumfrey v. CVS Pharmacy, Inc.*,
  719 F.3d 392 (5th Cir. 2013) ............................................................................... 12, 13

*My Fabric Designs, Inc. v. F+W Media, Inc.*,
  3:17-CV-2112-L, 2018 WL 1138436 (N.D. Tex. Mar. 2, 2018)................... 4, 5, 6, 7

*Nat'l Prop. Holdings, L.P. v. Westergren*,
  453 S.W.3d 419 (Tex. 2015)....................................................................................... 14

*Note Inv. Grp., Inc. v. Assocs. First Capital Corp.*,
  476 S.W.3d 463 (Tex. App.—Beaumont 2015, no pet.) ........................................... 20

*Outlaw Lab., LP v. Shenoor Enter., Inc.*,
  371 F. Supp. 3d 355 (N.D. Tex. 2019) ..................................................................... 21

*Powell Indus. v. Allen*,
  985 S.W.2d 455 (Tex. 1998)................................................................................. 12, 13

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
  29 S.W.3d 74 (Tex. 2000)............................................................................................. 9

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) ...................................................................................... 5

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ................................................................................... 8

*Safeshred, Inc. v. Martinez*,
   365 S.W.3d 655 (Tex. 2012) .............................................................. 20, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................... 3

*Turner v. Turner*,
   385 S.W.2d 230, 234 (Tex. 1964) ........................................................... 18

*Williams v. Compressor Eng'g Corp.*,
   704 S.W.2d 469 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ........................... 18

## STATUTES

TEX. CIV. PRAC. & REM. CODE § 38.001 ............................................. 4, 19

TEX. CIV. PRAC. & REM. CODE § 38.002 .................................................. 20

TEX. CIV. PRAC. & REM. CODE § 41.001(11) ........................................... 20

TEX. CIV. PRAC. & REM. CODE § 41.001(7) ............................................. 20

TEX. CIV. PRAC. & REM. CODE § 41.003(a) ............................................. 20

## RULES

FED. R. CIV. P. 12(b)(2) .................................................. 1, 4, 6, 9, 21

FED. R. CIV. P. 12(b)(6) ...................................................... 1, 3, 5, 21

FED. R. CIV. P. 8 .......................................................................... 21

LOCAL RULE 5 .............................................................................. 23

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Third-Party Defendant Bjorn Thelander ("**Thelander**") files this Motion and Brief in Support of his Motion to Dismiss the Third-Party Claims (Dkt. 169) brought by Defendants Leslie A. Wulf ("**Wulf**"), Bruce A. Hall ("**Hall**"), James Rea ("**James Rea**"), and John (Ted) Rea ("**Ted Rea**") (collectively, "**Third-Party Plaintiffs**") for lack of personal jurisdiction and failure to state a claim.  *See* FED. R. CIV. P. 12(b)(2),(6).

## I.    INTRODUCTION

The Court should dismiss the Third-Party Plaintiffs' tortious interference with a contract claims against Thelander for (i) lack of personal jurisdiction under Rule 12(b)(2) and (ii) failure to state a claim under Rule 12(b)(6).   First, the Third-Party Plaintiffs' conclusory and vague allegations are insufficient to establish a prima facie case of personal jurisdiction over Thelander. Second, the Third-Party Plaintiffs fail to allege sufficient facts for each essential element of a claim for tortious interference with a contract.  Specifically, the Third-Party Plaintiffs fail to allege that Thelander—who was at all relevant times a director of VBF—acted completely outside the interests of VBF, as required for a corporate agent to be legally able to interfere, or that Thelander actively persuaded VBF to breach the Termination Agreements.   Moreover, the Third-Party Plaintiffs have not alleged sufficient facts to demonstrate that there was an underlying breach or interference with a contract that would support their tortious interference claims. The allegations as to Counts 1, 2, and 4 specifically establish that VBF had a contractual right to take the actions it did.   Additionally, any potential claims or remedies against VBF for its actions or alleged breaches were discharged, released, and enjoined by the VBF Reorganization Plan; therefore, there is no underlying breach of contract claim to support the Third-Party Plaintiffs' tortious interference claims.   Furthermore, the damages alleged by the Third-Party Plaintiffs for Counts 1 and 2 are not

recoverable as a matter of law.  Finally, the Third-Party Plaintiffs' claims for attorney's fees and exemplary damages are fail as a matter of law.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In 2014, the Third-Party Plaintiffs founded Plaintiff VeroBlue Farms USA, Inc. ("**VBF**"), a sustainable fish farm.  The Third-Party Plaintiffs served as directors, officers, and employees of VBF from its founding in 2014 through the termination of their employment and removal as officers and directors in late 2017 and early 2018.  Specifically, (1) VBF terminated its business relationship with Hall and Ted Rea on October 27, 2017, and each signed a Business Relationship Termination Agreement (Dkt. 169, Exs. C & D); (2) VBF terminated its business relationship with Wulf on December 1, 2017, and he signed a Separation Agreement (*Id.*, Ex. B); and (3) VBF terminated its business relationship with James Rea on January 8, 2018 for "Egregious Cause" pursuant to his Employment Agreement (*Id.*, Ex. A). (These agreements signed by the Third-Party Plaintiffs are collectively referred to as the "**Termination Agreements**.")

