# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
| | § | |
|     Defendants/Third-Party Plaintiffs. | § | |

## THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S RULE 12(B)(6) MOTION TO DISMISS THIRD-PARTY CLAIMS & BRIEF IN SUPPORT

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III.   RULE 12(B)(6) STANDARD ................................................................................5

IV.    ARGUMENTS AND AUTHORITIES...........................................................................6

     A.     The Third-Party Plaintiffs fail to allege sufficient facts to state a tortious-
         interference claim....................................................................................6

         1.     As an officer of VBF, McCowan cannot tortiously interfere with the
             Termination Agreements to which VBF was a party.................................7

         2.     VBF was exercising its rights under the Termination Agreements. ..........10

         3.     All claims against VBF have been discharged, released, and
             enjoined..................................................................................................11

         4.     There are no allegations that McCowan actively persuaded VBF to
             breach the Termination Agreements..........................................................13

         5.     Counts 1 and 2 fail as a matter of law because attorneys' fees cannot
             be awarded as actual damages for tortious interference. ...........................14

         6.     The claims for attorneys' fees fail as a matter of law. ...............................15

     B.     The Third-Party Plaintiffs' allegations do not support exemplary damages. ........16

V.     CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*ACS Investors, Inc. v. McLaughlin,*
   943 S.W.2d 426 (Tex. 1997)..................................................................................... 7, 9

*Alma Grp., L.L.C. v. Palmer,*
   143 S.W.3d 840 (Tex. App.—Corpus Christi 2004, pet. denied)..................................... 13, 14

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.,*
   521 F.3d 472 (5th Cir. 2008) ...................................................................................... 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................. 5

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)............................................... 5

*Benningfield v. City of Houston,*
   157 F.3d 369 (5th Cir. 1998) ..................................................................................... 7

*Bluevine Capital, Inc. v. UEB Builders, Inc.,*
   3:17-CV-3265-L, 2019 WL 142350 (N.D. Tex. Jan. 9, 2019) ..................................... 4

*Brown & Brown of Texas, Inc. v. Omni Metals, Inc.,*
   317 S.W.3d 361, 399 (Tex. App.--Houston [1st Dist.] 2010, pet. denied).............................. 14

*Celanese Corp. v. OneBeacon Am. Ins. Co.,*
   3:15-CV-03822-N, 2016 WL 6496354 (N.D. Tex. May 20, 2016)........................................... 7

*Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.,*
   848 S.W.2d 232 (Tex. App.—Dallas 1992, no writ) ................................................... 7

*Community Health Sys. Prof'l Servs. v. Hansen,*
   525 S.W.3d 671 (Tex. 2017)..................................................................... 6, 7, 8, 14

*Cypress Engine Accessories, LLC v. HDMS Ltd. Co.,*
   283 F. Supp. 3d 580 (S.D. Tex. 2017) ...................................................................... 10

*Davis v. Hyd-Pro, Inc.,*
   839 S.W.2d 137 (Tex. App.—Eastland 1992, writ denied)...................................... 13

*Delgado v. Methodist Hosp.,*
   936 S.W.2d 479 (Tex. App.—Houston [14th Dist.] 1996, no pet.)........................... 11

*Ed Rachal Found. v. D'Unger*,
   117 S.W.3d 348 (Tex. App.—Corpus Christi 2003), *rev'd in part on other grounds*,
   207 S.W.3d 330 (Tex. 2006)....................................................................... 14

*Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*,
   No. 05-13-00506-CV, 2015 WL 6750047 (Tex. App.—Dallas Nov. 4, 2015, no pet.)........... 13

*Gibson v. Cuellar*,
   440 S.W.3d 150 (Tex. App.–Houston [14th Dist.] 2013, no pet.)........................... 14

Guidry v. American Pub. Life Ins. Co.,
   512 F.3d 177 (5th Cir. 2007) .......................................................................... 5

*Hambric Sports Mgmt., LLC v. Team AK, Inc.*,
   3:09-CV-1662-L, 2010 WL 2605243 (N.D. Tex. June 29, 2010) ........................... 12

*Hamlett v. Holcomb*,
   69 S.W.3d 816 (Tex. App.—Corpus Christi 2002, no pet.) .................................... 11

*Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*,
   393 S.W.3d 492 (Tex. App.–Dallas 2013, pet. denied)........................................ 15

*Holland v. Wal-Mart Stores, Inc.*,
   1 S.W.3d 91, 95 (Tex. 1999) (citations omitted) ........................................ 15

*Holloway v. Skinner*,
   898 S.W.2d 793 (Tex. 1995)............................................................... 6, 7

*Immobiliere Jeuness Establissement v. Amegy Bank*,
   525 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.)......................... 12

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
   854 F.3d 797 (5th Cir. 2017) .......................................................................... 6

*Jim Howe Homes, Inc. v. Rogers*,
   818 S.W.2d 901 (Tex. App. —Austin 1991, no writ)............................................ 15

