IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VEROBLUE FARMS USA, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 3:19-cv-00764-L |
| LESLIE A. WULF, BRUCE A. HALL, § | |
| JAMES REA, JOHN E. REA, and KEITH § | |
| DRIVER § | |
| § | |
| Defendant. § | |

## DEFENDANT KEITH DRIVER'S 12(b)(6) MOTION TO DISMISS VEROBLUE'S SECOND AMENDED COMPLAINT

Defendant, Keith Driver, ("Driver"), through its undersigned counsel and pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure seeks to dismiss the all claims against Driver in VeroBlue Farms USA, Inc.'s ("VeroBlue" or "Plaintiff") Second Amended Complaint (the "Claims") for failure to state a claim upon which relief can be granted.

### STATEMENT OF ISSUES

The issues presented is whether the Court should dismiss Plaintiff's Claims pursuant to Rule 12(b)(6), which protects defendants from claims that are meritless on their face. Here, the Claims should be dismissed under Rule 12(b)(6) for at least three reasons: (a) Plaintiff released Driver from all causes of actions, known or unknown, as of January 13, 2017, in the parties' Business Relationship Restructuring Agreement; (2) Plaintiff has not adequately plead Causes I-IX against Driver; and (3) Causes I-IX are not actionable.

### EVIDENCE IN SUPPORT OF MOTION

First Amended Complaint                    App. 0003-0030

| | |
|---|---|
| Declaration of Keith Driver | App. 0031-0032 |
| Employment Agreement | App.0033-0048 |
| Restructuring Business Agreement | App. 0049-0063 |
| Second Amended Complaint | App. 0066-0166 |

## STATEMENT OF FACTS

**A.   Allegations in the Second Amended Complaint**

The Second Amended Complaint (App. 0066-0166) names Driver as a Defendant to all counts listed within the Second Amended Complaint, including claims for fraudulent concealment, fraudulent misrepresentation, constructive fraud, civil conspiracy and declaratory judgment. (App. 0011-0019, ¶ 43-85). VeroBlue alleges Driver served as an officer and employee (and/or) contractor of VeroBlue from October 1, 2014 through on or about January 13, 2017, when VeroBlue terminated his employment and officer status. (App. 0004, ¶ 3).  Other than this statement (which is not true) VeroBlue does not allege a single specific action taken by Driver other than sending a few emails in the course and scope of his employment or contractor relationship with VeroBlue. (App. 0089-0090, 0091, 0096, ¶ 97-98, 101-102, 117-18). Instead, VeroBlue's Second Amended Petition states only a slew of alleged actions taken by all Founders, leaving Driver to guess as to which actions VeroBlue actually asserts he took part in. (App. 0066-0126, ¶¶ 1-229). This is especially problematic given that this litigation has now been going on for over a year and VeroBlue has had the benefit of doing ample discovery, yet it's Second Amended Pleading does not sufficiently state a claim against Driver and does not allege a single action taken by Driver that occurred after VeroBlue released him from all employment related claims, as discussed below.

**B.   Driver's Employment with VeroBlue.**

Prior to July 1, 2016, Driver performed services for VeroBlue as a designated

representative of Seven Hours Holding Company, Inc., an independent contractor of VeroBlue's. (App. 0033). On July 1, 2016, VeroBlue and Driver entered into an Employment Agreement, terminating Driver's role as an independent contractor and putting him into the position of Chief Operating Officer of VeroBlue. (App. 0033-0048).

Driver's stint as COO of VeroBlue, however, was very brief – only six months. On January 13, 2017, Plaintiff and Driver entered into a Business Relationship Restructuring Agreement (the "Release Agreement"), which terminated Driver's Employment Agreement with Plaintiff and re-established his consulting relationship with the company. (App. 0049-0063). Thus, Driver was only an employee of VeroBlue for six months, yet Plaintiff seems to assert that Plaintiff was involved in numerous schemes allegedly performed by VeroBlue's officers during times that Driver was not employed with the company and owed no duty to VeroBlue.

