# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
|    Plaintiff | § | |
| | § | |
|   v. | § | |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
|    Defendants/Founders | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
|   v. | § | |
| | § | |
| EVA EBSTEIN, JENS HAARKOETTER, BJORN | § | |
| THELANDER, ANDERS WESTER, NORMAN | § | |
| MCCOWAN, DR. OTTO HAPPEL and ALDER | § | |
| AQUA, LTD. | § | |
|    Third-Party Defendants | § | |

---

## FOUNDER DEFENDANTS' RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE AND BRIEF IN SUPPORT

---

## TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………………...1

II.     BACKGROUND ........................................................................................................ 4

III.    PLEADING STANDARDS........................................................................................ 5

        A.      Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6) ........................................ 5

        B.      Rule 12(b)(1) Standard ........................................................................................ 8

IV. ARGUMENT AND AUTHORITIES...................................................................... 9

        A.      Plaintiff's Allegations of Misappropriation, Misrepresentation, and Omission
                Supporting All Founder Claims Fail to Meet the Rule 9(b) Particularity Standard.
                (Rule 12(b)(6)) ................................................................................................. 10

                1.      VBF Engages in Impermissible Group Pleading against Founders.......... 11

                2.      VBF Fails to Identify When or Where Founders' Purported
                        Misrepresentations or Omissions Took Place........................................... 12

                3.      VBF Does Not Adequately Allege Who Heard or Received Founders'
                        Purported Misrepresentations. ................................................................ 13

                4.      VBF Fails to Allege Any Reliance on Founders' Purported
                        Misrepresentations ................................................................................. 14

        B.      Plaintiff Cannot Adequately Plead the Elements of a Civil RICO Claim. (Rule
                12(b)(6). ......................................................................................................... 17

                1.      Plaintiff fails to allege any predicate acts of mail or wire fraud with the
                        requisite specificity. ............................................................................... 18

                2.      Plaintiff fails to adequately allege a pattern of activity. ......................... 20

                3.      Plaintiff fails to adequately plead the existence of a RICO Enterprise..... 22

V. VBF Fails to Adequately Plead Its Standing to Pursue Losses from Misrepresentations Made to
Unknown Third Parties. (Rule 12(b)(1)) ....................................................... 25

VI. VBF Fails to Adequately Plead Its Assertion that Iowa Substantive Law Applies to this Case.
.................................................................................................................... 27

VII. CONCLUSION ...................................................................................... 30

# TABLE OF AUTHORITY

**Cases**                                                                    Page(s)

*Abraham v. Singh,*
     480 F.3d 351 (5th Cir. 2007) ...................................................................................... 22

*Acosta v. Insignia Energy Grp., Inc.,*
     2014 WL 5295320 (N.D. Tex. Oct. 16, 2014) .......................................................... 22

*Atkinson v. Anadarko Bank and Trust Co.,*
     808 F.2d 438 (5th Cir.) .............................................................................................. 23

*Audler v. CBC Innovis Inc.,*
     519 F.3d 239 (5th Cir. 2008) ................................................................................. 8, 26

*Baker v. Putnal,*
     75 F.3d 190 (5th Cir. 1996) ...................................................................................... 29

*Basic Inc. v. Levinson,*
     485 U.S. 224 (1988) .................................................................................................. 15

*Bell Atlantic Corp. v. Twombly,*
     550 U.S. 544 (2007) ............................................................................................. 5, 16

*Bluevine Capital, Inc. v. UEB Builders, Inc.,* 3:17-CV-3265-L,
     2019 WL 142350 (N.D. Tex. Jan. 9, 2019) ................................................................ 5

*Borsellino v. Goldman Sachs, Inc.,*
     477 F.3d 502 (7th Cir. 2007) ...................................................................................... 7

*Boyle v. United States,*
     556 U.S. 938 (2009) ............................................................................................ 23, 24

*Carpenter v. United States,*
     484 U.S. 19 (1987) .................................................................................................... 18

*Chau v. Aviva Life and Annuity Co.,*
     2011 WL 1990446 (N.D. Tex. May. 20, 2011) ........................................................... 7

*Clapper v. Am. Realty Inv'rs, Inc.,*
     2016 WL 302313, n. 14 (N.D. Tex. Jan. 25, 2016) ................................................... 21

*Collins v. Morgan Stanley Dean Witter,*
     224 F.3d 496 (5th Cir. 2000) ..................................................................................... 29

*Crowe v. Henry,*
    43 F.3d 198 (5th Cir. 1995)................................................................................. 23

*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.,*
    814 F. Supp. 2d 698 (N.D. Tex. 2011).................................................................. 28

*Delta Truck & Tractor, Inc. v. J.I. Case,*
    855 F.2d 241 (5th Cir. 1988)................................................................................ 23

*DeSantis v. Wackenhut Corp.,*
    793 S.W.2d 670 (Tex. 1990).................................................................................. 29

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F.2d 1242 (2nd Cir. 1987)............................................................................. 18

*Enigma Holdings, Inc. v. Gemplus Int'l, S.A.,*
    2006 WL 2859369 (N.D. Tex. Oct. 6, 2006) ...................................................... 28

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    131 S. Ct. 2179 (2011) ......................................................................................... 15

*Feinman v. Dean Witter Reynolds, Inc.,*
    84 F. 3d 539 (2d Cir. 1996).................................................................................. 15

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004).................................................................................. 21

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,*
    565 F.3d 200 (5th Cir. 2009)................................................................................... 7

*Flood v. Makowski,*
    2004 WL 1908221 (M.D. Pa. Aug. 24, 2004)...................................................... 24

*FMC Int'l A.G. v. ABB Lummus Glob., Inc.,*
    2006 WL 213948 (S.D. Tex. Jan. 25, 2006) ....................................................... 18

*Elliot v. Foufas,*
    867 F.2d 877, 881 (5th Cir. 1989)........................................................................ 23

*Gentry v. Resolution Trust Co.,*
    937 F.2d 889 (3rd Cir. 1991)................................................................................ 17

*Ginsburg v. ICC Holdings, LLC,*
    2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) .................................................... 22

*Goldstein v. MCI Worldcom*,
340 F.3d 238 (5th Cir. 2003) ................................................................. 7

*Guidry v. American Pub. Life Ins. Co.*,
512 F.3d 177 (5th Cir. 2007) ................................................................. 5

*H.J., Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ............................................................................ 20

*Halaris v. Viacom, Inc.*, 3:06-CV-1646-N,
2007 WL 8158446 (N.D. Tex. Sep. 21, 2007) ...................................... 6

*Havard v. Collins*,
2013 WL 12363628 (N.D. Tex. Aug. 21, 2013) ....................... 19, 21, 23

*Hawkins v. Hutchison*,
2007 WL 9758161 (N.D. Tex. May 10, 2007) ..................................... 19

*Hoffman v. L&M Arts*,
2013 WL 12284483 (N.D. Tex. Sep. 5, 2013) ..................................... 29

*In re Alamosa Holdings, Inc.*,
382 F. Supp. 2d 832 (N.D. Tex. 2004) ................................................. 17

*In re Burzynski*,
989 F.2d 733 (5th Cir.1993) ................................................................. 18

*In re Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ............................................................... 29

*In re DePuy Orthopaedics, Inc.*,
2016 WL 6271465 (N.D. Tex. Jan. 5, 2016) .......................................... 6

*Jackson v. BellSouth Telecommunications*,
372 F.3d 1250 (11th Cir. 2004) ........................................................... 22

*Jackson v. W. Telmktg. Corp. Outbound*,
245 F.3d 518, 521 (5th Cir. 2001) ....................................................... 30

*JPA, Inc. v. USF Processors Trading Corp, Inc.*, 3:05-CV-0433-P,
2005 WL 8158446 (N.D. Tex. July 15, 2005) ....................................... 6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ........................... 29

*Kucel v. Walter E Heller & Co.*,
  813 F.2d 67 (5th Cir. 1987)..........................................................................28

*Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*,
  2017 WL 9934885 (N.D. Tex. Nov. 27, 2017) ...........................................6

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009)......................................................................25

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................8, 25

*Magruder v, Halliburton Co.*, No. 3:05-CV-1156-M,
  2009 U.S. Dist. LEXIS 27561, at * 37 (N.D. Tex. Mar. 31, 2009)............25

*Malvino v. Delluniversita*,
  840 F.3d 223 (5th Cir. 2016)......................................................................21

*Maxus Exploration Co. v. Moran Bros., Inc.*,
  817 S.W.2d 50 (Tex. 1991) ........................................................................29

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994).......................................................................10

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2nd Cir. 1993)......................................................................18

*Montesano v. Seafirst Commercial Corp.*,
  818 F.2d 423 (5th Cir. 1987)......................................................................17

*Moore v. Town N. Auto, Inc.*,
  2014 WL 3396100 (N.D. Tex. July 11, 2014) ...........................................20

*Nathenson v. Zonagen, Inc.*,
  267 F.3d 400 (5th Cir. 2001).........................................................................7

*Nat'l Org. for Women, Inc. v. Scheidler*,
  510 U.S. 249 (1994) ...................................................................................24

