# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., <br>     PLAINTIFF | § <br> § <br> § | |
| V. | § <br> § | |
| LESLIE A. WULF, BRUCE A. HALL, <br> JAMES REA, JOHN E. REA, KEITH DRIVER, <br> CANACCORD GENUITY LLC, <br> CHRISTINE GAGNE, AND SEAN MANIACI, <br>     DEFENDANTS | § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 3:19-CV-00764-L |
| V. | § <br> § <br> § | |
| EVA EBSTEIN, JENS HAARKOETTER, <br> BJORN THELANDER, ANDERS WESTER, <br> NORMAN MCCOWAN, DR. OTTO HAPPEL, <br> AND ALDER AQUA, LTD., <br>     THIRD-PARTY DEFENDANTS | § <br> § <br> § <br> § <br> § <br> § | |

## BRIEF IN SUPPORT OF SEAN MANIACI'S MOTION TO DISMISS CLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(2)

**SCHWARTZ LAW FIRM**
*Attorneys for Defendant Sean Maniaci*
Michael D. Schwartz (WI#1018933,
IA#AT0013972, MN#98164)
*Admitted Pro Hac Vice* (pending)
Brandon M. Schwartz (WI#1084533,
IA#AT0011248, AZ#035402, MN#392008)
*Admitted Pro Hac Vice* (pending)
600 Inwood Avenue North, Suite 130
Oakdale, MN  55128
(651) 528-6800
brandon@mdspalaw.com
michael@mdspalaw.com

**CLOUSE BROWN, PLLC**
*Local Counsel for Attorneys*
*for Defendant Sean Maniaci*
Keith Clouse State Bar No. 04410300
Jesse Clouse State Bar No. 24105614
1201 Elm Street, Suite 5250
Dallas, TX 75270-2142
(214) 698-5100
keith@clousebrown.com
jclouse@clousebrown.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................................2-3

I. INTRODUCTION...............................................................................................4

II. ISSUES .............................................................................................................4

III. DOCUMENTS RELIED UPON ........................................................................ 4

IV. FACTS ...........................................................................................................5-11

V. RELEVANT LEGAL STANDARDS............................................................12-13

    A. FED. R. CIV. P. 12(b)(2) MOTION TO DISMISS STANDARD .................. 12

    B. BURDEN OF PROOF .................................................................................12-13

VI. ARGUMENT ................................................................................................13-21

    A. THE TEXAS COURT LACKS PERSONAL JURISDICTION OVER MR.
    MANIACI............................................................................................................13-21

        1. VBF USA CANNOT ESTABLISH GENERAL JURISDICTION OVER
        MR. MANIACI .................................................................................14-15

        2. VBF USA CANNOT ESTABLISH SPECIFIC JURISDICTION OVER
        MR. MANIACI .................................................................................15-18

        3. VBF USA CANNOT ESTABLISH SPECIFIC JURISDICTION OVER
        MR. MANIACI BASED ON ANY PURPORTED ACTS AS AN
        ATTORNEY FOR ANY OF THE DEFENDANTS OR (ALLEGEDLY)
        VBF USA .........................................................................................18-20

        4. VBF USA CANNOT ESTABLISH THAT FAIR PLAY AND
        SUBSTANTIAL JUSTICE REQUIRE MAKING MR. MANIACI
        DEFEND THE CLAIMS IN TEXAS ....................................................20-21

VII. CONCLUSION ..............................................................................................22-23

i

# TABLE OF AUTHORITIES

## RULES

Fed. R. Civ. P. 12(b)(2)..............................................................................................4, 12, 13

## CASES

*Asahi Metal Indus. Co., Ltd. v.Super. Ct. of Cal., Solano County,* 480 U.S. 102 (1987)........20, 21

*Bergenholtz v. Cannata*, 200 S.W.3d 287 (Tex.App.-Dallas 2006, no pet.) ..........................19, 20

*BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549 (2014)..............................................................15

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773 (2017)..................................................................................................................15

*Bullion v. Gillespie*, 895 F.2d 213 (5th Cir. 1990) ........................................................12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...............................................12, 14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........................................................15, 22

*Daniels v. Blodgett*, 2005 WL 1120010 (Tex.App.-Dallas May 12, 2005, no pet.).....................18

*Devries v. Bulldog Well Testing LLC*, 2017 WL 1134318 (S.D. Tex. Mar. 27, 2017).................16

*Fowler v. Litman*, 2008 WL 2815086 (Tex.App.-Dallas Jul. 23, 2008, pet. denied) ...................18

*General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 225 Fed. Appx 775 (5th Cir. 2007) .................................................................................................... 16-17

*Geo-Chevron Ortiz Ranch # 2 v. Woodworth*, 2007 WL 671340 (Tex.App.-San Antonio Mar. 7, 2007, pet. denied).............................................................................................18, 19

*Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325 (Tex.App.-Fort Worth 2009, no pet.) .............19

*Gray, Ritter & Graham, PC v. Goldman Phipps PLLC*, 511 S.W.3d 639 (Tx. Ct. App. 2015)........ ..............................................................................................................18, 19, 20

*Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) ............................................17

*Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993)............................................12

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984) ............................14, 15

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .........................................14

*Irvin v. S. Snow Mfg., Inc.*, 517 Fed. Appx. 229 (5th Cir. 2013) ...................................................18

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) .................................................................16

*Kelly v. Gen. Interior Constr, Inc,* 301 S.W. 3d 653 (Tex. 2010) ..................................................12

*Lisitsa v. Flit*, 419 S.W.3d 672 (Tex.App.-Houston [14th Dist.] 2013, pet. denied)....................19

*Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291 (5th Cir. 1999) .................................................14

*Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464 (Tex.App.-Houston [14th Dist.] 2007, no pet.) ...........................................................................................................................................19

