**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| VEROBLUE FARMS USA, INC., | |
| Plaintiff, | Case No. 3:19-cv-00764-X |
| v. | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES REA, JOHN E. RAE, KEITH DRIVER, CANACCORD GENUITY LLC, CHRISTINE GAGNE, and SEAN MANIACI, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF CANACCORD**
**GENUITY LLC'S MOTION TO DISMISS THE**
**SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 4

   I.   Canaccord's Relationship With VBF.......................................................................... 4

   II.   The Complaint's Canaccord-Related Allegations. ..................................................... 5

APPLICABLE LEGAL STANDARDS ................................................................................... 8

ARGUMENT ......................................................................................................................... 11

   I.   The Complaint Must Be Dismissed Because This Court Lacks Personal Jurisdiction Over Canaccord. ...................................................................................... 11

       A.   VBF Fails To Establish General Jurisdiction Over Canaccord. .............. 11

       B.   VBF Fails To Establish Specific Jurisdiction Over Canaccord. .............. 12

   II.   The Complaint Must Be Dismissed Because VBF's Claims Are Barred By The Engagement Agreement And The Mutual Release Between The Parties........................ 15

   III.   The Complaint Must Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted. ............................................................................................ 17

   IV.   The Complaint Must Be Dismissed Because This Court Is An Improper Venue. ........... 24

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*,
   115 F. App'x 662 (5th Cir. 2004) ................................................................. 21

*Ambraco, Inc. v. Bossclip B. V.*,
   570 F.3d 233 (5th Cir. 2009) ............................................................... 9, 24

*Argyll Equities LLC v. Paolino*,
   211 F. App'x 317 (5th Cir. 2006) .......................................................... 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 10

*Audler v. CBC Innovis Inc.*,
   519 F.3d 239 (5th Cir. 2008) ............................................................... 22

*Banc One Capital Partners Corp. v. Kneipper*,
   67 F.3d 1187 (5th Cir. 1995) .............................................................. 22

*Baron v. Baron*,
   No. 3:16-CV-3465-C-BH, 2018 WL 1156002 (N.D. Tex. Feb. 13, 2018) ............... 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 10

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
   240 F. App'x 612 (5th Cir. 2007) .......................................................... 25

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991) ............................................................................ 24

*Cty. of El Paso, Tex. v. Jones*,
   No. EP-09-CV-00119-KC, 2009 WL 4730343 (W.D. Tex. Dec. 4, 2009) .............. 19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ......................................................................... 9, 11

*Delta Brands Inc. v. Danieli Corp.*,
   99 F. App'x 1 (5th Cir. 2004) .......................................................... 13, 14

*Dynamo v. Warehouse of Vending & Games*,
   168 F. Supp. 2d 616 (N.D. Tex. 2001) .................................................. 14

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ................................................................. 10

*Freudensprung v. Offshore Tech. Servs., Inc.*,
    379 F.3d 327 (5th Cir. 2004) ................................................................. 9

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
    290 F. Supp. 3d 599 (N.D. Tex. 2017) .................................................. 9

*Geier v. Mozido, LLC*,
    No. 10931-VCS, 2016 WL 5462437 (Del. Ch. Sept. 29, 2016) ............ 17

*Gines v. D.R. Horton, Inc.*,
    699 F.3d 812 (5th Cir. 2012) ................................................................. 10

*Goldstein v. MCI Worldcom*,
    340 F.3d 238 (5th Cir. 2003) ................................................................. 10

*Hatzenbuehler v. Essig*,
    526 S.W.3d 657 (Tex. App. 2017) ........................................................ 13

*Haynsworth v. The Corp.*,
    121 F.3d 956 (5th Cir. 1997) ................................................................. 25

*Head v. Las Vegas Sands, Ltd. Liab. Corp.*,
    760 F. App'x 281 (5th Cir. 2019) ......................................................... 14

*Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*,
    No. 3:08CV0102B, 2008 WL 3925272 (N.D. Tex. Aug. 27, 2008) ...... 18

*Hill v. Hunt*,
    No. 307-CV-2020-O, 2010 WL 54756 (N.D. Tex. Jan. 4, 2010) ........... 18

*In re Capstead Mortg. Corp. Sec. Lit.*,
    258 F. Supp. 2d 533 (N.D. Tex. 2003) .................................................. 23

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
    No. H-01-3624, 2003 WL 23316646 (S.D. Tex. Mar. 27, 2003) .......... 5, 21

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
    No. H-01-3624, 2006 WL 3716669 (S.D. Tex. Dec. 12, 2006) ............. 18

*In re Sec. Litig. BMC Software, Inc.*,
    183 F. Supp. 2d 860 (S.D. Tex. 2001) .................................................. 21

*Inmar Rx Sols., Inc. v. Devos, Ltd.*,
  No. 18-11443, 2019 WL 4440400 (5th Cir. Sept. 16, 2019) .................................. 12

*Int'l Truck & Engine Corp. v. Quintana*,
  259 F. Supp. 2d 553 (N.D. Tex. 2003) ........................................................ 9

*Kader v. Sarepta Therapeutics, Inc.*,
  No. 1:14-CV-14318-ADB, 2016 WL 1337256 (D. Mass. Apr. 5, 2016) .............................. 21

*Klapper v. Graziano*,
  970 N.Y.S.2d 355 (N.Y. Sup. Ct. 2013) ...................................................... 15

*LeMay v. H.W. Keeney, Inc.*,
  508 N.Y.S.2d 769 (N.Y. App. Div. 1986) ..................................................... 15

*Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*,
  No. 4:17-cv-00225-O, 2017 WL 9934885 (N.D. Tex. Nov. 27, 2017) ................................ 10

*Little v. SKF Sverige AB*,
  594 F. App'x 810 (5th Cir. 2014) .......................................................... 13

*Locafrance U. S. Corp. v. Intermodal Sys. Leasing, Inc.*,
  558 F.2d 1113 (2d Cir. 1977) .............................................................. 16

*Luv N'Care, Ltd. v. Insta-Mix, Inc.*,
  438 F.3d 465 (5th Cir. 2006) ............................................................... 9

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1971) ....................................................................... 9, 25

*Massey v. JPMorgan Chase Bank, N.A.*,
  No. 4:12-CV-154-A, 2012 WL 3743493 (N.D. Tex. Aug. 29, 2012) .................................. 23

*Middle E. Banking Co. v. State St. Bank Int'l*,
  821 F.2d 897 (2d Cir. 1987) .............................................................. 17

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
  481 F.3d 309 (5th Cir. 2007) ............................................................... 8

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ....................................................... 8, 9, 11

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*,
  No. 3:15-CV-01121-M, 2016 WL 1069675 (N.D. Tex. Mar. 16, 2016) ................................ 11

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    No. 3:10-CV-2618-D, 2012 WL 2864510 (N.D. Tex. July 12, 2012)......................................20

*Patel v. Pac. Life Ins. Co.*,
    No. 3:08CV0249B, 2009 WL 1456526 (N.D. Tex. May 22, 2009) ...................................18-19

