# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO FOUNDER DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

ARGUMENT ....................................................................................................................4

    I.   VBF adequately pleads its claims. .......................................................................... 4

       A.  The SAC is not improper group pleading. .................................................... 4

       B.  VBF adequately pled with particularity claims to which Rule 9(b) may apply............ 7

          1. Fraudulent Concealment and Misrepresentation (Counts II and III) .......................9

            (a) Identification of Concealments or Misrepresentations ..................................... 9

            (b) Reliance.................................................................................................. 12

          2. Actual Fraudulent Transfer (Counts V and VII)....................................................14

          3. RICO (Count XXVII) ............................................................................................15

            (a) Predicate Acts ......................................................................................... 16

            (b) Pattern of Racketeering Activity................................................................. 17

             (c) Enterprise .............................................................................................. 19

          4. Other Claims (Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, and XIX) .........................................................................................21

       C.  VBF's claims subject to Rule 8 are sufficiently pled. ............................... 22

          1. Breach of Fiduciary Duty (Count I), Aiding and Abetting (Count X), and Civil Conspiracy (Count IX) ..................................................................................22

          2. Constructive Fraud (Count IV) and Constructive Fraudulent Transfer (Counts VI and VIII) ...........................................................................................23

          3. Unjust Enrichment (Count XI), Equitable Accounting (Count XII), and Declaratory Judgment (Counts XIII, XV, XVIII) ...................................................24

          4. Rescission (Counts XIV, XVI, XVII) and Restitution (Count XIX)......................25

       D.  A choice of law analysis is not required because the Founders Motion presents no conflict of law. ....................................................................................... 26

II.  VBF has standing to pursue its claims................................................................ 28

III. If necessary, VBF should be granted leave to further amend. ......................................... 31

CONCLUSION ......................................................................................................................32

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abraham v. Singh*,
  480 F.3d 351 (5th Cir. 2007) ............................................................................ 18, 19

*Agri-Plastics, Inc. v. Hog Slat, Inc.*,
  No. CIV.A.3:09-CV-1271-B, 2010 WL 711811 (N.D. Tex. Feb. 26, 2010)..................... 10, 11

*Arce v. Burrow*,
  958 S.W.2d 239 (Tex. App.—Houston [14th Dist.] 1997)..................................... 25

*Audler v. CBC Innovis Inc.*,
  519 F.3d 239 (5th Cir. 2008) .......................................................................... 30

*Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*,
  No. Civ. A. 303CV2392G, 2005 WL 2124126 (N.D. Tex. Sept. 1, 2005) ............................. 31

*Bluevine Capital, Inc. v. UEB Builders, Inc.*,
  3:17-CV-3265-L, 2019 WL 142350 (N.D. Tex. Jan. 9, 2019) ................................................. 22

*Bonton v. Archer Chrysler Plymouth*,
  889 F. Supp. 995 (S.D. Tex. 1995) ............................................................................ 15

*Bostic v. Goodnight*,
  443 F.3d 1044 (8th Cir. 2006) ............................................................................ 24

*Cadle Co. v. Schultz*,
  779 F. Supp. 392 (N.D. Tex. 1991) ............................................................................ 18

*Carpenter v. United States*,
  484 U.S. 19 (1987)................................................................................................ 17

*Cibolo Waste, Inc. v. City of San Antonio*,
  718 F.3d 469 (5th Cir. 2013) ............................................................................ 28

*Clapper v. Am. Realty Inv'rs, Inc.*,
  No. 3:14-CV-2970-D, 2016 WL 302313 (N.D. Tex. Jan. 25, 2016)........................................ 19

*CNH Capital America LLC v. McCandless*,
  No. C05-2087, 2007 WL 1498357 (N.D. Iowa May 18, 2007)................................................. 22

*Cohen v. Beneficial Loan Corp.*,
  337 U.S. 541 (1949)................................................................................................ 29

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ............................................................................ 4, 5

*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*,
    814 F. Supp. 2d 698 (N.D. Tex. 2011) ...................................................................... 26

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
    855 F.2d 241 (5th Cir. 1988) ................................................................................... 16

*Drobnak v. Andersen Corp.*,
    561 F.3d 778 (8th Cir. 2009) ..................................................................................... 9

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004) .................................................................................................... 28

*Energytec, Inc. v. Proctor*,
    516 F. Supp. 2d 660 (N.D. Tex. 2007) ................................................................. 9, 14

*Enigma Holdings, Inc. v. Gemplus Int'l, S.A.*,
    No. 3:05-CV-1168-B, 2006 WL 2859369 (N.D. Tex. Oct. 6, 2006) ................................ 26, 27

*ERI Consulting Engineers, Inc. v. Swinnea*,
    318 S.W.3d 867 (Tex. 2010) .................................................................................... 25

*Estate of Foster by Foster v. Shalala*,
    926 F. Supp. 850 (N.D. Iowa 1996) .......................................................................... 24

*Farmers Co-op Co. of Farnhamville v. Youngstrom*,
    No. C 97-3094-MWB, 2000 WL 34031805 (N.D. Iowa Aug. 21, 2000) ............................... 25

*Flaherty & Crumrine Pre-ferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) ..................................................................................... 8

*Flood v. Makowski*,
    No. CIV.A. 3:CV-03-1803, 2004 WL 1908221 (M.D. Pa. Aug. 24, 2004) ........................... 20

*Goldstein v. MCI Worldcom*,
    340 F.3d 238 (5th Cir. 2003) ..................................................................................... 8

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) ................................................................................................ 18

*Halaris v. Viacom, Inc.*,
    3:06-CV-1646-N, 2007 WL 4145405 (N.D. Tex. Sep. 21, 2007) ................................... 31

*Havard v. Collins*,
    No. 3:13-CV-945-N, 2013 WL 12363628 (N.D. Tex. Aug. 21, 2013) ........................... 17, 31

*Hawkins v. Hutchison*,
    No. 1:05-CV-184-C ECF, 2007 WL 9758161 (N.D. Tex. May 10, 2007) ........................... 18

*Howell Petroleum Corp. v. Weaver*,
  780 F.2d 1198 (5th Cir. 1986) ............................................................ 15

*In re Alamosa Holdings, Inc.*,
  382 F. Supp. 2d 832 (N.D. Tex. 2004) ................................................... 8

*In re Burzynski*,
  989 F.2d 733 (5th Cir. 1993) ............................................................. 17

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  490 F. Supp. 2d 784 (S.D. Tex. 2007) .................................................. 13

*In re Juliet Homes, LP*,
  No. 07-36424, 2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2010).................. 23

*In re Life Partners Holdings, Inc.*,
  926 F.3d 103 (5th Cir. 2019) ................................................... 14, 15, 23

*In re Mohiuddin*,
  No. 15-34752, 2017 WL 2123870 (Bankr. S.D. Tex. May 12, 2017)................... 14

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*,
  46 F.3d 258 (3d Cir. 1995) ............................................................... 20

*Janvey v. Alguire*,
  846 F. Supp. 2d 662 (N.D. Tex. 2011) ............................................ 15, 24

*Lewis v. Knutson*,
  699 F.2d 230 (5th Cir. 1983) ............................................................. 29

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)...................................................................... 28

*Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*,
  No. 4:17-cv-00225-O, 2017 WL 9934885 (N.D. Tex. Nov. 27, 2017) ............ 14, 23

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................. 30

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..................................................................... 28, 30

*Magruder v, Halliburton Co.*,
  No. 3:05-CV-1156-M, 2009 WL 854656 (N.D. Tex. Mar. 31, 2009).................. 30

*Malvino v. Delluniversita*,
  840 F.3d 223 (5th Cir. 2016) ............................................................. 19

*McGraw v. Wachovia Securities, LLC,*
 No. 08-CV-2064-LRR, 2009 WL 2949290 (N.D. Iowa Sept. 10, 2009) ................................ 22

*Meadows v. Hartford Life Ins. Co,*
 492 F.3d 634 (5th Cir. 2007) ................................................................................. 22

*Moore v. Town N. Auto, Inc.,*
 No. 3:14–CV–1215–D, 2014 WL 3396100 (N.D. Tex. July 11, 2014) ................................. 17

*N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.,*
 107 F. Supp. 3d 620 (N.D. Tex. 2015) .......................................................................... 10, 11

*Nat'l Org. for Women, Inc. v. Scheidler,*
 510 U.S. 249 (1994)................................................................................................ 20

*Office Outfitters, Inc. v. A.B. Dick Co.,*
 83 F. Supp. 2d 772 (E.D. Tex. 2000)........................................................................... 19

*Official Stanford Inv'rs Comm. v. Breazeale Sachse & Wilson LLP,*
 No. 3:11-CV-0329-N, 2015 WL 13740747 (N.D. Tex. Mar. 24, 2015) ................................ 26

*Olloh-Okeke v. Home Care Services, Inc.,*
 CIV.A.3:97-CV-2738-H, 1999 WL 222356 (N.D. Tex. Apr. 9, 1999) ................................... 9

*Paul v. Aviva Life & Annuity Co.,*
 No. 3:09–CV–1490–B, 2010 WL 5105925 (N.D. Tex. Dec. 14, 2010)................................. 17

