# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VeroBlue Farms USA Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-00764-X |
| | § | |
| Leslie A. Wulf, Bruce A. Hall, James | § | |
| Rea, John Rea, and Keith Driver, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO
## DRIVER'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................4

    I.  VBF adequately pleads its claims against Driver. .............................................. 5

        A.  The SAC is not impermissible "shotgun" or "puzzle" pleading. ................................. 5

        B.  The SAC is not improper group pleading. .................................................... 6

        C.  VBF adequately pled with particularity claims to which Rule 9(b) may apply........... 9

            1. Fraudulent Concealment and Misrepresentation (Counts II and III) ......................10

            2. Actual Fraudulent Transfer (Counts V and VII).......................................14

            3. RICO Predicate Acts (Count XXVII) ....................................................15

            4. Other Claims (Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, and XIX) ...................................................................16

        D.  VBF's claims subject to Rule 8 are sufficiently pled. ............................... 16

            1. Breach of Fiduciary Duty (Count I), Aiding and Abetting (Count X), and Civil Conspiracy (Count IX) ...................................................17

            2. Constructive Fraud (Count IV) and Constructive Fraudulent Transfer (Counts VI and VIII) .................................................................17

            3. Unjust Enrichment (Count XI), Equitable Accounting (Count XII), and Declaratory Judgment (Counts XIII, XV, XVIII) ...................................18

            4. Rescission (Counts XIV, XVI, XVII) and Restitution (Count XIX)......................19

    II.  VBF's claims were not released or, at a minimum, VBF's allegations raise a fact issue regarding whether any claims were released. ...................................... 20

        A.  The release is void because it was procured through fraud. ....................... 20

        B.  VBF's claims are not within the scope of the release. ............................... 23

    III. Driver may not incorporate the Founders' motion to dismiss. ......................... 24

    IV. If necessary, VBF should be granted leave to further amend. .......................... 25

CONCLUSION..........................................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Agri-Plastics, Inc. v. Hog Slat, Inc.*,
   No. CIV.A.3:09-CV-1271-B, 2010 WL 711811 (N.D. Tex. Feb. 26, 2010)............................ 12

*Arce v. Burrow*,
   958 S.W.2d 239 (Tex. App.—Houston [14th Dist.] 1997)....................................... 20

*Bagby v. Rydex Investments*,
   No. CIVA 306CV0648G, 2007 WL 507042 (N.D. Tex. Feb. 16, 2007) ................................. 13

*Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*,
   No. Civ. A. 303CV2392G, 2005 WL 2124126 (N.D. Tex. Sept. 1, 2005) .............................. 26

*Bluevine Capital, Inc. v. UEB Builders, Inc.*, 3:17-CV-3265-L,
   2019 WL 142350 (N.D. Tex. Jan. 9, 2019) ............................................................... 17

*Bonton v. Archer Chrysler Plymouth*,
   889 F. Supp. 995 (S.D. Tex. 1995)......................................................................... 15

*Bostic v. Goodnight*,
   443 F.3d 1044 (8th Cir. 2006) ............................................................................. 19

*BRG Ins. Sols., LLC v. O'Connell*,
   No. 3:16-CV-2448-N, 2017 WL 7513649 (N.D. Tex. July 18, 2017) ....................................... 6

*CNH Capital America LLC v. McCandless*,
   No. C05-2087, 2007 WL 1498357 (N.D. Iowa May 18, 2007)................................................ 17

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ................................................................................. 5

*Drobnak v. Andersen Corp.*,
   561 F.3d 778 (8th Cir. 2009) .............................................................................. 10

*Duncan v. Cessna Aircraft Co.*,
   665 S.W.2d 414 (Tex. 1984)................................................................................. 24

*Energytec, Inc. v. Proctor*,
   516 F. Supp. 2d 660 (N.D. Tex. 2007) .................................................................... 11

*ERI Consulting Engineers, Inc. v. Swinnea*,
   318 S.W.3d 867 (Tex. 2010)................................................................................. 20

*Estate of Foster by Foster v. Shalala*,
   926 F. Supp. 850 (N.D. Iowa 1996) ................................................................ 19

*Farmers Co-op Co. of Farnhamville v. Youngstrom*,
   No. C 97-3094-MWB, 2000 WL 34031805 (N.D. Iowa Aug. 21, 2000) ................................ 19

*Harris v. Sanderson*,
   178 S.W.2d 315 (Tex. Civ. App.—Eastland 1944, writ ref'd) ................................ 22

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
   302 F.3d 552 (5th Cir. 2002) ................................................................ 11

*Howell Petroleum Corp. v. Weaver*,
   780 F.2d 1198 (5th Cir. 1986) ................................................................ 15

*In re Eastern Livestock Co.*,
   No. 12-59147, 2013 WL 6048813 (Bankr. S.D. Ind. Nov. 15, 2013) ............................ 23

*In re Harwood*,
   637 F.3d 615 (5th Cir. 2011) ................................................................ 22

*In re Juliet Homes, LP*,
   No. 07-36424, 2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2010) ............................ 18

*In re Life Partners Holdings, Inc.*,
   926 F.3d 103 (5th Cir. 2019) ..................................................... 14, 15, 18

*In re Metro. Sec. Litig.*,
   532 F. Supp. 2d 1260 (E.D. Wash. 2007) ....................................................... 6

*In re TOCFHBI, Inc.*,
   413 B.R. 523 (Bankr. N.D. Tex. 2009) ........................................................ 23

*Inglish v. Union State Bank*,
   911 S.W.2d 829 (Tex. App.—Corpus Christi 1995, no writ) .................................... 22

*Janvey v. Alguire*,
   846 F. Supp. 2d 662 (N.D. Tex. 2011) .................................................... 14, 19

*Janvey v. Democratic Sen. Campaign Committee, Inc.*,
   712 F.3d 185 (5th Cir. 2013) ................................................................ 23

*McGraw v. Wachovia Securities, LLC*,
   No. 08-CV-2064-LRR, 2009 WL 2949290 (N.D. Iowa Sept. 10, 2009) ............................ 17

*Meadows v. Hartford Life Ins. Co*,
   492 F.3d 634 (5th Cir. 2007) ................................................................ 17

*N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*,
   107 F. Supp. 3d 620 (N.D. Tex. 2015) .................................................................. 12

*Newman v. Link*,
   866 S.W.2d 721 (Tex. App.—Houston [14th Dist.] 1993, writ denied .................................... 22

*Oilwell Div., U.S. Steel Corp. v. Fryer*,
   493 S.W.2d 487 (Tex. 1973) ................................................................................... 22

*Rodriguez-Rodriguez v. Big Bird Tree Serv., Inc.*,
   No. 3:15-CV-3815-L, 2017 WL 1047576 (N.D. Tex. Mar. 20, 2017) .................................... 25

*S.E.C. v. Fraser*,
   No. CV-09-00443-PHX-GMS, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010) ............................ 7

*S.E.C. v. Patel*,
   No. 07-cv-39-SM, 2009 WL 2015794 (D.N.H. July 7, 2009) ...................................... 6

*S.E.C. v. Sharp Capital, Inc.*,
   No. 3:98CV2792G, 1999 WL 242691 (N.D. Tex. Apr. 16, 1999) ........................................ 10

*Saffran v. Bos. Sci. Corp.*,
   No. CIV.A.2 05-CV-547(TJ, 2008 WL 2716318 (E.D. Tex. July 9, 2008) ...................... 25, 26

*Schlumberger Tech. Corp. v. Swanson*,
   959 S.W.2d 171 (Tex. 1997) .................................................................................. 25

