# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

VEROBLUE FARMS USA, INC.,
    Plaintiff,

v.

LESLIE A. WULF, ET AL.,
    Defendants.

§
§
§
§
§
§
§
§

Civil Action No. 3:19-CV-00764-X

---

## THIRD-PARTY DEFENDANT ALDER AQUA, LTD.'S BRIEF IN
## SUPPORT OF ITS RULE 12(b) MOTION TO DISMISS
## AMENDED THIRD-PARTY COMPLAINT

---

## TABLE OF CONTENTS

I.      Introduction ................................................................................................. 1

II.     Background Facts ......................................................................................... 3

III.    Legal Standards ........................................................................................... 6

        A.      Rule 12(b)(1) Motion to Dismiss Standard ........................................ 6

        B.      Rule 12(b)(6) Motion to Dismiss Standard ........................................ 6

        C.      Rule 12(b)(5) Motion to Dismiss Standard ........................................ 7

IV.     Argument and Authorities ........................................................................... 7

        A.      Third-Party Plaintiffs lack standing to assert their alter ego breach
                of contract claims because those claims are the property of the
                VBF bankruptcy estate. ...................................................................... 7

        B.      Third-Party Plaintiffs' purported separate cause of action against
                Alder Aqua for "alter ego" fails to state a claim because alter ego
                is not a separate cause of action. ..................................................... 11

        C.      Third-Party Plaintiffs' claims against Alder Aqua for breach of
                contract fail to state claims upon which relief can be granted. ........... 12

                1.      Alder Aqua is not a party to any contract with Third-Party
                        Plaintiffs. ................................................................................. 12

                2.      The breach of contract claims against VBF have been
                        discharged in the VBF Bankruptcy. ........................................ 13

                3.      Filing suit to rescind the Termination Agreements is not a
                        breach of contract. ................................................................... 14

                4.      Punitive damages cannot be recovered for breach of
                        contract as a matter of law. ...................................................... 15

        D.      Third-Party Plaintiffs' claims against Alder Aqua for tortious
                interference fail to state claims upon which relief can be granted. ....... 15

                1.      Alder Aqua is not legally capable of interference. ................... 16

                2.      VBF was exercising its rights under the Termination
                        Agreements. ............................................................................. 17

                3.      Without an underlying breach of contract, there is no
                        tortious interference claim. ....................................................... 19

4.      Counts 1 and 2 fail because attorneys' fees are not legally
        recoverable as damages for tortious interference.................................... 20

5.      Attorneys' fees are not recoverable for tortious
        interference. ............................................................................................. 21

6.      The Third-Party Plaintiffs' allegations do not support
        exemplary damages for tortious interference........................................... 21

E.      Third-Party Plaintiffs' service of process on Alder Aqua was
        insufficient under the Hague Convention. ........................................................... 23

V.      Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*ACS Investors, Inc. v. McLaughlin*,
    943 S.W.2d 426 (Tex. 1997) .................................................................................17

*Alma Grp., L.L.C. v. Palmer*,
    143 S.W.3d 840 (Tex. App.—Corpus Christi 2004, pet. denied) .........................21

*Amoco Prod. Co. v. Alexander*,
    622 S.W.2d 563 (Tex. 1981) .................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................7

*Ashlar Fin. Servs. v. Sterling Fin. Co.*,
    No. 3:00cv2814-AH, 2002 U.S. Dist. LEXIS 2086 (N.D. Tex. Feb. 8, 2002) .......17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................7

*Boelens v. Redman Homes, Inc.*,
    748 F.2d 1058 (5th Cir. 1984) ..............................................................................15

*C.E. Services, Inc. v. Control Data Corp.*,
    759 F.2d 1241 (5th Cir. 1985) .........................................................................18, 19

*Campbell v. Adventist Health System/Sunbelt*,
    946 S.W.2d 617 (Tex. App.—Fort Worth 1997, no writ) .........................12, 13, 14

*Campbell v. City of San Antonio*,
    43 F.3d 973 (5th Cir. 1995) ..................................................................................12

*In re Capriati Constr. Corp.*,
    BAP No. NV-17-1200-BHTa, 2018 Bankr. LEXIS 818 (9th Cir. March 20,
    2018) ...................................................................................................................8, 10

*Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*,
    323 S.W.3d 322 (Tex. App.—Beaumont 2010, pet. denied) .................................17

*Cobb v. Central States*,
    461 F.3d 632 (5th Cir. 2006) ..................................................................................6

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ..................................................................................3

*Community Health Sys. Prof'l Servs. Corp. v. Hansen*,
   525 S.W.3d 671 (Tex. 2017)....................................................................................16, 17, 21

*Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*,
   283 F. Supp. 3d 580 (S.D. Tex. 2017) ................................................................14, 18

*Deauville Corp. v. Federated Dep't Stores, Inc.*,
   756 F.2d 1183 (5th Cir. 1985) .........................................................................17

*Delgado v. Methodist Hosp.*,
   936 S.W.2d 479 (Tex. App.—Houston [14th Dist.] 1996, no pet.)..................19, 20

*Domain Vault, LLC v. McNair*,
   No. 3:14-CV-1126-L, 2015 U.S. Dist. LEXIS 130449
   (N.D. Tex. Sept. 28, 2015).................................................................................6

*Ed Rachal Found. v. D 'Unger*,
   117 S.W.3d 348 (Tex. App.—Corpus Christi 2003), *rev 'd in part on other*
   *grounds*, 207 S.W.3d 330 (Tex. 2006)..............................................................21

*Fernandez-Montes v. Allied Pilots Ass'n*,
   987 F.2d 278 (5th Cir. 1993) ...........................................................................12

*Flock v. Scripto-Tokai Corp.*,
   No. H-00-3794, 2001 U.S. Dist. LEXIS 23881 (S.D. Tex. June 26, 2001)............25

*Gipson v. Deutsche Bank Nat'l Trust Co.*,
   No. 3:13-CV-4280-L (BH), 2015 U.S. Dist. LEXIS 175323
   (N.D. Tex. Oct. 27, 2015) .............................................................................6, 12

*Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*,
   456 S.W.2d 476 (Tex. App.—Fort Worth 1970, no writ) ....................................12

*Gurganus v. Furniss*,
   3:15-CV-03964-M, 2016 WL 3745684 (N.D. Tex. July 13, 2016).......................22

*Hamlett v. Holcomb*,
   69 S.W.3d 816 (Tex. App.—Corpus Christi 2002, no pet.) ...........................19, 20

*Harrison v. Soroof Int'l, Inc.*,
   320 F. Supp. 3d 602 (D. Del. 2018)...............................................................8, 10

*Holland v. Wal-Mart Stores, Inc.*,
   1 S.W.3d 91 (Tex. 1999)................................................................................21

*Holloway v. Skinner*,
   898 S.W.2d 793 (Tex. 1995)...........................................................................16

*Illustro Sys. Int'l, LLC v. IBM,*
No. 3:06-CV-1969-L, 2007 U.S. Dist. LEXIS 33324 (N.D. Tex. May 4, 2007) ....................7

*Jacked Up, L.L.C. v. Sara Lee Corp.,*
854 F.3d 797 (5th Cir. 2017) ...............................................................................15

*John Paul Mitchell Sys. v. Randalls Food Markets, Inc.,*
17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied)..........................................17

*Kalb, Voorhis & Co. v. American Fin. Corp.,*
8 F.3d 130 (2nd Cir. 1993).....................................................................................8

