# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:19-CV-00764-X |
| LESLIE A. WULF, BRUCE A. HALL, JAMES REA, | § | |
| JOHN E. REA, AND KEITH DRIVER, | § | |
|    Defendants/Third-Party Plaintiffs, | § | |

---

**APPENDIX TO THIRD-PARTY DEFENDANT ALDER AQUA, LTD.'S
MOTION TO STAY DISCOVERY OR, ALTERNATIVELY,
FOR PROTECTIVE ORDER, AND BRIEF IN SUPPORT**

---

Exhibit 1:    Declaration of John Kincade ................................................................... APP00002

Exhibit 2:    Founder Defendants' Request for Production of Documents
             to Alder Aqua, Ltd. .................................................................................. APP00012

Respectfully submitted,

By:  /s/ John P. Kincade
      John P. Kincade, Esq.
      SB# 11429600

2728 N. Harwood Street
Suite 500
Dallas, Texas 75201
(214) 745-5400
(214) 745-5390 (Fax)
Email:  jkincade@winstead.com

Elliot Clark
Texas Bar No. 24012428
eclark@winstead.com

**WINSTEAD PC**
401 Congress Avenue, Suite 2100
Austin, Texas 78701-3619
512-370-2800
512-370-2850 (Facsimile)

Kevin T. Keen
Texas Bar No. 24113386
kkeen@winstead.com
**WINSTEAD PC**
24 Waterway Avenue
Suite 500
The Woodlands, Texas 77380
(281) 681-5900
(281) 681-5901 (facsimile)

***ATTORNEYS FOR THIRD-PARTY
DEFENDANT, ALDER AQUA, LTD.***

## CERTIFICATE OF SERVICE

I certify that on January 2, 2020, this document was filed and served via the Court's ECF system and that a copy was sent via electronic mail to all counsel of record for whom the ECF system did not send an automatic Notice of Electronic Filing.

  /s/ John P. Kincade
One of Counsel

Appendix to Third-Party Defendant Alder Aqua, Ltd.'s Motion to
Stay Discovery or, Alternatively, for Protective Order, and Brief in Support      Page 2

4832-9401-7456v.1

# 1

APP00001

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff, | § | |
| | § | |
|  v. | § | |
| | § | |
| | § | Civil Action No. 3:19-CV-00764-X |
| LESLIE A. WULF, ET AL., | § | |
|     Defendants. | § | |
| | § | |

**DECLARATION OF JOHN KINCADE**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

I, John Kincade, counsel of record for Alder Aqua, Ltd, declare:

"My name is John Kincade.  I have personal knowledge of the matters set forth and/or make them upon information and belief.

1.  On December 4, 2019, Alder Aqua filed its Motion to Dismiss Amended Third-Party Complaint under Rule 12(b) (Dkt. 219) and Brief in Support (Dkt. 220) and its Motion to Strike Amended Third-Party Complaint (Dkt. 223) and Brief in Support (Dkt. 224).

2.  Third-Party Plaintiffs served Alder Aqua on December 3, 2019 with 98 written requests for production due on January 2, 2020 as reflected in the email communication attached as Exhibit A to this Declaration.

3.  In connection with the filing of the foregoing motion, Alder is lodging its objections to those requests for production.  As of today, Alder has incurred attorney fees of approximately $11,000 in responding and objecting the document requests.

4.  In that same December 3, 2019 communication Third-Party Plaintiffs requested Alder present for deposition two individuals who are unserved, third-party defendants in this lawsuit.  These two individuals formerly served as members on Plaintiff VBF's board of directors.

5.  On information and belief, each individual is neither a citizen nor a resident of the United States, and each individual resides in Europe.

6. Winstead does not and has not represented either individual in this lawsuit.

7. Alder denies that either individual is its 'representative' for purposes of a party deposition. Nonetheless if Alder is required to present either of them for deposition, and although the Third Party Defendants have indicated a willingness to travel to the individual, Alder will likely incur travel expenses of $10,000 or more, including roundtrip airfare, lodging, meals, local travel, and incidentals. This estimate is based on round trip business class airfare, five nights lodging, transportation and meals, and is supported by the attached travel information.

8. In addition, Alder would incur an estimated forty billable hours of time to prepare for and attend the depositions. Attorneys' fees would likely be between $22,000 and $24,000 for attorney time (40 hours at $550-$600 per hour).

9. Fees and expenses to travel to a European location for two depositions would likely exceed $30,000, and based on my estimates would be no less than $32,000 to $34,000.

10. Given the fact Alder has pending a dispositive Motion to Dismiss and a Motion to Strike, it is my opinion that it is not reasonable and would be an undue burden on Alder Aqua for it to incur over $30,000 in costs for two depositions before the Court decides the dispositive motions.

11. I declare under penalty of perjury of the laws of the State of Texas that the foregoing is true and correct."

Executed this 2nd day of January, 2020, in Dallas County, Texas.

John Kincade

Kincade Declaration in Support of Motion to Stay Discovery
January 2, 2020
Civil Action No. 3:19-CV-00764-X
4840-0921-0800v2

Page 2

APP00003

# EXHIBIT A

APP00004

| | |
|---|---|
| **From:** | Kincade, John |
| **To:** | "Annello, Kim"; Clark, Elliot |
| **Subject:** | RE: VBF v. Wulf, et al., Case No. 19-cv-00764-X -- Discovery Requests |
| **Date:** | Tuesday, December 10, 2019 7:46:45 PM |

Kim,

I was surprised to receive the attached discovery and inquiries on the eve of our filing Alder's response motions.  Nonetheless, please let me know a convenient time to confer this week or next regarding your requests.  I also want to understand the reference below to Eva Ebstein and Jens Haarkoetter as "Alder representatives"—I'm confused by that reference.  As you may know, Winstead does not represent either of those individuals.

