# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VeroBlue Farms USA Inc., | § | |
|    Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| Leslie A. Wulf, Bruce A. Hall, James | § | |
| rea, John rea, and Keith Driver, | § | |
|    Defendants/Third Party | § | Civil Action No. 3:19-cv-00764-L |
| Plaintiffs, | § | |
| | § | Hon. Brantley Starr |
|    v. | § | |
| | § | |
| Eva Ebstein, Jens Haarkoetter, Bjorn | § | |
| Thelander, Anders Wester, Norman | § | |
| McCowan, Dr. Otto Happel and Alder | § | |
| Aqua, Ltd. | § | |
|    Third-Party Defendants, | | |

## FOUNDER DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     The Rule 9(b) Particularity Standard Applies to All of VBF's Claims Because Every Claim Incorporates or References Fraud, Concealment, or Misrepresentations. ...........................1

II.    Fraud Based on Concealment or Omission Still Must Meet 9(b). .......................................6

III.   The Myriad Fraud Allegations in the SAC Fail to Meet 9(b)............................................7

      A.    VBF's Collective Pleadings Against Founders Are Impermissible and Inadequate. ..................................................................................................7

      B.    Plaintiff's Allegations Must Not be Based on Speculation, Conclusory Allegations or "Information and Belief". ....................................8

      C.    VBF Fails to Adequately Identify Who Was Injured by Founders' Fraud, When they Were Injured, and How They Were Injured...........................11

IV.   VBF's Civil RICO Claim Should Be Dismissed (COUNT XXVI)....................................11

      A.    The SAC Fails to Specify the Allegedly Fraudulent Statements' Author or Speaker, Date, Place, and Reasons Why They Are Fraudulent. ..........................................................................................12

      B.    VBF Continues to Miss the Point-Any Predicate Act Not Plead With Sufficient Particularity Cannot Be Used As A Basis for a RICO Claim. ..............................................................................................13

         C.  VBF Has Failed to Plausibly Allege a RICO Enterprise. ......................................13

V.    Plaintiff Lacks Standing Under Fed R. Civ. P. 12 (B)(1). .................................................14

VI.   VBF Should Not Be Permitted Leave to Amended. .........................................................15

1524479v1 - V0265.00001 Founder Reply to VBF Respon MTD V2

<u>TABLE OF AUTHORITY</u>

PAGE(S)

CASES

ABN-AMRO MORTG. GROUP, INC. V. EMERSON MANUFACTURED HOMES, LTD.,
2005 WL 1949601 (S.D. TEX. AUG. 15, 2005) ........................................................ 12
BELL ATLANTIC CORP. V. TWOMBLY,
550 U.S. 544 (2007).................................................................................................... 15
BERRY V. INDIANAPOLIS LIFE, INS. CO.,
2011 WL 3555869 (N.D. TEX. AUG. 11, 2011)............................................................ 5
BONTON V. ARCHER CHRYSLER PLYMOUTH,
889 F. SUPP. 995 (S.D. TEX. 1995) ............................................................................ 6
BROWN V. WHITCRAFT,
2008 WL 2066929 (N.D.TEX.2008) ............................................................................ 3
CASTILLO V. FIRST CITY BANCORPORATION OF TEX., INC.,
43 F.3D 953 (5TH CIR. 1994)........................................................................................ 5
CHAU V. AVIVA LIFE AND ANNUITY CO.,
2011 WL 1990446 (N.D. TEX. MAY. 20, 2011)............................................................ 5
CLAPPER V. AM. REALTY INV'RS, INC.,
2016 WL 302313, N. 14 (N.D. TEX. JAN. 25, 2016) ................................................. 13
CYPRESS/SPANISH FT. I, L.P. V. PROF. SERV. INDUS., INC.,
814 F. SUPP. 2D 698 (N.D. TEX. 2011).......................................................................... 6
GE CAPITAL COMMERCIAL, INC. V. WRIGHT & WRIGHT, INC.,
2009 WL 5173954 (N.D.TEX.2009) ............................................................................ 4
GOLDSTEIN V. MCI WORLDCOM,
340 F. 3D 238 (5TH CIR. 2003)...................................................................................... 16
HALARIS V. VIACOM, INC., 3:06-CV-1646-N,
2007 WL 4145405 (N.D. TEX. SEP. 21, 2007) ............................................................ 6
IN RE CAPSTEAD MORTG. CORP. SEC. LITIG.,
258 F. SUPP. 2D 533 (N.D. TEX. 2003)........................................................................ 16
IN RE MASTERCARD INT'L, INC., INTERNET GAMBLING LITIG.,
132 F. SUPP. 2D 468 (E.D. LA. 2001) ........................................................................ 12
IN RE PARKCENTRAL GLOB. LITIG.,
884 F. SUPP. 2D 464 (N.D. TEX. 2012)........................................................................ 8
IN RE WALTER,
462 B.R. 698 (BANKR. N.D. IOWA, 2011)................................................................ 3
JAGUAR CARS, INC. V. ROYAL OAKS MOTOR CAR CO.,
46 F.3D 258 (3D CIR. 1995).......................................................................................... 14
JANVEY V. SUAREZ,
978 F. SUPP. 2D 685 (N.D. TEX 2013).......................................................................... 4
LIFE PARTNERS CREDITORS' TRUST V. BLACK DIAMOND LIFEPLAN FUND,
2017 WL 9934885 (N.D. TEX. NOV. 27, 2017).......................................................... 5
LITSON–GRUENBER V. JPMORGAN CHASE & CO.,
2009 WL 4884426 (N.D.TEX. DEC. 16, 2009)........................................................ 3, 7
NAT'L ORGANIZATION FOR WOMEN, INC. V. SCHEIDLER,

