# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
|     Defendants | § | |

## VEROBLUE FARMS USA, INC.'S RESPONSE TO CANACCORD GENUITY LLC'S MOTION TO DISMISS & BRIEF IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    ARGUMENTS & AUTHORITIES .......................................................................5

        A.    This Court has personal jurisdiction over Canaccord. ........................... 5

              1.    Canaccord's business presence and operations in Texas subject it
                    to general jurisdiction. ............................................................... 5

              2.    Canaccord's transmission of communications specifically directed
                    into Texas and purposeful participation in a scheme with several
                    Texas residents confers specific jurisdiction over Canaccord. ................. 7

              3.    Exercise of jurisdiction over Canaccord would not offend
                    traditional notions of fair play and substantial justice. ............................. 10

              4.    Alternatively, VBF should be permitted to conduct jurisdictional
                    discovery. ...................................................................... 11

        B.    Neither the Engagement Agreement nor the Mutual Release bar VBF's
              claims. ............................................................................ 12

              1.    The Engagement Agreement and Mutual Release should not be
                    considered for purposes of a 12(b)(6) motion to dismiss because
                    they are outside of the SAC. ...................................................... 12

              2.    The Engagement Agreement is null and void. ........................................ 13

              3.    Canaccord cannot hide behind the Engagement Agreement's
                    exculpatory clauses to shield itself from liability for intentional
                    torts. .......................................................................... 14

              4.    The Mutual Release does not cover VBF's claims in this lawsuit. .......... 16

              5.    Whether the Mutual Release is valid, at a minimum, is a fact issue
                    that cannot be resolved on a 12(b)(6) motion to dismiss. ........................ 17

        C.    VBF adequately pleaded its claims against Canaccord. ..................................... 17

              1.    VBF pleaded its claims with sufficient particularity, including to
                    the extent Rule 9(b) may apply. .................................................... 18

                    a.    VBF is not required to allege Canaccord's intent or
                          knowledge with particularity. ....................................... 21

i

            b.     VBF has adequately pleaded the "meeting of the minds" element of its conspiracy claim......................................................... 22

    2.     The aiding and abetting conspiracy claim is not redundant and is in substance an allowable claim for knowing participation in a breach of fiduciary duty........................................................................................ 25

  D.     Canaccord's 12(b)(3) motion is procedurally improper because a case cannot be dismissed under 12(b)(3) based on a forum-selection clause............... 28

IV.    CONCLUSION...............................................................................................................29

## **TABLE OF AUTHORITIES**

### **Cases**

*Allen v. WestPoint-Pepperell, Inc.,*
  945 F.2d 40 (2d Cir. 1991) ........................................................................ 17

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western. Dist. of Texas,*
  571 U.S. 49 (2013) ............................................................................. 28, 29

*Boateng v. BP, P.L.C.,*
  779 Fed. App'x. 217 (5th Cir. 2019) ....................................................... 12

*Bourland v. State,*
  528 S.W.2d 350 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) ..................... 23, 24

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,*
  748 F.3d 631 (5th Cir. 2014) ................................................................... 12

*Bullion v. Gillespie,*
  895 F.2d 213 (5th Cir. 1990) ................................................................... 10

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ............................................................................... 10

*Carruth v. Michot,*
  A-15-CA-189-SS, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) ................... 5, 6

*Cent. Freight Lines Inc. v. APA Transp. Corp.,*
  322 F.3d 376 (5th Cir. 2003) ................................................................... 5, 8

*Charron v. Sallyport Glob. Holdings, Inc.,*
  No. 12CV6837, 2014 WL 7336463 (S.D.N.Y. Dec. 24, 2014) ...................... 14

*Chiappone v. N. Shore Univ. Hosp.,*
  164 A.D.3d 463 (N.Y. App. Div. 2018) ................................................... 16

*Cunningham v. Florio,*
  417CV00839ALMCAN, 2018 WL 4473792 (E.D. Tex. Aug. 6, 2018) ............ 7

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ............................................................................... 5

*Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.,*
  943 F.3d 239 (5th Cir. 2019) ................................................................... 5

*D'Onofrio v. Vacation Publications, Inc.,*
  888 F.3d 197 (5th Cir. 2018) ............................................................. 26, 27

*ECAP Holdings, LLC v. Quixotic Farming, LLC*,
No. 3:18-CV-2193-L, 2019 WL 4748126 (N.D. Tex. Sept. 30, 2019) ................................. 11

*FCA Investments Co. v. Baycorp Holdings, Ltd.*,
48 Fed. App'x. 480 (5th Cir. 2002) ................................................................................. 9, 10

*First United Pentecostal Church of Beaumont v. Parker*,
514 S.W.3d 214 (Tex. 2017)................................................................................................ 26

*Green v. Lake Placid 1980 Olympic Games, Inc.*,
147 A.D.2d 860 (1989) ....................................................................................................... 17

*HealthExtras, Inc. v. SG Cowen Sec. Corp.*,
No. 02 Civ. 9613(RO), 2004 WL 97699 (S.D.N.Y. Jan. 20, 2004) ..................................... 14

*Hunn v. Dan Wilson Homes, Inc.*,
789 F.3d 573 (5th Cir. 2015) .............................................................................................. 26

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018) .............................................................................................. 26

*In re NE 40 Partners, Ltd.*,
411 B.R. 352 (Bankr. S.D. Tex. 2009) ............................................................................... 21

*Int'l Bankers Life Ins. Co. v. Holloway*,
368 S.W.2d 567 (Tex. 1963)........................................................................................... 21, 22

*Jones v. Trice*,
202 A.D.2d 394, 608 N.Y.S.2d 688 (2d Dep't 1994) ........................................................... 13

*Kalisch-Jarcho, Inc. v. City of New York*,
58 N.Y.2d 377 (1983) .......................................................................................................... 14

*Kastner v. Jenkens & Gilchrist, P.C.*,
231 S.W.3d 571 (Tex. App.—Dallas 2007, no pet.).............................................................. 26

*King v. Hawgwild Air, LLC*,
No. 3:08-CV-0153, 2008 WL 2620099 (N.D. Tex. June 27, 2008)......................................... 6

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
160 S.W.2d 509 (Tex. 1942).............................................................................................. 26

*Kline v. O'Quinn*,
874 S.W.2d 776 (Tex.App.—Houston [14th Dist.] 1994, writ denied................................... 26

*Luv N' care, Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006) ............................................................................................... 8

*Mallad Const. Corp. v. Cty. Fed. Sav. & Loan Ass'n*,
   32 N.Y.2d 285 (1973) ............................................................................ 14

*McGee v. Int'l Life Ins. Co.*,
   355 U.S. 220 (1957) ............................................................................... 8

*Middlebrook v. Anderson*, 3:04-CV-2294,
   2005 WL 350578 (N.D. Tex. Feb. 11, 2005) ................................... 9, 11

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*,
   18-10755, 2019 WL 6834031 (5th Cir. Dec. 13, 2019) ........................ 26

*Milligan, Tr. for Westech Capital Corp. v. Salamone*,
   1:18-CV-327-RP, 2019 WL 4003093 (W.D. Tex. Aug. 23, 2019) ......... 26

*Mims v. Bohn*,
   536 S.W. 2d 568 (Tex. Civ. App.—Dallas 1976, no writ) ............... 22, 25

*Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*,
   100 A.D.2d 865 (2d Dep't 1984) ......................................................... 14

*Patel v. Pacific Life Ins. Co.*,
   No. 3:08CV0249B, 2009 WL 1456526 (N.D. Tex. May 22, 2009) ... 22, 23

*Penguin Grp. (USA) Inc. v. Steinbeck*,
   537 F.3d 193 (2d Cir. 2008) ............................................................... 13

*Quesenberry v. Alliant Law Group, PC*,
   4:09-CV-414, 2010 WL 1189457 ....................................................... 23

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*,
   435 S.W.2d 854 (Tex. 1968) ............................................................... 21

