UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
|     Defendants | § | |

**VEROBLUE FARMS USA, INC.'S RESPONSE TO SEAN MANIACI'S MOTION TO DISMISS CLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(2) & BRIEF IN SUPPORT**

This Court should deny Sean Maniaci's ("Maniaci") motion to dismiss for lack of personal jurisdiction ("Motion") because he has purposefully established minimum contacts with the State of Texas by conspiring with the Texas-based defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John Rea (collectively, the "Founders") and aiding and abetting their misconduct, by representing VBF through communications to Texas with Texans, and, by other acts such as indirectly owning stock in VBF. For the reasons explained below, his Motion should be denied.

## I.   INTRODUCTION

VBF asserts two claims against its former attorney Maniaci, for conspiracy and aiding and abetting[1] the Founders in their misconduct. Maniaci moves to dismiss solely on the basis that this Court lacks personal jurisdiction over him. In support of his motion, Maniaci submits an affidavit ("Maniaci Aff."), in which he generally avers he is a Canadian, he is not licensed as an attorney in Texas, has never had an office in Texas, has never traveled to Texas to represent any clients, and

---

[1] For the reasons explained in VBF's contemporaneously-filed Response to Canaccord Genuity LLC's Motion to Dismiss, including a December 2019 Fifth Circuit ruling, VBF intends to seek leave of court to re-name its claim from aiding and abetting to knowing participation of a breach of fiduciary duty. Maniaci did not assert any 12(b)(6) grounds for dismissal of either claim brought against him.

1

has never had any Texas clients.  *See* Dkt. 208, Maniaci Aff. ¶¶ 2, 6, 7, 15, 17, 18.  While Maniaci admits he and his law firm, Cassels Brock & Blackwell LLP ("CBB"), have represented Veroblue Farms, Inc. ("VBF Canada"), he states that he and CBB do not have any representation agreement with VBF and have not represented VBF.  *Id.* ¶¶ 26, 27, 33.

Contrary to Maniaci's assertions in his affidavit, his contacts with Texas run much deeper. Maniaci represented VBF and provided legal advice to VBF, an entity with a Texas office, for several years.  Notably, he and his law firm recently sought to recover legal fees from VBF—the entity he allegedly never represented—in VBF's bankruptcy proceedings. He was also a shareholder of VBF's affiliate, VBF Canada, which in turn was a shareholder of VBF.  He worked extensively with the Founders, who lived and worked in Texas, directing many communications into Texas.  He also provided legal advice to the Founders in relation to their other projects, such as Opposing Flow Aquaculture, Inc. ("OFA"), a Texas entity formed to sell VBF tanks.  And, recently in 2019, he has sought to surreptitiously interfere in VBF's bankruptcy proceeding, sending a letter to VBF's shareholders, including at least one Texas shareholder, in an attempt to garner opposition to the VBF's bankruptcy plan.

It is also important to note the allegations of VBF that Manaci does <u>not</u> contradict in his affidavit: (i) he was a shareholder in VBF; (ii) he represented VBF Canada, a shareholder in VBF; and (iii) he was engaged by and received direction from the Founders, who were located in Texas. For these reasons and others discussed below, the Court has jurisdiction over Defendant Maniaci.

## II.   BACKGROUND[2]

The Founders founded VBF, a sustainable fish farm, in 2014. SAC ¶ 1. The Founders were all directors, officers, and employees of VBF from October 1, 2014 through their termination in

---

[2] The Affidavit of Norman McCowan is attached hereto and incorporated herein as Exhibit A.

late 2017 or early 2018. *Id.* ¶¶ 7-10. The Founders (other than Driver) all lived and worked in Texas. SAC ¶¶ 7-10.

VBF was described by the Founders at relevant times as a "wholly owned subsidiary" of VBF Canada.  N. McCowan Decl., Tab A-3.  As one of the Founders explained, "[t]he primary reasons we set up the holding company as Canadian is there are far more beneficial tax treaties for European and Asian investors, much lower corporate tax rate, and for future international expansion, if cash flow in [sic] as a royalty as tax free. Even though the parent company is Canadian, all accounting, reporting and taxes are done in USD and as a result, no currency exposure."  N. McCowan Decl., Tab A-3; *see also* N. McCowan Decl., Tab A-4; *In re: VeroBlue Farms USA, Inc., et al.,* No. 18-01297 ("Bankruptcy Proceeding"), Dkt. 1 at 11, List of Equity Security Holders of VBF USA (listing VBF Canada as the major shareholder of VBF).

