# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
|     Plaintiff | § | |
| | § | |
|   v. | § | |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER, | § | |
|     Defendants/Third Party Plaintiffs, | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
|   v. | § | HON. BRANTLEY STARR |
| | § | |
| EVA EBSTEIN, JENS HAARKOETTER, BJORN | § | |
| THELANDER, ANDERS WESTER, NORMAN | § | |
| MCCOWAN, DR. OTTO HAPPEL and ALDER | § | |
| AQUA, LTD. | § | |
|     Third-Party Defendants | § | |

---

## DEFENDANTS/THIRD-PARTY PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO THIRD-PARTY DEFENDANT ALDER AQUA LTD.'S MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

FACTUAL BACKGROUND ..................................................................................... 1

ARGUMENT .............................................................................................................. 3

    I.    Founders Have Standing to Pursue Alter Ego Claims Against Alder. (FRCP 12(b)(1)) ...................................................................................... 3

        A.  VBF's Bankruptcy Filing Does Not Bar Founders from Asserting Alter Ego Liability Against Alder ............................................. 4

        B.  The Modificationto VBF's Reorganization Plan, Agreed to by Alder, Expressly Carves Out Founders' Third-Party Claims from VBF's Releases ................................................................................... 7

        C.  Founders' Alter Ego Claim (CountV) Serves at the Basis for Liability Against Alder on Their Breach of Contract Claims (Counts VI-IX) .. 10

    II.   Founders Have Alleged Adequate Facts to State a Claim for Tortious Interference Against Alder.  (FRCP 12(b)(6)) ............................................ 11

        A.  Alder Can Be Liable for Tortious Interference for as an Alter Ego Because VBF Was Not its Wholly-Owned Subsidiary ......................... 11

        B.  Alder Cannot Assert VBF's "Justification" in Breaching its Contacts with Founders as a Basis for Dismissal .................................. 12

            1.  *The Releases in the Termination Agreements Bar VBF's Claims against T. Rea and Hall.* ............................................... 13

            2.  *Whether Egregious Cause Existed Under the Employment Agreement Justifying VBF's Termination of James Rea is A Question of Fact* 14

    III.  Founders' Damages and Request for Attorneys' Fees are Well-Plead. (FRCP12(b)(6) ............................................................................... 15

    IV.  Alder Was Properly Served with Process Pursuant to the Hague Convention.(FRPC 12(b)(5) ...................................................................... 18

CONCLUSION ....................................................................................................... 22

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Alma Group, LLC v. Palmer*,
    143 S.W. 3d 840............................................................................................... 17

*Clark v. AT & T Corp.*, 8:13-CV-02278-AW,
    2013 WL 6014343 (D. Md. Nov. 12, 2013)....................................................... 21

*Cleveland Reg. Med. Ctr., L.P. v. Celtic Prop., L.C.*,
    323 S.W. 3d 322 (Tex. App. – Beaumont 2010)................................................ 11

*Coombs v. Iorio*,
    2008 WL 4104529 (E.D. Ok. Aug. 28, 2008)................................................... 21

*Cypress Engine Access., LLC v. HDMS Ltd. Co*,
    283 F. Supp. 3d 580 (S.D. Tex. 2017) ......................................................... 13, 14

*Ed Rachel Foundation v. D'Unger*,
    117 S.W. 3d 348.......................................................................................... 17, 21

*Ganske v.  WRS Group, Inc.*,
    2007 WL 1147357 (Tex. App. – Waco April 18, 2007, no pet.) .................. 13, 14, 16

*Gibraltar Serv. v. LDBrinkman Corp.*,
    860 F. 2d 1275 (5th Cir. 1988)..........................................................5, 6, 7, 10

*In re Seven Seas Petroleum*,
    522 F. 3d 575 (5th Cir. 2008)............................................................................ 10

*In re: S.I Acquisition, Inc.*,
    817 F. 2d 1142 (5th Cir. 1987)............................................................................ 4

*Jackson v. Michalski*, 3:10-CV-00052,
    2011 WL 3679143 (W.D. Va. Aug. 22, 2011)................................................... 21

*Joint Stock Co., Ltd. v. Potter*,
    607 F.3d 1029 (5th Cir. 2010)...................................................................... 10, 11

*National Property Holdings, L.P. v.  Westergren*,
    453 S.W.3d 419 (Tex. 2015)............................................................................. 13

*Raytheon Co. v. Boccard USA Corp.*,
    369 S.W. 3d 626 (Tex. App. – 1st Dist. 2012).................................................... 4

*Raytheon*,
    369 S.W. 2d.......................................................................................................... 4

*Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*, 06-CV-236-BR,
    2007 WL 282145 (D. Or. Jan. 24, 2007) .......................................................... 21

*Servs. Corp. v. Sterling Fin. Co., Inc.*, No. CIV. A. 300CV2814-AH,
    2002 WL 206439 (N.D. Tex. Feb. 8, 2002) ...................................................... 11

*Sterner v. Marathon Oil Co.*,
    767 S.W.2d 686 (Tex. 1989).............................................................................. 12

*Trustees of the Constr. Ind. and Laborers Health and Welfare Trust v. Vasquez*,
    2011 WL 4549228 (D. Nev. Sept. 29, 2011) ...................................................... 4

Statutes

Bankruptcy Code §§ 524(e) and 1129 (a) ................................................................................... 7
Tex. Civ. Prac. & Rem. Code § 38.011 ..................................................................................... 16
Texas Civ. Prac. & Rem. Code § 38.001 ............................................................................. 16, 17

Rules

FRCP 12(b)(1) .......................................................................................................................... 2, 3, 4
FRCP 12(b)(6) ........................................................................................................................ 2, 11, 15
Rules 12(b)(1), (5) and (6) ............................................................................................................. 1

Other Authorities

Pl. Rule 26(a) ............................................................................................................................... 19

1525664v1 - V0265.00001 Def/3rd Party Plaint Response and Breif to Alder

Defendants/Third Party Plaintiffs, Leslie A. Wulf ("**Wulf**"), Bruce A. Hall ("**Hall**"), John E. "Ted" Rea ("**T. Rea**"), and James Rea ("**J. Rea**") (collectively "**Founders**"), hereby respond to Third Party Defendant, Alder Aqua, Ltd.'s ("Alder") Motion to Dismiss Amended Third Party Complaint Pursuant to Rules 12(b)(1), (5) and (6) (the "**MTD**") [Dkt. No. 220]. Alder mischaracterizes the effect that VBF's bankruptcy has on Founders' claims and overgeneralizes law governing alter ego claims in the hopes of avoiding Founder's allegations. It also raises an eleventh-hour objection to service that misstates Hague Convention requirements and parrots' co-parties Bjorn Thelander and Norman McCowan's arguments on the sufficiency of Founders' allegations.  All of these arguments are misplaced and Founders' claims against all third parties must proceed.  In further opposition to Alder's Motion, Founders state:

