## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
|    Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES REA, JOHN REA, and KEITH DRIVER, | § § | |
|    Defendants/Founders | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
| v. | § | HON. BRANTLEY STARR |
| | § | |
| EVA EBSTEIN, JENS HAARKOETTER, BJORN THELANDER, ANDERS WESTER, NORMAN MCCOWAN, DR. OTTO HAPPEL and ALDER AQUA, LTD. | § § § § | |
|    Third-Party Defendants | § | |

### FOUNDERS' COMBINED RESPONSE TO THIRD PARTY DEFENDANTS BJORN THELANDER, NORMAN MCCOWAN, AND ALDER AQUA, LTD.'S MOTIONS TO STRIKE AMENDED THIRD-PARTY COMPLAINT AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................... iii

**INTRODUCTION** ...................................................................................................................1

**FACTUAL BACKGROUND** ..................................................................................................2

**ARGUMENT & AUTHORITIES** ...........................................................................................6

    I.       Third-Party Defendants' Liability Under the Current Third-Party Complaint is Derivative of VBF Claims for Rescission, Declaratory Judgment, and Restitution. .............................................................................7

    II.      In the Event this Court Denies Founders' Motion to Dismiss, Founders will Attempt to Pass on to Third-Party Defendants All or Part of the Liability Asserted Against Founders by VBF in the Second Amended Complaint ...................................................................................................11

**CONCLUSION** .....................................................................................................................13

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Manguno* v. *Prudential Prop. & Cas. Ins. Co.*,
276 F.3d 720, 725 (5th Cir. 2002) ............................................................................................ 7

*McDonald* v. *Union Carbide Corp.*,
734 F.2d 182, 183 (5th Cir. 1984) ............................................................................................ 6

*Huggins* v. *Graves,*
337 F.2d 486, 489 (6th Cir. 1964). ........................................................................................... 6

*Powell, Inc. v. Abney*,
83 F.R.D. 482, 486 (D.C. Tex. 1979) ................................................................................. 6, 13

*United States* v. *Joe Grasso & Son,*
380 F.2d 749, 751-752 (5th Cir. 1967).143 S.W. 3d 840 ...................................................... 6, 7

Rules

FRCP 14 ............................................................................................................... 2, 6, 7, 13

Other Authorities

6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure §
    1442 at 289–91 (West 1990) ............................................................................................... 7

Third Party Plaintiffs Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), John E. Rea ("T. Rea"), and James Rea ("J. Rea") (collectively "Founders") hereby respond to Third Party Defendants Bjorn Thelander ("Thelander"), Norman McCowan ("McCowan"), and Alder Aqua, Ltd.'s ("Alder") (collectively, "Third-Party Defendants") Motions to Strike Amended Third-Party Complaint ("Motion to Strike") (Dkt Nos. 223 and 228) and in support of this Response, Founders would show the Court as follows:

## INTRODUCTION

In separate motions, Third-Party Defendants Thelander, McCowan and Alder seek to strike Founders' Amended Third Party Complaint because they claim their purported liability to Founders is not derivative of founders' liability to Plaintiff, VBF, under the Second Amended Complaint. As discussed below, through several claims in the SAC, VBF affirmatively seeks to rescind Hall's and T. Rea's Termination Agreements, Wulf's Separation Agreement and all Founders' Employment Agreements and to avoid any obligations to Founders under these agreements. The Founders' Amended Third-Party Complaint ("TPC") (Dkt. No. 186) seeks to enforce the same agreements that VBF is attempting to rescind. Thus, the TPC arises from the same set of facts and legal claims as the Second Amended Complaint. Furthermore, Founders' claims for tortious interference and breach of the Agreements are unquestionably derivative of VBF's claims for recession of those exact same Agreements. If VBF is successful in its claims for rescission of the Agreements, Founders' claims disappear.

Furthermore, Founders have moved to dismiss VBF's Second Amended Complaint pursuant to FRCP Rule 12(b)(1) and 12(b)(6), but have not otherwise responded to its allegations. If this Court denies Founders' Motion to Dismiss, Founders' chief defense is that Thelander, McCowan, Alder, and other Third-Party Defendants were aware of each and every action taken by

Founders that VBF complains of in the Second Amended Complaint, and in fact approved these actions as members of VBF's board. Ergo, if Founders are found liable for any of the actions alleged in the Second Amended Complaint, Thelander, McCowan, and Alder would similarly be liable as the parties approving Founders' actions. Thus, the TPC includes the types of derivative claims that FRCP Rule 14 contemplates and permits to brought as a third-party claim. Both motions must be denied accordingly.

