**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

VEROBLUE FARMS USA, INC.,

        Plaintiff,

    v.

LESLIE A. WULF, BRUCE A. HALL,
JAMES REA, JOHN E. REA, KEITH
DRIVER, CANACCORD GENUITY LLC,
CHRISTINE GAGNE, and SEAN MANIACI,

        Defendants.

Case No. 3:19-cv-00764-X

**REPLY MEMORANDUM IN SUPPORT OF CANACCORD**
**GENUITY LLC'S MOTION TO DISMISS THE**
**SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ................................................................................................................2

I.     This Court Lacks Personal Jurisdiction Over Canaccord ....................................................2

II.    VBF's Claims Are Barred By The Engagement Agreement And The Mutual Release ......5

III.   The Complaint Fails To State A Claim Upon Which Relief Can Be Granted ...................9

IV.   This Court Is An Improper Venue For This Action........................................................15

CONCLUSION ............................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*In re Alamosa Holdings, Inc.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ..................................................................10

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013)..........................................................................................15

*Blocker v. Black Entm't Television, LLC*,
   2018 WL 3797568 (D. Or. June 26, 2018) ...............................................................3

*Carruth v. Michot*,
   2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) ..........................................................3

*Casanola v. Delta Mach. & Ironworks LLC*,
   2019 WL 2076190 (E.D. La. May 10, 2019) ............................................................3

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).......................................................................................2, 3

*Davis v. Davis*,
   1998 WL 51366 (N.D. Tex. Jan. 21, 1998) ............................................................13

*Duncanson v. Wine & Canvas IP Holdings LLC*,
   2017 WL 6994541 (S.D. Ind. Apr. 20, 2017) ..........................................................3

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
   2003 WL 23316646 (S.D. Tex. Mar. 27, 2003)........................................................6

*Evans v. Sweetser*,
   110 F.3d 794 (5th Cir. 1997) ...............................................................................5

*FCA Invs. Co. v. Baycorp Holdings, Ltd.*,
   48 F. App'x 480 (5th Cir. 2002) ...........................................................................4

*Glass Design, Inc. v. Owens-Brockway Glass Container, Inc.*,
   2013 WL 12091106 (W.D. Tex. Jan. 7, 2013) .......................................................13

*Green Ice Tech., LLC v. Ice Cold 2, LLC*,
   2018 WL 3656476 (E.D. Tex. Aug. 1, 2018) ..........................................................3

*Green v. Lake Placid 1980 Olympic Games, Inc.*,
   147 A.D.2d 860 (3d Dep't 1989)...........................................................................7

*Griggs v. Swift Transp. Co.*,
   2018 WL 3966304 (D.N.J. Aug. 17, 2018) .............................................................3

*Hatzenbuehler v. Essig*,
  526 S.W.3d 657 (Tex. App. 2017) .......................................................................5

*Holt Oil & Gas Corp. v. Harvey*,
  801 F.2d 773 (5th Cir. 1986) ............................................................................4

*Impala African Safaris, LLC v. Dall. Safari Club, Inc.*,
  2014 WL 4555659 (N.D. Tex. Sept. 9, 2014) ...................................................9

*King v. Hawgwild Air, LLC*,
  2008 WL 2620099 (N.D. Tex. June 27, 2008) ...................................................3

*Klausmair Constr., LLC v. Gladden Farm, LLC*,
  2018 WL 3707380 (E.D. Pa. Aug. 3, 2018) ......................................................3

*Middlebrook v. Anderson*,
  2005 WL 350578 (N.D. Tex. Feb. 11, 2005) ................................................4, 5

*Miller v. Native Link Constr., LLC*,
  2017 WL 3536175 (W.D. Pa. Aug. 17, 2017) ...................................................3

*Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*,
  2003 WL 298799 (N.D. Tex. Feb. 10, 2003) ...................................................15

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*,
  2016 WL 1069675 (N.D. Tex. Mar. 16, 2016) .............................................2, 3

*In re Packaged Seafood Prod. Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018) .........................................................2, 3

*Stubbs v. REV Grp., Inc.*,
  2018 WL 6504396 (N.D. Ala. Dec. 11, 2018) ..................................................2

*United States v. Gohari*,
  227 F. Supp. 3d 313 (S.D.N.Y. 2017) .............................................................13

*Wien Air Alaska, Inc. v. Brandt*,
  195 F.3d 208 (5th Cir. 1999) ............................................................................4

*Yavuz v. 61 MM, Ltd.*,
  576 F.3d 1166 (10th Cir. 2009) ......................................................................15

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ............................................................... *passim*

Federal Rule of Civil Procedure 12(b)(3) ...........................................................................................15

Federal Rule of Civil Procedure 12(b)(6) .............................................................................................6

