## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
|     Defendants | § | |


## THIRD-PARTY DEFENDANT NORMAN MCCOWAN'S REPLY IN SUPPORT OF
## RULE 12(B)(6) MOTION TO DISMISS THIRD-PARTY CLAIMS

## <u>TABLE OF CONTENTS</u>

I.     ARGUMENT & AUTHORITIES ........................................................................1

     A.     Third-Party Plaintiffs cannot rely on allegations that have not been
          pleaded. .................................................................................................... 1

          1.     There are no allegations that McCowan was acting in his own self-
               interest. ........................................................................................ 1

          2.     Third-Party Plaintiffs have not pleaded that McCowan actively
               persuaded VBF to breach its Termination Agreements. ............................ 3

          3.     Third-Party Plaintiffs make unreasonable inferences to support
               their claims against McCowan. ................................................................ 5

     B.     Third-Party Plaintiffs fail to state a claim for attorneys' fees. ................................ 6

     C.     There are no covenants not to sue in the Termination Agreements. ....................... 8

     D.     Third-Party Plaintiffs cannot establish an underlying breach of contract to
          support their claims for tortious interference of contract........................................ 9

     E.     VBF had a contractual right to terminate James Rea for Egregious Cause. ......... 10

II.    CONCLUSION.................................................................................................10

## **TABLE OF AUTHORITIES**

### CASES

*Assoc. Gen. Contractors v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)...........................................................................................................6

*Bell Atl. Corp. v. Twombly*.,
   550 U.S. 544 (2007)...........................................................................................................1

*Campbell v. Wells Fargo Bank, N.A.*,
   781 F.2d 440 (5th Cir. 1986) ...........................................................................................6

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
   525 S.W.3d 671 (Tex. 2017).............................................................................................1

*Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*,
   283 F. Supp. 3d 580 (S.D. Tex. 2017) ..............................................................................9

*Del Castillo v. PMI Holdings N. Am. Inc*,
   No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) ..........................................4

*Ganske v. WRS Grp., Inc.*,
   No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App.—Waco April 18, 2007, no pet.) ... 7, 8, 9

*Gipson v. Deutsche Bank Nat. Tr. Co.*,
   No. 3:13-CV-4820-L, 2015 WL 2079514 (N.D. Tex. May 4, 2015) ..........................................3

*Gurganus v. Furniss*,
   No. 3:15-CV-03964-M, 2016 WL 3745684 (N.D. Tex. July 13, 2016)................................5, 6

*Haubold v. Med. Carbon Research Inst., LLC*,
   No. 03-11-00115-CV, 2014 WL 1018008 (Tex. App.—Austin Mar. 14, 2014, no pet.)...........8

*In re Kosmos Energy Ltd. Sec. Litig.*,
   955 F. Supp. 2d 658 (N.D. Tex. 2013) .................................................................................7

*Lawson v. Jason Pharm., Inc.*,
   No. 3:17-CV-2648-L, 2019 WL 2448849 (N.D. Tex. June 12, 2019) ................................6, 10

*Marcus, Stowell & Beye Gov't Sec. Inc. v. Jefferson Inv. Corp.*,
   797 F.2d 227 (5th Cir. 1986) ...............................................................................................7

*Mumfrey v. CVS Pharmacy, Inc.*,
   719 F.3d 392 (5th Cir. 2013) .............................................................................................1, 2

*Nat'l Prop. Holdings, L.P. v. Westergren*,
   453 S.W.3d 419 (Tex. 2015)..............................................................................................8, 9

*Outlaw Lab., LP v. Shenoor Enter., Inc.*,
  371 F. Supp. 3d 355 (N.D. Tex. 2019) ....................................................................... 5

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) .................................................................................... 7

*Roebuck v. Dothan Sec., Inc.*,
  515 Fed. App'x. 275 (5th Cir. 2013) ....................................................................... 1

*United States ex rel. Shupe v. Cisco Sys., Inc.*,
  759 F.3d 379 (5th Cir. 2014) .................................................................................... 3

**STATUTES**

Section 38.001 of the Texas Civil Practice and Remedies Code ..................................... 7