Following the removal and discharge of the last of the Third-Party Plaintiffs in January 2018, VBF discovered that the Third-Party Plaintiffs misappropriated and misused millions of dollars in corporate assets and knowingly misrepresented VBF's operations, technology, and finances.  (*See* Dkt. 159, 2d Am. Compl. ¶¶ 20-23). VBF then filed the instant suit against the Defendants, which now asserts claims for breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, constructive fraud, civil conspiracy, aiding and abetting, unjust enrichment, equitable accounting, a declaratory judgment, fraudulent transfer, restitution, violations of the Racketeer Influenced and Corrupt Organizations Act, and rescission of the Termination Agreements that are allegedly the basis of the allegations in the Third-Party Claims. (*See generally id.*)

As a result of the misdeeds of the Third-Party Plaintiffs, VBF also filed for bankruptcy under Chapter 11. *See In re VeroBlue Farms USA, Inc. et al.*, No. 18-01297 (Bankr. N.D. Iowa, filed Sept. 21, 2018) (the "**VBF Bankruptcy**"). The U.S. Bankruptcy Court for the Northern District of Iowa (the "**Bankruptcy Court**") confirmed the Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and Its Affiliated Debtors (the "**VBF Reorganization Plan**") and entered a final judgment on May 7, 2019, which became final on May 22, 2019. (*Id.* at Dkt. 515, 516).[1] The Third-Party Plaintiffs were parties-in-interest to the VBF Bankruptcy, received notice of the proceedings, including those related to the confirmation, and participated in the proceedings. (*E.g.*, *id.* at Dkt. 411 (Notice of Attorney Appearance for Third-Party Plaintiffs)[2]; *see also id.* Dkt. 446, 466 (Objections to Confirmation of Plan by Third-Party Plaintiffs)).

On April 10, 2019, Third-Party Plaintiffs brought claims for tortious interference against third parties Thelander, Norman McCowan, Eva Ebstein, Jens Haarkoetter, Anders Wester, Dr. Otto Happel, and Alder Aqua, Ltd. (collectively, the "**Third-Party Defendants**"). After the Court

---

[1] A true and correct copy of the Bankruptcy Court's judgment ("**Judgment**") is attached hereto as **Exhibit 1**. A true and correct copy of the Bankruptcy Court's confirmation order ("**Order**"), which includes a copy of the VBF Reorganization Plan, is attached hereto as **Exhibit 2.** There were Amended and Restated Minor Modifications to the VBF Reorganization Plan [Dkt. 511] incorporated into the Order and attached hereto as **Exhibit 3**.

The Bankruptcy Court's Order, Judgment, and VBF Reorganization Plan are appropriately considered with this motion. Courts considering a motion to dismiss may rely on the allegations of the complaint "as well as other sources courts ordinarily examine when ruling on )Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," such as VBF's bankruptcy filings. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Mitchell v. Am. Eagle Airlines, Inc.*, CIVIL ACTION 15-757-SDD-RLB, 2016 WL 4203826, at *2 & n.28 (M.D. La. Aug. 5, 2016) (taking judicial notice of defendant's bankruptcy filings).

[2] A true and correct copy of the Notice of Appearance and Request for Service is attached hereto as **Exhibit 4**. This Notice is also appropriately considered for this motion. *See* n.3.

granted VBF's motion for leave to file its Second Amended Complaint and mooted the originally-filed third-party claims (*see* Dkt. 158), the Defendants/Third-Party Plaintiffs filed a Notice of Intent to Proceed on Third-Party Complaint and re-filed their third-party claims on October 7, 2019. (*See generally* Dkt. 169).

The Third-Party Defendants are current and former directors, officers, or shareholders of VBF. (Dkt. 169 ¶¶ 3-9). The Third-Party Plaintiffs assert the Third-Party Defendants tortiously interfered with the Termination Agreements by allegedly inducing VBF to (1) file suit against Hall and Ted Rea, allegedly in violation of the releases in their respective Termination Agreements (*id.* ¶¶ 58, 66); (2) refuse to pay Wulf severance payments allegedly due to him under the Separation Agreement (*id.* ¶ 77); and (3) terminate James Rea based on an allegedly false claim of "Egregious Cause," and refuse to pay him amounts allegedly due under the Employment Agreement. (*id.* ¶ 87).

Ted Rea and Hall each claim damages "in an amount of expense he has incurred in defending against claims brought against him by VBF in violation of the release," and seek punitive damages and attorneys' fees (pursuant to Section 7(i) of their Termination Agreements). (*Id.* ¶¶ 61-63, 70-72). Wulf seeks damages, punitive damages, and attorneys' fees (pursuant to Section 7(i) of the Separation Agreement). (*Id.* ¶¶ 81-83). James Rea seeks damages, punitive damages, and attorneys' fees (pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code). (*Id.* ¶¶ 90-92). The claims brought by the Third-Party Plaintiffs are collectively referred to as the "**Third-Party Claims**." The Third-Party Plaintiffs are simply attempting an end-run around what they know they cannot do—sue VBF for breach of contract—both because VBF did not breach any contract and also due to the VBF Bankruptcy Plan resulting from Third-Party Plaintiffs' own conduct.