*John Paul Mitchell Sys.*,
   17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet. denied) ................................. 9

*Lopez v. Munoz, Hockema & Reed, L.L.P.*,
   22 S.W.3d 857 (Tex. 2000)........................................................................ 11

*Martin–Simon v. Womack*,
   68 S.W.3d 793 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ...................... 14

*MBM Fin. Corp. v. Woodlands Operating Co.*,
   292 S.W.3d 660 (Tex. 2009)....................................................................... 14

*Merritt Hawkins & Associates, L.L.C. v. Gresham*,
 861 F.3d 143, 151 (5th Cir. 2017) ........................................................................ 16

*Mitchell v. Am. Eagle Airlines, Inc.*,
 CIV. A. 15-757-SDD-RLB, 2016 WL 4203826 (M.D. La. Aug. 5, 2016) ................ 3

*Mumfrey v. CVS Pharmacy, Inc.*,
 719 F.3d 392 (5th Cir. 2013) ........................................................................... 8, 9

*Nat'l Prop. Holdings, L.P. v. Westergren*,
 453 S.W.3d 419 (Tex. 2015)................................................................................ 10

*Note Inv. Grp., Inc. v. Assocs. First Capital Corp.*,
 476 S.W.3d 463 (Tex. App.—Beaumont 2015, no pet.) ...................................... 14

*Powell Indus. v. Allen*,
 985 S.W.2d 455 (Tex. 1998)............................................................................. 8, 9

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
 29 S.W.3d 74 (Tex. 2000).................................................................................... 6

*Reliable Consultants, Inc. v. Earle*,
 517 F.3d 738 (5th Cir. 2008) ............................................................................... 5

*Safeshred, Inc. v. Martinez*,
 365 S.W.3d 655 (Tex. 2012)............................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)............................................................................................. 3

*Turner v. Turner*,
 385 S.W.2d 230, 234 (Tex. 1964)....................................................................... 14

*Williams v. Compressor Eng'g Corp.*,
 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] ..................................... 13

## STATUTES

Tex. Civ. Prac. & Rem. Code § 38.001 ................................................................... 4, 14

Tex. Civ. Prac. & Rem. Code § 38.002 ....................................................................... 14

Tex. Civ. Prac. & Rem. Code § 41.003(a)................................................................... 15

## RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 3, 4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Third-Party Defendant Norman McCowan ("**McCowan**") files this Motion and Brief in Support of his Motion to Dismiss the Third-Party Claims (Dkt. 169) brought by Defendants Leslie A. Wulf ("**Wulf**"), Bruce A. Hall ("**Hall**"), James Rea ("**James Rea**"), and John (Ted) Rea ("**Ted Rea**") (collectively, "**Third-Party Plaintiffs**") for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

The Court should dismiss the Third-Party Plaintiffs' tortious interference with a contract claims against McCowan for failure to state a claim under Rule 12(b)(6).  First, the Third-Party Plaintiffs fail to allege sufficient facts for each essential element of a claim for tortious interference with a contract.  Specifically, the Third-Party Plaintiffs fail to allege that McCowan—who was at all relevant times an officer of VBF—acted completely outside the interests of VBF, as required for a corporate agent to be legally able to interfere, or that McCowan actively persuaded VBF to breach the Termination Agreements.    Moreover, the Third-Party Plaintiffs have not alleged sufficient facts to demonstrate that there was an underlying breach or interference with a contract that would support their tortious interference claims. The allegations as to Counts 1, 2, and 4 specifically establish that VBF had a contractual right to take the actions it did.  Additionally, any potential claims or remedies against VBF for its actions or alleged breaches were discharged, released, and enjoined by the VBF Reorganization Plan; therefore, there is no underlying breach of contract claim to support the Third-Party Plaintiffs' tortious interference claims.   Furthermore, the damages alleged by the Third-Party Plaintiffs for Counts 1 and 2 are not recoverable as a matter of law.  Finally, the Third-Party Plaintiffs' claims for attorney's fees and exemplary damages are fail as a matter of law.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In 2014, the Third-Party Plaintiffs founded Plaintiff VeroBlue Farms USA, Inc. ("**VBF**"), a sustainable fish farm.  The Third-Party Plaintiffs served as directors, officers, and employees of VBF from its founding in 2014 through the termination of their employment and removal as officers and directors in late 2017 and early 2018.  Specifically, (1) VBF terminated its business relationship with Hall and Ted Rea on October 27, 2017, and each signed a Business Relationship Termination Agreement (Dkt. 169, Exs. C & D); (2) VBF terminated its business relationship with Wulf on December 1, 2017, and he signed a Separation Agreement (*Id.*, Ex. B); and (3) VBF terminated its business relationship with James Rea on January 8, 2018 for "Egregious Cause" pursuant to his Employment Agreement (*Id.*, Ex. A). (These agreements signed by the Third-Party Plaintiffs are collectively referred to as the "**Termination Agreements**.").  On November 6, 2017, McCowan became the president of VBF, and he currently remains in that role.  (*See* Dkt. 169, ¶ 7).[1]