Additionally, as a part of the Release Agreement, Plaintiff agreed to the following:

> (b) As a material inducement to Driver and Driver Co. to enter into this Agreement, and except for the covenants and agreements of Driver and Driver Co. provided for in this Agreement, VBF USA and VBF Canada, on their own behalf and on behalf of the other VBF Releasees, hereby irrevocably and unconditionally release, acquit and forever discharge the Driver Releasers from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or unknown (the "**VBF Releasee Claims**") which the VBF Releasees now have, own, hold, or to which the VBF Releasees at any time heretofore had, owned or held against each of the Driver Releasers, including, without limitation, the Egregious Cause Claims. The VBF Releasees represent that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any VBF Releasee Claim or any portion thereof or interest therein.

(App. 0052). Thus, Plaintiff released Driver from all causes of actions, *known or unknown*, as of January 13, 2017. (App. 0052).

C.   **Facts that Allegedly Occurred After Driver's Release from VeroBlue.**

Out of all the vague actions allegedly taken by all of the Founders, VeroBlue only alleges very few facts that allegedly occurred after it released Driver from any and all causes of actions.

Specifically, the only facts alleged to occur after the release are that on January 13, 2017:

1. Wulf rebuilt the Wulf Lake House from in or around May 2015 through in or around July 2017. (App. 0074, ¶ 34).

2. VeroBlue employee Tracy Arbanas ("Arbanas") oversaw the reconstruction of the Wulf Lake House, and VeroBlue paid her to do so at an annual cost to VeroBlue of approximately $97,500, which represented Arbanas' compensation and benefits. Further, VeroBlue funded housing for Arbanas close to the lake house, and refreshments for the construction crew on this project. All told, VeroBlue incurred approximately $107,490.51 for compensation and benefits to Arbanas. (App. 0074, ¶ 35).

3. Founders paid for James Rea's personal living expenses in Ames, Iowa, about forty miles from Webster City, Iowa in or around August 2017 from VeroBlue's funds. (App. 0078, ¶ 52(c)).

4. Founders sold a home in Webster City, Iowa for less than what it purchased it for on May 25, 2018. (App. 0078, ¶ 52(h).

5. Plaintiff purchased, at the direction of some or all Founders, of a building and underlying property unnecessary to VeroBlue's business and located in Webster City for $400,000 on July 28, 2016, which VeroBlue sold for $135,000 on April 13, 2018. (App. 0112, ¶ 171).

6. Made certain Written Representations to the Board, as shown in Exhibit 22 to the Second Amended Petition. (App. 0094, 0100, 0103 ¶ 111-12, 132, 146, 149).

None of these facts specifically references any conduct by Driver and instead only lumps him in as one of the defined "Founders," even though his participation in these post-release actions are *factually impossible since Driver was no longer involved with Plaintiff at that time in any capacity* that would have any control, decision-making authority, or even notice of these activities. Most importantly, the Written Representations to the Board attached to the Second Amended Complaint as Exhibit 22 only mention Driver in relation to his termination and separation agreement, never with him attending, participating, or contributing to the representations. (ECF 159.3). At the time all of the foregoing actions were taken, Driver was not an officer or director of VeroBlue, was

merely acting as a consultant to Veroblue, owed no duties to VeroBlue, and was not involved in the actions. (App. 0031-33).

### INCORPORATION OF ARGUMENTS IN FOUNDER DEFENDANTS' MOTION TO DISMISS

Driver refers and incorporates by reference all applicable facts and arguments contained in Founder Defendants' Rule 12(b)(1) and 12(B)(6) Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support.

**WHEREFORE,** for the reasons discussed above, and as stated in more detail in the accompanying Brief in Support of Defendant Keith Driver's 12(B)(6) Motion to Dismiss, Defendant, Keith Driver's 12(B)(6) Motion to Dismiss VeroBlue's Second Amended Complaint should be granted.

Respectfully submitted,

By: */s/ Heath Cheek*
R. Heath Cheek
State Bar No. 24053141
hcheek@bellnunnally.com
Katie R. Beaird
Texas Bar No. 24092099
kbeaird@bellnunnally.com
**Bell Nunnally & Martin LLP**
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Telephone: (214) 740-1400
Telecopy: (214) 740-1499

**ATTORNEYS FOR DEFENDANT KEITH DRIVER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon counsel of records for all parties via ECF Service.

**DATED** this 29th day of October, 2019.

*/s/ R. Heath Cheek*
R. Heath Cheek