*Northwest Bank and Trust Co. v. First Illinois Nat'l Bank*,
  354 F.3d 721 (8th Cir. 2003)........................................................................6

*Null v. Easley*,
  2009 WL 3853765 (N.D. Tex. Nov. 18, 2009) ..........................................22

*Oblio Telecom, Inc. v. Patel*,
   2009 WL 1650481 (N.D. Tex. June 10, 2009).................................................... 23

*Paul v. Aviva Life & Annuity Co.*,
   2010 WL 5105925 (N.D. Tex. Dec. 14, 2010).................................................... 19

*Quilling v. Stark*,
   2006 WL 1683442 (N.D. Tex 2006) ..................................................................... 6

*Raines v. Byrd*,
   521 U.S. 811, (1997) ........................................................................................... 9

*Reliable Consultants, Inc. v. Earle*,
   517 F.3d 738 (5th Cir. 2008)................................................................................ 5

*Reneker v. Offill*,
   2009 WL 804134 (N.D. Tex. Mar. 26, 2009) .................................................... 26

*Rios v. City of Del Rio, Texas*,
   444 F.3d 417 (5th Cir.2006)............................................................................... 30

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002).............................................................................. 26

*Sanchez v. Liggett & Myers, Inc.*,
   187 F.3d 486 (5th Cir. 1999).............................................................................. 25

*Scottsdale Ins. Co. v. Knox Park Constr., Inc.*,
   488 F.3d 680 (5th Cir. 2007).......................................................................... 8, 26

*Sharif v. Wellness Int'l Network, Ltd.*,
   2007 WL 9711726 (N.D. Tex. May 9, 2007)................................................. 18, 23

*Smith v. Ayres*,
   845 F.2d 1360 (5th Cir. 1988)............................................................................ 18

*Smith v. HSBC Bank*,
   2015 WL 12911463 (N.D. Tex. Aug. 6, 2015) .................................................... 7

*Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004)............................................................................ 7, 8

*Spivey v. Robertson*,
   197 F.3d 772 (5th Cir. 1999).............................................................................. 29

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) ................................................................. 21

*Stanissis v. Dyncorp Int'l LLC*,
2015 WL 1931417 (N.D. Tex. Apr. 29, 2015) ........................................ 20

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
552 U.S. 148 (2008) ............................................................................. 15

*Tel–phonic Services, Inc. v. TBS Int'l, Inc.*,
975 F.2d 1134 (5th Cir. 1992) .............................................................. 22

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
2004 WL 3170789 (N.D. Tex. Nov. 15, 2004) ......................................... 6

*TransFirst Holdings, Inc. v. Phillips*,
2007 WL 1468553 (N.D. Tex. May 18, 2007) ........................................ 18

*Unimobil 84 Inc. v. Spurney*,
797 F.2d 214 (5th Cir. 1986) ............................................................ 7, 11

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
125 F.3d 899 (5th Cir. 1997) ................................................................ 13

*United States v. Bustamante*,
45 F.3d 933 (5th Cir. 1995) .................................................................. 22

*United States v. Phillips*,
664 F.2d 971 (5th Cir. 1981) ................................................................ 22

*W.R. Grace & Co. v. Cont'l Cas. Co.*,
896 F.2d 865 (5th Cir. 1990) ................................................................ 28

*Walker v. Allianz Life Ins. Co. of N. Am.*,
2009 WL 1883418 (N.D. Tex. June 30, 2009) ....................................... 21

*Whelan v. Winchester Prod. Co.*,
319 F.3d 225 (5th Cir. 2003) ........................................................... 23, 24

*Williams v. WMX Techs., Inc.*,
112 F.3d 175, 177 (5th Cir. 1997) ..................................................... 7, 18

*Wright v. E-Systems LLC*,
2014 WL 11514932 (N.D. Tex. Jan. 8, 2014) .......................................... 6

*Zuckerman v. Foxmeyer Health Corp.*,
4 F.Supp.2d 618 (N.D.Tex.1998) ............................................................................................ 8, 11

## Statutes

18 U.S.C. § 1961(3) ....................................................................................................................... 17

18 U.S.C. § 1961(4) ....................................................................................................................... 22

18 U.S.C. § 1962(c) .................................................................................................................. 22, 24

18 U.S.C. § 1962(d) ....................................................................................................................... 22

22 U.S.C. § 2201 ........................................................................................................................... 10

Tex. Civ. Prac. & Rem. Code § 17.042(2)................................................................................... 28

## Rules

FRCP 8.............................................................................................................................. 7, 10, 30

FRCP 9(b) .................................................................................................................................Passim

FRCP 12(b)(1) .............................................................................................................. 1, 8, 25, 27

FRCP 12(b)(6) .......................................................................................................... 1, 5, 10, 17, 28, 29

## Other Authorities

H.R. Conf. Rep. No. 104-369 ........................................................................................................ 8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VeroBlue Farms USA Inc., | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| Leslie A. Wulf, Bruce A. Hall, James | § | |
| rea, John rea, and Keith Driver, | § | |
|     Defendants/Founders | § | Civil Action No. 3:19-cv-00764-L |
| | § | |
| v. | § | |
| | § | |
| Eva Ebstein, Jens Haarkoetter, Bjorn | § | |
| Thelander, Anders Wester, Norman | § | |
| McCowan, Dr. Otto Happel and Alder | § | |
| Aqua, Ltd. | § | |
|     Third-Party Defendants | § | |

**FOUNDER DEFENDANTS' RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE
AND BRIEF IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1) and 12(b)(6), Defendants

Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), John E. Rea ("T. Rea"), and James Rea ("J.

Rea") (collectively "Founders"), hereby move to dismiss certain claims pertaining to

Founders presented in Plaintiff's Second Amended Complaint ("SAC" or "Complaint"), with

prejudice, for the reasons set forth below.

## I.       INTRODUCTION

Plaintiff's SAC illustrates that volume is no proxy for substance. The SAC adds over 150

paragraphs of allegations and eleven (11) claims against Founders, brings in one of Founder

Defendants' attorney (Sean Maniaci), Founders' investment advisor (Canaccord), Mr. Wulf's

daughter (Christine Gagne), and accuses a reputable Texas law firm of being complicit in Founder Defendants' alleged racketeering (Jackson Walker). VBF's damages prayer has ballooned from approximately $5 million in its Original Complaint to over $90 million now.

Upon a review, of the twenty (20) claims Plaintiff has alleged against Founders, each and every one sounds in fraud, and therefore must satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  However, despite having issued over 100 subpoenas and produced over 60,000 pages of documents, Plaintiff cannot allege the basic facts to support even one claim for fraud, let alone twenty.   Rather, the SAC relies on conclusory assertions and resorts to impermissible group pleading against all five "Founders" as having prepared PowerPoint presentations and made other omissions or misrepresentations, without ever alleging who (if anyone) used the presentations; who (if anyone) saw or heard the presentations; and what actions (if any) these unidentified persons took based upon such presentations.[1] But Plaintiff's prohibited pleading tactics only highlight the SAC's flaws: VBF does not, and cannot allege, with any modicum of particularity even one specific instance of misconduct by any of the individual Founders that resulted in injury to VBF.

The SAC suffers a separate, and perhaps more critical flaw – VBF's allegations call into question whether VBF is even the appropriate plaintiff in this lawsuit. The $90,000,000 damage figure is peppered thought the SAC, but upon review, Plaintiff does not allege particularized facts that described who was damaged in this staggering amount. Rather, the "victims" of Founders' collective purported fraud are vaguely identified as:

---

[1] For ease of reference, this Motion refers to Defendants Leslie A. Wulf, Bruce A. Hall, John E. Rea, and James Rea as the "Founders." For purposes of evaluating the sufficiency of the Complaint, however, the allegations as to each individual must be separately considered.

    a.   "Potentially interested third parties" – referenced 23 times[2];

    b.   "Disinterested board members" – referenced 28 times;

    c.   "Disinterested VBF directors" – referenced 56 times;

    d.   "Potential and actual investors" – referenced 12 times;

    e.   "Potentially interested shareholders" – referenced 4 times; and

    f.   "Others" – referenced 30 times.

Even if these "investors," "lenders," "directors," and "others" were identified, VBF has alleged no basis by which it has standing recover damages for them.  Plaintiff's entire SAC is a prime example of what Congress was concerned with when enacting the 1995 PSLRA:

> Naming a party in a civil suit for fraud is a serious matter. ***Unwarranted fraud claims can lead to serious injury to reputation for which our legal system effectively offers no redress.*** For this reason, among others, Rule 9(b) of the Federal Rules of Civil Procedure requires that plaintiffs plead allegations of fraud with "particularity"

> H.R. Conf. Rep. No. 104-369 at 41 (1995) (emphasis supplied).