*Moncrief Oil Int'l Inc. v. OAO Gazprom Exp., LLC,* 414 S.W. 3d 142 (Tex. 2013)....................12

*Myers v. Emery*, 697 S.W.2d 26 (Tex. App.-Dallas 1985, no writ)................................................18

*My Fabric Designs, Inc. v. F+W Media, Inc.*, 2018 WL 1138436 (N.D. Tex. Mar. 2, 2018) ......................................................................................................................................12, 13, 14, 15

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) ..........12, 16

*Proskauer Rose LLP v. Pelican Trading, Inc.*, 2009 WL 242993 (Tex.App.-Houston [14th Dist.] Feb. 3, 2009, no pet.) ...................................................................................................................19

*Rush v. Savchuk*, 444 U.S. 320 (1980)...........................................................................................17

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir. 1993) .....................13, 14

*Shaffer v. Heitner*, 433 U.S. 186 (1977) .......................................................................................16

*Star Tech., Inc. v. Tultex Corp.*, 844 F.Supp. 295 (N.D. Tex. 1993).............................................19

*Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) ......................................................................12

*Walden v. Fiore*, 571 U.S. 277 (2014)...........................................................................................16

*Weldon-Francke v. Fisher*, 237 S.W.3d 789 (Tex.App.-Houston [14th Dist.] 2007, no pet.) ..........................................................................................................................................................19

*Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208 (5th Cir.1999) .....................................................20

*Wilson v. Baker*, 2011 WL 6938523 (Tex.App.-Austin Dec. 29, 2011, no pet.)...........................19

## I.  INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendant Sean Maniaci ("Mr. Maniaci"), by and through his undersigned attorneys, makes a special appearance for the limited purpose of contesting personal jurisdiction and respectfully files this Motion and Brief in Support of his Motion to Dismiss the Second Amended Complaint (Doc. No. 159) filed by VeroBlue Farms USA, Inc. ("VBF USA") for lack of personal jurisdiction.

"VBF is a Nevada corporation with its principal place of business in Webster City, Iowa. VBF is a citizen of Nevada and Iowa."  (Doc. No. 159, ¶ 4).  VBF USA is not a Texas entity and no harm was allegedly done to VBF USA in Texas.

Mr. Maniaci is a Canadian citizen who does not have a residence in, office in, or conduct any business in Texas.  Mr. Maniaci, as a Canadian attorney, provided legal services in Canada to a Canadian entity.  VBF USA has not and indeed cannot allege sufficient facts to support the exercise of personal jurisdiction over Mr. Maniaci.

Glaringly barren from the 101 pages, 450 paragraphs, and 44 exhibits of VBF USA's Second Amended Complaint are any actions taken by Mr. Maniaci in Texas or harm done in Texas.   This Court lacks both general and specific personal jurisdiction over Mr. Maniaci.  As a result, the claims asserted against Mr. Maniaci must, as a matter of law, be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## II.  ISSUES

1.  Does this Court have personal jurisdiction over Mr. Maniaci?

## III.  DOCUMENTS RELIED UPON

1.  Second Amended Complaint (Doc. No. 159); and

2.  Affidavit of Sean Maniaci ("*Maniaci Aff.*").

## IV.  FACTS

**A.      AFFIDAVIT OF MR. MANIACI.**

1.  Mr. Maniaci was born and raised in Canada.  (*Maniaci Aff.*, ¶ 2; Doc. No. 159, ¶ 13).

2.  Mr. Maniaci is now and always has been a Canadian citizen.  (*Maniaci Aff.*, ¶ 3; Doc. No. 159, ¶ 13).

3.  Mr. Maniaci obtained his Bachelors in Communication from McGill University, Desaultes Faculty of Management in 1996.  McGill University is located in Montreal, Quebec, Canada.  (*Maniaci Aff.*, ¶ 4; Doc. No. 159, ¶ 13).

4.  Mr. Maniaci next obtained his Bachelor of Laws from Queen's University in 1999. Queen's University is located in Kingston, Ontario, Canada.  (*Maniaci Aff.*, ¶ 5; Doc. No. 159, ¶ 13).

5.  In 2001, Mr. Maniaci was called to the Bar in Ontario.  Mr. Maniaci is also a member of the Ontario Bar Association and the Canadian Bar Association.  (*Maniaci Aff.*, ¶ 6; Doc. No. 159, ¶ 13).

6.  Mr. Maniaci is not licensed as an attorney in Texas or any other State in the United States of America.  (*Maniaci Aff.*, ¶ 7; Doc. No. 159, ¶ 13).

7.  Mr. Maniaci obtained his Master of Business Administration from the University of Western Ontario, Ivey Business School in 2005.  University of Western Ontario in London, Ontario, Canada.  (*Maniaci Aff.*, ¶ 8; Doc. No. 159, ¶ 13).

8.  Mr. Maniaci obtained his Certificate in Mining Law from Osgoode Hall Law School in 2012.  Osgoode Hall Law School is located in Toronto, Ontario, Canada.  (*Maniaci Aff.*, ¶ 9; Doc. No. 159, ¶ 13).

9.  Mr. Maniaci is a partner in the Business Law Group at Cassels Brock & Blackwell LLP ("Cassels").  (*Maniaci Aff.*, ¶ 10).

5

10. Cassels has three offices, all located in Canada (Toronto, Ontario; Calgary, Alberta; and Vancouver, British Columbia).  (*Id.*, ¶ 11).

11. Cassels does not have any offices located in the United States of America (including Texas).  (*Id.*, ¶ 12).

12. Mr. Maniaci is subject to the laws of Canada and his practice is governed by the laws of Ontario, Canada.  (*Id.*, ¶ 13).