*Peteet v. Dow Chem. Co.*,
    868 F.2d 1428 (5th Cir. 1989) ...............................................................................................24

*Sanchez v. Liggett & Myers, Inc.*,
    187 F.3d 486 (5th Cir. 1999) .................................................................................................23

*Smith v. HSBC Bank*,
    No. 3:15-cv-00094-P, 2015 WL 12911463 (N.D. Tex. Aug. 6, 2015)........................10, 18, 20

*Tuchman v. DSC Comm. Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ..........................................................................................10, 18

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) .................................................................................................22

*Van Rooyen v. Greystone Home Builders, LLC*,
    295 F. Supp. 3d 735 (N.D. Tex. 2018) ..................................................................................15

*Valdez v. Kreso, Inc.*,
    157 F. Supp. 2d 722 (N.D. Tex. 2001) ..................................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014).............................................................................................11, 12, 13

*Weinberg v. Nat'l Football League Players Ass'n*,
    No. 306-CV-2332-B, 2008 WL 4808920 (N.D. Tex. Nov. 5, 2008)........................................13

*Whitener v. Pliva, Inc.*,
    606 F. App'x 762 (5th Cir. 2015) .........................................................................................11

*Wien Air Alaska, Inc. v. Norddeutsche*,
    62 F.3d 396 (5th Cir. 1995) ...............................................................................................8, 14

*Zinc Nacional, S.A. v. Bouche Trucking, Inc.*,
    343 S.W.3d 466 (Tex. App. 2010).........................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 9(b)..............................................................................10, 17, 18

Federal Rule of Civil Procedure 12(b)(2) ................................................................. 8, 11

Federal Rule of Civil Procedure 12(b)(3) ................................................................. 9, 24

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 9, 17

Texas Civil Practice and Remedies Code § 17.042(2) .............................................. 14

Defendant Canaccord Genuity LLC ("Canaccord") respectfully submits this memorandum in support of its motion to dismiss VeroBlue Farms USA, Inc.'s ("VBF") Second Amended Complaint (the "Complaint" or "SAC") with prejudice.

## PRELIMINARY STATEMENT

Canaccord does not belong in this lawsuit—Canaccord had nothing to do with any of the wrongdoing described in the Complaint and, as a result, VBF resorts to convoluted and misfit theories of liability. On top of that, VBF explicitly released all of its claims in a written settlement agreement with Canaccord. Whatever VBF's reasons for including Canaccord, its claims are fundamentally flawed in multiple ways and must be dismissed.

VBF's theory of Canaccord's wrongdoing is frivolous. VBF alleges that it retained Canaccord to secure debt and equity financing. That work was governed by an engagement agreement under which VBF expressly assumed all responsibility for the accuracy of the information that it provided to Canaccord for use in marketing materials. Despite that undertaking, VBF alleges that during the course of Canaccord's work, (1) VBF provided false and misleading information to Canaccord for Canaccord to use in its efforts to secure financing for VBF, then (2) Canaccord somehow duped VBF with the same false and misleading information. VBF also repeatedly states that Canaccord used this VBF-provided information to solicit debt and equity financing from unnamed potential investors, but nowhere alleges that Canaccord actually secured any such financing and never explains how VBF was harmed by Canaccord's use of the information that VBF provided. Even worse, VBF's relationship with Canaccord ended when VBF breached the parties' engagement agreement by sourcing its own investors and refusing to pay Canaccord's fee. Ultimately, after Canaccord threatened to sue, VBF settled by agreeing to pay Canaccord cents on the dollar and providing a complete release of any claims relating in any

1

way to Canaccord's work.  All told, Canaccord must be dismissed from this action for no less than four independent reasons.

*First*, this Court does not have personal jurisdiction over Canaccord.  The Complaint alleges that Canaccord (a Delaware company with Canadian "roots") made misrepresentations during its work for a Canadian company that harmed VBF (a Nevada corporation with its principal place of business in Iowa).  Although the Complaint alleges that certain of Canaccord's co-defendants are domiciled in Texas and that Canaccord occasionally communicated with those individuals, it does not allege that any of Canaccord's supposed misconduct occurred in Texas or that anyone in Texas was harmed as a result.  In short, the Complaint is utterly devoid of relevant contacts linking Canaccord, Texas, and this lawsuit.  Because VBF has not adequately pleaded this Court's jurisdiction over Canaccord, Canaccord must be dismissed from this action.

*Second*, VBF's claims against Canaccord are clearly barred by two agreements between the parties.  The claims against Canaccord all stem from what the Complaint refers to as the "Canaccord Project," in which Canaccord agreed to assist VBF with securing debt and equity financing.  More specifically, VBF claims that, during the course of Canaccord's work, VBF's officers and directors provided Canaccord with false or misleading information, which Canaccord then transmitted to other unnamed potential investors.  But the initial engagement agreement between VBF and Canaccord, which lays out the terms of the "Canaccord Project," explicitly states that Canaccord would be "entitled to rely on, and assume[d] no obligation to verify, the accuracy or completeness of such information and under no circumstances [would] be liable to [VBF] for any damages arising out of the inaccuracy or incompleteness of any such information."  In addition, after Canaccord later threatened to sue VBF for breaching the parties' engagement agreement, VBF entered into a settlement with Canaccord in which it released Canaccord from

2

any and all claims based upon, relating to, or arising out of the engagement agreement or the services that Canaccord provided to VBF under the engagement agreement.  These provisions clearly bar VBF's claims and require dismissal of Canaccord from this action.

*Third*, VBF's claims all sound in fraud—VBF claims that Canaccord entered into a conspiracy or aided a conspiracy to mislead certain categories of unnamed individuals—but its allegations lack the most basic elements of a fraud claim.  VBF fails to identify with particularity *who* Canaccord misled, *what* actions these unidentified persons took in reliance on Canaccord's supposed misrepresentations, *when* and *where* these supposed misrepresentations took place, and *how* VBF was harmed as a result.  Further, VBF does not plausibly allege that Canaccord had a "meeting of the minds" and "agreed" to engage in any misconduct with the other defendants.  At most, the allegations show that Canaccord agreed to provide VBF with investment banking services; it carried out those duties in good faith and in conformity with its agreement with VBF; and VBF cheated Canaccord by not paying fees owed under their agreement.  VBF's failure to plead the essential elements of its claims requires dismissal of Canaccord.

*Fourth*, this Court is not the proper venue for VBF's claims against Canaccord.  As explained above, VBF's claims against Canaccord arise out of the "Canaccord Project," which is the subject of an engagement agreement between the parties.  That engagement agreement contains an exclusive venue provision, which requires that VBF bring its claims in New York state or federal courts.  Because this exclusive venue provision is mandatory and is binding and enforceable against VBF, Canaccord must be dismissed from this action.

 For these reasons, the claims against Canaccord must be dismissed with prejudice.