*Raines v. Byrd,*
 521 U.S. 811 (1997)................................................................................................ 30

*Ranieri v. AdvoCare Int'l, L.P.,*
 No. 3:17-CV-0691-S, 2019 WL 3207501 (N.D. Tex. July 16, 2019) ................................... 20

*Reneker v. Offill,*
 No. 3:08-CV-1394-D, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009) ................................... 30

*S.E.C. v. Fraser,*
 No. CV-09-00443-PHX-GMS, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010).......................... 5

*S.E.C. v. Sharp Capital, Inc.,*
 No. 3:98CV2792G, 1999 WL 242691 (N.D. Tex. Apr. 16, 1999)........................................ 9

*Sanchez v. Liggett & Myers, Inc.,*
 187 F.3d 486 (5th Cir. 1999) ................................................................................... 30

*Schroeder v. Wildenthal,*
 No. 3:11-CV-0525-B, 2011 WL 6029727 (N.D. Tex. Nov. 30, 2011) .................................. 24

*Scottsdale Ins. Co. v. Knox Park Constr., Inc.*,
    488 F.3d 680 (5th Cir. 2007) ........................................................................ 30

*SEC v. Brady*,
    No. 3:05-CV-1416, 2006 WL 1310320 (N.D. Tex. May 12, 2006) ........................................... 9

*SEC v. Power*,
    525 F. Supp. 2d 415 (S.D.N.Y. 2007) .................................................................. 5

*Sharif v. Wellness Int'l Network, Ltd.*,
    No. 3:05-CV-01367-B, 2007 WL 9711726 (N.D. Tex. May 9, 2007) ..................................... 17

*Smith v. Ayres*,
    845 F.2d 1360 (5th Cir. 1988) ........................................................................ 17

*Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) ................................................................ 6, 7, 8

*Stanissis v. Dyncorp Int'l LLC*,
    No. 3:14–CV–2736–D, 2015 WL 1931417 (N.D. Tex. Apr. 29, 2015) ........................... 17, 31

*State Dept. of Human Services ex rel. Plamer v. Unisys Corp.*,
    637 N.W.2d 142 (Iowa 2001) .................................................................... 24, 25

*Steiner v. Southmark Corp.*,
    734 F. Supp. 269 (N.D. Tex. 1990) ..................................................................... 9

*Stevens v. Lowder*,
    643 F.2d 1078 (5th Cir. 1981) .................................................................... 29, 30

*Tel–phonic Services, Inc. v. TBS Int'l, Inc.*,
    975 F.2d  (5th Cir. 1992) ........................................................................... 19

*Tierstein v. AGA Med. Corp.*,
    6:08CV14, 2009 WL 704138 (E.D. Tex. Mar. 16, 2009)........................................... 24

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
    No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004)................. 8, 23

*Town N. Bank, N.A. v. Shay Fin. Services, Inc.*,
    3:11-CV-3125-L, 2014 WL 4851558 (N.D. Tex. Sept. 30, 2014) ........................... 22

*U.S. Bank Ass'n v. Verizon Comm., Inc.*,
    No. 3:10-CV-1842-G, 2012 WL 3100778 (N.D. Tex. July 31, 2012) ..................... 15

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) .......................................................................... 9

*United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ................................................... 21

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) ................................................ 5, 10

*United States v. Bustamante*,
45 F.3d 933 (5th Cir. 1995) ..................................................... 18

*United States v. Hoffman*,
901 F.3d 523 (5th Cir. 2018) .................................................... 16

*W.R. Grace & Co. v. Cont'l Cas. Co.*,
896 F.2d 865 (5th Cir. 1990) .................................................... 26

*Walker v. Allianz Life Ins. Co. of N. Am.*,
No. 3-08-CV-2051-M, 2009 WL 1883418 (N.D. Tex. June 30, 2009) ................... 18

*Whelan v. Winchester Prod. Co.*,
319 F.3d 225 (5th Cir. 2003) ................................................ 19, 21

## Statutes

18 U.S.C. § 1961(4) .............................................................. 19

18 U.S.C. § 1961(5) .............................................................. 18

18 U.S.C. §§ 1341, 1343 .......................................................... 16

28 U.S.C. § 2201 ................................................................. 24

Iowa Code § 684.4(1)(b) .......................................................... 24

Tex. Bus. & Comm. Code § 24.005(a)(2) ........................................... 24

## Rules

Fed. R. Civ. P. 12 ............................................................... 4

Fed. R. Civ. P. 15 .............................................................. 31

Fed. R. Civ. P. 23.1 ............................................................ 29

Fed. R. Civ. P. 9 ........................................................... passim

Local Civ. R. 5 ................................................................. 33

## INTRODUCTION

In 450 paragraphs, 99 pages, and with 60 exhibits, Plaintiff VeroBlue Farms USA Inc. ("VBF") describes in exhaustive detail its claims against Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John Rea (collectively, the "Founders").[1] Arguing primarily that VBF has not pleaded its claims with particularity (and without challenging specific elements of the majority of the claims), the Founders move to dismiss the Second Amended Complaint ("SAC"). The Founders' motion to dismiss (Dkt. 184, "Founders Motion") should be denied.

VBF adequately pleads its claims. *First*, VBF's allegations do not constitute impermissible "group pleading." Each of the Founders is specifically tied and connected to the alleged schemes through the allegations in the SAC.  VBF at times uses the definitional term the "Founders," appropriately when VBF is alleging that all of the Founders committed the alleged misconduct.

*Second*, VBF adequately pleads all claims to which Rule 9(b) may apply: fraudulent concealment and misrepresentation (Counts II-III), actual fraudulent transfer (Counts V and VII), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count XXVII), and the remaining claims to the extent that they rely on any fraudulent conduct, which is the same as the fraudulent conduct in these counts. The Founders overgeneralize the pleading standard applicable to these claims. Where fraud is grounded in omissions rather than affirmative misrepresentations, VBF need only plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading. VBF has pleaded those facts, as well additional facts for the "who, what, when, where, and how" in

---

[1] The SAC defines the term "Founders" to include Keith Driver, but he is not included in the definition of the term in this response because he filed a separate motion to dismiss (Dkts. 180-81) to which VBF has separately responded.

instances where misrepresentations were affirmative and information available without the Defendants' cooperation. Similarly, for the actual fraudulent transfer claims, VBF need only set out the details of the allegedly fraudulent transfers and describe the underlying fraudulent scheme, and VBF has done so. VBF has pleaded those facts with sufficient detail and specificity.

*Third*, as for VBF's RICO claim, only the predicate acts require particularized pleading, and VBF has adequately pled the Founders' acts of mail and wire fraud. VBF also has adequately pled (1) a pattern of racketeering activity because the Founders' scheme involved multiple related acts that took place over at least a three-year period and (2) that VBF, under the Founders' control, was the RICO enterprise or, in the alternative, that the Founders were an association-in-fact enterprise sufficiently distinct from VBF because they acted entirely against VBF's interest.

*Fourth*, Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, XIX do not necessarily require fraud as an element or rely solely on fraud, and therefore Rule 8 is applicable. The Founders have not argued that Rule 8 is not met, and these claims comply with Rule 8.

*Fifth*, the Founders' Motion presents no conflict between Iowa and Texas law.  In that instance, the Court need not conduct a choice of law analysis, and dismissal is inappropriate. In any event, VBF adequately pleads facts supporting that Iowa law should apply and further pleads adequate claims under Iowa or Texas law.

*Finally*, VBF has standing to bring this suit because it seeks recovery of assets and funds that the Founders misappropriated and squandered *from VBF*. VBF does not seek recovery on behalf of its investors or any third parties, but rather on behalf of VBF itself for the $90 million *in VBF assets* that the Founders wasted.

The Founder Motion should be denied in its entirety, or, alternatively, VBF should be granted leave to amend.

## BACKGROUND

The Founders founded VBF, a sustainable fish farm, in 2014. SAC ¶ 1. The Founders were all directors, officers, and employees of VBF from October 1, 2014 through their termination in late 2017 or early 2018. *Id.* at ¶¶ 7-10. Wulf was Chief Executive Officer, and Hall was Chief Financial Officer. *Id.* at ¶¶ 9, 10. The Founders did not invest any of their own money into VBF, instead participating in misappropriating and squandering nearly $90 million in debt and equity invested in VBF. *Id.* at ¶ 1.

Following the termination of the last defendant in January 2018, VBF eventually discovered that the Founders had misappropriated and misused millions of dollars in corporate assets and made continuous and knowing misrepresentations of and omissions related to VBF's operations, technology, and finances. *See id.* at ¶ 2. The Founders (1) drained VBF of assets and looted the company, (2) withdrew significant funds while VBF was in financial trouble, (3) received money and other assets that belonged to VBF for no reasonably equivalent value, (4) ultimately rendered VBF virtually incapable of operation, and (5) took improper salaries and other benefits from VBF's assets. *See id.* at ¶¶ 3, 25-53, 171-175.