*Schmaltz v. Walder*,
   566 S.W.2d 81 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e. ............................... 21

*Schroeder v. Wildenthal*,
   No. 3:11-CV-0525-B, 2011 WL 6029727 (N.D. Tex. Nov. 30, 2011) .................................. 18

*SEC v. Brady*,
   No. 3:05-CV-1416, 2006 WL 1310320 (N.D. Tex. May 12, 2006) ...................................... 10

*Shannon v. Memorial Drive Presbyterian Church U.S.*,
   476 S.W.3d 612 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ........................... 20, 25

*Solis v. Evans*,
   951 S.W.2d 44 (Tex. App.—Corpus Christi 1997, no writ) ................................................. 24

*Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) .............................................................................. 8, 9

*Spolijaric v. Percival Tours, Inc.*,
   708 S.W.2d 432 (Tex. 1986) .................................................................................. 22

*State Dept. of Human Services ex rel. Plamer v. Unisys Corp.*,
 637 N.W.2d 142 (Iowa 2001) ........................................................................... 19, 20

*Steiner v. Southmark Corp.*,
 734 F. Supp. 269 (N.D. Tex. 1990) ........................................................................ 10

*Tierstein v. AGA Med. Corp.*,
 6:08CV14, 2009 WL 704138 (E.D. Tex. Mar. 16, 2009)......................................... 19

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
 No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004)......................... 10

*Town N. Bank, N.A. v. Shay Fin. Services, Inc.*, 3:11-CV-3125-L,
 2014 WL 4851558 (N.D. Tex. Sept. 30, 2014) ....................................................... 17

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
 125 F.3d 899 (5th Cir. 1997) ......................................................................... 10, 11

*United States ex rel. Atkins v. McInteer*,
 470 F.3d 1350 (11th Cir. 2006) ............................................................................. 6

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
 355 F.3d 370 (5th Cir. 2004) ........................................................................... 5, 11

*United States ex rel. Williams v. Bell Helicopter Textron, Inc.*,
 417 F.3d 450 (5th Cir. 2005) ................................................................................ 11

*United States v. Hoffman*,
 901 F.3d 523 (5th Cir. 2018) ................................................................................ 16

*Vela v. Pennzoil Producing Co.*,
 723 S.W.2d 199 (Tex. App.—San Antonio 1986, writ ref'd n.r.e............................ 24

*Victoria Bank & Trust Co. v. Brady*,
 811 S.W.2d 931 (Tex. 1991)................................................................................. 24

*Wagner v. First Horizon Pharm. Corp.*,
 464 F.3d 1273 (11th Cir. 2006) .............................................................................. 6

*Williams v. Glash*,
 789 S.W.2d 261 (Tex. 1990)................................................................................. 21

*Williams v. WMX Tech. Inc.*,
 112 F.3d 175 (5th Cir. 1997) ................................................................................ 11

*Wright*,
 173 S.W.3d .......................................................................................................... 22

## **STATUTES**

18 U.S.C. §§ 1341, 1343 ................................................................................................ 16

28 U.S.C. § 2201 ........................................................................................................... 19

Iowa Code § 684.4(1)(b) ............................................................................................... 18

Tex. Bus. & Comm. Code § 24.005(a)(2) ..................................................................... 18

## **RULES**

Fed. R. Civ. P. 10 ............................................................................................................ 6

Fed. R. Civ. P. 12 ............................................................................................................ 5

Fed. R. Civ. P. 15 .......................................................................................................... 26

Fed. R. Civ. P. 7 ............................................................................................................ 25

Fed. R. Civ. P. 8 ..................................................................................................... passim

Fed. R. Civ. P. 9 ..................................................................................................... passim

Local Civ. R. 5 ............................................................................................................... 28

Texas Disciplinary Rule of Professional Conduct 1.06(b) .......................................... 23

## INTRODUCTION AND SUMMARY OF ARGUMENT

In 450 paragraphs, 99 pages, and with 60 exhibits, Plaintiff VeroBlue Farms USA Inc. ("VBF") describes in exhaustive detail its claims against Defendant Keith Driver and his co-conspirators Les Wulf, Bruce Hall, Ted Rea, and James Rea.  Arguing that VBF has not pleaded its claims with particularity (but without challenging specific elements of any of the claims) and that VBF's claims have been released, Driver moves to dismiss the Second Amended Complaint ("SAC").  Driver's motion to dismiss (Dkts. 180-81, "Driver Motion") should be denied.  VBF adequately pled its claims, including allegations that defeat the applicability of the alleged release.

*First*, the SAC does not constitute an improper "shotgun" or "puzzle" pleading. Shotgun or puzzle pleadings are those in which a plaintiff simply recites the elements of a cause of action without applying any facts to the elements. Here, VBF alleges its factual predicates in detail and applies those predicates to each cause of action. *Second*, VBF's allegations do not constitute impermissible "group pleading."  Driver is specifically tied and connected to the alleged schemes through the allegations in the SAC.  VBF at times uses the definitional term the "Founders," appropriately when VBF is alleging that all of Driver and the other Founders (Wulf, Hall, and the Reas) committed the alleged misconduct.

*Third*, VBF adequately pleads all claims to which Rule 9(b) may apply: fraudulent concealment and misrepresentation (Counts II-III), actual fraudulent transfer (Counts V and VII), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count XXVII), and the remaining claims to the extent they rely on any fraudulent conduct, which is the same as the fraudulent conduct in these counts. Driver overgeneralizes the pleading standard applicable to these claims. Where claims are grounded in omissions rather than affirmative misrepresentations, VBF need only plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading. VBF has

pleaded those facts, as well additional facts for the "who, what, when, where, and how" in instances where misrepresentations were affirmative and information available without the Defendants' co-operation. Similarly, for the actual fraudulent transfer claims, VBF need only set out the details of the allegedly fraudulent transfers and describe the underlying fraudulent scheme, and VBF has done so. As for VBF's RICO claim, only the predicate acts element requires particularized pleading, and VBF has adequately pleaded the Founders' acts of mail and wire fraud. *Fourth*, Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, XIX are claims that do not necessarily require fraud as an element or rely solely on fraud.  Therefore Rule 8 is applicable, and these claims comply with Rule 8.

*Fifth*, VBF did not release its claims against Driver. As alleged in the SAC, the release upon which Driver relies was procured through fraud, and is thus invalid and void. In any event, VBF's claims do not fit within the scope of the release. *Finally*, although Driver attempts in one sentence to incorporate the entirety of the other Founders' arguments, such incorporation is impermissible. The Driver Motion should be denied in its entirety, or, alternatively, VBF should be granted leave to further amend.

## BACKGROUND

The Defendants founded VBF, a sustainable fish farm, in 2014. SAC ¶ 1. Driver served as a VBF officer (Chief Operating Officer) and/or employee from October 1, 2014 through January 13, 2017, when VBF terminated his employment and officer status through a Business Relationship Restructuring Agreement (the "Driver Agreement"). *Id.* at ¶ 6. Like his co-defendant Founders, Driver did not invest any of his own money into VBF, instead participating in misappropriating and squandering nearly $90,000,000 in debt and equity invested in VBF. *Id.* at ¶ 1.

Following the termination of the last Founder Defendant in January 2018, VBF eventually discovered that they, including Driver, had misappropriated and misused millions of dollars in

corporate assets and made continuous and knowing misrepresentations of and omissions related to VBF's operations, technology, and finances. *See id.* at ¶ 2. The Founder Defendants, including Driver, (1) drained VBF of assets and looted the company, (2) withdrew significant funds while VBF was in financial trouble, (3) received money and other assets that belonged to VBF for no reasonably equivalent value, (4) ultimately rendered VBF virtually incapable of operation, and (5) took improper salaries and other benefits from VBF's assets. *See id.* at ¶¶ 3, 25-53, 171-175.