*Kansa Reinsurance Co., Ltd. v. Congr. Mortg. Corp. of Texas,*
20 F.3d 1362 (5th Cir. 1994) ................................................................................14

*Lopez v. Munoz, Hockema & Reed, L.L.P.,*
22 S.W.3d 857 (Tex. 2000)...........................................................................19, 20

*Martin—Simon v. Womack,*
68 S.W.3d 793 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ...................21

*Merritt Hawkins & Associates, L.L.C. v. Gresham,*
861 F.3d 143 (5th Cir. 2017) .........................................................................21, 22

*Nat'l Prop. Holdings, L.P. v. Westergren,*
453 S.W.3d 419 (Tex. 2015)...........................................................................15, 18

*Outlaw Lab., LP v. Shenoor Enter., Inc.,*
371 F. Supp. 3d 355 (N.D. Tex. 2019) ................................................................22

*Protradenet, LLC v. Predictive Profiles, Inc.,*
369 F. Supp. 3d 788 (W.D. Tex. 2019)................................................................17

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,*
29 S.W.3d 74 (Tex. 2000)....................................................................................15

*Raytheon C. v. Boccard USA Corp.,*
369 S.W.3d 626 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).....................9

*In re S.I. Acquisition, Inc.,*
817 F.2d 1142 (5th Cir. 1987) ...............................................................................8

*Safeshred, Inc. v. Martinez,*
365 S.W.3d 655 (Tex. 2012)...........................................................................21, 22

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter,*
607 F.3d 1029 (5th Cir. 2010) ..............................................................................12

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Vasquez,*
    2:09-cv-02231-LRH-GWF, 2011 U.S. Dist. LEXIS 112041
    (D. Nev. Sept. 29, 2011) ................................................................................8, 9

*Van Duzer v. U.S. Bank N.A.,*
    582 Fed. Appx. 279 (5th Cir. 2014) ..........................................................4

*In re VeroBlue Farms USA, Inc. et al.,*
    No. 1801297 (Banks. N.D. Iowa, filed Sept. 21, 2018)................................ *passim*

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
    486 U.S. 694, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) ......................23

*Williams v. Compressor Eng'g Corp.,*
    704 S.W.2d 469 (Tex. App.—Houston [14th Dist.] 1986, writ ref d n.r.e.)...........................21

*Wright v. Christian & Smith,*
    950 S.W.2d 411 (Tex. App.—Houston [1st Dist.] 1997, no writ)..........................................12

**Statutes and Rules**

Fed. R. Civ. P. 4(f)......................................................................................23

Fed. R. Civ. P. 8..........................................................................................22

Fed. R. Civ. P. 12(b) .............................................................................. *passim*

Tex. Civl. Prac. & Rem. Code § 41.003(a)...............................................22

Tex. Civl. Prac. & Rem. Code Chapter 38.............................................5, 21

**Other Authorities**

Authorities, Hague Convention,
    http://www.hcch.net/index_en.php?act=authorities.details&aid=278 ...................................24

Authorities, Hague Convention,
    http://www.hcch.net/index_en.php?act=authorities.details&aid=681 ...................................24

Hague Conference on Private International Law, 14: Convention of 15 November
    1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil
    or Commercial Matters, *https://www.hcch.net/en/instruments/conventions* (last
    visited December 4, 2019) ........................................................................23

UK Declarations, *https://www.hcch.net/en/instruments/conventions/status-
    table/notifications/?csid=427&disp=resdn* ............................................24

Third-Party Defendant Alder Aqua, Ltd. ("Alder Aqua") files this brief in support of its Rule 12(b) motion to dismiss the third-party claims brought against it by Defendants Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), James Rea ("James Rea"), and John (Ted) Rea ("Ted Rea") (collectively, "Third-Party Plaintiffs") (Dkt. 186).

## I.     Introduction

Alder Aqua is a British Virgin Islands entity that was induced to invest millions of dollars in Plaintiff VeroBlue Farms USA, Inc. ("VBF"). When VBF was forced to file bankruptcy because of the misdeeds of Third-Party Plaintiffs, Alder Aqua, as the Plan Sponsor in the bankruptcy, injected additional liquidity into VBF, and through the Plan of Reorganization became its only shareholder. Third-Party Plaintiffs assert nine counts against Alder Aqua based on two causes of action: breach of contract (through an alter ego theory) and tortious interference with contract (based on the same contracts alleged to be breached). The Court should dismiss all of Third-Party Plaintiffs' claims against Alder Aqua for lack of subject-matter jurisdiction under Rule 12(b)(1), for failure to state a claim under Rule 12(b)(6), and for insufficient service of process under Rule 12(b)(5).

The Amended Third Party Complaint ("ATPC") asserts new alter ego contract claims against Alder Aqua, seeking to hold it liable for VBF's alleged contract breaches. (Dkt. 186 at ¶¶ 107-159, Counts 5-9). But theses alter ego claims are the property of the VBF bankruptcy estate, and the trustee or debtor-in-possession in the VBF bankruptcy had exclusive standing to assert them. As a result, Third-Party Plaintiffs lack standing to assert the alter ego contract claims, and such claims must be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

Even if Third-Party Plaintiffs had standing, and they do not, both the alter ego contract and tortious interference claims fail to state claims upon which relief can be granted. Fed. R. Civ.

P. 12(b)(6). All claims against Alder Aqua fail because they are dependent upon a breach of contract by VBF, and no breach can exist. No breach can exist because VBF's bankruptcy Reorganization Plan discharged and released any breach of contract claims against VBF. And without a valid contract claim against VBF, Third-Party Plaintiffs have no valid contract claims against VBF's alleged alter ego, Alder Aqua. Also, VBF did not, and could not, breach the contracts by exercising its rights under them. Third-Party Plaintiffs Hall and Ted Rea cannot convert their affirmative defense of release into a breach of contract cause of action because the Termination Agreements do not contain covenants not to sue. VBF had a contractual right to take the actions it did under each of the Termination Agreements. Without any Alder Aqua induced underlying contract breaches, and because VBF was exercising its contract rights, the claims for tortious interference against Alder Aqua fail. Although "alter ego" is pled as a separate cause of action, as a matter of law, it is a remedy, not a separate cause of action. Therefore, liability must first attach to VBF for breach of contract (which is unavailable) before the alter ego remedy can arise. Not only is there no breach of contract liability available against VBF, if there were such and alter ego attached to Alder Aqua, the tortious interference claim would fail as a matter of law because Alder Aqua cannot interfere with its "own" contract. For any one or all of these reasons, and the others stated herein, the ATPC fails to state a claim for either breach of contract alter ego or tortious interference against Alder Aqua and must be dismissed.

Finally, service on Alder Aqua, a BVI company limited by shares (*i.e.*, a corporation), is defective. Third-Party Plaintiffs purported to serve Alder Aqua under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), but the affidavit of service is facially defective because it demonstrates it was not served through the Designated Authority.

## II.    Background Facts

In 2014, Third-Party Plaintiffs formed VBF to purchase an existing family-owned, sustainable fish farm in Iowa. Wulf made himself CEO; Hall was the CFO; Ted Rea was the COO; and Ted's brother, James Rea, was the "Construction Director." (Dkt. 186 at ¶ 13). All four served as directors, officers, and employees of VBF from its formation through their respective employment termination and removal as officers and directors in late 2017 and early 2018. On or about July 8, 2016, Alder Aqua was induced into a Series A Preferred Stock Purchase Agreement with VBF (the "Stock Purchase Agreement"). A true and correct copy of the Stock Purchase Agreement is attached to the Appendix as **Exhibit 1** (App. 0001 to 0049).[1]

VBF later terminated its business relationship with Hall and Ted Rea on or about October 27, 2017, and each signed a Business Relationship Termination Agreement (Dkt. 186, Exs. C & D). VBF terminated its business relationship with Wulf on or about December 1, 2017, and he signed a Separation Agreement. (Dkt. 186, Ex. B). VBF terminated its business relationship with James Rea on or about January 8, 2018 for "Egregious Cause" pursuant to his Employment Agreement. (Dkt. 186, Ex. A). These agreements signed by Third-Party Plaintiffs are collectively referred to as the "Termination Agreements."