Best regards,

**John Kincade**
Winstead PC
214.745.5707 *direct*
214.354.3011 *mobile*

---

**From:** Annello, Kim [mailto:KAnnello@uplawtx.com]
**Sent:** Tuesday, December 03, 2019 3:51 PM
**To:** Kincade, John; Clark, Elliot
**Subject:** VBF v. Wulf, et al., Case No. 19-cv-00764-X -- Discovery Requests

Counsel – Please see the attached discovery requests to Alder Aqua.  We would also like to set dates to depose Alder representatives, Eva Ebstein and Jens Haarkoetter.  As there are several counsel who need to coordinate dates and I expect we will need to discuss location logistics, I would hope to schedule these in February. Please provide available dates and proposed locations.

Elliot – I received your voice mail today and left you one in return. I am available today or tomorrow morning for a conference, if necessary.

Thank you,

*Kimberly D. Annello*
*Underwood Perkins, P.C.*
5420 LBJ Freeway, Suite 1900
Dallas, Texas   75240
(972) 788-3309 Direct
(972) 661-5691 Fax
(312) 543-3811 Cell
Kannello@uplawtx.com
www.underwoodperkins.com

*Your referrals are greatly appreciated and are the best compliments I could receive.*

**FIRM PRACTICE AREAS INCLUDE**
**APPELLATE ~ BANKRUPTCY ~ BUSINESS LITIGATION ~ CIVIL LITIGATION ~ CORPORATE TRANSACTIONS ~ ELDER LAW**
**EMPLOYEE BENEFITS ~ EMPLOYMENT ~ ESTATE PLANNING & PROBATE ~ FAMILY LAW ~ INTELLECTUAL PROPERTY**
**OIL & GAS ~ REAL ESTATE ~ TAX PLANNING & LITIGATION**

This communication may be protected by the attorney/client privilege and may contain confidential information intended only for the person to whom it is addressed. If it has been sent to you in error, please reply to the sender that you have received the message in error then delete this message without copying or reading it.

APP00006

# EXHIBIT B

APP00007

**American Airlines** ✈

🇺🇸 English ▾    Search aa.com    🔍

Plan Travel    Travel Information    AAdvantage    oneworld

# Choose flights

« New search

## Depart Dallas/ Fort Worth, TX to Zurich, Switzerland
Monday, February 3, 2020

ⓘ American Airlines flights may be listed first.

Product comparison

| | Lowest Fare | Flexible | ‹ | Sat, Feb 01 $ 2,519 | Sun, Feb 02 $ 2,529 | Mon, Feb 03 $ 2,596 | Tue, Feb 04 $ 2,978 | Wed, Feb 05 $ 2,968 | › |

Sort by: Relevance

| | | | Main Cabin | Premium Economy | Business | First |
|---|---|---|---|---|---|---|

| DFW 6:00 AM → ZRH 8:50 AM | 19h 50m 1 stop | DFW - PHL ▪ AA 2562 ▪ 757-Boeing 757 PHL - ZRH ▪ AA 92 ▪ 788-Boeing 787 📶 ⚠ Overnight flight or connection Details \| Seats | Round trip $ 2,596 | Round trip $ 2,995 | Round trip $ 7,665 3 seats left | Not available |
| DFW 8:50 AM → ZRH 8:50 AM | 17h 0m 1 stop | DFW - PHL ▪ AA 2340 ▪ 757-Boeing 757 PHL - ZRH ▪ AA 92 ▪ 788-Boeing 787 📶 ⚠ Overnight flight or connection Details \| Seats | Round trip $ 2,596 | Round trip $ 2,995 | Round trip $ 7,665 3 seats left | Not available |
| DFW 10:40 AM → ZRH 8:50 AM | 15h 10m 1 stop | DFW - PHL ▪ AA 235 ▪ 757-Boeing 757 PHL - ZRH ▪ AA 92 ▪ 788-Boeing 787 📶 ⚠ Overnight flight or connection Details \| Seats | Round trip $ 2,596 | Round trip $ 2,995 | Round trip $ 7,665 2 seats left | Not available |
| DFW 12:25 PM → ZRH 8:50 AM | 13h 25m 1 stop | DFW - PHL ▪ AA 1328 ▪ 788-Boeing 787 📶 PHL - ZRH ▪ AA 92 ▪ 788-Boeing 787 📶 ⚠ Overnight flight or connection Details \| Seats | Round trip $ 2,596 | Round trip $ 2,995 | Round trip $ 7,665 2 seats left | Not available |

| DFW | ZRH | 14h 50m | | | | |
|---|---|---|---|---|---|---|
| 8:30 PM → 6:20 PM | | 1 stop | Round trip $2,609 | Round trip $3,008 | Round trip $8,078 | Not available |

DFW - LHR ▪ AA 78 ▪ 772-Boeing 777 🛜
LHR - ZRH ▪ AA 6565 ▪ 320-Airbus A320
Operated by British Airways

⚠ Overnight flight or connection, Change terminals

Details | Seats

| DFW | ZRH | 13h 5m | | | | |
|---|---|---|---|---|---|---|
| 10:15 PM → 6:20 PM | | 1 stop | Round trip $2,609 | Round trip $3,008 | Round trip $7,678 | Round trip $8,708 |