510 U.S. 249 (1994) ............................................................................................... 14

NORTHWEST BANK AND TRUST CO. V. FIRST ILLINOIS NAT'L BANK,
354 F.3D 721 (8TH CIR. 2003) ............................................................................. 3

RANIERI V. ADVOCARE INT'L, L.P.,
2019 WL 3207501 (N.D. TEX. JULY 16, 2019) .................................................. 14

RIVERA V. WYETH- AYERST LABS.,
283 F.3D 315 (5TH CIR. 2002) ........................................................................... 14

S.E.C. V. FRASER,
2010 WL 5776401 (D. ARIZ. JAN. 28, 2010) ...................................................... 7

SCHALLER TEL. CO. V. GOLDEN SKY SYS. INC.,
298 F.3D 736 (8TH CIR. 2002) ........................................................................... 4

SEC V. POWER,
525 F. SUPP. 2D 415 (S.D.N.Y. 2007) ................................................................ 8

STANISSIS V. DYNCORP INT'L LLC,
2015 WL 9478184 (N.D. TEX. DEC. 29, 2015) .................................................. 14

TEL–PHONIC SERVICES, INC. V. TBS INT'L, INC.,
975 F.2D 1134 (5TH CIR. 1992) ......................................................................... 13

THORNTON V. MICROGRAFX, INC.,
878 F. SUPP. 931 (N.D. TEX. 1995) ..................................................................... 9

TIGUE INV. CO. V. CHASE BANK OF TEX., N.A.,
2004 WL 3170789 (N.D. TEX. NOV. 15, 2004) ............................................... 2, 3

TRIPLEX COMMC'N, INC. V. RILEY,
900 S.W.2D 716 (TEX. 1995) .............................................................................. 4

TUCHMAN V. DSC COMMC'NS CORP.,
14 F.3D 1061 (5TH CIR. 1994) ........................................................................... 12

U.S. EX REL. THOMPSON V. COLUMBIA/HCA HEALTHCARE CORP.,
125 F.3D 899 (5TH CIR. 1997) ............................................................................ 8

UNIMOBIL 84 INC. V. SPURNEY,
797 F.2D 214 (5TH CIR. 1986) ............................................................................ 8

UNITED STATES EX REL. HENDRICKSON V. BANK OF AM., N.A.,
343 F. SUPP. 3D 610 (N.D. TEX. 2018) ............................................................... 8

WEXNER V. FIRST MANHATTAN CO.,
902 F.2D 169 (2D CIR. 1990) .......................................................................... 9, 10

WHELAN V. WINCHESTER PROD. CO.,
319 F.3D 225 (5TH CIR. 2003) .......................................................................... 13

WILLIAMS V. WMX TECHS, INC.,
112 F.3D 175 (5TH CIR. 1997) .......................................................................... 12


STATUTES

IOWA CODE §684.4(1)(A) ........................................................................................ 3


RULES

FED. R. CIV. P. 12(B)(1) ........................................................................................ 14
FED. R. CIV PROC. 9(B) ................................................................................. PASSIM

RULE 9 ................................................................................................................................ 3, 4

RULES 8 AND 9(B) ............................................................................................................... 7, 8

v

VBF plead and characterized this lawsuit as a massive fraud conducted by Founders.   But when faced with the reality that it has not adequately alleged fraud, now VBF tries to recharacterize its allegations as something less than "actual fraud".   However, VBF's entire case is based on fraud, misrepresentation and omissions, as made abundantly clear by the language employed in its Second Amended Complaint ("SAC"). VBF summarizes this point succinctly when they allege "the Founders' services to VBF, in whatever form, were premised on maintenance and perpetuation of a fraudulent scheme…" (SAC, p. 69 ¶ 267).   Raising such serious accusations imposes a heighted pleading obligation that VBF has not met.   Upon close reading of the SAC, it cannot be determined: 1) *who* (which individual Founder) did/said or omitted what; 2) *to whom* or *when* each statement or omission was made; and 3) what *injury* resulted from these purported misrepresentations. Accordingly, this Court must dismiss the SAC, as a more blatant disregard of the protections provided by Rule 9(b) Founders cannot imagine. Moreover, the SAC's vague and conclusory allegations reveal that VBF is not the party who was injured by Founders' purported misdeeds. VBF cannot recover for frauds that may have been committed against its current sole investor, nor for its former investors, lenders, no matter how grave. For these reasons, the SAC's claims against Founders must be dismissed.

## I.      The Rule 9(b) Particularity Standard Applies to All of VBF's Claims Because Every Claim Incorporates or References Fraud, Concealment, or Misrepresentations.