*Smith v. United States*,
   —— U.S. ——, 133 S. Ct. 714 (2013) ................................................. 25

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
   No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004) ............... 18, 19

*United States v. Gohari*,
   227 F. Supp. 3d 313 (S.D.N.Y. 2017) ................................................. 24

*United States v. Salazar*,
   751 F.3d 326 (5th Cir. 2014) .............................................................. 25

*Wackman v. Rubsamen*,
   602 F.3d 391 (5th Cir. 2010) ................................................... 21, 22, 24

*Wein Air Alaska, Inc. v. Brandt*,
  195 F.3d 208 (5th Cir.1999) ............................................................................... 9

*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir. 1981) ........................................................................... 11

## Statutes

11 U.S.C. §§ 544(a) and 548.............................................................................. 17

## Rules

Fed. R. Civ. P. 9(b) ................................................................................... 21, 23

Fed. R. Civ. P. 12(b)(3).................................................................................... 28

Fed. R. Civ. P. 12(d) ....................................................................................... 13

## Other Authorities

L.R. 5.1(d)......................................................................................................... 30

## I.     __INTRODUCTION__

Early in its engagement with VeroBlue Farms USA, Inc. ("VBF), Canaccord was advised by its own technical consultant what Defendants Wulf, Hall, James Rea, and John Rea (the "Founders") already knew—VBF's technology was fatally flawed and the Founders' financial models were pies in the sky. Instead of doing the right thing, however, Canaccord conspired with the Founders to create investor-related and other materials packed with material misrepresentations about VBF and the capabilities of what Canaccord and the Founders knew to be flawed technology. Unsurprisingly, certain misrepresentations in those materials were relied upon in the course of VBF's business, by its employees, potential and future VBF investors, and future VBF board members.   Essentially, Canaccord helped the Founders create a false narrative of VBF that persisted until VBF discovered the Founders' fraud and filed this lawsuit.   Ultimately, over $90,000,000 was raised and squandered based on that false narrative.  Canaccord expected to be— and was indeed—rewarded for the work it performed during a crucial time period for VBF.

Canaccord now moves to dismiss the Second Amended Complaint ("SAC") on several grounds—all of which fail. *First*, Canaccord—which maintains an office in Houston, Texas, has been doing business in Texas for nearly 12 years—moves to dismiss for lack of personal jurisdiction, but states no facts that show why it should not be subject to this Court's jurisdiction. As set forth below, Canaccord's physical presence in Texas, communications specifically directed into Texas, and purposeful participation in an elaborate scheme with several Texas residents is sufficient to confer jurisdiction over Canaccord.

*Second*, Canaccord moves to dismiss the SAC for failure to state a claim. Canaccord improperly goes outside the scope of the SAC, attaching documents to its Motion that are not referenced in the SAC and that are not central to VBF's claims.  It is well-established, however, that when considering a Rule 12(b)(6) motion, the parties are limited, absent certain exceptions

1

not present here, to the pleadings. Canaccord further argues that the SAC—which specifies, in exhaustive detail, VBF's claims in 450 paragraphs, 99 pages, and 60 exhibits—fails to plead the two claims against Canaccord with the particularity required by Rule 9(b). That is not correct, but even if it were, not all of VBF's allegations are subject to Rule 9(b). VBF's conspiracy claim is based in part on the Founders' breaches of fiduciary duty, which do not sound solely in fraud, and its aiding and abetting claim is entirely based on the same breaches of fiduciary duty. Regardless, as explained below, VBF adequately pleaded its claims against Canaccord, including those claims to which Rule 9(b) may apply.

*Third*, Canaccord moves to dismiss for improper venue pursuant to Rule 12(b)(3) on the basis of a forum-selection clause, despite settled law that a case cannot be dismissed under 12(b)(3) based on a forum-selection clause. For these reasons and more below, Canaccord's motion should be denied in its entirety.

## II.   BACKGROUND

The Founders founded VBF, a sustainable fish farm, in 2014. SAC ¶ 1. The Founders were all directors, officers, and employees of VBF from October 1, 2014 through their termination in late 2017 to early 2018. *Id.* ¶¶ 7-10. Wulf was Chief Executive Officer, and Hall was Chief Financial Officer. *Id.* ¶¶ 9, 10.  By 2015, the Founders knew that VBF's technology did not work and that their financial models were based on false data and were not achievable. *Id.* ¶¶ 75-87, 97, 98, 151-52.   Instead of ceasing VBF, however, the Founders doubled-down and retained Canaccord, an investment-banking firm, to raise millions of dollars for what the Founders (and soon thereafter, Cannacord) knew was a losing proposition.  *See* SAC ¶¶ 2, 11, 75-87.

Canaccord worked with the Founders from 2015 to 2016. *Id.* ¶¶ 66.  Early in its involvement with VBF, Canaccord was advised by one of its own technical consultants ("Dr. Michaels") what the Founders already knew—that VBF's technology was fatally flawed and the

Founders' financial models were pies in the sky. *Id.* ¶¶ 75-87, 176 & Exs. 4-5. Canaccord was therefore aware of certain misrepresentations and not only helped the Founders concoct them but disseminated those misrepresentations anyway. *Id.* ¶¶ 74-87, 103, 106-109, 117, 119-122, 135-137, 153, 169 & Exs. 4, 5, 13, 14, 17-20, 23-25, 26, 29. For example, SAC Exhibit 4 is the June 7, 2015 PowerPoint that Dr. Michaels criticized and that touted VBF's technology and the success it would achieve using that technology. *Id.* at Ex. 4 PowerPoint at 4, 25-29, & 34. Exhibit 19 is an August 23, 2015 PowerPoint—with nearly identical slides to those criticized by Dr. Michaels— for Canaccord to disseminate for a big "equity push." *Id.* at Ex. 19 PowerPoint at 4, 26-28, 30, 31, 34. During this time, Canaccord also worked with the Founders to concoct a false valuation of VBF and manipulate (overstate) VBF's actual operational and financial data. *See* SAC ¶¶ 73, 119-121, 136-137 & Exs. 3, 23-24.

The SAC describes in detail numerous misrepresentations and omissions made as to items such as feed conversion ratio ("FCR"), EBITDA, stocking density, water quality, and mortality rates. *See id.* ¶¶ 54-170. In addition to describing the misrepresentations in detail, many of the written misrepresentations are attached as exhibits to the SAC. *See, e.g., id.* at Exs. 3-32. With Canaccord's help, the Founders misrepresented (affirmatively and by omission) VBF's technology and finances, including its key performance and financial metrics. SAC ¶¶ 57-62, 74-87, 90-91, 94-95, 103-04, 106-110, 112-114, 117, 122, 124, 126, 131, 133, 137, 151-53, 169 & Exs. 4, 5, 7, 12-15, 17-20, 23, 26-28.

Canaccord continued to work with the Founders through 2015, with two of Canaccord's own employees going to work for VBF during that time frame. SAC ¶¶ 66, 67, 88, 103-104, 106-111, 118, 122, 124, 128, 131, 169, and Exs. 4, 6, 12, 14, 15, 17-18, 20-22, 25-28. Together, Canaccord, those employees, and the Founders, continued to disseminate false representations of

VBF's operational and financial markers to investors, as discussed above, sustaining a flow of false information that ultimately was fed by the Founders to non-Founder directors, officers, investors, and employees of VBF until VBF discovered the fraud. *Id.* ¶¶ 74-87, 103, 106-109, 117, 119-122, 135-137, 153, 169 & Exs. 4, 5, 13, 14, 17-20, 23-25, 26, 29.

Following the departure of the last of the Founders in January 2018, VBF discovered that the Founders had misappropriated and misused millions of dollars in corporate assets and made continuous and knowing misrepresentations of and omissions related to VBF's operations, technology, and finances. *See id.* ¶ 2. The Founders (1) drained VBF of assets and looted the company, (2) withdrew significant funds while VBF was in financial trouble, (3) received money and other assets that belonged to VBF for no reasonably equivalent value, (4) ultimately rendered VBF virtually incapable of operation, and (5) took improper salaries and other benefits from VBF's assets. *See id.* ¶¶ 3, 25-53, 171-175.