Maniaci and his firm, CBB served as legal counsel to VBF, VBF Canada, and possibly other VBF-related entities on a large variety of matters from 2014 through November 2017. *Id.* ¶ 189-190. Maniaci has worn several hats as to VBF—acting as its counsel, owning stock in one of its affiliates, and later acting as an adversary working against VBF with the Founders to subvert VBF's bankruptcy proceeding.[3]

## A.    Facts Undercutting Maniaci's Distinction Between VBF and VBF Canada.

In his Motion, Maniaci tries to distinguish VBF from VBF Canada, which is nothing more than a straw man.  Mot. at 5.   In addition to the statements from the Motion and Maniaci's affidavit set forth in the preceding section, Maniaci avers in his Motion and supporting affidavit that "[n]either CBB [Maniaci's law firm] nor Mr. Maniaci have ever represented VBF USA" *Id.* at 26. Maniaci's representations, however, are undercut by the facts set forth below.

---

[3] Neither VBF nor Maniaci (or CBB) have entered into any disengagement of representation agreement or notification.

3

Indeed, not mentioned in the Motion or Maniaci's supporting affidavit is the fact that on November 26, 2018, CBB filed a *sworn* Proof of Claim in *VBF's* Bankruptcy Proceeding, for $275,349.21 for "Legal Services" ("CBB Proof of Claim") against VBF—an entity he swears under oath that neither he nor CBB have ever represented. *See* Maniaci Aff. ¶ 26-27; *see also* N.McCowan Decl., Tab A-34. Notably, Maniaci assisted in the preparation of the sworn CBB Proof of Claim, which was signed by a CBB colleague. N. McCowan Decl., Tab A-35, Answer to Interrogatory 3. In a sloppy effort to nullify the impact of this sworn representation to the bankruptcy court[4]—that CBB and Maniaci did indeed represent VBF—CBB attempted to withdraw the CBB Proof of Claim on August 16, 2019, about nine months later. N. McCowan Decl., Tab A-34.

The CBB Proof of Claim is an obvious indication from Maniaci's own firm that it (and he) performed legal services for VBF—not just VBF Canada. The CBB Proof of Claim is signed under the penalties of perjury, and is dated November 26, 2018. *In re. VBF Operations Inc*., Case No. 18-01298, Claim 1-1; *In re. VBF Transport Inc*., Case No. 18-01299, Claim 2-1; *In re VBF IP INC*., 18-01300, Claim 21-1; and *In re. Iowa's First, Inc*., Case No. 18-01301, Claim 7-1.Thus, CBB (through Maniaci) represented under oath to a federal court that VBF owed CBB almost $300,000 for CBB's (and Maniaci's) legal representation of VBF. *Id.* Attached to the CBB Proof of Claim are two invoices. *Id.* The first invoice, dated September 27, 2017, was sent to VBF's former Plano, Texas address, was for "General Corporate Matters," and further identified as

---

[4] CBB and Maniaci apparently made the withdrawal not only to erase unfavorable facts relevant to this Motion from the record, but also from the record relating to a pending adversary complaint filed in the Bankruptcy Proceeding by VBF and its co-Bankruptcy Debtors to retrieve their file materials from CBB, as alleged in the SAC. The Bankruptcy Debtors have brought an adversary complaint against CBB for turnover of these files and other data in the Bankruptcy Proceeding. (*Id.* at ¶ 198.)

"relating to general corporate as well as tax advice relating to the Restructuring; and correspondence with working group on all matters."[5] *Id.*  This invoice lists extensive work by Maniaci and other CBB lawyers as to the Restructuring.  *Id.*  CBB's invoices to VBF will be further addressed below.

**B.    Maniaci's first "hat" as counsel for VBF.**

As VBF's counsel, Maniaci was CBB's "relationship partner" for VBF, overseeing CBB's legal representation of VBF and its affiliates including, but not limited to, VBF Canada. SAC ¶¶ 189-90.  Maniaci is currently identified by CBB as a partner in its securities law group, purporting to specialize in industries such as aquaculture (VBF's industry). *Id.*  Maniaci and CBB represented VBF, VBF Canada, and possibly other VBF and Founder-related entities on a large variety of matters from 2014 through November 2017, including general corporate and securities issues, issues relating to Opposing Flows Technology ("OFT"), import/export work, and corporate structuring. *Id.* ¶¶ 90, 91, 189-90.  Thus, Maniaci's representation of VBF was not casual or isolated. *Id.* Rather, Maniaci represented VBF on many aspects of its operations (such as the preparation of written representations). *See, e.g.,* N. McCowan Decl., Tab A-18 and A-2.  In addition, Maniaci and CBB worked closely with their co-counsel for VBF, Jackson Walker LLP ("Jackson Walker"), a Texas-based law firm.  *Id.* at ¶ 200.