## **FACTUAL BACKGROUND**

Founders were the founders,[1] officers, and directors of VeroBlue Farms, USA, Inc. ("**VBF**"), and were among its original shareholders and officers: CEO (Wulf), CFO (Hall), COO (T. Rea) and Construction Director (J. Rea). (Amended Third Party Complaint ("TPC"), Dkt. No. 186, ¶ 13.) At various times between 2014 and 2016, each of the Founders served as Directors on VBF's Board as well. (*Id.*)  In July 2016, Alder Capital International Ltd., (which later became Alder Aqua, Ltd.), and FishDish LLC, an Iowa investor group, together invested $34,000,000 in VBF through a purchase of preferred stock.[2] (*Id.*, ¶ 14.)  Alder appointed two of its representatives,

---

[1] Alder takes issue with Defendants' use of "Founders" as a shorthand reference.  Founders did not bestow this reference upon themselves, rather VBF initiated use of this term when describing Defendants and the suit against them to the Bankruptcy Court, specifically, in its first submitted Chapter 11 Plan of Reorganization, dated December 10, 2018. [*In re: VeroBlue Farms USA, Inc.*, No. 18-01297, Dkt. No. 191.] Alder joined in submission of this Plan and did not object to the reference to "Founders" therein.

[2] *See* July 9, 2016 VeroBlue Farms USA Inc. Series A Preferred Stock Purchase Agreement ("**Series A Ag.**"). attached as Exhibit 1 to Alder's Appendix to its MTD, Dkt. No. 221, APP001-0049.

1

Third Party Defendants, Bjorn Thelander and Jens Haarkoetter, as directors on VBF's Board in July 2016. (*Id.*)  Eva Ebstein, daughter of Alder's principal, joined the Board in 2017. (*Id.*) Haarkoetter served on the Board until October 2017, when he resigned after an investigation into allegations that he sexually harassed VBF employees.  (*Id.*) Thelander served as director of VBF until sometime in early 2018.  (*Id.*) At the same time it invested equity into VBF, Alder extended a line of credit to VBF, through Alder's affiliate, Amstar Funds ("**Amstar**"). (*Id.*, ¶ 15.) In exchange, VBF issued warrants to Alder that could be exercised to obtain additional shares, via a separate agreement. (*Id.*)

Within a year of Alder's investment, in July 2017, VBF had drawn down on the Amstar loan and Alder exercised certain warrant rights, which resulted in Alder owning a controlling interest (54%) in VBF.  (*Id.*, ¶ 16.)  Within weeks, Thelander and Haarkoetter, along with Alder principals, Otto Happel and his daughter Ebstein, began serially terminating Founders from their positions with VBF. (*Id.*, ¶ 18.) Since then, Founders have discovered that Alder and the other Third-Party Defendants participated in a scheme to oust them from management, falsely accuse them of a litany of misdeeds, and avoid, or otherwise breach VBF's contractual obligations to the Founders. (*Id.*, ¶ 18.)  Specifically, Alder, through its representatives and attorneys, negotiated termination agreements between three of the four Founders and VBF, and then directed VBF to fabricate reasons to avoid its obligations to Founders under such agreements.[3] (*Id.*, ¶ 19.) This was succinctly stated by Ebstein in an email to Thelander before terminating Mr. Wulf: "[A]nyone terminated by Les received a lovely golden parachute of other people's money. ***We need to try and avoid this, if legally permissibl***e." (*Id.,* and Ex. E thereto.)

---

[3] Founders' respective agreements with VBF are defined as they are in the TPC. (*See* TPC, Dkt. No. 186, Exs. A-D.)

On July 31, 2018, VBF filed suit against Founders claiming they had misappropriated funds and committed other misdeeds while officers and directors of the company.[4] (TPC, ¶ 21.) On April 10, 2019, the Founders filed their Third-Party Complaint against Alder and six other directors and officers in VBF. (Dkt. No. 66.)  This complaint was amended on November 8, 2019. (Dkt No. 186.)  In the TPC, each Founder asserts that Alder, in concert with the other Third-Party Defendants, used its leverage as majority shareholder and representatives on VBF's Board to tortiously interfere with his respective agreement with VBF, which led to VBF breaching its obligations to the Founders under these contracts. (TPC, Counts I-IV) Founders also assert that Alder dominated VBF to the point of becoming its alter ego, such that Alder is liable for VBF's breach of its contracts with Founders. (Counts V-IX.)  Alder's Motion mischaracterizes the rulings in VBF's bankruptcy proceeding and fails to contextualize its other legal arguments, such that they are inapplicable. Founders claims are properly stated against Alder and should proceed.

## **ARGUMENT**

### I.   **Founders Have Standing to Pursue Alter Ego Claims Against Alder. (FRCP 12(b)(1))**

Alder attacks Founder Defendants' alter ego claim on two grounds:  1) Founders lack standing to bring this claim because it is property of the bankruptcy estate; 2) alter ego is not a separate cause of action. Alder's arguments seek an improper extension of the automatic stay far beyond what was contemplated and ignore the specific modifications that Alder and Founders agreed to in VBF's Reorganization Plan which expressly permit Founders' claims to proceed.

---

[4] Shortly thereafter, on September 21, 2018, VBF filed for Chapter 11 bankruptcy protection in the Northern District of Iowa (*In re: VeroBlue Farms USA, Inc.*, Case No. 18-01297 (Bankr. N.D. Iowa) ("*In re VBF*").  Alder, through the other Third-Party Defendants, controlled VBF's reorganization, first as the sole DIP lender and now, as the sole shareholder of the reorganized entity.