## FACTUAL BACKGROUND

In July 2016, Alder, along with other investors, invested $34M into VBF through a purchase of preferred stock. (TPC, Dkt. No. 186, ¶ 14.) On July 1, 2016, each of the Founders entered into a separate employment agreement with VBF. (*Id.*, ¶ 23.)  The terms of these agreements were negotiated with Thelander and Haarkoetter, as representatives of Alder, as part of Alder's equity investment into VBF. (*Id.*) At that time, Alder appointed Thelander and Haarkoetter to the board of directors of VBF. (*Id.*, ¶ 14.) Alder, via Haarkoetter and Dr. Happel, suggested that Founders enter into the Employment Agreements with VBF. (*Id.*, ¶ 25.) Haarkoetter, Happel, and Alder's counsel, DGS, negotiated and drafted these agreements with Founders, as officers of VBF, in June and July of 2016. (*Id.*) As representatives of Alder, Thelander and Haarkoetter were aware of Founders' Employment Agreements with VBF. (*Id.*, ¶ 26.) The compensation in each agreement was in every model presented to the board at each board meeting. (*Id.*)

In May-June 2017, Founders Hall and T. Rea were informed about complaints from female VBF employees about inappropriate sexual conversations, invitations, and behavior from Haarkoetter when he was present at VBF's corporate offices in Plano, Texas, and at its aquaculture operations in Iowa. (TPC, Dkt. No.  186, ¶ 31.) Plaintiff T. Rea, as COO, directed Eric Simms,

VBF's Director of Human Resources, to investigate these complaints. (*Id.*) During VBF's investigation, Hall, T. Rea and Wulf learned that employees at Amstar had also accused Haarkoetter of inappropriate behavior and that Amstar may have settled with at least one employee who had been inappropriately propositioned and/or harassed by Haarkoetter. (*Id.*, ¶ 32.) Haarkoetter was aware of the investigation and repeatedly threatened Wulf about reporting it to anyone. (*Id.*, ¶ 34.)

In July 2017, Alder became the controlling shareholder of VBF and appointed Ebstein as its additional representative to VBF's Board of Directors, thereby enabling Haarkoetter, Ebstein and Thelander, directly and through Amstar, to control the decisions of the board. (TPC, Dkt. No. 186, ¶ 33.) In September 2017, Thelander, along with other third-party defendants, approached Plaintiff Wulf, as CEO of VBF, and directed him to terminate Hall and T. Rea for no cause, pursuant to their employment agreements. (*Id.*, ¶ 35.) Thelander directed Wulf to engage VBF's corporate counsel, Jackson Walker of Dallas, to negotiate agreements to terminate Hall and T. Rea's employment with the company and discuss the repurchase of their shares. (*Id.*) Alder's counsel, DGS, also weighed in on these agreements on behalf of Alder and/or Amstar, and reported to Thelander, with respect to these agreements. (*Id.*) Thelander had direct conversations with T. Rea and Hall specific to their termination agreements and terms. (*Id.*)

On October 25, 2017, Wulf presented a summary of Mr. Simms' investigation, to the Board of Directors, and the Board of Directors recommended that Haarkoetter be asked to resign. (TPC, Dkt. No. 186, ¶ 36.) Haarkoetter resigned that same day. (*Id.*) A few days later, on October 27, 2017, VBF executed Business Relationship Termination Agreements with Hall and T. Rea. (*Id.*, ¶ 38, Exs. C, D thereto.) These agreements were approved by Jackson Walker, as counsel for VBF,

by DGS as counsel for Alder and/or Amstar, and were specifically approved by Ebstein and Thelander as Alder's representatives. (*Id.*)

> In the Termination Agreements, VBF agreed to release Hall and T. Rea as follows:
>
> Except for the covenants and agreements of [Rea/Hall] provided for in this Agreement, the Company, on its own behalf and on behalf of the other Company Releasees, hereby irrevocably and unconditionally release, acquit and forever discharge [the Rea/Hall Releasers] from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or unknown (the "Company Releasee Claims") which the Company Releasees now have, own, hold, or to which the Company Releasees at any time heretofore had, owned or held against each of [the Rea/Hall Releasers.]  The Company Releasees represent that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any Company Releasee Claim or any portion thereof or interest therein.