## PRELIMINARY STATEMENT

VBF's opposition ("Opposition" or "Opp.") confirms that Canaccord must be dismissed from this action.[1] VBF broadly claims that Canaccord "conspired with the founders to create investor-related and other materials packed with material misrepresentations" and certain of those misrepresentations "were relied upon in the course of VBF's business, by its employees, potential and future VBF investors, and future VBF board members." Opp. at 1. But neither VBF's prolix Complaint nor its 29-page Opposition actually identifies *a single person* that detrimentally relied on these supposed misrepresentations or explains how that reliance resulted in $90 million in damages to VBF. These gaping holes in VBF's allegations alone require dismissal. Further, VBF's theory collapses on close inspection: VBF claims that it was defrauded by statements concocted by its own officers and directors; but those officers and directors *were VBF* and VBF does not identify anyone else at the company that was misled. In addition, the Complaint makes clear that Canaccord was also misled by the Founders; Canaccord cannot be liable *to VBF* for reasonably relying on information provided *by VBF* in performing honest investment banking services.

VBF's Opposition also confirms that this Court should enforce the clear, unambiguous language of the Mutual Release, which bars all of VBF's claims. VBF does not challenge the authenticity of the Mutual Release; it simply asks this Court to ignore its plain terms. Indeed, VBF goes so far as to casually suggest—without any support whatsoever—that the Mutual Release was procured through fraud. This Court should reject VBF's request: the contractual relationship between the parties is at the center of VBF's allegations and claims against Canaccord, and the Mutual Release explicitly extinguished all claims that arise out of that relationship. Further, this Court should not tolerate VBF's unpled, bald accusation of fraudulent inducement.

---

[1] Unless noted, capitalized terms have the same meanings as in Canaccord's opening brief ("Br.").

1

Finally, VBF's Opposition fails to adequately contest that (1) this Court lacks personal jurisdiction over Canaccord, (2) the Engagement Agreement bars VBF's claims, and (3) this Court is an improper venue for VBF's claims. For these reasons and those discussed below and in Canaccord's opening brief, the claims against Canaccord must be dismissed with prejudice.

## ARGUMENT

### I.      This Court Lacks Personal Jurisdiction Over Canaccord.

**General Jurisdiction**: VBF does not dispute that it cannot meet the strict standard for general jurisdiction over a company outlined by the Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). *See* Br. at 11-12; Opp. at 5-7. And for good reason. VBF's complaint alleged that Canaccord is a Delaware LLC with "roots as a firm" in Canada. *See* Br. at 11-12. In its Opposition, VBF attaches various documents showing that Canaccord is a Delaware LLC, its "principal office" is located in New York, and its management (President, CFO, COO, Director, and secretaries) are located in New York, Boston, and Canada. ECF No. 246-1 at 6-10, 83-87. Faced with this dearth of Texas ties, VBF responds only that Canaccord has an office in Texas and is registered to do business in Texas. Opp. at 6. Even accepting those claims as true, that is simply not enough for a prima facie showing of general jurisdiction. *See* Br. at 11-12.[2]

Instead of dealing with *Daimler*, VBF attempts to invent a distinction between corporations and LLCs for personal jurisdiction purposes. *See* Opp. at 5-7. That attempt fails.[3] First, courts in

---

[2] *See New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 2016 WL 1069675, at *3 (N.D. Tex. Mar. 16, 2016) (finding no jurisdiction over an LLC, noting that the Supreme Court rejected general jurisdiction over Daimler "even though it had 'multiple offices, continuous operations, and billions of dollars' worth of sales'" in the forum, and explaining that "[t]he Supreme Court rejected the notion that a nonresident defendant is subject to general jurisdiction 'in every State in which [the defendant] engages in a substantial, continuous, and systematic course of business.'" (quoting *Daimler*, 571 U.S. at 137-38)).

[3] Indeed, many courts have explicitly rejected this exact argument. *See, e.g.*, *Stubbs v. REV Grp., Inc.*, 2018 WL 6504396, at *2 (N.D. Ala. Dec. 11, 2018); *In re Packaged Seafood Prod. Antitrust*

this circuit regularly apply the strict *Daimler* standard for general jurisdiction to LLCs.[4] Second, VBF (tellingly) does not cite a single case finding general jurisdiction over an LLC under these or similar circumstances. Third, the two cases VBF cites for its argument are inapposite.[5]

      **Specific Jurisdiction**: The Complaint alleges that Canaccord (a Delaware company with "roots" in Canada) was retained to perform investment banking services for "VeroBlue Canada" and that Canaccord somehow injured VBF (a Nevada corporation with its principal place of business in Iowa) by making misrepresentations to unnamed third parties, potential investors, and disinterested directors (whose identity and location is not disclosed) during the course of its work. Br. at 12. VBF does not (and cannot) contest this characterization of the case.[6] In its Opposition, VBF also effectively concedes that the Complaint does not allege Canaccord made misrepresentations (1) through personnel working or located in Texas, (2) to anyone located in Texas (other than alleged co-conspirators), or (3) that caused any harm in Texas. *See* Opp. at 7-