**RULES**

Federal Rule of Civil Procedure 8 ................................................................................. 5

Applying the wrong legal standard,[1] Third-Party Plaintiffs[2] contend that they alleged sufficient facts to state claims for tortious interference, attorneys' fees, and exemplary damages against McCowan. But the Amended Third-Party Complaint ("ATPC") fails to meet the basic requirements of Rule 8. Rather than formally amend their pleading to cure the defects, Third-Party Plaintiffs improperly attempt to amend the ATPC via their Response. Such after-the-fact-allegations, however, are not to be considered in determining the sufficiency of a complaint.[3] Even liberally construed, the conclusory allegations in the ATPC do not contain sufficient factual matter to survive McCowan's 12(b)(6) Motion to Dismiss ("Motion"), which the Court should grant.

## I.   ARGUMENT & AUTHORITIES

**A.   Third-Party Plaintiffs cannot rely on allegations that have not been pleaded.**

1.   There are no allegations that McCowan was acting in his own self-interest.

Under Texas law, a corporate agent like McCowan cannot be liable for tortious interference with the corporation's contracts unless the plaintiff can show that he "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017), *reh'g denied* (Sept. 22, 2017) (citations and internal quotation marks omitted). Furthermore, the Fifth Circuit instructs that "[i]f a corporation does not complain about it's [sic] agents actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) (citations omitted).

---

[1] Third-Party Plaintiffs apply the wrong legal standard to test the sufficiency of their claims.  Third-Party Plaintiffs apply the "no set of facts" standard, see Resp. at 3, from *Conley v. Gibson*, which was retired by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*. 550 U.S. 544, 562-63 (2007).

[2] Defined terms have the same definitions as in McCowan's *Rule 12(b)(6) Motion to Dismiss Third-Party Claims & Brief in Support* [Dkt. No. 229], unless otherwise specified.

[3] *See Roebuck v. Dothan Sec., Inc.*, 515 Fed. App'x. 275, 280 (5th Cir. 2013) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted).

Here, the ATPC fails to sufficiently allege that McCowan was acting in his own self-interest or can otherwise be held liable for tortious interference with VBF's agreements. Third-Party Plaintiffs have not alleged that VBF complained about McCowan's actions. Thus, under the guidance provided by the Fifth Circuit, this means that McCowan "cannot be held to have acted contrary to the corporation's interests." *See id.* Moreover, in their Response, Third-Party Plaintiffs argue that "McCowan also followed the 'Alder Defendants' direction to use their counsel" and followed a VBF director's "direction" to consult with legal counsel regarding VBF's agreements, and that this somehow demonstrates "McCowan was acting in the interest of himself." Resp. at 4. At best, the ATPC alleges that McCowan was "directed" by others to take certain actions, and this alone does not establish the necessary conduct to find that McCowan—especially as an officer of VBF—acted tortiously. Even assuming McCowan followed such directions—which the Court is not required to do as that is not pleaded—the ATPC fails to allege facts that demonstrate how following directions from VBF board members were actions that McCowan carried out in his own self-interest or that the company disagreed with. The Court need only make reasonable inferences in Third-Party Plaintiffs' favor; inferences unsupported by facts cannot defeat a 12(b)(6) motion.

In an effort to support their strained reading of the ATPC, the Response characterizes McCowan's appointment to replace Wulf as CEO as a "reward" for "carrying out [a director's] direction to breach VBF's agreements with the Founders." *Id.* at 4. The ATPC, however, does not allege that McCowan was directed to breach VBF's agreement with the Founders (Third-Party Plaintiffs), much less allege that he was appointed acting CEO as a "reward." At best, the ATPC alleges that McCowan was directed to seek legal advice "as to the legal position of the company with respect to the requirements of severance payments" (ATPC Ex. E), which cannot be reasonably construed as a "direction to McCowan to breach VBF's agreements." In fact, the ATPC

alleges that "VBF"—not McCowan—"began ginning up reasons to avoid paying [Wulf] the amounts due, consistent with [the directors'] communications and directions."  ATPC ¶ 52.