## III.     RELEVANT LEGAL STANDARDS

### A.     Rule 12(b)(2) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes a district court to dismiss an action for lack of personal jurisdiction.  FED. R. CIV. P. 12(b)(2).  "On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant." *My Fabric Designs, Inc. v. F+W Media, Inc.*, 3:17-CV-2112-L, 2018 WL 1138436, at *3 (N.D. Tex. Mar. 2, 2018) (Lindsay, J.) (citations omitted). A plaintiff satisfies his burden by "presenting a prima facie case that personal jurisdiction is proper." *See id.* (citations omitted).   "[T]he court, however, is not required to credit conclusory allegations even if they are uncontroverted." *Id.* (citations omitted).

### B.     Rule 12(b)(6) Motion to Dismiss Standard

"To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bluevine Capital, Inc. v. UEB Builders, Inc.*, 3:17-CV-3265-L, 2019 WL 142350, at *1–2 (N.D. Tex. Jan. 9, 2019) (Lindsay, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)).   "A claim meets the plausibility test when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).   "While a complaint need not contain detailed factual allegations, it must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

(quoting *Twombly,* 550 U.S. at 555).  "The factual allegations of a complaint must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, internal brackets, and citations omitted); *see also United States ex rel. Shupe v. Cisco Sys., Inc.,* 759 F.3d 379, 382 (5th Cir. 2014) (per curiam). "When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief." *Bluevine Capital*, 2019 WL 142350, at *1–2 (citing *Iqbal*, 556 U.S. at 679).

## IV.   ARGUMENTS AND AUTHORITIES

### A.   The Court lacks personal jurisdiction over Thelander.

Because Third-Party Plaintiffs have not established either general or specific personal jurisdiction over Thelander in this case, the Court should grant Thelander's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

"A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution." *My Fabric Designs,* 2018 WL 1138436, at *3 (citation omitted).  "Because the Texas long-arm statute extends to the limits of federal due process, the court must determine whether (1) the defendants have established 'minimum contacts' with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend 'traditional notions of fair play and substantial justice.'" *Id.* (citations omitted).

"The 'minimum contacts' prong is satisfied when a defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.* at *4 (citation omitted).  "The nonresident defendant's availment must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Id.* (citation omitted). "The 'minimum contacts' prong of the inquiry may be subdivided

into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Id.* (citation omitted). "Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Id.* (citation omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* (citations and quotation marks omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* (citation and quotation marks omitted). "The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Id.*

> **1.    Third-Party Plaintiffs have not established general jurisdiction over Thelander.**

General jurisdiction exists where the defendant "has engaged in continuous and systematic contacts in the forum." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The United States Supreme Court has determined that, for general jurisdiction to exist, a defendant's contacts must be so continuous "as to render [the defendant] essentially ***at home in the forum***." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (emphasis added). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017).

Third-Party Plaintiffs do not allege that Thelander is domiciled in Texas, or even the United States. Instead, they allege only that "Thelander is a Swiss national" [Dkt. 169 ¶ 5], which alone is wholly insufficient to establish general jurisdiction over Thelander. The Third-Party Plaintiffs

do not assert any other allegations to show that Thelander's contacts with Texas are so continuous so as to render him "essentially at home" in Texas.   Accordingly, this Court lacks general jurisdiction over Thelander.

### 2.    Third-Party Plaintiffs have not established specific jurisdiction over Thelander.

Nor have Third-Party Plaintiffs established specific jurisdiction over Thelander.   In this case, Third-Party Plaintiffs do not specifically allege any individual contacts that Thelander has with Texas that give rise to this lawsuit.   Instead, Third-Party Plaintiffs make the conclusory and vague allegation that "[t]his Court has personal jurisdiction over VBF and the Alder Defendants as they conducted business in, entered into contracts in, and committed torts within the state of Texas and the specifically within the Northern District of Texas."   (Dkt. 169 ¶ 12).   This allegation is insufficient to establish specific jurisdiction over Thelander.

Third-Party Plaintiffs cannot rely on group pleading to establish jurisdiction over Thelander.   Indeed, courts have held that such group pleading tactics are insufficient to establish specific personal jurisdiction:

> These allegations, employing the globular 'Defendants,' are both conclusory and leave unclear who committed the acts in question. . . . The Fifth Circuit and U.S. Supreme Court do not permit indiscriminate jurisdictional allegations to support a finding of personal jurisdiction.   Accordingly, the allegations listed above are properly ignored for purposes of this Court's personal jurisdiction analysis. When these allegations are ignored, there exist no contacts upon which Defendants could reasonably anticipate being haled into Texas court. Thus, Plaintiffs have not established a prima facie case that this Court has specific personal jurisdiction over Defendants Hamlin, Highfill, and Miller.

*Devries v. Bulldog Well Testing LLC*, 7:16-CV-00338, 2017 WL 1134318, at *5 (S.D. Tex. Mar. 27, 2017) (citing *Gen. Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. App'x 775, 795 & n.76 (5th Cir. 2007) and *Rush v. Savchuk*, 444 U.S. 320, 332–33 (1980) (holding that

aggregating the defendant into a collective of "defending parties" did not satisfy federal due process)).