Following the removal and discharge of the last of the Third-Party Plaintiffs in January 2018, VBF discovered that the Third-Party Plaintiffs misappropriated and misused millions of dollars in corporate assets and knowingly misrepresented VBF's operations, technology, and finances.  (*See* Dkt. 9, Am. Compl. ¶¶ 13-42).   VBF then filed the instant suit against the Defendants, which now asserts claims for breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, constructive fraud, civil conspiracy, aiding and abetting, unjust enrichment, equitable accounting, a declaratory judgment, fraudulent transfer, restitution, violations of the Racketeer Influenced and Corrupt Organizations Act, and rescission

---

[1] The Third-Party Complaint erroneously states that McCowan is the chief executive officer of VBF.

of the Termination Agreements that are allegedly the basis of the allegations in the Third-Party Claims. (*See generally id.*)

As a result of the misdeeds of the Third-Party Plaintiffs, VBF also filed for bankruptcy under Chapter 11. *See In re VeroBlue Farms USA, Inc. et al.*, No. 18-01297 (Bankr. N.D. Iowa, filed Sept. 21, 2018) ("**VBF Bankruptcy**"). The U.S. Bankruptcy Court for the Northern District of Iowa (the "**Bankruptcy Court**") confirmed the Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and Its Affiliated Debtors (the "**VBF Reorganization Plan**") and entered a final judgment on May 7, 2019, which became final on May 22, 2019. (*Id.* at Dkt. 515, 516).[2] The Bankruptcy Court also allowed McCowan to continue in his role as President of VBF during the bankruptcy and in the confirmation order. (*E.g.*, *id.* at Dkt. 96 (Chapter 11 Monthly Operating Report)[3]; Ex. 2 at 10). The Third-Party Plaintiffs were parties-in-interest to the VBF Bankruptcy, received notice of the proceedings, including those related to the confirmation, and participated in the proceedings. (*E.g.*, *id.* at Dkt. 411 (Notice of Attorney

---

[2] A true and correct copy of the Bankruptcy Court's judgment ("**Judgment**") is attached hereto as **Exhibit 1**. A true and correct copy of the Bankruptcy Court's confirmation order ("**Order**"), which includes a copy of the VBF Reorganization Plan, is attached hereto as **Exhibit 2.** There were Amended and Restated Minor Modifications to the VBF Reorganization Plan [Dkt. 511] incorporated into the Order and attached hereto as **Exhibit 3**.

The Bankruptcy Court's Order, Judgment, and VBF Reorganization Plan are appropriately considered with this motion. Courts considering a motion to dismiss may rely on the allegations of the complaint "as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," such as VBF's bankruptcy filings. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Mitchell v. Am. Eagle Airlines, Inc.*, CIVIL ACTION 15-757-SDD-RLB, 2016 WL 4203826, at *2 & n.28 (M.D. La. Aug. 5, 2016) (taking judicial notice of defendant's bankruptcy filings).

[3] A true and correct copy of the Chapter 11 Monthly Operating Report is attached hereto as **Exhibit 4**. This Report is also appropriately considered for this motion. *See* n.3.

Appearance for Third-Party Plaintiffs)[4]; *see also id.* Dkt. 446, 466 (Objections to Confirmation of Plan by Third-Party Plaintiffs)).

On April 10, 2019, Third-Party Plaintiffs brought claims for tortious interference against third parties McCowan, Eva Ebstein, Jens Haarkoetter, Bjorn Thelander, Anders Wester, Dr. Otto Happel, and Alder Aqua, Ltd. (collectively, the "**Third-Party Defendants**"). After the Court granted VBF's motion for leave to file its Second Amended Complaint and mooted the originally-filed third-party claims (*see* Dkt. 158), the Defendants/Third-Party Plaintiffs filed a Notice of Intent to Proceed on Third-Party Complaint and re-filed their third-party claims on October 7, 2019. (*See generally* Dkt. 169).

The Third-Party Defendants are current and former directors, officers, or shareholders of VBF. (Dkt. 169 ¶¶ 3-9). The Third-Party Plaintiffs assert the Third-Party Defendants tortiously interfered with the Termination Agreements by allegedly inducing VBF to (1) file suit against Hall and Ted Rea, allegedly in violation of the releases in their respective Termination Agreements (*Id.* ¶¶ 58, 66); (2) refuse to pay Wulf severance payments allegedly due to him under the Separation Agreement (*Id.* ¶ 77); and (3) terminate James Rea based on an allegedly false claim of "Egregious Cause," and refuse to pay him amounts allegedly due under the Employment Agreement. (*Id.* ¶ 87).