Although this is not a securities fraud action, Congress' concern remains warranted here. Plaintiff's smear campaign, disguised as a lawsuit, has been pending for over 15 months; over 90,000 pages of documents have been produced, and over 100 third parties have been subpoenaed for documents or depositions.  In order to continue this crusade against Founders, VBF is required to comply with Rule 9(b)'s heightened pleading requirement for allegations sounding in fraud and identify, the who, what, when, where, and how of the alleged fraudulent acts and omissions, and more importantly, detail exactly in what way VBF suffered injury and has standing to seek redress

---

[2] Attached hereto as **Exhibits B and C** are charts summarizing Plaintiff's fraud allegations. The "to whom" column indicates who purportedly heard or received each alleged misrepresentation.  These categorical references "to whom" are indicated in bold.

for any wrongdoing. Plaintiff has resoundingly failed to do so in its three (3) attempts; and therefore, this Court must dismiss the SAC with prejudice.

## II.     BACKGROUND

In late 2014, Founders formed VeroBlue Farms, USA, Inc. ("VBF"), and were among its original shareholders and officers: CEO (Wulf), CFO (Hall), COO (T. Rea) and Construction Director (J. Rea). At various times between 2014 and 2016, each of the Founders served as Directors on VBF's Board as well.  In July 2016, Alder Capital International Ltd., ("Alder" which later became Alder Aqua, Ltd.), and FishDish LLC, an Iowa investor group ("FishDish"), together invested $34,000,000 in VBF through a purchase of preferred stock.  At the same time, it invested equity, Alder extended a line of credit to VBF through its affiliate, Amstar Funds ("Amstar"), and in exchange, VBF issued warrants to Alder that could be exercised to obtain additional shares, via a separate agreement.[3]

Within a year of Alder's investment, in July 2017, VBF had drawn down on the Amstar loan and Alder exercised certain warrant rights, which resulted in Alder owning a controlling interest (54%) in VBF.  Within weeks of Alder's takeover of VBF, Founders were serially terminated from their positions with VBF.[4] Approximately one year after Alder's takeover of VBF, the company filed this suit against Founders and Defendant, Keith Driver.[5] By September 2018,

---

[3] A diagram of the parties to this suit and their organizational relationship is included as **Exhibit A**.

[4] Since then, Founders have discovered that several Alder representatives, including multiple appointees to VBF's Board, and new CEO, Norman McCowan participated in a scheme to oust Founders from management, falsely accuse them of a litany of misdeeds through this lawsuit, and avoid, or otherwise breach VBF's contractual obligations to the Founders. These misdeeds are the subject of Founders' Third-Party Complaint. [Dkt. No. 66, ¶¶ 25-30, 34-35,39, 47-48.]

[5] The Original Complaint was filed in the Northern District of Iowa. Upon Founders' and Driver's motions, the Iowa District Court enforced venue provisions in their separation agreements with VBF, and transferred the case to the parties' chosen venue, the Northern District of Texas. [Dkt. No. 50.] Pursuant to the same provisions in the separation agreements, VBF and Founders agreed that any dispute arising from the separation agreements "shall be governed by and construed in accordance with the internal laws of the State of Texas, regardless of the laws that might otherwise govern under applicable principles of conflicts of law thereof." Accordingly, Plaintiff's assertion that this case is governed by Iowa law (SAC, p. 7, fn. 1; p. 70, fn. 3) is incorrect, as explained further in Section IV.D below. The choice of law provisions in Founders separation agreements are attached hereto as **Exhibit F**.

VBF filed for Chapter 11 protection in the Northern District of Iowa Bankruptcy Court.   Alder provided the sole source of funding for VBF's plan of reorganization, and as of May 7, 2019, Alder is now the sole owner of all equity in VBF; all other shareholders have been wiped out. (*See In re Veroblue Farms USA, Inc*., Chapter 11 Proceeding, Case No. 18-01297, Dkt. No. 608, Bankr. N.D. Iowa, order attached hereto as **Exhibit E**, ¶¶ 1, 8, 9.)

Initially VBF's claims were limited to purported misappropriation of VBF funds and assets during the last 18 months of Founders' tenure as officers and directors.   But the most recent amendment expands VBF's claims to include Founders' efforts to solicit investors in VBF over a four-year period, and ensnares the investment professionals and attorneys who assisted in those efforts. This amendment is couched as seeking recovery for Founders' "misappropriation," but once analyzed, it is an investor fraud suit, brought not by the actual investors who supplied funds to VBF, but by the shell of VBF via its sole remaining investor, Alder.

## III.   PLEADING STANDARDS

### A.   Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6)

"To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bluevine Capital, Inc. v. UEB Builders, Inc.*, 3:17-CV-3265-L, 2019 WL 142350, at *1– 2 (N.D. Tex. Jan. 9, 2019) (Lindsay, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)).

Under Rule 9(b), a complaint must also state "with particularity" any "circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). While Plaintiff alleges twenty (20) different causes of action against Founders, Rule 9(b)'s heightened pleading standard applies to each and

every one.[6] It is clear Plaintiff bases each and every one of its claims against Founders on purported affirmative actions constituting fraud.  Where, as here, fraud is not (always) the declared claim, but the facts underlying the claim are inextricably intertwined with inadequate allegations of fraud, courts will dismiss a plaintiff's complaint under Rule 9(b) *See Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004) (noting that "[c]laims of **breach of fiduciary duty** are subject to Rule 9(b) when the alleged breach consists of fraudulent conduct"); *see also Halaris v. Viacom, Inc.*, 3:06-CV-1646-N, 2007 WL 8158446, at *9 (N.D. Tex. Sep. 21, 2007) (allegations of **knowing omissions** sound in fraud); *see also JPA, Inc. v. USF Processors Trading Corp, Inc.*, 3:05-CV-0433-P, 2005 WL 8158446, at *3 (N.D. Tex. July 15, 2005) (the Fifth Circuit has applied the heightened pleading requirements of Rule 9(b) when the claim for **negligent misrepresentation** "sounds in fraud."); *see also Wright v. E-Systems LLC*, NO. 3:12-CV-04715-K, 2014 WL 11514932 at *3 (N.D. Tex. Jan. 8, 2014) (**intent to deceive** sounds in fraud); *see also   In re DePuy Orthopaedics, Inc.*, MDL Dkt. No. 3:11-MD-2244-K, 2016 WL 6271465, at *6 (N.D. Tex. Jan. 5, 2016) (9(b) standard applies when the **predicate acts of a claim** sound in fraud)[7]; *Northwest Bank and Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 727 (8th Cir. 2003) (when a complaint alleges actual fraud as a basis for a voidable transfer under the **Iowa Voidable Transfer Act,** the heightened pleading requirements of Rule 9(b) apply); *Quilling v. Stark*, 2006 WL 1683442, at *5 (N.D. Tex 2006) (Although the Fifth Circuit has not spoken directly on the subject, most courts hold that Rule 9(b) applies to **fraudulent transfer** actions); *Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*,

---

[6] A summary detailing Plaintiff's specific averments to Founders' alleged actual fraudulent conduct is attached hereto as **Exhibit B**.
[7] VBF's equitable claims for accounting (Count XII), declaratory judgment (Counts XIII, XV, XVIII), and rescission (Counts XIV, XVI, XVII) are all also based on Founders' purported fraud. (SAC, ¶¶ 302, 304, 307, 310, 312, 315, 324, 326, 329, 332, 33, 339, 341, 342, 351, 354.)

No. 4:17-cv-00225-O, 2017 WL 9934885, at *5 (N.D. Tex. Nov. 27, 2017) (when claim for **aiding and abetting** is premised on a claim for fraud, a plaintiff must satisfy the requirements for Rule 9(b)); *Chau v. Aviva Life and Annuity Co.*, No. 3:09–CV–2305–B., 2011 WL 1990446, at *8 (N.D. Tex. May. 20, 2011) (submitting **unjust enrichment** claim to Rule 9(b) when grounded in fraud); *see also Smith v. HSBC Bank,* No. 3:15-cv-00094-P, 2015 WL 12911463 at *4 (N.D. Tex. Aug. 6, 2015) (where the alleged **conspiracy** sounds in fraud, the complaint must satisfy the heightened pleading standards in Rule 9); *see also Borsellino v. Goldman Sachs, Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (noting Rule 9(b) applies to **"averments" of fraud** not just claims; thus, allegations that "sound in fraud" trigger Rule 9(b)).

The Fifth Circuit demands strict adherence to Rule 9(b). A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). Put simply, the Fifth Circuit requires a complaint to set forth specific facts showing "***the who, what, when, where, and how" of the circumstances constituting the asserted fraudulent activity***. *Goldstein v. MCI Worldcom*, 340 F.3d 238, 245 (5th Cir. 2003) (emphasis supplied); *see also Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (noting Rule 9(b) requires plaintiffs to describe a specific occasion where a particular person misrepresented the truth).