13. Mr. Maniaci does not own and has never owned real property in Texas.  (*Id.*, ¶ 14).

14. Mr. Maniaci does not have and never has had an office in Texas.  (*Id.*, ¶ 15).

15. Mr. Maniaci does not have and never has had a Texas telephone number.  (*Id.*, ¶ 16).

16. Mr. Maniaci does not have and at no time has ever had any Texas entities as clients.  (*Id.*, ¶ 17).

17. Mr. Maniaci does not have and at no time has ever had any Texas residents as clients.  (*Id.*, ¶ 18).

18. Mr. Maniaci has never traveled to Texas to represent any clients.  (*Id.*, ¶ 19).

19. Mr. Maniaci has never traveled to Texas to meet with any representatives of VBF USA.  (*Id.*, ¶ 20).

20. Mr. Maniaci has never traveled to Texas to meet with Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Canacoord Genuity LLC, or Christine Gagne.  (*Id.*, ¶ 21).

21. Mr. Maniaci has never been to Texas to solicit client from or seek legal work in Texas.  (*Id.*, ¶ 22).

22. Mr. Maniaci has never taken any depositions or defended any depositions in Texas.  (*Id.*, ¶ 23).

23. Mr. Maniaci has never attended any hearings or trials in Texas.  (*Id.*, ¶ 24).

24. Mr. Maniaci has never filed any complaints, motions, briefs or pleadings in any court in Texas.  (*Id.*, ¶ 25).

25. Neither Cassels nor Mr. Maniaci have ever represented VBF USA.  (*Id.*, ¶ 26).

26. Neither Cassels nor Mr. Maniaci have any representation agreements with VBF USA. (*Id.*, ¶ 27).

27. Neither Cassels nor Mr. Maniaci advertise in Texas.  (*Id.*, ¶ 28).

28. Neither Cassels nor Mr. Maniaci sent solicitations to Texas for new clients.  (*Id.*, ¶ 29).

29. Cassels does not maintain an interactive website (in Canada, Texas or otherwise).  (*Id.*, ¶ 30).

30. Cassels' website does not permit the submission of any information from any individual viewing the website.  (*Id.*, ¶ 31).

31. Mr. Maniaci has never researched Texas law and has not provided any legal advice in Texas, to individuals or entities in Texas, or for acts to be taken in or have impact in Texas.  (*Id.*, ¶ 32).

32. Mr. Maniaci and Cassels have represented VeroBlue Farms, Inc., a Canadian Corporation ("VBF Canada").  (*Id.*, ¶ 33).

33. VBF Canada was a shareholder of VBF USA, which interest was terminated by the Chapter 11 proceedings in Iowa. (*Id.*, ¶ 34).

34. VBF Canada was not one of the Debtors in the Chapter 11 Bankruptcy proceedings in Iowa.  (*Id.*, ¶ 35).

## B.    THE SECOND AMENDED COMPLAINT.

The Second Amended Complaint is 101 pages, with 450 paragraphs, asserting 27 causes of action, and attaching 44 exhibits for a total of 989 pages.  (Doc. No. 159).  But what has been asserted (without basis) against Mr. Maniaci is limited and is wholly unrelated to Texas.  The

entirety of the factual assertions related to Mr. Maniaci are contained in 15 paragraphs, set forth

as follows:

> 107.    A similar document was also circulated to individuals at National Bank of Canada, which worked with Canaccord and the Founders to disperse VBF information to the marketplace, and Sean Maniaci, a purported VBF shareholder and counsel (as discussed more in-depth below).

> …

> 177.    Shortly thereafter, the Founders, aided and abetted by Maniaci, sought to surreptitiously interfere in the Bankruptcy Proceedings. [Which Bankruptcy Proceedings were conducted in the Northern District of Iowa].

> …

> 188.    The Founders' misuse of the AHC [in the Northern District of Iowa] to obfuscate their misconduct did not stop there, as they also incorporated VBF's counsel, Maniaci, in such misconduct, to act against the interests of VBF, his own client, as explained in the next section.

> 189.    Four of the five Founders have Canadian roots and, as VBF is recently learning, have had a longstanding relationship with Maniaci and CBB, a Canadian firm, outside of VBF's business.  VBF recently discovered emails to that effect in 2019.  One of these endeavors was Maniaci's representation of the ChipMeds, Inc. entity alleged above.  Maniaci has continued to further the Founders' interests to VBF's detriment, even in to the year 2019.  Maniaci has worn many conflicting hats in relation to VBF, including as Founders' counsel, VBF's counsel, and fierce advocate against VBF.[1]

> [SIC]  Maniaci was CBB's "relationship partner" for VBF, overseeing CBB's legal representation of VBF.  Maniaci is currently identified by CBB as a partner in its securities law group [in Canada], purporting to specialize in industries such as aquaculture.  Maniaci and CBB represented VBF, VBF Canada, and possibly other VBF-related entities on a large variety of matters from 2014 through November 2017, including general corporate, securities issues, issues relating to the OFT, import/export work, corporate structuring, and other issues.  Thus, Maniaci's representation of VBF was not casual or isolated.  Rather, Maniaci represented VBF on many aspects of its operations (such as preparation of written representations).  Neither VBF nor Maniaci (or CBB) have entered into any disengagement of representation agreement or notification.

---

[1] VBF USA's reference to "VFB" in the Second Amended Complaint is to VBF USA.  Mr. Maniaci represented VBF Canada, a shareholder of VBF USA.  Mr. Maniaci did <u>not</u> represent VBF USA.

190.    Maniaci, along with his brother Anthony and the Founders, appears to be one of the first shareholders of VBF or VBF Canada (and a preferred shareholder at that).  The Maniaci's [sic] received their stock either at a 50% discount from what other shareholders were paying at the time, or, like the Founders, basically for free.