## BACKGROUND

### I.    Canaccord's Relationship With VBF.

VBF is a Nevada corporation with its principal place of business in Webster City, Iowa, and, until its recent bankruptcy, was engaged in the sustainable fish farm business.  (SAC ¶¶ 1, 4.) Canaccord is a Delaware limited liability company with Canadian "roots" that provides full-service investment banking and financial services.  (SAC ¶ 11.)  On February 3, 2015, Canaccord and VBF entered into a Private Placement Engagement Agreement (the "Engagement Agreement") whereby VBF retained Canaccord to source debt and equity funding.  (SAC ¶¶ 65-72; Appendix to Defendant Canaccord Genuity LLC's Motion to Dismiss Plaintiff VeroBlue Farms USA, Inc.'s Second Amended Complaint ("Appendix"), Ex. A at APP0004-13 (Engagement Agreement).)  The Engagement Agreement laid out standard terms for investment banking services.  Canaccord agreed to work with another entity as an exclusive co-agent in soliciting debt and equity funding for VBF.  (Engagement Agreement at APP0005.)  VBF, in turn, authorized Canaccord to distribute to prospective investors certain marketing materials. (Engagement Agreement at APP0006-8.)  Because Canaccord would have to rely on information provided by VBF in carrying out its responsibilities, VBF further acknowledged that it was "solely responsible for the accuracy and completeness" of those marketing materials.  (Engagement Agreement at APP0006, APP0008.)   The Engagement Agreement also explicitly stated that Canaccord "assume[d] no obligation to verify the accuracy or completeness of" information prepared or supplied by VBF and "under no circumstances w[ould] be liable to [VBF] for any

4

damage arising out of the inaccuracy or incompleteness of any such information." (Engagement Agreement at APP0008.)[1]

The relationship between the two companies lasted less than two years. On July 11, 2016, VBF breached the Engagement Agreement by separately obtaining debt and equity funding and refusing to pay Canaccord the fees it owed under the exclusive Engagement Agreement. (Appendix, Ex. B (Mutual Release) at APP0015.) On September 26, 2016, the parties entered into a Settlement Agreement and Mutual Release (the "Mutual Release") whereby VBF paid Canaccord $475,000 and agreed to release Canaccord from any and all claims arising out of, or relating to, the Engagement Agreement and the services Canaccord provided under the Engagement Agreement. (Mutual Release at APP0015-21.) Canaccord and VBF have had no relationship since the parties signed the Mutual Release on September 26.[2]

## II.    The Complaint's Canaccord-Related Allegations.

The first set of substantive allegations in the Complaint catalogue a number of discrete fraudulent "schemes" allegedly perpetrated by five of VBF's former officers and directors. (SAC ¶¶ 25-53.) Those schemes range from a former director improperly hiring his own daughter to the

---

[1] Further, VBF agreed to indemnify Canaccord for any action or claim "brought by or against any person . . . in connection with or as a result of (i) the engagement [between VBF and Canaccord] or (ii) any untrue statement or alleged untrue statement of a material fact contained in any Materials, or any omission or alleged omission to state therein a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading." (Engagement Agreement at APP0012.)

[2] This Court may refer to the Engagement Agreement and the Mutual Release because the contracts were incorporated by reference in the Complaint, and the contracts are central to VBF's claims. (*See, e.g.*, SAC ¶¶ 65-72 (describing the engagement of Canaccord, the services Canaccord provided under the engagement, and the termination of the engagement); *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. H-01-3624, 2003 WL 23316646, at *5 (S.D. Tex. Mar. 27, 2003) ("[C]ourts may . . . routinely consider in a Rule 12(b)(6) review not only documents named in Plaintiffs' complaint, but even documents that, if not named, are pertinent, central or integral to [Plaintiffs'] claim." (collecting cases)).

same director using company resources to build his vacation home.  (*See* SAC ¶¶ 25-53.) Whatever their merit, these allegations do not mention Canaccord or any of its employees and are clearly unrelated to Canaccord's work for VBF.[3]

What follows in the Complaint is a jumbled mess of vague fraud allegations and conclusory conspiracy claims.  Despite the Complaint's prolix style, the allegations relating to Canaccord can be boiled down into a simple story.  VBF alleges that VBF's own officers and directors provided false and misleading information to Canaccord during the course of the "Canaccord Project." (SAC ¶¶ 73, 74, 88, 106, 107, 108, 109, 117, 119, 122, 125, 136, 138, 153, 168, 169; SAC, Exs. 3, 4, 6, 13, 19, 20.)  VBF then alleges that Canaccord relayed (or helped others relay) that VBF-provided information to unnamed "VBF directors" (SAC ¶ 72), unnamed "others"  (SAC ¶¶ 72, 117, 153), the "marketplace" (SAC ¶¶ 74, 107), unnamed "potential lenders and/or shareholders" (SAC ¶ 106), and unnamed "VBF disinterested directors and potentially interested third parties" (SAC ¶¶ 72, 107).  That's it.  VBF does not allege that Canaccord benefitted from any claimed misstatement or that anyone relied to their detriment on Canaccord's supposed misstatements.[4]

Further, nothing in the Complaint suggests that Canaccord knew that the information provided by VBF was wrong or misleading.  VBF points to four episodes that it claims demonstrate Canaccord's participation in a fraud.  First, VBF identifies an email from a third party, Dr. Anthony Michaels, who provided Canaccord with anecdotal criticisms and pushback on certain assumptions in a presentation.  (*See* SAC ¶¶ 75-83; SAC, Ex. 5.)  However, VBF admits that Canaccord transparently passed this information on to VBF's officers and directors and that its then-CEO (co-

---

[3] VBF includes other allegations of misconduct by the same five former VBF officers and directors later in the Complaint.  (*See* SAC ¶¶ 171-229.)  These allegations are also clearly unrelated to Canaccord or its engagement with VBF.

[4] In contrast, VBF alleges that other defendants misappropriated funds from VBF.  (SAC ¶ 73.)

defendant Leslie Wulf) told others, in essence, to disregard the email because Dr. Michaels was not an expert and his negative input was the product of jealousy.  (SAC ¶¶ 84-85.)  In fact, VBF alleges that *its own CEO* (not Canaccord) lied in an effort to undermine Dr. Michaels.  (SAC ¶ 85.)  Second, VBF alleges that Canaccord "ignored" warnings from another third party, Dr. Kevin Fitzsimmons, about "fatal flaws and false data" in VBF's representations.  (SAC ¶¶ 87, 88.)  But those "warnings" (which are really just constructive "comments" and "points to consider" on a presentation), came in an email dated September 17, 2014 (*see* SAC ¶ 97; SAC, Ex. 9), which was months before the "Canaccord Project" began, and VBF never alleges that anyone from Canaccord actually received or saw those comments, (*see* SAC ¶¶ 66, 87-88, 97-98, 152, 156.)  Third, VBF alleges that its then-CEO lied to Canaccord about the amount of committed equity investment that he had secured.  (SAC ¶ 88; SAC, Ex. 6.)  In the relevant email exchange, a representative from Canaccord asked Mr. Wulf for "feedback from a recent site visit."  (SAC, Ex. 6.)  Mr. Wulf responded, "very good we have several groups in line for lead orders" and that the Canaccord representative can tell "the guy [they] met in NY the story [that] we [are] over 50% book full."  (SAC, Ex. 6.)  VBF alleges "[t]his was false as VBF had no such commitments at that time."  (SAC ¶ 88.)  But this exchange only shows that *VBF lied to Canaccord*, not that Canaccord was dishonest.[5]  Finally, VBF badly mischaracterizes an email exchange between Canaccord personnel and Mr. Wulf regarding modeling VBF's financial metrics.  (SAC ¶¶ 119-21.)  In the exchange, a VBF employee told Canaccord that VBF's financial model was conservative and that he and others would work to "identify all of the items of cushion."  (SAC, Ex. 24.)  In response, a Canaccord representative suggested listing "the assumptions that are conservative" and showing the