The Founders also misrepresented (affirmatively and by omission) VBF's technology and finances, including its key performance and financial metrics. The SAC describes in detail numerous misrepresentations and omissions made by the Founders as to items such as feed conversion ratio ("FCR"), EBITDA, stocking density, water quality, and mortality rates. *See id.* at ¶¶ 54-170. In addition to describing the misrepresentations in detail, many of the written misrepresentations are attached as exhibits to the SAC. *See, e.g.*, *id.* at Exs. 3-32. The Founders made these misrepresentations internally and externally, and also concealed the truth from VBF and its disinterested directors and shareholders. *See, e.g.*, *id.* at ¶¶ 20, 22, 40, 55, 87, 105, 133. Had the Founders not

concealed these material facts, VBF would have taken action to stop the Founders' continued misconduct. *See id.* at ¶ 239. But unfortunately, the Founders actions led to VBF's loss of at least $90 million and bankruptcy. *See id.* at ¶ 1.

To recover those losses, VBF asserts nineteen claims against the Founders, including breach of fiduciary duty, aiding and abetting breach, constructive fraud, actual and constructive fraudulent transfer, fraudulent concealment and misrepresentation, civil RICO, civil conspiracy, unjust enrichment, equitable accounting, declaratory judgment, rescission, and restitution.

## ARGUMENT

### I. VBF adequately pleads its claims.

The Founders move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Such motions are viewed with disfavor and are seldom granted. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Id.* (internal citations omitted). "The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim." *Id.* (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

The Founders' motion should be denied because (a) the SAC does not constitute impermissible group pleading, (b) VBF adequately pleads its claims to which Rule 9(b) may apply, and Rule 8 also applies to many of VBF's claims, and (c) there is no conflict of laws and, regardless, VBF has adequately pleaded Iowa law and pleads appropriately under Iowa or Texas law.

### A. The SAC is not improper group pleading.

The Founders argue that VBF's use of the definitional term "Founders" in the SAC constitutes impermissible "group pleading," but this is not correct. Founders Motion at 11-12. The SAC's references to the "Founders" collectively are allegations that *all of the Founders* committed the

specific misconduct alleged. Indeed, all of "[t]he Founders controlled VBF from its incorporation," and all of them committed the alleged misconduct. *See* SAC ¶ 19. In such situations, courts have held that allegations that a group of people committed fraud are permissible. *See, e.g.*, *S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMS, 2010 WL 5776401, at *6 (D. Ariz. Jan. 28, 2010) (rejecting the defendant's argument that the allegations impermissibly lumped two defendants together because "the SEC is simply alleging that both [the defendants] committed the specific misconduct alleged") (citing *SEC v. Power*, 525 F. Supp. 2d 415, 422 (S.D.N.Y. 2007) ("The fact that others may have participated in [the alleged fraud] or that [the defendant] had an accomplice, does not absolve [the defendant] at the pleadings stage.") (replacements in original)).

For example, all of the Founders are alleged to have engaged in the compensation scheme, by which all the Founders overpaid themselves approximately $1.675 million per year. *See* SAC ¶¶ 38-41 (describing the compensation scheme). It is clear that they all of the Founders are alleged to have committed the misconduct, even without referencing each by name: "[t]he *five Founders set their own compensation* from VBF at $400,000 annually for each Founder besides Driver, who made $325,000 annually…." *Id.* ¶ 38 (emphasis added). Since all of the Founders are alleged to have fraudulently concealed the compensation scheme (along with the other alleged schemes), VBF need not identify each Founder specifically by name.

As another example, the SAC pleads that all of the Founders concealed an aquaculture expert's criticisms of representations the Founders made about the business in June 2015. *See* SAC ¶¶ 74-87 (discussing this scheme). Specifically, the SAC alleges that on June 16, 2015, the Founders discovered that an independent aquaculture expert had found "multiple significant errors in the numbers and weaknesses in" representations about VBF's operations prepared by the Founders and Defendant Canaccord Genuity LLC. *Id.* at ¶¶ 74-87, Ex. 5. The Founders never disclosed these

findings to VBF's disinterested directors. *Id.* at ¶ 87.

The SAC specifically ties each Founder to each scheme and instance of wrongdoing whenever possible, both through its allegations in the SAC and through the attached exhibits.  The SAC attaches exhibits showing statements by and between the Founders, which provides additional detail regarding the allegations of misrepresentations and omissions.  *See, e.g., id.* at Exs. 3-6, 9, 14, 16-1, 16-2.

For example, the SAC specifically ties all the Founders to their misrepresentations and concealments concerning VBF's FCR. *See* SAC ¶¶ 94-114. In general, the Founders misrepresented that VBF had achieved a 1:1 feed/fish conversion ratio even though the ratio was never even close to 1:1. *Id.* at ¶ 94. That the company could not achieve a 1:1 ratio was never disclosed to VBF's disinterested directors and officers. *Id.* The SAC specifically ties each Founder to this scheme, alleging, for example that (a) Wulf, James Rea, and Ted Rea on September 17, 2014 became aware that the Founders' written representation that VBF would achieve a 1:1 feed/fish conversion ratio was unlikely, *id.* at ¶¶ 96-97, Ex. 9; (b) Wulf, James Rea, and Ted Rea on June 30, 2015, approved Hall's representation of VBF's FCR that did not include fish feed (a necessary component) in the calculations, *id.* at ¶ 105, Ex. 16-1; (c) Hall created on June 25, 2014 and modified on May 31, 2016 an excel file that listed VBF's FCR as 1:1, *id.* at ¶ 95, Ex. 7; and (d) Hall on June 30, 2015, represented VBF's FCR without including fish feed (a necessary component) in the calculations, *id.* at ¶ 105, Ex. 16-1.

The Fifth Circuit has recognized that such specific pleading need only be done when possible. In *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363-65 (5th Cir. 2004), cited by the Founders, the Fifth Circuit found that group pleading conflicted with the sci-

enter requirement of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (an argument that does not apply to VBF's claims), but still recognized that "corporate documents that have no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue." 365 F.3d at 365. "Various unattributed statements within documents may be charged to different individuals, and specific facts may tie more than one individual to the same statement." *Id.*

Further, to the extent that the identification of all Founders' involvement is made (including on information and belief), it is because those allegations are supported by the Founders' conduct as parties acting in concert and in control of VBF, as alleged in the claims for Civil Conspiracy and Aiding and Abetting. *See id.* at ¶¶ 290-299. The conduct of the Founders described in the SAC supports that each Founder played a role in each scheme, misrepresentation, and omission and makes each scheme, misrepresentation, and omission attributable to all of the Founders. *See id.* at ¶¶ 3, 19-24, 26, 41, 46-53, 101, 105, 115-140, 141-50. The SAC affirmatively states that the Founders were acting in concert in regards to the fraudulent conduct and statements as well as the concealment of the wrongdoing. *See id.*

Therefore, the allegations in the SAC, including references to the "Founders," are sufficient and do not constitute impermissible group pleading.

### B. VBF adequately pled with particularity claims to which Rule 9(b) may apply.

The Founders argue at length that the SAC does not satisfy the particularity standard under Rule 9(b). As an initial matter, a number of the cases cited by the Founders apply a pleading standard undisputedly not applicable here – the heightened pleading standard under the PSLRA. The SAC does not assert federal securities fraud claims. As the Founders' own cited cases explains: "common law fraud claims are not subject to the heightened 'strong inference' of scienter standard

- 7 -

imposed by the PSLRA." *Flaherty & Crumrine Pre-ferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009). Therefore, all of the Founders' cases—and there are many—that dismissed complaints for failure to comply with the PSLRA pleading standard are inapplicable here. *See, e.g., Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (finding that allegations were insufficient under PSLRA); *Goldstein v. MCI Worldcom*, 340 F.3d 238, 243 (5th Cir. 2003) (same); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 847 (N.D. Tex. 2004) (Cummings, J.) (same).

"Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty, or non-fraudulent misstatement." *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004). "In ordinary circumstances, the particularity requirement does not extend to claims for which fraud is not an element." *Id.* Only when fraudulent conduct "is alleged to underlie a claim for which fraud is a possible—but not a necessary—element" is particularity required, and then only "to the extent that a plaintiff in fact alleges fraud." *Id.* In other words, if a claim is not based *solely* on fraud, then Rule 9(b) does not apply to the entire claim. *See id.*

As discussed in more detail in Section I.C below, VBF's claims for breach of fiduciary duty, aiding and abetting, civil conspiracy, constructive fraud, constructive fraudulent transfer, unjust enrichment, equitable accounting, declaratory judgment, rescission, and restitution are not entirely subject to Rule 9(b). To the extent these claims are grounded in fraud and are subject to Rule 9(b), they are based on the same conduct adequately set forth related to VBF's claims for fraudulent concealment and misrepresentation (Counts II and III), actual fraudulent transfer (Counts V and VII), and civil RICO (Count XXVII). These claims and the underlying fraudulent conduct are adequately pleaded under Rule 9(b).