The Founder Defendants, including Driver, also misrepresented (affirmatively and by omission) VBF's technology and finances, including its key performance and financial metrics. The SAC describes in detail numerous misrepresentations and omissions made by Driver and the other Founder Defendants as to items such as feed conversion ratio ("FCR"), EBITDA, stocking density, water quality, and mortality rates. *See id.* at ¶¶ 54-170. In addition to describing the misrepresentations in detail, many of the written misrepresentations are attached as exhibits to the SAC. *See, e.g.*, *id.* at Exs. 3-32. Driver and the Defendants made these misrepresentations internally and externally, and also concealed the truth from VBF and its disinterested directors and shareholders. *See, e.g.*, *id.* at ¶¶ 20, 22, 40, 55, 87, 105, 133.  Had Driver and the other Founder Defendants not concealed these material facts, VBF would have taken action to stop the continued misconduct. *See id.* at ¶ 239. But unfortunately, the Defendants' actions led to VBF's loss of at least $90 million and bankruptcy. *See id.* at ¶ 1.

Much of the groundwork for these schemes and other misconduct was carried out while Driver was VBF's Chief Operating Officer or otherwise sharing in the control of VBF with his alleged co-conspirators – the other Founder Defendants. *See id.* at ¶¶ 3, 6. During his tenure at VBF, Driver purported to serve as VBF's chief in-house aquaculture expert, and therefore, the fraud regarding VBF's technical performance bears heavily on Driver. *See id.* at ¶ 6.

- 3 -

In addition to his participation with all of the Defendants in his control of VBF and the joint schemes, Driver also is mentioned specifically in the SAC as participating in the following schemes, misrepresentations, and misconduct through which he received over $3.3 million in value from VBF (*see id.* at ¶ 257(e)):

- the Compensation Scheme wherein the Defendants set their compensation higher than market, *see id.* at ¶¶ 38-41;

- the OFA Scheme wherein the Defendants created an unnecessary "middleman" company, *see id.* at ¶¶ 46-48;

- the expenditure of VBF funds for Defendants' personal expenses and use, *see id.* at ¶¶ 52-53;

- the misappropriation of VBF Canada Stock through which Driver received over 2.5 million in shares to the detriment of VBF, *see id.* at ¶¶ 49-51;

- the warning by aquaculture expert, Dr. Kevin Fitzsimmons, to Driver that VBF's materials incorporated serious flaws, which was provided early in the VBF venture (2014) when tens of millions of dollars and the attendant human cost could have been spared, and Driver's concealment of such information from the disinterested VBF directors, officers, and employees, and reckless continuance of the VBF business and expenditure of tens of millions of dollars while knowing that VBF was fatally flawed to its inevitable result of bankruptcy, *see id.* at ¶ 97;

- the warning by another aquaculture expert, Dr. Anthony Michaels, that VBF was doomed for bankruptcy, which Wulf advised Driver of in mid-2015 and which information Driver again ignored and concealed, *see id.* at ¶¶ 75-87;

- the repeated provision by Driver of misleading information regarding the performance of VBF to disinterested VBF directors, officers, and employees and/or concealing material information from such parties, *see id.* at ¶¶ 101, 105, 117, 130, 144; and

- the procurement by Driver of the Driver Agreement through fraud and concealment of material facts, *see id.* at SAC ¶¶ 218-225.

## ARGUMENT

Driver moves to dismiss the SAC under Rule 12(b)(6). Such motions are viewed with disfavor and are seldom granted. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.

2000). "In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Id.* (internal citations omitted). "The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim." *Id.* (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

## I.      VBF adequately pleads its claims against Driver.

Driver moves to dismiss on the grounds that the SAC is a shotgun or puzzle pleading, that it contains impermissible group pleading, and that it does not state its fraud claims with particularity. Driver Motion at 10-15. The Driver Motion on these grounds should be denied because (a) the SAC is not a shotgun or puzzle pleading, (b) the SAC does not constitute impermissible group pleading, (c) VBF adequately pleads its claims against Driver to which Rule 9(b) may apply, and Rule 8 also applies to many of VBF's claims.

### A.      The SAC is not impermissible "shotgun" or "puzzle" pleading.

Driver argues that the SAC is an improper "shotgun" or "puzzle" pleading, but it is not. *See* Driver Motion at 10-13.  As an initial matter, Driver's argument focuses primarily on the fact that the first paragraph of each of VBF's causes of actions incorporates the previous paragraphs by reference. Such incorporation is a nearly universal practice that has been specifically permitted by courts. *See, e.g.*, *BRG Ins. Sols., LLC v. O'Connell*, No. 3:16-CV-2448-N, 2017 WL 7513649, at *6 (N.D. Tex. July 18, 2017) (upholding the plaintiffs' incorporation of previous paragraphs into each of their counts because "the Court does not find it cumbersome here to determine which factual allegations support each claim for relief").

Indeed, as Driver's own cases recognize, a "shotgun" or "puzzle" complaint is one in which causes of action simply incorporate all the prior paragraphs of the complaint *without applying any facts to the elements of the claims. See, e.g., Wagner v. First Horizon Pharm. Corp.*, 464 F.3d

1273, 1280 (11th Cir. 2006) (finding that the plaintiffs "have not connected their facts to their claims"). In the *Wagner* case, for example, the plaintiffs alleged "in a general manner, the elements of a securities fraud claim under Rule 10(b)-5." *Id.* at 1279. They did not have any connection of the substantive elements and the factual predicates. *Id.* at 1270-80.[1]

As discussed more fully below, the SAC does apply the alleged facts to the elements of each claim. For example, VBF's claim for fraudulent concealment (Count II) specifies the various schemes and representations that Driver and the other founders concealed from VBF. *See* SAC ¶ 237. Earlier in the SAC, those schemes and representations are described in detail. *See id.* at ¶¶ 26-53, 171-75. Similarly, the SAC specifically describes how Driver and the other Founders breached their fiduciary duties, *id.* at ¶ 233, and describes specific transfers and amounts to be avoided as well as the Driver's and the other Founder's intent, *id.* at ¶¶ 256-58. Because VBF's claims apply factual allegations to the elements, the SAC is not a "shotgun" or "puzzle" pleading.

**B.      The SAC is not improper group pleading.**

Driver argues that VBF's use of the definitional term "Founders" in the SAC constitutes impermissible "group pleading," but this also is not correct. Driver Motion at 11, 14. The SAC's references to the "Founders" collectively are allegations that *all of the Founders*, including Driver, committed the specific misconduct alleged. Indeed, all of "[t]he Founders controlled VBF from its incorporation," and all of them committed the alleged misconduct. *See* SAC ¶ 19. In such situations, courts—including cases cited in the Driver Motion—have held that allegations that a group of people committed fraud are permissible. *See, e.g.*, *S.E.C. v. Fraser*, No. CV-09-00443-PHX-

---

[1] *See also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) (finding no connection between the facts and claims); *S.E.C. v. Patel*, No. 07-cv-39-SM, 2009 WL 2015794, at *1 (D.N.H. July 7, 2009) (discussing a claim that just recited a statute).

GMS, 2010 WL 5776401, at *6 (D. Ariz. Jan. 28, 2010) (rejecting defendant's argument that allegations impermissibly lumped two defendants together because "the SEC is simply alleging that both [the defendants] committed the specific misconduct alleged") (citing *SEC v. Power*, 525 F. Supp. 2d 415, 422 (S.D.N.Y. 2007) ("The fact that others may have participated in [the alleged fraud] or that [the defendant] had an accomplice, does not absolve [the defendant] at the pleadings stage.") (replacements in original)).