Following the removal and discharge of the Third-Party Plaintiffs, VBF has pled it discovered that Third-Party Plaintiffs misappropriated and misused millions of dollars in corporate assets and knowingly misrepresented VBF's operations, technology, and finances. (Dkt. 159, Second Am. Compl. at ¶¶ 20-199). In July 2018, VBF filed this lawsuit against Third-

---

[1]     The Stock Purchase Agreement is referred to in the Amended Third-Party Complaint (Dkt. 186 at ¶ 14) and is central to the allegations against Alder Aqua. It is, therefore, properly considered with this motion. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000). The Stock Purchase Agreement is already in the Court's record. (Dkt. 155, Ex. A-1, p. 41 of 204). It is undisputed that Alder Capital International, Ltd. became Alder Aqua. (Dkt. 186 at ¶ 14).

Party Plaintiffs, asserting numerous causes of action. (Dkt. 1). VBF later amended the complaint to include additional claims against Third-Party Plaintiffs for fraudulent transfer, restitution, violations of the Racketeer Influenced and Corrupt Organizations Act, and rescission of the Termination Agreements that form the basis of the allegations against Alder Aqua and others in the third-party claims. (Dkt. 159).

VBF filed for bankruptcy under Chapter 11 in September 2018. *See In re VeroBlue Farms USA, Inc. et al.,* No. 1801297 (Banks. N.D. Iowa, filed Sept. 21, 2018) ("VBF Bankruptcy"). The U.S. Bankruptcy Court for the Northern District of Iowa (the "Bankruptcy Court") confirmed the Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and "Its Affiliated Debtors" (the "VBF Reorganization Plan") and entered a final judgment on May 7, 2019, which became final on May 22, 2019. (*Id.* at Dkt. 515, 516). True and correct copies of the Bankruptcy Court's judgment ("Judgment"), confirmation order ("Order"), which includes a copy of the VBF Reorganization Plan, and Amended and Restated Minor Modifications to the plan are attached to the Appendix as **Exhibits 2** (App. 0050 to 0052)**, Exhibit 3** (App. 0053 to 0197), and **Exhibit 4** (App. 0198 to 0200), respectively.[2] Third-Party Plaintiffs were parties-in-interest to the VBF Bankruptcy, received notice of the proceedings, and participated in the proceedings, including those related to the confirmation. A true and correct copy of the Notice of Appearance and Request for Service of Third-Party Plaintiffs (Bkrpcy. Dkt. 411) is attached to the Appendix as **Exhibit 5** (App. 0201 to 0204).[3] Third-Party Plaintiffs even objected to part of the Plan that released non-debtors, but not to the discharge and release of

---

[2]     The Bankruptcy Court filings are appropriately considered with this motion by judicial notice and because they are referred to in the Amended Third-Party Complaint. *See* n.1, *supra.* Courts considering a motion to dismiss may rely on and take judicial notice of public documents from a bankruptcy proceeding. *Van Duzer v. U.S. Bank N.A.*, 582 Fed. Appx. 279, 283-84 (5th Cir. 2014).

[3]     This Bankruptcy Court filing is also appropriately considered for this motion. *See* n.2, *supra.*

the debtor VBF. True and correct copies of the objections (Bkrpcy. Dkts. 446 and 466) are attached to the Appendix as **Exhibits 6** (App. 0205 to 0275) and **Exhibit 7** (App. 0276 to 0278).[4]

On or about April 10, 2019, and shortly before the Bankruptcy Court Judgment became final, Third-Party Plaintiffs sued third parties Bjorn Thelander, Norman McCowan, Eva Ebstein, Jens Haarkoetter, Anders Wester, Dr. Otto Happel, and Alder Aqua (collectively, the "Third-Party Defendants") for tortious interference. (Dkt. 66). Third-Party Plaintiffs assert all of the Third-Party Defendants tortiously interfered with the Termination Agreements.

On November 8, 2019, Third-Party Plaintiffs amended their third-party claims. They added new claims against Alder Aqua for alter ego and breach of contract as the alter ego of VBF. (Dkt. 186 at ¶¶ 107-159). They also assert that VBF and hence, Alder Aqua as its alter ego, breached the Termination Agreements by (1) filing suit against Hall and Ted Rea, allegedly in violation of the Termination Agreements (*Id*. at ¶¶ 120-139, Counts 6 and 7); (2) refusing to pay Wulf severance payments allegedly due him under the Separation Agreement (*Id*. at ¶¶ 140-150, Count 8[5]); and (3) terminating James Rea based on an allegedly false claim of "Egregious Cause," and refusing to pay him amounts allegedly due (*Id*. at ¶¶ 151-159, Count 9[6]). Ted Rea and Hall each claim breach of contract damages "in the amount of expense he has incurred in defending against claims brought against him by VBF in violation of the release," and seek punitive damages and attorneys' fees (pursuant to Section 7(i) of their Termination Agreements). (*Id*. at ¶¶ 127-129, 137-139). Wulf seeks breach of contract damages, punitive damages, and attorneys' fees (pursuant to Section 7(i) of the Separation Agreement). (*Id*. ¶¶ 148-150). James Rea seeks breach of contract damages, punitive damages, and attorneys' fees (under Section

---

[4]     The Court may appropriately consider these filings. *See* n.2, *supra*.

[5]     Count 8 of the ATPC is mislabeled in the heading as a tortious interference claim.

[6]     Count 9 of the ATPC is incorrectly numbered as Count 19.

38.001 of the Texas Civil Practice and Remedies Code). (*Id.* at ¶¶ 157-159). Third-Party Plaintiffs continue to assert the same tortious interference claims against all Third-Party Defendants, including Alder Aqua. (*Id.* at ¶¶ 65-106).

In short, Third-Party Plaintiffs seek to accomplish through the ATPC what they know they *cannot* do—sue VBF for breach of contract—by attempting to hold Alder Aqua responsible for any such alleged breach as the alter ego of VBF. Their claims against Alder Aqua fail as a matter of law, because they lack standing to assert them and the VBF Reorganization Plan released them.

## III.    Legal Standards

### A.    Rule 12(b)(1) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes a district court to dismiss an action for lack of subject-matter jurisdiction because a party must have standing to assert claims in order for a district court to have subject-matter jurisdiction over those claims. When a party lacks standing to bring a claim dismissal under Rule 12(b)(1) is appropriate. *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006); *Domain Vault, LLC v. McNair*, No. 3:14-CV-1126-L, 2015 U.S. Dist. LEXIS 130449, at *4 (N.D. Tex. Sept. 28, 2015). Once a 12(b)(1) challenge is made, it is the plaintiff's burden to prove jurisdiction, and the Court should decide the Rule 12(b)(1) grounds before deciding other Rule 12 motions for dismissal. *Domain Vault, LLC*, 2015 U.S. Dist. LEXIS 130449, at *6.