DFW - LHR ▪ AA 6153 ▪ 744-Boeing 747
Operated by British Airways

LHR - ZRH ▪ AA 6565 ▪ 320-Airbus A320
Operated by British Airways

⚠ Overnight flight or connection

Details

| DFW | ZRH | 18h 56m | | | | |
|---|---|---|---|---|---|---|
| 6:54 AM → 8:50 AM | | 2 stops | Round trip $2,601 | Round trip $3,000 | Round trip $7,670 | Not available |

DFW - IND ▪ AA 188 ▪ 738-Boeing 737 🍴
IND - PHL ▪ AA 5245 ▪ CR7-Canadair RJ 700 🛜
Operated by PSA Airlines As American Eagle

PHL - ZRH ▪ AA 92 ▪ 788-Boeing 787 🛜

⚠ Overnight flight or connection, Change terminals

Details | Seats

| DFW | ZRH | 18h 56m | | | | |
|---|---|---|---|---|---|---|
| 6:54 AM → 8:50 AM | | 2 stops | Round trip $2,601 | Round trip $3,000 | Round trip $7,670 | Not available |

DFW - IND ▪ AA 188 ▪ 738-Boeing 737 🍴
IND - PHL ▪ AA 4508 ▪ E75-Embraer RJ-175 🛜
Operated by Republic Airways As American Eagle

PHL - ZRH ▪ AA 92 ▪ 788-Boeing 787 🛜

⚠ Overnight flight or connection, Change terminals

Details | Seats

| DFW | ZRH | 18h 56m | | | | |
|---|---|---|---|---|---|---|
| 6:54 AM → 8:50 AM | | 2 stops | Round trip $2,607 | Round trip $3,006 | Round trip $7,670 | Not available |

DFW - IND ▪ AA 188 ▪ 738-Boeing 737 🍴
IND - PHL ▪ AA 5054 ▪ CR7-Canadair RJ 700 🛜
Operated by PSA Airlines As American Eagle

PHL - ZRH ▪ AA 92 ▪ 788-Boeing 787 🛜

⚠ Overnight flight or connection, Change terminals

Details | Seats

| DFW | ZRH | 18h 50m | | | | |
|---|---|---|---|---|---|---|
| 7:00 AM → 8:50 AM | | 2 stops | | | | |

DFW - CLT ▪ AA 553 ▪ 321-Airbus A321 🛜

CLT - PHL    ≡    A...  33:19-cv-00764...
PHL - ZRH    ≡    AA 92    ≡    788-Boeing 787    🛜

⚠ Overnight flight or connection. Change terminals

Details    |    Seats

| Round trip | Round trip | Round trip | |
|---|---|---|---|
| $ 2,599 | $ 2,998 | $ 8,068 | Not available |

Show more
⌄

Showing 10 of 40



## Earn up to a $200 statement credit
Plus, 40,000 bonus miles after qualifying purchases with this credit card offer

Learn more ⧉

| Help | About American | Extras |
|---|---|---|
| Contact American | About us | Business programs |
| Receipts and refunds | Careers ⧉ | Gift cards ⧉ |
| FAQs | Investor relations ⧉ | American Airlines credit card |
| Agency reference | Newsroom ⧉ | Trip insurance |
| Cargo ⧉ | Legal, privacy, copyright | CoBrowse |
| Bag and optional fees | Combating human trafficking | |
| Customer service and contingency plans | Browser compatibility | |
| Conditions of carriage | Web accessibility | |

⧉ Link opens in new window. Site may not meet accessibility guidelines.

 

APP00010

**2**

APP00011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC. | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | No. 19-cv-00764-X |
| v. | ) | |
| | ) | |
| LESLIE A. WULF, BRUCE A. HALL | ) | |
| JAMES REA, JOHN E. REA, and | ) | |
| KEITH DRIVER, | ) | |
| | ) | Hon. Brantley Starr |
| Defendants/Counterplaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EVA EBSTEIN, JENS HARKOETTER | ) | |
| BJORN THELANDER, ANDERS | ) | |
| WESTER, NORMAN MCCOWAN, | ) | |
| DR. OTTO HAPPEL, and ALDER | ) | |
| AQUA, LTD. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

---

## FOUNDER DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS TO ALDER AQUA, LTD.

---

TO:   Third Party Defendant, Alder Aqua, Ltd., through its attorney, John Kincade, Winstead, LLP, 2728 N. Harwood Street, 500 Winstead Building, Dallas, Texas 75201, jkincade@winstead.com

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Third Party Plaintiffs, Leslie

A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), James Rea ("James Rea"), and John E. (Ted) Rea

("Ted Rea"), (collectively, "Founder Defendants") in the above-entitled and numbered cause,

and hereby serve their Request for Production of Documents to Third Party Defendant, Alder

Aqua, Ltd. ("Alder").  Alder is hereby required to produce the following described documents

**APP00012**

for inspection and copying at the offices of Underwood Perkins, PC, 5420 LBJ Freeway, Suite 1900, Dallas, Texas 75214, within thirty (30) days of service of this request. Unless otherwise stated, this request covers the period of January 1, 2014 to the present.

## INSTRUCTIONS

1.      Answer each request separately and fully in accordance with Rule 34 of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Northern District of Texas, and the Instructions and Definitions contained herein.

2.      Any word in the singular shall be construed in the plural and any word written in the plural shall be construed as a singular where necessary to facilitate complete answers.