In its Response, VBF admits a critical legal conclusion: it has not alleged sufficient facts in its SAC to meet Rule 9(b)'s pleading with particularity requirement for claims sounding in fraud.   VBF deflects from this fatal flaw by arguing that 9(b) only applies to two of its claims because the other claims do not rely "solely" on fraud.   That argument is belied by VBF's voluminous allegations of fraud that are referenced and/or incorporated into every single one of

its claims.   Once this Court reviews the clear legal authority that Rule ((b) applies to each and every one of VBF's claims, then by VBF's own acknowledgement, the Second Amended Complaint is insufficient and must be dismissed.

VBF acknowledges that six of its 20 claims, those for fraudulent concealment, fraudulent misrepresentations, fraudulent transfer, and RICO (Counts II, III, V-VIII and XVII) may be subject to Fed. R. Civ Proc. 9(b), and thus, must be plead "with particularity." Fed. R. Civ. P. 9(b).   VBF asserts that the remaining claims do not "rely solely on fraud," and thus, disputes the application of Rule 9(b) to them.  (Resp. at 8.)

But VBF's own allegations indicate otherwise.   In every one of its 20 claims, VBF incorporates all 229 paragraphs of its factual allegations.  As Founders detailed in their Motion, there are 95 instances in the factual allegations alone where VBF alleges fraud, misrepresentation, and/or concealment. (Mot. to Dismiss, Dkt. No. 184, Ex. B., ¶¶ 1-95.) Every one of these allegations of fraud is incorporated in every one of VBF's claims. Moreover, the terms "fraud," "misrepresentation," or "concealment" are included in an additional 81 paragraphs to support all 20 of VBF's claims against Founders. (*Id.*, Ex. B., ¶¶ 96-177.)  By its own words, every one of VBF's claims is based on Founders' alleged fraud, misrepresentation, or omission.

While some of VBF's claims might occasionally by exempt from Rule 9(b) particularity requirements, the facts here unequivocally dictate 9(b) is in full force and effect for each of VBF's claims against Founders.   Where fraud is not the denominated claim, but the facts underlying the claim are inextricably intertwined with allegations of fraud, the complaint is subject to dismissal if it does not meet Rule 9(b) particularity requirements.  *See Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004).  VBF's claims are inextricably intertwined and underpinned by purported allegations of fraud.  ***Once fraud***

***is alleged, even if not a required element of the claim, then Rule 9(b) must be met with respect to the fraudulent conduct alleged***. *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004). Thus, by choosing to plead voluminous, far reaching, and aggressive fraud against Founders, VBF plead itself into meeting Rule 9(b) as well. Specifically:

**Breach of Fiduciary Duty (Count I).** VBF contends Founders breached their fiduciary duty by: "**self-dealing** and by **concealing their self-dealing**," "**continuously and systematically misrepresenting** the Metrics," and "**obfuscate[ing] the Founders' misconduct**; (SAC p. 61, ¶¶ 233, 235). Self-dealing and concealment of self-dealing are hallmarks of fraudulent conduct, as are systematic misrepresentations. Plaintiff's claims are premised on allegations of fraud and the pleadings are therefore subject to the heightened pleading standard of Rule 9(b). *Brown v. Whitcraft*, 2008 WL 2066929, * 4 (N.D.Tex.2008); s*ee Litson–Gruenber v. JPMorgan Chase & Co.,* No. 7:09–CV–056–O, 2009 WL 4884426, at *4–5 (N.D.Tex. Dec. 16, 2009) (applying Rule 9(b) to a breach of fiduciary duty claim).

**Iowa and Texas Statutory Voidable Transfer.** With respect to the Iowa statutory claims (Counts V, VI), Iowa Code §684.4(1)(a) ("Iowa UVTA") allows a plaintiff to avoid transfers that are incurred by either actual fraud or constructive fraud. Iowa court have distinguished between cases of actual fraud and constructive fraud in deciding whether the heightened pleading requirements of Rule 9 apply. *In re Walter*, 462 B.R. 698, 703 (Bankr. N.D. Iowa, 2011). Iowa federal courts have adopted the majority view and held that Rule 9(b) is inapplicable to constructively fraudulent transfers because intent or deceit is not an element of constructive fraud. *Id.* However, the Eighth Circuit has held that when a complaint alleges actual fraud as a basis for a voidable transfer, the heightened pleading requirements of Rule 9(b) do apply. *See Northwest*

*Bank and Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 727 (8th Cir. 2003); *see also Schaller Tel. Co. v. Golden Sky Sys. Inc.*, 298 F.3d 736, 746 (8th Cir. 2002).

Much like its Iowa counterpart, the Northern District of Texas distinguishes between intentional fraudulent transfer and constructive fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA") (Counts VII, VIII). *Janvey v. Suarez*, 978 F. Supp. 2d 685, 699 (N.D. Tex 2013); *GE Capital Commercial, Inc. v. Wright & Wright, Inc.,* 2009 WL 5173954, at *10 (N.D.Tex.2009), (noting receipt of funds fraudulently obtained is an allegation of a fraudulent act). Unlike *GE Capital*, however, here VBF has unambiguously alleged actual, intentional fraud as the basis for its TUFTA claims: "transfers were made with the actual intent to hinder, delay, or **defraud VBF**;" "Founders **misrepresented facts** related to the FCR;" "Founders **concealed facts** that would have alerted VBF and its creditors of the **misappropriation**;" "due to the **fraudulent scheme** and misrepresented facts related to the VBF business described above, VBF was insolvent from the beginning of that scheme and the commencement of the **misrepresentations**," and  "the Founders' services to VBF, in whatever form, were premised on **maintenance and perpetuation of a fraudulent scheme** (¶¶ 274, 277, 284).  When a claim under TUFTA is based on an underlying claim of actual fraud, not constructive fraud, a plaintiff must plead it's TUFTA claim with the specificity required in Rule 9(b). *See GE Capital,* 2009 WL 5173954, at *10.