VBF initiated this lawsuit against the Founders on July 31, 2018. Dkt. Nos. 1 & 2. VBF filed for Chapter 11 bankruptcy on September 21, 2018. SAC ¶¶ 1, 176, 204. VBF chose to file suit in Iowa because that is where VBF operated its business. Dkt. Nos. 2, ¶ 11. Over VBF's objection, the court transferred VBF's claims to this District. Dkt. No. 50. Then, on May 13, 2019, in light of VBF's continuing investigation, VBF filed its Motion for Leave to Amend its Amended Complaint, which included two counts against Canaccord. Dkt. No. 102. Over the Founders' objection, including their arguments that the amendment was "futile," (Dkt. Nos. 117, 122, 125) this Court granted VBF's motion, and VBF filed the SAC. Dkt. Nos. 158 & 159. Count XX of the SAC is against Canaccord and asserts a claim for Conspiracy alleging that Canaccord "facilitated, encouraged, and assisted in accomplishing the Founders' breach of fiduciary duty, fraudulent concealment, constructive fraud, and fraudulent misrepresentation," in order to benefit

4

the Founders and Canaccord at the expense of VBF, and, that VBF's compensatory damages are in excess of $90,000,000.  SAC, ¶¶ 358-363.  Similarly, Count XXI of the SAC is against Canaccord and asserts a claim for aiding and abetting conspiracy.  *Id.* at ¶¶ 364-369.

## III.   ARGUMENTS & AUTHORITIES

### A.   This Court has personal jurisdiction over Canaccord.

When a district court considers a 12(b)(2) motion to dismiss without an evidentiary hearing, a plaintiff need only establish a prima facie case of personal jurisdiction.  *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).  Further, the court accepts as true VBF's uncontroverted allegations and resolves all factual conflicts and reasonable inferences in favor of VBF, as the party seeking to invoke the court's jurisdiction. *Id.*

### 1.   Canaccord's business presence and operations in Texas subject it to general jurisdiction.

Canaccord provides no facts to defeat general jurisdiction and merely argues that VBF has not met its burden.  General jurisdiction exists when the defendant's affiliations with the forum state are so continuous and systematic as to render it essentially "at home" in the forum state. *See, e.g., Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 250 (5th Cir. 2019) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  Canaccord recites the paradigm examples of where a *corporation* will be considered at home, e.g., its place of incorporation and principal place of business, see Mot. at 11; however, some courts have found that this is not the proper test to determine general jurisdiction for a *limited liability company* like Canaccord. *See, e.g., Carruth v. Michot*, A-15-CA-189-SS, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015) (as to a LLC, general jurisdiction factors are whether the LLC has sufficient contacts with the forum state, including factors such as where the LLC's operating agreements were entered into, location of

5

registered agents, whether the LLC sought authority to do business in Texas, ever held a bank account in Texas, or has offices or employees in Texas).

Based on VBF's review of Canaccord's corporate filings, it has been registered to do business with the Texas Secretary of State since 2008. A true and correct copy of the Declaration of Caroline Pritikin is attached as **Exhibit A**. *See* C. Pritkin Decl., Ex. A-1, Canaccord Genuity LLC's Texas Secretary of State 2008 Registration. Although VBF has not yet discovered all of the details of Canaccord's operations in Texas, it is clear that it currently maintains an office at 1100 Louisiana St., Ste 4425, Houston, Texas and has a registered agent in Dallas, Texas. *Id.*; *see* C.Pritikin Decl., Ex. A-2, at 15, Canaccord Genuity Group Inc. 2018 Annual Report, dated June 25, 2018 ("Canaccord Genuity's US segment. . . serves its clients through offices in. . . Houston."); C. Pritkin Decl., Ex. A-3, at 1, a true and correct copy of Westlaw Company Investigator Report dated Jan. 7, 2020.[1] *Id.* Canaccord did not submit any evidence of which office location is its principal place of business.

Thus, it appears that, at minimum, Canaccord is doing business *in* Texas—not just *with* Texas—and has been for over a decade.  Because it has a physical office in Texas, it can be reasonably inferred that Canaccord leases or owns property in Texas.  And if it is doing business in Texas, it is also reasonable to infer that it has employees in Texas. For LLCs, the courts have looked more qualitatively at the defendant's contacts with the forum state, rather than simply the principal place of business (of which Canaccord failed to present any evidence). *See Carruth*, 2015

---

[1] The entity listed in the purported Engagement Agreement is "Canaccord Genuity Inc."  In 2018, Canaccord Genuity Inc. was converted into a Delaware limited liability company, now known as Canaccord Genuity LLC, the named defendant in this suit. *See* C. Pritikin Decl., Ex. A-4, Canaccord's Amendment to Registration to Disclose a Change Resulting from a Conversion or Merger, dated Mar. 23, 2018.

WL 6506550, at *7; *see also King v. Hawgwild Air, LLC*, No. 3:08-CV-0153, 2008 WL 2620099, at *5 (N.D. Tex. June 27, 2008) (applying a different test than the corporate test).

Therefore, VBF has set forth sufficient facts to show that Canaccord is "at home" in Texas and to satisfy the prima facie burden that general jurisdiction exists, while Canaccord has offered no facts to contradict that conclusion.

**2.      Canaccord's transmission of communications specifically directed into Texas and purposeful participation in a scheme with several Texas residents confers specific jurisdiction over Canaccord.**

Canaccord tries to distance itself from Texas by suggesting that it was retained to perform investment banking services for *only* "VBF Canada" (VeroBlue Farms, Inc.). *See* Mot. at 12. Yet Canaccord simultaneously argues that VBF (USA) is bound by the Engagement Letter, which purports to cover VBF Canada's "present and future subsidiaries" such as VBF. *Id.* at 12, 16 n.10; Dkt. 213, Canaccord APP0005. Canaccord cannot have it both ways. As set forth below, the SAC alleges facts that Canaccord purposefully and knowingly worked with VBF, an American company with a Texas office, and worked closely with four of its Founders, who are Texas residents, transmitting communications directly into Texas to benefit a scheme performed in part in Texas, and benefiting from the scheme at the expense of shareholders, including Texas shareholders.

"Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Cunningham v. Florio*, 417CV00839ALMCAN, 2018 WL 4473792, at *8 (E.D. Tex. Aug. 6, 2018), report and recommendation adopted, 4:17-CV-839, 2018 WL 4473096 (E.D. Tex. Sept. 18, 2018) (citations omitted). The relevant specific jurisdiction elements include whether: (1) the defendant has purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and

7

reasonable. *Id.* (citations omitted).  Because "a defendant can purposefully contact the forum state and avail itself of the benefits and protections of the forum's laws by creating continuing obligations between itself and residents of the forum," the Fifth Circuit has held that "a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 n.6 (5th Cir. 2003) (citation omitted). "A single purposeful contact may confer jurisdiction." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 n.3 (5th Cir. 2006) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)).