Maniaci and his firm often did not distinguish between the work they performed for VBF versus VBF Canada.  The blended nature of Maniaci's legal work for VBF as well as VBF Canada can be seen in CBB's invoices, signed by Maniaci, for such work sent to Canada; Plano, Texas; and Webster City, Iowa. *See also* N. McCowan Decl., Tab A-20 at 6, listing several Founders as

---

[5] CBB and Maniaci's legal work for VBF as to the Restructuring concerned a possible transaction through which the stock of VBF Canada would be converted to VBF stock, which ultimately was found to be unnecessary in light of VBF Canada's ownership of VBF stock (and therefore, shareholders of VBF Canada indirectly owned VBF stock).

shareholders, all based in "Dallas, Texas," and Tab A-28 at 8, solicitation for VBF Canada stock, cover page, listing Maniaci as counsel and the relevant company address as 1507 Capital Avenue, Plano, Texas.)  Other examples include invoices for Maniaci's and CBB's legal work for VBF were sent to VBF's Plano, Texas address from various dates in 2014 through November 2017: "December 2015 Offering" (N. McCowan Decl., Tab A-5); OFA (which is explained in further detail below) (N. McCowan Decl., Tab A-2); Import/export matters (N. McCowan Decl., Tab A-6); "General Corporate Matters" (N. McCowan Decl., Tab A-7); "Common Share Offering" (N. McCowan Decl., Tab A-8); "Private Placement of Preferred Shares" (N. McCowan Decl., Tab A-9); "Restructuring" (N. McCowan Decl., Tab A-10), which was legal work for both VBF Canada and VBF, the entities to undergo the contemplated "restructuring").  Also, account statements were sent for the foregoing matters to VBF's Texas address. N. McCowan Decl., Tab A-11.  VBF, as opposed to VBF Canada, paid many of the invoices for Maniaci and CBB's legal work.  N. McCowan Decl., Tabs A-12 through A-15, wire transfer forms and a bill reflecting CBB legal service to VBF; Exhibit A, Tab A-16, emails between Maniaci and VBF's chief financial officer.

More specifically, a sampling of Maniaci's and CBB's representation of VBF includes, but is not limited to (i) advice on securities law issues, as evidenced by N. McCowan Decl., Tab A-17, an October 22, 2014 email between CBB and Wulf, copying Maniaci, and relating to a Canadian provincial form apparently for securities laws, entitled "VBF-Securities Commission Filing re Family and Friends Round;" (ii) assistance to the Founders in drafting written representations to potential VBF investors and/or lenders, many of which have turned out to be fraudulent, as evidenced by N. McCowan Decl., Tab A-18, an August 10, 2014 email chain between Wulf and Maniaci that contains many of Maniaci's comments and revisions to a memorandum containing such representations, and similarly by N. McCowan Decl., Tab A-19, a

6

January 19-21, 2015 email chain among Wulf, Maniaci, and others, showing more of Maniaci's input on such representations; (iii) preparation of corporate records, as evidenced by N. McCowan Decl., Tab A-20; (iv) counseling VBF on the Restructuring, as evidenced by N. McCowan Decl., Tab A-21, a May 9, 2017, email (redacted) from Maniaci to Rick Dahlson of Jackson Walker with a copy to Wulf; and (v) handling a host of other issues for VBF as evidenced by the invoices attached as N. McCowan Decl., Tab A-22.

In August 2014, Maniaci revised the Founders' written representations regarding VBF's technology and operations, more blatantly inserting himself into the Founders' alleged misconduct. N. McCowan Decl.,Tab A-18, PowerPoint at 1 (handwriting that states "Sean [Maniaci's] comments August 10, 2014"). In this document, there is a typewritten reference to VBF Canada, to which Maniaci writes: "Is funding into US subsidiary?", which is a reference to VBF. *Id.* PowerPoint at 3. Maniaci otherwise changed typewritten references to VBF Canada as the operative entity, to the more general "VBF." *See, e.g.*, *id.* PowerPoint at 4. This undermines Maniaci's straw man, which he attempted to use in his Motion to distinguish his admitted involvement with VBF Canada from his actual involvement with VBF, as Maniaci himself often viewed VBF and VBF Canada as one in the same.