1525664v1 - V0265.00001 Def/3rd Party Plaint Response and Breif to Alder

### A. VBF's Bankruptcy Filing Does Not Bar Founders from Asserting Alter Ego Liability Against Alder.

Alder argues that Founders lack standing, pursuant to Fed. R. Civ. P 12(b)(1), to pursue alter ego claims.  (MTD, Dkt. No. 220 at 7-11.)  Alder cites the general proposition that an alter ego claim brought against the parent corporation of a bankrupt entity belong to the bankruptcy estate and can only be asserted by the trustee.  (*Id.* at  8-9 (citing *In re: S.I Acquisition, Inc.,* 817 F. 2d 1142 (5th Cir. 1987), *Trustees of the Constr. Ind. and Laborers Health and Welfare Trust v. Vasquez*, No. 2:09-cv-02231-LRH-GWF, 2011 WL 4549228 (D. Nev. Sept. 29, 2011), and *Raytheon Co. v. Boccard USA Corp.*, 369 S.W. 3d 626 (Tex. App. – 1st Dist. 2012).) While this statement of law is accurate, it is not as absolute as Alder presents and is specific to the context in which those cases arose.  For instance, in *S.I Acquisition*, one of the alleged "alter ego" parent entities had also filed bankruptcy and the debtor subsidiary had requested substantive consolidation – essentially admitting to alter ego liability. *S.I. Acquisition,* 817 F. 2d at 1144, n. 2. In *Raytheon*, the bankrupt subsidiary entity had already brought an adversary proceeding alleging alter ego liability against its parent.  *Raytheon*, 369 S.W.3d at 630.  That is not the case at all here. VBF has not brought any claims against Alder in any context, nor has VBF acknowledged that it is an alter ego of Alder.  So, this is not an instance in which the bankruptcy estate has exercised its right to assert alter ego claims, directly or indirectly, as in the cases Alder cited.

Also, important to note is that all three of the cases Alder cites relied on the bankruptcy court's automatic stay to bar the new action. *S.I. Acquisition*, 817 F. 2d at 1145 (identifying appellate question as scope of automatic stay); *Raytheon*, 369 S.W. 2d at 631 (noting that trustee's standing derives from automatic stay); *Vasquez*, 2011 WL 4549228 at *2 (relying on automatic stay to bar claim). Alder has not asserted that Founders' claims violates the automatic stay.  And VBF has not brought an action in the Bankruptcy Court against Founders for violation of the

automatic stay with regard to any of the claims in the Third-Party Complaint, although they have been pending for over nine months.[5]

All of this leads to a critical distinction – while alter ego claims may belong to the bankruptcy estate, that does not permanently bar a third party from asserting them separately. Thus, this case is more akin to *Gibraltar Serv. v. LDBrinkman Corp.*, 860 F. 2d 1275 (5th Cir. 1988). There the 5th Circuit distinguished *S.I. Acquisition* to permit a lender to pursue the borrower's parent company and its founder for alter ego liability on a loan, despite the borrower filing for bankruptcy. *Id.* at 1285-86. Like Alder argues here, in *Gibraltar Serv.*, the defendants, LDBrinkman (parent company) and Brinkman himself (founder), argued that the plaintiff lender lacked standing to pursue alter ego claims because those claims belonged to the bankruptcy estate. The *Gibraltar Serv.* Court distinguished *S.I. Acquisition* on two important grounds: i) in *S.I. Acquisition,* the bankruptcy trustee had been the party objecting to the pursuit of an alter ego claim, not the alter ego entity itself, and ii) in *Gibraltar Serv.*, the purported alter ego entity raised the objection after the lender plaintiff had obtained leave from the bankruptcy court to prosecute its alter ego claims. *Id.* Critically, the 5th Circuit held:

> An extension of *S.I. Acquisition* in LDBrinkman Corp.'s favor would mean that allegedly liable "alter egos" could escape liability should the trustee for a "shell" corporation which it (the alleged "alter ego") has thrown into bankruptcy simply choose not to prosecute a potentially meritorious "alter ego" claim. ***We decline to convert the recognized shield for the debtor's estate into a shield for potentially liable "alter egos"; should the bankruptcy trustee decline the gauntlet, the veil-piercing sword is available to tort claimants or contract creditors***, should they choose to attack in the bankruptcy proceeding or, with the bankruptcy court's leave, in another forum.

*Id.* at 1286 (emphasis supplied).

---

[5] In fact, VBF has urged the Bankruptcy Court to close its case because the estate has been fully administered. (*In re: VBF*, Bankr. Dkt. No. 638.)

Alder has and will again undoubtedly argue that Founders did not obtain leave of the bankruptcy court to pursue its alter ego, that pursuit of those claims by other parties were already rejected by the Bankruptcy Court.   (MTD, Dkt. No. 220 at 10-11.) This is a gross mischaracterization. Founders were not associated with nor members of the Ad Hoc Equityholders' Committee who joined in a Challenge Notice to VBF's reorganization plan. Founders have made this clear in multiple prior pleadings to this Court.[6]   Alder, likely in concert with VBF, continue to seize on a mistaken word choice in a corrected motion, to both smear Founder Defendants' counsel and fabricate this standing argument. ***Founders were never members of the Ad Hoc Equityholders' Committee and did not join in the Committee's Challenge Notice.*** Thus, Founders were not party to the multiple motions and orders that Alder attaches as evidence of their lack of standing. (MTD Appx., Dkt. No. 221, Exs. 8, 9, 10.) In fact, the Court ruled on the Committee's motion for standing to pursue the Challenge Notice, at hearings on March 13 and 18, 2019.  Founders did not even file an appearance in the bankruptcy case until March 27, 2019.   They were not party to the motion regarding standing to challenge VBF's reorganization plan.[7]

---

[6] Alder cites to Founders' Motion to Quash certain Third-Party Subpoenas (Dkt. No. 37-1), where Founders objected to discovery VBF served in this litigation on the law firm Horwood Marcus & Berk (HMB), which sought documents related to the Challenge Notices issued in VBF's Bankruptcy Case.  Founders initially engaged HMB to represent their interests in VBF's bankruptcy.  This engagement was terminated after just six weeks and HMB went on to represent the Ad Hoc Equityholders' Committee separately. As Founders emphatically explained in their Reply to this motion as well as in response to VBF's Motion to Strike their Reply, (Dkt. Nos. 46, 73) Founders were never part of the Ad Hoc Equity holders' Committee.  This Court recognized VBF's duplicity in raising this issue after Founders corrected it, denied VBF's motion to strike, and ultimately quashed VBF's discovery requests to HMB as irrelevant to this litigation. (Dkt. Nos. 137, 141.) Citing to this motion, without noting Founders' correction and the Court's ruling upon it, is misleading, at best.