(TPC, Dkt. No. 186, Hall Term. Ag., Ex. C, ¶ 4(b); T. Rea Term. Ag., Ex. D, ¶ 4(b).)

Just 10 days later, in early November 2017, Ebstein, Haarkoetter, and Thelander sent Brian Boonstra and Justin Taylor, attorneys with DGS (counsel to Alder and Amstar) and Jason Lucas, a representative of Amstar, to Texas to terminate Wulf as CEO. (TPC, Dkt. No. 186, ¶ 44.) This time, however, Dr. Happel, Ebstein, Thelander, Haarkoetter, and Wester directed Norman McCowan, acting CEO of VBF (appointed by Ebstein and Thelander), to engage DGS, Alder's and Amstar's counsel (not VBF's counsel which was Jackson Walker) to negotiate a termination agreement with Wulf. (*Id.*, ¶ 45.)

Unbeknownst to Founders, and specifically, unbeknownst to Wulf, the same day that he was terminated, November 6, 2017, Thelander took part in an e-mail discussion regarding ways to avoid payments that might be due to Wulf or the other Defendants pursuant to their Employment Agreements. (TPC, Dkt. No. 186, ¶ 46.) Specifically, Eva Ebstein described the severance payments that Founders were to receive in their Employment Agreements as "lovely golden parachutes of other peoples' money." (*Id.*, and Ex. E thereto.) She demanded that VBF's counsel,

Jackson Walker be tasked with assessing whether it was "legally permissible" to avoid the payment obligations to Founder Plaintiffs. (*Id.*)

On December 1, 2017, VBF and Wulf executed a Separation Agreement, pursuant to which, VBF was to pay Wulf as follows:

> [T]he Company agrees to pay to Wulf an aggregate amount equal to $400,000, less applicable withholdings and deductions, as follows: (i) an amount equal to 3 months of Wulf's Base Salary (as defined in the Employment Agreement), being an amount equal to $100,000, less applicable withholdings and deductions, on the Effective Date, and (ii) the remainder shall be payable in equal installments, less applicable withholdings and deductions, in accordance with the Company's normal payroll practices over the 9 months period beginning on the first regular payroll date of the Company following the 3 month anniversary of the Effective Date.

(Wulf Sep. Ag., TPC Ex. B, ¶ 5(a).) DGS, Alder's counsel, and the Alder Defendants were aware of the terms of Wulf's Separation Agreement with VBF, and specifically approved McCowan's execution of the Separation Agreement on behalf of VBF. (TPC, ¶ 51.) On January 19, 2018, with no prior explanation, attorneys for VBF informed Wulf that it would not pay him the remaining amounts due under his Separation Agreement (executed just 6 weeks before) because it had conducted an internal investigation and concluded that he had defrauded the company. (*Id.*, ¶ 56.) Similarly, on January 8, 2019, without any notice, VBF terminated James Rea from his employment at VBF, claiming Egregious Cause under his Employment Agreement. (*Id.*, ¶ 57.)

VBF initiated suit against Founders on July 31, 2018. (Dkt. No. 1.) On September 23, 2019, VBF filed its Second Amended Complaint. Therein, VBF seeks to rescind Hall's and T. Rea's Termination Agreements, Wulf's Separation Agreement and all Founder Plaintiffs' Employment Agreements (all agreements collectively, the "Agreements") and to avoid any obligations to Founder Plaintiffs under these agreements. (Second Amended Complaint ("SAC"), Dkt. No. 159, Counts XIV, XV, XVI, XVII, XVIII, XIX). On November 8, 2019, Founders filed their Amended

Third-Party Complaint, asserting claims for tortious interference with the Agreements and breach of contract as to the Agreements. Alder, Thelander and McCowan have each filed Motions to Dismiss the Amended Third-Party Complaint (Dkt. Nos. 220, 227, 229) in addition to their Motions to Strike.