---

*Litig.*, 338 F. Supp. 3d 1118, 1139 n.14 (S.D. Cal. 2018); *Griggs v. Swift Transp. Co.*, 2018 WL 3966304, at *2 & n.26 (D.N.J. Aug. 17, 2018); *Klausmair Constr., LLC v. Gladden Farm, LLC*, 2018 WL 3707380, at *2 & n.1 (E.D. Pa. Aug. 3, 2018); *Blocker v. Black Entm't Television, LLC*, 2018 WL 3797568, at *6 (D. Or. June 26, 2018); *Miller v. Native Link Constr., LLC*, 2017 WL 3536175, at *30 (W.D. Pa. Aug. 17, 2017); *Duncanson v. Wine & Canvas IP Holdings LLC*, 2017 WL 6994541, at *2-3 (S.D. Ind. Apr. 20, 2017).

[4] *See, e.g.*, *Casanola v. Delta Mach. & Ironworks LLC*, 2019 WL 2076190, at *2 & n.27 (E.D. La. May 10, 2019); *Green Ice Tech., LLC v. Ice Cold 2, LLC*, 2018 WL 3656476, at *5-6 (E.D. Tex. Aug. 1, 2018); *New World*, 2016 WL 1069675 at *3.

[5] *Carruth v. Michot*, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) and *King v. Hawgwild Air, LLC*, 2008 WL 2620099 (N.D. Tex. June 27, 2008) never mention a distinction between LLCs and corporations for purposes of determining general personal jurisdiction, never distinguish *Daimler*, and both reject an attempt to use a more expansive approach for general jurisdiction over LLCs. VBF also states that *King* "appl[ies] a different test than the corporate test" announced in *Daimler*. Opp. at 7. To the extent that statement is true, it is not surprising: *King* was decided *before Daimler*.

[6] VBF states only that Canaccord provided services for VBF and describes VBF as "an American company, with a Texas office." Opp. at 7. This statement is missing a key detail: VBF is a Nevada or Iowa company. (SAC ¶ 4.) Contracting with an Iowa or Nevada company obviously does not expose a party to personal jurisdiction in every state in which that company has an office; VBF's suggestion to the contrary is specious.

10. Those concessions should be dispositive of this issue in Canaccord's favor. *See* Br. at 12-14.

VBF principally argues in response that Canaccord's communications with several of its alleged co-conspirators, some of whom were domiciled in Texas, is sufficient to support personal jurisdiction. Opp. at 8-10.[7] VBF is mistaken. In all of the cases cited by VBF, *see* Opp. at 9-10, the communications directed at Texas were sufficient to support personal jurisdiction because "the actual content of communications with [the] forum [gave] rise to intentional tort causes of action." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *FCA Invs. Co. v. Baycorp Holdings, Ltd.*, 48 F. App'x 480 (5th Cir. 2002) (misrepresentations made to plaintiff, a Texas resident, in Texas to induce investment in a company); *Middlebrook v. Anderson*, 2005 WL 350578, at *4 (N.D. Tex. Feb. 11, 2005) (defendant sent emails into Texas that were the subject of the defamation claim that was the basis of the lawsuit).

That is not the case here. Rather, VBF claims that Canaccord's communications directed toward Texas were exclusively to its alleged co-conspirators. *See* Opp. at 8 (identifying only communications between Canaccord and the Founders as the basis for specific jurisdiction). Obviously, VBF does not claim that Canaccord defrauded the Founders—its alleged co-conspirators—through these communications directed at Texas. "These communications to Texas," therefore, "rested on nothing but the 'mere fortuity'" that some of Canaccord's alleged co-conspirators happen to be residents of Texas. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding no specific jurisdiction in Texas where the defendant entered into a contract with a Texas corporation, sent a written agreement and three checks to Texas, and engaged

---

[7] An alleged co-conspirator's domicile is irrelevant to the personal jurisdiction analysis. Br. at 13.

in extensive telephonic and written communication with a Texas resident).[8] Thus, VBF failed to make a prima facie showing of specific jurisdiction over Canaccord. *See* Br. at 12-14.[9]

**Jurisdictional Discovery**: This Court should reject VBF's request for jurisdictional discovery. *See* Opp. at 11. Many of its requests are based on its incorrect, overly-expansive view of general jurisdiction.[10] As to discovery relating to specific jurisdiction, VBF clearly has access to all of the documents relating to its dealings with Canaccord—indeed, it attached 157 pages to its Opposition and 60 exhibits to its Complaint, constituting hundreds of pages of documents, letters, and emails. In addition, as other parties have already pointed out, this case has been pending for over 18 months and thousands of documents have been produced. VBF has also already taken three depositions, including of Clive Ginsburg, a former Canaccord employee that VBF alleges is at the center of this controversy. (*See* SAC ¶¶ 65-88.) Enough is enough.