To find, based on the allegations in the ATPC, that McCowan was acting in his own self-interest or can otherwise be held liable for tortious interference with VBF's agreements would be speculative, but Third-Party Plaintiffs' factual allegations must "rise above mere speculation." *See, e.g.*, *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th Cir. 2014) (per curiam) ("The plaintiff's factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation.") (citations omitted); *see also, e.g.*, *Gipson v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL 2079514, at *5 (N.D. Tex. May 4, 2015) ("The alleged facts must 'raise a right to relief above the speculative level.'") (citation omitted).

    2.   <u>Third-Party Plaintiffs have not pleaded that McCowan actively persuaded VBF to breach its Termination Agreements</u>.

While Third-Party Plaintiffs contend that they established that "McCowan actively participated in VBF's breach of founders' contracts," this is not the standard that applies to whether Third-Party Plaintiffs have sufficiently pleaded a claim for tortious interference. Rather, to state a claim for tortious interference with a contract, Third-Party Plaintiffs must allege that McCowan took an active role in *persuading* VBF to breach the Termination Agreements—not simply that he "participated" in VBF's breach.  *See* Mot. at 14 (collecting cases).

Further, Third-Party Plaintiffs again rely on allegations that appear nowhere in the ATPC to argue they have satisfied Rule 12(b)(6)'s pleading requirements. For example, the Response contends that "McCowan consulted with Alder's lawyers," see Resp. at 11—yet this allegation was never pleaded.  Rather, the ATPC alleged that McCowan was merely "directed" "to engage" Alder's lawyers, and it never alleges that he engaged them as directed. Further, mere consultation with Alder's lawyers does not amount to actively *persuading* VBF to breach the Termination

Agreements. Nor does the fact that McCowan—the company's CEO—signed Wulf's separation agreement on behalf of VBF equate to an active role in *persuading* VBF to breach its contracts. Third-Party Plaintiffs cite only to allegations that McCowan performed his regular job duties as the company's CEO as the basis for their tortious interference claim.

Further, Third-Party Plaintiffs' contention that the ATPC alleges McCowan was "involved in VBF's decision to engage a consultant to perform a second investigation of [a director's] behavior" and to "only share the results of that investigation with some of VBF's directors" is similarly false. *Id.* at 11 (citing ATPC ¶ 53). Nowhere is the ATPC (including paragraph 53) does it allege that McCowan was personally "involved" in any decision to investigate such claims or as to whom the report of any such investigation would be sent. Paragraph 53 merely alleges "VBF's Board at the direction of Alder defendants Thelander, Wester, and Ebstein, had engaged an outside firm" and does not attribute the decision of dissemination to anyone, let alone McCowan.

In fact, McCowan's name is only referenced individually in factual allegations ten times in the 28-page ATPC.  *See* ATPC at "Introduction" (identifying McCowan as current CEO of VBF and referring to "assistance of McCowan"); ¶ 7 & n.2 (alleging McCowan is an Iowa resident, serves as CEO of VBF, and agreed to waived service of process), 10 (alleging McCowan is a U.S. citizen of a different state); ¶ 41 (another "directed" McCowan); ¶ 43 (alleging Wulf "met with" McCowan); ¶ 45 (others "directed" McCowan); ¶ 51 (others "specifically approved" McCowan's execution of an agreement); & ¶ 61 ("McCowan…[was] aware of James Rea's Employment Agreement and VBF's obligations hereunder.").  And Third-Party Plaintiffs cannot rely on group pleading to state a claim against McCowan for tortious interference, especially considering that each of the Third-Party Defendants is in a different position relative to VBF (e.g., being an employee versus a director).  *See, e.g.*, *Del Castillo v. PMI Holdings N. Am. Inc,* No. 4:14-CV-

03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) ("[L]umping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2) and 12(b)(6).") (citation omitted).[4]

Finally, Third-Party Plaintiffs do not allege in the ATPC but speculate in their Response that "McCowan must have approved the filing of this lawsuit against Founders in July 2018." Resp. at 11. These speculative arguments are not proper and, regardless, are insufficient to demonstrate that McCowan actively persuaded VBF to breach the Termination Agreements.