Here, Third-Party Plaintiffs have defined six individuals and one entity collectively as the group "Alder Defendants," and the only personal jurisdiction allegation in the Third-Party Complaint refers to the entire group of Alder Defendants with no specific allegations of forum contacts for any individual or entity, including Thelander.  (Dkt. 169 ¶ 12).  The only reference to Thelander's contacts at all states that he "visited VBF and met with Founder Plaintiffs in Webster City, Iowa and/**or** Dallas, Texas" and that Thelander "was engaged in egular [sic] email correspondence with Founder Plaintiffs about VBF's operations."  (Dkt. 169 ¶ 18) (emphasis added).  This allegation including the use of the language "and/or" does not suffice to allege that Thelander was ever actually in Texas, let alone allege contacts sufficient to establish jurisdiction. *See, e.g., Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 n.9 (8th Cir. 2009) ("Because this section [of the complaint on "jurisdiction and venue"] refers to all plaintiffs and uses the "and/or" formulation, it does not connect any particular plaintiff to any particular allegation.").  Third-Party Plaintiffs' allegations should be found insufficient to establish personal jurisdiction over Thelander due to their lack of specificity and certainness as well as their impermissible attempt to aggregate the alleged forum contacts of multiple defendants to assert specific jurisdiction over any single defendant through group pleading.

The Third-Party Claims should be dismissed pursuant to Rule 12(b)(2) because the Court lacks personal jurisdiction over Thelander.

**B.      The Third-Party Plaintiffs fail to allege sufficient facts to state a tortious-interference claim.**

The Third-Party Plaintiffs assert four counts of tortious interference:  Count 1, Tortious Interference with Hall Termination Agreement; Count 2, Tortious Interference with Ted Rea's

Termination Agreement; Count 3, Tortious Interference with Wulf's Separation Agreement; and Count 4, Tortious Interference with James Rea's Employment Agreement. To state a claim for tortious interference with an existing contract under Texas law, the Third-Party Plaintiffs must allege that there was "(1) an existing contract subject to interference and (2) a willful and intentional act of interference with the contract (3) that proximately caused the plaintiff's injury and (4) caused actual damages or loss." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 813 (5th Cir. 2017) (quoting *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)) (internal quotation marks omitted); *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

The Third-Party Claims against Thelander fail as a matter of law and should be dismissed for four independent reasons. First, with respect to Counts 1-4, the Third-Party Plaintiffs fail to allege that Thelander—who was undisputedly at all relevant times a corporate agent of VBF—interfered with any of VBF's contracts with the Third-Party Plaintiffs to serve his own personal interests at VBF's expense.  Second, the Third-Party Plaintiffs do not allege sufficient facts to demonstrate that Thelander induced VBF to breach its contracts with the Third-Party Plaintiffs because with respect to Counts 1, 2, and 4, VBF was merely exercising its rights under the respective contracts. Third, regarding Counts 1-4, any potential underlying breach of contract claims against VBF were discharged, released, and enjoined as part of the VBF Bankruptcy Plan. Fourth, regarding Counts 1-4, the Third-Party Plaintiffs fail to allege sufficient facts that would demonstrate Thelander actively persuaded VBF to breach its contract with any Third-Party Plaintiff.  Fifth, with respect to Counts 1 and 2, the Third-Party Plaintiffs fail to allege recoverable damages by Ted Rea or Hall.  Finally, regarding Counts 1-4, there is no basis for recovery of attorneys' fees by the Third-Party Plaintiffs as a matter of law.

**1.      As a director of VBF, Thelander cannot tortiously interfere with the Termination Agreements to which VBF was a party.**

To plead the willful and intentional interference element of a tortious-interference claim, the Third-Party Plaintiffs must show that Thelander was "legally capable of tortious interference." *Hansen*, 525 S.W.3d at 690 (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995)).   To be legally capable of tortious interference, Thelander must be a "stranger to the contract" with which he allegedly interfered. *Id.* at 690 (citation omitted).   Because corporations can act only through human agents, the general rule is that "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Skinner*, 898 S.W.2d at 795 (citations omitted).   "For this reason, [the Supreme Court of Texas] ha[s] held that 'an officer or director of a corporation may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation." *Id.* at 795 (citations omitted).   "Even the officers and directors of an ordinary corporation, while acting as such, are not personally liable even though they recommend a breach of a valid contract." *Id.* (citations and internal quotation marks omitted).

Thus, a corporation's agent is not a stranger to the contract and cannot tortiously interfere with the corporation's contract. *Hansen*, 525 S.W.3d at 690 (citing *Holloway*, 898 S.W.2d at 795-96)).[3]   When a corporate agent is accused of interfering with the corporation's contract, it is the