Ted Rea and Hall each claim damages "in an amount of expense he has incurred in defending against claims brought against him by VBF in violation of the release," and seek punitive damages and attorneys' fees (pursuant to Section 7(i) of their Termination Agreements). (*Id.* ¶¶ 61-63, 70-72). Wulf seeks damages, punitive damages, and attorneys' fees (pursuant to Section 7(i) of the Separation Agreement). (*Id.* ¶¶ 81-83). James Rea seeks damages, punitive

---

[4] A true and correct copy of the Notice of Appearance and Request for Service is attached hereto as **Exhibit 5**. This Notice is also appropriately considered for this motion. *See* n.3.

damages, and attorneys' fees (pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code). (*Id.* ¶¶ 90-92). The claims brought by the Third-Party Plaintiffs are collectively referred to as the "**Third-Party Claims**." The Third-Party Plaintiffs are simply attempting an end-run around what they know they cannot do—sue VBF for breach of contract—both because VBF did not breach any contract and also due to the VBF Bankruptcy Plan resulting from Third-Party Plaintiffs' own conduct.

## III.    RULE 12(B)(6) STANDARD

"To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bluevine Capital, Inc. v. UEB Builders, Inc.*, 3:17-CV-3265-L, 2019 WL 142350, at *1–2 (N.D. Tex. Jan. 9, 2019) (Lindsay, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)). "A claim meets the plausibility test when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "While a complaint need not contain detailed factual allegations, it must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "The factual allegations of a complaint must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, internal brackets, and citations omitted); *see also United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th

Cir. 2014) (per curiam). "When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief." *Bluevine Capital*, 2019 WL 142350, at *1–2 (citing *Iqbal*, 556 U.S. at 679).

## IV.   ARGUMENTS AND AUTHORITIES

### A.   The Third-Party Plaintiffs fail to allege sufficient facts to state a tortious-interference claim.

The Third-Party Plaintiffs assert four counts of tortious interference:  Count 1, Tortious Interference with Hall Termination Agreement; Count 2, Tortious Interference with Ted Rea's Termination Agreement; Count 3, Tortious Interference with Wulf's Separation Agreement; and Count 4, Tortious Interference with James Rea's Employment Agreement. To state a claim for tortious interference with an existing contract under Texas law, the Third-Party Plaintiffs must allege that there was "(1) an existing contract subject to interference and (2) a willful and intentional act of interference with the contract (3) that proximately caused the plaintiff's injury and (4) caused actual damages or loss." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 813 (5th Cir. 2017) (quoting *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)) (internal quotation marks omitted); *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

The Third-Party Claims against McCowan fail as a matter of law and should be dismissed for four independent reasons. First, with respect to Counts 1-4, the Third-Party Plaintiffs fail to allege that McCowan—who was undisputedly at all relevant times a corporate agent of VBF— interfered with any of VBF's contracts with the Third-Party Plaintiffs to serve his own personal interests at VBF's expense.  Second, the Third-Party Plaintiffs do not allege sufficient facts to demonstrate that McCowan induced VBF to breach its contracts with the Third-Party Plaintiffs because with respect to Counts 1, 2, and 4, VBF was merely exercising its rights under the

respective contracts. Third, regarding Counts 1-4, any potential underlying breach of contract claims against VBF were discharged, released, and enjoined as part of the VBF Bankruptcy Plan. Fourth, regarding Counts 1-4, the Third-Party Plaintiffs fail to allege sufficient facts that would demonstrate McCowan actively persuaded VBF to breach its contract with any Third-Party Plaintiff. Fifth, with respect to Counts 1 and 2, the Third-Party Plaintiffs fail to allege recoverable damages by Ted Rea or Hall. Finally, regarding Counts 1-4, there is no basis for recovery of attorneys' fees by the Third-Party Plaintiffs as a matter of law.

1. **As an officer of VBF, McCowan cannot tortiously interfere with the Termination Agreements to which VBF was a party.**

To plead the willful and intentional interference element of a tortious-interference claim, the Third-Party Plaintiffs must show that McCowan was legally capable of tortious interference. *See Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). To be legally capable of tortious interference, McCowan must be a "stranger to the contract" with which he allegedly interfered. *Id.* at 794-95. Because corporations can act only through human agents, the general rule is that "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Id.* at 795 (citations omitted). Thus, a corporation's agent is not a stranger to the contract and cannot tortiously interfere with the corporation's contract. *Hansen*, 525 S.W.3d at 690 (citing *Holloway*, 898 S.W.2d at 795-96)); *see also Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) ("Generally, as agents of the Defendant, the Defendants cannot be liable for interference with the city's contracts.") (citation omitted); *Celanese Corp. v. OneBeacon Am. Ins. Co.*, 3:15-CV-03822-N, 2016 WL 6496354, at *4 (N.D. Tex. May 20, 2016) ("Under Texas law, the parties to an ongoing business relationship cannot interfere with their own relationship. In fact, 'a person must be a stranger to a contract to tortiously interfere with it.' With very few exceptions, only a third party who is an outsider to the business relationship can be liable

for tortious interference.    Because a corporation's agents share its legal identity, corporate agents . . . generally cannot be held liable for tortious interference with their principal's business relations.") (internal citations omitted); *Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 242 (Tex. App.—Dallas 1992, no writ) (" Where a . . . principal agent relationship exists, there can be no tortious interference with a contract as a matter of law.") (citation omitted).