Rule 9(b) also, along with Rule 8, prohibit "group pleading," or stating allegations generally as to a group of defendants, while failing to segregate the alleged wrongdoing of one from that of another. *See Unimobil 84 Inc. v. Spurney,* 797 F.2d 214, 217 (5th Cir. 1986) (finding

that general allegations which lump all defendants together and fail to state with particularity the alleged wrongdoing of each separate defendant do not meet the requirements of Rule 9(b)); *see also Zuckerman v. Foxmeyer Health Corp.*, 4 F.Supp.2d 618, 622 (N.D.Tex.1998); *see also Southland*, 365 F.3d at 362 (discussing group pleading under Rule 9(b)). The law mandates that plaintiffs "distinguish among those they sue and enlighten ***each defendant*** as to his or her particular part" in the alleged wrongful activity. *Southland*, 365 F.3d at 365 (emphasis added). Therefore, even otherwise sufficiently specific factual allegations (e.g., showing a duty, or showing misrepresentations, or showing mismanagement) are insufficient under Rules 8 and 9(b) if alleged against "defendants" generally.

Although VBF's allegations are voluminous, against the standards of Rules 8 and 9(b) they are hollow; VBF fails to identify the who, what, where, when, and how of its extensive fraud claims against Founders.  Instead, VBF relies on improper group pleading against Founders and categorical identification of the purported victims.

### B.    Rule 12(b)(1) Standard

Under Rule 12(b)(1), a claim must be dismissed if the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 992 (1992). To satisfy the "irreducible constitutional minimum of standing," a plaintiff must allege: (1) an injury-in-fact that is "concrete and particularized" and "actual or imminent not conjectural or hypothetical"; (2) causation, meaning the injury is fairly traceable to the challenged action of the defendant, not the result of the independent action of a third party; and (3) it is likely, not merely speculative, that the alleged injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560–61. Therefore, "under the general principles of standing, 'a litigant may not merely champion the rights of another.'" *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (quoting *Scottsdale Ins. Co. v. Knox Park Constr., Inc.,* 488 F.3d 680, 684 (5th Cir. 2007)). Instead, "a

plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *See Raines v. Byrd*, 521 U.S. 811, 819, (1997). VBF appears to allege three injuries: a 1) "tremendously negative impact on VBF's return on investment or 2) the decision of disinterested directors to continue VBF's operations," and 3) compensatory damages of $ 90,000,000. (SAC, ¶¶ 113-114.)   Yet, these injuries do not inure to VBF, but to its investors and lenders.  VBF alleges no facts that establish a causal link between the multiple misrepresentations and its own loss. Nor does VBF allege what standing it has, if any, to recover for losses incurred by its investors. Without such facts, VBF's claims not only fail in their current form, but cannot be salvaged.  For all these reasons, the SAC must be dismissed.

## IV.   ARGUMENT AND AUTHORITIES

Again, in the SAC, Plaintiff directs 20 claims against Founders ("Founder Claims"):

- Breach of fiduciary duty (Count I)
- Fraudulent Concealment (II)
- Fraudulent Misrepresentations (III)
  Constructive Fraud (IV)
- Voidable/Fraudulent Transfers Act (under Iowa and Texas statutes) (Counts V-VIII)
- Civil Conspiracy (IX)
- Aiding and Abetting (X)
- Unjust Enrichment (XI)
- Equitable Account (XII)
- Declaratory Judgment (XIII, XV, XVIII)
- Rescission (XIV, XVI, XVII)
- Restitution (XIX)
- Racketeer Influenced and Corrupt Organizations Act (XVII)

In each and every one of these Founder Claims, VBF incorporates all 229 paragraphs of its factual allegations.  Thus, all VBF's factual allegations of misappropriation, misrepresentation, omission, and concealment are the basis of every one of its Founder Claims.  While not all of VBF's Founder

Claims might typically be subject to Rule 9(b) particularity requirements, in this case, they are.[8] Despite its volume, the SAC does not meet the requirements as set forth in Rule 9(b) or Rule 8 and the Founder Claims must be dismissed in their entirety.

**A.    Plaintiff's Allegations of Misappropriation, Misrepresentation, and Omission Supporting All Founder Claims Fail to Meet the Rule 9(b) Particularity Standard. (Rule 12(b)(6))**

In its claims regarding Founders' alleged misrepresentations, VBF relies almost exclusively on vague accusations and impermissible conclusions that fail the particularity requirements of 9(b). Again, VBF must allege "the essentials of the first paragraph of a newspaper story, namely the who, what, when, where, and how". *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). Additionally, Plaintiff details nine (9) "schemes" that Plaintiff alleges constitute various acts of misappropriation by Founders (SAC, ¶¶ 25-53). Plaintiff references these misappropriation "schemes" in multiple Founder Claims, namely Counts II, V, VII, and XXVII (Fraudulent Concealment, Iowa Fraudulent Transfer, Texas Fraudulent Transfer, and RICO). As such, the heightened pleading requirements of Rule 9(b) apply to Plaintiff's allegations regarding these schemes to misappropriate VBF assets (*see* Section III.A *infra*.). In **Exhibit C**, Founders attempt to chart what VBF alleges are the material misrepresentations made by Founders and the deficiencies in the "who, what, when, where and how" of each. Similarly, in **Exhibit D**, Founders attempt to chart what VBF alleges are the Founders' misappropriations and the deficiencies in the "who, what, when, where and how" of each.[9]

---

[8] As an aside, Founders would direct this Court's attention to Plaintiff's Counts 13, 14, 15, and 18. In each, Plaintiff claims that "pursuant to 22 U.S.C. § 2201, there is an actual controversy between VBF on the one hand, and the Founders on the other hand, as to such transactions, wherein VBF asserts that all such transactions should be declared null and void ab initio, whereas the Founders presumably seek to uphold these transactions." (SAC, ¶¶ 308, 322, 327, 352). Founders were unfamiliar with this section of the United States Code, but have since discovered it contemplates "Assistance to disadvantaged children in Asia." 22 U.S.C. § 2201. Founders are unaware of the authority this section bestows upon this Court to grant Plaintiff relief.

[9] In each chart (**Exhibits C and D**), Founders have listed in separate columns each 9(b) element that VBF has alleged with regard to each purported misrepresentation or misappropriation: "what, who, to whom, when, how" as well as

## 1.     VBF Engages in Impermissible Group Pleading against Founders.

As to "**who**" made the almost 60 purported misrepresentation and/or omissions, Plaintiff does not even attempt to segregate each individual Founder's action, choosing instead to have this Court believe that every so called "fraudulent" action, from mismanaging and misusing funds, to purchasing and selling property, were taken in concert by all five Founders. VBF references "Founders" or "Defendants" collectively 679 times in the SAC (SAC, *passim*). In contrast, each Founder is only identified specifically in connection with a misrepresentation or misappropriation a handful of times: Wulf – 8 allegations (SAC ¶¶ 37, 52, 108, 109, 119, 138, 142, 145); Hall – 3 allegations (SAC ¶¶ 95, 103, 105); T. Rea – 2 allegations (SAC ¶¶ 73, 148) and J. Rea 3 allegations – (SAC ¶¶ 32-34, 52, 173). (See Exhibits C, D.)

Regarding VBF's allegations that Founders "directed" or "authorized" VBF to repay loans, issue stock or make purchases, this collective reference makes it impossible to know who is being alleged to have authorized or directed such acts. (*See e.g.,* SAC ¶¶ 26, 28-30, 38, 50, 52 171, 172, 177; Exhibit D.) This generalized group pleading is especially problematic with regard to VBF's myriad allegations regarding misrepresentations purportedly made in PowerPoint presentations. Such presentations are alleged to have been "prepared" or "provided" by "Founders" collectively, with no detail as to which Founder included the false information in such presentation, or presented such material to a third-party. (See e.g., SAC, ¶¶ 96, 98, 99, 129) Courts throughout the Fifth Circuit now require plaintiffs to satisfy Rule 9(b) *as to each defendant*. *See Unimobil* 797 F.2d at 217. Plaintiffs are now obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud. *Zuckerman*, 4 F.Supp.2d at 622 (N.D.Tex.1998).

---

alleged reliance and injury. Thus for each row (misrepresentation), all columns must be adequately plead to meet 9(b). Any deficiencies under 9(b) are shaded. Thus, any misrepresentation (row) containing a shaded entry fails to meet 9(b) and cannot support Plaintiff's claims.

VBF's near exclusive use of group pleadings against Founders resoundingly fails to meet this standard.

### 2. VBF Fails to Identify When or Where Founders' Purported Misrepresentations or Omissions Took Place.

VBF also fails to identify **when** or **where** nearly all of Founders' purported misrepresentations took place.  In several instances, VBF references dates on PowerPoint presentations to give the illusion of detail, but does not allege a presentation actually took place on that date (or, notably, who such presentation was given to), or if the presentation was otherwise communicated to someone on that date. (SAC, ¶¶ 95, 96, 98, 99, 100, 103, 104, 106, 107, 110, 118, 123, 128, 139, 142, 144, 146, 153, 154, 157, 158, 159, 161, 162, 164, 165, 168, 169)

For example: VBF refers to misrepresentations in an Excel file that was created by Hall on June 25, 2014 and amended for the last time on May 31, 2016 (SAC, ¶ 95). But there is no allegation that Hall or anyone else actually sent this Excel file, or communicated its contents, on any particular date. Given that this document is alleged to have been amended multiple times over a two-year period, the date that it was allegedly shared is critical to VBF's fraud claim, and Founders' defense of same. Another example: VBF alleges that certain presentations or documents were "**ultimately shared,**" "**ultimately circulated,**" "**shared in some form** ultimately," "**likely shared**" "or **passed on**".  (SAC, ¶¶ 96, 98, 99, 110, 101, 104, 110, 118, 124, 125, 128, 131, 139, 153, 167.)  The Court should reject any proposal by Plaintiff to assume that documents were communicated on or around the time they were drafted. This is particularly true where the document was created months before the alleged enterprise even existed.  (*See, e.g.*, SAC, ¶ 18 (VBF was incorporated by Founders on September 5, 2014)).