191.    For example, Maniaci's entity, Sailstreet Capital Inc., received 750,000 shares in VBF Canada for a grand total of $0.75 (seventy-five cents) for all 750,000 shares in May 2014.  Maniaci, through Sailstreet, paid $0.000001 per share of stock at a time when others were paying about 900,000 times that amount, or $0.90 per share.

192.    Maniaci manipulated his conflicted position as both shareholder of VBF, and VBF's counsel, to attempt to blatantly harm VBF and interfere with VBF's Bankruptcy Proceedings, and to aid and abet the Founders' in their surreptitious meddling in the Bankruptcy Proceedings [in the Northern District of Iowa].  On January 9, 2019, Maniaci wrote a letter ("January 9 Maniaci Letter") on behalf of the AHC to his "Fellow VBF Shareholder[s]" in regards to VBF's Bankruptcy Proceedings, ostensibly to garner opposition to the Bankruptcy Debtors' Plan.  A true and correct copy of this document is attached as **Exhibit 36**.  The letter, upon information and belief, was sent to most or all VBF shareholders, is striking by what it misrepresents, and what is conceals on behalf of the Founders.

193.    Maniaci starts the letter with the statement that "I write to you as a minority shareholder of VeroBlue Farms," not specifying in which entity he is a shareholder, how he acquired his stock, or how much he paid for his stock (nothing for most of it, through Sailstreet).

194.    Further, although the letter is written [in Canada] on CBB letterhead by CBB partner Maniaci, perhaps to give the letter an air of respectability as written from a law firm, Maniaci nowhere discloses in his letter that CBB or he served as counsel to VBF on an extensive array of matters from inception of the VBF's business for years thereafter.  In fact, Maniaci does not specify that he is a lawyer.  As to that point, in a March 20, 2019 letter CBB admitted: "We do acknowledge that such letter was written without the authorization of management of this firm, and, therefore, Mr. Maniaci's letter written in his personal capacity should not have been put on to our firm's letterhead."

195.    Maniaci also conceals from the recipients of his letter that CBB and he have represented the Founders on matters unrelated to VBF, and apparently have a close relationship to the Founders.

196.    Also in the January 9, 2019 Maniaci Letter, Maniaci improperly solicits clients for counsel to the AHC, admitting that he is essentially trying to "crowdfund litigation" against VBF through his letter.  Obviously, Maniaci was working in concert with the Founders and AHC counsel.

197.    Maniaci also misleadingly represents in his letter that the Creditors' Committee determined that this lawsuit is "retaliatory and without merit," without noting that counsel for the Creditors' Committee acknowledged that the Founders were the source of his conclusion and that he performed no independent investigation.   This, combined with Maniaci's obvious lobbying against his clients' (VBF's) Plan of Reorganization ("Plan"), blatantly demonstrates Maniaci's intent to undermine VBF's interests.

198.    Further, Maniaci and CBB failed and refused to turn over client files to VBF, withholding their own clients' property presumably because Maniaci is concerned that those documents contain information damaging to CBB, Maniaci, the Founders, and possibly other Defendants.  The Bankruptcy Deptors brought an adversary complaint against CBB for turnover of these files and other data in the Bankruptcy Proceeding.

199.    On April 22, 2019, the [Northern District of Iowa] bankruptcy court approved the Bankruptcy Debtors' Plan, through which plan sponsor, Alder, acquired the Bankruptcy Debtors' assets.  The Founders objected to the Plan. This is after the bankruptcy court rebuked the AHC tactic perpetrated by the Founders, barring the AHC from participation in the Bankruptcy Proceedings.

The Second Amended Complaint also included the following conclusory assertions:

### COUNT XXV – CONSPIRACY - MANIACI

388.    The Founders and Maniaci had a meeting of the minds and agreed to engage in a conspiracy for their personal benefit so Maniaci could secure shares at discounted prices as described herein and to cause harm to VBF, while concealing the same from VBF, its disinterested board members.

389.    The Founders and Maniaci's aim, through the Founders-Maniaci Conspiracy, was to accomplish the unlawful objective of personally benefiting the Founders and Maniaci at the expense of VBF, while concealing the same from VBF, and/or making fraudulent misrepresentations to VBF and its disinterested board members in the face of the Founders' duties of disclosure.

390.    The overt, unlawful actions described herein furthered the conspiracy. Maniaci facilitated, encouraged, and assisted in accomplishing the Founders' breaches of fiduciary duty, fraudulent concealment, constructive fraud, and fraudulent misrepresentation.

391.    VBF suffered injuries as a direct and proximate result of the conspiracy between the Founders and Maniaci.  In total, VBF's compensatory damages are in excess of $90,000,000.00.

392.    Further, Maniaci's misconduct was willful and egregious, or at least wanton, and warrants punitive damages in an amount to be determined at trial as it continues into 2019 through the Bankruptcy Proceedings.

## COUNT XXVI – AIDING AND ABETTING - MANIACI

394.    While in control of VBF, the Founders engaged in the Conspiracy to accomplish the unlawful objective of personally benefiting at the expense of VBF. Maniaci had knowledge that the Founders were engaged in this conspiracy.

395.    From the beginning of his role in overseeing the work of CBB lawyers for VBF, his own legal work for VBF, and his personal relationship with the Founders at all times thereafter, Maniaci intended to assist the Founders in carrying out the Conspiracy and other misconduct described herein.

396.    Maniaci knowingly and substantially assisted the Founders in carrying out the Conspiracy alleged herein, while concealing the same from VBF and its disinterested board members.