---

[5] In fact, VBF alleges that Mr. Wulf repeatedly lied to Canaccord.  (*See, e.g.*, SAC ¶¶ 88, 108, 109, 119, 122, 136, 138.)

corresponding "impact of each on performance." (SAC, Ex. 24.)  In other words, Canaccord suggested building one conservative and a second less conservative financial model in a transparent fashion based on input from VBF.  There is simply nothing remarkable—or actionable—about this exchange.

*     *     *

In sum, Canaccord provided investment banking services for VBF for approximately a year and a half.  In that time, Canaccord properly relied on information provided by VBF when preparing marketing materials, but never actually secured investment in VBF.  Instead, VBF obtained funding outside of the Engagement Agreement and refused to pay Canaccord's exclusive agent fee.  VBF then released Canaccord from all claims relating to Canaccord's services as part of a settlement agreement that ended the parties' relationship.  Canaccord, in other words, was cheated by VBF—not the other way around.

## APPLICABLE LEGAL STANDARDS

*Federal Rule of Civil Procedure 12(b)(2)*: The exercise of personal jurisdiction is appropriate only if permitted by the Texas long-arm statute and doing so comports with the Constitution's Due Process Clause.  *See Wien Air Alaska, Inc. v. Norddeutsche*, 62 F.3d 396, 396 (5th Cir. 1995).  However, "[b]ecause the Texas long-arm statute permits the exercise of personal jurisdiction to the extent allowed by the constitution, the sole jurisdictional issue is whether the exercise of personal jurisdiction would violate the constitution."  *Id.*

In order for personal jurisdiction to satisfy Due Process requirements, VBF must first make a prima facie showing that Canaccord purposefully availed itself of the benefits and protections of Texas by establishing "minimum contacts" with the state.  *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431

(5th Cir. 2014) ("The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper."). The "minimum contacts" analysis is divided into two parts: (1) contacts sufficient for general jurisdiction, and (2) contacts sufficient for specific jurisdiction. *See Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). General jurisdiction exists only when the defendant has such continuous and systematic contacts with the forum state so as to be "at home" in that state. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-39 (2014). Specific jurisdiction is appropriate only when the defendant has sufficient contacts with the forum state that arise from or are directly related to the cause of action. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). VBF does not satisfy either standard.

**Federal Rule of Civil Procedure 12(b)(3)**: On a Rule 12(b)(3) motion, once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that the chosen venue is proper. *See Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 558 (N.D. Tex. 2003). In resolving a Rule 12(b)(3) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B. V.*, 570 F.3d 233, 238 (5th Cir. 2009) (internal quotation marks omitted). Here, Canaccord's Rule 12(b)(3) motion is based on a forum selection clause in its Engagement Agreement with VBF. A forum selection clause "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1971). The party opposing enforcement of the forum selection clause has the burden of proving that the clause is unreasonable and unjust. *Id.* If venue is improper, the Court has broad discretion to dismiss the case. *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 606 (N.D. Tex. 2017).

**Federal Rule of Civil Procedure 12(b)(6)**: As a general matter, dismissal under Rule 12(b)(6) is warranted if the complaint does not contain sufficient factual matter, accepted as true,

to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must also provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Because VBF's claims sound in fraud, VBF must also meet the heightened pleading requirements of Rule 9(b).[6] Rule 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pleading fraud with particularity in this Circuit requires a plaintiff to allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). In other words, the Fifth Circuit requires a complaint to set forth specific facts showing "the who, what, when, where, and how" of the circumstances constituting the asserted fraudulent activity. *Goldstein v. MCI Worldcom*, 340 F.3d 238, 245 (5th Cir. 2003). VBF's claims against Canaccord do not satisfy these pleading requirements.

---

[6] VBF's claims are subject to Rule 9(b)'s pleading standard because they are premised on allegations that sound in fraud. *See Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*, No. 4:17-cv-00225-O, 2017 WL 9934885, at *4-5 (N.D. Tex. Nov. 27, 2017) (when a claim for aiding and abetting is premised on a claim for fraud, a plaintiff must satisfy the requirements for Rule 9); *Smith v. HSBC Bank*, No. 3:15-cv-00094-P, 2015 WL 12911463, at *4 (N.D. Tex. Aug. 6, 2015) (where the alleged conspiracy sounds in fraud, the complaint must satisfy the heightened pleading standards in Rule 9).

## ARGUMENT

I.   **The Complaint Must Be Dismissed Because This Court Lacks Personal Jurisdiction Over Canaccord.**

VBF's complaint fails to make a prima facie showing that this Court has general or specific personal jurisdiction over Canaccord.  *See* Fed. R. Civ. P. 12(b)(2).

### A.   VBF Fails To Establish General Jurisdiction Over Canaccord.

VBF does not make a prima facie showing of general jurisdiction over Canaccord.  General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit."  *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014).  "[T]he proper consideration when determining general jurisdiction is whether the defendant's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Monkton*, 768 F.3d at 432 (alteration and internal quotation marks omitted).  A company's "place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction.  *Id.*  "It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."  *Id.*; *see also Whitener v. Pliva, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015).  For example, in *Daimler*, "the Supreme Court rejected general jurisdiction over [the defendant] even though it had multiple offices, continuous operations, and billions of dollars' worth of sales" in the forum state.  *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 3:15-CV-01121-M, 2016 WL 1069675, at *3 (N.D. Tex. Mar. 16, 2016) (citing *Daimler*, 571 U.S. at 136-39).

Here, VBF alleges that Canaccord is a Delaware company with "roots as a firm" in Canada. (SAC ¶ 11.)  VBF does not allege that Canaccord's principle place of business is in Texas nor does it provide exceptional circumstances warranting the exercise of general jurisdiction over

Canaccord in Texas.  Thus, VBF's allegations are plainly insufficient to establish this Court's general jurisdiction over Canaccord.