Rule 9(b) does not require "punctilious pleading detail" or that the plaintiff plead detailed evidence or state all facts relevant to the case. *See SEC v. Brady*, No. 3:05-CV-1416, 2006 WL 1310320, at *3 (N.D. Tex. May 12, 2006) (quoting *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990)); *S.E.C. v. Sharp Capital, Inc.*, No. 3:98CV2792G, 1999 WL 242691, at *2 (N.D. Tex. Apr. 16, 1999). Rather, Rule 9(b) simply requires that the pleadings "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Further, the pleading requirements of Rule 9(b) are relaxed where, as here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783-84 (8th Cir. 2009); *U.S. ex rel. Olloh-Okeke v. Home Care Services, Inc.*, CIV.A.3:97-CV-2738-H, 1999 WL 222356, at *2 (N.D. Tex. Apr. 9, 1999) ("The Fifth Circuit has recognized that a relaxed pleading requirement was appropriate, 'allowing fraud to be pled on information and belief where, as here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge.'" (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Indeed, "the plaintiff need not allege all facts that may be related to its claims, since such a requirement is impossible at the pleading stage because, in nearly every securities fraud case, only defendants know all the facts related to the alleged fraud." *Energytec, Inc. v. Proctor*, 516 F. Supp. 2d 660, 674 (N.D. Tex. 2007) (internal quotation and citation omitted). Under those circumstances, "fraud may be pled on information and belief." *U.S. ex rel. Thompson*, 125 F.3d at 903.  Applying these standards, the SAC adequately pleads all fraud-based claims pursuant to Rule 9(b).

## 1. Fraudulent Concealment and Misrepresentation (Counts II and III)

### (a) Identification of Concealments or Misrepresentations

The Founders argue repeatedly and incorrectly that the SAC does not identify the "who,

what, when, where, and how" giving rise to the alleged fraud. The Founder Motion cites the standard for claims alleging affirmative fraudulent representations, but VBF's fraudulent concealment and fraudulent misrepresentation claims are grounded in the Founders' fraudulent omission of facts to VBF. *See, e.g.,* SAC ¶¶ 237 ("The Founders concealed from or failed to disclose to VBF material facts…."), 245 ("[T]he Founders' silence in the face of their duties to disclose their misconduct alleged herein to VBF, constitutes fraudulent misrepresentation of the material facts alleged in Count II."). For claims of fraudulent omission, all that is required under Rule 9(b) is for "the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004) (quoting 2 Moore's Federal Practice § 9.03[1][b], at 9-18 through 9-19 (3d ed. 2003)); *see N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 633 (N.D. Tex. 2015) (finding that a complaint adequately pleaded fraud by nondisclosure).

For example, the following omission allegations were at issue in *Agri-Plastics, Inc. v. Hog Slat, Inc.*, No. CIV.A.3:09-CV-1271-B, 2010 WL 711811, at *5 (N.D. Tex. Feb. 26, 2010) (internal citations omitted): the counter-defendant "failed to disclose the defects and reduced quality of [its] tiles to its customers and potential customers, including [the counter-plaintiff] and [the counter-plaintiff's] customers" and the counter-defendant "did not inform them of the defective redesign of the tiles and, as a result, the tiles failed to perform as expected causing [the counter-plaintiff's] farmer-customers to complain with increasing frequency." The court held that "[s]uch allegations satisfy the Rule 9(b) pleading standard with regard to omissions." *Id.* Similarly, in *North Texas Opportunity Fund*, the court found the following allegations sufficient: three of "the Defendants…should have disclosed [the fourth defendant's] relationship with [the fifth defendant]

- 10 -

through the Board meetings, the Board reports, and the November 2007 Board presentation created by [the first three defendants].... [B]y omitting this information, [the second defendant] hid its true value in order to buy back...preferred stock at a reduced price." 107 F. Supp. 3d at 633.

Here, VBF has undoubtedly pleaded (with much more specificity than in *Agri-Plastics* or *North Texas Opportunity Fund*) the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading. *First*, the type of facts omitted are the 21 schemes and sets of material facts listed in paragraph 237 of the SAC. Each of these schemes and material facts are described in exhaustive detail earlier in the SAC and in its exhibits. By way of example using the FCR scheme discussed above, the SAC alleges that each of the Founders concealed that VBF had not and could not achieve an FCR of 1:1. *See* SAC ¶¶ 94-114.

*Second*, the SAC pleads the place in which the omissions should have appeared. This requirement of fraudulent omissions may be satisfied by identifying the speakers and when and where the omissions were made. *See Agri-Plastics*, 2010 WL 711811, at *5. The SAC clearly identifies the speakers who should have disclosed the truth and when and where they should have done so. Indeed, the Founders should have disclosed the truth each time they concealed the truth and instead made misrepresentations. For example, rather than representing that VBF had and would achieve a 1:1 FCR, they should have disclosed that VBF in fact had not and would not achieve such a ratio. *See* SAC ¶ 94. For each scheme, the SAC describes the Founders' written representations and often attaches such written representations as an exhibit. *See, e.g.*, *id.* at ¶¶ 115-40 (describing and attaching misrepresentations of density), 141-50 (same for mortality rates); *id.* at Exs. 3-6, 9, 14, 16-1, 16-2. The omitted facts should have appeared in those representations.

*Third*, the SAC pleads why the Founders' omissions were misleading. For example, the

omission that VBF did not have and could not have achieved a 1:1 FCR was misleading because VBF did not in fact have a 1:1 FCR and such an FCR is extremely rare and difficult to achieve. *See, e.g.*, *id.* at ¶ 94. The June 2015 concealment of an aquaculture expert's criticisms of the Founders' numbers was similarly misleading because the numbers and representations (as stated by the expert) "over-inflate the economics and understate the risks." *Id.* at ¶ 79.

Even for any allegations construed as solely affirmative misrepresentations, the SAC pleads sufficient detail, especially given the standards allowing for relaxed pleading under Rule 9(b) where the perpetrators of the fraud have the knowledge required for further detail.  Despite the information solely within the possession of the Founders – none of whom have yet been deposed in this case – VBF has provided detailed information, and attached documents where available, showing the "who, what, when, where, and how" of the fraudulent schemes in which the Founders were involved, including the misappropriation and mis-use of VBF funds through stock transfers, improper expenditures, providing mis-information or concealing information to VBF directors, and procuring the Termination Agreements through misrepresentations and concealment of material facts.  For each of the fraudulent schemes and related misrepresentations and omissions, the SAC contains information about the dates, the content, the action, the purpose, and the location. *See* SAC ¶¶ 25-53, 74-89, 94-170; Exs. 1, 4-32. Each of the Founders is specifically implicated in these schemes, including by direct involvement and in their positions as officers, directors, and persons in control of VBF. *See* SAC ¶¶ 26, 28, 32, 34, 37-38, 42, 50, 52-53, 71, 73, 78, 83-84, 95, 97, 101-103, 105, 108-109, 117-122, 127, 130-31, 136-38, 142-45, 147-48, 160.

### (b)    Reliance

The SAC adequately pleads reliance. As an initial matter, the only claims in the SAC that require reliance are the fraudulent concealment and fraudulent misrepresentation claims (Counts II and III). *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 490 F. Supp. 2d 784, 794 (S.D.

Tex. 2007) (noting that "[r]eliance is an element of common law fraud, regardless of whether the fraud is by affirmative misrepresentation or by nondisclosure"). The challenge to the SAC's reliance pleading therefore has no impact on VBF's eighteen other claims against the Founders.

VBF does adequately plead reliance for its fraudulent concealment and misrepresentation claims. VBF alleges that it did not discover the Founders' misconduct until, at the earliest, March 2018. SAC ¶ 20. Until that time, VBF did not know about the numerous fraudulent schemes alleged in the SAC. *Id.* "The Founders accomplished these schemes without the approval of disinterested VBF directors." *Id.* at ¶ 21. After the filing of this lawsuit, VBF continued to discover wrongdoing that the Founders fraudulently concealed. *Id.* at ¶¶ 22-23.

The SAC alleges repeated omissions to the VBF disinterested directors and an ongoing scheme to keep these disinterested directors from learning the truth. *E.g. id.* at ¶¶ 55-57, 84, 99, 101, 104, 105, 107,116, 118, 141, 145, 154. The SAC also alleges that had VBF known the material facts that the Founders concealed, it would have taken action to stop the Founders' misconduct. *See, e.g., id.* at ¶¶ 84 (alleging that if they had known the truth, disinterested VBF directors would have attempted to cease VBF's business), 239 (alleging that "[t]he Founders intended to induce VBF to refrain from attempting to halt the Founders' misconduct, mismanagement, and corporate waste by concealing these material facts from VBF"). The SAC further pleads that VBF could have taken action had the Founders not concealed their misconduct. Indeed, starting in late 2017—before the Founders' fraudulent schemes were revealed—VBF, through its disinterested directors, became concerned about the Founders' abilities to lead and execute the business. SAC ¶ 210. Those concerns led to the termination of the Founders. *See id.* at ¶¶ 211-29. It is clear from the allegations, then, that VBF could and would have terminated the Founders previously had it known about the Founders' fraudulent schemes and not under the terms provided in the Termination

Agreements.  *See id.* at ¶ 311. Moreover, the Founders have not challenged that they were fiduciaries of VBF, and so VBF's reliance is justifiable. *See In re Mohiuddin*, No. 15-34752, 2017 WL 2123870, at *11 (Bankr. S.D. Tex. May 12, 2017) (holding that fiduciary relationship made the plaintiff's reliance on the defendants' representations and nondisclosure justifiable).