For example, all of the Founders, including Driver, are alleged to have engaged in the compensation scheme, by which all the Founders overpaid themselves approximately $1.675 million per year. *See* SAC ¶¶ 38-41 (describing the compensation scheme). Only Driver is specifically mentioned by name, but it is clear that the Founder Defendants are all alleged to have committed the misconduct: "[t]he five Founders set their own compensation from VBF at $400,000 annually for each Founder besides Driver, who made $325,000 annually…." *Id.* ¶ 38. Since all of the Founders are alleged to have fraudulently concealed the compensation scheme (along with the other alleged schemes), VBF need not identify each Founder specifically by name.

As another example, the SAC pleads that all of the Founder Defendants concealed an aquaculture expert's criticisms of representations the Founders made about the business in June 2015. *See* SAC ¶¶ 74-87 (discussing this scheme). Specifically, the SAC alleges that on June 16, 2015, Driver and the other Founder Defendants discovered that an independent aquaculture expert had found "multiple significant errors in the numbers and weaknesses in" representations about VBF's operations prepared by the Founder Defendants and Defendant Canaccord Genuity LLC. *Id.* at ¶¶ 74-87, Ex. 5. Driver and the other Founder Defendants never disclosed these findings to VBF's disinterested directors. *Id.* at ¶ 87.

The SAC specifically ties Driver to each scheme and instance of wrongdoing whenever

possible, both through its allegations in the SAC and through the attached exhibits. The SAC attaches exhibits showing statements by and between Driver and the other Founder Defendants, which provides additional detail regarding the allegations of misrepresentations and omissions. *See, e.g., id.* at Exs. 3-6, 9, 14, 16-1, 16-2. For example, the SAC specifically ties Driver and the other Founders to their misrepresentations and concealments concerning VBF's FCR. *See* SAC ¶¶ 94-114. In general, Driver and the other Founders misrepresented that VBF had achieved a 1:1 feed/fish conversion ratio even though the ratio was never even close to 1:1. *Id.* at ¶ 94. That the company could not achieve a 1:1 ratio was never disclosed to VBF's disinterested directors and officers. *Id.* The SAC specifically ties Driver to this scheme, alleging, for example, that (a) on September 17, 2014, Driver became aware (and informed the other Founders) that his and the other Founders' written representation that VBF would achieve a 1:1 feed/fish conversion ratio was unlikely, *id.* at ¶¶ 96-97, Ex. 9; (b) on February 16, 2015, Driver represented that VBF's FCR was 1.03:1, *id.* at ¶ 102, Ex. 13; and (c) on June 30, 2015, Driver and the other Founders approved Hall's representation of VBF's FCR that did not include fish feed (a necessary component) in the calculations, *id.* at ¶ 105, Ex. 16-1.

The Fifth Circuit has recognized that such specific pleading need only be done where possible. In *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363-65 (5th Cir. 2004), the Fifth Circuit first rejected the group pleading doctrine in the context of securities fraud and noted that "corporate documents that have no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue." 365 F.3d at 365. "Various unattributed statements within documents may be charged to different individuals, and specific facts

may tie more than one individual to the same statement." *Id.* Further, to the extent that the identification of all Founder Defendants' involvement (including Driver) is made (including on information and belief), it is because those allegations are supported by the Defendants' conduct (including the conduct of Driver) as parties acting in concert and in control of VBF, as alleged in the claims for Civil Conspiracy and Aiding and Abetting. *See id.* at ¶¶ 290-299. The conduct of the Founder Defendants described in the SAC supports that Driver played a role in each scheme, misrepresentation, and omission and makes each scheme, misrepresentation, and omission attributable to all of the Defendants, including Driver. *See id.* at ¶¶ 3, 19-24, 26, 41, 46-53, 101, 105, 117, 130, 144. The SAC affirmatively states the Founder Defendants were acting in concert in regards to the fraudulent conduct and statements as well as the concealment of the wrongdoing. *See id.*

Therefore, the allegations in the SAC against Driver, including references to the "Founders," are sufficient and do not constitute impermissible group pleading.

### C.    VBF adequately pled with particularity claims to which Rule 9(b) may apply.

Driver argues that the SAC does not satisfy the particularity requirements of Rule 9(b). "Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty, or non-fraudulent misstatement." *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004). "In ordinary circumstances, the particularity requirement does not extend to claims for which fraud is not an element." *Id.* Only when fraudulent conduct "is alleged to underlie a claim for which fraud is a possible—but not a necessary—element" is particularity required, and then only "to the extent that a plaintiff in fact alleges fraud." *Id.*

As discussed in more detail in Section I.D below, VBF's claims for breach of fiduciary duty, aiding and abetting, civil conspiracy, constructive fraud, constructive fraudulent transfer, unjust enrichment, equitable accounting, declaratory judgment, rescission, and restitution are not

entirely subject to Rule 9(b). To the extent they are grounded in fraud and are subject to Rule 9(b), they are based on the same conduct adequately pleaded with respect to VBF's claims for fraudulent concealment and misrepresentation, actual fraudulent transfer, and civil RICO.

Rule 9(b) does not require "punctilious pleading detail" or that the plaintiff plead detailed evidence or state all facts relevant to the case. *See SEC v. Brady*, No. 3:05-CV-1416, 2006 WL 1310320, at *3 (N.D. Tex. May 12, 2006) (quoting *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990)); *S.E.C. v. Sharp Capital, Inc.*, No. 3:98CV2792G, 1999 WL 242691, at *2 (N.D. Tex. Apr. 16, 1999). Rather, Rule 9(b) simply requires that the pleadings "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Further, "the pleading requirements of Rule 9(b) are relaxed where, as here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783-84 (8th Cir. 2009); *U.S. ex rel. Olloh-Okeke v. Home Care Services, Inc.*, CIV.A.3:97-CV-2738-H, 1999 WL 222356, at *2 (N.D. Tex. Apr. 9, 1999) ("The Fifth Circuit has recognized that a relaxed pleading requirement was appropriate, 'allowing fraud to be pled on information and belief where, as here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge.'" (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Indeed, "the plaintiff need not allege all facts that may be related to its claims, since such a requirement is impossible at the pleading stage because, in nearly every securities fraud case, only defendants know all the facts related to the alleged fraud." *Energytec, Inc. v. Proctor*, 516 F. Supp. 2d 660, 674 (N.D. Tex. 2007) (internal quotation and citation omitted). Under those circumstances, "fraud may be pled on information and belief." *U.S. ex rel. Thompson*, 125 F.3d at 903. The SAC adequately pleads fraud-based claims.

1.    **Fraudulent Concealment and Misrepresentation (Counts II and III)**

Driver argues repeatedly and incorrectly that the SAC does not identify the "who, what,

when, where, and how" giving rise to the alleged fraud.  The Driver Motion cites the standard for claims alleging affirmative fraudulent representations,[2] but VBF's fraudulent concealment and fraudulent misrepresentation claims are grounded in Drivers' and the other Founder Defendants' fraudulent omission of facts to VBF. *See, e.g.,* SAC ¶¶ 237 ("The Founders concealed from or failed to disclose to VBF material facts…."), 245 ("[T]he Founders' silence in the face of their duties to disclose their misconduct alleged herein to VBF, constitutes fraudulent misrepresentation of the material facts alleged in Count II.").  For claims of fraudulent omission, all that is required under Rule 9(b) is for "the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004) (quoting 2 Moore's Federal Practice § 9.03[1][b], at 9-18 through 9-19 (3d ed. 2003)); *see N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 633 (N.D. Tex. 2015) (finding that a complaint adequately pleaded fraud by nondisclosure).