### B.    Rule 12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a civil action for failure to state a claim upon which relief can be granted. A claim is not plausible and should be dismissed if it is not based on a viable cause of action. *Gipson v. Deutsche Bank Nat'l*

*Trust Co.*, No. 3:13-CV-4280-L (BH), 2015 U.S. Dist. LEXIS 175323, at **9, 55-58, 60 (N.D. Tex. Oct. 27, 2015) (granting 12(b)(6) motion to dismiss several claims not recognized as causes of action). To state a claim and defeat a motion to dismiss, Third-Party Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim meets the plausibility test when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, the ATPC must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### C.     Rule 12(b)(5) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(5) authorizes a district court to dismiss a civil action for insufficient service of process. Absent proper service, the court cannot exercise jurisdiction over a party named as a defendant. *Illustro Sys. Int'l, LLC v. IBM*, No. 3:06-CV-1969-L, 2007 U.S. Dist. LEXIS 33324, at *9 (N.D. Tex. May 4, 2007).

### IV.     Argument and Authorities

### A.     Third-Party Plaintiffs lack standing to assert their alter ego breach of contract claims because those claims are the property of the VBF bankruptcy estate.

Third-Party Plaintiffs include new claims against Alder Aqua in their ATPC for alter ego and breach of contract. (Dkt. 186 at Counts 5-9). But Alder Aqua was not a party to any of the contracts. (Dkt. 186 at Exs. A-D). These claims hinge entirely on the premise that Alder Aqua is

the "alter ego" of VBF, a reorganized bankruptcy debtor. Third-Party Plaintiffs have no standing to assert these claims against Alder Aqua.

Any claim for alter ego relief and underlying derivative breach of contract claims belong to VBF's bankruptcy estate. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, (5th Cir. 1987) (holding that alter ego claim by third party was "property of the [bankruptcy] estate"); *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Vasquez*, 2:09-cv-02231-LRH-GWF, 2011 U.S. Dist. LEXIS 112041, at *6-9 (D. Nev. Sept. 29, 2011) (Nevada law) (same). An alter ego claim is the property of the bankruptcy estate if it existed at the commencement of the bankruptcy and could have been asserted by the debtor on its own behalf under state law and/or the claim is a generalized claim with no particularized injury arising from it. *See In re Capriati Constr. Corp.*, BAP No. NV-17-1200-BHTa, 2018 Bankr. LEXIS 818, at *17-19 (9th Cir. March 20, 2018); *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 614-24 (D. Del. 2018).

Whether an alter ego claim is property of the debtor's estate is determined based on the law of the state where the debtor is incorporated. *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2nd Cir. 1993) (applying Texas law); *In re Capriati Constr. Corp.*, 2018 Bankr. LEXIS 818, at *17. It is undisputed that VBF is incorporated under Nevada law. (Dkt. 50). Under Nevada law, an alter ego claim may be asserted by the subject corporation, so that when the corporation files for bankruptcy protection, any alter ego claim becomes property of the debtor corporation's estate:

> The problem with holding S&G liable as ADT's alter ego in this case, however, is that ADT has filed for bankruptcy. Where state law permits an alter ego claim to be asserted by a corporation in its own name, such a right of action is property of the estate, assertable only by the bankruptcy trustee or the debtor-in-possession, and **a claim by a creditor against the debtor's affiliate based solely on an alter ego theory is therefore barred for lack of standing** and under the automatic stay. As recognized by the Fifth Circuit in *S.I. Acquisition*, 817 F.2d at 1152-53,

Nevada law is identical to Texas law in permitting a corporation to bring an alter ego claim in its own name. Accordingly, if S&G is the alter ego of ADT, as Plaintiffs allege and which this court accepts as true, they "are to be regarded as identical," ADT "has an equitable interest in the assets of its alter ego," and the right to assert an alter ego claim against S&G is property of ADT's bankruptcy estate.

\* \* \*

[B]ecause any alter ego claim against S&G is property of ADT's bankruptcy estate, Plaintiffs, as third-party creditors, lack standing to assert such a claim outside the ADT bankruptcy proceedings.

For these reasons, Plaintiffs' motion for default judgment against S&G shall be denied, **Plaintiff's alter ego claim shall be dismissed for lack of standing** and as barred by the automatic stay, and S&G shall be dismissed as a defendant in this action.

*Vasquez*, 2011 U.S. Dist. LEXIS 112041, at \*6-9 (emphasis added).

Texas law is the same—only the bankruptcy trustee or debtor-in-possession has standing to assert the alter ego claims that Third-Party Plaintiffs now seek to assert. *Raytheon C. v. Boccard USA Corp.*, 369 S.W.3d 626, 638 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In *Raytheon*, Boccard sought to hold Raytheon liable for breach of contract based on contracts between Boccard and United Engineers, Raytheon's former subsidiary and a debtor in bankruptcy. *Raytheon*, 369 S.W.3d at 630. Just like Third-Party Plaintiffs here, "without the alter ego claim, Boccard [could not] recover against Raytheon for breach of contract." *Id*. Any alter ego claims against Alder Aqua passed into the VBF bankruptcy estate and Third-Party Plaintiffs lack standing to assert them:

[An alter ego] claim passes into the bankruptcy estate on the filing of the bankruptcy petition. At that point, the trustee or debtor-in-possession has exclusive standing to assert the alter ego claim. As applied to this case, the debtor-in-possession, Washington Group, was the only party with standing to assert an alter ego claim against Raytheon. **Boccard did not have standing to assert the alter ego claim. Thus, we hold that the trial court was without subject-matter jurisdiction to render judgment based on the equitable claim of alter ego.**

*Id*. at 638 (emphasis added).

Third-Party Plaintiffs' claims existed at the commencement of the VBF Bankruptcy. Third-Party Plaintiffs contend VBF had breached each of the Termination Agreements no later than July 31, 2018 when VBF filed this lawsuit. (Dkt. 186 at ¶¶ 125, 135, 144, 155, 57). Then after that date, on September 21, 2018, VBF filed for bankruptcy. **Ex. 3** at p. 2 (App. 0055). Thus, Third-Party Plaintiffs' alter ego contract claims existed at the commencement of the VBF bankruptcy.

Further, Third-Party Plaintiffs' alter ego claim is a general claim that could have been brought by any creditor of VBF. Third-Party Plaintiffs allege that "Alder Aqua has decided, directed, approved, and controlled *all* decisions for VBF" as to who to hire, who to fire, what bills to pay or not pay, what financing arrangements, loans or other debt obligations VBF would undertake. (Dkt. 186 at ¶¶ 110-111(emphasis added)). The alter ego claim goes on to describe allegations of total control by Alder Aqua over VBF generally and as to all facets of VBF's business. (*Id.* at ¶¶ 111-119). These types of allegations are exactly the types of general alter ego allegations that belong to a bankruptcy estate. *In re Capriati Constr. Corp.*, 2018 Bankr. LEXIS 818, at *17-19; *Harrison*, 320 F. Supp. 3d at 618-24.