3.      Your answer to each request should include all knowledge within your custody, possession or control. Where facts set forth in your responses or portions thereof are supplied upon information and belief rather than actual knowledge, so state and specifically describe or identify the source or sources of such information and belief. If any estimate can reasonably be made in place of unknown information, set forth your best estimate, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate is made. If you cannot respond to the request in full after exercising due diligence to secure the information requested, so state and respond to the fullest extent possible, specifying your inability to answer the remainder and state any information or knowledge you have concerning the unanswered portion.

4.      You are required to conduct a reasonable search of any and all responsive documents within your custody or control. The locations in which to search for such documents includes, but is not limited to, means or devices by which data is stored or preserved electrically, electronically, magnetically or mechanically, and native production of any such responsive document located through such means or devices must include the program or software from which the document was created or stored. Where native production is unnecessary to properly view, read or utilize the electronic data, a non-native production in .pdf or .tiff format is acceptable so long as all native material is maintained in its native format and can be produced upon further request.

5.      Each request and subpart are to be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete shall not excuse the failure to answer each request as fully as is presently possible. The omission of any document from the responses hereto shall be deemed a representation that such document did not exist or was not known to Plaintiff and/or counsel at the time of service of the responses.

6.      To the extent any request is objected to, set forth all reasons for your objection with specificity. If you claim privilege as a ground for not answering any request in whole or in part, describe the factual basis for your claim of privilege, including relevant dates and persons

involved, in sufficient detail so as to permit the Court to adjudicate the validity of the claim. If you object in part to any request, answer the remainder completely.

7.      If you withhold any information or documents on the grounds of privilege, provide a privilege log that identifies the following:

      a)      The author(s), addressee(s), recipient(s) or distributee(s), title, type of document (e.g., memorandum, letter or report) present custodian, location and date of all such information or documents;

      b)      All other persons who have seen or learned of all or part of any such information or documents;

      c)      The method by which, and reasons why, each such person obtained access to such information or documents;

      d)      A description of each subject discussed, described or referred to in such information or document; and

      e)      The specific basis for your claim of privilege.

8.      Where knowledge, information or documents in your custody, control or possession is requested or referred to, such requests includes knowledge, information or documents in the custody, control or possession of you of your agents, employees, representatives and attorneys, including your counsel of record.

9.      If any document was, but no longer is, in the possession of or subject to the control of Plaintiff, state whether it:

      a)      Is missing or lost;

      b)      Has been destroyed;

      c)      Has been transferred, voluntarily or involuntarily, to others;

      d)      Has been otherwise disposed of; and

      e)      In each instance, explain the circumstances surrounding such disposition and state the date or approximate date thereof.

10.      These requests are continuing in character and must be supplemented to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Texas.

11.      Documents that were generated, or have ever been stored, in computer-readable electronic form should be produced as follows:

      1)      All documents should be produced as single page Bates numbered, Group IV TIFF file(s) with accompanying control file(s) in Concordance Image/Opticon format or equivalent format, all made directly from the electronic files (and not made from scanned hard copy versions or printouts). You should also provide accompanying Concordance Load files with all accompanying data (including, but not limited to, Bates number information, document/file attachment information, all extracted text, and all available metadata. Bates number information should include the starting and ending Bates numbers for each document. Document/file attachment information should include, in two separate fields, the starting

Bates number for the primary document and the ending Bates numbers for the last attachment. Separate extracted text (.txt) files containing extracted text for each document should also be produced and organized in a manner that is compatible with the Concordance load files. The Concordance load files should clearly indicate the custodian (generally the person from whose file system the file is taken or the network location of the file) of each document.

2)       In addition to the above Concordance load file and TIFF image files for all documents produced, separate and additional copies of documents in native format should also be produced for the following types of files: word processing files (e.g., Word, WordPerfect), spreadsheet files (e.g., Microsoft Excel), presentation files (e.g., Microsoft PowerPoint), and Adobe PDF files. These files should be produced with all "basic metadata" intact. They should also have intact all "track changes" information (including any related information such as author of the changes, and whether the changes were accepted or rejected).

3)       If any electronic documents are incapable of being produced in the aforementioned manner, you are requested to contact counsel for Founder Parties to discuss appropriate alternatives.

12.       **"Electronic Message"** means any electronic text or media content exchanged between two or more uses of a software application. Electronic messages include both SMS messages sent over cellular networks and messages sent over the Internet using applications such as WhatsApp, iMessage, Facebook Messenger, Twitter (via direct message), Slack, Google Chat and many others. Electronic Messages as defined herein, shall be produced in a searchable format that preserves the presentational features of the original messages, such as emojis, images, video files, animations and the like. Electronic message must not be converted to rasterized or non-unitized file formats such as PDF or TIFF. In general, messages should be produced in the same format as that in which they were exported for purposes of collection, search or review. As a general rule, messages can be produced in CSV (Comma Separate Values) or JSON (JavaScript Object Notation) format.

13.       Where no native electronic form of responsive documents exists, responsive documents should be produced as single page TIFF file(s) and accompanying control file(s) in Concordance Image/Opticom format or equivalent format. You should also produce accompanying Concordance load files with Bates number information and document/file attachment information. Any corresponding optical character recognition (OCR) versions of these files that you have already generated or to which You have access should be produced concurrently. Separate .txt files containing text captured using OCR for each document should also be produced and organized in a manner that is compatible with the Concordance load files. The Concordance load files should clearly indicate the custodian (generally the person from whose paper files the document was taken or a description of where the document was located) of each document.

## DEFINITIONS

1. **Plaintiff**" or "**VBF**" shall refer to VeroBlue Farms USA, Inc., and its agents and employees, the Plaintiff in this lawsuit and includes VBF Operations, Inc., VBF Transport, Inc., VBF IP, Inc., and Iowa's First, Inc.