**Conspiracy (Count IX).**  The essential elements of a civil conspiracy claim are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Triplex Commc'n, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Where the alleged conspiracy sounds in fraud, the complaint must satisfy the heightened pleading standards in Rule 9 of the Federal

Rules of Civil Procedure. *Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir. 1994).  VBF alleges: Founders agreed to engage **fraud, alleged** herein, for their personal benefit, to cause harm to VBF, while **concealing the same** from VBF, (¶ 290) while **making fraudulent misrepresentations**, and **fraudulent non-disclosures or concealments**. (¶ 291). Clearly VBF's civil conspiracy claim sounds in fraud and must meet Rule 9(b).

**Aiding and Abetting (Count X).**  When a claim for aiding and abetting is premised on a claim for fraud, a plaintiff must satisfy the requirements for Rule 9(b). *Life Partners Creditors' Trust v. Black Diamond Lifeplan* Fund, No. 4:17-cv-00225-O, 2017 WL 9934885, at *5 (N.D. Tex. Nov. 27, 2017). VBF alleges: "the Founders **knowingly and substantially assisted** each other in **their breaches of fiduciary duties** alleged herein, for their personal benefit, while **concealing the same.**" (¶ 296) Accordingly, VBF bases its claim for aiding and abetting on the same facts as its claim for breach of fiduciary duty. This claim is also based in fraud, (*see supra* p. 3) and thus is also subject to 9(b).

**Unjust Enrichment (Count XI).**  In this claim, VBF alleges it "has conferred millions of dollars' worth of benefit upon the Founders due to the Founders' **fraud or taking undue advantage.**" (SAC, ¶300) (emphasis added). This assertion is grounded in fraud, as it is incorporates the misrepresentations and omissions underlying all of Plaintiff's other claims, and must therefore meet the heightened pleading requirement of Rule 9(b). *See Chau v. Aviva Life and Annuity Co.*, No. 3:09–CV–2305–B., 2011 WL 1990446, at *8 (N.D. Tex. May. 20, 2011).[1]

**Equitable Remedy Claims (Counts XII-XIX)** Plaintiff's eight equitable claims against Founders for declaratory judgment, accounting, rescission and restitution, all sound in fraud.  They

---

[1] The Northern District of Texas has found that when "the success of [Plaintiff's] unjust enrichment claim rises and falls with the fraud claim … the attempt to plead 'unjust enrichment' as a separate claim adds nothing." *Berry v. Indianapolis Life, Ins. Co.,* No. 3:08–CV–0248–B, 2011 WL 3555869, at *9 (N.D. Tex. Aug. 11, 2011). As such, Plaintiff's claim for unjust enrichment is duplicative of its fraud claims and should be dismissed.

all reference "concealment," "fraud," self-dealing, "misrepresentations," 'misappropriation," "dishonesty," "omissions," and/or breach of fiduciary duty.   (SAC, ¶¶ 302, 304, 307, 310, 311, 312, 314-16, 324, 326, 329-30, 332-34, 339, 341, 342-44, 351, 354.) Thus, each and all of these Remedy Claims together, as all are predicated on Founders alleged fraudulent acts, as noted above. The Rule 9(b) standard applies when the predicate acts of a claim sound in fraud. *Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.,* 814 F. Supp. 2d 698, 711 (N.D. Tex. 2011) (citing *Bonton v. Archer Chrysler Plymouth*, 889 F. Supp. 995 (S.D. Tex. 1995).

## II.   Fraud Based on Concealment or Omission Still Must Meet 9(b).

VBF again, knowing it has not complied with Rule 9(b), even for its named fraud claims (Counts II-IV), instead posits that a diluted 9(b) standard applies because these claims rely on omissions and fraudulent concealment. (Resp., Dkt. No. 217 at 10).  VBF claims in the case of fraud based on omission, only the facts omitted, the place where the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading" need be plead. (*Id.*)  This is inaccurate:  courts in this district have specifically held that allegations of knowing omissions sound in fraud. *See Halaris v. Viacom, Inc*., 3:06-CV-1646-N, 2007 WL 4145405, at *9 (N.D. Tex. Sep. 21, 2007). When a complaint repeatedly alleges that various defendants misled plaintiffs by "conveying through ... omission inaccurate information" such allegations satisfy the "the knowing deception that is the hallmark of fraud." *Id.* As such, the heightened pleading requirements of Rule 9(b) apply to VBF's allegations of fraudulent omission.