The Founders (other than Driver) all lived and worked in Texas. SAC ¶¶ 7-10.  It can be reasonably inferred that Canaccord knew this, as it addressed its Engagement Letter to "Leslie Wulf, Director, Chairman, and CEO" at VBF's Plano office. *See* Canaccord APP0005. With full understanding of this fact, Canaccord representatives actively communicated with the Founders during the Canaccord Project. Indeed, Canaccord exchanged numerous correspondence with the Founders, especially Wulf and Hall, on many occasions during the Canaccord Project, and much of this correspondence also bears VBF's Texas address. *E.g., id.* ¶ 71 & Exs. 3, 4, 6, 19-20, 25, 29; *see also* a true and correct copy of the Declaration of Norman McCowan attached as **Exhibit B**, at B-1 through B-6 attached thereto.  In one email, Wulf even clarified that he was at the "office," so that Canaccord would know where to reach him.  SAC at Ex. 4.  Moreover, Canaccord communicated with the Founders via telephone, which it can be reasonably inferred were calls to or from the Texas office or cell phone numbers of the Founders who resided in Texas. Specifically, Ginsberg had regular telephone calls with Wulf, as did others at Canaccord, during the Canaccord Project. *Id.* ¶ 71 & Exs. 5, 25; *see also* N. McCowan Decl., Ex. B-3 at 4 (referencing phone calls or future calls).  Ginsberg set up a conference call between him, Dr. Michaels, and Wulf, agreeing

to "call you [Wulf] and conference Tony [Michaels] in." N. McCowan Decl., Ex. B-9. That same email reflects Wulf's cellphone number with a Texas area code. *Id.* VBF and Canaccord had an electronic "data room" which Hall, with Canaccord's help, set up to allow the Founders to share information housed in Texas with Canaccord and potential investors. *Id.* ¶ 71; *see also* N. McCowan Decl. ¶ 13 & Exs. B-7 & B-8. And the written representations that Canaccord assisted in preparing made clear that VBF had an office in Texas and that one of its attorneys (Jackson Walker) was located in Texas. *See, e.g.*, SAC at Ex. 4, June 7, 2015 PowerPoint at 57; Ex. 37.

Canaccord purposely sent the Engagement Agreement it attempts to rely on to VBF at its Texas office. It entered into a working relationship with VBF knowing it would be working with the Founders, Texas residents who largely ran VBF from its Texas office. Canaccord routinely and continuously communicated with the Founders in Texas, and it was through those communications that it conspired and knowingly participated in the Founders' fraudulent misrepresentations, non-disclosures concealments, and breaches of fiduciary duty, which give rise to the causes of action asserted against Canaccord. Thus, Canaccord's transmissions of letters, emails, and phone calls to Texas, and use of misrepresentations made in, or sent to, Texas to induce investments in VBF that ultimately benefited the conspiracy and harmed VBF, are purposeful contacts sufficient to support specific jurisdiction over Canaccord. *See FCA Investments Co. v. Baycorp Holdings, Ltd.*, 48 Fed. App'x. 480 (5th Cir. 2002) (sufficient minimum contacts in Texas where defendant used false assurances and misrepresentations made in, or sent to, Texas to induce investment into joint venture to investor's detriment); *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir.1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *Middlebrook v. Anderson*, 3:04-CV-2294, 2005 WL 350578, at *3 (N.D. Tex. Feb. 11, 2005) ("A defendant's transmission of a

communication into the forum state is sufficient to be considered purposeful availment if the content of that communication gives rise to an intentional tort cause of action.") (citations omitted).[2]

VBF has met its prima facie burden for establishing specific personal jurisdiction over Canaccord.

### 3.      Exercise of jurisdiction over Canaccord would not offend traditional notions of fair play and substantial justice.

"Once it has been determined that the defendant purposely established minimum contacts within the forum state, the defendant must make a compelling case that the assertion of jurisdiction would be unfair."  *FCA Investments Co. v. Baycorp Holdings, Ltd.*, 48 Fed. App'x. 480 (5th Cir. 2002) (citations and internal quotation marks omitted). In considering the fairness issue, the Fifth Circuit examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* (citation omitted).

Canaccord does not assert that jurisdiction here is unfair.  Nor could it. Given the nature of the SAC's allegations, Canaccord's longstanding presence in Texas, Canaccord's purposeful contacts with Texas related to the SAC's allegations, the interests of VBF and Texas, and the prior

---

[2] That Canaccord's misconduct occurred through communications rather than physical travel to Texas—at least as far as VBF knows at this time without further discovery—makes no difference. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil . . . .").

determination that the Northern District of Texas is the proper forum for the intertwined claims against the Founders, the exercise of jurisdiction in Texas is convenient, efficient, and fair.

    **4.**    **Alternatively, VBF should be permitted to conduct jurisdictional discovery.**

If the Court is not inclined to deny Canaccord's 12(b)(2) motion, VBF requests leave to conduct jurisdictional discovery and to supplement this Response with any facts learned in discovery before the Court rules on the motion. *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) ("But still the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss. Thus, some courts have refused to grant such a motion before a plaintiff has had a chance to discover the facts necessary to establish jurisdiction.").[3] VBF has made at minimum, a preliminary showing that discovery may reveal additional facts to support general or specific jurisdiction, including but not limited to, principal place of business, operations in Texas, property ownership, payment of taxes, maintenance of bank accounts, and employees in Texas, the extent to which Canaccord promotes or advertises its services in Texas, and Canaccord's contacts with Texas in connection with its dealings with VBF and the Founders. *See generally Middlebrook*, 2005 WL 350578, at *3 n.5; *see also ECAP Holdings, LLC v. Quixotic Farming, LLC*, No. 3:18-CV-2193-L, 2019 WL 4748126, at *4 (N.D. Tex. Sept. 30, 2019) (granting jurisdictional discovery where the "parties' briefs, evidence, and Plaintiff's pleadings raise issues of fact . . . regarding the individual Defendants' relationship to the entity Defendants, the extent, if any, the various individual Defendants controlled or took action on behalf of the entity Defendants, and in what capacity they engaged in the conduct alleged").

---

[3] Canaccord has refused to respond to any discovery, including subpoenas that VBF issued in 2019, to which Canaccord originally represented it would produce documents, but has now become the subject of a fully-briefed motion to compel pending in the United States District Court for the Southern District of New York, *VeroBlue Farms USA, Inc. v. Wulf, et al., No.* 1:19-mc-37.

**B.**     **Neither the Engagement Agreement nor the Mutual Release bar VBF's claims.**

     **1.**     **The Engagement Agreement and Mutual Release should not be considered for purposes of a 12(b)(6) motion to dismiss because they are outside of the SAC.**

When considering a Rule 12(b)(6) motion, "a district court generally must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (footnote and quotation marks omitted). A district court may only consider documents attached to a motion to dismiss "when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.*

Canaccord contends that the Court may refer to the Engagement Agreement and the Mutual Release, attached to its Motion, "because the contracts were incorporated by reference in the Complaint, and the contracts are central to VBF's claims." Mot. at 5 n.2. Canaccord is incorrect. Neither the Engagement Agreement nor the Mutual Release were referenced in or attached to the SAC. They also are not central to VBF's claims for conspiracy and aiding and abetting, as neither of those claims arise from the Engagement Agreement and Mutual Release. This is not a suit for breach of either agreement, and VBF can prove its claims without reference to, and without reliance on, either agreement. At most, the SAC alleges that Canaccord was hired by VBF Canada to provide investment banking services, but such an allegation alone does not amount to "an incorporation by reference" of the Engagement Agreement and certainly not the Mutual Release.

Therefore, it is not appropriate for the Court to consider the Engagement Agreement and the Mutual Release on a Rule 12(b)(6) motion. And if the Court does look beyond the pleadings at these documents, "the district court must give the parties, especially the non-movant, ample notice that it may consider 'extra-pleading material'" so that the parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." *See Boateng v. BP, P.L.C.*, 779 Fed. App'x. 217, 220 (5th Cir. 2019), *cert. denied*, 19-579, 2019 WL 6689705 (U.S. Dec. 9,

2019); Fed. R. Civ. P. 12(d). Accordingly, VBF requests that the Court not consider the Engagement Agreement or the Mutual Release, and alternatively requests notice and a reasonable opportunity to respond should the Court decide to consider these documents.

### 2.     The Engagement Agreement is null and void.

Alternatively, Canaccord's reliance on the Engagement Agreement is misplaced.[4]   The Engagement Agreement (with the exception of its provisions regarding VBF Canada's indemnity obligations) was terminated by the Mutual Release, and is considered null and void.   *See* Canaccord APP0015 ("the Engagement Agreement is terminated and of no further force and effect, except as described in Section 3; it being agreed and understood that any term or provision of the Engagement Agreement that by the terms of the Engagement Agreement survives the termination of the Engagement Agreement is null and void and of no further force and effect."); Canaccord APP0016 (Section 3 providing that the parties mutually agreed to release each other from any and all claims, based upon, or rising out of, the Engagement Agreement, and expressly providing that only "VeroBlue's indemnity obligations . . . shall survive" the Mutual Release).