Maniaci again revised Founder written representations regarding its technology and operations in January 2015, similarly and generically referring to "VBF" without delineating between VBF and VBF Canada. N. McCowan Decl., Tab A-19. A version of this document is alleged to be fraudulent in the SAC, see Dkt. 159 ❡ 107 & Ex. 17, N. McCowan Decl., Tab A-25, and includes the following information relevant to Maniaci's Motion: (i) a map of the geographic reach of VBF clearly denoting locations in Texas, Iowa, Canada, and elsewhere, see N. McCowan Decl., Tab-25 PowerPoint at 5, and (ii) listing the relevant company only as VBF (not VBF

Canada) and listing Maniaci and CBB as counsel to VBF. *Id*. PowerPoint at 45; *see* N. McCowan Decl., Tab A-26, similarly touting Maniaci and a Jackson Walker attorney together as "the two corporate lawyers and their firms for VBF."

Also in October 2014, Maniaci prepared a Canadian securities filing for VBF Canada, listing insiders and promoters who were primarily Texas residents.  N. McCowan Decl., Tab A-17.  It can be reasonably inferred that in September 2015, CBB, with significant input from "relationship partner" Maniaci, prepared an opinion letter for a loan to VBF.  N. McCowan Decl., Tab A-29. In May 2016, Maniaci communicated with Jackson Walker regarding how to structure preferred stock in VBF and VBF Canada in anticipation of a large equity purchase by third party investors. N. McCowan Decl., Tab A-32. The crossover between Maniaci's work for VBF Canada and VBF around this time frame can be seen in a May 24, 2016 draft "Preferred Share Purchase Closing Checklist," which lists CBB and Jackson Walker as counsel to VBF, VBF Canada, and several of their affiliates.  N. McCowan Decl., Tab A-33.

## C.     Maniaci's second "hat" as shareholder of VBF

Maniaci was more than just VBF's counsel, he also was a shareholder of VBF Canada, which in turn is a shareholder of VBF.[6]  Maniaci, along with his brother Anthony and the Founders, was one of the first shareholders of VBF or VBF Canada and was a *preferred* shareholder.  *Id.* at ¶¶ 190.  The Maniaci brothers received their stock either at a 50% discount from what other shareholders were paying at the time, or, like the Founders, basically for free. *Id.* For example, Maniaci's entity, Sailstreet Capital Inc., received 750,000 shares in VBF Canada for a grand total of $0.075 (seventy-five cents) for all 750,000 shares in May 2014. Maniaci, through Sailstreet,

_____

[6] VBF Canada was initially supposed to be the operational entity for the VeroBlue Farms venture for tax reasons, but ultimately VBF became the operational entity, and VBF Canada was a shareholder of VBF.

paid $0.000001 per share of stock at a time when others were paying about 900,000 times that amount, or $0.90 per share. *Id.* at ¶¶ 191.

### D.   Maniaci's third "hat" as an adversary of VBF

After the Founders' removal from VBF, Maniaci continued to play an active role in VBF's legal affairs, but this time, as an adversary to VBF in the Bankruptcy Proceeding.  Maniaci's misconduct in this regard is alleged against him in the SAC.  SAC ¶¶ 192-199.

As stated, on September 21, 2018, VBF and affiliated entities ("Bankruptcy Debtors")[7] filed for Chapter 11 Bankruptcy in the Bankruptcy Proceedings.  SAC ¶ 176.  Shortly thereafter, the Founders, aided and abetted by Maniaci, sought to surreptitiously interfere in the Bankruptcy Proceedings. The Founders sought a dismissal of this case, against them, through the Bankruptcy Proceedings, for zero consideration to VBF. *Id.* ¶ 177.  And Maniaci tried to help them do so.

Indeed, the Founders tried to accomplish this through their attempted, yet ultimately unsuccessful, creation of an informal committee in the Bankruptcy Proceeding comprised of VBF shareholders, referred to as the "Ad Hoc Committee" of VBF shareholders ("AHC").  *Id.* ¶ 178-188, 192-199.  The AHC was nothing more than an instrumentality for the Founders and their co-conspirators (such as Maniaci) to attempt to act against VBF and the other Bankruptcy Debtors. *Id.*  The Founders and their counsel have made contradictory representations to this Court and the bankruptcy court about the AHC, and the latter court has taken notice of these contradictory representations. *Id.* ¶¶ 182-187.  Ultimately, on March 22, 2019, the bankruptcy court barred the AHC from acting in the Bankruptcy Proceedings after VBF and the other Bankruptcy Debtors

---

[7] The Bankruptcy Debtors are as follows: VBF USA, a Nevada corporation with its principal place of business in Webster City, Iowa; (b) VBF USA Ops, a Texas corporation with its principal place of business in Webster City, Iowa; (c) VBF USA Transport, a Delaware corporation with its principal place of business in Webster City, Iowa; (d) VBF USA IP, a Texas corporation with its principal place of business in Webster City, Iowa; and (e) Iowa's First, an Iowa corporation with its principal place of business in Webster City, Iowa.

raised these and other issues. *Id.* ¶ 187. The Founders incorporated Maniaci into such misconduct, to act against the interests of VBF, his own client. *Id.* ¶ 188.