[7] Even so, the Equityholders' Committee's motion before the Bankruptcy Court that Alder relies upon did not specifically address alter ego claims against Alder.  The motion requested leave to raise objections to the treatment of debt held by VBF's largest secured lender, Broadmoor, who purchased the debt from Alder's affiliate Amstar. (MTD Appx., Dkt. No. 221, at APP0057.) There is no reference to alter ego or other claims against Alder in the Bankruptcy Court's order on this issue. (*Id.*)

B. **The Modification to VBF's Reorganization Plan, Agreed to by Alder, Expressly Carves Out Founders' Third-Party Claims from VBF's Releases**.

But Founder Defendants *were* parties to the critical orders that defeat Alder's standing argument: VBF's Plan of Reorganization and the Bankruptcy Court's orders confirming it. (MTD, Dkt. No. 220 Exs. 2-4, APP0050-0200.) Alder argues that any claims against it or VBF were released in VBF's Reorganization Plan, parroting arguments made by fellow Third-Party Defendants, Thelander and McCowan, (*Compare* MTD, Dkt. No. 220 at 13-15 *with* Dkt. No. 227 at 17-18; Dkt. No. 229 at 12-14.) This ignores the specific modifications that Founders negotiated with VBF's counsel *and Alder's counsel* in the bankruptcy proceeding that carved out Founders' claims from the discharge and releases in the Reorganization Plan.

The only appearance that Founders made in VBF's bankruptcy proceeding was to object to the non-debtor releases in the Reorganization Plan to the extent they could apply to affirmative defenses against VBF and claims against all Third-Party Defendants, including Alder, pled here.[8] Founders' original TPC was already pending against Alder when VBF's Reorganization Plan was set for confirmation. To that end, Founders objected to VBF's plan, arguing that its releases of certain non-debtor third parties, including all of the Third-Party Defendants, violated Bankruptcy Code §§ 524(e) and 1129 (a), as well improperly deprived Founders of their right to assert claims against Third Party Defendants and seek set off and recoupment against VBF. (Founders Plan Obj., Ex. A, APP0004-008, ¶¶ 3, 4, 11, 14, 15, 16.) Founders explicitly objected to the discharge in §9.13 of the Plan, the very section that Alder relies upon, on these grounds. (*Id.*, APP0071, ¶ 2.)

---

[8] *See* Objection of [Founders] to Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and its Affiliated Debtors, filed April 12, 2019, in *In re VBF*, Dkt. No. 446 and Supplement to Objection of [Founders] Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and its Affiliated Debtors, filed April 15, 2019 (*In re VBF*, Dkt. No. 466). Together, the Bankruptcy Docket Items 446 and 466 filed by Founders are referred to as "**Founders' Plan Obj**." and are attached hereto as **Exhibit A**, APP0001-0074.

During the confirmation hearing on VBF's Reorganization Plan, held before the Bankruptcy Court in the Northern District of Iowa on April 17-18, 2019, Founders raised these objections. The parties, including VBF *and Alder* (who was supporting and financing VBF's plan), agreed to certain modifications to VBF's Reorganization Plan to address Founders' objections, and VBF submitted these to the Court as part of its final Reorganization Plan. (*See* MTD Appx. Dkt. No. 221, pp. APP0194-95). As relevant to Alder's position, the VBF Reorganization Plan, as clarified by the agreed Modification, provides:

- As to Section 9.15 of the Plan, which released Alder and the other Third Party Defendants, the parties agreed: "For the avoidance of doubt, ***Section 9.15 does not apply to the claims of any party to the litigation pending as 19-cv-764 in the United Stated District Court for the Northern District of Texas***, provided that such party does not receive payment or distribution under the Plan. (Modif., MTD Appx. Dkt. No. 221, p. APP0194, ¶ 2 (emphasis supplied).)

- The parties agreed to add a statement: "***Notwithstanding any provision in the Plan,*** upon entry of the Confirmation Order, parties in the litigation pending as 19-cv-764, in the United States District Court for the Northern District of Texas, may to the full extent the Bankruptcy Code permits, plead any and all defenses for an amount up to but not exceeding any recovery that may be obtained by the Debtors, without prejudice to each parties' right to dispute such claims" (*Id.*, ¶ 4.)

The Confirmation Order signed by the Bankruptcy Court recites that Founders' Plan Objections were resolved via the Modification and that document was incorporated into the Confirmation Order. (MTD Appx., Dkt. No. 221, pp. APP0054, APP0061 ¶ L.) As Modification ¶ 2 provides, any release of Alder or any of the other Third-Party Defendants provided in VBF's Reorganization Plan does not apply to Founders' claims in this litigation, as long as they do not receive distributions or payments under the Plan. Alder did not inform the Court of this provision and did

not argue that it did not apply because any of the Founders received distributions or payments under the Plan.[9]

But Alder asks this Court to circumvent the Modification by arguing the discharge of VBF, provided in § 9.13 of the Plan, makes it impossible for Founders to allege breach against VBF and therefore, makes it impossible to allege tortious interference against Thelander. (MTD, Dkt. No. 220 at 13-14.)  This is precisely why Founders objected to VBF's discharge, to the extent it would affect their defenses to VBF's Complaint and the TPC and why they insisted on the additional language in Paragraphs 2 and 4 of the Modification. The Modification's provisions apply ***notwithstanding any provision of the plan*** and allow Founders to assert defenses against VBF and affirmative claims against Alder in this litigation.[10] This provision was specifically included to address Founders' pending and potential affirmative defenses against VBF -- which alleged breach of Founders' various agreements with VBF, and sought set off and/or recoupment against VBF for any such breach (*see* Ans., Dkt. No. 66, Third, Fourth, Sixth, Seventh Aff. Def.) -- as well as Founders' Third Party Claims against Alder and others. Although Founders' alter ego claim was plead after the entry of the orders confirming VBF's Reorganization and Modification, the language is clear that the Modification applies to "the claims of any party" to this litigation, not merely to those already plead. (Modif., MTD Appx. Dkt. No. 221, p. APP0194, ¶ 2.)

Thus, VBF's Reorganization Plan, as clarified by the Modification, ***specifically contemplated and permits Founders to allege that VBF breached its contracts with Founders***

---

[9] In fact, Founders did not submit proofs of claim in VBF's Chapter 11 proceeding and will not receive any distributions under VBF's Reorganization Plan.