## ARGUMENT AND AUTHORITIES

As Third-Party Defendants all correctly observe in their respective motions to strike, impleader is available to when the third-party defendant is or may be "liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff." *United States* v. *Joe Grasso & Son,* 380 F.2d 749, 751-752 (5th Cir. 1967). The *Grasso* court went on to say that, to put it in other words, "the defendant must attempt to pass on to the third-party all or part of the liability asserted against the defendant." *Id.* There need be no showing that the third-party defendant is directly liable to the Plaintiff.  FED. R. CIV. P. 14(a); *Huggins* v. *Graves,* 337 F.2d 486, 489 (6th Cir. 1964). The third party's liability must also be derivative of the outcome of the main claim. *Grasso* 380 F.2d 751-52. In order for a defending party to implead a nonparty as a third-party defendant, liability of the two requires an either/or proposition in order to fall within the ambit of Rule 14. *See id.* at 752; *see also Powell, Inc. v. Abney*, 83 F.R.D. 482, 486 (D.C. Tex. 1979)

In deciding whether to allow Founders' Rule 14 third-party claim in this action, this Court has "wide discretion." *McDonald* v. *Union Carbide Corp.,* 734 F.2d 182, 183 (5th Cir. 1984). Courts are to liberally apply Rule 14 and the third-party complaint should only be dismissed "when there is **not the slightest possibility** that the proof will establish the **ultimate liability** of the third-party defendant." *Powell, Inc.* 83 F.R.D. at 485 (Emphasis supplied). Further, third-party complaints are also to be liberally construed in favor of the third-party complainant and all pleaded

facts must be taken as true. *Manguno* v. *Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 725 (5th Cir. 2002). Because Rule 14 is designed to reduce multiplicity of litigation and therefore is remedial in character, it should be construed liberally." 6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1442 at 289–91 (West 1990) (footnote citations omitted). Furthermore, "whether a third-party defendant may be impleaded under Rule 14 [is a matter] addressed to the sound discretion of the trial court." *Id.*, § 1443 at 297–98.

### I. Third-Party Defendants' Liability Under the Current Third-Party Complaint is Derivative of VBF Claims for Rescission, Declaratory Judgment, and Restitution.

The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader only in cases where the third party's liability was in some way derivative of the outcome of the main claim. *Grasso & Son,* 380 F.2d at 751. The following is a delineation of VBF's claims against Founders, and Founders corresponding claims against the Third-Party Defendants:

| VBF CLAIMS AGAINST FOUNDERS | DERIVATIVE FOUNDER CLAIMS AGAINST THIRD-PARTY DEFENDANTS |
|---|---|
| Count XIV – Rescission – Termination Agreements, Selective Provisions and Declaratory Judgment – Hall, Driver, Ted Rea | • Count I – Tortious Interference with Hall Termination Agreement Against All Third-Party Defendants <br><br> • Count II – Tortious Interference with Ted Rea's Termination Agreement Against All Third-Party Defendants |
| Count XV – Declaratory Judgment James Rea | • Count IV – Tortious Interference with James Rea's Termination Agreement Against All Third-Party Defendants |

| | |
|---|---|
| Count XVI – Rescission – Employment Agreement – James Rea | • Count IV – Tortious Interference with James Rea's Termination Agreement Against All Third-Party Defendants |
| Count XVII – Rescission – Separation Agreement – Wulf | • Count III – Tortious Interference with Wulf Separation Agreement Against All Third-Party Defendants |
| Count XVIII – Declaratory Judgment – Separation Agreement – Wulf | • Count III – Tortious Interference with Wulf Separation Agreement Against All Third-Party Defendants |
| Count XIX – Restitution– Hall, Ted Rea, Driver and Wulf | • Count I – Tortious Interference with Hall Termination Agreement Against All Third-Party Defendants<br><br>• Count II – Tortious Interference with Ted Rea's Termination Agreement Against All Third-Party Defendants<br><br>• Count III – Tortious Interference with Wulf Separation Agreement Against All Third-Party Defendants |

VBF not only seeks to rescind the Agreements, but also seeks: i) a declaration that it does not owe Founders any benefits under the Agreements, and ii) restitution for benefits already paid to Founders under the Agreements.

In response, Founders allege in their TPC that the Third-Party Defendants tortiously interfered with the Agreements between the Founders and VBF, and induced VBF to breach such

Agreements. The analysis of whether or not Founders' claims are derivative of VBF's claims for rescission, declaratory judgment, and restitution is brief: if VBF succeeds in rescinding or otherwise voiding its Employment, Termination and Separation Agreements with Founders, then Founders' claims disappear. As Alder, Thelander, and McCowan have argued in their Motions to Dismiss, if there is no contract, then there can be no claim for tortious interference or breach. Founders are unsure how much more "derivative" claims can be.