## II.   VBF's Claims Are Barred By The Engagement Agreement And The Mutual Release.

VBF does not dispute that it was a subsidiary and affiliate of VeroBlue Farms, Inc. covered by the Engagement Letter and Mutual Release. *See* Br. at 16-17; Opp. at 12-17. VBF instead makes the following five arguments for disregarding the clear, unambiguous language of the two

---

[8] *See also Hatzenbuehler v. Essig*, 526 S.W.3d 657, 664 (Tex. App. 2017) ("Evidence that the defendant had Texas communications in planning to commit a tort . . . is in itself insufficient to support specific jurisdiction."); *Evans v. Sweetser*, 110 F.3d 794 (5th Cir. 1997) (letters and phone calls directed at Texas insufficient to support specific jurisdiction).

[9] Exercising personal jurisdiction over Canaccord would also violate due process requirements because the assertion of jurisdiction would offend traditional notions of fair play and substantial justice. *See* Br. at 14 n.8. Among other things, it would place a heavy burden on Canaccord (a Delaware LLC with a principal office in New York) to litigate in Texas, while Texas has little to no interest in serving as a forum for this litigation (for example, VBF is not a Texas company).

[10] Indeed, in support of these requests, VBF continues to cite pre-*Daimler* decisions. *See* Opp. at 11 (citing *Middlebrook v. Anderson*, 2005 WL 350578 (N.D. Tex. Feb. 11, 2005)). Even VBF's request for discovery concerning Canaccord's principal place of business is unnecessary: that information is already disclosed in the documents attached to VBF's Opposition. *See* ECF No. 246-1 at 6-10 (listing Canaccord's address and the location of its COO and President in New York), 83-87 (noting Canaccord's "principal office" is located at the same New York location).

agreements, all of which fail.

*First*, VBF argues that this Court cannot consider the Engagement Agreement or Mutual Release at this stage of the litigation. Opp. at 12-13. VBF is mistaken. The Complaint explicitly describes VBF's engagement of Canaccord in 2015, the services Canaccord provided under the engagement, and the termination of the engagement in early 2016. (*See, e.g.*, SAC ¶¶ 65-72.) The engagement of Canaccord and the services Canaccord provided under that engagement, described in the Complaint as the "Canaccord Project," are the sole basis for all of VBF's claims. (*See, e.g.*, *id.*) In its Opposition, VBF also cites the Engagement Agreement multiple times as a basis for jurisdiction, *see* Opp. at 7-9, attaches documents that explicitly discuss the Engagement Agreement and its terms, *see* Opp. at 8, Exhibits B-3 & B-4, and those same documents constitute settlement negotiations that led to the Mutual Release. The Complaint may not have used the words "Engagement Agreement" and "Mutual Release" (instead, using phrases like "Canaccord Project"), but those documents were certainly incorporated by reference in the Complaint, and the contracts are central to VBF's claims. *See* Br. at 5 n.2; *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 2003 WL 23316646, at *5 (S.D. Tex. Mar. 27, 2003) (Courts may "consider in a Rule 12(b)(6) review not only documents named in Plaintiffs' complaint, but even documents that, if not named, are 'pertinent,' 'central' or 'integral to [Plaintiffs'] claim.'" (collecting cases)). The Court may, therefore, consider the Engagement Agreement and Mutual Release.

*Second*, VBF argues that the Mutual Release does not cover VBF's claims against Canaccord. Opp. at 16-17. Specifically, VBF asserts that "the terms of the Mutual Release were clearly intended to cover only the dispute of whether VBF owed Canaccord any money for its services," which the Mutual Release itself defines as the "Dispute." Opp. at 16. But VBF ignores the clear language of the Mutual Release. The Mutual Release covers claims "based upon, relating

6

to or arising out of the Engagement Agreement, *the Dispute* (including any efforts to resolve the Dispute), the Transaction, the engagement of Canaccord to provide services to [VBF] and its subsidiaries, *and/or* the services that Canaccord provided to [VBF] and its subsidiaries." (*See* Mutual Release at APP0016 (emphasis added).) The clear language of the Mutual Release is, therefore, not limited to claims relating to the "Dispute," as VBF contends; it extends to the entire "Canaccord Project," including the services that Canaccord provided under the Engagement Agreement. Because VBF's claims against Canaccord all arise out of the "Canaccord Project," they must be dismissed under the plain terms of the Mutual Release. *See* Br. at 15-17.[11]

*Third*, VBF suggests for the first time and without any support that the Mutual Release may have been procured through fraud. Opp. at 17.[12] This argument is frivolous. VBF does not (and cannot) claim that it did not know about the Mutual Release before filing its Complaint. *See, e.g.*, Br. at 17 n.12 (explaining that Canaccord affirmatively raised the Mutual Release with VBF in a related proceeding on August 9, 2019). And, yet, the Complaint nowhere alleges that the Mutual Release was obtained by fraud. That omission is particularly striking because VBF challenges the validity of releases entered into with several of the individual defendants, but did not challenge the release of Canaccord. (*See* SAC ¶¶ 309-22, 328-52.) This Court should not countenance such casual, bald accusations of fraud.[13]

---

[11] The cases cited by VBF stand for the proposition that "general words of a release are limited by the recital of a particular claim, where there is nothing on the face of the instrument, other than general words of release, indicating that matters other than those specifically referred to were intended to be discharged." *Green v. Lake Placid 1980 Olympic Games, Inc.*, 147 A.D.2d 860, 862 (3d Dep't 1989). But those cases support Canaccord's position: as explained above, the Mutual Release explicitly lists matters other than the "Dispute" and covers the claims raised by VBF.