3.   Third-Party Plaintiffs make unreasonable inferences to support their claims against McCowan.

Third-Party Plaintiffs improperly attempt to amend the ATPC through their Response by inserting allegations in their Response that appear nowhere in the ATPC.  For example, Founders state in their Response that "McCowan was appointed by Alder representatives to be VBF's CEO immediately prior to Wulf's termination in November 2017," Resp. at 1, yet this factual allegation is contained nowhere in the ATPC. An egregious example of Founders' improper efforts to amend the ATPC via their Response can be found in its statement that "McCowan and other Third-Party Defendants negotiated termination agreements between three of the four Founders and VBF, and then directed VBF to fabricate reasons to avoid its obligations to Founders under such agreements." *Id.* at 2. The ATPC, however, wholly fails to name McCowan as one of the parties who negotiated the Termination Agreement or that he directed VBF to fabricate reasons to avoid its obligations to Founders under such agreements.  *See* ATPC ¶ 19.

---

[4] *See also Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019) ("[T]o give the requisite notice to each Defendant, Plaintiff needs to avoid improper 'group pleading' that does not distinguish the conduct of the individual Defendants."); *Gurganus v. Furniss*, No. 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) (holding plaintiff's "group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8" and "makes it impossible to ascertain which particular Defendants(s) are supposedly responsible for the acts allegedly creating the WARN Act violation") (citations omitted).

Moreover, in support of their argument that they have adequately alleged fraud, malice or gross negligence on McCowan's part and have stated a claim for exemplary damages, Third-Party Plaintiffs rely on allegations not in the ATPC and allegations that do not specifically reference and/or identify McCowan. Resp. at 14-15. For example, Third-Party Plaintiffs argue the ATPC alleges that the "Alder Defendants (which include McCowan) withheld funds from VBF's credit facility," see *id.* (citing ATPC ¶ 35), and "McCowan imposed additional conditions on Hall and T. Rea's severance payments after the fact" and that this shows "vindictiveness," see *id.* (citing ATPC ¶ 41), but neither of these is true. Rather, paragraphs 35 and 41 each reference another director by name as taking action—not McCowan. *Id.* And nowhere in the ATPC does it allege that McCowan followed those directions.

Further, Third-Party Plaintiffs argue the unreasonable inference that paragraph 43's allegations that McCowan attended a meeting demonstrates that he engaged in fraud. *See* Resp. at 10-12 (citing ATPC ¶ 43). The mere presence of a corporate officer at a company meeting does not amount to fraud and alone is wholly insufficient to demonstrate "fraud" to justify an award of exemplary damages. While the Court must indulge all reasonable inferences in favor of the plaintiff, the Court, however, cannot assume that the plaintiff can prove facts it has not alleged. *See, e.g., Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986) ("It is not, however, necessary or proper to assume that the plaintiffs can prove facts that they have not alleged or that the defendants violated the [law] in ways that have not been alleged.") (citing *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

## B.  Third-Party Plaintiffs fail to state a claim for attorneys' fees.

Third-Party Plaintiffs' statements in the ATPC that they are entitled to recover attorneys' fees are legal conclusions that are "not entitled to the assumption of truth." *Lawson v. Jason Pharm., Inc.*, No. 3:17-CV-2648-L, 2019 WL 2448849, at *3 (N.D. Tex. June 12, 2019) (citing

*R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)). Third-Party Plaintiffs argue, without authority, that they can recover attorneys' fees for tortious interference under section 38.001 of the Texas Civil Practice and Remedies Code. Resp. at 14. The Fifth Circuit has rejected this exact argument. *Marcus, Stowell & Beye Gov't Sec. Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 234 (5th Cir. 1986) ("[A]rticle 2226 [predecessor to 38.001] does not authorize recovery of attorneys' fees in tortious interference suits"). Moreover, the ATPC wholly failed to plead the specific statutory ground under Section 38.001 that serves the basis of James Rea's claim for attorneys' fees. And James Rea's belated attempt to identify subsection (8) of section 38.001 as the statutory ground in the Response does not save his claim from dismissal, as a "plaintiff may not amend its complaint in response to a motion to dismiss." *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013). In addition, James Rea's failure to allege prior presentment of a claim as required by Section 38.002 is also fatal to his claim for attorneys' fees. Further, Third-Party Plaintiffs cite no authority or allegations to support that Section 38.001 permits a party to recover attorneys' fees from a nonparty to the contract containing the relevant provision.