---

[3] *See also Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) ("Generally, as agents of the Defendant, the Defendants cannot be liable for interference with the city's contracts.") (citation omitted); *Celanese Corp. v. OneBeacon Am. Ins. Co.*, 3:15-CV-03822-N, 2016 WL 6496354, at *4 (N.D. Tex. May 20, 2016) ("Under Texas law, the parties to an ongoing business relationship cannot interfere with their own relationship.   In fact, 'a person must be a stranger to a contract to tortiously interfere with it.'   With very few exceptions, *only a third party who is an outsider to the business relationship can be liable for tortious interference*.   Because a corporation's agents share its legal identity, corporate agents . . . generally cannot be held liable for tortious interference with their principal's business relations.") (internal citations omitted)

claimant's burden to show that the agent "'acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests,' and thus could not have been acting within the scope of his agency at the time of the interference." *Hansen*, 525 S.W.3d at 691 (quoting *Holloway* 898 S.W.2d at 795-97)); *see also Benningfield*, 157 F.3d 369 at 379 (holding "[p]laintiffs failed to allege facts showing that the [d]efendants' actions could only have been motivated by personal interests"); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997) (corporate officer or director cannot be held liable for interfering with corporation's contractual obligations as long as she is acting in good faith on corporation's behalf). As explained by the Fifth Circuit, "[t]he Texas Supreme Court has provided guidance on determining when an corporation's agent is acting against the corporation's interests: If a corporation does not complain about its agents actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) (citing *Powell Indus. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998)); *see also Hansen*, 525 S.W.3d at 695 ("Additionally, because a principal is a superior judge of its own best interests, we consider the principal's evaluation of the agent's actions when determining whether the corporate agent acted against the principal's interests.  If the principal 'does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests.'") (citations omitted).

Here, it is undisputed and the allegations establish that VBF was a party to each of the Termination Agreements and that Thelander acted an agent for VBF at all relevant times and thus, was not a stranger to VBF's contracts. (*See* Dkt. 169 at ¶ 5 (pleading Thelander "served on the

---

(emphasis added); *Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 242 (Tex. App.—Dallas 1992, no writ) ("Where a . . . principal agent relationship exists, there can be no tortious interference with a contract as a matter of law.") (citation omitted).

Board of Directors of [VBF] from July 8, 2016 though [sic] some time in 2018"); *id.* at ¶ 14 ("Thelander [was] appointed by Alder to the board of directors of VBF."); *id.* at Exs. A-D (showing VBF as a party to each contract)).   Thus, Third-Party Plaintiffs must plead and prove that Thelander acted so contrary to VBF's interests that his actions could *only* have been motivated by personal interest. *Hansen*, 525 S.W.3d at 694. Third-Party Plaintiffs, however, have not met this burden.  Indeed, the Third-Party Plaintiffs do not allege that Thelander acted in any way other than in good faith on VBF's behalf in relation to each of the Termination Agreements addressed in Counts 1-4.  Furthermore, the Third-Party Plaintiffs do not allege sufficient facts that would demonstrate that Thelander acted willfully and intentionally to serve his own personal interests at VBF's expense in relation to any of the Termination Agreements.  And, even if the Third-Party Claims are construed to allege that Thelander sought to benefit himself (or Alder) *and* VBF, such "mixed motives" are "insufficient to establish liability." *Powell Indus.*, 985 S.W.2d at 457; *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) ("Even an agent's mixed motives—benefitting himself and the corporation—are insufficient.").  Finally, the Third-Party Plaintiffs fail to allege facts that would show that VBF objected to any of Thelander's actions as an agent of VBF.  Therefore, the Third-Party Plaintiffs fail to allege sufficient facts to demonstrate that Thelander was acting contrary to VBF's interests as a matter of law.

Accordingly, the Third-Party Claims for tortious interference (Counts 1-4) are insufficient as a matter of law and should be dismissed.

## 2.   VBF was exercising its rights under the Termination Agreements.

To state a claim for tortious interference, the Third-Party Claims must include allegations that Thelander's conduct amounted to a knowing inducement to VBF to breach its contract with each Third-Party Plaintiff. *See John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d

721, 730-31 (Tex. App.—Austin 2000, pet. denied).  Inducing a third party to do what it has a legal right to do does not constitute tortious interference.  *ACS Investors*, 943 S.W.2d at 430.  Here, because the allegations themselves show that VBF was acting within its rights under the Termination Agreements with Hall, Ted Rea, and James Rea, there is no claim for tortious interference.

The only inducement alleged by the Third-Party Plaintiffs related to the Termination Agreements for Ted Rea and Hall (Counts 1 and 2) was for VBF to file this lawsuit against Ted Rea and Hall.  Even assuming these Termination Agreements are enforceable (they are not, as explained in VBF's Second Amended Complaint (Dkt. 102 at ¶¶ 309-352) and VBF's Response and Brief in Support to Defendant Keith Driver's 12(b)(6) Motion to Dismiss (Dkt. 103 at 19-23)), neither agreement prohibits VBF from bringing a lawsuit.  There is no covenant not to sue in the Termination Agreements.  (*See* Dkt. 169, Exs. C, D).  The sole basis for this claim by Ted Rea and Hall is the purported release provision in the Termination Agreements.  But Texas law distinguishes between releases (which are affirmative defenses that do not automatically bar later claims) and covenants not to sue (which can bar later claims).  *See Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*, 283 F. Supp. 3d 580, 587-88 (S.D. Tex. 2017) (noting "[u]nder Texas law, the court cannot imply a covenant not to sue on released claims from a settlement releasing those claims," as Texas Supreme Court precedent provides that "a release of a claim does not equate to a covenant not to sue on that claim. The issue is whether the specific release language 'includes a contractual obligation not to sue.'") (citation omitted); *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428–29 (Tex. 2015) ("Although the release provides an affirmative defense to

future suits, we cannot construe it as including a covenant not to sue where, in fact, the plain language does not bar future suits.").[4]

The only inducement alleged by the Third-Party Plaintiffs related to the Employment Agreement for James Rea (Count 4) was for VBF to terminate James Rea for "Egregious Cause." But James Rea's Employment Agreement provided VBF with the legal right to terminate his employment for "Egregious Cause," which it exercised. (*See* Dkt. 169 at Ex. A, §§ 5(c)(i)-(iii) ("Employee's employment hereunder may be terminated by the Company for Cause," which means "either Egregious Cause or Non-Egregious Cause.")).