Thus, when a corporate agent is accused of interfering with the corporation's contract, it is the claimant's burden to show that the agent "'acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests,' and thus could not have been acting within the scope of his agency at the time of the interference." *Hansen*, 525 S.W.3d at 691 (quoting *Holloway* 898 S.W.2d at 795-97)); *see also Benningfield*, 157 F.3d 369 at 379 (same); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997) (corporate officer or director cannot be held liable for interfering with corporation's contractual obligations as long as she is acting in good faith on corporation's behalf).  As explained by the Fifth Circuit, "[t]he Texas Supreme Court has provided guidance on determining when an corporation's agent is acting against the corporation's interests: If a corporation does not complain about it's agents actions, then the agent cannot be held to have acted contrary to the corporation's interests.". *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) (citing *Powell Indus. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998)); *see also Hansen*, 525 S.W.3d at 695 ("Additionally, because a principal is a superior judge of its own best interests, we consider the principal's evaluation of the agent's actions when determining whether the corporate agent acted against the principal's interests.  If the principal 'does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests.'") (citations omitted).

Here, it is undisputed and the allegations establish that VBF was a party to each of the Termination Agreements and that McCowan is and was VBF's corporate agent at all relevant times and thus, was not a stranger to the corporation's contract. (*See* Dkt. 169 at ¶ 7 (pleading McCowan "has served as the chief executive officer of VBF since November 6, 2017"); *id.* at 16 ("McCowan is the current CEO of VBF."); *id.* at Ex. B (McCowan signing Wulf's Separation Agreement on behalf of VBF)); *id.* at Exs. A-D (showing VBF as a party to each contract)).  Thus, Third-Party Plaintiffs must plead and prove that McCowan acted so contrary to VBF's interests that his actions could *only* have been motivated by personal interest. *Hansen*, 525 S.W.3d at 694. Third-Party Plaintiffs, however, have not met this burden.  Indeed, the Third-Party Plaintiffs do not allege that McCowan acted in any way other than in good faith on VBF's behalf in relation to each of the Termination Agreements addressed in Counts 1-4.  Furthermore, the Third-Party Plaintiffs do not allege sufficient facts that would demonstrate that McCowan acted willfully and intentionally to serve his own personal interests at VBF's expense in relation to any of the Termination Agreements.  And, even if the Third-Party Claims are construed to allege that McCowan sought to benefit himself *and* VBF, such "mixed motives" are "insufficient to establish liability." *Powell Indus.*, 985 S.W.2d at 457; *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) ("Even an agent's mixed motives—benefitting himself and the corporation—are insufficient.").  Finally, the Third-Party Plaintiffs fail to allege facts that would show that VBF objected to any of McCowan's actions as an agent of VBF.  Therefore, the Third-Party Plaintiffs fail to allege sufficient facts to demonstrate that McCowan was acting contrary to VBF's interests as a matter of law.

Accordingly, the Third-Party Claims for tortious interference (Counts 1-4) are insufficient as a matter of law and should be dismissed.

**2.      VBF was exercising its rights under the Termination Agreements.**

To state a claim for tortious interference, the Third-Party Claims must include allegations that McCowan's conduct amounted to a knowing inducement to VBF to breach its contract with each Third-Party Plaintiff. *See John Paul Mitchell Sys.*, 17 S.W.3d at 730-31.   Inducing a third party to do what it has a legal right to do does not constitute tortious interference. *ACS Investors*, 943 S.W.2d at 430.   Here, because the allegations themselves show that VBF was acting within its rights under the Termination Agreements with Hall, Ted Rea, and James Rea, there is no claim for tortious interference.

The only inducement alleged by the Third-Party Plaintiffs related to the Termination Agreements for Ted Rea and Hall (Counts 1 and 2) was for VBF to file this lawsuit against Ted Rea and Hall.   Even assuming these Termination Agreements are enforceable (they are not, as explained in VBF's Second Amended Complaint (Dkt. 102 at ¶¶ 309-352) and VBF's Response and Brief in Support to Defendant Keith Driver's 12(b)(6) Motion to Dismiss (Dkt. 103 at 19-23)), neither agreement prohibits VBF from bringing a lawsuit.   There is no covenant not to sue in the Termination Agreements.   (*See* Dkt. 169, Exs. C, D).   The sole basis for this claim by Ted Rea and Hall is the purported release provision in the Termination Agreements.   But Texas law distinguishes between releases (which are affirmative defenses that do not automatically bar later claims) and covenants not to sue (which indeed bar later claims).   *See Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*, 283 F. Supp. 3d 580, 587-88 (S.D. Tex. 2017) (noting "[u]nder Texas law, the court cannot imply a covenant not to sue on released claims from a settlement releasing those claims," as Texas Supreme Court precedent provides that "a release of a claim does not equate to a covenant not to sue on that claim. The issue is whether the specific release language 'includes a contractual obligation not to sue.'") (citation omitted); *Nat'l Prop. Holdings, L.P. v. Westergren*,