Also concerning is that the vast majority of VBF's allegations regarding misrepresentations can only assert that they were made "on information and belief."  (SAC, ¶¶ 95, 98, 99, 101, 104,

107, 110, 118, 124, 125, 128, 131,139, 154, 166, 168). Allegations based "upon information and belief" are only adequate under Rule 9(b)'s standard when "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.* 125 F.3d 899, 903 (5th Cir. 1997). That is not the case here, where VBF has access to all of Founders' communications during their tenure as officers and directors, which is the exclusive period during which Plaintiff can plausibly allege Founders engaged in fraud towards VBF. "[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id*. Plaintiff's allegations fall woefully short of Rule 9(b) standards, and justify dismissal of VBF's Founder Claims. Moreover, VBF's lack of specificity throughout the entire SAC evidences that even with additional discovery, it cannot allege that these purported misrepresentations were ever communicated, let alone when.

**3.** **VBF Does Not Adequately Allege Who Heard or Received Founders' Purported Misrepresentations.**

Perhaps most strange, VBF does not identify **who heard or received** the purported misrepresentations. As the ostensible victim of Founders' fraud, this element should be the easiest for VBF to allege with particularity. But VBF alleges that Founders may have made misrepresentations to:

- "**potential and actual investors**," (SAC, ¶¶ 95, 96, 101, 104, 106, 110, 118, 123, 125, 126, 128, 131, 145, 155, 157)

- "**disinterested VBF directors and[/or] employees**" (SAC, ¶¶ 21, 39, 40, 55, 57, 64, 72, 82, 84, 86, 87, 94, 95, 96, 98, 99, 101, 104, 107, 110, 118, 123, 124, 125, 128, 131, 139, 144, 145, 154, 159, 160, 161, 162, 166, 167, 203, 210, 211, 233, 291, 296, 310-314, 316, 329-332, 334, 339-341, 343, 346, 359, 360, 367, 371, 372, 380, 388, 389, 396, 398, 409, )

- "**including Alder**" (SAC, ¶ 95, 101, 104, 110, 118, 126, 128, 131, 145, 167)

- "**lenders**" or "**potential lenders**" (SAC, ¶¶ 96, 106, 155, 157, 158, 159, 161, 162)

- "**potentially interested third-parties**" (SAC, ¶¶ 64, 82, 86, 94, 98, 99, 105, 107, 112, 124, 142, 154, 157, 158, 159, 161, 162, 167, 359, 360, 367, 409)

- "**Others**" (SAC, ¶ 56, 72, 83, 88, 112, 116, 117, 121, 122, 138, 143, 145, 153, 155, 157, 161, 164, 168)

- **No one identified** (SAC, ¶¶ 164, 165, 169)

These categorial references to investors, lenders, potentially interested third parties, directors, board members, employees, and others do not meet 9(b) particularly requirements. Even for those few people who are identified by name:  Bjorn Thelander, "a member of the Nelson family," members of VBF's Board, there are no other facts provided to determine what misrepresentation was made to them.[10]   (SAC, ¶¶ 127, 131, 145, 160.) There are multiple allegations where no one is alleged to have been sent or heard the purported misrepresentations. (SAC, ¶¶ 164, 165, 169.)

These comically vague allegations do not provide Founders with so much as a starting point to attempt to identify who to seek discovery from, much less inform Defendants what misrepresentations they claim Founders uttered, or what actions such individuals or entities took in response to these misrepresentations, or what damage is alleged to have occurred. Founders could continue to list questions (and red flags) raised by Plaintiff's decision to withhold the identities of these "potential" and "disinterested" parties from Founders and this Court, but additional ambiguities await.

### 4.    VBF Fails to Allege Any Reliance on Founders' Purported Misrepresentations

As Plaintiff does not identify any specific recipient of an alleged misrepresentation or omission, it follows that Plaintiff cannot allege reasonable reliance. Even if VBF had plausibly

---

[10] Some misrepresentations are purportedly made to Canaccord, a co-Defendant. (SAC, ¶¶ 106-109, 119, 138, 153, 168.)  It's difficult to imagine how misrepresentations made solely between alleged tortfeasors caused actionable damage to innocent third parties.

and specifically alleged a material misrepresentation as required under Rule 9(b) (which it has not) its fraud claims would still fail because it has failed to plead any facts on how anyone on behalf of VBF reasonably relied to on the Founder's alleged misrepresentations to their detriment.  Reliance is an "essential element" of a fraud action because "proof of reliance ensures that there is a proper 'connection between a defendant's misrepresentation and a plaintiff's injury.'" *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184-85 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148, 159 (2008); *Basic Inc. v. Levinson,* 485 U.S. 224, 243 (1988)). Reliance cannot be presumed in non-open-market transactions, even in face-to-face transactions. *Feinman v. Dean Witter Reynolds, Inc.*, 84 F. 3d 539 (2d Cir. 1996).

The term "rely" or "relied" only appears in the SAC five (5) times:

1) Upon information and belief, the July 2015 Fisheries Report **relied on data** provided by the Founders, including false data relating to the Density of the VBF Tanks, which was shared with potential and actual investors (SAC, ¶123);

2) Both VBF and the **disinterested board members relied on** what they only later realized were material misrepresentations in executing the Termination Agreements (SAC, ¶311);

3) **VBF justifiably relied** on the Founders' failure to disclose these material facts given the Founders' status as fiduciaries to VBF (SAC, ¶241)

4) **VBF justifiably and detrimentally relied** on the Founders' misrepresentations given the Founders' status as fiduciaries to VBF. (SAC, ¶248)

5) Hall, Ted Rea, and Driver intended that VBF and **its disinterested board members rely** on their material misrepresentations (SAC, ¶312);

Founders would call the Court's attention to the prime examples of (1) impermissible allegations against multiple (or all) Defendants; (2) references to nebulous groups of individuals; and (3) reliance on "information and belief" without a subsequent factual basis for such belief, contained in the five sentences above. But Founders digress.

Nowhere else in the SAC does Plaintiff describe what ***VBF,*** as an entity (or through any particular officer, agent, or representative), or via the shadowy "disinterested board members" did or refrained from doing in reliance on Founders' misdeeds. There is no allegation that anyone invested funds, spent funds, or refrained from pursuing actions based on any particular statement. In fact, VBF's SAC is devoid of a single allegation that states what actions it took or would not have taken in reliance on the Founder's alleged misrepresentations[11]. Perhaps the most vibrant example of the mind-numbing vagueness evoked by the SAC is found in Plaintiff's claim for fraudulent misrepresentation, wherein Plaintiff alleges "Founders intended to deceive VBF and to induce them to refrain from attempting to halt the Founders' misconduct by misrepresenting material facts to VBF" (SAC, ¶ 247). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Plaintiff seems to subscribe to the notion that repeating an allegation enough times will make it true. This Court should look past the conclusory allegations repeated ad nauseam by Plaintiff, and conclude that the SAC lacks the detail necessary to proceed.

In sum, Plaintiff is adamant that Founders made misrepresentations over a period of approximately four years that cost VBF in excess of $90M, and yet Plaintiff cannot point to one statement and detail who made it, who it was made to, how it was made, how VBF relied on it, and how that reliance led to $90M in damages.  Instead, Plaintiff hurls 229 paragraphs of jumbled pleadings at the Founders and incorporates each and every one of those paragraphs in each of its

---

[11] It appears that VBF may be attempting to recover for harm to entities who are not party to this suit.  For example, two exhibits that purportedly includes misrepresentations, the July 2105 Fisheries report (SAC, Ex. 12) and a June 2015 email (Exs. 16-1, 16-2), were sent to Generation Investment Management and/or Macquarie Investments. (SAC, ¶¶ 101, 105.)  Yet there is no allegation whether GIM and Macquarie are investors or lenders in VBF.  Nor are there any allegations that would support VBF's ability to recover damages for misrepresentations made to GIM or Macquarie.  Presumably, these entities and any other "investors," "lenders" and potentially interested third parties" would need to seek recovery for themselves. This is discussed further in Section IV.C, *infra.*

20 Founder Claims.  This practice of "isolating allegations and elements while leaving it to the Court to infer a connection" is known as "puzzle pleading" and is not permitted. *See In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 857 (N.D. Tex. 2004) (Cummings, J.) (noting that "it is the parties' burden to present succinct pleadings which clearly lay out the elements as required by this Circuit" and that a court "need not waste its resources attempting to construe which statements are actionable and why each is actionable"). After 15 months of litigation and discovery, including subpoenaing over 100 third parties, VBF is still unable to allege the who, what, where, when, and how of Founders' purported fraud, and establish that VBF is the victim of that fraud.  On this basis alone, the SAC must be dismissed, with prejudice, as to all Founder Claims.