397.    Maniaci's substantial assistance toward carrying out the Founders' Conspiracy is evidenced by, among other things, his acquisition of VBF stock for a steep discount or the acquisition of VBF stock for a steep discount by entities associated with Maniaci, as well as his legal work (through CBB) for entities other than VBF but paid for by VBF.

398.    VBF suffered and continues to suffer injuries as a direct and proximate result of  Maniaci's aiding and abetting of the Founders' Conspiracy as Maniaci and the Founders concealed his personal relationship with the Founders and the discounts he receive on VBF stock from VBF, its disinterested board members and throughout the Bankruptcy Proceedings.

399.    Maniaci's actions were and are willful and egregious, or at least wanton, in particular his continued withholding of VBF files that may contain further evidence of the Founders' conspiracy (or the other claims alleged herein against any Defendant) and Maniaci's role therein, as well as his recent efforts to solicit clients to join the Ad Hoc Committee of equity investors in VBF's Bankruptcy Proceedings.  Therefore, punitive damages against Maniaci in an amount to be determined at trial are warranted.

The Second Amended Complaint seeks the following relief against Mr. Maniaci:

448.    That this Court enter judgement in its favor and against the Defendant Maniaci, in an amount in excess of $75,000, but to be determined at trial, as compensatory damages for the Founders-Maniaci Conspiracy and aiding and abetting the Founders' Conspiracy plus punitive damages in an amount to be determined at trial, costs, allowable pre-judgment interest, the imposition of a constructive trust, and other relief deemed just.

## V.  RELEVANT LEGAL STANDARDS

### A.      FED. R. CIV. P. 12(B)(2) MOTION TO DISMISS STANDARD.

Fed. R. Civ. P. 12(b)(2) authorizes a district court to dismiss an action for lack of personal jurisdiction.  "On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant." *My Fabric Designs, Inc. v. F+W Media, Inc.*, 2018 WL 1138436, at *3 (N.D. Tex. Mar. 2, 2018) (Lindsay, J.); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).

This Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  While uncontroverted allegations in a plaintiff's complaint must be taken as true, *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990), this Court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  If a plaintiff makes a prima facie case for personal jurisdiction, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### B.      BURDEN OF PROOF.

The plaintiff and the defendant bear "shifting burdens of proof" in a challenge to personal jurisdiction. *Kelly v Gen. Interior Constr, Inc,* 301 S.W. 3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long arm statute. *Moncrief Oil Int'l Inc. v. OAO Gazprom Exp., LLC,* 414 S.W. 3d 142, 149 (Tex. 2013); *Moki Mac River Expeditions v. Drugg,* 221 S.W. 3d 569,574 (Tex. 2007); *Kelly,* 301 S.W.3d at 658. When the plaintiff's initial burden is met, the burden shifts to the defendant who has the burden of negating all basis of jurisdiction alleged in

the plaintiff's petition. *Kelly,* 301 S.W. 3d at 657 – 58; *Moki Mac*, 221 S.W. 3d at 574.

A nonresident defendant can negate jurisdiction on either a factual or a legal basis. *Kelly,* 301 S.W.3d at 659.  To negate jurisdiction on a factual basis, the nonresident defendant can disprove the plaintiff's allegations by presenting evidence that it has no contacts with Texas. *Id.* The plaintiff can respond with its own evidence affirming the allegations and risks dismissal if it cannot present the trial court with evidence establishing jurisdiction. *Id.*  To negate jurisdiction on a legal basis, the nonresident defendant can show that the evidence is legally insufficient to establish jurisdiction even if the plaintiff's allegations are true. *Id.*  For example, the defendant can show that its contacts with Texas fall short of purposeful availment, that the plaintiff's claims do not arise from or relate to the contacts, or that exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

## VI.  ARGUMENT

### A.    THE TEXAS COURT LACKS PERSONAL JURISDICTION OVER MR. MANIACI.

Because VBF USA cannot establish either general or specific personal jurisdiction over Mr. Maniaci, this Court should grant Mr. Maniaci's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In fact, Mr. Maniaci did not take a single act in Texas, on behalf of a Texas entity, directed at Texas, or allegedly causing harm in Texas.

"A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution."  *My Fabric Designs*, 2018 WL 1138436, at *3; *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). "Because the Texas long-arm statute extends to the limits of federal due process, the court must determine whether (1) the defendants have established 'minimum contacts' with the forum state;

and, (2) whether the exercise of personal jurisdiction over the defendants would offend

'traditional notions of fair play and substantial justice.'" *My Fabric Designs*, 2018 WL 1138436,

at *3; *Ruston Gas*, 9 F.3d at 418 *citing International Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945).

"The 'minimum contacts' prong is satisfied when a defendant 'purposefully avails itself

of the privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws.'" *My Fabric Designs*, 2018 WL 1138436, at *4 *citing Burger King*, 471

U.S. at 475.  "The nonresident defendant's availment must be such that the defendant 'should

reasonably anticipate being haled into court' in the forum state." *My Fabric Designs*, 2018 WL

1138436, at *4 *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"This test 'ensures that a defendant will not be haled into a jurisdiction solely as a result of

'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a

third person.'" *My Fabric Designs*, 2018 WL 1138436, at *4 *citing Burger King*, 471 U.S. at

475.  "The 'minimum contacts' prong of the inquiry may be subdivided into contacts that give

rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction.'"

*My Fabric Designs*, 2018 WL 1138436, at *4 *citing Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d

291, 295 (5th Cir. 1999).