### B.      VBF Fails To Establish Specific Jurisdiction Over Canaccord.

VBF also fails to meet its burden of establishing specific jurisdiction.  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*

VBF's theory of the case does not tie Canaccord's alleged misconduct to Texas.  VBF alleges that Canaccord (a Delaware company with "roots" in Canada) was retained to perform investment banking services for "VeroBlue Canada" and that Canaccord somehow injured VBF (a Nevada corporation with its principle place of business in Iowa) by making misrepresentations to unnamed third parties, potential investors, and disinterested directors during the course of its work.  (*See* SAC ¶¶ 4, 11, 18, 65.)  Further, VBF affirmatively alleges that Canaccord's supposed misconduct occurred in a number of locations other than Texas, including New York City.  (*See, e.g.*, SAC ¶ 122.)  In other words, there is simply no link between Canaccord, Texas, and VBF's claims.  *See Inmar Rx Sols., Inc. v. Devos, Ltd.*, No. 18-11443, 2019 WL 4440400, at *2 (5th Cir. Sept. 16, 2019) (specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. . . . Such activity or occurrence must create a substantial connection with the forum State").

The Complaint includes sparse references to Texas, but those allegations are insufficient to establish specific jurisdiction over Canaccord.

*First*, VBF alleges that some of Canaccord's alleged co-conspirators are domiciled in Texas. (*See* SAC ¶¶ 7, 8, 9, 10.) But an alleged co-conspirator's connections to the forum state are irrelevant to whether this Court has jurisdiction over Canaccord. *See Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) ("[Plaintiff] was required to demonstrate that [defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas."); *Weinberg v. Nat'l Football League Players Ass'n*, No. 306-CV-2332-B, 2008 WL 4808920, at *5 (N.D. Tex. Nov. 5, 2008) ("Even with allegations of a conspiracy, the Court must still evaluate each of the Defendants' contacts separately to determine whether personal jurisdiction exists.").

*Second*, VBF alleges that Canaccord's supposed co-conspirators—some of whom are domiciled in Texas—"retained" Canaccord to raise funds for VBF and that Canaccord personnel occasionally exchanged emails and phone calls with those co-conspirators. (SAC ¶¶ 10, 11, 70, 71; SAC, Exs. 3, 4, 5, 6, 19, 20, 23, 24, 25, 29.) These contacts are insufficient to establish specific personal jurisdiction. As the Supreme Court has explained, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. Thus, a defendant's relationship with a "party, standing alone, is an insufficient basis for jurisdiction." *Id.* As a result, Canaccord's communications with a Texas resident, standing alone, do not establish jurisdiction. *See id.* ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."); *see also Little v. SKF Sverige AB*, 594 F. App'x 810, 812 (5th Cir. 2014).[7] There is simply no connection between Canaccord's relevant conduct, under the rubric laid out by the Supreme Court, and Texas: VBF does not allege that Canaccord made

---

[7] Texas courts similarly hold that "[e]vidence that the defendant had Texas communications in planning to commit a tort . . . is in itself insufficient to support specific jurisdiction." *Hatzenbuehler v. Essig*, 526 S.W.3d 657, 664 (Tex. App. 2017).

misrepresentations through personnel working in Texas; VBF does not allege that Canaccord made misrepresentations to anyone located in Texas; and VBF does not allege that Canaccord made misrepresentations that caused harm in Texas. These allegations, therefore, cannot form the basis for specific jurisdiction over Canaccord. *See Delta Brands*, 99 F. App'x at 8.

*Third*, VBF alleges that "[t]his Court has personal jurisdiction over Defendants pursuant to § 17.042(2) of the Texas Civil Practice and Remedies Code, as the Defendants committed torts in part in Texas." (SAC ¶ 17.) This allegation is irrelevant to the specific jurisdiction analysis for three reasons. As an initial matter, by referring to "defendants" generally, this allegation impermissibly resorts to group pleading. *See Head v. Las Vegas Sands, Ltd. Liab. Corp.*, 760 F. App'x 281, 284 (5th Cir. 2019) (dismissing, in part, because plaintiff failed to establish "personal jurisdiction over each defendant without grouping them together"). Next, "conclusory allegations or legal conclusions masquerading as factual conclusions," such as this, "will not suffice to prevent a motion to dismiss" for lack of personal jurisdiction. *Wien Air Alaska*, 62 F.3d at 396. Finally, VBF never alleges that Canaccord actually committed a tort in Texas. Under Section 17.042(2), "[a] tort is committed where the resulting injury occurs." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 343 S.W.3d 466, 471 (Tex. App. 2010). Here, Canaccord allegedly injured VBF in Iowa or Nevada, not Texas. (*See* SAC ¶¶ 4, 11, 18.)

Because VBF fails to make a prima facie showing of both general and specific jurisdiction, Canaccord must be dismissed from this action. *See Dynamo v. Warehouse of Vending & Games*, 168 F. Supp. 2d 616, 620 (N.D. Tex. 2001).[8]

_____

[8] Even if VBF alleged sufficient minimum contacts between Canaccord and Texas (it has not), exercising personal jurisdiction over Canaccord would run afoul of due process requirements because the assertion of jurisdiction would offend "traditional notions of fair play and substantial justice." *See Valdez v. Kreso, Inc.*, 157 F. Supp. 2d 722, 726 (N.D. Tex. 2001) (holding that the

**II.     The Complaint Must Be Dismissed Because VBF's Claims Are Barred By The Engagement Agreement And The Mutual Release Between The Parties.**

VBF's claims against Canaccord all arise out of the "Canaccord Project," which is the subject of the Engagement Agreement and the Mutual Release.  (*See* SAC ¶¶ 66-89; *see also supra* at 4-8.)   According to VBF, the Canaccord Project began "in or around January 2015" and consisted of Canaccord attempting to raise debt and equity investments for VBF.  (SAC ¶ 66, 68.) The crux of VBF's claims is that, during the course of Canaccord's engagement, Canaccord "secur[ed] investments based on false data and/or misrepresentations while concealing the same from VBF, its disinterested board members, and potentially interested third parties."  (SAC ¶¶ 72, 359.)   However, the Engagement Agreement excludes liability for these claims and the Mutual Release explicitly released them.   Because the language in those agreements is clear and unambiguous, Canaccord must be dismissed from this action.

Under New York law, which governs both the Engagement Agreement and the Mutual Release,[9] the interpretation of a contractual limitation of liability or release is for the court to undertake as a matter of law, and therefore is appropriate for disposition on a motion to dismiss. *See LeMay v. H.W. Keeney, Inc.*, 508 N.Y.S.2d 769, 770 (N.Y. App. Div. 1986).   When the language of a contractual limitation of liability or release is clear and unambiguous, the Court will give effect to the intention of the parties as evidenced by the language within the four corners of the document.  *Klapper v. Graziano*, 970 N.Y.S.2d 355, 360 (N.Y. Sup. Ct. 2013) ("[P]arties are

---

exercise of jurisdiction over the defendant "would be constitutionally impermissible" because it would not "comport with traditional notions of fair play and substantial justice").   Among other things, it would place a heavy burden on Canaccord to litigate in Texas, while Texas has little to no interest in serving as a forum for this litigation.