At the pleading stage, VBF's allegations of reliance are sufficient. For example, in *Energytec, Inc. v. Proctor*, the Court found that reliance was sufficiently pleaded through allegations that the defendant "made repeated omissions to the Energytec board of directors" and there was an "ongoing scheme to keep the board of directors from learning the truth." 516 F. Supp. 2d at 674.  The same is true here. Therefore, the SAC adequately pleads the fraudulent concealment and misrepresentation claims with particularity.

## 2. Actual Fraudulent Transfer (Counts V and VII)

As an initial matter, it is not clear that Rule 9(b) even applies to actual fraudulent transfer claims. The Fifth Circuit recently noted that it has "not previously addressed the question of whether an actual fraudulent transfer claim is subject to Rule 9(b)'s heightened pleading requirements." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019). In that case, the Fifth Circuit found that the fraudulent transfer claims were sufficient under either Rule 8 or 9(b) and so it "need not weigh in on this *vexing question*." *Id.* (emphasis added). This Court should follow those Northern District of Texas district courts that have found Rule 9(b) does not apply to any fraudulent transfer claims.  *See, e.g.*, *Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*, No. 4:17-cv-00225-O, 2017 WL 9934885, at *5 (N.D. Tex. Nov. 27, 2017); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 676 (N.D. Tex. 2011); *U.S. Bank Ass'n v. Verizon Comm., Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *11 (N.D. Tex. July 31, 2012). Regardless, under either standard, VBF adequately pled its fraudulent transfer claims.

In *Life Partners Holdings*, the Fifth Circuit held that fraudulent transfer allegations were

sufficient because an exhibit to the complaint "sets out the details of the allegedly fraudulent trans-fers—including the transferor, transferees, amounts, and time period—and the complaint itself contains pages of allegations detailing the underlying fraudulent scheme." 926 F.3d at 119. Simi-larly, here, the SAC sets out the details of the allegedly fraudulent transfers. Paragraph 256 and 272 note that VBF "seeks to void transfers made to the Founders, including transfers from 2014 to 2018 related to" nine specific schemes and "[o]ther misappropriations of VBF's funds or other assets for the Founders' personal use." The transfers are described in detail in earlier paragraphs of the SAC. *See, e.g.*, SAC ¶¶ 26-53, 171-75. Paragraphs 257 and 273 allege that these transfers amounted to at least $4,562,498 to Wulf, $4,747,333 to Hall, $4,365,000 to James Rea, and $4,487,410 to Ted Rea. And, as in *Life Partners* and discussed above, the SAC "contains pages of allegations detailing the underlying fraudulent scheme." 926 F.3d 103 at 119; *see, e.g.,* SAC ¶¶ 26-175. As a result, VBF has adequately pleaded its actual fraudulent transfer claims.

### 3.      RICO (Count XXVII)

VBF has also adequately pleaded its claims under RICO. Rule 9(b) governs only VBF's pleading of the mail and wire fraud predicates; it is inapplicable to all the other RICO elements, to which Rule 8 pleading standards apply. *See Howell Petroleum Corp. v. Weaver*, 780 F.2d 1198, 1199 (5th Cir. 1986) (pleading RICO elements is governed by the "liberal notice pleading proce-dure of the Federal Rules of Civil Procedure"); *Bonton v. Archer Chrysler Plymouth*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (applying Rule 9(b) only to the fraud allegations in RICO claim).

The only elements of VBF's RICO claim that the Founders challenge are (1) predicate acts, (2) pattern, and (3) enterprise. *Compare* Founders Motion at 17-24 *with Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (stating the elements of a RICO claim). VBF adequately pled each of these elements under the appropriate standard.

### (a)    Predicate Acts

VBF alleges mail and wire fraud as predicate acts. *See, e.g.*, SAC ¶ 411. "The mail and wire fraud statutes, which have the same elements other than the jurisdictional hook of the mailing or interstate wire, criminalize schemes 'to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *United States v. Hoffman*, 901 F.3d 523, 536 (5th Cir. 2018), *as revised* (Aug. 28, 2018) (citing 18 U.S.C. §§ 1341, 1343). Significantly, emails may serve as the necessary wire for wire fraud. *Id.* at 546 ("An interstate email that says 'Meet me at the bowling alley tonight' can serve as the necessary wire if the parties planned the fraud while bowling a few frames that evening.").

Here, VBF has pleaded the specific actions that it contends constitute mail and wire fraud, including (1) distributions and transfers effectuated through the U.S. mail and by wire to the Founders, (2) misrepresentations in marketing materials, contracts, and other documents regarding the technology and finances of VBF transmitted by mail and wire in interstate commerce, and (3) the depletion through wire transfers of VBF of funds and prevention of VBF from continuing to operate as a result. Paragraph 411 specifically lists certain of these acts of mail and wire fraud. SAC ¶ 411. As with VBF's other fraudulent scheme allegations, each act is described in detail earlier in the SAC. *See, e.g.,* SAC ¶¶ 42-45, 74-87, 95, 100-101, 104-106, 110, 118-23, 126, 128-29, 131, 136-39, 145, 153, 159, 166-68, 170. Moreover, documents themselves that constitute mail and wire fraud are attached to the SAC. *See, e.g.*, SAC Exs. 3-21. For example, in the August 2015 Written Representations (attached to the SAC as Exhibit 19), which were emailed in interstate and foreign commerce, the Founders falsely represented VBF's FCR. *See* SAC ¶¶ 11, 108, 124, Ex. 19. Similarly, in the April 2016 Written Representations, which were emailed in foreign commerce, the Founders misrepresented the stocking density for VBF's operations. *Id.* at ¶¶ 131, 145, 412, Ex. 28. Additionally, the SAC alleges millions of dollars in misappropriated funds to each of

the Founders, which misappropriations were effected through the mail and interstate wires. *Id.* at ¶¶ 420-21. These and the other acts of mail and wire fraud described in the SAC more than sufficiently allege RICO predicate acts.

The cases cited by the Founders are each distinguishable because they either:  (1) found the allegations of predicate acts to be sufficient, *see, e.g., Carpenter v. United States*, 484 U.S. 19, 24 (1987) (affirming RICO conviction); *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (holding that the plaintiff adequately pleaded predicate acts); (2) found an improper predicate act was pled, *see, e.g., Moore v. Town N. Auto, Inc.*, No. 3:14–CV–1215–D, 2014 WL 3396100, at *4 (N.D. Tex. July 11, 2014) (dismissing claim because common law fraud is not a predicate act); or (3) found insufficient much less specific allegations than those in the SAC, s*ee, e.g.*, *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (finding that the plaintiff did not allege any interstate communication); *Stanissis v. Dyncorp Int'l LLC*, No. 3:14–CV–2736–D, 2015 WL 1931417, at *6 (N.D. Tex. Apr. 29, 2015) (the plaintiff did not specify the when, where, who, or general time period of the fraud); *Havard v. Collins*, No. 3:13-CV-945-N, 2013 WL 12363628, at *3 (N.D. Tex. Aug. 21, 2013) (plaintiffs did not allege the time, place, or person making any false representation or interstate wires); *Paul v. Aviva Life & Annuity Co.*, No. 3:09–CV–1490–B, 2010 WL 5105925, at *5 (N.D. Tex. Dec. 14, 2010) (allegations of predicate acts were conclusory); *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *8 (N.D. Tex. May 9, 2007) (dismissing claim because the plaintiffs merely recited the RICO statute); *Hawkins v. Hutchison*, No. 1:05-CV-184-C ECF, 2007 WL 9758161, at *3 (N.D. Tex. May 10, 2007), *aff'd*, 277 F. App'x 518 (5th Cir. 2008) (the complaint was "rambling, noncommittal pleadings").

### (b)  Pattern of Racketeering Activity

VBF adequately alleges a "pattern of racketeering activity," which consists of at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5). "To successfully allege

that a defendant has engaged in a 'pattern' of racketeering activities, and has thereby violated

RICO, the plaintiff must allege that racketeering activities have been sufficiently continuous, that

they relate to each other, and that they relate to the threat of continued criminal activity." *Cadle*

*Co. v. Schultz*, 779 F. Supp. 392, 398 (N.D. Tex. 1991). Continuity refers to either a closed period

of repeated conduct or an open-ended period of conduct that by its nature projects into the future

with a threat of repetition. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989).

Closed-ended continuity can be demonstrated by proving a series of related predicate acts

extending over a period of time. *Id.* As the Founders' own cases recognize, four years, and even

two years, are sufficient periods of time. *See Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007)

(reversing dismissal of RICO claim in part because a two-year scheme was sufficient); *United*

*States v. Bustamante*, 45 F.3d 933, 941 (5th Cir. 1995) (affirming RICO conviction in part because

a four-year period was sufficient). Courts employ a "liberal pleading standard" for the continuity

prong. *Abraham*, 480 F.3d at 355-56.