For example, the following omission allegations were at issue in *Agri-Plastics, Inc. v. Hog Slat, Inc.*, No. CIV.A.3:09-CV-1271-B, 2010 WL 711811, at *5 (N.D. Tex. Feb. 26, 2010) (internal citations omitted): the counter-defendant "failed to disclose the defects and reduced quality of [its] tiles to its customers and potential customers, including [the counter-plaintiff] and [the counter-plaintiff's] customers" and the counter-defendant "did not inform them of the defective rede-

---

[2] The cases cited in the Driver Motion are further distinguishable, as they involve claims that require specific information not provided or that are subject to more rigorous pleading standards. *See, e.g.*, *Williams v. WMX Tech. Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (dismissing securities fraud claims subject to more rigorous pleading standards); *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 454 (5th Cir. 2005) (dismissing false claims act case because there were no allegations that the defendant intentionally filed false claims).

sign of the tiles and, as a result, the tiles failed to perform as expected causing [the counter-plain-tiff's] farmer-customers to complain with increasing frequency." The court held that "[s]uch alle-gations satisfy the Rule 9(b) pleading standard with regard to omissions." *Id.* Similarly, in *North Texas Opportunity Fund*, the court found the following allegations sufficient: three of "the De-fendants…should have disclosed [the fourth defendant's] relationship with [the fifth defendant] through the Board meetings, the Board reports, and the November 2007 Board presentation created by [the first three defendants]…. [B]y omitting this information, [the second defendant] hid its true value in order to buy back…preferred stock at a reduced price." 107 F. Supp. 3d at 633.

Here, VBF has undoubtedly pleaded (with much more specificity than in *Agri-Plastics* or *North Texas Opportunity Fund*) the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading. *First*, the type of facts omitted are the 21 schemes and sets of material facts listed in paragraph 237 of the SAC.  Each of these schemes and material facts are described in exhaustive detail earlier in the SAC and in its exhibits. By way of example using the FCR scheme discussed above, the SAC alleges that Driver and each of the other Founders concealed that VBF had not and could not achieve an FCR of 1:1. *See* SAC ¶¶ 94-114.

*Second*, the SAC pleads the place in which the omissions should have appeared. This re-quirement of fraudulent omissions may be satisfied by identifying the speakers and when and where the omissions were made. *See Agri-Plastics*, 2010 WL 711811, at *5. The SAC clearly identifies the speakers who should have disclosed the truth and when and where they should have done so. Indeed, Driver should have disclosed the truth each time he concealed the truth and in-stead made misrepresentations. For example, rather than representing that VBF had and would achieve a 1:1 FCR, he should have disclosed that VBF in fact had not and would not achieve such

a ratio. *See* SAC ¶ 94. For each scheme, the SAC describes Driver's and the other Founders' written representations and often attaches such written representations as an exhibit. *See, e.g., id.* at ¶¶ 115-40 (describing and attaching misrepresentations of density), 141-50 (same for mortality rates). The omitted facts should have appeared in those representations.

*Third*, the SAC pleads why Driver's and the other Founders' omissions were misleading. For example, the omission that VBF did not have and could not have achieved a 1:1 FCR was misleading because VBF did not in fact have a 1:1 FCR and such an FCR is extremely rare and difficult to achieve. *See, e.g., id.* at ¶ 94. Driver's June 2015 concealment of an aquaculture expert's criticisms of the Founders' numbers was similarly misleading because the numbers and representations (as stated by the expert) "over-inflate the economics and understate the risks." *Id.* at ¶ 79.

Even for any allegations construed as solely affirmative misrepresentations, the SAC pleads sufficient detail, especially given the standards allowing for relaxed pleading under Rule 9(b) where the perpetrators of the fraud have the knowledge required for further detail.  Despite the information solely within the possession of Driver and the Founder Defendants – none of whom have yet been deposed in this case – VBF has provided detailed information, and attached documents where available, showing the "who, what, when, where, and how" of the fraudulent schemes in which Driver was involved, including the misappropriation and misuse of VBF funds through stock transfers, improper expenditures, providing misinformation or concealing information to VBF directors, and procuring the Driver Agreement through misrepresentations and concealment of material facts.  For each of the fraudulent schemes and related misrepresentations and omissions, the SAC contains information about the dates, the content, the action, the purpose, and the location.  *See* SAC ¶¶ 25-53, 101, 105, 117, 130, 144; Exs. 1, 12, 13, 16-1, 16-2. Driver is specifically implicated in these schemes, including by direct involvement and in his position as a Founder

and person in control of VBF and, for a time, his formal title of COO. *See* SAC ¶¶ 38, 50, 97, 101-102, 105, 117-18, 127, 130, 143-44. Therefore, the SAC adequately pleads the fraudulent conceal-ment and misrepresentation claims with particularity.

### 2.      Actual Fraudulent Transfer (Counts V and VII)

As an initial matter, it is not clear that Rule 9(b) even applies to actual fraudulent transfer claims. The Fifth Circuit recently noted that it has "not previously addressed the question of whether an actual fraudulent transfer claim is subject to Rule 9(b)'s heightened pleading require-ments." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019). In that case, the Fifth Circuit found that the fraudulent transfer claims were sufficient under either Rule 8 or 9(b) and so it "need not weigh in on this *vexing question*." *Id.* (emphasis added). This Court should follow those district courts finding Rule 9(b) does not apply to fraudulent transfer claims. *See, e.g.*, *Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*, No. 4:17-cv-00225-O, 2017 WL 9934885, at *5 (N.D. Tex. Nov. 27, 2017); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 676 (N.D. Tex. 2011); *U.S. Bank Ass'n v. Verizon Comm., Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *11 (N.D. Tex. July 31, 2012). But either way, VBF adequately pled its fraudulent transfer claims.

In *Life Partners Holdings*, the Fifth Circuit held that fraudulent transfer allegations were sufficient because an exhibit to the complaint "sets out the details of the allegedly fraudulent trans-fers—including the transferor, transferees, amounts, and time period—and the complaint itself contains pages of allegations detailing the underlying fraudulent scheme." *Id.* at 119. Similarly, here, the SAC sets out the details of the allegedly fraudulent transfers. Paragraph 256 and 272 note that VBF "seeks to void transfers made to the Founders, including transfers from 2014 to 2018 related to" nine specific schemes and "[o]ther misappropriations of VBF's funds or other assets for the Founders' personal use." The transfers are described in detail in earlier paragraphs of the SAC. *See, e.g.*, SAC ¶¶ 26-53, 171-75. Paragraphs 257 and 273 allege that these transfers to Driver

specifically amounted to at least $3,389,501. And, as in *Life Partners* and discussed above, the SAC "contains pages of allegations detailing the underlying fraudulent scheme." 926 F.3d 103 at 119; *see, e.g.,* SAC ¶¶ 26-175. As a result, VBF adequately pled actual fraudulent transfer claims.

### 3.     RICO Predicate Acts (Count XXVII)

Rule 9(b) governs only VBF's pleading of the mail and wire fraud predicates of the RICO claim; it is inapplicable to all the other RICO elements. *See Howell Petroleum Corp. v. Weaver*, 780 F.2d 1198, 1199 (5th Cir. 1986) (holding that pleading RICO elements is governed by the "liberal notice pleading procedure of the Federal Rules of Civil Procedure"); *Bonton v. Archer Chrysler Plymouth*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (applying Rule 9(b) requirements only to the fraud allegations in RICO claim).