Third-Party Plaintiffs are well aware that they do not have standing to pursue claims that belong to VBF, and the Bankruptcy Court refused to grant them standing to pursue derivative claims against Alder Aqua. In the VBF Bankruptcy, an ad hoc committee, with whom Third-Party Plaintiffs were associated,[7] actually sought—unsuccessfully—to acquire standing to bring similar claims belonging to VBF. A true and correct copy of the Protective Motion (Bkrpcy. Dkt. 288) is attached to the Appendix as **Exhibit 8** (App. 0279 to 0326). Many of the factual allegations from the Bankruptcy Court are strikingly similar to the allegations asserted again in

---

[7]     Third-Party Plaintiffs admitted to their involvement on the committee. (Dkt. 37-1 at pp. 9-10).

the ATPC. *Compare* **Ex. 8** at ¶¶ 26, 28 (App. 0296-0297) *with* Dkt. 186 at ¶¶ 14-18; *see also* **Ex. 8**, Dkt. 288-1 Challenge Notice at pp. 5-7, 9-17 (App. 0306-0308; 0310-0318). Indeed, Third-Party Plaintiffs' *ad hoc* committee sought standing to file an adversary proceeding on behalf of the debtor VBF to assert causes of action listed in the Challenge Notice attached to their standing motion. **Ex. 8** at ¶ 20 (App. 0288-0289). And Alder Aqua, the Plan Sponsor in the VBF Bankruptcy, was a target in the Challenge Notice. **Ex. 8** at ¶ 18 (App. 0292). But the Bankruptcy Court denied the committee standing to assert these claims, finding that they were not colorable and calling into question the misleading accusations in the Challenge Notice. True and correct copies of the Bankruptcy Court Order (Bkrpcy. Dkt. 421) and a Transcript of the Court's Ruling are attached as **Exhibit 9** (App. 0327 to 0330) and **Exhibit 10** (App. 0331 to 0412). The Bankruptcy Court Order bars "all parties in interest" (*i.e.*, Third-Party Plaintiffs) from bringing derivative claims "relating to the allegations and claims set forth in the Challenge Notice . . . as those claims are not colorable." **Ex. 9** (App. 0329); *see also* **Ex. 10** Transcript at pp. 66:6-8; 68:22-69:21 (App. 0397, 0399-0400). Third-Party Plaintiffs not only lack standing to pursue the alter ego contract claims they seek to assert against Alder Aqua, they have been judicially barred from doing so.

Counts 5-9 in the ATPC must be dismissed under Fed. R. Civ. P. 12(b)(1) because Third-Party Plaintiffs lack standing to assert an alter ego remedy as a matter of law.

> **B.** **Third-Party Plaintiffs' purported separate cause of action against Alder Aqua for "alter ego" fails to state a claim because alter ego is not a separate cause of action.**

Assuming Third-Party Plaintiffs had the requisite standing to assert any alter ego claim against Alder Aqua for VBF's alleged breaches, which Third-Party Plaintiffs do not have, their alter ego "cause of action" still fails as a matter of law. Third-Party Plaintiffs mistakenly assert

alter ego as a separate cause of action. (Dkt. 186 at ¶¶ 107-119, Count 5). Alter ego is not a separate cause of action; it is a remedy. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) (citing *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476, 480 (Tex. App.—Fort Worth 1970, no writ)); *see also Campbell v. Adventist Health System/Sunbelt*, 946 S.W.2d 617, 626 (Tex. App.—Fort Worth 1997, no writ) ("An attempt to pierce the corporate veil, by contending that one corporation is the alter ego of another corporation, is not a separate cause of action."). Because alter ego is not a legally recognized separate cause of action, Third-Party Plaintiffs' separate cause of action for alter ego (Count 5) fails to state a claim upon which relief can be granted and must be dismissed. *Gipson*, 2015 U.S. Dist. LEXIS 175323, at **9, 55-58, 60 (dismissing claims not recognized as causes of action).

### C.   Third-Party Plaintiffs' claims against Alder Aqua for breach of contract fail to state claims upon which relief can be granted.

#### 1.   Alder Aqua is not a party to any contract with Third-Party Plaintiffs.

To prove an action for breach of contract, a plaintiff must establish the existence of an enforceable contract. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412-13 (Tex. App.—Houston [1st Dist.] 1997, no writ) ("The threshold inquiry in a breach of contract action is whether an enforceable agreement exists between the parties."). When a plaintiff fails to plead an essential element of a claim, dismissal under Rule 12(b)(6) is appropriate. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Third-Party Plaintiffs repeatedly make unsupported conclusory assertions that they have contracts "executed with Alder Aqua, as the alter ego of VBF." (Dkt. 186 at ¶¶ 121, 131, 141, 152). These are legal

conclusions masquerading as factual conclusions. That no such contract exists between Alder Aqua and Third-Party Plaintiffs can be seen by reviewing the contracts themselves. (Dkt. 186 at Ex. A p. 46/88, Ex. B p. 59/88, Ex. C p. 72/88, Ex. D p. 84/88). None of the Third-Party Plaintiffs have alleged the existence of any contract between *Alder Aqua* and any one of them other than through an alter ego remedy, which they have no standing to assert. Thus, Third-Party Plaintiffs have no factual or legal basis to assert the existence of enforceable contracts with Alder Aqua and their breach of contract claims against Alder Aqua must be dismissed.

### 2. The breach of contract claims against VBF have been discharged in the VBF Bankruptcy.

Third-Party Plaintiffs cannot obtain any alter ego remedy against Alder Aqua on any breach of contract claim unless they first establish VBF's liability for such alleged breach. Irrespective of Third-Party Plaintiffs' lack of standing to assert alter ego, s*ee* Section IV(A), *supra*, any breach of contract claims against VBF were discharged and released in the VBF Bankruptcy. When a claim against an underlying entity is not valid, it is not valid against the entity's alleged alter ego. *Campbell*, 946 S.W.2d at 627 ("Because AHS is not liable, there is no liability to pass along to Adventist and the Hospital on an alter ego theory."). That is, if the breach of contract claims against VBF have been discharged as to VBF, they have been discharged as to Alder Aqua*, as the alter ego of VBF.*

Under the VBF Reorganization Plan, all claims against VBF—including any breach of contract claims by Third-Party Plaintiffs against VBF—were discharged and released. **Ex. 3** at Art. 9.13 (App. 0102). In fact, causes of action against VBF are enjoined under the VBF Reorganization Plan. *Id.* at Art. 9.17 (App. 0105). That is why Third-Party Plaintiffs have not asserted and could never assert breach of contract counterclaims against VBF. Without a valid breach of contract claim against VBF, there is no valid breach of contract claim to pass along to

VBF's alleged alter ego. *Campbell*, 946 S.W.2d at 627. Thus, the breach of contract claims against Alder Aqua, Counts 6-9, should be dismissed for failure to state a claim.[8]

### 3. Filing suit to rescind the Termination Agreements is not a breach of contract.

Third-Party Plaintiffs continue their pleading slight-of-hand by misrepresenting that Alder Aqua filed suit against Hall and Ted Rea. (Dkt. 186 at ¶ 125,135). Once again, Third-Party Plaintiffs try to accomplish what VBF's bankruptcy discharge prohibits—a contract breach claim against VBF. Not only are the breach of contract claims barred, Third-Party Plaintiffs' factual allegations to support Counts 6 and 7 do not rise to the level of a plausible claim. The underlying theory—that VBF breached the Termination Agreements by filing suit to rescind them—fails as a matter of law.