2. "**You**," "**Your**," "**Alder**" shall mean Alder Aqua, Ltd., one of the third party defendants in the Lawsuit, together with any agent, officer, employee, representative, consultant, attorney, or other person acting under the direction or supervision of such party, subject to the control of such party, or representing such party, in any capacity for any purpose.

3. "**Complaint**" shall refer to the operative complaint *VeroBlue Farms USA, Inc. v. Wulf et al.,* Case No. 19-cv-0764-X pending in the Northern District of Texas.

4. "**Lawsuit**" shall refer to the above-captioned matter, *VeroBlue Farms, USA, Inc. v. Wulf, et al*., both while it was pending the United States District Court for the Northern District of Iowa as case No. 3:18-CV-3047-LTS, and since it has been pending in the United State District Court for the Northern District of Texas, as Case No. 18-CV-0764-X.

5. "**TPC**" shall refer to the operative third-party claim filed by Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, John E. ("Ted") Rea against You and others in *VeroBlue Farms USA, Inc. v. Wulf, et al.,* Case No. 3:19-cv-0764-X (Dot. Nos. 66 and 169)

6. "**Defendants**" shall mean any of the Defendants to the lawsuit.

7. **"Document"** or **"documents"** shall mean every **"document"** within the widest permissible scope of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original) of every writing or recording of every kind or description, whether handwritten, typed, drawn, sketched, printed, or recorded or maintained by any physical, mechanical, electronic, or electrical means whatsoever, including, without limitation, Electronic Messages, as defined previously, electronic communications or databases, emails (including, without limitation, received emails, sent emails, and deleted emails together with all attachments), text messages, social media (including but not limited to posts or messages from or on Facebook, Twitter, LinkedIn, Instagram, Snapchat, and WhatsApp), SMS, MMS, BBM, or other instant message system or format, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, notebooks, worksheets, reports, lists, analyses, summaries, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, calendars, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agendas, check books, canceled checks, receipts, agreements, applications, offers, acceptances, proposals, purchase orders, invoices, written, electronic or otherwise recorded memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, film strips, tapes and recordings, any electronically stored information and all metadata relating to electronically stored information. Each non-identical original or copy of a document, as well as each non-identical storage medium, is a separate document. This

discovery request applies to all documents created, received, or known by the responding party as of the date of the response to this discovery request.

8.      "**Amstar**" shall mean Amstar Group LLC, together with any agent, officer, employee, representative, consultant, attorney, or other person acting under the direction or supervision of such party, subject to the control of such party, or representing such party, in any capacity for any purpose.

9.      "**Happel**" shall mean Dr. Otto Happel, and his agents, representatives, attorneys, or other persons acting under his direction or supervision, including, but not limited to, entities referred to as: "Avion AG & Co KG," "Posteo," the email address "Poste.de", and/or "Lufin Partners".

10.      "**Haarköetter**" shall mean Jens Haarköetter and his agents, representatives, attorneys, or other persons acting under his direction or supervision, including, but not limited to, entities referred to as: "Avior AG & Co KG," "Posteo," the email address "Poste.de", and/or "Lufin Partners".

11.      "**Ebstein**" shall mean Eva Happel Ebstein, and her agents, representatives, attorneys, or other persons acting under her direction or supervision, including, but not limited to, entities referred to as "Chronos Swiss," "DNW," or any entity using the email address ending in "ebstein.com."

12.      "**Wester**" shall mean Anders Wester, and his agents, representatives, attorneys, or other persons acting under his direction or supervision.

13.      "**McCowan**" shall mean Norman McCowan, and his agents, representatives, attorneys, or other persons acting under his direction or supervision.

14.      "**Thelander**" shall mean Bjorn Thelander, and his agents, representatives, attorneys, or other persons acting under his direction or supervision.

15.      "**Sheriff**" shall mean Rick Sheriff and his agents, representatives, attorneys, or other persons acting under his direction or supervision.

16.      "**Directors**" shall mean one or more of Terry Lyons, Kenneth Lockard, Gregg Sedun, Jens Haarkoetter, Bjorn Thelander, Anders Wester, Alan Sutherland, and anyone else who, at any relevant time, was on the board of directors of VBF.

17.      "**BAJJER Stock Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

18.      "**American Growth Funding Loan Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

19.   "**Wulf Lake House Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

20.   "**Sedun Stock Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

21.   "**Compensation Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

22.   "**Christine Gagne Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

23.   "**Tractor-Trailer Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

24.   "**OFA Scheme**" shall mean the allegation raised against Defendants as set forth in the Complaint.

25.   "**Broadmoor**" shall mean Broadmoor Financial, L.P. and all amendments, modifications, extensions thereto.

26.   "**Amstar Loan Documents**" shall mean that certain Loan Agreement between VBF and Iowa's First Inc. as borrowers, the subsidiaries of the borrowers as guarantors, and Amstar as agent and lender dated July 7, 2016, as amended by that First Amendment to the Loan Agreement dated June 27, 2017, and as further amended by that Second Amendment to the Loan Agreement dated September 21, 2017, and that certain Security Agreement dated July 7, 2016, and all amendments, modifications, extensions thereto.

27.   "**Broadmoor Loan Documents**" shall mean the agreement whereby Amstar sold to Broadmoor all right, title and interest in the Amstar Loan Agreement and all amendments, modifications, extensions thereto.

28.   "**Grower Model**" shall mean a program through which VBF would chose designated growers of fish and those designated growers would use their own farmland, capital, and skilled labor force to create a supply of fish for VBF and, in return for the supply of fish, VBF would make certain payments according to an index on trailing sales.