But VBF failed to meet even its proposed diluted standard.  Critically, VBF fails to allege *where* the omissions should have appeared, i.e., fails to identify *who* should have been informed of the omitted facts.  Nowhere is this more evident than in VBF's references to various "Written Representations" (SAC, ¶¶ 95, 96, 98, 99, 100, 103, 104, 106, 107, 110, 118, 123, 128, 139, 142,

144, 146, 153, 154, 157-59, 161, 162, 164, 165, 168, 169.)  VBF attaches multiple power points and spreadsheets to the SAC and accuses Founders of omitting critical information from them. (*Id.*, ¶¶ 96, 98, 98-101,103, 104, 105, 107, 110, 118, 124, 125, 128, 131, 139, 145, 154, 158, 159, 160, 164-66, 169; Exs.  8- 12, 14-19, 21, 26-29, 31, 32.)  But in most instances VBF does not allege that these "representations" or spreadsheets were actually shared with or presented to any one, that is, *where* the omissions should have appeared.  At what meetings or through what communications were these representations made? Which investors or lenders saw these "representations" and were misled by the omitted facts?  (Mot. to Dismiss, Ex. C, "WHEN?" Column.) In some instances, it's not even alleged or clear that the "representations" ever left Founders' own hands. (SAC, ¶¶ 95, Ex. 7.)  Whether these claims are stated for nondisclosure, misrepresentation, or constructive fraud, they must meet Rule 9(b). *Litson-Gruenber*, 2009 WL 4884426 at *4-5 (N.D. Tex. Dec. 16, 2009) (omission).

### III.        The Myriad Fraud Allegations in the SAC Fail to Meet 9(b).

As set forth in the Motion, the SAC fails to meet Rule 9(b), because it: a) relies on impermissible group pleading, b) relies "on information and belief or otherwise conclusory allegations, and c) fails to allege reliance by any purported victim of Founders' fraud. VBF's Response does not remedy any of these deficiencies.

### A.  VBF's Collective Pleadings Against Founders Are Impermissible and Inadequate.

As Founders argued, VBF repeatedly pleads against them collectively, which is impermissible, both under Rules 8 and 9(b).  In response, VBF suggests group pleading is sufficient here, because "the references to the 'Founders' collectively are allegations that all of the Founders committed the specific misconduct alleged." (Resp., Dkt. No. 217 at 4-5). VBF relies on an unreported case in Arizona, *S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMS, 2010 WL

5776401, at *6 (D. Ariz. Jan. 28, 2010), and a New York case, *SEC v. Power*, 525 F. Supp. 2d 415, 422 (S.D.N.Y. 2007), for this contention. The Fifth Circuit, however, holds that in order for plaintiffs to satisfy Rule 9(b)—as well as Rule 8—stating allegations generally as to a group of defendants, while failing to segregate the alleged wrongdoing of one from that of another is prohibited. *Unimobil 84 Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *see also United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 633 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019) (holding that Plaintiff's amended complaint fails to distinguish between Defendants and thus is "deficient with regard to the 'who'").  The Northern District of Texas also clearly provides that "[i]t is impermissible to lump all defendants together; rather, the complaint **must segregate the alleged wrongdoing of one from another.**" *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 471 (N.D. Tex. 2012) (internal quotations omitted). VBF wholly ignored this precedent in its Response and in pleading its SAC. On this basis alone, the SAC fails to adequately allege claims against Founders, under both Rules 8 and 9(b).

### B.  Plaintiff's Allegations Must Not Be Based on Speculation, Conclusory Allegations or "Information and Belief".

Similarly, many of the allegations that VBF argues meet 9(b) are made on information and belief, or otherwise conclusory, and thus, cannot adequately support VBF's claims.  (Resp., Dkt. No. 217 at 7).  In fact, the phrase "on information and belief" appears in 26 of the SAC's allegations. (SAC, ¶¶ 30, 35, 69,70, 95, 98-101, 104, 107, 110, 118, 124, 135, 128, 131, 139, 154, 168, 169, 192, 201, 208, 302, 403.)   From Plaintiff's own cited case, the Fifth Circuit makes clear that "although we have held that fraud may be pled on information and belief [when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge]… we have also warned that this exception **must not be mistaken for license to base claims of fraud on speculation and conclusory allegations**." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d

899, 903 (5th Cir. 1997) (internal quotations omitted) (emphasis added) (holding that the Plaintiff's allegations that defendants submitted claims for medically unnecessary services amounted to nothing more than speculation, and thus failed to satisfy Rule 9(b), because no specific physicians who referred patients for medically unnecessary services were identified).

The exception to Rule 9(b)'s standard that VBF hopes to invoke does not apply here where VBF has access to all of the Founders' communications during their tenure as officers and directors. This is not instance where Founders still control the entity and have unique knowledge of their communications. In fact, Founders have had to seek discovery to obtain their own communications while officers of VBF. And this case is not in its nascent stage: it has been pending for over 18 months, over 90,000 pages of documents have been produced, VBF alone has issued over 110 subpoenas and produced 60,000 pages of its own documents.  VBF is in control of all of the documents and information that could provide the facts necessary to meet Rule 9(b).

But more importantly, even "where [a] pleading is permitted on information and belief, the complaint  must adduce specific facts supporting  a strong  inference  of  fraud." *Thornton v. Micrografx, Inc.*, 878 F. Supp. 931, 934 (N.D. Tex. 1995) (holding plaintiff's allegations of fraud from misleading and negative information fails to meet Rule 9(b) because they "offer[] nothing more than 'fraud by hindsight'"); *see also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (holding the complaint is insufficient under Rule 9(b) because it is pleaded largely on "information and belief" but conspicuously omits any "allegations as to who leaked Wexner's plans, or when and to whom the information was leaked").