Under New York law, which governs the Engagement Agreement and the Mutual Release, "'parties to an agreement can mutually agree to terminate it by expressly assenting to its rescission while simultaneously entering into a new agreement dealing with the same subject matter.'" *Penguin Grp. (USA) Inc. v. Steinbeck,* 537 F.3d 193, 200 (2d Cir. 2008) (quoting *Jones v. Trice*, 202 A.D.2d 394, 395, 608 N.Y.S.2d 688, 688 (2d Dep't 1994)). "Once terminated and superseded, the new contract provides all of the parties' obligations and remedies for breach." *Id.* (citing

---

[4] VBF makes the remaining arguments in Sections []regarding the Engagement Agreement and Mutual Release in the alternative only in the event the Court finds that the Engagement Agreement and the Mutual Release are incorporated into the SAC and central to its claims. To the extent the Court determines that these agreements are not incorporated into nor central to VBF's claims and that it is nonetheless appropriate to look outside of the SAC, VBF respectfully requests that the Court grant it ample notice and a reasonable opportunity to respond.

*Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.,* 100 A.D.2d 865, 867 (2d Dep't 1984));

*see also Mallad Const. Corp. v. Cty. Fed. Sav. & Loan Ass'n,* 32 N.Y.2d 285, 292-93 (1973)

("Ordinarily, where an agreement alleged to have been breached has been rescinded, the claim is

determined by reference to the rescission agreement, and in general no such claim can be made

unless expressly or impliedly reserved upon the rescission."). Thus, the Mutual Release's

termination of the Engagement Agreement is effective, and Canaccord cannot rely on the

Engagement Agreement to dismiss VBF's claims.

### 3.   Canaccord cannot hide behind the Engagement Agreement's exculpatory clauses to shield itself from liability for intentional torts.

Under New York law, "an exculpatory agreement, no matter how flat and unqualified its

terms, will not exonerate a party from liability under all circumstances. Under announced public

policy it will not apply to exemption of willful or grossly negligent acts. . . . More pointedly, an

exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the

misconduct for which it would grant immunity smacks of intentional wrongdoing." *Kalisch-*

*Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-86 (1983); *see also Charron v. Sallyport*

*Glob. Holdings, Inc.*, No. 12CV6837, 2014 WL 7336463, at *21 (S.D.N.Y. Dec. 24, 2014)

("[E]xculpatory clauses, no matter how broad their language, cannot absolve liability for

intentional torts."), *aff'd*, 640 Fed. App'x 80 (2d Cir. 2016). Moreover, "exculpatory clauses should

be strictly construed against the person seeking exemption from liability." *HealthExtras, Inc. v.*

*SG Cowen Sec. Corp.*, No. 02 Civ. 9613(RO), 2004 WL 97699, at *2 (S.D.N.Y. Jan. 20, 2004).

Canaccord argues that VBF's claims are barred because the Engagement Agreement

provided that Canaccord was entitled to rely on, and assumed no obligation to verify, the accuracy

or completeness of information VBF provided to it. *See* Mot. at 16. Even if the Engagement

Agreement was still valid and effective—which it is not—it would not exculpate Canaccord from

14

the alleged intentional torts described in the SAC. The paragraph upon which Canaccord principally relies in the Engagement Agreement (paragraph 8) even provides an exception "as required by law," which Canaccord misleadingly omits from its recitation of paragraph 8. *See* Mot. at 16; Canaccord APP0008 (". . . under no circumstances will we be liable to you for any damages arising out of the inaccuracy or incompleteness of any such information, ***except as required by law***.").[5] The Parties' intention to carve out misconduct and intentional torts, such as that alleged by VBF, is reflected in another section of the Engagement Agreement, in Annex A, which provides that VBF indemnify Canaccord <u>except for</u> Canaccord's "gross negligence, willful misconduct, or fraud" in performing services that are the subject of the engagement. Canaccord APP0012. Thus, by its own terms, the Engagement Agreement, even if effective, does not protect Canaccord from claims of "gross negligence, willful misconduct, or fraud" and carves out an exception for when Canaccord may be held liable as required by law.

Because the facts alleged against Canaccord in the SAC are not of mere negligence but are of willful misconduct and/or fraud, and the Court must assume the truth of those allegations for purposes of a motion to dismiss, the exculpatory clause cannot shield Canaccord from liability from VBF's intentional tort claims. To hold otherwise would be tantamount to granting Canaccord immunity for its intentional wrongdoing, which would clearly be against public policy and the contractual language.

---

[5] Canaccord also does not reference other relevant language, which includes that the "Materials shall be the subject of [Canaccord's] review and approval prior to distribution" (Section 3); that Canaccord had the right "to conduct their due diligence investigation of the business and affairs of [VBF] and its subsidiaries…." (Section 6); and that Canaccord would rely on information "reasonably believed by us to be reliable and will apply reasonable standards of due diligence to any work which we perform under this Agreement in the nature of an assessment or review of data or other information." (Section 8).

4.      <u>The Mutual Release does not cover VBF's claims in this lawsuit.</u>

Even if the Mutual Release could be considered and was enforceable (which it is not), VBF's claims against Canaccord, which were not yet in dispute at the time of the Mutual Release, are not within the scope of the release.  Under New York law, the "meaning and coverage of a release necessarily depends upon the controversy being settled and upon the purpose for which the release was given." *Chiappone v. N. Shore Univ. Hosp.*, 164 A.D.3d 463, 465 (N.Y. App. Div. 2018). "While a broad general release will be given effect regardless of the parties' unexpressed intentions, such release may not be read to cover matters which the parties did not intend to cover." *Id.* In *Chiappone*, the parties entered into a broad release of all present and future claims whether known or unknown. *Id.* at 464. The court determined that the defendant "failed to establish, as a matter of law, that the release executed by the parties settling [the first lawsuit] was intended to preclude the plaintiff from recovering for claims that . . . were not yet in dispute at the time the release was executed." *Id.* at 465.

Here, the terms of the Mutual Release were clearly intended to cover only the dispute of whether VBF owed Canaccord any money for its services, and not the current conspiracy and aiding and abetting claims. *See* Canaccord APP0015 ("**Background:** . . . The Parties dispute whether VeroBlue owes any amount of money to Canaccord under the Engagement Agreement with the [sic] respect to the Transaction and, if so, the amount owed (the "Dispute").").  The Mutual Release does not reference any of the claims VBF currently asserts. As explained by one New York court:

> A release may contain specific recitals as to the claims being released, and yet conclude with an omnibus clause to the effect that the releasor releases and discharges all claims and demands whatsoever which he or his heirs, executors, administrators, or assigns have or may have against the releasee. In such situations, the courts have often applied the rule of ejusdem generis, and held that the general words of a release are limited by the recital of a particular claim, where there is

16

nothing on the face of the instrument, other than general words of release, indicating that matters other than those specifically referred to were intended to be discharged.

*Green v. Lake Placid 1980 Olympic Games, Inc.*, 147 A.D.2d 860, 862 (1989) (citation omitted)). In *Green*, the court found that such a broad general release that was meant to settle one dispute was unenforceable in another dispute. Similarly, here, this Court should find that the Mutual Release was meant to settle the payment dispute that it expressly referred to, and not this dispute, which had not yet been in dispute.