On January 9, 2019, Maniaci wrote a letter (the "January 9 Maniaci Letter") on behalf of the AHC to his "Fellow VBF Shareholder[s]" in regard to VBF's Bankruptcy Proceedings, ostensibly to garner opposition to the Bankruptcy Debtors' Plan. *Id.* at ¶ 192, Ex. 36. The letter, upon information and belief, was sent to most or all VBF shareholders (including at least one Texas resident, see Bankruptcy Proceeding Dkt. 1 at 11 and is striking by what it misrepresents, and also what it conceals, on behalf of the Founders. *See id.* ¶ 192; *see also* N. McCowan Decl., Tab A-4, noting a Texan shareholder. Maniaci starts the letter with the statement that "I write to you as a minority shareholder of VeroBlue Farms." *Id.* ¶ 193. Although Maniaci does not specify which VBF entity he was claiming to be a shareholder of (i.e. VBF or VBF Canada), he did write the letter as a part of the Bankruptcy Proceeding in which VBF, and not VBF Canada, was a Bankruptcy Debtor. *Id.* Thus, Maniaci, by representing he was a "fellow" and "minority shareholder of VeroBlue Farms" was indicating to the recipients of this letter that he was a shareholder in VBF. This is yet another way that Maniaci has undermined his own straw man "distinction" of VBF from VBF Canada for jurisdictional purposes.

Further, although the letter is written on CBB letterhead by CBB partner Maniaci, Maniaci nowhere discloses in his letter that CBB or he served as counsel to VBF on an extensive array of matters from inception of VBF and for years thereafter, as set forth above. *Id.* at ¶ 194. Further, in a March 20, 2019 letter CBB admitted: "We do acknowledge that such letter was written without the authorization of management of this firm, and, therefore, Mr. Maniaci's letter written in his personal capacity should not have been put on to our firm's letterhead." *Id.* Tellingly, Maniaci's own firm has therefore tried to distance itself from Maniaci's misconduct.

10

Also in the January 9 Maniaci Letter, Maniaci improperly solicits clients for counsel to the AHC, admitting that he is essentially trying to "crowdfund litigation" against VBF through his letter. *Id.* at ¶ 196.  It can be reasonably inferred that Maniaci was working in concert with the Founders and AHC counsel in this regard.  *Id.*  Maniaci also makes other false and misleading statements to then-VBF shareholders in that letter, including that this very lawsuit is "retaliatory and without merit," without disclosing that the Founders themselves were the source of his conclusion and that he performed no independent investigation. *Id.* at ¶ 197.  This, combined with Maniaci's obvious lobbying against his clients' (VBF's) Plan of Reorganization ("<u>Plan</u>") in the Bankruptcy Proceedings (which was ultimately approved by the court), blatantly demonstrates Maniaci's intent to undermine VBF's interests.  *Id.*

E.    <u>**Maniaci's ties to the Texas-based Founders runs deep.**</u>

Maniaci's relationship to the Founders outside of VBF runs deep.  VBF has recently learned in emails discovered in 2019 that the Founders had a longstanding relationship with Maniaci and CBB outside of VBF's business.  One of these endeavors was Maniaci's representation of ChipMeds, Inc, a Founders' entity to which the Founders improperly funneled VBF's funds. *Id.* at ¶¶ 52, 189.

Another endeavor relates to the Founders' alleged "secret sauce" for VBF—the "Opposing Flow Technology."  SAC ¶ 90.  The Founders represented it to be a game changer in the aquaculture industry while knowing it was in fact a dud. SAC ¶¶ 90-91.  On July 29, 2014, the entity OFA, an obvious reference to the OFT, was incorporated in the State of Texas.  N. McCowan Decl., Tab A-1.  VBF alleges a scheme by the Founders specific to OFA in its SAC.  SAC ¶¶ 46-48.  In that filing, OFA listed its principal address as 1507 Capital Avenue, Suite 101, in Plano Texas—the same address as VBF's Plano office.  *Id.*  Maniaci is listed in the Certificate of

Formation filed with the Texas Secretary of State as a director of OFA (along with Founder John E. "Ted" Rea).  *Id.*  In addition, Maniaci's own address is represented to be in Texas (that same Plano address).  *Id.*  Maniaci and his firm also billed VBF for legal services related to OFA.  (100, 107).  Notably, OFA is not mentioned once in Maniaci's supporting affidavit.