[10] This argument also addresses Alder's assertion in its Rule 12(b)(6) argument that there can be no underlying breach of contract to support Founders' tortious interference claim. (MTD, Dkt. No. 220 at 19-20.)  Although Founders' *damages* for VBF's breach of contract may be limited to set off or recoupment, the basis of those damages, *liability* for breach, was specifically carved out from the releases in VBF's Reorganization Plan. This liability can serve as the basis for Founders' tortious interference claims.

and to seek setoff for that breach.  This is analogous to factors that led the *Gibraltar Servs.* Court

to permit alter ego claims to proceed outside of bankruptcy. *Id.*, 860 F. 2d at 1286.   It follows

then, that any such breach by VBF, even if in the nature of setoff only, can then also serve as the

basis for a finding that Alder is liable for that breach as VBF's alter ego and/or induced that breach

through its tortious interference. The Modification was negotiated to address these very claims and

the Plan does not discharge VBF's liability, or Alder's liability to Founders for these same claims.

*See In re Seven Seas Petroleum*, 522 F. 3d 575, 590 (5th Cir. 2008) (permitting bondholders of

bankrupt debtor to proceed against creditor even though creditor was released by debtor: "While

it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-

a-vis the debtor, ***it does not follow that a discharge in bankruptcy alters the right of a creditor to***

***collect from third parties.***" (internal citations omitted).)

### C.   Founders' Alter Ego Claim (Count V) Serves at the Basis for Liability Against Alder on Their Breach of Contract Claims (Counts VI-IX).

Finally, Alder correctly argues that alter ego is not cause of action, but a basis to impose

liability on other parties for corporate debts. (MTD, Dkt. No. 220 at 11 (citing *Shandong Yinguang*

*Chem. Industr. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010)).  But this

argument ignores what Founders specifically request in Count V: a "find[ing] that Alder acted as

the alter ego of VBF, such that Alder should be found responsible from the obligations of VBF as

a result of the claims herein." (TPC, Dkt. No. 186, ¶ 119.)  Thus, Founders are not seeking relief

through their alter ego claim, but merely ask the Court to establish alter ego liability as a basis for

their other claims, specifically, their breach of contact claims. (*Id.*)  These claims reference the

alter ego liability that is alleged in Count V.  (*Compare* TPC, ¶¶ 123-125, 133-135, 142, 146, 147,

153, 155 *with* ¶¶ 108-118.)  Alter ego was set out separately to emphasize the basis for Alder's

liability. These allegations can certainly be repleaded within Counts VI-IX, but dismissal is unnecessary.

## II.   Founders Have Alleged Adequate Facts to State a Claim for Tortious Interference Against Alder. (FRCP 12(b)(6))

As a separate matter, Alder argues that Founders' separate claims for tortious interference against it fail to allege sufficient facts because: 1) as VBF's parent, Alder cannot interfere with its contracts; 2) VBF was justified in suing Founders; and 3) Founders have not adequately alleged damages.  Each of these arguments is inapplicable or seeks a premature decision on the facts of this case.  Accordingly, these arguments must be rejected.

### A.   Alder Can be Liable for Tortious Interference for as an Alter Ego Because VBF Was Not its Wholly-Owned Subsidiary.

Alder argues that it is not legally capable of tortious interference with VBF's contracts because a "corporate parent is incapable of tortuously interfering with the contracts of its subsidiary." (MTD, Dkt. No. 220 at 16-17.)  As Alder argues, to be liable for tortious interference, a defendant must be a "stranger to the contract," and that is not case between a parent corporation and its subsidiary. (*Id.*)  But as evident in the case law Alder cites, a parent is not a "stranger to the contract" when the subsidiary is **wholly-owned**, i.e., where the subsidiary's only shareholder is the parent.  *See e.g., Cleveland Reg. Med. Ctr., L.P. v. Celtic Prop., L.C.,* 323 S.W. 3d 322, 347 (Tex. App. – Beaumont 2010)("A parent and its ***wholly owned subsidiary*** have a complete unity of interest.); *Ashlar Fin.  Servs. Corp. v. Sterling Fin. Co., Inc.*, No. CIV. A. 300CV2814-AH, 2002 WL 206439 at \*9 (N.D. Tex. Feb. 8, 2002) (citing Texas appellate court holdings relating to parent and wholly-owned subsidiaries) (citations omitted). In fact, as noted by the *Ashlar Fin.* Court, "a parent [corporation]'s interest will not always be coterminous with that of its subsidiary." 2002 WL 206439 at \* 8.

At the time that Founders allege Alder tortiously interfered with their contracts with VBF, in July 2017 through January 2018, VBF was not wholly owned by Alder.  Although Alder was the controlling, and then became the majority shareholder of VBF when these actions took place, Alder did not become sole shareholder of VBF until its reorganization plan was confirmed in May 2019.  This was over a year after these claims were filed, and almost two years after the tortious interference took place.  VBF had several other shareholders at the time of Alder's interference in late 2017-early 2018.  Accordingly, at that time, VBF's interests, specifically the interests of its shareholders, were not coterminous with those of one, albeit the largest, shareholder. Alder cites no cases that find that a ***majority or controlling shareholder*** cannot be liable for tortious interference, likely because of this distinction in interest. Alder is legally capable of interfering with VBF's contracts with Founders and their claims for such interference should proceed.[11]

### B. Alder Cannot Assert VBF's "Justification" in Breaching its Contacts with Founders as a Basis for Dismissal.

Next, Alder argues that Founders cannot base their claims for tortious interference on an action that VBF has a legal right to do.  (MTD, Dkt. No. 220 at 17-18.) Although Alder couches this is as insufficient allegations of "inducement," it really is the affirmative defense of justification.  This defense requires the defendant to show that the interference: (1) was done in a bona fide exercise of the defendant's own rights, or (2) the defendant's interest in the contract's subject matter was equal or superior to the plaintiffs.  *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 691 (Tex. 1989). Alder appears to argue only the first type of justification: that VBF was within its rights to terminate J. Rea and to file suit against Hall and T. Rea, despite having

---

[11] Alder conflates Founders clams for tortious interference (Counts I-IV) with its claims for alter ego liability (Counts V-IX) to buttress this argument. (MTD, Dkt. No. 220 at 16).  But these claims are separate and alternative, at this pleading stage.  Alder *can* be liable for tortious interference without being found to be VBF's alter ego.  In fact, it is only if Alder is established as having been VBF's alter ego, that Alder's argument that it cannot tortiously interfere with VBF's contracts on Counts I-IV becomes valid.

previously released them. (MTD, Dkt. No. 220 at 17-18.)  Alder then claims that VBF was "justified" in bringing suit, despite the broad releases in T. Rea's and Hall's Termination Agreements, because those contracts did not include a covenant not to sue. (*Id.* at 18.) Neither of these arguments is compelling.