II. **In the Event this Court Denies Founders' Motion to Dismiss, Founders will Attempt to Pass on to Third-Party Defendants All or Part of the Liability Asserted Against Founders by VBF in the Second Amended Complaint**

VBF's claims against Founders in the Second Amended Complaint included hundreds of allegations of misappropriation, misrepresentation of VBF's technology and finances, fraud, and other misconduct while Founders were executives of VBF. It is undisputed that VBF's claims against Founders exclusively stem from actions taken by Founders during their employment by VBF. (SAC, p. 94, ¶ 422). The main thrust of VBF's argument is that Founders lied about seemingly every facet of VBF's business from the time they were employed until the time they were terminated. Specifically, VBF alleges Founders:

   a. Misappropriated VBF assets by:
       i. Transferring stock of VBF Canada to BAJJER (SAC, Dkt. No. 159, ¶¶ 26-27;)
       ii. Directing VBF to pay American Growth Funding $375,000 (SAC, Dkt. No. 159, ¶¶ 28-31);
       iii. Using $107,490.51 of VBF funds to provide accommodations for Founders (SAC, Dkt. No. 159, ¶¶ 32-34);

      iv. Directing VBF funds to Gregg Sedun without proper consideration (SAC, Dkt. No. 159, ¶¶ 35-37);

      v. Fraudulently procuring a high salary without investing their own money in VBF (SAC, Dkt. No. 159, ¶¶ 38-41);

      vi. Hiring one of Founders' daughters and paying her $52,264.28 in salary (SAC, Dkt. No. 159, ¶¶ 42-45);

      vii. Buying unnecessary tanks then reselling same at a profit (SAC, Dkt. No. 159, ¶¶ 46-48);

      viii. Inducing VBF Canada to transfer stock to companies owned by Founders (SAC, Dkt. No. 159, ¶¶ 49-51); and

      ix. Otherwise using VBF assets for personal use (SAC, Dkt. No. 159, ¶¶ 52-53);

b. Intentionally misrepresented VBF's technology and finances, including:

      i. Misrepresenting key performance and financial metrics (SAC, Dkt. No. 159, ¶¶ 57-63);

      ii. Misrepresenting other VBF metrics (SAC, Dkt. No. 159, ¶¶ 90-93);

      iii. Misrepresenting FCR (SAC, Dkt. No. 159, ¶¶ 94-114);

      iv. Misrepresenting density (SAC, Dkt. No. 159, ¶¶ 115-140);

      v. Misrepresenting mortality rates (SAC, Dkt. No. 159, ¶¶ 141-150);

      vi. Misrepresenting water quality (SAC, Dkt. No. 159, ¶¶ 151-154);

      vii. Misrepresenting EBITDA and other financial metrics (SAC, Dkt. No. 159, ¶¶ 155-162); and

    viii. Misrepresenting their own, and VBF's technical abilities (SAC, Dkt. No. 159, ¶¶ 163-170);

  c. Wasting VBF Assets (SAC, Dkt. No. 159, ¶¶ 171-175);

  While VBF has couched this litigation as a case against the individuals it blames for its ultimate failure as a business venture, through the TPC, Founders provide an alternate theory: this case is actually akin to a whistleblower lawsuit. Founders were informed that one of Alder's representatives to the VBF board had sexually harassed multiple VBF employees. Accordingly, Founders reported the offending individual to the VBF board and expected the situation would be handled in a professional manner. Instead, shortly after the Founders made their report, they began to be serially terminated by VBF without cause and with vague explanations from VBF as to the reasoning. VBF negotiated Agreements with the Founders containing non-disparagement provisions and full releases in an attempt to keep Founders silent regarding the malfeasance they witnessed while at VBF.

  As Founders were the – founders – of VBF, and knew the company and business better than any other individual or entity, VBF unsurprisingly began to fail shortly after their termination. Looking for a scapegoat, VBF conjured up the list of claims as presented in its Second Amended Complaint and now allege that the Founder's actions cost VBF in excess of $90,000,000. While Founders have already extensively briefed the legion of shortcomings in VBF's Second Amended Complaint in their Motion to Dismiss, it does merit repeating here that the factual allegations raised by VBF are comically vague as to the specific time, place, and manner of Founders' alleged fraud, and who Founders actually damaged as a result.