[12] VBF does not otherwise challenge the enforceability or authenticity of the Mutual Release.

[13] Notably, VBF attaches to its Opposition letters from VBF's and Canaccord's counsel leading up to the Mutual Release. ECF No. 246-1 at 100-09. Those letters show that both parties were represented by able counsel and that the Mutual Release was the product of a genuine dispute.

*Fourth*, VBF asserts that the Mutual Release terminated the Engagement Agreement. Opp. at 13-14. Canaccord agrees that the Mutual Release is valid and enforceable, was intended to end the parties' relationship and resolve all related controversies, and, therefore, rendered the Engagement Agreement null and void (with the exception of the indemnity and forum selection provisions) going forward. Indeed, finding that the Mutual Release is valid and enforceable decides this case and requires dismissal of Canaccord. *See* Br. at 15-17.[14] Regardless, as explained below, the Engagement Agreement governed the relationship between VBF and Canaccord before the Mutual Release was executed, and Canaccord had the right under the Engagement Agreement's express terms during that time to rely on information provided by VBF.

*Fifth*, VBF argues that the Engagement Agreement's exculpatory clauses do not cover intentional torts. Opp. at 14-15. This argument misses the point. VBF claims that VBF itself provided Canaccord with false and misleading information during the course of the Canaccord Project, which Canaccord then transmitted to certain unnamed parties. *See* Br. at 6. Other than resorting to bare labels and conclusions, VBF never alleges that Canaccord knew this information was false or misleading. *See* Br. at 4-8, 16, 19 & n. 14. VBF is now attempting to blame Canaccord for the dissemination of VBF's own misrepresentations. But the Engagement Agreement's provisions, which are typical for investment banking services, protect Canaccord from that type of claim. Br. at 4-5, 15-17. The Engagement Agreement, therefore, properly exculpates Canaccord from liability in this case. *See* Br. at 15-17.[15]

---

[14] Of course, VBF cannot have it both ways: it cannot argue that the Mutual Release is valid and enforceable, thus negating the Engagement Agreement, and also maintain that the Mutual Release is not enforceable. It is an either/or proposition.

[15] For example, VBF alleges that Mr. Wulf lied to Canaccord about stocking density metrics. (*See, e.g.*, SAC ¶¶ 119, 136.) According to VBF's own allegations, Canaccord had no way of determining that those figures were false or misleading. (*See, e.g.*, SAC ¶ 142 (Mr. Wulf falsified

### III.   The Complaint Fails To State A Claim Upon Which Relief Can Be Granted.

**Conspiracy (Count XX)**: The Opposition fails to address the many flaws with this claim identified in Canaccord's opening brief.[16] *First*, Canaccord explained that VBF failed to allege that anyone relied on Canaccord's alleged misstatements, that Canaccord obtained anything as a result of its supposed misconduct, and how VBF was injured as a proximate result of Canaccord's supposed misconduct. Br. at 22-23. VBF does not meaningfully address these arguments, confirming that it cannot (1) identify a single individual that relied on Canaccord's supposed misrepresentations, (2) identify any investment secured by Canaccord, and (3) explain how Canaccord's alleged misrepresentations resulted in $90 million in damages. Indeed, VBF attaches to its own Opposition a letter from its own counsel, which states that Canaccord raised "$0" for VBF and VBF itself negotiated terms with a lender "without any assistance from Canaccord." ECF No. 246-1 at 108-09. These concessions alone require dismissal of Canaccord from this action.

*Second*, Canaccord carefully parsed through each of the supposed misrepresentations in the Complaint and explained why they each failed to plead fraud with particularity under Rule 9(b). *See* Br. at 21-22, Ex. C. In response, VBF fails to provide *one clear example* for the Court that includes the basic details of a fraud claim: (1) person A, (2) told person B, (3) misrepresentation C, (4) on D date, (5) in E manner, (6) person B relied on that statement by doing

---

or removed density and mortality metrics on fish tanks when people visited VBF's facilities).) Under the terms of the Engagement Agreement, Canaccord reasonably relied on those representations.