Likewise, Hall, T. Rea, and Wulf cannot seek to recover attorneys' fees from **McCowan** personally under the contractual provisions in their respective agreements with **VBF**. Third-Party Plaintiffs cite no authority to support this proposition and certainly allege no facts to state a claim to relief that is plausible on its face. The contractual provisions in Hall, T. Rea, and Wulf's respective termination agreements authorizing recovery of attorneys' fees clearly limit the persons from whom attorneys' fees can be recovered to a "Party" or the "Parties," a definition that does not include McCowan. *See* Ex. B at p. 1 and ¶ 7(i); Ex. C at p. 1 and ¶ 7(i); Ex. D at p. 1 and ¶ 7(i).

Finally, Third-Party Plaintiffs' reliance on *Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App.—Waco April 18, 2007, no pet.) (mem. op.) is misplaced. As

other courts have observed, *Ganske* does not stand for the proposition that attorneys' fees incurred in the same case in which they are sought are recoverable as actual damages. *Haubold v. Med. Carbon Research Inst., LLC*, No. 03-11-00115-CV, 2014 WL 1018008, at *7 (Tex. App.—Austin Mar. 14, 2014, no pet.). "In *Ganske* . . . the court held that the Ganskes could recover *prior* attorney's fees incurred in *prior* litigation defending claims brought by WRS, allegedly in breach of the parties' settlement agreement." *Id.* (citation omitted). In other words, the fees at issue were incurred in an earlier, separate lawsuit, and they were sought in a subsequent lawsuit brought directly against the contracting party in an action for breach of the settlement agreement. *See Ganske*, 2007 WL 1147357 at *1-3. Unlike the plaintiffs in *Ganske*, Third-Party Plaintiffs seek to recover fees incurred in defending VBF's claims in this instant lawsuit from a third-party to the agreement, and they seek to do so in a tortious interference action; thus any claim for attorneys' fees are in the nature of costs, not damages.  Furthermore, the language in the settlement agreement in *Ganske* was more specific than the language in the agreements in this case, as it expressly provided that it was entered into in order to "avoid costly and time costing [sic] litigation," rather than to generally "resolve any claims" the parties "may have against each other." *Ganske*, 2007 WL 1147357 at *3.

## C.     There are no covenants not to sue in the Termination Agreements.

The Texas Supreme Court has made clear that a party who releases a claim and later files suit on that claim does not necessarily breach the agreement containing the release. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428 (Tex. 2015).  Rather, a court must review the "release language to determine whether [the] agreement includes a contractual obligation not to sue." *Id.* Third-Party Plaintiffs incorrectly equate the language releasing and discharging claims with a covenant not to sue. The releases contain no promises not to sue. To the contrary, and like the agreement in *Westergren*, the Termination Agreements contemplate that the parties may bring

suit by including language regarding the recovery of attorneys' fees in any litigation brought to enforce any provision of the agreement. *See, e.g.*, Ex. C at ¶ 7(i); Ex. D at ¶ 7(i). As the Texas Supreme Court noted, such an attorneys' fees provision "indicates that a suit may be brought, even though the agreement is in effect, and in no way suggests that filing a suit concerning the [agreement's] release claims results in a breach." *Westergren*, 453 S.W.3d at 428. Indeed, there are other provisions in the Termination Agreements that unambiguously demonstrate that the parties contemplated future litigation. *See* Mot. at 11 n.5.