Therefore, VBF was acting within its legal rights by bringing this lawsuit against Hall and Ted Rea, and by terminating James Rea's employment on a basis expressly permitted by his Employment Agreement, and there was no breach that could have been induced by Thelander. Accordingly, the tortious-interference claims at Counts 1, 2, and 4 are insufficient as a matter of law and should be dismissed.

### 3.     All claims against VBF have been discharged, released, and enjoined.

Each tortious-interference claims at Counts 1-4 should be dismissed because the Third-Party Claims are wholly derived from and dependent upon the Third-Party Plaintiffs' allegations that VBF breached their agreements.  Any underlying breach claim against VBF, however, has been discharged, released, and enjoined as a matter of law by the VBF Bankruptcy Plan.  *See, e.g.*, *Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 485–86 (Tex. App.—Houston [14th Dist.] 1996, no

---

[4] Moreover, any interpretation that the release could constitute a covenant not to sue contravenes other provisions in the agreements that unambiguously demonstrate that the parties contemplated future litigation based on the agreements. (*E.g.,* Dkt. 169 at Ex. C, § 7(i) ("In the event it becomes necessary to bring suit to enforce any provision of this Agreement…"); § 7(l) ("Each Party agrees to commence any action, suit or proceeding relating to this Agreement in the District Court.")).

**THIRD-PARTY DEFENDANT BJORN THELANDER'S MOTION TO DISMISS THIRD-PARTY CLAIMS PURSUANT TO RULES 12(B)(2) & 12(B)(6) & BRIEF IN SUPPORT – PAGE 15**

pet.) (holding patient's tortious-interference claim against doctors failed where patient waived any claim for breach of contract against hospital); *Hamlett v. Holcomb*, 69 S.W.3d 816, 820 (Tex. App.—Corpus Christi 2002, no pet.) (affirming dismissal of plaintiff's tortious-interference claim against one defendant because plaintiff's tortious-interference claim was premised on the other defendant's breach, and the other defendant did not breach the contract with plaintiff) (citations omitted); *see also Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) (failure of a claim for breach of contract necessarily defeated claim for breach of fiduciary duty that depended on breach of contract)).

The Bankruptcy Court entered an order accepting and confirming the VBF Reorganization Plan on May 7, 2019, which is now in effect. *See* Exs. 1 (Order confirming VBF Reorganization Plan) & 2 (VBF Reorganization Plan). The VBF Reorganization Plan contains broad discharges and releases for VBF as the Debtor. *See* Ex. 2, Plan, Art. 9.13 at 26. The Bankruptcy Court Order and Judgment reiterate the enforceability of this release. Ex. 1, Judgment at ¶ 6; Ex. 2, Order at 18. Further, the VBF Reorganization Plan contains a broad injunction on claims based on Claims or other debts or liabilities that were addressed by the VBF Reorganization Plan, which would include any claim for breach of contract against VBF by the Third-Party Plaintiffs. Ex. 2, Plan, Art. 9.17 at 29.

Here, the Third-Party Claims allege only that Thelander tortiously interfered in contracts of VBF (the debtor) and took certain actions during his time as a director of VBF. To state a claim that Thelander tortiously interfered with the contracts between VBF and the Third-Party Plaintiffs, the Third-Party Plaintiffs must allege that he induced or caused a breached of such agreements. Because the Third-Party Plaintiffs' claims for VBF's alleged breach of contract were released, discharged, and enjoined by the VBF Reorganization Plan, the Third-Party Plaintiffs cannot

demonstrate the threshold breach of contract necessary to support their tortious interference claims. Rather, in bringing claims against current officers and former directors of VBF based on alleged breaches of contracts that can no longer be challenged under the VBF Reorganization Plan, the Third-Party Plaintiffs are simply attempting an end-run around the Bankruptcy Court, which enjoined such claims.

Therefore, because any claims against VBF by the Third-Party Plaintiffs have now been discharged, released, and enjoined, the Third-Party Claims for tortious interference (Counts 1-4) are insufficient as a matter of law and should be dismissed.