453 S.W.3d 419, 428–29 (Tex. 2015) ("Although the release provides an affirmative defense to future suits, we cannot construe it as including a covenant not to sue where, in fact, the plain language does not bar future suits.").[5]

The only inducement alleged by the Third-Party Plaintiffs related to the Employment Agreement for James Rea (Count 4) was for VBF to terminate James Rea for "Egregious Cause." But James Rea's Employment Agreement provided VBF with the legal right to terminate his employment for "Egregious Cause," which it exercised. (*See* Dkt. 169 at Ex. A, §§ 5(c)(i)-(iii) ("Employee's employment hereunder may be terminated by the Company for Cause," which means "either Egregious Cause or Non-Egregious Cause.")).

Therefore, VBF was acting within its legal rights by bringing this lawsuit against Hall and Ted Rea, and by terminating James Rea's employment on a basis expressly permitted by his Employment Agreement, and there was no breach that could have been induced by McCowan. Accordingly, the tortious-interference claims at Counts 1, 2, and 4 are insufficient as a matter of law and should be dismissed.

### 3.        All claims against VBF have been discharged, released, and enjoined.

Each tortious-interference claims at Counts 1-4 should be dismissed because the Third-Party Claims are wholly derived from and dependent upon the Third-Party Plaintiffs' allegations that VBF breached their agreements.  Any underlying breach claim against VBF, however, has been discharged, released, and enjoined as a matter of law by the VBF Bankruptcy Plan. *See, e.g.,*

---

[5] Moreover, any interpretation that the release could constitute a covenant not to sue contravenes other provisions in the agreements that unambiguously demonstrate that the parties contemplated future litigation based on the agreements.  (*E.g.,* Dkt. 169 at Ex. C, § 7(i) ("In the event it becomes necessary to bring suit to enforce any provision of this Agreement…"); § 7(l) ("Each Party agrees to commence any action, suit or proceeding relating to this Agreement in the District Court.")).

*Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 485–86 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (holding patient's tortious-interference claim against doctors failed where patient waived any claim for breach of contract against hospital); *Hamlett v. Holcomb*, 69 S.W.3d 816, 820 (Tex. App.—Corpus Christi 2002, no pet.) (affirming dismissal of plaintiff's tortious-interference claim against one defendant because plaintiff's tortious-interference claim was premised on the other defendant's breach, and the other defendant did not breach the contract with plaintiff) (citing *See Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 862 (Tex. 2000) (failure of a claim for breach of contract necessarily defeated claim for breach of fiduciary duty that depended on breach of contract)).

The Bankruptcy Court entered an order accepting and confirming the VBF Reorganization Plan on May 7, 2019, which is now in effect. *See* Exs. 1 (Order confirming VBF Reorganization Plan) & 2 (VBF Reorganization Plan).  The VBF Reorganization Plan contains broad discharges and releases for VBF as the Debtor.  *See* Ex. 2, Plan, Art. 9.13 at 26.  The Bankruptcy Court Order and Judgment reiterate the enforceability of this release.  Ex. 1, Judgment at ¶ 6; Ex. 2, Order at 18.  Further, the VBF Reorganization Plan contains a broad injunction on claims based on Claims or other debts or liabilities that were addressed by the VBF Reorganization Plan, which would include any claim for breach of contract against VBF by the Third-Party Plaintiffs.  Ex. 2, Plan, Art. 9.17 at 29.

Here, the Third-Party Claims allege only that McCowan tortiously interfered in contracts of VBF (the debtor) and took certain actions during his time as an employee and officer of VBF in operation of VBF.  To state a claim that McCowan tortiously interfered with the contracts between VBF and the Third-Party Plaintiffs, the Third-Party Plaintiffs must allege that VBF induced or caused a breached of such agreements.  Because the Third-Party Plaintiffs' claims for

VBF's alleged breach of contract were released, discharged, and enjoined by the VBF Reorganization Plan, the Third-Party Plaintiffs cannot demonstrate the threshold breach of contract necessary to support their tortious interference claims.  Rather, in bringing claims against current officers of VBF based on alleged breaches of contracts that can no longer be challenged under the VBF Reorganization Plan, the Third-Party Plaintiffs are simply attempting an end-run around the Bankruptcy Court, which enjoined such claims.

Therefore, because any claims against VBF by the Third-Party Plaintiffs have now been discharged, released, and enjoined, the Third-Party Claims for tortious interference (Counts 1-4) are insufficient as a matter of law and should be dismissed.