### B.    Plaintiff Cannot Adequately Plead the Elements of a Civil RICO Claim. (Rule 12(b)(6).

Plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(3) (Count XXVII), in the SAC suffers similar infirmities to its fraud-based claims. It fails to adequately allege: (1) racketeering activity, i.e. predicate acts of wire or mail fraud; (2) a pattern of activity; or (3) the existence of a RICO enterprise.  Because this claim has more specialized elements, it is separately addressed.

Initially it must be noted that the purpose of the civil RICO statute was to empower "private attorneys' general" to address the harm of racketeering that may be dispersed among the public at large; it was not merely to provide compensation for individual victims. *Gentry v. Resolution Trust Co.*, 937 F.2d 889, 912 (3rd Cir. 1991). The gist of Plaintiff's RICO claim is that VBF is a RICO enterprise that was controlled by Founder Defendants as part of their "scheme to loot and defraud VBF." (SAC, ¶ 402).  To allege this type of RICO violation "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Montesano v. Seafirst Commercial*

*Corp.*, 818 F.2d 423, 424 (5th Cir. 1987). Plaintiff's RICO claim is woefully inadequate on its face, and must be dismissed.

> **1.      Plaintiff fails to allege any predicate acts of mail or wire fraud with the requisite specificity.**

All the predicate acts Plaintiff seeks to allege sound in fraud and, therefore, must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). (*See* SAC ¶ 411 (claiming all Predicate Acts constitute mail or wire fraud)); *TransFirst Holdings, Inc. v. Phillips*, 2007 WL 1468553, at *2 (N.D. Tex. May 18, 2007). RICO mail fraud requires a showing of: "(1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mails by the defendant connected with scheme [sic], and (4) actual injury to the plaintiff." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993) (citation omitted). RICO wire fraud requires a showing of essentially the same elements, except the communication must be interstate. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6 (1987); *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988).   Accordingly, any complaint must specify "how *each* act of mail or wire fraud furthered the fraudulent scheme, who caused what to be mailed or wired when, and how the mailing or wiring furthered the fraudulent scheme." *Sharif v. Wellness Int'l Network, Ltd.*, 2007 WL 9711726, at *7 (N.D. Tex. May 9, 2007) (emphasis in original); *Williams*, 112 F.3d at 177 ("Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'").[12]   As described in Section IV.A., *infra,* the SAC is completely lacking in specific allegations regarding the "who, what, when,

---

[12] As previously argued, but also with respect to RICO claims, Plaintiff's "allegations must 'inform each defendant of the nature of his alleged participation in the fraud.'" *Id.* at *7 (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987)).  In other words, the Court must reject Plaintiff's attempt to "'attribute vaguely the alleged fraudulent activity to the [Founder Defendants] collectively.'" *Sharif*, 2007 WL 9711726, at *7 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1993)); *FMC Int'l A.G. v. ABB Lummus Glob., Inc.*, 2006 WL 213948, at *4 (S.D. Tex. Jan. 25, 2006) (same).

where, how, and why" of the allegations of mail fraud and wire fraud. *Hawkins v. Hutchison*, 2007 WL 9758161, at *4 (N.D. Tex. May 10, 2007), *aff'd*, 277 F. App'x 518 (5th Cir. 2008).

*First*, Plaintiff's vague allegations that Founder Defendants were "involve[d] in other businesses while at VBF" and "distributed marketing materials, contracts, e-mail communications, and other documents containing material misrepresentations related to the business Metrics, technology, and finances of VBF that were transmitted by mail and wire in interstate commerce," without more detail as to who, when, or how such materials were transmitted is insufficient to plead wire or mail fraud. (SAC ¶ 411-12; *see Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *5 (N.D. Tex. Dec. 14, 2010) (holding that allegations in complaint failed to provide sufficient detail when allegations stated that "false and misleading [documents] were prepared and disseminated directly by [Defendant] and/or its agents using the U.S. mails or wires in interstate commerce and induced Plaintiffs and those they seek to represent to purchase [Defendant's] life insurance policies").)

*Second*, as previously discussed, when describing various Excel or PowerPoint files self-styled as "representations," Plaintiff fails to include any allegations regarding the "who, what, when, where, how, and why" these files were communicated through either interstate or intrastate mail or wires. Plaintiff tries to avoid its pleading requirements by using misleading defined terms that imply a document was communicated on a certain date.[13] However, Plaintiff fails to include any specificity regarding who transmitted those documents, much less the time or place of any such statements. *See Havard v. Collins*, No. 3:13-CV-945-N, 2013 WL 12363628, at *3 (N.D.

---

[13] A particularly egregious example is Plaintiff's labeling of an Excel file as "June 2014 Written Representations." Although Plaintiff alleges that the file was subsequently shared with investors, it provides no information as to when, where, or how the file was shared beyond stating that an individual defendant first created the document on June 25, 2014—months before VBF ever existed or any of the Founder Defendants became involved with VBF. (See SAC ¶¶ 9, 18, 95). Without such allegations, Plaintiff has not adequately alleged the June 2014 Written Representations is a predicate act of mail or wire fraud.

Tex. Aug. 21, 2013) (holding plaintiffs failed to allege predicate acts of mail fraud where plaintiffs had not "alleged the time, the place, or the person making any false representations").

Plaintiff's remaining allegations regarding the delineated predicate acts suffer from similar deficiencies. (*See* SAC ¶ 411(b)-(h)). For example, although Plaintiff makes allegations, primarily upon information and belief, that certain documents were shared with individuals other than Founder Defendants—including the May 2015 Written Representations (SAC ¶ 166-7), the July 2015 Fisheries Report (SAC ¶ 100-1), the November 2015 Written Representations (SAC ¶ 110), the January 2016 Written Representations (SAC ¶ 128), and the April 2016 Written Representations (SAC ¶ 131)—Plaintiff provides no specific information as to when those documents were shared, by whom they were shared, or who received copies of the documents. Without this critical information, Plaintiff cannot adequately allege predicate acts of wire or mail fraud occurred and, therefore, its RICO claim fails.  *See, e.g.*, *Stanissis v. Dyncorp Int'l LLC*, 2015 WL 1931417, at *6 (N.D. Tex. Apr. 29, 2015) (rejecting allegations of mail and wire fraud that did not specify when, where, or by whom the representations were made); *Moore v. Town N. Auto, Inc.*, 2014 WL 3396100, at *4 (N.D. Tex. July 11, 2014) (holding that plaintiff did not meet Rule 9(b) requirements where he alleged misrepresentations, but did not specify other particulars required by Rule 9(b), such as which defendants made representations, when representations were made, and in what context they were made).

### 2.     Plaintiff fails to adequately allege a pattern of activity.

Plaintiff fails to establish a pattern of activity because it does not plead predicate acts that "amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Continuity can take one of two forms—either "closed-ended" or "open-ended." *Id.* Here, Plaintiff admits that Defendants "exercised continuous authority over the Enterprise on an ongoing basis, ***up through and including November 2017***." (SAC, ¶ 422).

Defendants, as acknowledged by Plaintiff, no longer have any modicum of control over VBF and, therefore, any alleged conduct cannot be grounds for establishing "open-ended continuity." *See e.g., Havard*, 2013 WL 12363628, at *4 (finding plaintiffs failed to adequately plead open-ended continuity where "[n]o facts in the complaint suggest that there is a plausible threat of repetition, not least because [defendant] is apparently no longer associated with" the RICO enterprise); *Walker v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 1883418, at *5 (N.D. Tex. June 30, 2009).

Plaintiff cannot establish closed-ended continuity either. Although Plaintiff alleges that Founder Defendants executed unlawful racketeering activity between September 5, 2014 and the present, the SAC only defines certain activity as wire or mail fraud sufficient to constitute a "predicate act" of racketeering activity.  (*See* SAC ¶ 411.) However, any predicate acts not plead with particularity cannot be used to establish continuity.  *See Clapper v. Am. Realty Inv'rs, Inc.*, 2016 WL 302313, at *9, n. 14 (N.D. Tex. Jan. 25, 2016) (refusing to consider predicate acts for purposes of continuity analysis where plaintiff failed to describe what defendant committed the predicate act or when such act occurred); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184–85 (2d Cir. 2008); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180–81 (2d Cir. 2004). As discussed in Section IV.B.1 above, none of the alleged predicate acts were plead with sufficient particularity and should, therefore, be disregarded.