## 1.     VBF USA CANNOT ESTABLISH GENERAL JURISDICTION OVER MR. MANIACI.

"The exercise of general personal jurisdiction is proper when the nonresident defendant's

contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic,

and substantial." *My Fabric Designs*, 2018 WL 1138436, at *4 *citing Helicopteros Nacionales*

*de Colombia S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).  "Recently, the Supreme Court clarified

that courts may exercise general jurisdiction over nonresident defendant corporations when 'their

14

affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'"  *My Fabric Designs*, 2018 WL 1138436, at *4 *quoting BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2014).  The United States Supreme Court has determined that, for general jurisdiction to exist, a defendant's contacts must be so continuous "as to render [the defendant] essentially **at home in the forum**."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (emphasis added).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017).

VBF USA acknowledges facts establishing that this Court does not have general jurisdiction over Mr. Maniaci as set forth in VBF USA's Second Amended Complaint.  Indeed, VBF USA alleges that Mr. Maniaci is a Canadian citizen and lawyer practicing at Cassels that only has offices in Canada.  (Doc. No. 159, ¶ 13).  VBF USA further acknowledges that Mr. Maniaci sent communications from Toronto, Canada, received his undergraduate degree in Canada, received his master's in business administration in Canada and his law degree in Canada.  (*Id.*).  These allegations are wholly insufficient to establish general jurisdiction over Mr. Maniaci.  VBF USA's Second Amended Complaint fails to assert any other allegations to establish that Mr. Maniaci's contacts with Texas were so continuous that he was "essentially at home" in Texas.  As such, this Court lacks general jurisdiction over Mr. Maniaci.

### 2.    VBF USA CANNOT ESTABLISH SPECIFIC JURISDICTION OVER MR. MANIACI.

"Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."  *My Fabric Designs*, 2018 WL 1138436, at *4 *citing Helicopteros Nacionales de Colombia S.A.*, 466 U.S. at 414 n.8.  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant

'focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) *quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). As such, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum state." *Walden*, 571 U.S. at 284.

VBF USA also cannot establish specific jurisdiction over Mr. Maniaci. VBF USA's Second Amended Complaint fails to specifically allege any individual contacts that Mr. Maniaci has with Texas which give rise to this lawsuit. To the contrary, VBF USA only conclusory and vaguely asserts that:

> This Court has personal jurisdiction over Defendants pursuant to § 17.042(2) of the Texas Civil Practice and Remedies Code, as the Defendants committed torts in part in Texas and further, Founders James Rea, Ted Rea, Hall and Wulf are domiciled in Texas.

(Doc. No. 159, ¶ 17). This is the precise type of conclusory allegation which this Court need not and should not accept. *Panda Brandywine Corp.*, 253 F.3d at 869.

Importantly, VBF USA cannot establish specific jurisdiction over Mr. Maniaci based on this group pleading. Numerous courts have held that such group pleading tactics are insufficient to establish specific personal jurisdiction:

> These allegations, employing the globular 'Defendants,' are both conclusory and leave unclear who committed the acts in question…The Fifth Circuit and U.S. Supreme Court do not permit indiscriminate jurisdictional allegations to support a finding of personal jurisdiction. Accordingly, the allegations listed above are properly ignored for purposes of this Court's personal jurisdiction analysis. When these allegations are ignored, there exist no contacts upon which Defendants could reasonably anticipate being haled into Texas court. Thus, Plaintiffs have not established a prima facie case that this Court has specific personal jurisdiction over Defendants Hamlin, Highfill, and Miller.

*Devries v. Bulldog Well Testing LLC*, 2017 WL 1134318, at *5 (S.D. Tex. Mar. 27, 2017) *citing*

*General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 225 Fed. Appx 775, 795 n. 76 (5th Cir. 2007) and *Rush v. Savchuk*, 444 U.S. 320, 332-33 (1980) (holding that aggregating the defendant into a collective of "defending parties" did not satisfy federal due process.).

VBF USA has defined seven individuals and one entity collectively as the "Conspiring Defendants". (Doc. No. 159, opening paragraph). The only personal jurisdiction allegation in the 101 pages of the Second Amended Complaint refers to "Defendants" as an entire group with no specific allegation of any forum contacts by Mr. Maniaci. (Doc. No. 159, ¶ 17). This is insufficient to establish personal jurisdiction over Mr. Maniaci. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 n.9 (8th Cir. 2009) ("Because this section [of the complaint in "jurisdiction and venue"] refers to all plaintiffs and uses the "and/or" formulation, it does not connect any particular plaintiff to any particular allegation."). The Second Amended Complaint suffers from the same deficiencies.

Most importantly, this Court will search the Second Amended Complaint in vain to find any act that Mr. Maniaci allegedly took in Texas, allegation that Mr. Maniaci was ever actually in Texas, or that Mr. Maniaci had sufficient contacts with Texas to establish jurisdiction. Indeed, he has taken no actions in Texas, on behalf of a Texas entity, directed at Texas, or which otherwise give rise to the claims in this Court. As established by Mr. Maniaci's Affidavit, Mr. Maniaci is a Canadian citizen, a Canadian attorney practicing law in Canada and representing Canadian clients, owns no property in Texas, has never been to Texas for any business purpose, does not have an office in Texas, does not have a Texas phone number, and took no actions directed at Texas. VBF USA also fails to allege how Mr. Maniaci caused any alleged harm in Texas.

The generic allegations set forth in the 101 pages of the Second Amended Complaint that Mr. Maniaci conspired with and aided and abetted the Founders are wholly insufficient to

establish personal jurisdiction over Mr. Maniaci.  What did Mr. Maniaci allegedly do in Texas?

What actions did Mr. Maniaci allegedly direct at Texas?  What harm did Mr. Maniaci allegedly

cause in Texas?  The answer is, "none."  While VBF USA seeks to spin this tail of corruption by

the Founders, the actions allegedly taken by the Founders are far too attenuated for Mr. Maniaci

to reasonably anticipate being haled into court in Texas.  *See Irvin v. S. Snow Mfg., Inc.*, 517 Fed.