[9] In interpreting these provisions, this Court must apply Texas' choice-of-law rules.  *See Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 746 (N.D. Tex. 2018).   Texas courts "permit choice-of-law agreements and the default position is that they are enforceable."  *Id.* Here, both the Engagement Agreement and the Mutual Release contain choice of law clauses that select New York law.  (*See* Engagement Agreement at APP0013; Mutual Release at APP0018.)

free to enter into contractual agreements which limit liability and such agreements will be binding

upon the parties provided the language is sufficiently clear and unambiguous.").  In addition,

where, as here, an agreement is signed in a commercial context by parties in a roughly equivalent

bargaining position and with ready access to counsel, New York courts are even more inclined to

look only to the language of the agreement to ascertain objectively the parties' intent with respect

to its scope.  *See Locafrance U. S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d

Cir. 1977) (applying New York law).

　　Here, the language of the agreements could not be clearer.  The Engagement Agreement,

which lays out the terms of the "Canaccord Project," states:

> In carrying out [Canaccord's] responsibilities under this agreement, [Canaccord]
> will necessarily rely on information prepared or supplied by [VBF] . . . [Canaccord]
> will be entitled to rely on, and assume no obligation to verify, the accuracy or
> completeness of such information and under no circumstances will be liable to
> [VBF] for any damages arising out of the inaccuracy or incompleteness of any such
> information.[10]  (*See* Engagement Agreement at APP0008.)

　　The Mutual Release, which provided the terms for the termination of the "Canaccord

Project," states:

> [VBF] release[s] and discharge[s] Canaccord . . . from any and all claims, demands,
> damages, debts, disputes, liabilities, accounts, obligations, costs, expenses, actions

---

[10] The Engagement Agreement is between Canaccord and "VeroBlue Farms, Inc. and its present and future subsidiaries and any entity used thereby to facilitate the transactions contemplated thereby," which includes VBF.  (Engagement Agreement at APP0005.)  VBF concedes in the Complaint that it was a subsidiary of VeroBlue Farms, Inc. ("VBF Canada").  (*See* SAC ¶ 26 ("VBF Canada initially owned the shares of VBF."); ¶ 50 (stating that the founders of VBF directed the issuance of VBF Canada's stock); ¶ 189 (referring to VBF Canada as a "VBF-related" entity).)  Further, in VBF's recent bankruptcy filing, of which this Court may take judicial notice, VBF represented in its corporate ownership statement that VBF Canada still owns nearly 30 million securities, and at least 10% of VBF's total equity interests.  *See* Voluntary Pet. for Non-Individuals Filing for Bankr., *In re VeroBlue Farms USA, Inc.*, No. 3:18-bk-01297 (Bankr. N.D. Iowa Sept. 21, 2018), ECF No. 1.  VBF also concedes in the Complaint that it "facilitated the transactions" contemplated by the Engagement Agreement.  (*See, e.g.*, SAC ¶¶ 65, 71.)  Thus, VBF is plainly bound by the terms of the Engagement Agreement.

and causes of action, of every nature, whether based upon tort, contract or any other theory of recovery, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, which it or [VBF] ever had, now has, owns or holds, or at any time heretofore ever had, owned or held, or may at any time have, own or hold, against the [Canaccord], based upon, relating to or arising out of the Engagement Agreement, . . . the engagement of Canaccord to provide services to [VBF] and its subsidiaries, and or the services that Canaccord provided to [VBF] and its subsidiaries.[11]  (*See* Mutual Release at APP0016.)

Thus, based on the clear and unambiguous language of both the Engagement Agreement and Mutual Release, VBF is barred from pursuing its claims against Canaccord.  Because there is no reason to set aside these releases or to interpret them in a manner inconsistent with their unambiguously plain meaning, the claims against Canaccord must be dismissed.  *See Middle E. Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 908 (2d Cir. 1987).[12]

## III.    The Complaint Must Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted.

The claims against Canaccord in the Complaint must be dismissed because VBF fails to adequately allege Canaccord's participation in fraud or a conspiracy to commit fraud.  *See* Fed. R. Civ. P. 9(b), 12(b)(6).

VBF includes two claims against Canaccord in the Complaint, both of which sound in fraud: (1) Canaccord "agreed to engage in a conspiracy [with certain of the individual defendants] for its personal benefit, to cause harm to VBF by securing investments based on false data and/or

---

[11] By its language, the Mutual Release binds VBF Canada and its "affiliates," including VBF. (Mutual Release at APP0015); *Geier v. Mozido, LLC*, No. 10931-VCS, 2016 WL 5462437 (Del. Ch. Sept. 29, 2016) (non-signatory affiliates are bound to a release agreement under New York law).

[12] Notably, VBF challenges the validity of the termination agreements entered into with several of the individual defendants (*see* SAC ¶¶ 309-22, 328-52), but does not challenge either the Engagement Agreement or the Mutual Release.  This omission is particularly telling because VBF previously attached these agreements to a filing in a related action on August 9, 2019 and Canaccord affirmatively raised the release provisions in those same proceedings.  *See* Opp. to Pl. VeroBlue Farms USA, Inc. Mot. to Compel Resp. to Subpoena, *Veroblue Farms USA, Inc. v. Leslie A. Wulf, et al.*, No. 1:19-mc-00375-AJN (S.D.N.Y. Sep. 3, 2019), ECF No. 11.

misrepresentations while concealing the same from VBF, its disinterested board members, and potentially interested third parties"; and (2) Canaccord aided and abetted those individual defendants in carrying out that conspiracy.  (SAC ¶¶ 359, 367.)[13]

VBF's claims fall well short of pleading fraud with particularity.  This Circuit requires strict adherence to Rule 9(b)'s heightened pleading standard and demands a plaintiff alleging fraud to identify "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman*, 14 F.3d at 1068.  VBF must also plead the elements of conspiracy, which are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."  *Smith*, 2015 WL 12911463, at *4.  VBF's claims against Canaccord do not satisfy the elements of conspiracy or any underlying fraud.

*First*, VBF does not adequately allege that Canaccord had a "meeting of the minds" with the other defendants or had the specific intent to commit fraud.  VBF never identifies a specific time or place in which any meeting of the minds took place as required for a civil conspiracy claim. *See Patel v. Pac. Life Ins. Co.*, No. 3:08CV0249B, 2009 WL 1456526, at *16 (N.D. Tex. May 22,

---

[13] This Court need not separately consider VBF's aiding and abetting claim for two reasons.  First, Texas does not recognize a cause of action for aiding and abetting fraud.  *See Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, No. 3:08CV0102B, 2008 WL 3925272, at *14 (N.D. Tex. Aug. 27, 2008) (dismissing an aiding and abetting fraud claim because "Texas does not recognize such a cause of action").  Second, VBF's aiding and abetting claim is redundant of its conspiracy to commit fraud claim.  *See In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. H-01-3624, 2006 WL 3716669, at *8 & n.7 (S.D. Tex. Dec. 12, 2006) ("Plaintiffs argue that they have pleaded both conspiracy to commit fraud and aiding and abetting.  The Court's response then is that, as a separately pleaded claim, the aiding and abetting claim is redundant and unnecessary.").  Even if this Court were to separately consider this claim, it fails because VBF has not alleged any underlying conspiracy or fraud, and has not alleged that Canaccord knew of or aided any such conspiracy or fraud.  (*See infra* at 18-23); *Hill v. Hunt*, No. 307-CV-2020-O, 2010 WL 54756, at *4 (N.D. Tex. Jan. 4, 2010).