VBF has pleaded sufficient facts to demonstrate close-ended continuity. Generally, VBF

alleges that the predicate acts commenced in 2014 and were continuous through at least November

2017.[2] SAC ¶ 416. More specifically, the SAC describes each predicate act in detail extending

over that period of time. *See, e.g. id.* at ¶¶ 26-27 (describing BAJJER stock scheme, which began

in 2014), 46-48 (describing OFA scheme, which began in 2014); 42-45 (describing Gagne scheme,

which ended in 2017), 111 (describing misrepresentations of FCR ending in November 2017).

---

[2] The cases cited in the Founders Motion dismissing on this basis involved shorter time periods
than those alleged in the SAC. *See Walker v. Allianz Life Ins. Co. of N. Am.*, No. 3-08-CV-2051-
M, 2009 WL 1883418, at *5 (N.D. Tex. June 30, 2009) (5 or 10 months); *Clapper v. Am. Realty
Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2016 WL 302313, at *8-10 (N.D. Tex. Jan. 25, 2016) (19
months); *Malvino v. Delluniversita*, 840 F.3d 223, 231-32 (5th Cir. 2016) (5 months); *Tel–phonic
Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1140 (5th Cir. 1992) (7 months).

This period of time is sufficient for close-ended continuity.

By arguing that the alleged predicate acts were all part of a single, allegedly lawful endeavor, the Founders admit that the numerous predicate acts of mail and wire fraud are related. Founder Motion at 22. But the Founders are incorrect that the predicate acts were part of a "lawful" endeavor—to the contrary and as discussed above, VBF adequately pleads that the Founders engaged in longstanding and widespread mail and wire fraud. Considering these allegations in the light most favorable to VBF, the Founders' scheme does not constitute a "lawful" endeavor. *See Office Outfitters, Inc. v. A.B. Dick Co.*, 83 F. Supp. 2d 772, 778 (E.D. Tex. 2000) (rejecting argument that scheme was a single, lawful endeavor because the scheme, "if it were carried out as alleged, is illegal"). Therefore, VBF adequately pled a pattern of racketeering activity.

### (c)    Enterprise

VBF adequately alleges a RICO enterprise, which is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). Here, VBF sufficiently pleads two alternative enterprise theories: (1) VBF, as controlled by the Founders, was the enterprise, and (2) the Founders were an association-in-fact enterprise.

The allegations support that VBF, as controlled by the Founders, was a RICO enterprise. The Founders argue that VBF is not well-pleaded as an enterprise only because VBF pleads that it is both the victim and the enterprise. *See* Founders Motion at 24. It is correct that VBF is both the victim and the enterprise:  VBF was the vehicle through which the Founders' unlawful pattern of racketeering activity was committed and, because VBF was composed of disinterested directors and shareholders and now continues independently of the Founders, the victim of the Founders'

misconduct. *See, e.g.* SAC at ¶¶ 402-407, 409, 422-28. What is not correct is the Founders' asser-tion that this is not allowed. The rule that the Founders cite—that a RICO enterprise cannot also be the victim—is simply not the law within the Fifth Circuit. *See Ranieri v. AdvoCare Int'l, L.P.*, No. 3:17-CV-0691-S, 2019 WL 3207501, at *4 (N.D. Tex. July 16, 2019) (noting that "the Fifth Circuit has not addressed" whether an enterprise may be a victim). Further, United States Supreme Court precedent (including that cited by the Founders) indicates that a RICO enterprise may also be a victim. *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 n.5 (1994) (noting that one commentator uses the terms "prize," "instrument," "victim," and "perpetrator" to describe the four separate roles the enterprise may play in § 1962).

Moreover, Third Circuit law, which the Founders cite for the proposition that an enterprise may not also be a victim, supports VBF's alternative (and also sufficiently pled) association-in-fact theory. *See Flood v. Makowski*, No. CIV.A. 3:CV-03-1803, 2004 WL 1908221, at *7 (M.D. Pa. Aug. 24, 2004) ("Thus, in instances in which the racketeering activity is committed by people within the company and the victim of the racketeering activity is the corporation…an association-in-fact of the board members or corporate officers constitutes the enterprise."); *see also Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995) (in the case of "a victim corporation 'drained of its own money' by pilfering officers and employees…the proper enterprise would be the association of employees who are victimizing the corporation"). That is precisely what VBF has alleged—the Founders were pilfering officers and employees who drained VBF of its own money. *See, e.g.* SAC at ¶¶ 25-53, 171-75. The Founders therefore are sufficiently pled as an association-in-fact enterprise.

The Founders' challenge VBF's association-in-fact enterprise theory only by arguing that the Founders' conduct was not sufficiently distinct from VBF's conduct. *See* Founders Motion at

23-24. But again the Founders misunderstand the rule. In *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003), the Fifth Circuit noted "[t]hat officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." Significantly, for this rule to apply, the officers' and employees' acts must have been "in the course of their employment." *Id.* In other words, acts adverse to VBF's interests and in furtherance of solely the Founders' interests are sufficiently distinct from VBF. *Cf. United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (finding no distinctness because "nothing in the complaint reveals how one might infer that these communications or actions were undertaken on behalf of the enterprise as opposed to on behalf of [the defendants] in their individual capacities, to advance their individual self-interests"). Here, VBF adequately pleads that the Founders' misconduct was not "in the course of their employment" because it was entirely adverse to the interests of VBF and served to solely benefit the Founders and to harm VBF. *See, e.g.*, SAC ¶ 2, 25, 31, 34, 37. Moreover, the SAC pleads that the Founders are and were associated outside of VBF. *Id.* at ¶ 403. Therefore, VBF also has adequately pleaded an association-in-fact enterprise sufficiently distinct from VBF.

### 4.     Other Claims (Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, and XIX)

To the extent that VBF's remaining claims for breach of fiduciary duty, aiding and abetting, civil conspiracy, constructive fraud, constructive fraudulent transfer, unjust enrichment, equitable accounting, declaratory judgment, rescission, and restitution are grounded in fraud and are subject to Rule 9(b), they are based on the same conduct adequately set forth related to VBF's claims for fraudulent concealment and misrepresentation (Counts II and III), actual fraudulent transfer (Counts V and VII), and civil RICO (Count XXVII), as set forth above.

**C.      VBF's claims subject to Rule 8 are sufficiently pled.**

As noted above, none of the claims discussed below (Counts I, IV, VI, VIII, IX, X, XI,

XII, XIII, XV, XVIII, XIV, XVI, XVII, XIX) *require* fraud as an element, and none of them are

based *solely* on the Founders' fraud. Claims that are not subject to Rule 9(b) are subject to Rule

8's more liberal pleading standard, which simply requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Rule 8 requires only

"notice" pleading; it is not necessary that the pleader set forth each and every element or factual

allegation of a claim. *Bluevine Capital, Inc. v. UEB Builders, Inc.*, 3:17-CV-3265-L, 2019 WL

142350, at *2 (N.D. Tex. Jan. 9, 2019). The Founders have not argued that VBF has failed to

properly plead any of these claims under Rule 8.

**1.      Breach of Fiduciary Duty (Count I), Aiding and Abetting (Count X), and
           Civil Conspiracy (Count IX)**

VBF alleges its claims for breach of fiduciary duty, aiding and abetting, and civil conspir-

acy for both fraud and non-fraud allegations.  *See McGraw v. Wachovia Securities, LLC*, No. 08-

CV-2064-LRR, 2009 WL 2949290, *5, 7, 8 (N.D. Iowa Sept. 10, 2009) (Rule 9(b) does not apply

to the extent the breach of fiduciary duty claim alleges recklessness or neglect); *CNH Capital*

*America LLC v. McCandless*, No. C05-2087, 2007 WL 1498357, at *8 (N.D. Iowa May 18, 2007)

("General awareness by an aider and abettor is sufficient to meet the knowledge component of an

aiding and abetting claim.") (internal citations omitted); *Meadows v. Hartford Life Ins. Co,*, 492

F.3d 634, 639 (5th Cir. 2007) (holds liable as a joint tortfeasor if knowingly participate in breach

of duty of a fiduciary); *cf. Town N. Bank, N.A. v. Shay Fin. Services, Inc.*, 3:11-CV-3125-L, 2014

WL 4851558, at *27 (N.D. Tex. Sept. 30, 2014) (noting that a "claim for breach of fiduciary duty

does not necessarily involve fraud"); *Tigue*, 2004 WL 3170789, at *2 ("[A] claim of conspiracy to

defraud is subject to Rule 9(b), but conspiracy in general is not.").

Some of the cases cited by the Founders for the proposition that these claims sound in fraud in fact support VBF's position. *See, e.g.*, *Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*, No. 4:17-cv-00225-O, 2017 WL 9934885, at \*5 (N.D. Tex. Nov. 27, 2017) (noting that for aiding and abetting fraud requires "only a general awareness of one's role in the primary violation" and finding allegations sufficient); *Tigue*, 2004 WL 3170789, at \*3 (finding that the plaintiff had not pleaded fraud with particularity but refusing to dismiss the plaintiff's claims for breach of fiduciary duty, deceptive trade practices, or negligent misrepresentation because those claims either did not incorporate any allegation of fraud or did incorporate such allegations but were viable when those allegations were disregarded).