VBF adequately alleges its RICO predicate acts—mail and wire fraud—with particularity. *See, e.g.*, SAC ¶ 411. "The mail and wire fraud statutes, which have the same elements other than the jurisdictional hook of the mailing or interstate wire, criminalize schemes 'to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *United States v. Hoffman*, 901 F.3d 523, 536 (5th Cir. 2018), *as revised* (Aug. 28, 2018) (citing 18 U.S.C. §§ 1341, 1343). Significantly, emails may serve as the necessary wire for wire fraud. *Id.* at 546 ("An interstate email that says 'Meet me at the bowling alley tonight' can serve as the necessary wire if the parties planned the fraud while bowling a few frames that evening.").

Here, VBF has pleaded the specific actions that it contends constitute mail and wire fraud, including (1) distributions and transfers effectuated through the U.S. mail and by wire to Driver and the other Founder Defendants, (2) misrepresentations in marketing materials, contracts, and other documents regarding the technology and finances of VBF transmitted by mail and wire in interstate commerce, and (3) the depletion through wire transfers of VBF of funds and prevention of VBF from continuing to operate as a result. Paragraph 411 specifically lists certain of these acts

of mail and wire fraud. SAC ¶ 411. As with VBF's other fraudulent scheme allegations, each act is described in detail earlier in the SAC. *See, e.g.,* SAC ¶¶ 42-45, 74-87, 95, 100-101, 104-106, 110, 118-23, 126, 128-29, 131, 136-39, 145, 153, 159, 166-68, 170. Moreover, some of the documents themselves that constitute mail and wire fraud are attached to the SAC. *See, e.g.,* SAC Exs. 3-21. For example, in the August 2015 Written Representations (attached to the SAC as Exhibit 19), which were emailed in interstate and foreign commerce, Driver and the other Founder Defendants falsely represented VBF's FCR. *See* SAC ¶¶ 11, 108, 124, Ex. 19. Similarly, in the April 2016 Written Representations, which were emailed in foreign commerce, Driver and the other Founder Defendants misrepresented the stocking density for VBF's operations. *Id.* at ¶¶ 131, 145, 412, Ex. 28. Additionally, the SAC alleges millions of dollars in misappropriated funds to Driver, which misappropriations were effected through the mail and interstate wires. *Id.* at ¶¶ 420-21. The acts of mail and wire fraud described in the SAC sufficiently allege RICO predicate acts.

### 4.    Other Claims (Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, and XIX)

To the extent that VBF's remaining claims for breach of fiduciary duty, aiding and abetting, civil conspiracy, constructive fraud, constructive fraudulent transfer, unjust enrichment, equitable accounting, declaratory judgment, rescission, and restitution are grounded in fraud and are subject to Rule 9(b), they are based on the same conduct adequately set forth related to VBF's claims for fraudulent concealment and misrepresentation (Counts II and III), actual fraudulent transfer (Counts V and VII), and civil RICO (Count XXVII), as set forth above.

### D.    VBF's claims subject to Rule 8 are sufficiently pled.

None of the claims discussed below (Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, XIX) *require* fraud as an element, and none of them are based *solely* on the Founders' fraud.  Claims that are not subject to Rule 9(b) are subject to Rule 8's more liberal

- 16 -

pleading standard, which simply requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 requires only "notice" pleading; it is not necessary to set forth each and every element or factual allegation of a claim. *Bluevine Capital, Inc. v. UEB Builders, Inc.*, 3:17-CV-3265-L, 2019 WL 142350, at *2 (N.D. Tex. Jan. 9, 2019). Driver has not argued that VBF has failed to properly plead any of these claims under Rule 8.

### 1. Breach of Fiduciary Duty (Count I), Aiding and Abetting (Count X), and Civil Conspiracy (Count IX)

VBF alleges its claims for breach of fiduciary duty, aiding and abetting, and civil conspiracy for both fraud and non-fraud allegations. *See McGraw v. Wachovia Securities, LLC*, No. 08-CV-2064-LRR, 2009 WL 2949290, *5, 7, 8 (N.D. Iowa Sept. 10, 2009) (Rule 9(b) does not apply to the extent the breach of fiduciary duty claim alleges recklessness or neglect); *CNH Capital America LLC v. McCandless*, No. C05-2087, 2007 WL 1498357, at *8 (N.D. Iowa May 18, 2007) ("General awareness by an aider and abettor is sufficient to meet the knowledge component of an aiding and abetting claim.") (internal citations omitted); *Meadows v. Hartford Life Ins. Co,*, 492 F.3d 634, 639 (5th Cir. 2007) (holds liable as a joint tortfeasor if knowingly participate in breach of duty of a fiduciary); *cf. Town N. Bank, N.A. v. Shay Fin. Services, Inc.*, 3:11-CV-3125-L, 2014 WL 4851558, at *27 (N.D. Tex. Sept. 30, 2014) (noting that a "claim for breach of fiduciary duty does not necessarily involve fraud"). There are allegations that Driver breached his fiduciary duty through actions that were reckless, knowingly aided and abetted breaches of fiduciary duty, and participated in a civil conspiracy to breach fiduciary duties and benefit himself at VBF's expense, to which Rule 9(b) does not apply. *See, e.g.,* SAC ¶¶ 25-56, 163, 231-236, 290-292.

### 2. Constructive Fraud (Count IV) and Constructive Fraudulent Transfer (Counts VI and VIII)

Rule 9(b) is not applicable to constructive fraud allegations. *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019) (noting that "district courts in the Fifth Circuit have

suggested that constructive fraudulent transfer claims are only subject to Rule 8(a)") (citing cases); *In re Juliet Homes, LP*, No. 07-36424, 2010 WL 5256806, at *23 (Bankr. S.D. Tex. Dec. 16, 2010) ("Because constructive fraud does not require proof of scienter, Rule 9(b)'s heightened pleading requirements do not apply, and the pleading of a constructive fraud claim must only comply with Rule 8(a).") (internal citation omitted).[3] There are allegations that Driver committed constructive fraud through breaches of fiduciary duty or knowingly aiding and abetting breaches of fiduciary duty, regardless of intent.  *See, e.g.,* SAC ¶¶ 252. Similarly, there are allegations of fraudulent constructive transfers to Driver based upon lack of reasonably equivalent value received by VBF and unreasonably small assets or insolvency of VBF, regardless of whether there was actual fraud committed, which is all the statutes require.  *See* Iowa Code § 684.4(1)(b) and Tex. Bus. & Comm. Code § 24.005(a)(2); *see, e.g.,* SAC ¶¶ 266-269, 283-287.

### 3.   Unjust Enrichment (Count XI), Equitable Accounting (Count XII), and Declaratory Judgment (Counts XIII, XV, XVIII)

The claims for unjust enrichment, equitable accounting, and declaratory judgment do not depend on fraudulent conduct and can be proven even if it is found Driver did not commit fraud. *See Janvey v. Alguire*, 846 F. Supp. 2d 663, 677 n. 15 (N.D. Tex. 2011) (unjust enrichment claim "does not depend on [a defendant] having engaged in fraudulent conduct"); *State Dept. of Human Services ex rel. Plamer v. Unisys Corp.*, 637 N.W.2d 142 (Iowa 2001) (unjust enrichment is a "broad principle with few limitations"); *Bostic v. Goodnight*, 443 F.3d 1044, 1048 (8th Cir. 2006) (accounting is an equitable remedy to compel one in a confidential or trust relationship "to render

---

[3] The Fifth Circuit has not decided the issue, and some courts in this district have held that Rule 9(b) applies to constructive fraud. *See Schroeder v. Wildenthal*, No. 3:11-CV-0525-B, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011), aff'd, 515 Fed. Appx. 294 (5th Cir. 2013). Although the better rule is that Rule 9(b) does not apply because constructive fraud does not require a showing of actual fraud, if the Court determines that Rule 9(b) applies, VBF has satisfied the rule as discussed above in Section I.C.2.

an account of his actions and for the recovery of any balance found to be due"); 28 U.S.C. § 2201

(Declaratory Judgment Act); *Estate of Foster by Foster v. Shalala*, 926 F. Supp. 850, 858 (N.D.