The sole basis asserted for the breach of contract claim by Ted Rea and Hall is the purported release provision in the Termination Agreements. (Dkt. 186 at ¶ 125, 135). Texas law distinguishes, however, between releases (which are affirmative defenses that do not automatically bar later claims) and covenants not to sue (which can bar later claims). *See Cypress Engine Accessories, LLC v. HDMS Ltd. Co.,* 283 F. Supp. 3d 580, 587-88 (S.D. Tex. 2017). The *Cypress Engine* court noted that "[u]nder Texas law, the court cannot imply a covenant not to sue on released claims from a settlement releasing those claims," as Texas Supreme Court precedent provides that "a release of a claim does not equate to a covenant not to sue on that claim. The issue is whether the specific release language 'includes a contractual obligation not to sue.'" *Id.*; *Nat'l Prop. Holdings, L.P. v. Westergren,* 453 S.W.3d 419, 428-29

---

[8]     Counts 6-9 also fail if the legal bar to breach of contract claims against VBF (and thereby Alder Aqua as an alleged alter ego) is viewed as an affirmative defense. When a defendant's affirmative defense is proved by a plaintiff's own pleading, dismissal under Rule 12(b)(6) is appropriate. *Kansa Reinsurance Co., Ltd. v. Congr. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994). The VBF Bankruptcy filings are properly considered as part of this 12(b)(6) motion. *See* n.2, *supra*.

(Tex. 2015) ("Although the release provides an affirmative defense to future suits, we cannot construe it as including a covenant not to sue where, in fact, the plain language does not bar future suits."). Here, there is no covenant not to sue in the Termination Agreements. (Dkt. 186, Exs. C, D). Counts 6 and 7 are, therefore, insufficient as a matter of law and should be dismissed.[9]

### 4.     Punitive damages cannot be recovered for breach of contract as a matter of law.

Third-Party Plaintiffs seek punitive damages in connection with each of their breach of contract claims. (Dkt. 186 at ¶¶ 128, 138, 149, and 158). Punitive damages are not recoverable for breach of contract as a matter of law, even if the breach is malicious, intentional, or capricious. *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1070 (5th Cir. 1984); *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). These claims should therefore be dismissed.

### D.     Third-Party Plaintiffs' claims against Alder Aqua for tortious interference fail to state claims upon which relief can be granted.

Third-Party Plaintiffs assert four counts of tortious interference. (Dkt. 186, Counts 1-4). To state a claim for tortious interference with an existing contract, the Third-Party Plaintiffs must allege that there was "(1) an existing contract subject to interference and (2) a willful and intentional act of interference with the contract (3) that proximately caused the plaintiff's injury and (4) caused actual damages or loss." *Jacked Up, L.L.C. v. Sara Lee Corp.,* 854 F.3d 797, 813 (5th Cir. 2017) (quoting *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000)) (internal quotation marks omitted).

---

[9]     Any interpretation that the release could constitute a covenant not to sue contravenes other provisions in the agreements that unambiguously demonstrate that the parties contemplated future litigation based on the agreements. (Dkt. 186 at Ex. C and D, § 7(i) ("In the event it becomes necessary to bring suit to enforce any provision of this Agreement..."); § 7(1) ("Each Party agrees to commence any action, suit or proceeding relating to this Agreement in the District Court.")).

### 1.     Alder Aqua is not legally capable of interference.

Third-Party Plaintiffs' own allegations in the ATPC necessarily defeat their tortious interference claim against Alder Aqua as a matter of law. A contracting party (as Alder Aqua is alleged to be by alter ego) cannot interfere with its own contract. "By definition, the person who induces the breach cannot be a contracting party. . . . When there is a complete identity of interests, there can be no interference as a matter of law." *Holloway v. Skinner*, 898 S.W.2d 793, 795, 797 (Tex. 1995); *Community Health Sys. Prof'l Servs. Corp. v. Hansen,* 525 S.W.3d 671, 690 (Tex. 2017) ("a party to a contract cannot interfere with its own contract."). Accepting Third-Party Plaintiffs' alter ego allegations as true (for the purposes of this motion only), Alder Aqua is legally incapable of interfering with any VBF/Alder Aqua contract as a matter of law because the two separate entities would be one:

> To prove the willful and intentional interference element of a tortious interference claim, the plaintiff must show that the defendant was legally capable of interference. To be legally capable of tortious interference, the defendant must be a stranger to the contract with which he allegedly interfered.

*Hansen*, 525 S.W.3d at 690. Third-Party Plaintiffs do not allege Alder Aqua is a stranger to the contracts. In fact, they allege the opposite—that Alder Aqua and VBF are one and the same.

Alder Aqua is alleged to be a shareholder of VBF that dominates VBF's operations for its own benefit. (Dkt. 186 at ¶¶ 14, 16, 17, 22, 23, 33). Accepting these allegations as true also means there are no viable tortious interference claims against Alder Aqua:

> [A] plaintiff cannot recover for tortious interference with contract or with business relations if the allegedly interfering third party acted to protect his own legitimate interest. A financial interest superior to that of one of the parties to the contractual or business relationship is one such legitimate interest. Stock ownership generally constitutes a superior financial interest that will trigger the privilege.

*Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1196 (5th Cir. 1985);

*Protradenet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 793 (W.D. Tex. 2019)

(Applying Texas law to hold "a corporate parent is incapable of tortiously interfering with the

contracts of its subsidiary. . . . Therefore, this Court will follow the great weight of authority and

dismiss with prejudice Plaintiff's tortious interference claim against Dwyer."); *Cleveland Reg'l*

*Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 348 (Tex. App.—Beaumont 2010, pet.

denied) ("[A]s a matter of law, a parent company cannot tortiously interfere with the contracts of

its wholly owned subsidiary."); *but see Ashlar Fin. Servs. v. Sterling Fin. Co.*, No. 3:00cv2814-

AH, 2002 U.S. Dist. LEXIS 2086, *27 (N.D. Tex. Feb. 8, 2002) (finding—eight years before the

*pet. denied* decision in *Cleveland*—that it may be possible in light of finding of no alter ego that

parent could interfere with subsidiary's contract).

        Based on Third-Party Plaintiffs' own pleadings, Alder Aqua is the alter ego sole

shareholder of VBF, not an outsider to the contracts legally capable of interfering. *Hansen*, 525

S.W.3d at 690; *Protradenet*, 369 F. Supp. 3d at 793. The tortious interference claims against

Alder Aqua, Counts 1-4, should be dismissed.

### 2.      VBF was exercising its rights under the Termination Agreements.

        To state a claim for tortious interference, the Third-Party Claims must include allegations

that Alder Aqua's conduct amounted to a knowing inducement to VBF to breach. *See John Paul*

*Mitchell Sys. v. Randalls Food Markets, Inc.,* 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000,

pet. denied). Inducing a third party to do what it has a legal right to do does not constitute

tortious interference. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). "A

third-party's efforts to induce another to exercise his right to dissolve a contract at will or to

terminate contractual relations on notice does not constitute tortious interference with contract

under Texas law." *C.E. Services, Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985). Here, because the allegations themselves show that VBF was acting within its rights under the Termination Agreements, there is no claim for tortious interference.

The only inducement alleged by Third-Party Plaintiffs related to the Termination Agreements for Ted Rea and Hall (Counts 1 and 2) was for VBF to file this lawsuit against Ted Rea and Hall. Even assuming these Termination Agreements are enforceable,[10] neither agreement prohibits VBF from bringing a lawsuit. There is no covenant not to sue in the Termination Agreements. (Dkt. 186, Exs. C, D). The sole basis for this claim by Ted Rea and Hall is the purported release provision in the Termination Agreements. But as discussed in Section IV(C)(3), *supra.*, Texas law distinguishes between the affirmative defense of release and the legal bar of a covenant not to sue. *See Cypress Engine Accessories, LLC v,* 283 F. Supp. 3d at 587-88; *Nat'l Prop. Holdings, L.P.,* 453 S.W.3d at 428-29. And Hall and Ted Rea's Termination Agreements are not the type of contract that can be interfered with—it is undisputed they were paid pursuant to their contracts. (Dkt. 186 at ¶ 42). Thus, the contracts had been performed and there was nothing with which Alder Aqua could interfere.