29.   "**Corporate-Owned Model**" shall mean a program through which VBF would build out and own all of the facilities used in VBF's business and would create a supply of fish from start to finish.

30.   "**Bankruptcy Proceeding**" means the Chapter 11 proceeding filed by VBF and certain of its subsidiaries, styled *In re: VeroBlue Farms USA, Inc. et al.*, Case No. 18-01297, pending in the United States Bankruptcy Court for the Northern District of Iowa.

31.     "**Person**" means any individual, partnership, sole proprietorship, corporation, government or governmental body, commission, board, agency, or any other entity or any director, officer, shareholder, employee, agent, representative, and attorney thereof.

32.     "**Regarding**" or "**related to**" or "**relating to**" shall mean mentioning, referring to, applying to, containing, enumerating, involving, or in any way concerning, in whole or part, directly or indirectly.

33.     "**Regarding**" or "**related to**" or "**relating to**" shall mean mentioning, referring to, applying to, containing, enumerating, involving, or in any way concerning, in whole or part, directly or indirectly.

34.     The term "**date**" means the exact year, month and date, if known or, if not, your best approximation thereof.

35.     As used herein the term "**all**" refers to any and all, and the term "**any**" likewise refers to any and all.

36.     The term "**and**" as well as "**or**" shall be construed either disjunctively or conjunctively as necessary to being within the scope of this request any document which might otherwise be construed to be outside its scope.

37.     The relevant timeframe for these requests is **January 1, 2014, to present.**

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**  All Documents and non-privileged communications relating to the BAJJER Stock Scheme allegation in the Complaint.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**  All Documents and non-privileged communications relating to the American Growth Funding Loan Scheme allegation in the Complaint.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**  All Documents and non-privileged communications relating to the Wulf Lake House Scheme allegation in the Complaint.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**  All Documents and non-privileged communications relating to the Sedun Stock Scheme allegation in the Complaint.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**  All Documents and non-privileged communications relating to the Compensation Scheme allegation in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**  All Documents and non-privileged communications relating to the Christine Gagne Scheme allegation in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**  All Documents and non-privileged communications relating to the Tractor-Trailer Scheme allegation in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**  All Documents and non-privileged communications relating to the OFA Scheme allegation in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants misappropriated VBF cash and other assets in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants fraudulently concealed any alleged misappropriations or other misconduct in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants expended VBF funds or assets during a July 2014 trip "to Denver, Colorado in relation to a non-VBF business known as ChipMeds, Inc." in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:**  All Documents and non-privileged communications relating to VBF's allegation that Wulf's personal cell phone bills were "well beyond a reasonable amount, or even the amount expensed by the other Defendants" in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**   All Documents and non-privileged communications relating to VBF's allegation that James Rea expended VBF funds or assets on his personal living expenses in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**   All Documents and non-privileged communications relating to VBF's allegation that Defendants expended VBF funds or assets on "exorbitant travel expenses…to or from Canada or Texas to Webster City, Iowa" in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**   All Documents and non-privileged communications relating to VBF's allegation that Defendants expended VBF funds or assets on "the unnecessary leasing of twenty-two company vehicles, including Ford Explorers for Defendants' personal use" in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**   All Documents and non-privileged communications relating to VBF's allegation that Defendants expended VBF funds or assets on "payment of personal travel expenses for Defendants and some or all of Defendants' friends and family, including trips to Australia and Norway" in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**   All Documents and non-privileged communications relating to VBF's allegation that Defendants expended VBF funds or assets on "directing VBF's controller to perform accounting services for the Defendants' non-VBF business ventures while on VBF company time and while he was being paid by VBF" in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**   All Documents and non-privileged communications relating to VBF's allegation that the house in Webster City, Iowa "was worth $240,000, if not less" in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**   All Documents and non-privileged communications relating to VBF's allegation that the house in Webster City, Iowa "was not necessary for legitimate business reasons" in the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**  All Documents and communication relating to any instance in which any Alder representative, including Happel, Ebstein, Thelander, Haarkoetter and/or Wester, stayed at the Webster City, Iowa house while on VBF business.

　　　　**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants expended VBF funds or assets on "other improper expenditures … for some or all of Defendants' personal expenses" in the Complaint.

　　　　**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants violated their fiduciary duty of due care by "overbuilding [VBF's] facilities" in the Complaint.

　　　　**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants violated their fiduciary duty of due care by "presenting highly flawed and intentionally manipulated business plans" in the Complaint.

　　　　**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants violated their fiduciary duty of due care by "mismanaging technology" in the Complaint.

　　　　**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants violated their fiduciary duty of due care by "mismanaging capital expenditures" in the Complaint.

　　　　**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26:**  All Documents and non-privileged communications relating to VBF's allegation that Defendants violated their fiduciary duty of due care by "mismanaging other financial and operational issues" in the Complaint.