In this case, Plaintiff's SAC does nothing more than offer broad speculations and conclusory statements to support its "information and belief" theories. Again, even though VBF purports to be both the vehicle and the victim of Founders' fraud, and despite a pending bankruptcy

case, the SAC does not identify one single investor, shareholder, or lender, who saw, received, or heard any of Founders' alleged representations.  As illustrated in Founders' Motion to Dismiss, the "to whom" in virtually every allegation of fraud or omission is only identified categorically, as "potential and actual investors," "disinterested VBF directors," "potentially interested third parties," 'potential lenders."  (MTD, Dkt. No. 184, Ex. C, "To Whom" Column).  VBF relies on equally vague allegations *about how and when* purported misrepresentation were made. (*Id.,* "When?" and "How?" Columns). When combined with the nebulous descriptions of "to whom," it is impossible to determine whether these presentations were actually shared with anyone who relied on them in any way.  In fact, in several instances, VBF alleges that certain representations were "likely shared," "ultimately circulated," or "passed on", (*Id.* at 12) evidencing its own uncertainty as to whether these materials were ever communicated to anyone.

This vague approach is especially improper when the persons alleged to have been defrauded are those that VBF should and could identify.  VBF certainly knows who its investors are and were.[2]  It can also identify its own board members and lenders.  VBF has all of Founders' emails and communications and can identify whether certain presentations or power points were shared with anyone. Thus, this is not an instance where VBF does not have access to the necessary facts to meet 9(b), but where the facts simply don't exist.  Rule 9(b) is designed to specifically prohibit this kind of vague, yet damaging accusations.

---

[2] It must be noted that VBF's largest shareholder during Founders' tenure, and now its sole shareholder, is Alder Aqua. And that VBF's lender of over $30 M during that same time, is Alder affiliate, Amstar Group. Alder, as the 100% shareholder of VBF, is the only party who will recover anything if VBF's suit is successful. Yet VBF cannot identify a specific Alder representative, an Alder-appointed board member, or a representative of Amstar who was misled by Founders' purported misrepresentations or omissions.  Surely if the largest and controlling shareholder of VBF, as well as its primary lender, were victims of Founders' fraud, they easily could be identified in VBF's complaint.

### C.  VBF Fails to Adequately Identify Who Was Injured by Founders' Fraud, When They Were Injured, and How They Were Injured.

As previously argued, any fraud claim must allege reliance and/or the intent that plaintiff take action based upon representation.  Once again, VBF admits that it has not alleged reliance in the SAC, but argues that such allegations are only required for its claims of fraudulent concealment and fraudulent misrepresentation. (Resp., Dkt. No. 217 at 8). But, as has been established, every one of VBF's claims alleges a fraudulent misrepresentation, a concealment, or both.  The only acts of reliance that VBF attempts to allege are:  that VBF's directors would have ceased business and that VBF would have halted Founders' misconduct. (Resp., Dkt. No. 217 at 13, SAC, ¶¶ 84, 122, 239, 247, 414.)  But these are conclusions, and again, fail to identify who would have taken this action and which representations or omissions caused them not to do so.  If VBF directors, especially those controlled by its sole shareholder Alder, were misled by specific representations and were considering ceasing VBF's business sooner, then specific facts surrounding those representations and decisions could be alleged.  But they are not. VBF realizes this because it attempts to argue an act of reliance that isn't even plead: that VBF would have terminated Founders sooner if it had known of their fraudulent schemes. (Resp., Dkt. No. 217 at 13). This appears nowhere in the SAC and is VBF's attempt to amend its pleadings by brief.  Without sufficient allegations of reliance, VBF's fraud claims fail and its remaining claims collapse along with them.

### IV.    VBF's Civil RICO Claim Should Be Dismissed (Count XXVI).

VBF fails to rebut the three fundamental and independently dispositive flaws in Plaintiff's civil RICO claim outlined in Founders' Motion: (1) VBF does not plead predicate acts of mail or wire fraud with sufficient particularity; (2) the predicate acts are not of sufficient duration to constitute closed-end continuity; and (3) VBF does not adequately plead a RICO enterprise.

A. **The SAC fails to specify the allegedly fraudulent statements' author or speaker, date, place, and reasons why they are fraudulent.**

Despite acknowledging Rule 9(b)'s heightened pleading requirements applies to the predicate acts for a RICO claim based on fraud, VBF inaccurately asserts, without support, that the SAC more than sufficiently alleges predicates acts. (Resp., Dkt. No. 217 at 15-16.)   The particularity in this circuit requires "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby'" is woefully missing from the SAC.3  *Williams v. WMX Techs, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

Almost all the alleged predicate acts are spreadsheets or presentations that VBF alleges, in conclusory fashion, were shared with individuals other than Founders.  However, the SAC utterly fails to state which Founder shared the information, what the Founder who made the misrepresentation obtained by it, when the misrepresentation occurred, and who specifically received the misrepresentation.  Even the emails described in the Response are insufficient because VBF fails to plead what was obtained by the representations in the emails.  *See Williams*, 112 F.3d at 177. Further, VBF must plead and prove each prong of the predicate offense—or "racketeering activity"—against each Founder Defendant to a RICO claim.4  VBF has not shown that each