> **5.    Whether the Mutual Release is valid, at a minimum, is a fact issue that cannot be resolved on a 12(b)(6) motion to dismiss.**

VBF further disputes the validity of the Mutual Release on the ground that it was procured through fraud.  This release was signed in September 2016 by one of the Founder Defendants, at a time when the Founders were still in full control of and operating VBF for their own fraudulent purposes.  *See* SAC ¶ 1. A release is a contract and, like other contracts, may be avoided if it was procured through fraud. *See Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991) (holding, under New York law that, "even where, as here, the language of a release is 'clear and unambiguous on its face, the court may still . . . rescind that [release] where it finds either mutual mistake or one party's unilateral mistake coupled with some fraud ... of the other party.").

Thus, the issue of whether the Mutual Release—which is outside of the SAC and not central to VBF's claims—is valid and enforceable raises a fact issue that precludes 12(b)(6) dismissal.[6]

## C.    **VBF adequately pleaded its claims against Canaccord.**

VBF asserts two claims against Canaccord: one for conspiracy and the other for aiding and abetting conspiracy. Canaccord's contention that both claims "sound in fraud" is incorrect.

---

[6] VBF reserves the right to bring an adversary action against Canaccord in its bankruptcy proceedings pursuant to 11 U.S.C. §§ 544(a) and 548 to void or avoid the Mutual Release.

Although VBF's conspiracy claim is based, in part, on fraudulent misrepresentations, nondisclosures and/or concealments made to VBF, its disinterested directors, and third parties, it is also based on the Founders' breaches of fiduciary duty, which do not sound solely in fraud. And VBF's aiding and abetting conspiracy claim is based entirely on the Founders' breaches of fiduciary duty. *Compare* SAC ¶¶ 358-64 *with* ¶¶ 364-69. VBF's claims against the Founders fall in two general categories: (a) fraudulent misrepresentation, nondisclosure or concealment of key operational and financial metrics ("Metrics") (*see, e.g.,* SAC ¶¶ 54-170); and (b) waste of VBF assets (*see, e.g.*, SAC ¶¶ 25-53, 171-175). The latter category is purely for breach of fiduciary duty.

1. **VBF pleaded its claims with sufficient particularity, including to the extent Rule 9(b) may apply.**

Contrary to Canacord's suggestion, neither of VBF's claims are entirely subject to 9(b), and even assuming they are, VBF has pleaded those claims with sufficient particularity. "Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty, or non-fraudulent misstatement." *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004). "In ordinary circumstances, the particularity requirement does not extend to claims for which fraud is not an element." *Id.* Only when fraudulent conduct "is alleged to underlie a claim for which fraud is a possible—but not a necessary—element" is particularity required, and then only "to the extent that a plaintiff in fact alleges fraud." *Id.* In other words, if a claim is not based solely on fraud, then Rule 9(b) does not apply to the entire claim. *See id.*

Canaccord contends that "VBF fails to allege with particularity Canaccord's engagement in fraud in furtherance of the supposed conspiracy." Mot. at 21. But VBF has not asserted a claim for fraud against Canaccord—it has asserted a claim for conspiracy against Canaccord.

18

Accordingly, VBF need only plead with particularity facts regarding any underlying fraud to the conspiracy, which here is the Founder's fraud.  VBF has met this burden, as explained in detail in its responses to the Founders' and Drivers' motions to dismiss. *See* VBF's Resp. & Br. in Opposition to Founder Defs.' Mot. to Dismiss, Dkt. 217 at 7-21;  VBF's Resp. & Br. in Opposition to Driver's Mot. to Dismiss, Dkt. 18 at 9-16.

Canaccord submits a misleading demonstrative that mischaracterizes the SAC's well-pled facts.  Canaccord Motion, Appendix C, "Canaccord Summary Chart."  The ***29 page summary chart,*** which cites to at least 65 different SAC paragraphs, actually highlights that VBF has pled sufficient facts to state a claim.  One misrepresentation is sufficient to state a claim—and by Canaccord's implicit admission, VBF alleged at least 65.  *Id.* Further, it is not required that each paragraph of VBF's SAC meet the standards of Rule 9(b) because not each paragraph is a stand-alone representation.  Collectively, VBF's extensive allegations meet the Rule 9(b) standard (to the extent it even applies).  For example, items numbered 3 through 19 in the Canaccord Summary Chart represent numerous examples of when the Founders represented that VBF's FCR was 1:1 and items numbered 11 and 14-17 are examples of Canaccord's involvement in those representations.  *Id.*  Almost every paragraph also cites to an exhibit, including SAC Exhibits 4 and 7-22 (the Canaccord Summary Chart itself fails to reference those exhibits in most entries), which are ***documents*** containing the representations.  In many instances, those exhibits show who received (or would receive) that information.  SAC, Exs. 14, 16, 19, 20, 23.  These allegations and exhibits undoubtedly meet 9(b) requirements.  And the same is true for a number of other Metrics that the Founders and Canaccord misrepresented.

Even more misleading is that the Canaccord Summary Chart includes allegations where VBF presented its real Metrics to explain how the Founders and Canaccord's representations were

false or where the Founders (and sometimes Canaccord) schemed to misrepresent data, and argues that VBF must meet the 9(b) requirements as to those allegations. Canaccord Summary Chart, No. 3, 20-22, 26, 31, 37, 43, 44, 47, 57. Obviously, VBF has no need to do so.

Canaccord also omitted from its Summary Chart instances of Canaccord representations and other important information from the SAC. For example, the Canaccord Summary Chart represents that the Founders were the only parties involved in the misrepresentations contained in SAC paragraphs 108, 109, and 119-120 and conveniently omits that those paragraphs reference SAC Exhibits 19, 20 and 23. Canaccord Summary Chart, No. 16, 17, 25-26. Exhibit 23, however, makes it clear that Canaccord helped concoct the Founders' representations that were intended for potential investors by elaborating on how increasing VBF's stocking density to 16,000 fish per tank would impact VBF's bottom line i.e., its average harvest. *See* SAC, ¶¶ 119-120, 136 & Ex. 23. Moreover, the evidence cited and included in the SAC shows that Ginsberg, a Canaccord representative at relevant times, admitted at his deposition that Goodman's manipulation of density set forth above was a way to "juice up the numbers." *See* SAC, ¶ 121 & Ex. 24. Further, Exhibits 19, 20 and 23 make it clear that the Founders intended Canaccord to disseminate the written representations to potential investor pools. *See* SAC ¶¶ 108, 109, 119 & Exs. 19, 20, 23. For example, in Exhibit 19 Wulf circulates a modified teaser and marketing deck to Canaccord to use "on the big equity push." In Exhibit 20, Canaccord agrees to forward information Wulf provides it to "Kew and Investec," presumably, potential investors. Further, Exhibit 23 shows Wulf and Canaccord working together to prepare a correspondence to a "Michael," and also refers to comments made by "Avrio and Wheat Sheaf" being "concerned" that "12% debt" would put too much stress on VBF. These were not only Founder misrepresentations, but also Canaccord misrepresentations.

Therefore, VBF has adequately pleaded Canaccord's actions in furtherance of the conspiracy and participation in the Founders' breach of fiduciary duties, including adequately pleading the underlying fraud of the Founders.

### a.    VBF is not required to allege Canaccord's intent or knowledge with particularity.

Contrary to Canaccord's suggestion, VBF is not required to allege with particularity Canaccord's knowledge that the information about VBF was false or Canaccord's specific intent to commit fraud, as Rule 9(b) does not require intent or knowledge to be pleaded with particularity. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also In re NE 40 Partners, Ltd.*, 411 B.R. 352, 366–67 (Bankr. S.D. Tex. 2009) ("Rule 9(b) creates a relaxed standard for pleading a party's mental state and the Plaintiff need only allege facts sufficient to support a reasonable inference that [defendant] harbored the requisite mental state for civil conspiracy.").   Indeed, the law recognizes that conspiracies are by their nature shrouded in secrecy, which is why "[i]ntent can be proven by circumstantial evidence and reasonable inference." *Wackman v. Rubsamen*, 602 F.3d 391, 409 (5th Cir. 2010) (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968)). As explained by the Texas Supreme Court:

> When men enter into conspiracies, they are not likely to call in a witness . . . [in] such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained. They are not likely to proclaim them in the hearing of witnesses.

*Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963) (citation and internal quotation marks omitted).

The SAC alleges Canaccord's knowledge and intent.  *See* SAC ¶¶ 75-87, 119-122, 136-137, 358-369.  The SAC also alleges sufficient facts to show that the information provided by VBF

21

was false and Canaccord knew it was false.  *Id.*; *see also*, ¶¶ 94, 75-83, 112-114, 127, 130, 133-134, 153.  Yet, Canaccord nonetheless assisted the Founders' in their ongoing misconduct. *See id.* ¶¶ 74-87, 103, 106-109, 117, 119-122, 133, 135-137, 153, 169 & Exs. 4, 5, 12, 13, 14, 17-20, 23-25, 26, 29.  And Canaccord stood to benefit financially from the Founders' financial gain.  *See id.* ¶¶ 11, 360, 365.  These are sufficient facts from which a reasonable inference can be drawn that Canaccord knew the Founders' conduct was wrongful and that Canaccord had the intent to accomplish the conspiracy's unlawful objective.  *See Wackman*, 602 F.3d at 409 ("[F]inancial gain can be a motive to conspire.") (citation omitted); *Int'l Bankers*, 368 S.W.2d at 582 ("Inferences of concerted action may be drawn from joint participation in the transactions and from enjoyment of the fruits of the transactions on the part of the three defendants."); *Mims*, 536 S.W.2d at 570 ("A conspiracy may be established, therefore, by proof which shows a concert of action or other facts and circumstances from which the natural inference arises that the wrongful, overt acts were committed in furtherance of a common design, intention, or purpose of the conspirators.").

**b.** **VBF has adequately pleaded the "meeting of the minds" element of its conspiracy claim.**

Canaccord also asserts that VBF fails to adequately allege that Canaccord had a "meeting of the minds" with the other defendants because it does not allege a specific place or time in which such a "meeting of the minds" took place.  Mot. at 18. Canaccord effectively contends that VBF needs to plead the who, what, when, and where, of the "meeting of the minds" element of its conspiracy claim.  In support, Canaccord cites to *Patel v. Pacific Life Ins. Co.*, No. 3:08CV0249B, 2009 WL 1456526 (N.D. Tex. May 22, 2009), arguing that it stands for the proposition that a plaintiff is required to specify a "specific time or place in which [the] meeting of the minds took place" in order to state a claim for civil conspiracy. Mot. at 18.  Canaccord's reliance on *Patel* is misplaced.  VBF does not have to allege a specific date and time as to the "meeting of the minds"

element. The holding in *Patel* was that the complaint was not adequately pleaded under Rule 8 (not Rule 9(b)) because the only reference to the time frame in which the defendants conspired was "in the late 1990s," which the Court held was not definitive enough to put any defendant on sufficient notice. *Id.* at *4.

In contrast, here, VBF has alleged, in exhaustive detail, a conspiracy involving specific, dated communications from Canaccord, and an overall time period for the conspiracy that is much shorter and more definitive than a reference to a decade, and this is sufficient to put Canaccord on notice of the alleged wrongdoing. *See, e.g.,* SAC ¶¶ 119-121 & Ex. 23 ("In a June 20, 2015 e-mail, Wulf made a written representation to Goodman (of Canaccord) that VBF's base model used a density of 10,000 fish per tank but 'today we are stocking at 16,000 a 6,000 difference.'"); ¶ 78 ("On June 12, 2015, Ginsberg, Wulf, and Dr. Michaels had a conference call to discuss VBF. Ginsberg provided the Third June 2015 Written Representations to Dr. Michaels…."); *see also Quesenberry v. Alliant Law Group, PC*, 4:09-CV-414, 2010 WL 1189457 at *4 (distinguishing *Patel* on the basis the plaintiff in the present suit specified a particular activity, "involving specific, dated communications from Defendants" in support of conspiracy claim); (E.D. Tex. Mar. 5, 2010), *adopted sub nom. Quesenberry v. Alliant Law Group, P.C.*, 4:09CV414, 2010 WL 1189481 (E.D. Tex. Mar. 24, 2010); *Bourland v. State*, 528 S.W.2d 350, 354 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) ("Upon entering the conspiracy one becomes a party to all acts previously or subsequently done by any of the other conspirators in pursuance of the conspiracy.") (citation omitted).

To the extent Canaccord suggests that VBF is required to allege facts that show the defendants entered into an express agreement to enter into a conspiracy, this is not the law. As explained by the Fifth Circuit, "[c]onspiracy agreements 'need not be formal, the understanding

may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy.'" *Wackman v. Rubsamen*, 602 F.3d 391, 409 (5th Cir. 2010) (citing *Bourland v. State*, 528 S.W.2d 350, 354 (Tex. App.—Austin 1975, writ ref'd n.r.e.)).

Canaccord's argument that the SAC's allegations "affirmatively undercut its meeting of the minds" claim also fails.  For example, Canaccord contends that the July 7 to July 10, 2015 email chain between its sales representative Clive Ginsberg and Les Wulf and Ginsberg, discussed in paragraph 88 and Exhibit 6 to the SAC, demonstrates that "VBF lied to Canaccord." Mot. at 20. To the contrary, it can be reasonably inferred from the allegations in paragraph 88 that Canaccord, who, at the time was "disappointed with the reception in the marketplace received by VBF, and had Dr. Michaels' and Dr. Fitzsimmons' stark and negative findings in hand," knew that Wulf provided it with a false "story" to tell other potentially interested parties that VBF had commitments to 50% of its targeted equity investment. SAC ¶ 88.  Further, even if Wulf or another one of Canaccord's co-conspirators lied to Canaccord, the mere fact that a co-conspirator "lied" to another co-conspirator would not negate the existence of a conspiracy.  Nor does the fact that Canaccord was allegedly eventually cheated by its co-conspirators absolve it from liability for its role in the conspiracy, as Canaccord suggests. *See* Mot. at 20; *see also United States v. Gohari*, 227 F. Supp. 3d 313, 316 (S.D.N.Y. 2017) ("It is also true that Cabrera admitted that he at times lied to his coconspirators; but the Court does not agree with defendant's claim that this negates the existence of a conspiratorial scheme. As suggested by the age-old maxim, 'no honor among thieves,' coconspirators may reach some basic agreements among themselves but also engage in self-interested lying to each other on other points. It is commonplace, for example, for coconspirators to agree in principle to equally share proceeds of their illegal acts and yet, in

practice, to try to cheat each other out of parts of the proceeds; but they are still guilty of having conspired to commit the illegal acts.").

Canaccord also argues that VBF's conspiracy claim must be dismissed because the SAC alleges misconduct between the other defendants that occurred "before the Canaccord Project started and continued after the Canaccord project ended." Mot. at 20. That one of the conspirators joins the conspiracy at a later time, however, does not defeat a conspiracy claim. *See Mims v. Bohn*, 536 S.W.2d 568, 570 (Tex. Civ. App.—Dallas 1976, no writ) ("All conspirators are jointly and severally liable for wrongful acts done in furtherance of the conspiracy. This is true even though one of the conspirators enters into the conspiracy at a later time.") (internal citations omitted). And although a co-conspirator can withdraw from the conspiracy, withdrawal does not negate an element of conspiracy, and a defendant he nonetheless remains guilty of conspiracy. *United States v. Salazar*, 751 F.3d 326, 331 n.1 (5th Cir. 2014) ("Withdrawal does not negate an element of the conspiracy crimes charged here. . . Far from contradicting an element of the offense, withdrawal presupposes that the defendant committed the offense. . . . Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law through every moment of [the conspiracy's] existence, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot. Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy.") (quoting *Smith v. United States*, ––– U.S. ––––, 133 S. Ct. 714, 719 (2013)).