### III.  ARGUMENT & AUTHORITIES

**A.    Relevant legal standard**

When a district court considers a 12(b)(2) motion to dismiss without an evidentiary hearing, a plaintiff need only establish a prima facie case of personal jurisdiction.  *See Cent. Freight Lines Inc. v. APA Transp. Corp*., 322 F.3d 376, 380 (5th Cir. 2003).  Further, the court accepts as true VBF's uncontroverted allegations and resolve all factual conflicts and reasonable inferences in favor of VBF, the party seeking to invoke the court's jurisdiction.

This Court has specific jurisdiction over Maniaci.  "Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Cunningham v. Florio*, 417CV00839ALMCAN, 2018 WL 4473792, at *8 (E.D. Tex. Aug. 6, 2018), report and recommendation adopted, 4:17-CV-839, 2018 WL 4473096 (E.D. Tex. Sept. 18, 2018) (citations omitted).

Because "a defendant can purposefully contact the forum state and avail itself of the benefits and protections of the forum's laws by creating continuing obligations between itself and residents of the forum," the Fifth Circuit has held that "a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 n.6 (5th Cir. 2003) (citation omitted). "A single purposeful contact may confer jurisdiction." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 n.3 (5th Cir. 2006) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)).

For the reasons explained below, Maniaci has sufficient minimum contacts with the state of Texas to support this Court's exercise of specific jurisdiction over him.

**B.**      **This Court has specific jurisdiction over Maniaci.**

    **1.**      **A nonresident attorney's purposeful contacts with clients based in Texas constitute sufficient minimum contacts to support specific jurisdiction.**

Relying exclusively on Texas state court cases, Maniaci contends that acts he took as an attorney fail to establish specific jurisdiction in Texas. Mot. at 18.  To the contrary, Maniaci's contacts with Texas in connection with his representation of VBF and/or the Founders provide sufficient minimum contacts to confer specific jurisdiction.

Courts have held that a nonresident attorney's purposeful contacts with clients in Texas can serve as a basis for specific jurisdiction. *See, e.g.*, *Trinity Indus., Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229, 231 (5th Cir. 1995) (holding that a nonresident attorney established minimum contacts where he represented a Texas client over several years, the legal representation require regular mail and telephonic communications with Texas, and the firm billed the client in Texas and payment was forthcoming from Texas); *Seisa Med., Inc. v. Asia Capital Advisor, Ltd.*, EP-18-CV-79-KC, 2018 WL 5020226, at *6 (W.D. Tex. Sept. 20, 2018) ("Although the bare existence of an attorney-client relationship is not sufficient to establish specific personal jurisdiction, where [nonresident attorneys] have purposefully availed themselves of the privilege of doing business in Texas, they should be answerable in the forum for the consequences of [their] activities.") (citation and internal quotations marks omitted); *Cartlidge v. Hernandez*, 9 S.W.3d 341 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that an out-of-state attorney's purposeful contacts with clients in Texas constituted sufficient minimum contacts to support specific jurisdiction where the attorney entered into contracts with each client that were signed by the clients in Texas, and the attorney corresponded with the clients in Texas regarding the progress of their lawsuits).

The facts alleged in the SAC show that Maniaci purposefully and knowingly represented VBF, an American company with a Texas office, and worked closely with four of its Founders, who are Texas residents, transmitting communications directly into Texas to benefit a scheme performed in part in Texas, and benefiting from the scheme at the expense of VBF and its shareholders, including Texas shareholders. VBF has met its prima facie burden for establishing specific personal jurisdiction over Maniaci.

Maniaci purposefully directed his activities at residents of Texas and this lawsuit resulted from the tortious acts and injuries arising out of and/or related to Maniaci's forum contacts.  As noted above, Maniaci's representation of VBF was not casual or isolated.  Maniaci's representation of VBF spanned three years, and he regularly represented them on a variety of matters touching Texas, and did so, at times, with Texas-based law firm Jackson Walker.  *See* N. McCowan Decl., Tabs A-5 through A-12 and Tabs A-21, A-32, and A-33.  The legal representation required regular e-mail communications with Texas, as the Founders (other than Driver) all lived and worked in Texas. *See* Exhibit A, Tab A-20 at 6. Moreover, Maniaci communicated with the Founders via telephone, which it can be reasonably inferred were calls to or from the Texas office or cell phone numbers of the Founders who resided in Texas.  *See, e.g.,* N. McCowan Decl., Tab A-5 at APP0030 and APP0034, Tab A-6 at APP0036 and APP0039, Tab A-7 at APP0041 and APP0043 and Tab-8 at APP0050.