        1.   *The Releases in the Termination Agreements Bar VBF's Claims against T. Rea and Hall.*

Alder cites *National Property Holdings, L.P. v. Westergren,* 453 S.W.3d 419, 428-29 (Tex. 2015) for the proposition that a release is not a covenant not to sue. (MTD, Dkt. No. 220 at 18.) But whether a release or settlement agreement operates as a covenant not to sue depends on the particular language used.  In *Westergren*, the parties simply agreed to "release all liability" related to a lis pendens and related claims in a pending lawsuit, and the release specifically provided that it could be plead as an affirmative defense. *Id.* at 422. Similarly, in *Cypress Engine Access., LLC v. HDMS Ltd. Co*, 283 F. Supp. 3d 580 (S.D. Tex. 2017), also cited by Alder, the parties could not even agree on what constituted their settlement agreement, disputing what portion of a series of emails and a one-page outline was the final agreement. *Id.* at 583.  That case also related to claims already pending in a lawsuit.  The releases granted by VBF to Hall and T. Rea each are much broader and clearly evidence the parties' intent not to sue each other in the future.  VBF not only agreed to "release, acquit and forever discharge" Hall and T. Rea from "claims" and "liabilities" but also from "***charges, complaints, actions, causes of action, suits***." (TPC, Dkt. No. 186, Ex. C, ¶ 4(a), Ex. D, ¶ 4(a)) (emphasis supplied).) This language clearly encompasses more than merely a release of potential liability or pending claims, but an agreement to discharge the right to bring a "charge," "complaint," (like the Second Amended Complaint), "cause of action" or "suit."

To that end, this case is more on point with *Ganske v.  WRS Group, Inc.*, Cause No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App. – Waco April 18, 2007, no pet.), where a company  was

found liable for breach of the release in a settlement agreement with its former officer by bringing suit (and the former officer was awarded attorneys' fees incurred in enforcing the release as compensatory damages). Although *Ganske* was decided before *Westergren*, the Texas Supreme Court did not overrule *Ganske* in its decision and as noted by the district court in *Cypress Engine*, the language in the *Ganske* release was more specific.

The language in the *Ganske* release included a statement that it was intended to "buy his peace and avoid costly and time costing [sic] litigation" by the company's former president. *Ganske*, 2007 WL 1147357 at *3. Here, T. Rea's and Hall's Termination Agreements expressly state that their purpose is to "***resolve any clams*** they [VBF and Hall or T. Rea] may have against each other." (TPC, Dkt. No. 186, Exs. C, D, p.1, 4th "Whereas" clause (emphasis supplied).) Similar to the situation at bar, in *Ganske*, the company's majority shareholder chose to ignore the negotiated release with the former president and filed suit for various business torts. Id. at *1, *4.

As the *Ganske* court found: "There could be no more foreseeable consequence of a breach of the settlement agreement than the cost of litigation that it was specifically designed to avoid." *Id.*, 2007 WL 1147357 at * 3. Hall and T. Rea did not merely agree to a defense to any claim by VBF, but negotiated to avoid any "***charges, complaints, actions, causes of action, [and] suits***" from VBF. This language constitutes more than a release, but a complete discharge of any action against them. By bringing the Second Amended Complaint against Hall and T. Rea, VBF has breached that obligation and Alder is liable for inducing VBF to do so.

2. *Whether Egregious Cause Existed Under the Employment Agreement Justifying VBF's Termination of James Rea is A Question of Fact*.

Also, Alder claims VBF was justified in denying J. Rea amounts due to him under his Employment Agreement, because that contract permitted termination for Egregious Cause. (MTD, Dkt. No. 220 at 18.) J. Rea and the Founders have alleged how VBF's "Egregious Cause" was

14

fabricated, after the fact, as part of Alder's and the other Third-Party Defendants' plan to come up with any legal reason to avoid payments to J. Rea and the Founders under their respective contracts. (TPC, Dkt. No. 186, ¶¶ 52-53, 57-61.)  Regardless, this defense is fact-dependent, and cannot be ruled upon at the pleading stage.  This defense requires an inquiry into VBF's ability to terminate the relevant contracts, and VBF's impetus to terminate and/or breach the agreements.  The ultimate decision will reside with the jury and cannot be resolved via this motion.

### III.   Founders' Damages and Request for Attorneys' Fees are Well-Plead. (FRCP 12(b)(6)

Alder argues against three aspects of Founders' requested relief: 1) that Hall and T. Rea cannot seek attorneys' fees as damages for their tortious interference claims, 2) that none of the Founders are entitled to attorneys' fees separately, and 3) there is no basis for exemplary damages. (MTD, Dkt. No. 220 at 20-22.)

Addressing these in turn, Alder first asserts that Hall and T. Rea cannot recover attorneys' fees they incur in defending themselves from VBF's claims against them in the Amended Complaint because they are costs, not damages.  (MTD, Dkt. No. 220 at 20-21.)   Hall and T. Rea negotiated full and complete releases from VBF in their Termination Agreements.  Alder, along with the other Third-Party Defendants, induced VBF to breach these contracts and sue Hall and T. Rea on a plethora of matters that are clearly encompassed by the releases. If not for Alder's interference with Hall's and T. Rea's agreements with VBF and the releases contained therein, Hall and T. Rea would not have been pursued by VBF.  This is not an instance where Hall and Rea are trying to recover fees from Alder *in a case brought by it against them*.  Alder is not a party to the Termination Agreements, and it has not brought claims against Hall or T. Rea.  This is not a cross claim against VBF for its breach of the agreements.  It is a third-party claim and involves Alder's separate individual liability to Hall and T. Rea deriving from VBF's liability to them under

15

the agreements. Thus, this is the precise type of exception in which attorneys' fees are recoverable as damages: Alder's tortious acts, which were outside of its position as VBF's shareholder, led Hall and T. Rea to be sued by VBF. The fees Hall and T. Rea incur in defending against VBF's claims are therefore, damages resulting from Alder's individual torts and recoverable as damages.[12]

Separately, Alder claims that it cannot be liable for attorney's fees to Wulf or J. Rea under TEXAS CIV. PRAC. & REM. CODE § 38.001 resulting from its tortious interference with their respective Separation and Employment Agreements. Alder argues Texas law does not have a statute providing for such recovery, and that there is no contract between Wulf and/or J. Rea, on the one hand, and Alder, on the other, permitting the recovery of attorney's fees. (MTD, Dkt No. 220 at 21.) It is important to note Founders' requests for attorneys' fees under their agreements and TEX. CPRC § 38.001 are different from those requested by Hall and T. Rea in Counts 1 and 2. In their claims for tortious interference, Hall and T. Rea seek the attorneys' fees that they have incurred (and continued to incur) *in defending against VBF's claims* against them in the Second Amended Complaint. Those attorneys' fees flow as consequential *damages* from; i) VBF's breach of its obligations under the release provisions of Hall's and T. Rea's Termination Agreements, and ii) Alder's inducement of VBF's breach (his tortious interference).