  The purpose in regaling the Court with such a lengthy retelling of the facts in VBF's Second Amended Complaint and Founders' Third-Party Complaint, is to illustrate that any actions

Founders took on behalf of VBF, whether representing performance or financial metrics, utilizing VBF funds or stock, or preparing presentations regarding VBF's business, Founders did so with the full knowledge and support of the Third-Party Defendants. Founders are experienced businessmen and know how corporate governance works, and Founders allege to the Court that Founders' "bad acts" as alleged in the Second Amended Complaint were approved by VBF's board of directors with full knowledge of all facts.

Further illustrating the interconnection between Founders' allegations and those in the Second Amended Complaint, VBF is unable to specify the parties that make up the "potentially interested third parties," "disinterested board members," "disinterested VBF directors," "potential and actual investors," referenced in the Second Amended Complaint. (MTD, Dkt. No. 184, Ex. C thereto.) That may be because such individuals either (1) do not exist, or (2) do exist, but would reveal that any representations made to them by the Founders were made with the full-throated support of the Third-Party Defendants. Founders cannot think of another reason why VBF would hide the identities of these parties and prevent Founders from conducting discovery against them.

In short, in the event this case continues after the Court rules on Founders' Motion to Dismiss, Founders will attempt to initiate discovery against the "potentially interested third parties," "disinterested board members," "disinterested VBF directors," "potential and actual investors," referenced in the Second Amended Complaint. Founders anticipate that, in the event these individuals/entities exist, they will confirm that the Third-Party Defendants were part and parcel to the alleged "schemes" in which VBF claims the Founders were engaged, and had full knowledge and support of same.

Without more detailed allegations from VBF, and without the opportunity to conduct discovery on the parties that allegedly heard the misrepresentations from Founders and were

damaged by their alleged fraud, it would be premature for this Court to strike Founders' Third-Party Complaint at such an early stage (i.e. before Founders have even filed their answer). Founders allege that if this case continues past the motion to dismiss stage, and after allowing time for discovery against the "potentially interested third parties," "disinterested board members," "disinterested VBF directors," "potential and actual investors," referenced by VBF in the Second Amended Complaint, Founders will be in a position to properly allege facts that pass along all or part of any liability asserted by VBF to the Third-Party Defendants.

While upon a cursory review, Founders' Third-Party Complaint might lack the obvious connection between VBF's claims against Founders and Founders' claims against Third-Party Defendants, this is only because VBF's Second Amended Complaint is vague to the point of reading like a mystery novel, thereby preventing Founders from properly alleging facts that would "establish the ultimate liability of" Third-Party Defendants. *Powell, Inc.,* 83 F.R.D. at 485. Founders believe striking their Third-Party Complaint as a result of VBF's improper pleading technique would thwart the purpose of Rule 14.[1]

## CONCLUSION

For these reasons, the Founders respectfully request that the Court deny Third-Party Defendants Bjorn Thelander, Norman McCowan, and Alder Aqua, Ltd.'s Motions to Strike and allow the Third-Party Complaint to go forward, or, in the alternative, delay ruling on Third-Party Defendants Bjorn Thelander, Norman McCowan, and Alder Aqua, Ltd.'s Motions to Strike until this Court has entered a ruling on Founders' Motion to Dismiss.

---

[1] If the Motions to Strike are granted, to any extent that that the Third-Party Defendants are held liable to Founders, or VBF, a new and entirely separate lawsuit against the Third-Party Defendants would be required. This would be an incredibly inefficient procedure. Accordingly, the only efficient approach – particularly in a case of such magnitude and complexity – is for the Third-Party Defendants to remain in this action, at least until such time as this Court renders a decision on Founders' pending Motion to Dismiss. The Third-Parties Motions to Strike are conspicuously silent on this issue of duplicative proceedings, and as a result the relief they urge would undermine the fundamental purpose of Rule 14 of the Federal Rules of Civil Procedure.

Dated: January 13, 2020 Respectfully submitted,

By: */s/ Kimberly D. Annello*
Kimberly D. Annello
Texas Bar No. 24093704
Eli D. Pierce
Texas Bar No. 24092972

Underwood Perkins, P.C.
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
Phone: 972.661.5114
Email: kannello@uplawtx.com
epierce@uplawtx.com

**Attorneys for Defendants, Leslie Wulf, Bruce Hall, John (Ted) Rea, and James Rea**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 13, 2020 a true and correct copy of the above and foregoing was served upon counsel of records for all parties via ECF Service.

*/s/ Eli D. Pierce*
Eli D. Pierce