[16] VBF begins its response on this issue by attempting to incorporate over 20 pages of arguments from its other briefs in this action. *See* Opp. at 19 (citing ECF No. 217 at 7-21 & ECF No. 18 at 9-16). The Court should disregard those citations. *See Impala African Safaris, LLC v. Dall. Safari Club, Inc.*, 2014 WL 4555659, at *2 (N.D. Tex. Sept. 9, 2014). Indeed, VBF has previously moved to strike other parties' briefs for employing the same tactic. *See* ECF No. 215.

F, and (7) VBF was harmed as a result.[17] VBF includes only the following incomplete responses:

- "The **29 page summary chart,** which cites to at least 65 different SAC paragraphs, actually highlights that VBF has pled sufficient facts to state a claim. One misrepresentation is sufficient to state a claim—and by Canaccord's implicit admission, VBF alleged at least 65." Opp. at 19. VBF is confusing volume with substance. The Summary Chart does not represent an "implicit admission" that VBF sufficiently alleged 65 actionable misstatements; rather, it identifies multiple Rule 9(b) pleading deficiencies with each of the supposed misstatements alleged in the Complaint.

- "[I]tems numbered 3 through 19 in the Canaccord Summary Chart represent numerous examples of when the Founders represented that VBF's FCR was 1:1 and items numbered 11 and 14-17 are examples of Canaccord's involvement in those representations." Opp. at 19. But the Summary Chart shows that these allegations suffer from multiple Rule 9(b) defects, including the following: to whom (outside of the supposed conspiracy) the misstatement was made (Summary Chart items 3-19); who made the misrepresentation to that person (Summary Chart items 3, 5-9, 12, 15, 18-19); when the statement was made to that person (Summary Chart items 3-12, 15, 18, 19); how was the statement made to that person (Summary Chart items 3-12, 15, 19); how did that person rely on the statement (Summary Chart items 3-19); and how was VBF injured as a result (Summary Chart items 3-19).[18] VBF's Opposition does not address any of these problems.

- "Almost every paragraph also cites to an exhibit, including SAC Exhibits 4 and 7-22 . . . ,

---

[17] VBF's strategy is a classic example of impermissible "puzzle pleading." *See In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 857-58 (N.D. Tex. 2005). Instead of clearly laying out the elements of its fraud claim, it cites to large groups of allegations and exhibits and then leaves it to the defendants and the Court to try to piece together which claims are actionable, who they are actionable against, and why. For example, VBF defends its Complaint by arguing that "it is not required that each paragraph of VBF's SAC meet the standards of Rule 9(b) because not each paragraph is a stand-alone representation" and "[c]ollectively, VBF's extensive allegations meet the Rule 9(b) standard." Opp. at 19.

[18] VBF also never defends its reliance on "information and belief" pleading. *See* Br. at 22 n.16.

which are ***documents*** containing the representations. In many instances, those exhibits show who received (or would receive) that information. SAC, Exs. 14, 16, 19, 20, 23." Opp. at 19. But the identified exhibits are communications among the alleged co-conspirators (*see* SAC, Exs. 16-1, 19, 20, 23) or did not include Canaccord (*see* SAC, Exs. 14, 16-2). Further, none of these examples provide all of the required elements of a fraud claim—among other things, they do not show detrimental reliance by a recipient of the alleged misrepresentation or how VBF was injured as a result of that reliance. *See* Br. at 21-22.

- "[T]he Canaccord Summary Chart includes allegations where VBF presented its real Metrics to explain how the Founders and Canaccord's representations were false or where the Founders (and sometimes Canaccord) schemed to misrepresent data, and argues that VBF must meet the 9(b) requirements as to those allegations. Canaccord Summary Chart, No. 3, 20-22, 26, 31, 37, 43, 44, 47, 57. Obviously, VBF has no need to do so." Opp. at 19-20. This is simply a concession that these entries do not allege any actionable misrepresentation or omission.

- "[T]he Canaccord Summary Chart represents that the Founders were the only parties involved in the misrepresentations contained in SAC paragraphs 108, 109, and 119-120 and conveniently omits that those paragraphs reference SAC Exhibits 19, 20 and 23. Canaccord Summary Chart, No. 16, 17, 25-26." Opp. at 20.[19] VBF goes on to argue that certain allegations in the Complaint show that Canaccord was involved in these supposed misrepresentations. Opp. at 20. This limited argument does not save VBF's claims. Even assuming Canaccord was involved in these alleged misrepresentations (it was not), VBF itself explains why they are not actionable: VBF states that, at most, the Complaint suggests that the "the Founders *intended* Canaccord to

---

[19] Contrary to VBF's assertion, the Summary Chart takes into account the exhibits referenced in each of the paragraphs analyzed in the Summary Chart.

disseminate the written representations to *potential* investor pools." Opp. at 20 (emphasis added). This speculative statement and the related allegations are insufficient to meet Rule 9(b): (1) VBF never identifies the *who*, *what*, *when*, *where*, and *how* details of any actual misrepresentation to a potential investor; (2) VBF never claims that any such investor relied on these supposed misrepresentations; and (3) VBF never explains why it should be permitted to recover for a third-party investor that allegedly received misrepresentations. *See* Br. at 21-22 & n.17.[20]