Third-Party Plaintiffs, however, ignore the above-referenced authorities from the Texas Supreme Court and point instead to *Ganske* for support—an unpublished case from the Waco Court of Appeals case (with no petition history) that *pre-dates* the *Westergren* opinion. Notably, the *Ganske* court did not undertake an analysis as to whether the agreement at issue included a contractual obligation not to sue, which *Westergren* instructs is the relevant inquiry. And, as Third-Party Plaintiffs concede, "the language in the Ganske release was more specific." *See Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*, 283 F. Supp. 3d 580, 587 (S.D. Tex. 2017) (holding that *Ganske* does not provide a basis to circumvent *Westergren*). Indeed, unlike the releases in this case, the *Ganske* settlement agreement specifically provided that the Ganskes paid a sum to the other contracting party "solely to buy his peace and avoid costly and time costing [sic] litigation." *Ganske*, 2007 WL 1147357 at *3. *Ganske* has little to no precedential value and does not change that the Termination Agreements contain no contractual obligations not to sue.

**D.   Third-Party Plaintiffs cannot establish an underlying breach of contract to support their claims for tortious interference of contract.**

McCowan does not dispute that Third-Party Plaintiffs' tortious interference claims against him were excluded from the release in paragraph 9.15 of VBF's Reorganization Plan. That those claims against McCowan were carved from the release, however, does not save Third-Party

Plaintiffs' claims from dismissal. Third-Party Plaintiffs must still allege sufficient facts to demonstrate a plausible claim to relief for tortious interference, which requires that they demonstrate that VBF breached the Termination Agreements. This they cannot do as their claims against VBF for breach of contract were discharged and released. Stated differently, Third-Party Plaintiffs released the cause of action that they would need to prove in order to prove tortious interference. Furthermore, that paragraph 4 of the modification permits Third-Party Plaintiffs to "plead any and all ***defenses***" in this action does not permit them to plead any and all facts with respect to its affirmative ***claims*** in this case. And contrary to Third-Party Plaintiffs' suggestion, breach of contract is not a defense to the claims asserted by VBF in the live complaint.

**E.**     **VBF had a contractual right to terminate James Rea for Egregious Cause.**

The ATPC itself alleges that James Rea's employment contract permitted termination for Egregious Cause and that VBF terminated Rea pursuant to the Egregious Cause provisions. *See* ATPC ¶¶ 59-60. Even accepting as true the Third-Party Complaint's allegations that the Egregious Cause was fabricated, the ATPC nonetheless fails to allege enough facts that McCowan played a part in the alleged sham investigation that served the basis of the "false claim of Egregious Cause" or otherwise played a role in fabricating a claim of Egregious Cause. *See id.* ¶ 100. Indeed, the ATPC is silent as to what role, if any, McCowan played in this alleged scheme to terminate James Rea. As noted by a sister Court in this district, it is not required "to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *Lawson*, 2019 WL 2448849, at *3.

## II.     <u>CONCLUSION</u>

For the foregoing reasons, Third-Party Defendant Norman McCowan respectfully requests that this Court grant the Motion, deny the relief requested in the Response, and grant such other and further relief to which he may show himself justly entitled.

Dated:  January 29, 2020

*/s/ Nicole Williams*
Nicole Williams
Texas Bar No. 24041784
nicole.williams@tklaw.com
William L. Banowsky
Texas Bar No. 01697125
bill.banowsky@tklaw.com
Jasmine S. Wynton
Texas Bar No. 24090481
jasmine.wynton@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-2102
214-999-9210 (facsimile)

*s/ Robert H. Lang*
Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com
Patrick Morales-Doyle
(appearing *pro hac vice*)
pmoralesdoyle@thompsoncoburn.com
Caroline Pritikin
(appearing *pro hac vice*)
cpritikin@thompsoncoburn.com
Eileen E. Boyle Perich
(appearing *pro hac vice*)
eboyleperich@thompsoncoburn.com
Adam C. Decker
(appearing *pro hac vice*)
adecker@thompsoncoburn.com

**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

**ATTORNEYS FOR THIRD-PARTY DEFENDANT
NORMAN MCCOWAN**

11

## <u>CERTIFICATE OF SERVICE</u>

  The undersigned certifies that on January 29, 2020 this document was filed and served to all counsel of record via the Court's ECF system.


          */s/ Nicole Williams*   
          Nicole Williams

12