### 4. There are no allegations that Thelander actively persuaded VBF to breach the Termination Agreements.

To state a claim for tortious interference, the Third-Party Plaintiffs must allege that Thelander's interference proximately caused their injury. *Immobiliere Jeuness Establissement v. Amegy Bank*, 525 S.W.3d 875, 880 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The proximate-cause element requires allegations that Thelander took an active role in persuading VBF to breach the Termination Agreements. *See Hambric Sports Mgmt., LLC v. Team AK, Inc.*, 3:09-CV-1662-L, 2010 WL 2605243, at *9 (N.D. Tex. June 29, 2010) (Lindsay, J.) ("To properly show proximate cause, a plaintiff must allege that 'the defendant took an active part in persuading a party to a contract to breach it.'") (quoting *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 493 (5th Cir. 2008)); *see also Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *24 (Tex. App.—Dallas Nov. 4, 2015, no pet.) ("It is necessary that there be some act of interference or of persuading a party to breach, e.g., by offering better terms or other incentives, for tort liability to arise."); *Davis v. Hyd-Pro, Inc.*, 839 S.W.2d 137, 139-40 (Tex. App.—Eastland 1992, writ denied)).

Here, the Third-Party Plaintiffs fail to allege that Thelander took an active role in persuading VBF to (1) file suit against Ted Rea or Hall; (2) terminate James Rea for cause; or (3) refuse to pay Wulf or James Rea amounts allegedly due to them.  At most, the Third-Party Claims allege Thelander discussed with other board members "ways to avoid payments that might be due to Wulf or the other Defendants" (*E.g.*, Dkt. 169 ¶¶ 36) and make the conclusory allegation that VBF took actions that were allegedly "consistent with" Thelander's "communications" or "directions." (Dkt. 169 ¶ 42, 48).   But there is not a single, factual allegation that ***Thelander*** actively persuaded or specifically directed VBF to act.  And, as the Fifth Circuit has instructed, it is not "necessary or proper to assume that the plaintiffs can prove facts that they have not alleged." *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986) ("It is not, however, necessary or that the defendants violated the [law] in ways that have not been alleged.").

Therefore, Third-Party Plaintiffs have failed to allege that Thelander's interference proximately caused Third-Party Plaintiffs' injury, and the Third-Party Claims for tortious interference (Counts 1-4) are insufficient as a matter of law and should be dismissed.

### 5.      Counts 1 and 2 fail as a matter of law because attorneys' fees cannot be awarded as actual damages for tortious interference.

The only alleged damage with respect to Counts 1 and 2 is the "amount of expense" that Ted Rea and Hall have "incurred in defending against claims brought against [them] by VBF in violation of the release." (Dkt. 169 at ¶¶ 61, 70).  Attorneys' fees, however, generally "are in the nature of costs, not damages" and cannot be awarded as damages for alleged tortious interference. *See Alma Grp., L.L.C. v. Palmer*, 143 S.W.3d 840, 846 (Tex. App.—Corpus Christi 2004, pet. denied) (reversing trial court award of attorneys' fees as damages for tortious interference); *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (same).  An exception to this general rule is that a plaintiff can recover

attorneys' fees as damages "where a plaintiff has been involved in litigation with a third party as a result of the tortious act of another, plaintiff may recover in a ***separate*** suit for his reasonable and necessary expenses of the ***prior*** litigation." *Turner v. Turner*, 385 S.W.2d 230, 234 (Tex. 1964). Here, the Third-Party Plaintiffs do not allege that the attorneys' fees they seek to recover were incurred in the prosecution or defense of a prior action, and the fees to which they refer are those incurred in this litigation. They cannot recover attorneys' fees through a cross-claim in the same suit. *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 399 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("Certain prerequisites must, however, be met. These include: (1) the plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action, and (2) the litigation must have involved a third party and must not have been brought against the defendant in the same action in which the fees are sought.").

Therefore, Counts 1 and 2 fail to allege any actual damage or loss—an essential element of their tortious-interference claims. Accordingly, Counts 1 and 2 are insufficient as a matter of law and should be dismissed. *See Hansen*, 525 S.W.3d at 689.

### 6.   The claims for attorneys' fees fail as a matter of law.

In Counts 1, 2, and 3, Hall, Ted Rea, and Wulf seek attorneys' fees pursuant to a provision in their respective Termination Agreements. In Count 4, James Rea seeks attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code. (Dkt. 169 ¶¶ 90-92). Section 38.001 provides eight different statutory grounds upon which a party may recover reasonable attorney's fees. James Rea, however, fails to plead which of the eight grounds under Section 38.001 serves the basis for his claim for attorneys' fees. In any event, no Third-Party Plaintiffs' claim for attorneys' fees has any legal basis, and all should be dismissed.

Under Texas law, litigants may recover attorneys' fees only if authorized by statute or by a contract between the *parties*.  *See, e.g., Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) (citations omitted).   No statute authorizes recovery of attorneys' fees for tortious interference with a contract, including Chapter 38 of the Texas Civil Practice & Remedies Code. *See Alma Grp., LLC v. Palmer*, 143 S.W.3d 840, 846 n.5 (Tex. App.—Corpus Christi 2004, pet. denied) ("there is no statutory or contractual basis for recovery of attorney fees for a tortious-interference claim.") (citing *Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348, 357 (Tex. App.—Corpus Christi 2003), *rev'd in part on other grounds,* 207 S.W.3d 330 (Tex. 2006); *Martin–Simon v. Womack,* 68 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).   Moreover, the Third-Party Plaintiffs do not allege the existence of a contract between themselves and Thelander, which is required in order to recover attorneys' fees pursuant to a contractual provision.