**4.      There are no allegations that McCowan actively persuaded VBF to breach the Termination Agreements.**

To state a claim for tortious interference, the Third-Party Plaintiffs must allege that McCowan's interference proximately caused their injury. *Immobiliere Jeuness Establissement v. Amegy Bank*, 525 S.W.3d 875, 880 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  The proximate-cause element requires allegations that McCowan took an active role in persuading VBF to breach the Termination Agreements.  *See Hambric Sports Mgmt., LLC v. Team AK, Inc.*, 3:09-CV-1662-L, 2010 WL 2605243, at *9 (N.D. Tex. June 29, 2010) (Lindsay, J.) ("To properly show proximate cause, a plaintiff must allege that 'the defendant took an active part in persuading a party to a contract to breach it.'") (quoting *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 493 (5th Cir. 2008)); *see also Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *24 (Tex. App.—Dallas Nov. 4, 2015, no pet.) ("It is necessary that there be some act of interference or of persuading a party to breach, e.g., by offering better terms or other incentives, for tort liability to arise."); *Davis v. Hyd-Pro, Inc.*, 839 S.W.2d 137, 139-40 (Tex. App.—Eastland 1992, writ denied)).

Here, the Third-Party Plaintiffs fail to allege that McCowan took an active role in persuading VBF to (1) file suit against Ted Rea or Hall; (2) terminate James Rea for cause; or (3) refuse to pay Wulf or James Rea amounts allegedly due to them.  At most, the Third-Party Claims allege that some of McCowan's actions on behalf of VBF were allegedly "consistent with" the "directions" of other third-party defendants, but there is not a single allegation that ***McCowan*** actively persuaded or directed VBF to act. (*E.g.*, Dkt. 169 ¶¶ 35, 42, 48). Therefore, Third-Party Plaintiffs have failed to allege that McCowan's interference proximately caused Third-Party Plaintiffs' injury, and the Third-Party Claims for tortious interference (Counts 1-4) are insufficient as a matter of law and should be dismissed.

### 5.     Counts 1 and 2 fail as a matter of law because attorneys' fees cannot be awarded as actual damages for tortious interference.

The only alleged damage with respect to Counts 1 and 2 is the "amount of expense" that Ted Rea and Hall have "incurred in defending against claims brought against [them] by VBF in violation of the release." (Dkt. 169 at ¶¶ 61, 70).  Attorneys' fees, however, generally "are in the nature of costs, not damages" and cannot be awarded as damages for alleged tortious interference. *See Alma Grp., L.L.C. v. Palmer*, 143 S.W.3d 840, 846 (Tex. App.—Corpus Christi 2004, pet. denied) (reversing trial court award of attorneys' fees as damages for tortious interference); *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (same).  An exception to this general rule is that a plaintiff can recover attorneys' fees as damages "where a plaintiff has been involved in litigation with a third party as a result of the tortious act of another, plaintiff may recover in a ***separate*** suit for his reasonable and necessary expenses of the ***prior*** litigation."  *Turner v. Turner*, 385 S.W.2d 230, 234 (Tex. 1964).  Here, the Third-Party Plaintiffs do not allege that the attorneys' fees they seek to recover were incurred in the prosecution or defense of a prior action, and the fees to which they refer are

those incurred in this litigation.  They cannot recover attorneys' fees through a cross-claim in the same suit.  *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 399 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("Certain prerequisites must, however, be met.  These include: (1) the plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action, and (2) the litigation must have involved a third party and must not have been brought against the defendant in the same action in which the fees are sought.").

Therefore, Counts 1 and 2 fail to allege any actual damage or loss—an essential element of their tortious-interference claims.  Accordingly, Counts 1 and 2 are insufficient as a matter of law and should be dismissed.  *See Hansen*, 525 S.W.3d at 689.

### 6.    The claims for attorneys' fees fail as a matter of law.

In Counts 1, 2, and 3, Hall, Ted Rea, and Wulf seek attorneys' fees pursuant to a provision in their respective Termination Agreements.  In Count 4, James Rea seeks attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code. (Dkt. 169 ¶¶ 90-92). Section 38.001 provides eight different statutory grounds upon which a party may recover reasonable attorney's fees.   James Rea, however, fails to plead which of the eight grounds under Section 38.001 serves the basis for his claim for attorneys' fees.  In any event, no Third-Party Plaintiffs' claim for attorneys' fees has any legal basis, and all should be dismissed.

Under Texas law, litigants may recover attorneys' fees only if authorized by statute or by a contract between the *parties*.  *See, e.g., Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) (citations omitted).   No statute authorizes recovery of attorneys' fees for tortious interference with a contract, including Chapter 38 of the Texas Civil Practice & Remedies Code. *See Alma Grp., LLC v. Palmer*, 143 S.W.3d 840, 846 n.5 (Tex. App.—Corpus Christi 2004, pet. denied) ("there is no statutory or contractual basis for recovery of attorney fees for a tortious-

interference claim.") (citing *Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348, 357 (Tex. App.—

Corpus Christi 2003), *rev'd in part on other grounds,* 207 S.W.3d 330 (Tex. 2006); *Martin–Simon*

*v. Womack,* 68 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).  Moreover,

the Third-Party Plaintiffs do not allege the existence of a contract between themselves and

McCowan, which is required in order to recover attorneys' fees pursuant to a contractual provision.