Nevertheless, should the Court find that certain of the predicate acts described were plead with sufficient particularity given their defined terms—which the Court should not—the alleged misrepresentations occurred at best between May 2015 and April 2016, a period of only eleven months.[14] Close-ended continuity requires "predicate acts that extend over a 'substantial period of

---

[14] Even if the Court considers some of the alleged predicate acts in its analysis, any use of a date in June 2014 for the June 2014 Written Representations must be disregarded because VBF did not exist until September 5, 2014, and the aquaculture business that is the subject of the SAC was not sold to VBF until December 31, 2014. (*See* SAC ¶ 18.)

time.'" *Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016). Acts occurring over a period

of less than one year cannot constitute closed-ended continuity. *See e.g., Tel–phonic Services, Inc.*

*v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992); *contrast United States v. Bustamante*, 45

F.3d 933, 941–42 (5th Cir. 1995) (racketeering acts extending nearly four years suffice); *see also*

*Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1266-67 (11th Cir. 2004) (citing

multiple circuit court cases holding that closed-end continuity is not established where predicate

acts occur over a period of less than one year). Thus, even assuming that Plaintiff adequately

pleads the written representations were predicate acts, Plaintiff fails to plead a pattern of such acts.

Additionally, the alleged predicate acts were all part of a single, allegedly lawful

endeavor—the collection of funds necessary to run VBF—and therefore cannot "amount to or pose

a threat of continued criminal activity." *See Ginsburg v. ICC Holdings, LLC*, 2017 WL 5467688,

at *22 (N.D. Tex. Nov. 13, 2017) (rejecting RICO claim where the alleged acts of fraud were all

part of a single endeavor); *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (same); *Acosta v.*

*Insignia Energy Grp., Inc.*, 2014 WL 5295320, at *5 (N.D. Tex. Oct. 16, 2014) (same).

**3.    Plaintiff fails to adequately plead the existence of a RICO Enterprise.**

In order to plead a cognizable RICO claim, Plaintiff must also plead the existence of an

enterprise, which may be a legal entity or a non-legal entity that is a "group of individuals

associated in fact." 18 U.S.C. § 1962(c), (d); § 1961(4); *United States v. Phillips*, 664 F.2d 971,

1013 (5th Cir. 1981). Here, Plaintiff alleges two separate "enterprises:" (1) Founder Defendants,

and (2) VBF. (*See* SAC ¶¶ 402-3.) Plaintiff's RICO claim fails under both theories.

*First*, Plaintiff's conclusory allegations of personal relationships between Founder

Defendants is insufficient to establish an enterprise based on an association in fact theory.[15] (SAC

---

[15] The SAC must plead facts, not mere conclusions, to state a plausible claim. *See e.g., Null v. Easley*, 2009 WL
3853765, at *5 (N.D. Tex. Nov. 18, 2009) (dismissing where complaint lacked facts showing, *inter alia*, existence of

¶ 403.)  An association in fact enterprise may consist of a collection of individuals not formally bound together as a legal entity so long as there is "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938 (2009). Accordingly, to establish an association in fact enterprise a plaintiff must show evidence of "an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440–41 (5th Cir.) (per curiam), *cert. denied*, 483 U.S. 1032 (1987); *Delta Truck & Tractor, Inc. v. J.I. Case*, 855 F.2d 241, 243 (5th Cir. 1988); *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

Importantly, the fact that "officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003); *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *Sharif*, 2007 WL 9711726, at *8; *Atkinson*, 808 F.2d at 441.  Here, Plaintiff alleges Defendants "have been associated in fact outside of VBF, and have functioned outside of VBF in an organized fashion, having a joint purpose of acting together for each other's benefit in VBF and other businesses… and the [Defendants] have therefore had business and, upon information and belief, personal relationships with each other outside of VBF over an extended period of time." (SAC ¶ 403.)  This is the only portion of the SAC addressing an association in fact; thus, it appears Plaintiff contends that Founder Defendants' "personal relationships" "outside of VBF", generally, constitute an "enterprise" under RICO.

This loose interpretation is not support by any case precedent, and in fact, would subject virtually any start up business enterprise among friends or colleagues to RICO liability.  *See*

decision making structure); *Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) (same); *Havard*, 2013 WL 12363628, at *5.

*Whelan*, 319 F.3d at 230 ("Company officers and employees not associated other than through the activities of the company do not constitute an enterprise for purposes of § 1962(c)."). Even if the Court were inclined to infer that Defendants had a common purpose in forming an enterprise, the SAC does not allege that they maintained the necessary relationships among themselves to give their purported association any structure. One need only note how far removed the allegations in this case are from those in *Boyle* to see how the evidence of "pattern" in that case could suffice (dozens of coordinated bank robberies involving a core, though informally organized group of participants sharing proceeds over the course of a decade) where the allegations here do not.

*Second*, Plaintiff's allegations that VBF was the victim corporation drained of its assets by Founder Defendants preclude VBF from being the enterprise through which the unlawful pattern of activity is committed. *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994) (the "enterprise" in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity); *see e.g.*, *Flood v. Makowski*, 2004 WL 1908221, at *7 (M.D. Pa. Aug. 24, 2004) ("in instances in which the racketeering activity is committed by people within the company and the victim of the racketeering activity is the corporation, the enterprise is not the corporation itself; an association-in-fact of the board members or corporate officers constitutes the enterprise").

Plaintiff's cursory and conclusory statements are insufficient to establish that either VBF or Founder Defendants were an enterprise for purposes of its RICO claim.

### V.   VBF FAILS TO ADEQUATELY PLEAD ITS STANDING TO PURSUE LOSSES FROM MISREPRESENTATIONS MADE TO UNKNOWN THIRD PARTIES. (RULE 12(B)(1))

The SAC's pleading deficiencies raise an even more basic problem: Plaintiff does not allege that **VBF** suffered damages and therefore Plaintiff has no standing to pursue these claims. VBF has the "burden of proving that the defendant's fraudulent act or omission caused the loss for which the plaintiff seeks to recover." *See Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228,255 (5th Cir. 2009); *see also Sanchez v. Liggett & Myers, Inc.,* 187 F.3d 486, 491 (5th Cir. 1999) (plaintiff must adequately plead causation to prevail on a claim for common law fraud). In this case, VBF has not properly alleged any injury-in-fact. An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized as to the claimant and (b) actual or imminent not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. To meet this burden, VBF must plead facts sufficient to "provide [ ] defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation." *Magruder v, Halliburton Co.,* No. 3:05-CV-1156-M, 2009 U.S. Dist. LEXIS 27561, at * 37 (N.D. Tex. Mar. 31, 2009) (the party claiming fraud "has the burden of proving the causal connection between the material misrepresentation or omission and the economic loss."). Since the SAC lacks any such allegations of injury in fact to VBF (as opposed to its "potential" or actual investors, lenders, interested third parties), pursuant to Fed. R. Civ. P. 12(b)(1), the SAC must be dismissed with prejudice.

VBF alleges three injuries: a 1) "tremendously negative impact on VBF's return on investment or 2) the decision of disinterested directors to continue VBF's operations," and 3) compensatory damages of $ 90,000,000. (SAC, ¶¶ 113-114, 342.) But VBF does not plead any facts connecting Founders' alleged misrepresentations to these injuries, i.e., showing what

investments VBF made, what action the investors, lenders, directors or "potentially interested third parties" took or refrained from taking, nor any facts that allow Founders or this Court to determine the source of its $90M damage figure.[16] VBF's reliance on allegations that some misrepresentations may have been made to *potential* investors, i.e., those who did not actually invest funds in the company, underscore the logical fallacy of VBF's Founder Claims. VBF cannot recover on behalf of those who never invested in the company, no matter how egregious the fraud may have been. "Merely asking for money does not establish injury-in-fact." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

Even assuming that third-party investors or lenders did provide monies in the form of equity or debt into VBF, which VBF has not alleged, any "negative net return" as a result of those investments is not an injury suffered by VBF, but rather by the third-party investors. As previously noted, VBF names at least two third parties, Generation Investment Management and Macquarie Investments, who may have been recipients of Founders' misrepresentations. (SAC, ¶¶ 101, 105, Exs. 12, 16-1, 16-2.)  But VBF never alleges whether either of these entities did in fact provide funds to VBF, or otherwise how VBF is in position to recover for them. ***VBF cannot "champion the rights of another*,**" whether those are investors, lenders or parties, and claim its own injury.[17] *See Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (quoting *Scottsdale Ins. Co. v. Knox Park Constr., Inc.,* 488 F.3d 680, 684 (5th Cir. 2007)(emphasis supplied)); *see also Reneker v. Offill,* No. 3:08-CV-1394-D, 2009 WL 804134, at *5-6 (N.D. Tex. Mar. 26, 2009) (holding that

---

[16] In fact, in several instances, Plaintiffs alleges affirmatively that no harm resulted from Founders' alleged bad acts: issuance of VBF stock for below market price, when that stock is now worth ($0) (SAC, ¶¶ 27-30); and Founders' purported self-dealing entity Opposing Flows Aquaculture, never engaged in any transactions (SAC, ¶ 48). (*See also* Exhibit D.) Similarly, VBF alleges that Founders issued stock in VBF Canada to their own entities, but does not allege how it (VBF USA) was harmed by that issuance. (SAC, ¶¶ 49-51.)