Appx. 229, 231 (5th Cir. 2013) ("This purposeful availment requirement ensures that a defendant

will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated

contacts, or of the unilateral activity of another party or a third person.  Jurisdiction is proper,

however, where the contacts proximately result from actions by the defendant *himself* that create

a substantial connection with the forum State.") (internal quotation marks and citation omitted).

There were no actions by Mr. Maniaci himself that create a substantial connection with Texas.

> **3.    VBF USA CANNOT ESTABLISH SPECIFIC JURISDICTION OVER MR.
>        MANIACI BASED ON ANY PURPORTED ACTS AS AN ATTORNEY
>        FOR ANY OF THE DEFENDANTS OR (ALLEGEDLY) VBF USA.**

VBF USA's allegations that acts Mr. Maniaci purportedly took as an attorney also fail to

establish specific jurisdiction in Texas.  Again, the Second Amended Complaint completely fails

to state what actions Mr. Maniaci allegedly took in Texas, directed at Texas, or harm caused in

Texas.  These failures mandate dismissal.

"[A] nonresident attorney who has only sporadic contacts with Texas will not be subject

to general jurisdiction in Texas."  *Gray, Ritter & Graham, PC v. Goldman Phipps PLLC*, 511

S.W.3d 639, 657 (Tx. Ct. App. 2015) *citing Myers v. Emery*, 697 S.W.2d 26, 31-32 (Tex. App.-

Dallas 1985, no writ); *see also Fowler v. Litman*, 2008 WL 2815086, at *3 (Tex.App.-Dallas Jul.

23, 2008, pet. denied); *Geo-Chevron Ortiz Ranch # 2 v. Woodworth*, 2007 WL 671340, at *5

(Tex.App.-San Antonio Mar. 7, 2007, pet. denied); *Daniels v. Blodgett*, 2005 WL 1120010, at *3

(Tex.App.-Dallas May 12, 2005, no pet.).

"In a specific jurisdiction analysis, a nonresident attorney's act of entering into an attorney-client relationship with a Texas resident, standing alone, does not provide the minimum contacts necessary to support personal jurisdiction over the nonresident attorney." *Gray, Ritter & Graham, PC*, 511 S.W.3d at 657 *citing Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 335 (Tex.App.-Fort Worth 2009, no pet.); *Myers*, 697 S.W.2d at 32; *see also Geo-Chevron*, 2007 WL 671340, at *3. "Moreover, neither the mere existence of an attorney-client relationship between a Texas resident and a nonresident attorney, nor the routine correspondence and interactions attendant to that relationship, are sufficient to confer specific personal jurisdiction over a nonresident attorney." *Gray, Ritter & Graham, PC*, 511 S.W.3d at 657 *citing Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 468-69 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *see also Proskauer Rose LLP v. Pelican Trading, Inc.*, 2009 WL 242993, at *4 (Tex.App.-Houston [14th Dist.] Feb. 3, 2009, no pet.). "Similarly, a nonresident attorney's act of contracting with and **accepting payment** from Texas residents **for services performed elsewhere does not support specific jurisdiction over a nonresident attorney.**" *Gray, Ritter & Graham, PC*, 511 S.W.3d at 657 (emphasis added) *citing Weldon-Francke v. Fisher*, 237 S.W.3d 789, 796 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *see also Star Tech., Inc. v. Tultex Corp.*, 844 F.Supp. 295 (N.D. Tex. 1993). "As stated by one of our sister appellate courts, the 'mere act of contracting with a Texas resident does not give rise to specific jurisdiction in Texas: **performance must be due in Texas**.'" *Gray, Ritter & Graham, PC*, 511 S.W.3d at 657 (emphasis added) *quoting Lisitsa v. Flit*, 419 S.W.3d 672, 680 (Tex.App.-Houston [14th Dist.] 2013, pet. denied); *see Markette*, 240 S.W.3d at 464; *see also Wilson v. Baker*, 2011 WL 6938523, at *5 (Tex.App.-Austin Dec. 29, 2011, no pet.). "For specific jurisdiction to attach, the claims in the lawsuit must arise from or relate to the nonresident lawyer's purposeful contacts with Texas." *Gray, Ritter & Graham, PC*, 511 S.W.3d at 657 *citing Weldon-Francke*, 237 S.W.3d at 797; *Bergenholtz v.*

*Cannata*, 200 S.W.3d 287, 293-97 (Tex.App.-Dallas 2006, no pet.).  "Generally, in order to show that nonresident attorneys have engaged in purposeful contact with Texas, the record must indicate that the nonresident attorneys have sought clients in Texas or otherwise have affirmatively promoted their businesses in Texas."  *Gray, Ritter & Graham, PC*, 511 S.W.3d at 657; *see e.g. Bergenholtz*, 200 S.W.3d at 293-97; *Katz v. Winston & Cashett*, 2011 WL 3435789, at *3 (Tex.App.-Dallas Aug. 5, 2011, no pet.).

Mr. Maniaci did not provide any legal services in Texas.  He filed no pleadings in Texas, took no depositions in Texas, attended no hearings in Texas, and neither pursued nor defended any claims in Texas.  Mr. Maniaci is not licensed in Texas and has no clients in Texas.  There are absolutely no facts to support specific personal jurisdiction over Mr. Maniaci based on any acts Mr. Maniaci took as an attorney (or otherwise).