2009) (dismissing conspiracy claim because plaintiff failed to identify the "specific time or place in which any meeting of the minds took place").  Instead, VBF primarily bases its conspiracy claim on allegations that Canaccord assisted VBF with soliciting debt and equity financing (*see, e.g.*, SAC ¶¶ 66, 68), and Canaccord personnel had frequent contact with VBF's officers and directors during the course of its work (*see, e.g.*, SAC ¶ 71).  But nothing about those allegations suggests that Canaccord agreed to defraud VBF; the more plausible inference is that Canaccord agreed to provide honest investment banking services for VBF and carried out its work in good faith.  *See Cty. of El Paso, Tex. v. Jones*, No. EP-09-CV-00119-KC, 2009 WL 4730343, at *11 (W.D. Tex. Dec. 4, 2009) (dismissing conspiracy claim because the alleged facts were "broadly compatible with a scenario in which [the defendant] was involved in the conspiracy," but were "equally compatible with any number of other scenarios, and thus d[id] not 'nudge' the case from mere conceivability across the line to 'plausible'").  VBF also points to allegedly false information provided by VBF to Canaccord, which Canaccord allegedly transmitted to unidentified parties. (*See supra* at 6.)  But there is nothing nefarious about *Canaccord's* conduct as described in these allegations, especially given that (1) VBF does not allege with specificity that Canaccord knew that the information was false or misleading, and (2) the Engagement Agreement specifically stated that Canaccord was entitled to rely on the accuracy of information provided by VBF.  (*See supra* at 4-8,16.)[14]

---

[14] Notably, VBF describes several email chains as examples of Canaccord's participation in a "joint manipulation" in furtherance of a conspiracy to defraud investors.  (*See* SAC ¶¶ 74, 88; SAC, Exs. 4, 6.)  But VBF fails to highlight a crucial point: in all of these documents, the representations were made entirely and unilaterally by VBF to Canaccord and do not show that Canaccord knew that the information was misleading or relayed this information to anyone else (much less that some third party relied on them to their detriment).

Further, VBF's allegations affirmatively undercut its "meeting of the minds" claim.  For instance, VBF alleges that its former CEO, Mr. Wulf, lied to Canaccord repeatedly, often in an attempt to conceal the falsity of information provided to Canaccord by VBF.  (*See supra* at 7.)  It is nonsensical to assert that Mr. Wulf lied to Canaccord and also claim that they were engaged in a conspiracy together.  *See Smith*, 2015 WL 12911463, at *4 (dismissing conspiracy claim where co-conspirators' alleged conduct showed that they were in conflict).  VBF also alleges that a conspiracy between the other defendants began *before* the "Canaccord Project" started and continued *after* the "Canaccord Project" ended.  (*See* SAC ¶¶ 25-51 (describing conduct by other defendants in 2014), ¶ 65 (stating that the other defendant's misconduct continued until early 2018), ¶ 66 (stating that the "Canaccord Project" began in or around January 2015 and ended in or around July 2016), ¶ 290 (stating that other defendants entered into a conspiracy at "the outset of their misconduct").)  That contradiction undermines the plausibility of VBF's conspiracy claim.  *See Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:10-CV-2618-D, 2012 WL 2864510, at *7 & n.18 (N.D. Tex. July 12, 2012) (plaintiff failed to allege "meeting of the minds," in part, because two of the alleged conspiracy participants could not have been part of the conspiracy at its inception).  Finally, Canaccord repeatedly threatened to sue VBF and ultimately reached a settlement with VBF for pennies on the dollar—that is simply not reflective of a "meeting of the minds" or the conduct of a conspirator seeking to conceal its wrongdoing.  (*See supra* at 4-5.)

Because the Complaint fails to allege an agreement between Canaccord and the other defendants to engage in fraud, the claims against Canaccord must be dismissed.  *Baron v. Baron*, No. 3:16-CV-3465-C-BH, 2018 WL 1156002, at *9 (N.D. Tex. Feb. 13, 2018) (dismissing conspiracy claim because "speculative and conclusory allegations do not plausibly show a 'preconceived plan' . . . to commit fraud or to do anything in furtherance of committing fraud").

*Second*, for each of the alleged misstatements, VBF fails to allege with particularity the necessary elements for a fraud claim: *who* made the misstatements, *when* the misstatements were made, *where* the misstatements were made, and to *whom* the misstatements were made.  The Fifth Circuit requires strict compliance with these specificity requirements.  For example, in *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, the court considered allegations that, "[i]n the negotiations leading up to the signing of [a] Consulting Agreement on April 13, 2002, [the defendant] represented that he had contacts and business relationships with individual financing institutions that would assist [the plaintiffs]. . . . [The defendant] made the[se] statements for the sole purpose of inducing [the plaintiffs] into signing a contract with him and his company."  115 F. App'x 662, 668 (5th Cir. 2004).  The court held that these allegations did "not allege a particular time or place of the false representations" or set forth "specific facts" to support the inference of fraud.  *Id.*  VBF's allegations suffer from the same defects.

To assist the Court in sifting through VBF's allegations, Canaccord has attached a summary chart matching the alleged misrepresentations identified in the Complaint with the required elements of a fraud claim.  (*See* Appendix, Ex. C at APP0023-51 ("Summary Chart").)[15] As the Summary Chart demonstrates, VBF alleged Canaccord's involvement in only a fraction of the alleged misstatements identified in the Complaint, and in each of those instances, VBF fails to allege with particularity Canaccord's engagement in fraud in furtherance of the supposed conspiracy.  (*See* Summary Chart at APP0023-51.)  Indeed, the Summary Chart demonstrates that

---

[15] Courts regularly rely on this type of summary chart when considering a motion to dismiss in cases involving allegations of a large number of misstatements.  *See, e.g.*, *Kader v. Sarepta Therapeutics, Inc.*, No. 1:14-CV-14318-ADB, 2016 WL 1337256, at *10 (D. Mass. Apr. 5, 2016); *In re Enron Corp.*, 2003 WL 23316646, at *4; *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 881-84 (S.D. Tex. 2001).

21

the Complaint fails to allege with particularity an actionable misstatement by any member of the supposed conspiracy. (*See* Summary Chart at APP0023-51.)[16]  Because VBF fails to adequately allege any misstatements, much less an unlawful act by Canaccord, the claims against Canaccord must be dismissed. *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1195 (5th Cir. 1995) (a conspiracy claim requires a plaintiff to plead "one or more wrongful, overt acts" in furtherance of the conspiracy that would be actionable against the conspirators individually).