Here, there are allegations that the Founders breached their fiduciary duty through actions that were reckless, knowingly aided and abetted breaches of fiduciary duty, and participated in a civil conspiracy to breach fiduciary duties and benefit themselves at VBF's expense, to which Rule 9(b) does not apply. *See, e.g.,* SAC ¶¶ 25-56, 163, 231-236, 290-292.

### 2. Constructive Fraud (Count IV) and Constructive Fraudulent Transfer (Counts VI and VIII)

Rule 9(b) should not apply to constructive fraud allegations. *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019) (noting that "district courts in the Fifth Circuit have suggested that constructive fraudulent transfer claims are only subject to Rule 8(a)") (citing cases); *In re Juliet Homes, LP*, No. 07-36424, 2010 WL 5256806, at \*23 (Bankr. S.D. Tex. Dec. 16, 2010) ("Because constructive fraud does not require proof of scienter, Rule 9(b)'s heightened pleading requirements do not apply, and the pleading of a constructive fraud claim must only comply with

- 23 -

Rule 8(a).") (internal citation omitted).[3] There are allegations that the Founders committed constructive fraud through breaches of fiduciary duty or knowingly aiding and abetting breaches of fiduciary duty, regardless of intent.  *See, e.g.,* SAC ¶¶ 252.  Similarly, there are allegations of fraudulent constructive transfers to the Founders based upon lack of reasonably equivalent value received by VBF and unreasonably small assets or insolvency of VBF, regardless of whether there was actual fraud committed, which is all the statutes require.  *See* Iowa Code § 684.4(1)(b) and Tex. Bus. & Comm. Code § 24.005(a)(2); *see, e.g.,* SAC ¶¶ 266-269, 283-287.

### 3.  Unjust Enrichment (Count XI), Equitable Accounting (Count XII), and Declaratory Judgment (Counts XIII, XV, XVIII)

The claims for unjust enrichment, equitable accounting, and declaratory judgment do not depend on fraudulent conduct and can be proven even if it is found the Founders did not commit fraud.[4]  *See Janvey v. Alguire*, 846 F. Supp. 2d 663, 677 n. 15 (N.D. Tex. 2011) (unjust enrichment claim "does not depend on [a defendant] having engaged in fraudulent conduct"); *State Dept. of Human Services ex rel. Plamer v. Unisys Corp.*, 637 N.W.2d 142 (Iowa 2001) (unjust enrichment is a "broad principle with few limitations"); *Bostic v. Goodnight*, 443 F.3d 1044, 1048 (8th Cir. 2006) (accounting is an equitable remedy to compel one in a confidential or trust relationship "to render an account of his actions and for the recovery of any balance found to be due"); 28 U.S.C. § 2201 (Declaratory Judgment Act); *Estate of Foster by Foster v. Shalala*, 926 F. Supp. 850, 858

---

[3] The Fifth Circuit has not decided the issue, and some courts in this district have held that Rule 9(b) applies to constructive fraud. *See Schroeder v. Wildenthal*, No. 3:11-CV-0525-B, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011), aff'd, 515 Fed. Appx. 294 (5th Cir. 2013). Although the better rule is that Rule 9(b) does not apply because constructive fraud does not require a showing of actual fraud, if the Court determines that Rule 9(b) applies, VBF has satisfied the rule as discussed above in Section I.B.2.

[4] The Founders point out that certain of VBF's claims for declaratory judgment and rescission mistakenly refer to 22 U.S.C. § 2201, a statute related to assistance to disadvantaged children in Asia. *See* Founder Motion 10 n.9. Of course this reference is a typographical error and should have read "28 U.S.C. § 2201," the statute creating a remedy for declaratory judgments.

(N.D. Iowa 1996) (no actual wrong need to have been committed or loss have occurred to sustain an action for declaratory judgment); *Tierstein v. AGA Med. Corp.*, 6:08CV14, 2009 WL 704138, at *3 (E.D. Tex. Mar. 16, 2009) (applying Rule 8 to counterclaim for declaratory judgment).  As such, Rule 9(b) does not apply to these claims.  Further, there are ample allegations to support that the Founders took advantage of VBF (whether or not fraudulent) through personal benefits, improper transactions, gross neglect or recklessness, taking undue advantage, mismanagement, corporate waste, and/or breaches of fiduciary duty.  *See, e.g.,* SAC ¶¶ 26-31, 35-39, 46-53, 300, 304, 307, 324-326, 351.

### 4.      Rescission (Counts XIV, XVI, XVII) and Restitution (Count XIX)

The claims for rescission and restitution, in addition to fraudulent conduct, also specifically reference breaches of fiduciary duty and other misconduct as bases for these remedies.  *See, e.g.,* SAC ¶¶ 310, 354.  Both rescission and restitution claims can be supported by non-fraudulent conduct, consistent with VBF's allegations.  *See Farmers Co-op Co. of Farnhamville v. Youngstrom*, No. C 97-3094-MWB, 2000 WL 34031805, at *3 (N.D. Iowa Aug. 21, 2000) (rescission is available for breach of fiduciary duty); *State Dep't of Human Servs. Ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001) (unjust enrichment may serve as independent grounds for restitution); *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010) ("[C]ourts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty."); *Arce v. Burrow*, 958 S.W.2d 239, 246 (Tex. App.—Houston [14th Dist.] 1997), *aff'd in part, rev'd in part on other grounds*, 997 S.W.2d 229 (Tex. 1999) ("Texas also recognizes other equitable remedies for breaches of fiduciary duty including rescission or the imposition of a constructive trust.") (citations omitted).

Therefore, Rule 8 should apply to Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, and XIX, and because they are sufficiently pled, these Counts should not be

dismissed.  To the extent that Rule 9(b) does apply, the underlying fraudulent scheme has been pled with sufficient particularity as discussed in Section I.B.

### D.     A choice of law analysis is not required because the Founders Motion presents no conflict of law.

The Founders argue that the SAC should be dismissed because VBF has inadequately pleaded the application of Iowa substantive law. Founders Motion at 27-30. This argument is incorrect as a matter of law because, as the Founders themselves point out, "[a] court sitting in diversity need not conduct a choice-of-law analysis when there is no conflict of law." *Id.* at 28 (citing *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990)); *see also Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F. Supp. 2d 698, 707 (N.D. Tex. 2011) (same). The Founders have identified no conflict between Iowa and Texas law with respect to any of the issues raised in their motion. In fact, as shown in the discussion of VBF's claims in Sections II.B and C above, Iowa and Texas law are consistent in all respects relevant to the Founders Motion. As a result, no choice-of-law analysis is required, and the SAC should not be dismissed on this ground. *See Official Stanford Inv'rs Comm. v. Breazeale Sachse & Wilson LLP*, No. 3:11-CV-0329-N, 2015 WL 13740747, at *3 (N.D. Tex. Mar. 24, 2015) (noting that "[c]hoice of law determinations require assessments of fact…and thus are generally inappropriate for resolution on a motion to dismiss" and declining to decide choice of law on a motion to dismiss).

In the sole case that the Founders cite for the proposition that dismissal is an appropriate remedy for failure to adequately plead choice-of-law, there was a conflict of law. In *Enigma Holdings, Inc. v. Gemplus Int'l, S.A.*, No. 3:05-CV-1168-B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006), the court granted a motion to dismiss because the plaintiffs failed to adequately plead that Texas law applied to their claims. Significantly, in that case the defendants had argued that there was a conflict between the two potentially applicable laws—Texas law, which recognizes

the asserted causes of action, and Luxembourg law, under which (the defendants argued) "there are no causes of action which are identical or even similar to those asserted by the Plaintiffs." Defs.' Br. Supp. Mot. Dismiss, *Enigma Holdings, Inc. v. Gemplus Int'l, S.A.*, No. 3:05-CV-1168-B (N.D. Tex. Oct. 6, 2006), Dkt. 49 at 43 (internal quotation marks omitted). Here, the Founders have presented no such conflict between Iowa and Texas laws. Further, in *Enigma Holdings*, the court also allowed the plaintiffs to file an amended complaint to address that deficiency. *See* 2006 WL 2859369, at *9.

Further, if a choice of law inquiry were necessary, it is a question of fact, and VBF has pled allegations sufficient to invoke Iowa law or at least raise a fact issue on that point. *See Official Stanford Inv'rs Comm.*, 2015 WL 137407047, at *3. The Founders cite the *Enigma* case in support of their position, but the allegations in *Enigma* were not sufficient because the "Plaintiffs' alleged facts only cursorily address[ed] the place where the defendants made the representations and [did] not address the place, or places, where the plaintiff acted in reliance upon the defendants' representations or the place where plaintiffs received the representations." *Enigma Holdings, Inc.*, 2006 WL 2859369, at *7. In contrast, the SAC alleges that VBF's principal place of business was in Webster City, Iowa and that VBF operated its business there. SAC ¶¶ 4, 18. The SAC also specifically alleges that much of the Founders' misconduct took place in Iowa. *See id.* at ¶¶ 42, 44, 52, 99, 172, 174. VBF ultimately filed for bankruptcy in Iowa. *Id.* at ¶ 176. Thus, even though there is no conflict of laws and the Court therefore need not address the issue of which law applies, there also are sufficient factual allegations for the Court to apply Iowa law or defer the issue to a later stage of the proceeding. In either case, dismissal on this ground is not appropriate.