Iowa 1996) (no actual wrong need to have been committed or loss have occurred to sustain an

action for declaratory judgment); *Tierstein v. AGA Med. Corp.*, 6:08CV14, 2009 WL 704138, at

*3 (E.D. Tex. Mar. 16, 2009) (applying Rule 8 to counterclaim for declaratory judgment).  As

such, Rule 9(b) does not apply to these claims.  Further, ample allegations support that Driver took

advantage of VBF (whether or not fraudulent) through personal benefits, improper transactions,

gross neglect or recklessness, taking undue advantage, mismanagement, corporate waste, and/or

breaches of fiduciary duty.  *See, e.g.,* SAC ¶¶ 26-31, 35-39, 46-53, 300, 304, 307, 324-326, 351.

### 4.    Rescission (Counts XIV, XVI, XVII) and Restitution (Count XIX)

The claims for rescission and restitution, in addition to fraudulent conduct, also specifically

reference breaches of fiduciary duty and other misconduct as bases for these remedies.  *See, e.g.,*

SAC ¶¶ 310, 354.  Both rescission and restitution claims can be supported by non-fraudulent con-

duct, consistent with VBF's allegations.  *See Farmers Co-op Co. of Farnhamville v. Youngstrom*,

No. C 97-3094-MWB, 2000 WL 34031805, at *3 (N.D. Iowa Aug. 21, 2000) (rescission is avail-

able for breach of fiduciary duty); *State Dep't of Human Servs. Ex rel. Palmer v. Unisys Corp.*,

637 N.W.2d 142, 154 (Iowa 2001) (unjust enrichment may serve as independent grounds for res-

titution); *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010) ("[C]ourts

may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach

of fiduciary duty."); *Arce v. Burrow*, 958 S.W.2d 239, 246 (Tex. App.—Houston [14th Dist.]

1997), *aff'd in part, rev'd in part on other grounds*, 997 S.W.2d 229 (Tex. 1999) ("Texas also

recognizes other equitable remedies for breaches of fiduciary duty including rescission or the im-

position of a constructive trust.") (citations omitted).

Therefore,  Counts I, IV, VI, VIII, IX, X, XI, XII, XIII, XV, XVIII, XIV, XVI, XVII, XIX,

comply with Rule 8 or, where applicable, Rule 9(b) and should not be dismissed.

## II.    VBF's claims were not released or, at a minimum, VBF's allegations raise a fact is-sue regarding whether any claims were released.

### A.    The release is void because it was procured through fraud.

VBF's claims are not barred because the release was procured through fraud. A release is a contract and, like other contracts, may be avoided if it was procured through fraud. *Shannon v. Memorial Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 631-32 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (finding release did not preclude employee's claim that she was fraudulently induced to enter into agreement). The general rule that fraud vitiates all contracts applies to a release so that a release procured by fraud may be avoided. *Schmaltz v. Walder*, 566 S.W.2d 81, 84-85 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). A release induced by fraud or misrepresentation may be cancelled and rescinded under general equitable principles. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990).

*First*, Driver fraudulently induced VBF into executing the release. The release was in furtherance of Defendants' fraudulent scheme and conspiracy. *See* SAC ¶ 225. Driver intended to induce VBF to refrain from attempting to halt his misconduct by concealing material facts from VBF. *Id.* at ¶¶ 198, 213. Driver knew that VBF lacked knowledge of the concealed material facts until well after Driver was ousted from his position at VBF. *Id.* at ¶¶ 198, 213. Wulf, Driver's co-conspirator, executed the Driver Agreement on January 3, 2017 purportedly on behalf of VBF.[4] *Id.* at ¶ 194. After VBF's disinterested directors began to suspect and discover the Defendants' misconduct and began an investigation into the Defendants' misconduct, VBF refused to sign a

---

[4] Driver's receipt of an excessive consulting fee of $100,000 per annum in exchange for, at most, 60 hours a month of work and, an additional $150/hour for any hours over 60 further evidences the unequal bargaining power, fraud, and unenforceability of the Driver Agreement. *See* Dkt. 182 at APP0052-53.

later proposed release for Defendants Wulf and James Rea. *Id.* at ¶ 194. VBF did not learn of the fraudulent concealment, fraudulent misrepresentation, misappropriations, or other misconduct by Driver until at least March 2018. *Id.* at ¶ 21.  The Driver Agreement was executed by VBF more than one year prior in January 2017—before VBF had any knowledge of Driver's fraud and when Driver was actively concealing his bad acts. *Id.* at ¶¶ 20, 218.

*Second*, Driver's legal duty to VBF to disclose the existence of material facts and the failure to disclose such information constituted fraud. In order to avoid a release for fraudulent representations, it must be established that the representations (1) are material and false, (2) were relied on by the releaser in executing the release, and (3) were made with the intention that they be acted on or for the purpose of inducing the other party to take some action thereon. *See Oilwell Div., U.S. Steel Corp. v. Fryer*, 493 S.W.2d 487, 491 (Tex. 1973); *Harris v. Sanderson*, 178 S.W.2d 315, 317 (Tex. Civ. App.—Eastland 1944, writ ref'd). As an executive or officer of VBF, Driver owed a fiduciary duty of full disclosure of all material facts known to him that might affect the company. *See In re Harwood*, 637 F.3d 615, 620 (5th Cir. 2011) ("Under Texas law, corporate officers and director owe fiduciary duties to the corporations they serve…").  When the particular circumstances impose on a person a duty to speak and the person deliberately remains silent, that silence is equivalent to a false representation. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).  Further, if a party is under a duty to disclose something that he knows may justifiably induce another to act or refrain from acting in in a business transaction, he is subject to liability as though he had represented the nonexistence of the matter which he failed to disclose. *Inglish v. Union State Bank*, 911 S.W.2d 829, 835 (Tex. App.—Corpus Christi 1995, no writ).  Failure to disclose information during a fiduciary relationships is construed as fraud. *Newman v. Link*, 866 S.W.2d 721, 726 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

Driver's direct misrepresentations related to VBF's technology and finances and Driver's concealment of the misappropriation of tens of millions of dollars from VBF constitute fraud on VBF. VBF did not have knowledge of these misrepresentations and omissions prior to signing the Driver Agreement. SAC ¶ 21; *cf. Wright*, 173 S.W.3d at 546 (declining to find the release was procured by fraud where the plaintiff knew of the fraudulent acts prior to signing the release). Furthermore, Driver's nondisclosure of the conflict of interest inherent in Jackson Walker's apparent representation of both VBF and the Defendants individually also served to induce VBF into executing the Driver Agreement without proper representation and with unequal bargaining power and further results in the release being invalid or unconscionable. SAC ¶ 193; *see* Texas Disciplinary Rule of Professional Conduct 1.06(b) (providing that "a lawyer shall not represent a person if the representation of that person: (1) involves a substantially related matter in which that person's interest are materially and directly adverse to the interests of another client of the lawyer").