The only inducement alleged by the Third-Party Plaintiffs related to the Employment Agreement for James Rea (Count 4) was for VBF to terminate James Rea for "Egregious Cause." But James Rea's Employment Agreement provided VBF with the legal right to terminate his employment for "Egregious Cause," which it exercised. (Dkt 186 at Ex. A, §§ 5(c)(i)-(iii) ("Employee's employment hereunder may be terminated by the Company for Cause," which means "either Egregious Cause or Non-Egregious Cause.")).

---

[10]     As explained in VBF's Second Amended Complaint (Dkt. 159 at ¶¶ 309-322) and VBF's Response and Brief in Support to Defendant Keith Driver's 12(b)(6) Motion to Dismiss (Dkt. 103 at 19-23), the agreements are not enforceable.

The only inducement alleged by Third-Party Plaintiffs related to the Separation Agreement for Wulf (Count 3) was for VBF not to pay Wulf amounts allegedly due under the Separation Agreement. But Wulf's Separation Agreement provided VBF with the legal right to terminate future payments in the event of a breach of the representations and warranties by Wulf in the Separation Agreement, which it exercised. (Dkt. 186 at Ex. B, § 7(c)).

VBF was acting within its legal rights by bringing this lawsuit against Hall and Ted Rea, by terminating James Rea's employment on a basis expressly permitted by his Employment Agreement, and by terminating further payments to Wulf as expressly permitted in the Separation Agreement. Thus, there was no breach that could have been induced by Alder Aqua. *C.E. Services, Inc.*, 759 F.2d at 124. Accordingly, the tortious-interference claims at Counts 1-4 are insufficient as a matter of law and should be dismissed.

### 3.     Without an underlying breach of contract, there is no tortious interference claim.

All of the tortious-interference claims in the ATPC should be dismissed because the Third-Party Claims are wholly derived from and dependent upon the Third-Party Plaintiffs' allegations that VBF breached their agreements. Any underlying breach claim against VBF, however, has been discharged, released, and enjoined as a matter of law by the VBF Reorganization Plan. *See, e.g.*, *Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 485-86 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (holding patient's tortious-interference claim against doctors failed where patient waived any claim for breach of contract against hospital); *Hamlett v. Holcomb*, 69 S.W.3d 816, 820 (Tex. App.—Corpus Christi 2002, no pet.) (affirming dismissal of plaintiff's tortious-interference claim against one defendant because plaintiff's tortious-interference claim was premised on other defendant's breach, and other defendant did not breach the contract with plaintiff) (citations omitted); *see also Lopez v. Munoz, Hockema & Reed,*

*L.L.P.,* 22 S.W.3d 857, 862 (Tex. 2000) (failure of claim for breach of contract necessarily defeated claim for breach of fiduciary duty that depended on breach of contract).

The Bankruptcy Court entered an order accepting and confirming the VBF Reorganization Plan on May 7, 2019, which is now in effect. **Ex. 3** (App. 0054-0072). The VBF Reorganization Plan contains broad discharges and releases for VBF as the Debtor. **Ex. 3**, Plan, Art. 9.13 (App. 0102). The Bankruptcy Court Order and Judgment reiterate the enforceability of this release. **Ex. 2**, Judgment at ¶ 6 (App. 0051); **Ex. 3**, Order at 18 (App. 0071). Further, the VBF Reorganization Plan contains a broad injunction on claims based on Claims (a defined term therein) or other debts or liabilities that were addressed by the VBF Reorganization Plan, which would include any claim for breach of contract against VBF. **Ex. 3**, Plan, Art. 9.17 (App. 0105). The Plan also contained a release of non-debtors, including Alder Aqua. **Ex. 3**, Plan Art. 9.15 (App. 0104). Third-Party Plaintiffs objected to this release language in the bankruptcy. **Ex. 6** (App. 0208) and **Ex. 7** (App. 0277). As a result, article 9.15 was modified. **Ex. 4** (App. 0199). Articles 9.13 and 9.17 were not modified. VBF was and is fully discharged and released. Third-Party Plaintiffs have only offsetting defenses against VBF. **Ex. 4** at Art. 9.14 (App. 0199-200). There is no valid breach of contract claim against VBF, and therefore, no valid tortious interference claim against Alder Aqua. *Delgado*, 936 S.W.2d at 485-86; *Hamlett*, 69 S.W.3d at 820; *Lopez*, 22 S.W.3d at 862.

> **4.** **Counts 1 and 2 fail because attorneys' fees are not legally recoverable as damages for tortious interference.**

The only alleged damage with respect to Counts 1 and 2 is the "amount of expense" that Ted Rea and Hall have "incurred in defending against claims brought against [them] by VBF in violation of the release." (Dkt. 66 at 111161, 70). Attorneys' fees, however, generally "are in the nature of costs, not damages" and cannot be awarded as damages for alleged tortious

interference. *See Alma Grp., L.L.C. v. Palmer,* 143 S.W.3d 840, 846 (Tex. App.—Corpus Christi 2004, pet. denied) (reversing trial court award of attorneys' fees as damages for tortious interference); *Williams v. Compressor Eng'g Corp.,* 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref d n.r.e.) (same). Therefore, Counts 1 and 2 fail to allege any actual damage or loss—an essential element of their tortious interference claims. Counts 1 and 2 are insufficient as a matter of law and should be dismissed. *See Hansen,* 525 S.W.3d at 689.

### 5.      Attorneys' fees are not recoverable for tortious interference.

In Counts 1-4, Third-Party Plaintiffs seek to recover attorneys' fees under their tortious interference claims. Under Texas law, litigants may recover attorneys' fees only if authorized by statute or by a contract *between the parties. See, e.g.*, *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) (citations omitted). No statute authorizes recovery of attorneys' fees for tortious interference with a contract, including Chapter 38 of the Texas Civil Practice & Remedies Code. *See Alma Grp., L.L.C.,* 143 S.W.3d at 846 n.5 ("[T]here is no statutory or contractual basis for recovery of attorney fees for a tortious-interference claim.") (citing *Ed Rachal Found. v. D 'Unger*, 117 S.W.3d 348, 357 (Tex. App.—Corpus Christi 2003), *rev 'd in part on other grounds*, 207 S.W.3d 330 (Tex. 2006); *Martin—Simon v. Womack,* 68 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). The Third-Party Plaintiffs' claims for attorneys' fees for tortious interference have no legal basis and should be dismissed.

### 6.      The Third-Party Plaintiffs' allegations do not support exemplary damages for tortious interference.

To state a claim for exemplary damages, Third-Party Plaintiffs must allege "something independent and qualitatively different from the compensable harms associated with the cause of action." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 662 (Tex. 2012) (citations and quotations omitted); *see also Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 151 (5th Cir.

2017). These allegations must include harm that results from Alder Aqua's alleged fraud, malice, or gross negligence. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a). In other words, the Third-Party Claims must allege facts supporting that Alder Aqua (1) specifically intended to cause substantial injury or harm to Third-Party Plaintiffs; or (2) was consciously indifferent to the prospect of substantial injury to Third-Party Plaintiffs. *Id. §§* 41.001(7), (11). Allegations that arguably support the willful-harm element of the tortious-interference claims "cannot also justify a punitive damages award. More is required." *Safeshred, Inc.*, 365 S.W.3d at 662 (citations omitted); *see also Merritt Hawkins & Associates, L.L.C.*, 861 F.3d at 151.