　　　　**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:**    All Documents and non-privileged communications relating to VBF's allegation that Defendants violated their fiduciary duty of due care by "overpaying for real and personal property" in the Complaint.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28:**    All Documents and non-privileged communications relating to VBF's allegation that Defendants violated their fiduciary duty of due care by "squandering what had been an investment of approximately $100,000,000 in debt and equity in VBF" in the Complaint.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:**    All Documents and non-privileged communications referring or relating to the Broadmoor Loan Documents.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:**  All Documents and communications related to the Amstar Loan Documents, including but not limited to, any notices of default or nonpayment of such Loan, and any presentation to Alder related to any default by VBF under the Amstar Loan Documents.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:**  All Documents and Communications between Alder and any representative of VBF, Amstar or Broadmoor that refer or relate to Defendants.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:**    All Documents and non-privileged communications referring or relating to Alder's investigation of Defendants and/or the allegations of the Complaint, including but not limited to, retention correspondence with third parties, internal investigations, reports and/or compliance memoranda.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:**  All Documents and communications between You and any other Third-Party Defendant (Happel, Ebstein, Haarkoetter, Wester, or McCowan) referring or relating to any of the allegations of the Complaint and/or the Third-Party Complaint.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:** All Documents and communications between You and any representative of Amstar referring or relating to any of the allegations of the Complaint and/or the Third-Party Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:** All Document and communications between You, on the one hand, and any representative, agent or principal of M Consult, LLC, on the other hand, referring or relating to Defendants and/or VBF.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:** All Documents and non-privileged communications referring or relating to Your approval, as a majority shareholder, of VBF's pursuit of a Grower Model program.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:** All Documents and non-privileged communications referring or relating to Your approval, as majority shareholder, of VBF's pursuit of a Corporate-Owned Model program.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:** All Documents and non-privileged communications referring or relating to VBF's efforts to restructure the Amstar secured debt, specifically including, but not limited to, to ING Bank's offer of a term sheet to VBF at an interest rate of 4.5%.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:** All Documents and non-privileged communications referring or relating to Alder's exercise of warrants for VBF stock.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:** All Documents and non-privileged communications referring or relating to any agreement between Alder and Amstar regarding Alder's exercise of warrants for VBF stock in connection with Amstar's extension of credit to VBF.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:**  All Documents and communications regarding any and all allegations of impropriety or misconduct by Haarköetter, by You, VBF, the VBF Board, including, but not limited to, retention correspondence with third parties, internal investigations, reports and/or compliance memoranda.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:**  All Documents and communications regarding Your knowledge of any and all VBF employee complaints against Haarköetter.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:**  All Documents and communications regarding Your negotiation of Defendants' compensation at VBF.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:**  All Documents and communications regarding Your negotiation, compliance, and/or refusal to comply of Defendants' separation agreements with VBF.

> **RESPONSE**

**REQUEST FOR PRODUCTION NO. 46:** All Documents and communications relating to Your approval, as controlling shareholder, of VBF's decision not to pay B. Hall and T. Rea amounts due under their Termination Agreement (as that term is defined in the TPC) between October 27 and November 15, 2017.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:**  All Documents and communication relating to Your approval, as a controlling shareholder, of VBF's decision to pay Leslie Wulf amounts set forth in his Separation Agreement (as that term is defined in the TPC) after December 1, 2017, including but not limited to, payment of COBRA premiums.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:**  All Documents and communication relating to Your approval, as controlling shareholder, of VBF's decision to terminate James Rea for "Egregious Cause" on or about January 8, 2018.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:**  All documents and communications that relate to any representation of VBF's FCR (as that term is defined in Complaint ¶ 58) that You relied upon in connection with Your investment in VBF.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:**  All documents and communications that relate to any representation of VBF's stocking density (as that term is defined in Complaint ¶ 59) that You relied upon in connection with Your investment in VBF.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:**  All documents and Communications that relate to Your decision, as majority or controlling shareholder of VBF, to increase stocking density as represented in VBF's financial model.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:**  All documents and communications that relate to any representation of VBF's Mortality Rates (as that term is defined in Complaint ¶ 60) that You relied upon in connection with Your investment in VBF.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:**  All documents and communications that relate to any representation of VBF's Water Quality (as that term is defined in Complaint ¶ 60) that You relied upon in connection with Your investment in VBF.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:**  All documents and communications that relate to any representation of VBF's EBITDA (as that term is defined in Complaint ¶ 60) that You relied upon in connection with Your investment in VBF.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:** All communication between You and any of the Defendants to the Lawsuit, after January 1, 2017.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:** All Documents and communication relating to Your approval, as controlling shareholder, of VBF's decision to disregard the releases provided to B. Hall and T. Rea in their Termination Agreements (as that term is defined in the TPC).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:** All Documents and non-privileged communications between You and any party to the Bankruptcy Proceedings that relates to Defendants, the Lawsuit, the Complaint or the TPC.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:** All documents and communications that relate to any damages that VBF and/or Alder incurred resulting from the Creditors Committee Challenge Notice and/or the participation of the Ad Hoc Equityholders' Committee in the Bankruptcy Proceeding (as alleged in Paragraphs 176-187.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:** All documents and communications that relate to Your decision, as controlling shareholder of VBF, to engage Jackson Walker as counsel for VBF in negotiating termination agreements for any of the Defendants**.**