---

3 For example, VBF defines the First June 2015 Written Representation as a PowerPoint presentation attached as Exhibit 15.  But how does VBF describe the "who, what, when, where, how, and why" with specificity?  The who is merely "at least one of the Founders" made the representation to "potential and actual investors, including but not limited to, Alder" and, "on information and belief, passed onto other disinterested VBF directors and employees." The only "when" is the creation date of the PowerPoint (i.e., June 2015), and not any date it was actually given to someone.   Additionally, VBF fails to identify what the Founder making the alleged misrepresentation in the PowerPoint obtained from the misrepresentation.  (SAC ¶ 118; *see also* SAC ¶ 95 (alleging the excel file defined as the June 2014 Written Representation was "provided to potential and actual investors. . . [and] *on information and belief,* passed onto other disinterested VBF directors and employees"); ¶ 167 (alleging generally that a PowerPoint defined as the May 2015 Written Representations was provided by Founders to potentially interested third parties, including Alder, and *upon information and belief* disinterested VBF directors, and employees).

4 Contrary to VBF's assertion (Resp. at 4-7), in a multi-defendant RICO case such as here, courts require a plaintiff to set forth each element of the underlying offense against each defendant.  *See ABN-AMRO Mortg. Group, Inc. v. Emerson Manufactured Homes, Ltd.*, 2005 WL 1949601 (S.D. Tex. Aug. 15, 2005).  It is not enough for a plaintiff to

Founder Defendant engaged in acts that would constitute mail fraud or wire fraud and, thus, has not demonstrated the requisite predicate offenses to establish "racketeering activity."

**B.    VBF continues to miss the point—any predicate act not plead with sufficient particularity cannot be used as a basis for a RICO claim.**

VBF's conclusory allegations of predicate acts must be disregarded when evaluating whether a pattern of racketeering activity exits. *See Clapper v. Am. Realty Inv'rs, Inc.*, 2016 WL 302313, at *9, n. 14 (N.D. Tex. Jan. 25, 2016).  VBF has only included specific dates for two predicate acts:  the Various June 2015 Written Representations (SAC, Exs. 4 and 16-2) and the April 2016 Written Representations (SAC, Ex. 28).  Accordingly, at best, the predicate acts span a period of only eleven months—not the two to four years VBF asserts in its Response—which is insufficient to form a pattern of racketeering activity.  *See e.g., Tel–phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992).

**C.  VBF has failed to plausibly allege a RICO enterprise.**

VBF unsuccessfully attempts to save its allegation of an association-in-fact by arguing that, under *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003), officers or employees working outside of the scope of their employment can constitute an association-in-fact enterprise. However, Founders do not contend that members of an organization cannot be an association in fact.  Instead, Founders argue that VBF failed to plead *facts*, as opposed to conclusory statements, demonstrating that an association in fact actually existed.

Specifically, the SAC fails to describe any of Founders' activities outside of their employment with VBF.  (SAC ¶ 403.)  VBF does not allege facts demonstrating Founders coordinated or functioned as a continuing unit as shown by a hierarchical or consensual decision-

---

vaguely attribute the alleged fraudulent representations to "defendants" collectively.  *See In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476, 482 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002).

making structure.  *See Stanissis v. DynCorp Int'l LLC*, 2015 WL 9478184, at *4 (N.D. Tex. Dec. 29, 2015).  Accordingly, VBF fails to allege an association-in-fact.

Furthermore, VBF is incorrect that VBF can act as both the RICO enterprise and the victim of the enterprise.[5]  *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995) (holding that a corporation cannot be both the victim and the enterprise).  Accordingly, the Court should dismiss VBF's RICO claim as the SAC does not adequately plead a RICO enterprise.

### V.    Plaintiff Lacks Standing Under Fed. R. Civ. P. 12(b)(1).

As Founders argued, even if true, the conclusory and categorical nature of the allegations in the SAC indicate that VBF is not the appropriate plaintiff to recover damages in this case. Essentially, VBF has no standing to pursue these claims under Fed. R. Civ. P. 12(b)(1). VBF argues that it is seeking to recover the loss of its own assets and thus, has alleged a direct injury. (*See* Resp., Dkt. No. 217 at 29-30.)

But there is a glaring disconnect between this argument and the SAC's allegations. According to the SAC, the parties who purportedly were misled by Founders' fraud and omissions are investors, lenders, potential investors[6] and lenders, potentially interested third parties and disinterested directors.  (MTD, Dkt. No. 184, Ex. C, "To Whom" Column). But as VBF acknowledges, it cannot recover amounts invested in the company or lent to the company by other

---

[5] Plaintiff's reliance on *Ranieri v. AdvoCare Int'l, L.P.*, 2019 WL 3207501, at *4 (N.D. Tex. July 16, 2019) and a footnote in *Nat'l Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994) is misplaced.  *Ranieri* merely stands for the proposition that the Fifth Circuit has not addressed whether victims can be included in an "association of fact" theory.  The court never addresses whether a victim, standing alone, can constitute an enterprise. In *Nat'l Organization for Women*, the Supreme Court acknowledged that the term "enterprise" was used in multiple sections of Section 1962(a), (b), and (c), and that, in those sections, the term enterprise "plays a different role."  Although the enterprise in Subsections (a) and (b) may be a "victim of unlawful activity," in Subsection (c)—the section relied on in the SAC—the enterprise cannot be the vehicle of the unlawful pattern of activity and the victim of the activity.  *Id.*