2.    **The aiding and abetting conspiracy claim is not redundant and is in substance an allowable claim for knowing participation in a breach of fiduciary duty.**

VBF's aiding and abetting claim is not redundant of its conspiracy claim. As explained above, VBF's aiding and abetting claim is not based on fraudulent conduct; rather it is based on the Founders' breaches of fiduciary duty and Canaccord's knowing participation in those breaches.

Although the Texas Supreme Court has not expressly recognized a cause of action for aiding and abetting, Texas lower courts have. *See, e.g., Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.); *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *cf. First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017) (assuming, without deciding, that there was a cause of action for aiding and abetting). Nonetheless, the Fifth Circuit recently made clear its intent to not recognize an aiding and abetting cause of action under Texas law until the Texas Supreme Court expressly adopts it as a cause of action. *See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 18-10755, 2019 WL 6834031, at *7 (5th Cir. Dec. 13, 2019) ("[W]e cannot recognize a claim that the Texas Supreme Court has yet to expressly adopt.") (citing *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781–82 (5th Cir. 2018)). Importantly, "in reaching that conclusion, the [Fifth Circuit] expressly distinguished an aiding-and-abetting claim under Texas law from a claim seeking to hold a joint tortfeasor liable for knowingly participating in another's breach of fiduciary duty." *Milligan, Tr. for Westech Capital Corp. v. Salamone*, 1:18-CV-327-RP, 2019 WL 4003093, at *1–2 (W.D. Tex. Aug. 23, 2019) (citing *In re DePuy*, 888 F.3d. 753 at 782).

Recently, Judge Pittman in the Western District of Texas held the existence of a cause of action for knowing participation in another's breach of fiduciary duty in Texas is "settled law." Id. (citation omitted). "Indeed, the Fifth Circuit has repeatedly recognized the existence of a cause of action for knowing participation in the breach of a fiduciary duty." *Id.* (citing *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (reciting the elements of such a claim) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)); *see also Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) ("[W]here a third

26

party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.") (citation omitted).

In form, Count XXI is titled as a claim for "aiding and abetting conspiracy," but in substance, it is a claim for knowing participation of a breach of fiduciary duty. To state a claim for knowing participation in a breach of fiduciary duty, a plaintiff must allege sufficient facts to show "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship." *D'Onofrio*, 888 F.3d at 216 (citation omitted) (applying Texas law). To the extent Count XXI is subject to Rule 9(b), it is based on the same conduct adequately set forth related to VBF's claim for Conspiracy (Count XX), as set forth above. The SAC also adequately sets forth the existence of the fiduciary relationship, Canaccord's knowledge of the same, and Canaccord's participation in the breach of that fiduciary relationship. *See, e.g.*, SAC ¶ 56 ("Founders violated their fiduciary duty of due care by blatantly and intentionally mismanaging and misusing VBF funds and assets without regard to VBF's best interests…"); ¶ 65 ("The Founders had the substantial assistance of Canaccord,…hired to help the Founders find debt and/or equity investments in VBF Canada….[T]he representations that Canaccord concocted and publicized with the Founders were relayed to VBF, and continued by former Canaccord employees…."); ¶ 71 ("[t]he Founders and Canaccord shared and revised data related to VBF's business and the Metrics, and in turn made representations regarding the same in Reports"); ¶ 82 ("The Founders and Canaccord concealed [Dr. Michaels'] prophecy of bankruptcy from potentially interested third parties, and ultimately from disinterested VBF directors."); ¶ 171 ("Another example of the Founders' blatant disregard of their fiduciary duties when it came to handling VBF's money[] was causing VBF to purchase a building and underlying property

unnecessary to VBF's business…."); ¶ 290 ("each of the Founders had a meeting of the minds with each of the other Founders and agreed to engage in the breaches of fiduciary duties and fraud alleged herein, for their personal benefit, to cause harm to VBF, while concealing the same from VBF"); ¶ 367 ("Canaccord knowingly and substantially assisted the Founders in carrying out the Conspiracy alleged herein, while concealing the same from VBF, its disinterested board members, and potentially interested third parties.").

Therefore, VBF has properly pleaded a claim for knowing participation of a breach of fiduciary duty. Nonetheless, for the purpose of clarity and in light of the Fifth Circuit's recent opinion, VBF also requests leave to amend the SAC to re-name its claim as a claim for knowing participation of a breach of fiduciary duty and otherwise conform its allegations to this claim.

### D.    Canaccord's 12(b)(3) motion is procedurally improper because a case cannot be dismissed under 12(b)(3) based on a forum-selection clause.

Although in form, Canaccord moves to dismiss VBF's claims for improper venue under Rule 12(b)(3), in substance, it seeks to enforce a forum-selection clause in the Engagement Agreement. Mot. at 24 ("This Court must dismiss Canaccord from this action because the Engagement Agreement between Canaccord and VBF requires that this action be filed in New York state or federal court.") (citing Fed. R. Civ. P. 12(b)(3)). Canaccord's 12(b)(3) motion is procedurally improper and must be denied.

It is well-established that an action cannot be dismissed under Rule 12(b)(3) based on a forum-selection clause. As the U.S. Supreme Court held in *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western. Dist. of Texas*, Rule 12(b)(3) allows dismissal only when venue is 'wrong' or 'improper[,]' and "[w]hether venue is 'wrong' or 'improper' depends exclusively one whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." 571 U.S. 49, 55-56 (2013).

Indeed, whether there is a valid forum-selection clause has no bearing on whether a case has been brought into a proper venue. *See id.* at 56.

Canaccord does not argue that venue here is improper under the federal venue laws. Instead, it seeks dismiss this case for improper venue solely on the basis of the forum-selection clause in the Engagement Agreement.[7] This, it cannot do. A 12(b)(3) motion is not a proper mechanism to enforce a forum-selection clause; Canaccord's 12(b)(3) motion must be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Canaccord's Motion. If the Court is not inclined to deny Canaccord's 12(b)(2) motion and/or 12(b)(6) motion, VBF respectfully requests leave to conduct jurisdictional discovery and/or leave to amend its Second Amended Complaint.

---

[7] Further, by Canaccord's own argument that the Mutual Release is valid (which VBF has raised at least a fact issue that it is not), that Mutual Release extinguished the forum-selection clause in the Engagement Agreement. *See* Canaccord APP0015 ("The Parties acknowledge and agree that . . . the Engagement Agreement is terminated and of no further force and effect, except as described in Section 3; it being agreed and understood that any term or provision of the Engagement Agreement that by the terms of the Engagement Agreement survives the termination of the Engagement Agreement is null and void and of no further force or effect."). Therefore, Canaccord's position is inconsistent as the documents it improperly relies upon in its Motion do not support the finding of an applicable forum-selection clause.

Dated: January 10, 2019                    Respectfully submitted,

                                           */s/ Nicole L. Williams*
                                           Nicole L. Williams
                                               Texas Bar No. 24041784
                                               nicole.williams@tklaw.com
                                           William L. Banowsky
                                               Texas Bar No. 01697125
                                               bill.banowsky@tklaw.com
                                           Jasmine S. Wynton
                                               Texas Bar No. 24090481
                                               jasmine.wynton@tklaw.com
                                           **THOMPSON & KNIGHT LLP**
                                           One Arts Plaza
                                           1722 Routh Street, Suite 1500
                                           Dallas, Texas 75201
                                           (214) 969-1700
                                           (214) 969-1751 (facsimile)

                                           */s/ Robert H. Lang*
                                           Robert H. Lang
                                               (appearing *pro hac vice*)
                                               rhlang@thompsoncoburn.com
                                           **THOMPSON COBURN LLP**
                                           55 East Monroe, 37th Floor
                                           Chicago, Illinois 60603
                                           (312) 346-7500

                                           ***Attorneys for Plaintiff VeroBlue
                                           Farms USA, Inc.***

## CERTIFICATE OF SERVICE

This document was filed electronically on January 10, 2019, and, in compliance with Local Civil Rule L.R. 5.1(d), a copy of this document has been served on all counsel of record.

                                           */s/ Jasmine S. Wynton*