 Maniaci transmitted various legal bills to the Founders (Texas residents) at VBF's Plano, Texas office. *See* N. McCowan Decl., Tabs A-5 to A-12.  Maniaci even appears to have provided legal advice related to OFA, the Texas entity for which he served as a founding director that was apparently formed to buy tanks from a third-party and resell them to VBF at a profit to OFA and the Founders. SAC ¶¶ 46-47; *see also* N. McCowan Decl., Exhibit A, Tabs A-1 and A-2.

Courts have held that these type of contacts "amount to a substantial connection with Texas and cannot accurately be characterized as random, fortuitous, or incidental." *Trinity Indus., Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229, 231 (5th Cir. 1995) (footnote omitted). As the Fifth Circuit noted in *Trinity Industries*:

> [A]n individual who purposefully directs his activities to forum state residents and derives benefits therefrom should be answerable in the forum for the consequences of his activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

*Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (footnote and internal quotation marks and citations omitted). While Maniaci makes much of the fact that he allegedly "never traveled to Texas to meet" with the Founders, the law is clear that jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum state." *Burger King*, 471 U.S. at 476 ("Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (citations omitted)); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum.").

Here, Maniaci's contacts indicate that availed himself of the benefits of an ongoing relationship with VBF whereby he knew he would be working with the Founders, who were Texas residents and largely ran the company from VBF's Texas office. Maniaci also billed VBF for his

services, sending invoices to Texas, and in these transactions, purposefully availed himself of the privileged and benefits of conducting business in Texas. Maniaci routinely and continuously communicated with the Founders in Texas, and it was through those communications that it conspired and knowingly participated in the Founders' fraudulent misrepresentations, non-disclosures and concealments, and breaches of fiduciary duty, which give rise to the causes of action asserted against Maniaci.  Thus, Maniaci reasonably should have anticipated the possibility of being haled into court in Texas for claims arising out of or related to that relationship.  *See Burger King*, 471 U.S. at 476

## 2.    Maniaci's tortious actions outside of his role as counsel to VBF also provide a basis for specific jurisdiction.

In addition to Maniaci's contacts with Texas as an attorney, his other contacts with Texas also support this Court's exercise of specific jurisdiction over Maniaci. Maniaci's actions, as alleged in the SAC, show that he that he purposefully participated in a scheme run by Texas residents, which was carried out, in part, in Texas.

As alleged in the SAC, Maniaci served as a founding director for OFA, a Texas entity that was apparently formed for the purpose of buying tanks from a third-party to resell to VBF at a profit to OFA and the Founders.  SAC ¶¶ 46-47. This scheme serves as one of the bases for this lawsuit and the SAC's claims against Maniaci. As alleged in the SAC, it would have, of course, been more beneficial to VBF not to pay OFA a profit as an unnecessary "middleman." *Id.*

VBF has recently learned through discovered emails that Maniaci has a longstanding relationship with the Founders outside of VBF's business. One of these endeavors was Maniaci's representation of the ChipMeds, Inc, a Founders' entity to which the Founders improperly funneled VBF funds. *Id.* at ¶ 52, 189.

16

Further, the January 9 Maniaci Letter Maniaci sent to VBF's shareholders containing various misrepresentations is another example of Maniaci's purposeful participation in the scheme with the Founders and his contacts with Texas outside his role as counsel to VBF. At least one of the recipients of the January 9 Maniaci Letter was a Texas resident, *see* Bankruptcy Proceedings, Dkt. 1 at 11. Even Maniaci's firm acknowledged was written without firm approval and was written in Maniaci's personal capacity. SAC ¶ 194.

## C.   Asserting jurisdiction over Maniaci would comport with traditional notions of fair play and substantial justice

"Once it has been determined that the defendant purposely establish minimum contacts within the forum state, the defendant must make a compelling case that the assertion of jurisdiction would be unfair." *FCA Investments Co. v. Baycorp Holdings, Ltd.*, 48 Fed. App'x. 480 (5th Cir. 2002) (citations and internal quotation marks omitted). In considering the fairness issue, the Fifth Circuit examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* (citation omitted). "Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Cartlidge*, 9 S.W.3d at 349–50 (citations omitted).

Maniaci fails to present a compelling case that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. Maniaci contention is that it would be unfair to require him, "a Canadian citizen and attorney, to have his actions as a Canadian citizen and attorney adjudicated in Texas under Texas law" in a forum that is not convenient for Maniaci.