All four Founders also seek recovery of the attorneys' fees they incur *in pursuing their third-party claims against Alder and the other third-party defendants*, pursuant to the provisions of their respective agreements (Hall, T. Rea, Wulf) and under TEX. CIV. PRAC. & REM. CODE § 38.011 (J. Rea). Again, to the extent Alder induced VBF to breach those agreements (or is found liable under them as VBF's alter ego), then the Founders are entitled to recover attorneys' fees for

---

[12] *Ganske*, 2007 WL 1147357 at * 3 ("There could be no more foreseeable consequence of a breach of the settlement agreement than the cost of litigation that it was specifically designed to avoid.").

that breach.  VBF's agreements with Hall, T. Rea and Wulf all contain specific provisions awarding attorney's fees for a breach.  And § 38.001 allows for the recovery of attorneys' fees "if the claim is for … (8) an oral or written contract."  The statute does not specify that the contract breached must be one between the same parties to the litigation.  It follows then, that a party who tortiously interferes with another party's contract, and thereby causes that contract to be breached, or acts as alter ego of a party who breaches a contract, should bear the full cost of such breach, including contractually provided attorneys' fees. Otherwise, the victim would be deprived of part of relief for which he contracted.

None of the cases Alder cites address this particular issue. In the cases cited, the court found that a breach of the underlying contract had *not* been established and there was no separate basis for the recovery of attorneys' fees.[13] Here, if Founders were to prevail, they would have established a breach of multiple written contracts, and § 38.001 would apply to permit the recovery of their fees incurred pursuing that breach.

Finally, Alder claims Founders have not adequately alleged fraud, malice, or gross negligence on his part to justify an award of punitive damages. (MTD, Dkt. No. 220 at 21-22.) Alder points to Founders' allegations that its conduct, along with that of the other Defendants, was "intentional, malicious, and vindictive" and states that such a conclusion is insufficient. (*Id.*) But this ignores multiple other factual allegations specifically directed at Alder in the TPC, including:

- Alder prevented VBF from drawing on VBF's credit facility until the Founders were terminated (evidence of fraud) (TPC, Dkt No. 186,  ¶¶ 16, 35);

- Alder directed VBF to sell Amstar's loan to a third party while it blocked VBF's access to this facility during Founders' terminations (TPC ¶ 20);

---

[13] (MTD at 19; *Alma Group, LLC v. Palmer*, 143 S.W. 3d 840, 845 (Tex. App. – Corpus Christi – Edinburg 2004) (defendant failed to prove breach of contract or tortious interference); *Ed Rachel Foundation v. D'Unger*, 117 S.W. 3d 348,  (Tex. App. – Corpus Christi – Edinburg 2003) (defendant failed to recover damages on breach of contract claim).

- Alder directed its counsel, Davis Graham & Stubbs, to negotiate Hall and T. Rea's termination agreements and to fire Wulf (fraud and vindictiveness) (TPC, ¶ 35, 44, 45.)

- Thelander, as Alder's representative on VBF's Board, imposed additional conditions on Hall and T. Rea's severance payments after the fact (vindictiveness) (TPC, ¶ 41);

- Alder, through Ebstein and Thelander planned to create ways to avoid payments due to Founders under their agreements (malice) (TPC, ¶ 46);

- Alder, through Thelander, Haarkoetter and Ebstein, knew that Wulf's wife had multiple sclerosis and  agreed to a provision in Wulf's Separation Agreement to pay his health insurance for 12 months, but then failed to make these payments, resulting in Wulf and his wife being denied medical coverage (fraud and malice) (TPC, ¶¶ 50, 55);

- Alder, through its counsel, DGS, engaged an outside firm to investigate Haarkoetter's behavior and later, James Rea's expenditures, but then refused to share the results of these reports with anyone but themselves, (fraud and malice) (TPC, ¶¶ 53, 61); and

- Alder considered Founders to have a "political agenda" with regard to Haarkoetter and wanted to terminate anyone who "willing[ly] collude[d]" with them in that agenda (malice) (TPC, ¶46, Ex. E).

The campaign Founders allege in the TPC is not merely a soured business relationship or sharp-elbowed economic competition. This was a premeditated, intentional, vindictive plan to punish Founders for trying to protect their employees from a harassing and bullying director and owner, and to enable Alder to usurp control of VBF to the exclusion of hundreds of other investors. There are more than sufficient allegations of fraud and malice, just based on the information that Founders know today, to support their claims for exemplary damages.

## IV.   Alder Was Properly Served with Process Pursuant to the Hague Convention. (FRPC 12(b)(5)

Despite having appeared in this case over four months ago, in the last paragraphs of its motion, Alder disputes service of process on it in the British Virgin Island through a BVI solicitor.

It must be noted that after Founders' original Third-Party Complaint was filed on April 10, 2019, (Dkt. No. 66), they immediately began to determine how to serve Alder. In its Rule 26(a) Initial Disclosures, VBF identified several Alder representatives, including Thelander, Haarkoetter, and Wester, as persons with discoverable information and indicated they could be contacted through VBF's counsel, Thompson Coburn and/or Alder's counsel in VBF's bankruptcy proceedings, Brownstein Hyatt Farber Schreck LLP.  (Pl. Rule 26(a) Init. Discl., dated November 28, 2018, Ex. B, APP0078, APP0081, APP0082.)  Founders' counsel reached out to both of these attorneys on May 1, 2019 to request their agreement to accepts service on behalf of Alder and its representatives.  Brownstein Hyatt declined to accept service on behalf of Alder or any of its personnel.  Later, VBF's counsel, Thompson Coburn, indicated that they were not representing Alder or any of its representatives, could not accept service and did not know of any other counsel who as representing Alder or its representatives at that time.[14] After preparing documents for international service on Alder, Founders' counsel reached out to VBF's counsel again, on July 1, 2019 and asked that VBF supplement its initial disclosures and provide an address where Alder could be contacted for service or as a person with information. Founders' counsel reiterated this request on August 15, 2019.  VBF's counsel ignored both requests. Founders then proceeded with the lengthy and expensive process of serving Alder pursuant to the Hague Convention.