*Third*, VBF fails to show that Canaccord had a "meeting of the minds" with its supposed co-conspirators. *See* Br. at 19-20. Stripped of VBF's unsupported innuendo and naked legal conclusions, the most plausible inference from the allegations in the Complaint is that Canaccord agreed to provide honest investment banking services for VBF and carried out its work in good faith. *See* Br. at 19. In its Opposition, VBF does not dispute that Canaccord did not behave like a member of the claimed conspiracy. For example, VBF concedes that the claimed conspiracy began long *before* the "Canaccord Project" started and continued *after* the "Canaccord Project" ended. Br. at 20; Opp. at 25. Canaccord also repeatedly threatened to sue VBF, which is clearly not the conduct of a conspirator seeking to conceal its wrongdoing. *See* Br. at 20. VBF does not provide any serious explanation for why Mr. Wulf repeatedly lied to Canaccord, often in an attempt to conceal the falsity of information provided to Canaccord by VBF, *see* Br. at 7, 20, instead providing speculative assertions that Canaccord knew Mr. Wulf was lying in one instance, and responding to the rest of Mr. Wulf's lies to Canaccord by suggesting that "there is no honor among thieves." *See* Opp. at 24.[21] This flippant response misses the mark: the lies identified by Canaccord

---

[20] VBF does not mention or defend Summary Chart items 1-2, 23-24, 27-30, 32-36, 38-42, 45-46, 48-56, 58-65, in apparent recognition that those items do not contain any actionable misstatements.
[21] VBF cites one case for this point: an out-of-circuit decision denying a motion to vacate a criminal conviction following a jury trial. *See* Opp. at 24. In that extremely deferential (and entirely

go to the heart of VBF's conspiracy claim because they show that Mr. Wulf was attempting to conceal *from Canaccord* the alleged falsity of the claimed misstatements. *See* Br. at 7, 20. VBF also refuses to provide helpful detail regarding the specific time or place in which the supposed "meeting of the minds" took place, Br. at 18-19, instead relying primarily on citations to several paragraphs from the section of the Complaint entitled "The Founders Misrepresentation of Density," *see* Opp. at 23 (citing SAC ¶¶ 119-121 & Ex. 23). In short, the Complaint must be dismissed because the alleged facts are "equally compatible" with a scenario in which Canaccord, an international investment bank, would not and did not put its reputation and business on the line by agreeing to engage in fraud for a small fish-farming business in Iowa. Br. at 19.

*Fourth*, perhaps realizing that its fraud-related allegations are fatally deficient, VBF claims for the first time that Canaccord also participated in a conspiracy "based on the Founders' breaches of fiduciary duty," relating to their supposed "waste of VBF assets." Opp. at 18. It asserts that this conspiracy does not sound in fraud because it did not involve "fraudulent misrepresentations, nondisclosures and/or concealments made to VBF." Opp. at 18. That is simply not the conspiracy described in the Complaint. (*See* SAC ¶ 359 (defining the "Founders-Canaccord Conspiracy" as an agreement to "secur[e] investments based on *false data and/or misrepresentations* while *concealing* the same from VBF" (emphasis added).) This Court should reject VBF's attempt to improperly amend its Complaint through its Opposition. *See Glass Design, Inc. v. Owens-Brockway Glass Container, Inc.*, 2013 WL 12091106, at *2 (W.D. Tex. Jan. 7, 2013).[22]

_____

different) procedural posture, the court found that one witness's testimony was not "patently incredible" simply because he testified that he occasionally lied to his co-conspirators. *United States v. Gohari*, 227 F. Supp. 3d 313, 316 (S.D.N.Y. 2017). The present case is entirely different: Mr. Wulf's lies to Canaccord fundamentally undermine VBF's theory and VBF puts them forward in its own Complaint as a basis for finding a conspiracy.

[22] *See also Davis v. Davis*, 1998 WL 51366, at *2 n.3 (N.D. Tex. Jan. 21, 1998).

13

Regardless, VBF never explains how Canaccord assisted with these supposed breaches of fiduciary duty. *See supra* at 9-13; Br. at 17-23. Instead, VBF casually cites 33 paragraphs in the Complaint relating to the Founders' alleged waste, *see* Opp. at 18 (citing SAC ¶¶ 25-53, 171-175), none of which mention Canaccord or a Canaccord representative.[23] This claim must be dismissed.

**Aiding and Abetting Conspiracy (Count XXI)**: VBF has effectively abandoned this claim. Under the caption "AIDING AND ABETTING CONSPIRACY – CANACCORD," the Complaint claims that "[a]s a direct and proximate result of Canaccord's aiding and abetting of the Founders' Conspiracy, VBF suffered compensatory damages." (*See* SAC ¶ 368.) VBF now concedes that the Fifth Circuit does "not recognize an aiding and abetting cause of action under Texas law." Opp. at 26. That concession is dispositive and Count XXI should be dismissed.