Further, the Third-Party Plaintiffs do not allege sufficient facts to support prior presentment of a claim for attorneys' fees as required by Section 38.002.  *See* Tex. Civ. Prac. & Rem. Code § 38.002 ("To recover attorney's fees under this chapter: … (2) the claimant must present the claim to the opposing party…"); *see also Gibson v. Cuellar,* 440 S.W.3d 150, 157 (Tex. App.–Houston [14th Dist.] 2013, no pet.) ("The claimant bears the burden to plead and prove presentment of the claim."); *Note Inv. Grp., Inc. v. Assocs. First Capital Corp.*, 476 S.W.3d 463, 485 (Tex. App.—Beaumont 2015, no pet.) ("However, neither the filing of suit, nor the allegation of a demand in the pleadings can, alone, constitute presentment of a claim or a demand that a claim be paid.") (citing *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.,* 393 S.W.3d 492, 516 (Tex. App.–Dallas 2013, pet. denied); *Jim Howe Homes, Inc. v. Rogers,* 818 S.W.2d 901, 904 (Tex. App.–Austin 1991, no writ)).   Therefore, the claims for attorneys' fees in Count 1-4 should be dismissed.

7.    **The Third-Party Plaintiffs' allegations do not support exemplary damages.**

To recover exemplary damages based on a claim of tortious interference, there must be alleged harm that results from Thelander's alleged fraud, malice, or gross negligence.  *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a).  In other words, the Third-Party Claims must allege facts supporting that Thelander (1) specifically intended to cause substantial injury or harm to Third-Party Plaintiffs; or (2) was consciously indifferent to the prospect of substantial injury to Third-Party Plaintiffs. *Id.* §§ 41.001(7), (11).  Importantly, allegations that arguably support the willful-harm element of their tortious-interference claims "cannot also justify a punitive damages award. More is required." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 662 (Tex. 2012) (citations omitted); *see also Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 151 (5th Cir. 2017).

To state a claim for exemplary damages, Third-Party Plaintiffs must allege "something independent and qualitatively different from the compensable harms associated with the cause of action." *Id.* (citation and quotations omitted).  The Third-Party Claims fail to do so.

Here, the Third-Party Plaintiffs merely state that they seek exemplary damages based on "the intentional, malicious and vindictive nature of the Alder Defendants' conduct."  (Dkt. 169 ¶ 62 (Hall), ¶ 82 (Wulf), ¶ 91 (James Rea); *see also id.* ¶ 71 (Ted Rea) (noting that Ted Rea seeks exemplary damages based on "the intentional, vexatious and vindictive nature of the Alder Defendants' conduct").  Beyond these conclusory and group allegations, there are no facts alleged to support any award of exemplary damages against Thelander or any Third-Party Defendant.[5] Therefore, the claims for exemplary damages in Counts 1-4 should be dismissed.

---

[5] *See e.g., Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019) ("[T]o give the requisite notice to each Defendant, Plaintiff needs to avoid improper 'group

## V.        CONCLUSION

For the reasons set forth above, Third-Party Defendant Bjorn Thelander respectfully requests that the Court dismiss the Third-Party Claims (Counts 1-4) pursuant to Federal Rules of Civil Procedure 12(b)(2) and )12(b)(6).  Thelander also requests all other relief to which he may be entitled.

---

pleading' that does not distinguish the conduct of the individual Defendants."); *Gurganus v. Furniss*, 3:15-CV-03964-M, 2016 WL 3745684, at \*5 (N.D. Tex. July 13, 2016) (holding plaintiff's "group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8" and "makes it impossible to ascertain which particular Defendants(s) are supposedly responsible for the acts allegedly creating the WARN Act violation") (citations omitted).

DATED: October 21, 2019                    Respectfully submitted,

                                           */s/ Nicole L. Williams*

                                           Nicole L. Williams
                                           Texas Bar No. 24041784
                                           nicole.williams@tklaw.com
                                           William L. Banowsky
                                           Texas Bar No. 01697125
                                           bill.banowsky@tklaw.com
                                           Jasmine S. Wynton
                                           Texas Bar No. 24090481
                                           jasmine.wynton@tklaw.com
                                           Nicholas S. Davis
                                           Texas Bar No. 24101678
                                           nick.davis@tklaw.com


                                           **THOMPSON & KNIGHT LLP**
                                           One Arts Plaza
                                           1722 Routh Street, Suite 1500
                                           Dallas, Texas 75201
                                           (214) 969-1700
                                           (214) 969-1751 (facsimile)

                                           */s/ Robert H. Lang*
                                           Robert H. Lang
                                           (appearing *pro hac vice*)
                                           rhlang@thompsoncoburn.com

                                           **THOMPSON COBURN LLP**
                                           55 East Monroe, 37th Floor
                                           Chicago, Illinois 60603
                                           (312) 346-7500

                                           **ATTORNEYS FOR THIRD-PARTY DEFENDANT
                                           BJORN THELANDER**


## CERTIFICATE OF SERVICE

        This document was filed electronically on October 21, 2019, and, in compliance with Local
Civil Rule L.R. 5.1(d), a copy of this document has been served on all counsel of record.

                                           */s/ Nicole L. Williams*