Further, the Third-Party Plaintiffs do not allege sufficient facts to support prior presentment

of a claim for attorneys' fees as required by Section 38.002.  *See* TEX. CIV. PRAC. & REM. CODE

§ 38.002 ("To recover attorney's fees under this chapter: …(2) the claimant must present the claim

to the opposing party…"); *see also Gibson v. Cuellar,* 440 S.W.3d 150, 157 (Tex. App.–Houston

[14th Dist.] 2013, no pet.) ("The claimant bears the burden to plead and prove presentment of the

claim."); *Note Inv. Grp., Inc. v. Assocs. First Capital Corp.*, 476 S.W.3d 463, 485 (Tex. App.—

Beaumont 2015, no pet.) ("However, neither the filing of suit, nor the allegation of a demand in

the pleadings can, alone, constitute presentment of a claim or a demand that a claim be paid.")

(citing *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.,* 393 S.W.3d 492,

516 (Tex. App.–Dallas 2013, pet. denied); *Jim Howe Homes, Inc. v. Rogers,* 818 S.W.2d 901, 904

(Tex. App.–Austin 1991, no writ)).  Therefore, the claims for attorneys' fees in Count 1-4 should

be dismissed.

**B.     The Third-Party Plaintiffs' allegations do not support exemplary damages.**

To recover exemplary damages based on a claim of tortious interference, there must be

alleged harm that results from McCowan's fraud, malice, or gross negligence.  *See* TEX. CIV. PRAC.

& REM. CODE § 41.003(a).  In other words, the Third-Party Claims must allege facts supporting

that McCowan (1) specifically intended to cause substantial injury or harm to Third-Party Plaintiffs;

or (2) was consciously indifferent to the prospect of substantial injury to Third-Party Plaintiffs. *Id.*

§§ 41.001(7), (11).   Importantly, allegations that arguably support the willful-harm element of their tortious-interference claims "cannot also justify a punitive damages award. More is required." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 662 (Tex. 2012) (citations omitted); *see also Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 151 (5th Cir. 2017).

To state a claim for exemplary damages, Third-Party Plaintiffs must allege "something independent and qualitatively different from the compensable harms associated with the cause of action." *Id.* (citation and quotations omitted).   The Third-Party Claims fail to do so.

Here, the Third-Party Plaintiffs merely state that they seek exemplary damages based on "the intentional, malicious and vindictive nature of the Alder Defendants' conduct."  (Dkt. 169 ¶ 62 (Hall), ¶ 82 (Wulf), ¶ 91 (James Rea); *see also id.* ¶ 71 (Ted Rea) (noting that Ted Rea seeks exemplary damages based on "the intentional, vexatious and vindictive nature of the Alder Defendants' conduct").  Beyond these conclusory allegations, there are no facts alleged to support any award of exemplary damages against McCowan or any Third-Party Defendant.  Therefore, the claims for exemplary damages in Counts 1-4 should be dismissed.

## V.   CONCLUSION

For the reasons set forth above, Third-Party Defendant Norman McCowan respectfully requests that the Court dismiss the Third-Party Claims (Counts 1-4) pursuant to Federal Rule of Civil Procedure 12(b)(6).  McCowan also requests all other relief to which he may be entitled.

DATED: October 21, 2019                    Respectfully submitted,

                                           */s/ Nicole L. Williams*

                                           Nicole L. Williams
                                           Texas Bar No. 24041784
                                           nicole.williams@tklaw.com
                                           William L. Banowsky
                                           Texas Bar No. 01697125
                                           bill.banowsky@tklaw.com
                                           Jasmine S. Wynton
                                           Texas Bar No. 24090481
                                           jasmine.wynton@tklaw.com
                                           Nicholas S. Davis
                                           Texas Bar No. 24101678
                                           nick.davis@tklaw.com


                                           THOMPSON & KNIGHT LLP
                                           One Arts Plaza
                                           1722 Routh Street, Suite 1500
                                           Dallas, Texas 75201
                                           (214) 969-1700
                                           (214) 969-1751 (facsimile)


                                           */s/ Robert H. Lang*
                                           Robert H. Lang
                                           (appearing *pro hac vice*)
                                           rhlang@thompsoncoburn.com

                                           THOMPSON COBURN LLP
                                           55 East Monroe, 37th Floor
                                           Chicago, Illinois 60603
                                           (312) 346-7500

                                           *ATTORNEYS FOR THIRD-PARTY DEFENDANT*
                                           *NORMAN MCCOWAN*


## CERTIFICATE OF SERVICE

        This document was filed electronically on October 21, 2019, and, in compliance with Local Civil Rule L.R. 5.1(d), a copy of this document has been served on all counsel of record.

                                           */s/ Nicole L. Williams*