[17] VBF cannot seek recovery for "actual investors" either via the SAC. There is no allegation that this is a derivative action, and in fact, all investors except Alder had their interests wiped out in VBF's bankruptcy. VBF cannot simply bootstrap misrepresentations made to other investors in order to recover damages for itself that will ultimately flow to the only remaining investor: Alder.

a receiver standing in the shoes of a corporation can only sue for harm suffered by corporation distinct and separate from third party investor losses).

Even assuming all the misrepresentations alleged in the SAC were made, VBF has alleged that other parties, specifically, unnamed investors, lenders and "disinterested directors" were the parties harmed.  The SAC does not adequately set forth that VBF is the appropriate plaintiff to recovery for these parties.[18]  Pursuant to Rule 12(b)(1), the SAC must be dismissed as to its claims against Founders.

## VI.    VBF FAILS TO ADEQUATELY PLEAD ITS ASSERTION THAT IOWA SUBSTANTIVE LAW APPLIES TO THIS CASE

As a preliminary matter, the SAC alleges the following:

1.  VBF is a citizen of Nevada and Iowa (SAC, ¶ 4);

2.  all Founders, other than Hall are Canadian citizens (SAC, ¶ 5);

3.  Hall is a United States citizen domiciled in Texas (SAC, ¶ 9);

4.  Wulf, J. Rea, and T. Rea have permanent resident alien status in the United States and are domiciled in Texas (SAC, ¶¶ 7, 8, 10);

5.  Canaccord is a Delaware LLC and has offices in Canada, Europe, the Middle East, the Far East, and Australia (SAC, ¶ 11);

6.  Gagne is a Canadian citizen that until recently lived with her husband in West Virginia (SAC, ¶ 12);

7.  Maniaci is a citizen of Canada (SAC, ¶ 13);

8.  This Court has subject matter jurisdiction over this case pursuant to diversity of citizenship (SAC, ¶ 14);

9.  Venue is proper in this Court because the United States District Court for the Northern District of Iowa transferred this case to this Court (SAC, ¶ 16); and

---

[18] Following this argument, VBF lodges paragraphs of allegations implicating Founders in "meddling" in its Chapter 11 proceeding (SAC, ¶¶ 176-188) and asserting privilege over documents in the possession of Jackson Walker (¶¶ 200-209) but never ties these misdeeds to any kind of loss or injury. Without any such causal connection, these allegations can be considered nothing other than gratuitous and scurrilous, and they should be stricken accordingly. (*See* Exhibit D)

10. This Court has personal jurisdiction over Defendants pursuant to § 17.042(2) of the Texas Civil Practice and Remedies Code, as Defendants committed torts in part in Texas and Founders are domiciled in Texas (SAC, ¶ 17)

To summarize Plaintiff's allegations, (1) the parties in this case hail from potentially five different states and at least two different countries, (2) venue is proper in this Court because an Iowa federal court ordered the case transferred to the Northern District of Texas, and (3) this Court has jurisdiction because Founders' alleged bad acts took place in Texas, and Founders reside in Texas. Nevertheless, Plaintiff asserts in conclusory fashion that Iowa substantive law applies, and does so not in the body of the SAC, but in two footnotes (SAC, p. 7, fn. 1; p. 70, fn. 3). To say the SAC does not allege sufficient facts to determine which state's law should apply to Plaintiff's claims would be a dramatic understatement. All of Plaintiff's claims should be dismissed on this basis alone. *See Enigma Holdings, Inc. v. Gemplus Int'l, S.A.*, No. 3:05-CV-1168-B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006) (holding that choice of law is a threshold inquiry that must be made before the court can adequately address the sufficiency of the pleadings and dismissing fraud claims for failure to plead facts sufficient to determine choice of law).

In the alternative to outright dismissal of the SAC for its failure to properly address proper choice of law, the issue of whether Texas or Iowa law applies in this case is a pure question of law that is properly subject to Rule 12(b)(6). *Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F. Supp. 2d 698, 707 (N.D. Tex. 2011); *see also Kucel v. Walter E Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (noting that a choice-of-law issue was properly raised in a motion to dismiss and an amended motion to dismiss). As such, a choice-of-law analysis is plainly appropriate at the Rule 12(b)(6) phase. *Cypress/Spanish Ft. I, L.P.* 814 F. Supp. 2d at 707-708. A court sitting in diversity need not conduct a choice-of-law analysis when there is no conflict of law. *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990).

However, if a conflict does exist, a federal district court sitting in diversity must apply its forum state's conflict of laws rules to perform a conflict of laws analysis. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As Plaintiff pleads for recovery under both Texas and Iowa fraudulent transfer statutes, and invokes Iowa law as it relates to Plaintiff's arguments regarding the discovery rule, fraudulent concealment, and equitable tolling principles of applicable limitations period, Founders will assume a conflict of law is present here. Plaintiff reserves the right to address Plaintiff's contentions regarding the discovery rule, fraudulent concealment, and applicable limitations period in a separate motion, if necessary.[19]

In Texas, choice of law is initially determined by any contractual agreement between the parties as to which law shall govern. *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). Here, VBF and Founders contractually stipulated that the laws of the state of Texas would govern any dispute arising from Founders' employment at, or termination from, VBF. *See* **Exhibit F**.[20] Where the parties have contractually stipulated what state's law should apply, "judicial respect for their choice promotes the policy of protecting their expectations." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).

While Plaintiff advises this Court that the United States District Court for the Northern District of Iowa transferred this case to this Court, Plaintiff fails to explain why. The Iowa held in its order of transfer that VBF's theory that the termination agreements were drafted solely for

---

[19] *See Hoffman v. L&M Arts*, No. 3:10-CV-0953-D, 2013 WL 12284483 at *1 (N.D. Tex. Sep. 5, 2013) Parties are not required to present choice of law issues by pretrial motion. Although substantive motions that raise choice of law issues can be filed under such rules as Fed. R. Civ. P. 12(b)(6), such motions are made at the option of the movant.

[20] It is well-established that a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). Pleadings in the 12(b)(6) context include more than allegations in the complaint, however. Pleadings may include attachments to the complaint. *In re Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Moreover, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are ***referred to in the plaintiff's complaint and are central to her claim***." *Collins*, 224 F.3d at 499 (emphasis supplied).

Founders' own personal benefit was "diminished by the fact that the forum selection clause remained in Wulf's Termination Agreement, which was signed by VeroBlue's current President on behalf of VeroBlue" [Dkt. No. 50]. The choice-of-law provisions in the termination agreements are located in the same paragraphs as the forum selection clauses. Plaintiff has not plead sufficient facts to establish that the choice-of-law provisions (specifically), were the result of fraud, and therefore should remain enforceable.

Finally, even if this Court finds that the choice-of-law provisions included in the Founders' termination agreements were procured through fraud, and are therefore voidable, Texas law would still apply. Plaintiff admits that Founders are all domiciled in Texas and committed torts in Texas. (SAC, ¶ 17). Plaintiffs worked out of VBF's office located in Plano, Texas, and the conduct Plaintiff alleges Founders took in the SAC to the detriment of VBF would have almost exclusively taken place at or from the Texas office. As Founders operated from a Texas business address, and the vast majority of the alleged actions Plaintiff contends give rise to this suit took place in Texas, it is likely that Texas law would apply. *Jackson v. W. Telmktg. Corp. Outbound*, 245 F.3d 518, 521 (5th Cir. 2001).

## VII.   CONCLUSION

"Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief...." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir.2006), *cert. denied*, 549 U.S. 825, 127 S. Ct. 181, 166 L.Ed.2d 43 (2006). If after reading the SAC the Court cannot determine with certainty which individual Founder did/said what, when and where an action/statement was made, and how each such statement is materially false, the Court must dismiss the SAC. All of Plaintiff's Founder Claims fall short of the heightened Rule 9(b) standard and Rule 8's prohibition of group pleadings. These pleading deficiencies reveal the more formidable flaw in the SAC: that VBF is not the party who was injured by Founders' purported

misdeeds.  VBF cannot recover for frauds that may have been committed against its current sole investor, nor for its former investors, lenders, no matter how grave.  For these reasons, amendment cannot remedy the SAC's deficiency and VBF should not be extended another opportunity to amend.  Founders respectfully request the Founder Claims in VBF's Second Amended Complaint be dismissed in their entirety, with prejudice, and for such other and further relief to which Founders may show themselves justly entitled to receive.


Dated: October 29, 2019                Respectfully submitted,

                                       By: */s/ Kimberly D. Annello*
                                               Kimberly D. Annello
                                               Texas Bar No. 24093704
                                               Eli D. Pierce
                                               Texas Bar No. 24092972

                                               Underwood Perkins, P.C.
                                               5420 LBJ Freeway, Suite 1900
                                               Dallas, Texas 75240
                                               Phone: 972.661.5114
                                               Email: kannello@uplawtx.com
                                                         epierce@uplawtx.com

                                               **Attorneys for Defendants, Leslie Wulf,
                                               Bruce Hall, John (Ted) Rea, and James
                                               Rea**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 29, 2019 a true and correct copy of the above and foregoing was served upon counsel of records for all parties via ECF Service.


_/s/ Eli D. Pierce___
Eli D. Pierce