4.       **VBF USA CANNOT ESTABLISH THAT FAIR PLAY AND SUBSTANTIAL JUSTICE REQUIRE MAKING MR. MANIACI DEFEND THE CLAIMS IN TEXAS.**

In addition to being unable to establish requisite minimum contact by Mr. Maniaci with Texas, VBF USA is also unable to establish that fair play and substantial justice mandate Mr. Maniaci defend this action in Texas.  This Court should not exercise jurisdiction here as the considerations of "fair play and substantial justice" establish that Mr. Maniaci defending this case in Texas is so unreasonable as to constitute a due process violation.  *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir.1999); *Asahi Metal Indus. Co., Ltd. v.Super. Ct. of Cal., Solano County,* 480 U.S. 102, 105, (1987).

In considering issues of fairness, this Court takes into account the foreseeability of Mr. Maniaci being haled into court in Texas.  In addition, this Court evaluates the interests of the forum state in providing redress to its citizens, considers VBF USA's convenience, and determines other states' (or countries') interests in enforcing their substantive law. *World–Wide*

*Volkswagon Corp.,* 444 U.S. at 292; *Asahi,* 480 U.S. at 113.

Texas does not have any interest in providing redress in this action against Mr. Maniaci. VBF USA is not a Texas entity and no harm allegedly suffered by VBF USA occurred in Texas. VBF USA is a Nevada entity with its principal place of business in Iowa.  (Doc. No. 159, ¶ 4). Notably in this regard, VBF USA itself asserts in the Second Amended Complaint that it believes this matter is governed by Iowa law, not Texas law.  (Doc. No. 159, fn. 3 and 4).

It is also unfair to require Mr. Maniaci, a Canadian citizen and attorney, to have his actions as a Canadian citizen and attorney adjudicated in Texas under Texas law.  Alleged actions or inactions of Mr. Maniaci, all of which allegedly occurred in Canada (and none of which occurred in Texas or Iowa), should be resolved in Canada pursuant to Canadian law – not in and under the law of a foreign Country in which Mr. Maniaci has no contacts.

This is a multi-tens of million dollar lawsuit (allegedly ninety million dollars plus attorneys' fees that will likely exceed millions of dollars) with claims, counterclaims and cross-claims amongst all the other parties.  It would be unfair and a violation of Mr. Maniaci's due process rights to be involved in this litigation in which he took no acts in Texas and in which no Texas individuals/entities were harmed.  In this respect, Texas is not a convenient forum for either Mr. Maniaci, a Canadian citizen, or VBF USA, a Nevada entity doing business in Iowa.

When Mr. Maniaci had no contacts with Texas, when Mr. Maniaci undertook no acts in Texas, when Mr. Maniaci caused no alleged harm in Texas, and when VBF USA is not a Texas entity, it violates fair play and substantial justice to require Mr. Maniaci to defend this action in Texas.  As such, for an additional reason, this Court should hold that it does not have personal jurisdiction over Mr. Maniaci.

## VII. CONCLUSION

Sean Maniaci is a Canadian citizen, educated in Canada, living in Canada, practicing law in Canada and providing advice to Canadian clients. Mr. Maniaci is governed by the laws of Canada.

Mr. Maniaci has not provided any legal representation to residents of Texas or entities incorporated in Texas and is not authorized to practice law in Texas. Mr. Maniaci has not performed any services in Texas or conducted any business in Texas.

VBF USA is a Nevada Corporation with its principal place of business in Iowa. VBF USA claims to be a citizen of Nevada and Iowa. VBF USA claims that the Founders have engaged in a series of actionable conduct which the Founders strenuously deny. VBF USA seeks $90 million in damages, plus punitive damages.

The Founders claim that Otto Happel, a Swiss billionaire, has used his financial power and a series of entities that he controls in a "loan to own scheme" that has resulted in tens of millions of dollars in damages to them and other shareholders whose interests were terminated in the Chapter 11 bankruptcy proceedings in Iowa.

The legal fees and expenses that will be incurred in this litigation will far exceed hundreds of thousands of dollars and likely multiples of millions of dollars. Not only are there insufficient facts alleged to establish general personal jurisdiction or specific personal jurisdiction over Sean Maniaci, to hale him into court in Texas would seriously offend traditional notions of fair play and substantial justice. Simply stated, there are insufficient facts to force Sean Maniaci to have a seat at the table in Texas for this high-stakes litigation.

The attempt by VBF USA to assert jurisdiction over a Canadian attorney, working for a Canadian law firm, representing a Canadian client and which Canadian client is not even a party to this litigation, presents the "risks to international comity" of an overly expansive view of

jurisdiction that is inconsistent with the "fair play and substantial justice due process demands" referred to by the United States Supreme Court in *Daimler AG*, 134 S.Ct. at 763.

Based on the above, the undersigned respectfully request this Court dismiss the claims against Sean Maniaci for lack of personal jurisdiction.

**SCHWARTZ LAW FIRM**

Dated: November 25, 2019

/s/ Michael D. Schwartz
Michael D. Schwartz (WI#1018933,
IA#AT0013972, MN#98164)
*Admitted Pro Hac Vice* (pending)
Brandon M. Schwartz (WI#1084533,
IA#AT0011248, AZ#035402, MN#392008)
*Admitted Pro Hac Vice* (pending)
600 Inwood Avenue North, Suite 130
Oakdale, MN  55128
(651) 528-6800
brandon@mdspalaw.com
michael@mdspalaw.com
*Attorneys for Defendant Sean Maniaci*


**CLOUSE BROWN PLLC**

/s/ Keith Clouse
*Local Counsel for Attorneys*
*for Defendant Sean Maniaci*
Keith Clouse State Bar No. 04410300
Jesse Clouse State Bar No. 24105614
1201 Elm Street, Suite 5250
Dallas, TX 75270-2142
Tel. (214) 698-5100
Fac. (214) 747-1316
keith@clousebrown.com
jclouse@clousebrown.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 25, 2019 this document was filed and served to all counsel of record via the Court's ECF system.

/s/ Michael D. Schwartz
Michael D. Schwartz