*Third*, VBF fails to allege that anyone relied on Canaccord's alleged misstatements or that Canaccord obtained anything as a result of its supposed misconduct. (*See* Summary Chart at APP0023-51.)  VBF's claims are all premised on the generalized assertion that Canaccord "secured investment" in VBF through the use of misrepresentations about the company's financial viability. (*See* SAC ¶ 359.)  But VBF never actually identifies any investment obtained by Canaccord.[17]  That is unsurprising given that VBF breached its exclusive Engagement Agreement with Canaccord by obtaining investors on its own, outside of those identified and approached by Canaccord, and later broke off its relationship with Canaccord entirely. (*See supra* at 5.)  For the

---

[16] The Summary Chart also shows that the specificity issues with VBF's claims are exacerbated by VBF's use of "on information and belief" pleadings. (*See* Summary Chart at APP0023-51.) This Circuit allows a plaintiff to use "on information and belief" when alleging fraud only where (1) the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge and (2) the complaint sets forth a factual basis for such belief." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Here, VBF bases its fraud claims primarily on alleged misconduct by its own former officers and directors. (*See, e.g.*, SAC ¶ 1 (alleging that its own employees, and not Canaccord, "misappropriated" and "squandered" the company's money).) It, therefore, clearly has access to the facts underlying its fraud claims. In addition, the Complaint never provides the basis for its belief in these allegations. (*See* Summary Chart at APP0023-51.)

[17] VBF also never explains why it should be permitted to recover for a third-party investor that allegedly received misrepresentations. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) ("[U]nder the general principles of standing, a litigant may not merely champion the rights of another. Instead, a plaintiff's complaint must establish that he has a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to him.").

same reason, VBF does not identify any benefit obtained by Canaccord from any supposed misrepresentation. Because VBF fails to identify with specificity how VBF (or anyone else, for that matter) reasonably relied on the alleged misrepresentations to its detriment or what Canaccord obtained as a result, the claims against Canaccord must be dismissed. *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) (affirming dismissal of fraud claim because plaintiff did not allege with particularity that he actually relied on a particular misrepresentation); *In re Capstead Mortg. Corp. Sec. Lit.*, 258 F. Supp. 2d 533, 562 (N.D. Tex. 2003) (dismissing fraud claim in part because plaintiff failed to specify what the speaker obtained from the alleged misstatement).

*Fourth*, VBF does not allege with specificity how it was injured as a proximate result of Canaccord's supposed misconduct. VBF asserts damages in excess of $90,000,000, but never explains how it arrived at that figure, much less how Canaccord's alleged misconduct proximately caused it harm. Instead, VBF provides the general legal conclusions that: (1) "VBF suffered injuries as a direct and proximate result of the Conspiracy between the Founders and Canaccord," and (2) damages incurred as a result of "Canaccord's aiding and abetting" of the conspiracy "are in excess of $90,000,000." (SAC ¶¶ 362, 368, 447.)[18] Those allegations are insufficient. *See Massey v. JPMorgan Chase Bank, N.A.*, No. 4:12-CV-154-A, 2012 WL 3743493, at *9 (N.D. Tex. Aug. 29, 2012) (finding plaintiffs' allegation that defendants "caused plaintiffs to suffer pecuniary harms by justifiably relying on Defendants' representations" lacked sufficient particularity).

In sum, VBF's allegations of wrongdoing as to Canaccord are woefully inadequate. Canaccord must, therefore, be dismissed from this action.

---

[18] VBF claims that certain of the individual defendants' alleged misconduct resulted in the "devaluation" of VBF, but does not make a similar allegation as to Canaccord. (*See* SAC ¶¶ 437, 447.)

**IV.     The Complaint Must Be Dismissed Because This Court Is An Improper Venue.**

This Court must dismiss Canaccord from this action because the Engagement Agreement between Canaccord and VBF requires that this action be filed in New York state or federal court. *See* Fed. R. Civ. P. 12(b)(3).

Although a plaintiff may ordinarily choose his forum, *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989), parties to a written contract may elect to designate the forum in which disputes arising out of their agreement will be adjudicated, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991).  That is the case here—the Engagement Agreement that governed VBF and Canaccord's relationship requires VBF to bring this action in New York.

As explained above, VBF's claims against Canaccord arise out of the "Canaccord Project," which is the subject of the binding Engagement Agreement.  (*See supra* at 4-8, 15.)  The Engagement Agreement contains an exclusive venue provision which requires VBF to bring its claims in New York state or federal courts.[19]  Specifically, the agreement states: [T]he parties hereto consent to the exclusive jurisdiction and venue of the state and federal courts of the State of New York, located in Manhattan" and explicitly contemplates any "action" or "claim" "brought by or against any person . . . in connection with or as a result of . . . any untrue statement or alleged untrue statement of a material fact contained in any Materials, or any omission or alleged omission to state therein a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading."  (Engagement Agreement at APP0012-13.)

---

[19] This Court may consider the Engagement Agreement for two independent reasons: (1) it is incorporated in the Complaint (*see supra* at 5 n.2), and (2) a court may consider extrinsic evidence in deciding a Rule 12(b)(3) motion to dismiss for improper venue.  *See Ambraco*, 570 F.3d at 238.

This forum selection clause is enforceable against VBF. Federal law applies to determinations as to whether a forum-selection clause is enforceable. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). The first consideration is whether the clause is mandatory. *Argyll Equities LLC v. Paolino*, 211 F. App'x 317, 318 (5th Cir. 2006). A provision is mandatory when it clearly shows the "parties' intent to make [the forum] exclusive." *Id.* Here the forum selection clause provides that "the parties hereto consent to the exclusive jurisdiction and venue" of New York. (Engagement Agreement at APP0013.) The use of the phrase "exclusive jurisdiction" makes the clause mandatory. *See Argyll*, 211 F. App'x at 318.

The second consideration is the validity of the clause. "Such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (quoting *M/S Bremen*, 407 U.S. at 10). A forum-selection clause may be considered unreasonable if (1) the forum selection clause was the product of the fraud or overreaching, (2) the party seeking to escape enforcement will "be deprived of his day in court" because of the inconvenience or unfairness of the selected forum, (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy, or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Id.* None of these factors are present here.

Because VBF and Canaccord agreed that this dispute must be brought in New York, this action must be dismissed as to Canaccord.

## CONCLUSION

For the foregoing reasons, Canaccord respectfully submits that all claims against it should be dismissed with prejudice.

Dated: December 2, 2019

Respectfully submitted,

/s/ Anthony S. Fiotto
Anthony S. Fiotto (Admitted Pro Hac Vice)
(MA BBO #558089)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.:  (617) 570-1000
Fax:  (617) 523-1231
afiotto@goodwinlaw.com

Eric D. Lawson (Admitted Pro Hac Vice)
(MA BBO #687400)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:  (212) 813-8800
Fax:  (212) 355-3333
elawson@goodwinlaw.com

Peter D'Apice
Texas Bar No. 05377783
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Tel.: (214) 969-4900
Fax: (214) 969-4999
dapice@sbep-law.com

*Counsel for Canaccord Genuity LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2019 a correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

/s/ Anthony S. Fiotto
Anthony S. Fiotto