Moreover, the Founders' discussion of the choice of law provision in the Founders' em-

ployment or termination agreements is irrelevant. *First*, as noted above, there is no conflict between Iowa and Texas law, and there is no reason for the Court to conduct a choice of law analysis or even consider the choice of law provision. *Second*, VBF has alleged that the employment and termination agreements were procured through fraud and has sought those agreements' rescission. *See id.* at ¶¶ 216, 225, 310-22, 328-37, 338-49. If those agreements are rescinded (as they should be), the choice of law provision will not apply. *Third*, even if the Court finds that Texas law applies, as discussed herein, all claims are properly pleaded under Texas law.

## II.    VBF has standing to pursue its claims.

The Founders also move to dismiss under Rule 12(b)(1), arguing that VBF lacks standing because it may not seek recovery on behalf of its investors or other third parties. Founders Motion at 25-27. But this argument is a straw man—VBF seeks to recover the losses that *VBF itself* suffered as a result of the Founders' misconduct, not losses incurred by its investors or anyone else.

"The doctrine of standing asks 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). Standing has both constitutional and prudential components. *Id.* Constitutional standing requires a plaintiff to establish that it has suffered an injury in fact traceable to the defendant's actions that will be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Prudential standing encompasses "at least three broad principles," including "the general prohibition on a litigant's raising another person's legal rights." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Here, VBF has made much more than the "general factual allegations" sufficient to plead standing.

VBF has constitutional standing. VBF alleges a direct injury: the loss of over $90 million

of VBF's own assets. *See, e.g.*, SAC ¶¶ 1, 3, 25, 54, 234, 242, 249. That injury is traceable to the Founders' actions—the SAC pleads in detail the numerous misappropriations and schemes perpetrated by the Founders that led to VBF's loss of substantially all of its assets. *See, e.g.*, *id.* at ¶¶ 3 (describing Founders' actions in general), 25-53 (describing multiple schemes undertaken by the Founders that resulted in the misappropriation of $5-10 million of VBF's assets), 234 (describing VBF's damages as in excess of $90 million), 242 (same). VBF also adequately pleads redressability because a favorable ruling would result in the payment by the Founders of the assets that they lost. *See, e.g.*, *id.* at ¶ 437 (requesting actual and consequential damages).

VBF also has prudential standing. VBF is not raising another person's legal rights. It is well-settled law that "[a]n action to redress injuries to a corporation…must be brought in the name of the corporation." *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981). Indeed, "[w]hen an officer, director, or controlling shareholder breaches a fiduciary duty to the corporation, the shareholder has 'no standing to bring [a] civil action at law against faithless directors and managers,' because *the corporation and not the shareholder suffers the injury*."[5] *Lewis v. Knutson*, 699 F.2d 230, 237-38 (5th Cir. 1983) (emphasis added) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). In *Stevens v. Lowder*, for example, the shareholder plaintiffs alleged "a breach of a confidential relationship with the Directors and [the corporation]; a conspiracy to destroy [the corporation] and acquire its assets; and fraud in the purchase of [the corporation's] assets." 643 F.2d at 1080. The Fifth Circuit held that "[e]very injury alleged is an injury directly to the corporation." *Id.* Here, VBF alleges breach of fiduciary duties owed to VBF, multiple claims including conspiracy related to a scheme to destroy VBF and squander its assets, fraud on VBF resulting in

---

[5] Federal Rule of Civil Procedure 23.1 permits a shareholder to bring a derivative action on behalf of a corporation under certain circumstances. This action is not a derivative action; it is an action by the corporation directly.

VBF's ultimate bankruptcy, rescission of agreements to which VBF was a party, and remedies for accounting of and return of VBF assets. Every injury that VBF has alleged is an injury directly to VBF, as recognized by the Fifth Circuit in *Stevens*.

Tellingly, all but one of the Founders' cases do not involve the circumstances presented here—a corporation's standing to recover for its injuries.[6] The one case that does address an entity's standing (through a receiver)—*Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 804134, at *5-6 (N.D. Tex. Mar. 26, 2009)—supports VBF's standing in this case. In *Reneker*, the court held that a receiver had standing, on behalf of the entities in receivership, to bring a breach of fiduciary duty claim to recover professional fees that the receivership entities had paid to the defendant. *Id.* at *6. Similarly here, VBF has standing to bring the claims it asserts here to recover the value of VBF's assets misappropriated and squandered by the Founders. While the *Reneker* court also held that the receiver lacked standing to bring a claim against the defendant to recover the investors' losses, that holding is inapplicable here. The basis of the court's holding on that issue was that the receiver specifically sought to recover certain "amount[s] owed to the investors."

---

[6] The other standing cases cited in the Founders Motion address (1) loss causation and not standing, (2) the standing of environmental organizations, members of Congress, an insurance policyholder, and (3) standing to appeal. *See Lujan*, 504 U.S. at 564 (holding that environmental organizations had not proven at the summary-judgment stage that any of their members would be directly affected by a regulation that limited the geographic scope of a section of the Endangered Species Act of 1973 to the United States and the high seas); *Raines v. Byrd*, 521 U.S. 811, 830 (1997) (holding that individual members of Congress did not have standing to challenge the constitutionality of the Line Item Veto Act); *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 247-48 (5th Cir. 2008) (holding that the plaintiff did not have standing to sue insurers who did not issue an insurance policy to the plaintiff); *Scottsdale Ins. Co. v. Knox Park Constr., Inc.*, 488 F.3d 680, 684 (5th Cir. 2007) (holding that a co-defendant did not have standing to appeal an order regarding its co-defendant's motion for summary judgment); *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009) (finding, in securities fraud case, that the complaint sufficiently alleged loss causation for some, but not all, of the alleged misrepresentations); *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) (finding no particularized allegation of reliance); *Magruder v. Halliburton Co.*, No. 3:05-CV-1156-M, 2009 WL 854656, at *15 (N.D. Tex. Mar. 31, 2009) (finding, in securities fraud action, that the plaintiffs did not properly plead loss causation).

*Id.* Here, in contrast, VBF does not allege that it seeks to recover amounts owed to investors. VBF specifically seeks recovery for the amount of VBF's own assets that were misappropriated and wasted by the Founders' misconduct. *See, e.g.*, SAC ¶¶ 234, 242, 253, 428.

Therefore, VBF has adequately pleaded its standing, and the Founders Motion as to Rule 12(b)(1) should be denied.

### III.    If necessary, VBF should be granted leave to further amend.

If the Court is inclined to grant the Founder Motion, in whole or in part, VBF requests leave to amend any claims that the Court finds deficient. Federal Rule of Civil Procedure 15(a)(2) provides that the court should freely grant a party leave to amend its pleadings when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). And "[i]f it appears that a more carefully drafted pleading might state a claim upon which relief can be granted, the court should give the claimant an opportunity to amend its claim rather than dismiss it." *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, No. Civ. A. 303CV2392G, 2005 WL 2124126, at *7 (N.D. Tex. Sept. 1, 2005). Many of the cases cited by the Founders recognize that leave to replead should be granted if any part of the motion is granted. *See, e.g.*, *Halaris v. Viacom, Inc.*, 3:06-CV-1646-N, 2007 WL 4145405, at *9 (N.D. Tex. Sep. 21, 2007) (granting leave to replead); *Havard v. Collins*, No. 3:13-CV-945-N, 2013 WL 12363628, at *6 (N.D. Tex. Aug. 21, 2013) (same); *Stanissis v. Dyncorp Int'l LLC*, No. 3:14–CV–2736–D, 2015 WL 1931417, at *6 (N.D. Tex. Apr. 29, 2015) (same).

There will be no prejudice to the Founders if VBF further amends its complaint. Following the transfer of this case to this Court, a further scheduling order has not yet been entered. Discovery also is in the early stages, and the Founders have not yet been subject to depositions.  Therefore, if the Court finds that the SAC is deficient, VBF requests leave to file a further amended complaint to address the Court's ruling.

## CONCLUSION

For the foregoing reasons, the Court should deny the Founders Motion in its entirety. Alternatively, if any portion of the Founders Motion is granted, the Court should grant VBF leave to further amend the SAC.

Dated: December 3, 2019

Respectfully submitted,

*/s/ Nicole L. Williams*
Nicole L. Williams
  Texas Bar No. 24041784
  nicole.williams@tklaw.com
William L. Banowsky
  Texas Bar No. 01697125
  bill.banowsky@tklaw.com
Jasmine S. Wynton
  Texas Bar No. 24090481
  jasmine.wynton@tklaw.com
Nicholas S. Davis
  Texas Bar No. 24101678
  nick.davis@tklaw.com
**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)

*/s/ Robert H. Lang*
Robert H. Lang
  (appearing *pro hac vice*)
  rhlang@thompsoncoburn.com
**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, Illinois 60603
(312) 346-7500

***Attorneys for Plaintiff VeroBlue Farms USA, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

This document was filed electronically on December 3, 2019, and, in compliance with Local Civil Rule L.R. 5.1(d), a copy of this document has been served on all counsel of record.

*/s/ Nicholas S. Davis*