Driver may argue that VBF is somehow charged with the other Founders' knowledge of the alleged fraudulent schemes and thus knew about the fraud when it executed the release. But, of course, "the knowledge and effect of the…principal's fraudulent transfers may not be attributed to his robotic corporate tools, or prevent a receiver from suing on behalf of those entities, once they have been freed from the principal's coercion, thus permitting the receiver to recover corporate assets that the principal fraudulently transferred to third parties." *See Janvey v. Democratic Sen. Campaign Committee, Inc.*, 712 F.3d 185, 192 (5th Cir. 2013). Similarly here, the Founders' knowledge of the fraudulent schemes may not be attributed to VBF or otherwise prevent VBF from suing Driver and the other Founders. In any event, such an *in pari delicto* defense is fact intensive and should not be ruled upon at the motion to dismiss stage. *See, e.g., In re TOCFHBI,*

*Inc.*, 413 B.R. 523, 536–37 (Bankr. N.D. Tex. 2009) (rejecting *in pari delicto* at summary judgment stage, noting that the "defense is intensely factual"); *In re Eastern Livestock Co.*, No. 12-59147, 2013 WL 6048813, at *10-12 (Bankr. S.D. Ind. Nov. 15, 2013) (finding that *in pari delicto* did not bar the claims at the motion to dismiss stage).

Although VBF has established that the Driver Agreement was procured by fraud which voids the release against VBF, at the very least, the SAC raises genuine issues of material fact whether VBF was induced by fraud into executing the Driver Agreement, and whether the release is otherwise invalid or unconscionable. Therefore this issue is not appropriate for determination on a motion to dismiss.

### B.   VBF's claims are not within the scope of the release.

Even if the release was enforceable (which it is not), none of VBF's claims are within the scope of the release. The Court must construe the release narrowly. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984) (finding that in Texas, general categorical release clauses are narrowly construed). In order to effectively release a claim in Texas, the releasing instrument must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *Vela v. Pennzoil Producing Co.*, 723 S.W.2d 199, 204 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.); *see, e.g., Solis v. Evans*, 951 S.W.2d 44, 50 (Tex. App.—Corpus Christi 1997, no writ) ("We find no authority for the proposition that a party may prospectively contractually exculpate itself with respect to intentional torts."). "[A]ny claims not clearly within the subject matter of the release are not discharged," even if such claims existed at the time the release was executed. *Victoria Bank*, 811 S.W.2d at 939; *Vela*, 723 S.W.2d 204.

Here, the release does not mention or reference any of the claims VBF currently asserts. To the contrary, the Driver Agreement speaks specifically only to the "Egregious Cause Claims," defined as "claims against Driver that he has breached the Employment Agreement because,

among other things, Driver has failed to maintain his main office in Dallas, Texas and Driver has engaged in other business interests and engagements outside of VBF SA." *See* Dkt. 182 at APP0049. The Egregious Cause Claims do not include fraud, breach of fiduciary duty, fraudulent transfer, civil conspiracy, restitution, rescission, or civil RICO. Further, the release does not mention or even reference any of the omissions or misrepresentations that are the bases (in part) for these claims.[5] For example, the general release of all claims does not amount to a "clear[] express[ion of] the parties' intent to waive fraudulent inducement claims." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *see also Shannon*, 476 S.W.3d at 631-32. Therefore, even if the release were not void, VBF's claims are not within the scope of the release.

**III.    Driver may not incorporate the Founders' motion to dismiss.**

As discussed in VBF's Motion to Strike (Dkt. 215), Driver's one-sentence attempt to incorporate solely by reference the entirety of the Founder Defendants' motion to dismiss and brief in support is improper and should not be considered. Dkt. 180 at 5. Driver provides no detail as to these arguments and makes no reference to these arguments, their basis, or any supporting authority in his brief in support of the motion to dismiss. *See generally* Dkt. 181. This attempted incorporation by reference is improper because (1) the arguments are not sufficiently briefed under Rule 7 and are therefore waived, and (2) it would eviscerate the Court's page limits. *Rodriguez-Rodriguez v. Big Bird Tree Serv., Inc.,* No. 3:15-CV-3815-L, 2017 WL 1047576, at *3 (N.D. Tex. Mar. 20, 2017); *Saffran v. Bos. Sci. Corp.*, No. CIV.A.2 05-CV-547(TJ, 2008 WL 2716318, at *4 (E.D. Tex. July 9, 2008). The Founder Defendants' motion to dismiss includes a number of additional arguments that should not be considered for Driver, including standing, a choice of law

---

[5] The District Court for the Northern District of Iowa found that VBF's then-asserted claims arose under the Termination Agreement for purposes of forum selection, but did not find that VBF's claims are within the scope of the release. *See* Dkt. 50 at 10.

- 24 -

issue, and additional arguments related to Rule 9(b) and the RICO claim. *See generally* Dkt. 184.

In the event it does consider these additional arguments as properly incorporated, the Court should equally allow incorporation of and apply VBF's complete response to the Founders' motion to dismiss. Specifically, contrary to the Founders' arguments, (a) VBF has standing to pursue the asserted claims because it is seeking to recover its own losses and not the losses of any third party, Dkt. 217 at 28-31; (b) a choice of law analysis is not required because none of the Defendants' motions present any conflict of laws and, in any event, VBF adequately pleads the application of Iowa law or adequately pleads its claims under Iowa or Texas law, *id.* at 26-28; and (c) VBF adequately pleads its RICO claims, including the pattern and enterprise elements, *id.* at 15-21.

## IV.    If necessary, VBF should be granted leave to further amend.

If the Court is inclined to grant the Driver Motion, in whole or in part, VBF requests leave to amend any claims that the Court finds deficient. Federal Rule of Civil Procedure 15(a)(2) provides that the court should freely grant a party leave to amend its pleadings when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). And "[i]f it appears that a more carefully drafted pleading might state a claim upon which relief can be granted, the court should give the claimant an opportunity to amend its claim rather than dismiss it." *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, No. Civ. A. 303CV2392G, 2005 WL 2124126, at *7 (N.D. Tex. Sept. 1, 2005). If the Court finds that the SAC is deficient, VBF requests leave to file a further amended complaint to address the Court's ruling.

There will be no prejudice to Driver if VBF further amends its complaint. Following the transfer of this case to this Court, a further scheduling order has not yet been entered. Discovery also is in the early stages, and Driver has not yet been subject to deposition. In fact, Driver has taken the position that his deposition should not proceed pending resolution of his motion.

## CONCLUSION

For the foregoing reasons, the Court should deny the Driver Motion in its entirety. Alternatively, if any portion of the Driver Motion is granted, the Court should grant VBF leave to further amend the SAC.

Dated: December 3, 2019                  Respectfully submitted,

*/s/ Nicole L. Williams*
Nicole L. Williams
   Texas Bar No. 24041784
   nicole.williams@tklaw.com
William L. Banowsky
   Texas Bar No. 01697125
   bill.banowsky@tklaw.com
Jasmine S. Wynton
   Texas Bar No. 24090481
   jasmine.wynton@tklaw.com
Nicholas S. Davis
   Texas Bar No. 24101678
   nick.davis@tklaw.com
**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)

*/s/ Robert H. Lang*
Robert H. Lang
   (appearing *pro hac vice*)
   rhlang@thompsoncoburn.com
**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, Illinois 60603
(312) 346-7500

***Attorneys for Plaintiff VeroBlue Farms USA, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

This document was filed electronically on December 3, 2019, and, in compliance with Local Civil Rule L.R. 5.1(d), a copy of this document has been served on all counsel of record.

*/s/ Nicholas S. Davis*