Here, Third-Party Plaintiffs assert exemplary damages based on "the intentional, malicious and vindictive nature of the Alder Defendants' conduct." (Dkt. 186 at ¶¶ 73, 95, and 105; *see also* ¶ 83, substituting "vexatious" for "malicious" as to Ted Rea). These are conclusory and impermissible group allegations; there are no facts alleged to support any award of exemplary damages against Alder Aqua or any Third-Party Defendant. Group allegations are insufficient under Rule 8. *See, e.g., Outlaw Lab., LP v. Shenoor Enter., Inc.,* 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019) ("[T]o give the requisite notice to each Defendant, Plaintiff needs to avoid improper 'group pleading' that does not distinguish the conduct of the individual Defendants."); *Gurganus v. Furniss,* 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) (holding plaintiff's "group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8" and "makes it impossible to ascertain which particular Defendants(s) are supposedly responsible for the acts allegedly creating the WARN Act violation") (citations omitted). Therefore, the claims for exemplary damages in Counts 1-4 should be dismissed.

E.     **Third-Party Plaintiffs' service of process on Alder Aqua was insufficient under the Hague Convention.**

Relying solely upon the Affidavit of Service filed with this Court (Dkt. 156), Third-Party Plaintiffs allege that Alder Aqua "was served with process pursuant to the directives of the Hague Convention . . .". (Dkt. 186 at n.4). Service on Alder Aqua under the Hague Convention is facially defective—it was not made through the "designated authority" mandated for Article 10(c) service—and the Third Party Complaint must be dismissed on this basis.

When attempting to effect service of process on a defendant in a foreign country, parties typically must look to the requirements of Rule 4(f). This rule allows service to be made three ways: (1) by any internationally agreed means, such as the Hague Convention; (2) if there is not an internationally agreed means, or if the applicable international agreement allows other means of service, by a number of ways reasonably calculated to provide notice; or (3) by any other means not prohibited by international agreement, if directed by the court. Fed. R. Civ. P. 4(f).

Through its signature and declaration, the United Kingdom has extended application of the Hague Convention to the BVI. *See* Hague Conference on Private International Law, 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *https://www.hcch.net/en/instruments/conventions* (last visited December 4, 2019) ("Hague Convention") (listing the BVI as an United Kingdom territory over which "application of the Convention" has been extended). "[C]ompliance with the [Hague] Convention is ***mandatory*** in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) (emphasis added). Here, Alder Aqua is a foreign BVI company, and Third-Party Plaintiffs have

attempted—unsuccessfully—to effectuate service under the Hague Convention by once again filing to adhere to technical requirements and the rule of law.[11]

Article 3 of the Hague Convention provides that documents intended to be served pursuant thereto must be sent to the "Central Authority" of the state addressed, which for the United Kingdom is "The Senior Master For the attention of the Foreign Process Section."[12] In addition to its Central Authority, the United Kingdom has provided for an additional authority to receive service, a "designated authority," for each of its Overseas Territories.[13] The designated authority for the BVI is the "Registrar of the Supreme Court, Supreme Court Registry, No. 84 Main Street, P.O. Box 418, Road Town, Tortola, British Virgin Islands VG1110". *Id.* Notably, the UK Declarations to paragraph 10(c) of the Hague Convention provide that "documents for service through official channels will be accepted in the United Kingdom *only by the central or additional authorities* and only from judicial, consular or diplomatic officers of other Contracting States." The UK Declarations to paragraph 10(c) further provide that "documents sent for service through official channels will be *accepted in a territory listed in the Annex [e.g., BVI] by the designated authority* and only from judicial, consular or diplomatic officers of other Contracting States."[14] Thus, service in BVI pursuant to the Hague Convention may only be made through the designated authority, or the Registrar of the Supreme Court of BVI.

---

[11]     As discussed above, Third-Party Plaintiffs disregard the Bankruptcy Court Order barring their request for standing to assert VBF estate claims against Alter Aqua. *See* Section IV(A), *supra*. Third-Party Plaintiffs have also failed to adhere to this Court's rules. (*See, e.g.,* Dkt. 184, exceeding page limit without leave of court).

[12]     Authorities, Hague Convention, http://www.hcch.net/index_en.php?act=authorities.details&aid=278 (last visited December 4, 2019).

[13]     Authorities, Hague Convention, http://www.hcch.net/index_en.php?act=authorities.details&aid=681 (last visited December 4, 2019).

[14]     UK Declarations, *https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=427&disp=resdn* (last visited December 4, 2019) (emphasis added).

Third-Party Plaintiffs' process server Leslie-Ann Theodore states in her affidavit that she personally served certain documents on an employee of Conyers Trust Company (BVI) Limited at the direction of Susan V. Demers, who is characterized in the affidavit as "a solicitor admitted to practice in the British Virgin Islands and thus a competent person within the meaning of Article 10(c) or [sic] the [Hague Convention]." The affidavit makes no mention of the Registrar of the Supreme Court of BVI. (Dkt. 156 at ¶ 2).[15] Third-Party Plaintiffs further provide no evidence that they served Alder Aqua through the required designated authority. The affidavit shows on its face they did not. Service upon Alder Aqua, therefore, was facially defective and the Court has not gained jurisdiction over Alder Aqua.[16]

## V.    Conclusion

Alder Aqua prays that the Court dismiss all claims asserted against it by Third-Party Plaintiffs and for any other relief to which it may be entitled.

---

[15]    Although the UK Declarations reference a letter dated September 11, 1980 by the Foreign and Commonwealth Office to the Permanent Bureau that confirms the UK declaration does not preclude service in the United Kingdom directly through a competent person other than a judicial officer or official, e.g., a UK solicitor, this does not extend to UK overseas territories. Even assuming arguendo that it does, Ms. Demers is not currently a UK solicitor per her own website. *See http://pricedemers.com/about* ("However, Ms. Demers does not currently hold a practising certificate in England and Wales" issued by the Solicitors Regulation Authority ("SRA").). One must hold a practising certificate issued by the SRA to act as a solicitor in England and Wales. *https://www.gov.uk/solicitor-s-practising-certificate-england-wales*.

[16]    The appearance of counsel on behalf of Alder Aqua in this proceeding is no bar to this Rule 12 defense. *See Flock v. Scripto-Tokai Corp.*, No. H-00-3794, 2001 U.S. Dist. LEXIS 23881, *6-12 (S.D. Tex. June 26, 2001)

Respectfully submitted,

By: ___/s/ John P. Kincade_____
        John P. Kincade, Esq.         SB# 11429600

2728 N. Harwood Street
Suite 500
Dallas, Texas 75201
(214) 745-5400
(214) 745-5390 (Fax)
Email:  jkincade@winstead.com

Elliot Clark
Texas Bar No. 24012428
eclark@winstead.com
**WINSTEAD PC**
401 Congress Avenue, Suite 2100
Austin, Texas 78701-3619
512-370-2800
512-370-2850 (Facsimile)

Kevin T. Keen
Texas Bar No. 24113386
kkeen@winstead.com
**WINSTEAD PC**
24 Waterway Avenue
Suite 500
The Woodlands, Texas 77380
(281) 681-5900
(281) 681-5901 (facsimile)

***ATTORNEYS FOR THIRD-PARTY
DEFENDANT, ALDER AQUA, LTD.***

## CERTIFICATE OF SERVICE

I certify that on December 4, 2019, this document was filed and served via the Court's ECF system and that a copy was sent via electronic mail to all counsel of record for whom the ECF system did not send an automatic Notice of Electronic Filing.

 /s/ John P. Kincade_____
One of Counsel