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:** All documents and communications that related to Your decision, as controlling shareholder of VBF, to involve Davis Graham & Stubbs as counsel for VBF in negotiating termination agreements for any of the Defendants.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:** All documents and communications that evidence any facts that were withheld from You, as controlling shareholder of VBF, in connection with the negotiations and execution of termination agreements with any of the Defendants.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:** All Documents and communications that relate to Your approval of VBF's euthanization of fish at any time since January 1, 2018, including but not limited to, the euthanization that took place on or about December 8, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:** All Documents and communications that relate to Your approval of VBF's decision to import clove oil from Australia to euthanize fish and who was responsible for that decision.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 64:**  All Documents and communications that relate to Your approval of VBF's sale of euthanized fish for direct human or animal consumption and/or the sale of euthanized fish for used in feed for human or animal consumption.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 65:** All Documents and communications that evidence any revenue earned by VBF since September 1, 2018.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 66:** All Documents and communications that evidence any proceeds that VBF obtained from the sale of its assets since January 1, 2018.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 67:** All Documents and communications that evidence the use of any proceeds that VBF obtained from the sale of its assets since January 1, 2018.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**   All Documents and communications that relate to any investigation, interest, due diligence, modeling, inquiry or review conducted by Generation Investment Management into VBF, including but not limited to, all documents exchanged between You and/or GIM.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 69:**  All documents and communications that relate to any person or party who may be indemnifying You in relation to the TPC.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 70:**   All documents and communications that relate to any person or party who may be paying Your legal expenses in connection with the TPC.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:** All engagement letters with any counsel that you have retained to represent you in connection with the TPC.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:** All devices, including but not limited to, cell phones, tablets, laptop computers, that may contain Electronic Messages that reference Defendants, the Complaint and/or the TPC.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 73:** All documents that evidence any compensation that You paid to any individual in connection with services provided to VBF from July 2016 through present, including but not limited to, salary, bonus, benefits, stock, deferred compensation or any indirect benefits.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 74:** All documents that evidence any profit, loan repayment or other compensation that You received from VBF from July 2016 through present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 75:** All documents and communications that evidence Your receipt of or Your reliance upon the April 2016 written representations, referenced in ¶¶ 131, 145 and Ex. 28 to the complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 76:** All documents and communications that relate to any investment that You made into VBF, in reliance on Defendant's representations.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 77:** All documents and communications that evidence Your communication of representations made by Defendants to Amstar in connection with Amstar's loans to VBF.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:** All documents and communication that relate to Your decision as controlling shareholder in VBF to cease VBF's business.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 79:** All documents and communications that evidence VBF's allegations that the Alder representatives on VBF's Board would have sought to cease VBF's business, but for Defendant's fraud concealment, as alleged in ¶ 54 of the Complaint.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 80:** All documents and communications that relate to Your decision, as majority or controlling shareholder of VBF, to approve VBF's draws on the Amstar loan.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 81:** All documents and communications that relate to Your decision, as majority or controlling shareholder of VBF, to approve the uses of funds obtained from VBF's draws on the Amstar loan, including but not limited to, payments to Canaccord Genuity, Keith Driver, Rick Sherriff, and termination payments to Hall, T. Rea and Wulf.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 82:** All documents and communications that relate to Your decision, as majority or controlling shareholder of VBF, to value the Rick Sherriff's shares in VBF at $.28 per share as of July 2016, including but not limited to, any valuation reports that VBF obtained to support this share value.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 83:** All documents and communications that relate to any valuation of VBF's shares that You reviewed or relied on in connection with Your investment in VBF.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 84:** All documents and communications that relate to Your decision, as majority or controlling shareholder of VBF, to approve of the engagement of, retention of, and/or payment of Pranger Enterprises or its related entities.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 85:** All documents and communications that relate to your decision, as agent of Amstar to refuse requests from VBF to make draws on the Amstar loan.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 86:** All documents and communications that evidence any relationship with Alder, Amstar, or Happel on the one hand, and Broadmoor or Dr. Rolf Ruhfus, on the other hand.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 87:** All documents and communications that evidence any representative of Alder holding a position as officer, employee, director or agent of Amstar between July 2016 and present.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 88:**   All documents and communications exchanged between You and Amstar and/or Broadmoor that relate to allegations of misconduct against Defendants.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 89:**   All Documents and communications that relate to Ebstein's direction to "try and avoid" payments to Defendants as set forth in her November 6, 2017 email to You attached as Exhibit E to the TPC.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 90:**   All Documents and communications that relate to Ebstein's statement in her November 6, 2017 email (TPC Ex. E) that "OH would like to address everything that is urgent, but still no start going over-board with too generous funding."

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 91:**   All Documents and communications that relate to Alder's appointment of Ebstein to the VBF Board of Directors.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 92:**   All Documents and communications that relate to Alder's appointment of Haarkoetter to the VBF Board of Directors.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 93:**   All Documents and communications that relate to Alder's appointment of Wester to the VBF Board of Directors.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 94:**   All Documents and communications that relate to Alder's appointment of Thelander to the VBF Board of Directors.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 95:**   All Documents and communications exchanged between Alder and Ebstein, after Ebstein's appointment to the VBF Board of Directors.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 96:**   All Documents and communications exchanged between Alder and Haarkoetter, after Haarkoetter's appointment to the VBF Board of Directors.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 97:**   All Documents and communications exchanged between Alder and Wester after Wester's appointment to the VBF Board of Directors.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 98:**   All Documents and communications exchanged between Alder and Thelander, after Thelanders's appointment to the VBF Board of Directors..

> **RESPONSE:**

Dated: December 3, 2019                    Underwood Perkins, P.C.


                                           */s/ Kimberly D. Annello*
                                           Kimberly D. Annello
                                           State Bar No. 24093704
                                           Two Lincoln Centre
                                           5420 LBJ Freeway, Suite 1900
                                           Dallas, Texas 75240
                                           Telephone:     (972) 661-5114
                                           Facsimile:     (972) 661-5691
                                           Email: kannello@uplawtx.com

                                           Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon all counsel of record, as listed below, via e-serve and/or email, on this 3rd day of December, 2019.

> John Kincade
> Elliot Clark
> Winstead P.C.
> 2728 N. Harwood Street
> 500 Winstead Building
> Dallas, Texas 75201
> jkincade@winstead.com
> eclark@winstead.com

*/s/ Kimberly D. Annello*
Kimberly D. Annello