[6] VBF does not defend its allegations that "potential" investors or lenders were defrauded by Founders. VBF cannot recover on behalf of those who never invested in the company, no matter how egregious the fraud may have been. "Merely asking for money does not establish injury-in-fact." *Rivera v. Wyeth- Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

14

parties, even if they were duped by Founders.  So how was VBF itself duped and how was it injured?  The $90,000,000 damages figure that is sprinkled throughout the SAC is not tied to any investment, loan, asset purchase, or corporate transaction by VBF, the entity, but is merely alleged described as "compensatory damages." (SAC, ¶¶ 1, 3, 54, 55, 56, 113-14, 207, 234, 242, 249, 253, 293, 297, 315, 333, 342, 362, 368, 374, 391, 428.)

Arguably, the only injury that VBF itself suffered is the purported misappropriation of assets via certain business decisions Founders made regarding purchase of assets, compensations decisions and expense reimbursements. (SAC, ¶¶ 26-41, 46-52.) Those losses total approximately $5-10M, in VBF's estimation. (Resp., Dkt. No. 217 at 29). But the $90,000,000 figure is never tied to any of these actions, nor to any purported victim, not even VBF.  Like many of the other allegations, it is simply dropped in as a dramatic conclusion.  As the U.S. Supreme Court held in *Twombly,* even under the basic requirements of Rule 8, a complaint "must give the defendant fair notice of the what the claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly, 550* U.S. 544, 555 (2007). Legal conclusions couched as factual allegations are not sufficient. *Id.* VBF's staggering damage allegation is an untethered legal conclusion.

VBF cannot have it both ways.  Either it is relying on misrepresentations made to investors or lenders and improperly seeking recovery for losses to those investors and lenders; *or* it is seeking loss of its own assets, in which case, it has failed to adequately allege how VBF, the entity, was defrauded by Founders.

### VI.    VBF Should Not be Permitted Leave to Amend.

As many plaintiffs do, VBF requested leave to amend the SAC if Founder Defendants' Motion is granted. (Resp., Dkt. No. 217 at 31) Both the Fifth Circuit and the Northern District of Texas disapprove of **"*a routine and perfunctory request to amend which serves as a safety valve***

*in the event the court rules in favor of Defendants.*" *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 566 (N.D. Tex. 2003); *see also Goldstein v. MCI WorldCom*, 340 F. 3d 238, 254-55 (5th Cir. 2003) (noting plaintiffs "tacked on a general curative amendment request" to their dismissal response "almost as an afterthought"). Both the *Goldstein* and *Capstead Mortg.* courts were persuaded to deny imbedded requests to leave to amend because the plaintiff had not set forth any additional facts that it could plead in an amended complaint that would cure its pleading deficiencies. *Goldstein*, 340 F. 3d at 255; *In re Capstead Mortg.*, 258 F. Supp. 2d at 566. Here too, VBF has failed to set forth any additional facts that could be plead, instead relying on the sheer quantity of allegations as evidence of their adequacy.

Furthermore, requesting amendment without any such proffer of new facts, and without the inclusion of a proposed amended complaint, also completely disregards the requirements of Local Rule 15.1, which provides that any request to amend be accompanied by a copy of the proposed amended pleading. VBF has had years to investigate this case and set forth clear facts to support its claims, and has filed three separate petitions attempting to do so. VBF's continued failure to adequately state its claims with the particularity required supports dismissal of VBF's claims with prejudice. Naming a party in a civil suit for fraud is a serious matter. *Unwarranted fraud claims can (and have) lead to serious injury to reputation for which our legal system effectively offers no redress.* For this reason, Founders respectfully request this Court dismiss VBF's Second Amended Complaint with prejudice to refiling same.

## <u>CONCLUSION</u>

Founders respectfully request the Founder Claims in VBF's Second Amended Complaint be dismissed in its entirety, with prejudice, and for such other and further relief to which Founders may show themselves justly entitled to receive.

16

Dated: January 10, 2020                    Respectfully submitted,

                                           By: */s/ Kimberly D. Annello*
                                           Kimberly D. Annello
                                           Texas Bar No. 24093704
                                           Eli D. Pierce
                                           Texas Bar No. 24092972
                                           Underwood Perkins, P.C.
                                           5420 LBJ Freeway, Suite 1900 Dallas,
                                           Texas 75240
                                           Phone: 972.661.5114
                                           Email: kannello@uplawtx.com
                                                    epierce@uplawtx.com


                                           **Attorneys for Defendants, Leslie Wulf,**
                                           **Bruce Hall, John (Ted) Rea, and James Rea**


                        CERTIFICATE OF SERVICE

        The undersigned hereby certifies that on January 10, 2020 a true and correct copy of the
above and foregoing was served upon counsel of records for all parties via ECF Service.

                                           */s/ Eli D. Pierce*
                                           Eli D. Pierce


17