Mot. at 21.  Maniaci further argues that Texas has no interest in providing redress in this action against him and that Texas is an inconvenient forum for VBF. *Id.*

The exercise of personal jurisdiction over Maniaci would not offend traditional notions of fair play and substantial justice.  Maniaci purposefully accepted the representation of VBF, which involved him working closely with Texas residents at VBF's Texas office. As part of that representation, he directed numerous communications into Texas, including his legal bills.  He worked closely with those Texas residents to perpetuate a scheme that ultimately caused the loss of $90 million to VBF, his own client.  In furtherance of that scheme, he became a director of a Texas entity for the purpose of selling equipment to VBF to benefit the Founders and OFA. These contacts are sufficient to support jurisdiction over Maniaci.

That Maniaci is a Canadian citizen and not a licensed attorney in Texas does not defeat jurisdiction. He purposefully engaged in an ongoing business relationship that crossed both state and country lines, from which he benefitted financially.  Further, his alleged lack of physical presence in this State and the inconvenience of attending a trial are not obstacles to exercising jurisdiction. *See Burger King*, 471 U.S. at 476-77.

The State of Texas also has a substantial interest in this litigation because the fraudulent scheme was carried out, in part, from Texas, by Texas residents.  And contrary to what Maniaci contends, VBF has an interest in seeing its claims against him being litigated in this forum, as it has an interest in litigating this dispute in a single proceeding.

Because of the nature of the SAC's allegations, Maniaci's purposeful contacts with Texas related to the SAC's allegations, and the prior determination that the Northern District of Texas is the appropriate forum for the related and intertwined claims against the Founders, the exercise of jurisdiction in Texas is convenient, efficient, and fair.

**D.** **Alternatively, VBF is entitled to jurisdictional discovery.**

In the alternative, in the event that the Court is not inclined to deny Maniaci's Motion, VBF respectfully requests the Court allow it to conduct jurisdictional discovery to discover (1) the extent of Maniaci's other contacts with Texas, if any, sufficient to confer jurisdiction and (2) the extent of Maniaci's contacts with Texas as counsel to and shareholder of VBF/VBF.  *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) ("But still the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss. Thus, some courts have refused to grant such a motion before a plaintiff has had a chance to discover the facts necessary to establish jurisdiction."). The allowance of discovery is particularly warranted in this case where Maniaci failed to identify known connections with Texas in his affidavit, such as his position as a director with OFA as shown in filings with the Texas Secretary of State, his direction of the January 9 Maniaci Letter to a Texas recipient, and his representation of VBF as shown in the CBB Proof of Claim filed in a federal court swearing under oath that CBB (and therefore Maniaci) did represent VBF for pecuniary gain (over $275,000 worth). *See generally Middlebrook*, 2005 WL 350578, at *3 n.5; *see also ECAP Holdings, LLC v. Quixotic Farming, LLC*, No. 3:18-CV-2193-L, 2019 WL 4748126, at *4 (N.D. Tex. Sept. 30, 2019) (granting jurisdictional discovery where the "parties' briefs, evidence, and Plaintiff's pleadings raise issues of fact . . . regarding the individual Defendants' relationship to the entity Defendants, the extent, if any, the various individual Defendants controlled or took action on behalf of the entity Defendants, and in what capacity they engaged in the conduct alleged").

Accordingly, if the Court is not inclined to deny the Motion, VBF should be permitted to conduct jurisdictional discovery before the Court rules on the Motion, further allowing VBF to supplement this Response with any facts learned in discovery.

19

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.  Alternatively, if the Court is inclined to grant the Motion, VBF respectfully requests leave to conduct jurisdictional discovery and supplement this Response.

Dated: January 10, 2020

Respectfully submitted,

*/s/ Nicole L. Williams*
Nicole L. Williams
  Texas Bar No. 24041784
  nicole.williams@tklaw.com
William L. Banowsky
  Texas Bar No. 01697125
  bill.banowsky@tklaw.com
Jasmine S. Wynton
  Texas Bar No. 24090481
  jasmine.wynton@tklaw.com
**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)

*/s/ Robert H. Lang*
Robert H. Lang
  (appearing *pro hac vice*)
  rhlang@thompsoncoburn.com
**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, Illinois 60603
(312) 346-7500

***Attorneys for Plaintiff VeroBlue Farms USA, Inc.***

20

## <u>CERTIFICATE OF SERVICE</u>

     This document was filed electronically on January 10, 2020, and, in compliance with Local Civil Rule L.R. 5.1(d), a copy of this document has been served on all counsel of record.

<em>/s/ Jasmine S. Wynton</em>        