On August 26, 2019, the day before his answer was due, VBF's co-counsel contacted Founders' counsel and informed her that they had "just been retained" to represent Alder representative, Thelander, with regard to the Third-Party Complaint.  Then on September 17, 2019, Founders' counsel was contacted by attorney Katharine Clark, who claimed to have been retained by Alder in connection with the Third-Party Complaint. Ms. Clark had been a partner at Thompson

---

[14] R. Lang's email to K. Annello responding to this request, May 3, 2019, is attached hereto as Exhibit C, APP0089-90.)

& Knight, VBF's counsel, until March 2019. So, while VBF's counsel claimed in May not to represent any Alder representative nor to even know of a lawyer who did, within four short months, VBF's counsel and former members of its firm were representing both Thelander and Alder.   It appears then, consistent with Founders' allegations, Alder is also directing and controlling VBF's counsel to obstruct Founders' ability to serve Alder with process. This gamesmanship forced Founders to incur significant costs and delays to comply with the Hague Convention in effectuating service on Alder.  Alder's eleventh-hour complaint regarding service is both hollow and hypocritical.

Nonetheless, Founders' service on Alder *did* comply with the Hague Convention.  Alder cites to the UK Declarations regarding service through official channels and its requirement that such service be made through the designated authority, in this case, the Registrar of the Supreme Court of BVI. (MTD, Dkt. No. 220, at 24.)  However, service through official channels, meaning through the U.S. Department of Justice Process Forwarding International, is not the only means of service permitted under the Hague Convention.  As set forth by the U.S. Department of Justice on the Hague Convention website, in § 3(l), entitled "Forwarding Authorities;"  "The persons and entities within the United States competent to forward services requests pursuant to Article 3 include any court official, ***any attorney***, or any other person or entity authorized by the rules of the court."[15]  In pertinent part, the UK's "declaration ***does not preclude*** any person in another Contracting State who is interested in a judicial proceeding ***(including his lawyer) from effecting service in the United Kingdom "directly" through a competent person other than a judicial***

---

[15] *See* United State of America Central Authority & Practical Information page from the Hague Convention website at: https://www.hcch.net/en/states/authorities/details3/?aid=278, attached hereto as Exhibit D, APP0093.

*officer or official, e.g., a solicitor."* *Id.* (emphasis supplied) (citing Letter dated September 11, 1980 from the Foreign and Commonwealth Office to the Permanent Bureau). [16]

Thus, U.S. attorneys may request service of process to British entities under Article 10(c) of the Hague Service Convention, by directly engaging any licenses solicitor, rather than via the Central Authority under Article 5. Founders engaged U.S. attorney, and international service specialist, Aaron Lukken, to prepare service upon Alder in accordance with the Hague Convention. (*See* Return of Service, dated September 6, 2019, Dkt. No. 156, ¶ 3.) Mr. Lukken engaged Susan V. Demers, Esq., a BVI licensed solicitor to in turn serve the documents on Alder at its BVI registered address. (*Id.*) Ms. Demers engaged a process server to do so. (*Id.*, ¶¶ 4-9.) That process server served the documents to Alder at its registered address and executed an affidavit to that effect. This is effective service under Rule 4(f).

Moreover, Alder's participation in this case for the last four months indicates it has actual notice of this suit and the claims against it. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Jackson v. Michalski*, 3:10-CV-00052, 2011 WL 3679143, at *4 (W.D. Va. Aug. 22, 2011) (citations omitted); *Clark v. AT & T Corp.,* 8:13-CV-02278-AW, 2013 WL 6014343, at *1 (D. Md. Nov. 12, 2013) ("In cases where service of process has given a defendant actual notice of the claim against it, courts may adopt a liberal interpretation of Rule 4, uphold the service, and maintain the court's jurisdiction over the claim."); *Coombs v. Iorio*, CIV-06-060-SPS, 2008 WL 4104529, at *3 (E.D. Ok. Aug. 28, 2008) (finding Hague Convention service valid despite lack of precise compliance where Plaintiff made good faith effort to comply with procedure); *Seiko Epson Corp. v. Glory S.*

---

[16] *See* UK Central Authority & Practical Information page from the Hague Convention website at: https://www.hcch.net/en/states/authorities/details3/?aid=278, attached hereto as Exhibit E, APP0100. Contrary to Alder's argument, there is no requirement that only English or Welsh solicitors may effectuate service of process.

*Software Mfg., Inc.,* 06-CV-236-BR, 2007 WL 282145, at *2 (D. Or. Jan. 24, 2007) (finding Hague Convention service on Chinese company valid despite lack of certificate from Central Authority where "plaintiff attempted in good faith to comply with the Hague Convention and where the defendant had sufficient notice of the action") Alder has been served and must respond to Founders' claims against it.

## CONCLUSION

For all the reasons set forth herein, Third-Party Plaintiffs, Leslie Wulf, John E. (Ted) Rea, Bruce Hall, and James Rea, respectfully request that this Court deny Alder Aqua Ltd.'s Motion to Dismiss Third Party Claims Pursuant to Rules 12(b)(1). (5), and (6), and award them any and all other relief that it deems necessary and just.

Date:   January 13, 2020               LESLIE WULF, BRUCE HALL,

JOHN (TED) REA, JAMES REA

By: */s/ Kimberly D. Annello*
        Kimberly D. Annello
        Texas Bar No. 24093704
        David Campbell
        Texas Bar No. 03698500
        Eli D. Pierce
        Texas Bar No. 24092972
        Underwood Perkins, P.C.
        5420 LBJ Freeway, Suite 1900
        Dallas, Texas 75240
        Phone: 972.661.5114
        Email: kannello@uplawtx.com
                 dcampbell@uplawtx.com
                 epierce@uplawtx.com

**Attorneys for Defendants, Leslie Wulf, Bruce Hall, John (Ted) Rea, and James Rea**

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that on this 13th day of January, 2020 a true and correct copy of the above and foregoing was served upon counsel of records for all parties via ECF Service.

                              */s/ Eli D. Pierce*
                                Eli D. Pierce