Confronted with this legal reality, VBF attempts to fashion an entirely new cause of action for the first time in its Opposition. It claims that, although "Count XXI is titled as a claim for 'aiding and abetting conspiracy,'" it is not actually a claim for aiding and abetting conspiracy— indeed, it is not a claim for aiding and abetting at all. Rather, it is a claim for "knowing participation of a breach of fiduciary duty." Opp. at 27. This is another flagrant attempt by VBF to improperly amend its Complaint through its Opposition that should be rejected by this Court.

Regardless, VBF never explains how Canaccord "participated" in the Founders' supposed breach of fiduciary duties. VBF claims that the Founders mismanaged and misused VBF funds, but never links Canaccord to any of that conduct.[24] *See* Opp. at 27-28; *supra* at 12-14. VBF also

---

[23] VBF generally states that Canaccord concealed the Founders' alleged misconduct from VBF. But VBF also asserts that Rule 9(b) does not apply to this claim, in part, because it does not involve "concealments to VBF." Opp. at 18. VBF cannot have it both ways. Regardless, VBF does not identify a single person at VBF that was misled by Canaccord about the Founders' alleged waste.
[24] The only concrete example of waste cited by VBF in its Opposition is the Founders' alleged purchase of "a building and underlying property unnecessary to VBF's business." Opp. at 27-28.

states, without any detail or support, that Canaccord helped "conceal" the Founders' misconduct from VBF, but never identifies a single person at VBF that was misled. Undaunted, VBF falls back to asserting that "[t]o the extent Count XXI is subject to Rule 9(b), it is based on the same conduct adequately set forth related to VBF's claim for Conspiracy (Count XX)." Opp. at 27. That perfunctory statement reinforces that VBF's two claims are redundant and that this new concocted claim fails for the same reasons as VBF's conspiracy claim. *See supra* at 9-14.

## IV. This Court Is An Improper Venue For This Action.

VBF does not dispute that the forum selection clause in the Engagement Agreement is valid and enforceable against VBF and covers the claims raised by VBF against Canaccord in the Complaint. *See* Br. at 24-25; Opp. at 28-29.[25] VBF only argues that this case cannot be dismissed under Federal Rule of Civil Procedure 12(b)(3) based on a forum selection clause. Opp. at 28-29. Canaccord, therefore, respectfully requests that this Court enforce the forum selection clause in the Engagement Agreement by either dismissing this action under the doctrine of *forum non conveniens* or transferring it to the Southern District of New York under 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).[26]

### CONCLUSION

For the foregoing reasons, Canaccord respectfully submits that all claims against it should be dismissed with prejudice.

---

But VBF does not allege that Canaccord was involved in that acquisition, made any misrepresentations related to that acquisition, or even knew about that acquisition.

[25] While VBF claims that the Mutual Release, if valid, "extinguished the forum-selection clause in the Engagement Agreement," Opp. at 29 n.7, it overlooks that the forum selection clause is located in the "indemnity provisions," which survive the Mutual Release. *See* Opp. at 13; (Mutual Release at APP0016).

[26] Parties do not waive *forum non conveniens* and motions under 28 U.S.C. 1404(a) by failing to raise them in an initial responsive pleading. *See Yavuz v. 61 MM, Ltd*., 576 F.3d 1166, 1173 (10th Cir. 2009); *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, 2003 WL 298799, at *5 (N.D. Tex. Feb. 10, 2003).

Dated: January 24, 2020                    Respectfully submitted,

                                           /s/ Anthony S. Fiotto
                                           Anthony S. Fiotto (Admitted Pro Hac Vice)
                                           (MA BBO #558089)
                                           GOODWIN PROCTER LLP
                                           100 Northern Avenue
                                           Boston, MA 02210
                                           Tel.:  (617) 570-1000
                                           Fax:  (617) 523-1231
                                           afiotto@goodwinlaw.com

                                           Eric D. Lawson (Admitted Pro Hac Vice)
                                           (MA BBO #687400)
                                           GOODWIN PROCTER LLP
                                           The New York Times Building
                                           620 Eighth Avenue
                                           New York, NY 10018
                                           Tel.:  (212) 813-8800
                                           Fax:  (212) 355-3333
                                           elawson@goodwinlaw.com

                                           Peter D'Apice
                                           Texas Bar No. 05377783
                                           STUTZMAN, BROMBERG, ESSERMAN &
                                           PLIFKA, P.C.
                                           2323 Bryan Street, Suite 2200
                                           Dallas, Texas 75201
                                           Tel.: (214) 969-4900
                                           Fax: (214) 969-4999
                                           dapice@sbep-law.com

                                           *Counsel for Canaccord Genuity LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2020 a correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

/s/ Anthony S. Fiotto
Anthony S. Fiotto