UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., <br>    Plaintiff, <br><br> v. <br><br> LESLIE A. WULF, ET AL., <br>    Defendants. | § § § § § § § § § | Civil Action No. 3:19-CV-00764-X |

**THIRD-PARTY DEFENDANT ALDER AQUA, LTD.'S REPLY IN SUPPORT OF
MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT UNDER RULE 12(b)**

Third-Party Defendant Alder Aqua, Ltd. ("Alder Aqua") replies to Defendants/Third-Party Plaintiffs ("Promoters") Response, Dkt. 251 ("Response"), and states:

**I.    Promoters lack standing to assert alter ego contract claims.**

Promoters' Response to the 12(b)(1) standing motion conclusively demonstrates why they lack standing to assert alter ego contract claims against Alder Aqua: they never sought or obtained leave from the VBF Bankruptcy Court or sought to pursue the claim in the bankruptcy proceeding. *See* Dkt. 251 at p. 6. The principal case Promoters cite in support, *Gibraltar Savings v. LDBrinkman Corp.*, does not save them from their lack of standing—it exposes it. In *Gibraltar Savings* the Fifth Circuit distinguished its *In re SI Acquisition, Inc.* holding because Gibraltar (the creditor) had sought and obtained the bankruptcy court's leave to pursue alter ego claims that otherwise belonged to the trustee. 860 F.2d 1275, 1285 (5th Cir. 1988) ("*S.I. Acquisition* would preclude Gibraltar's asserting the 'alter ego' claims, but for key distinguishing factors."). *Gibraltar* makes clear "the veil-piercing sword is available to tort claimants or contract creditors, should they choose to attack **in the bankruptcy proceeding or, with the bankruptcy court's leave, in another forum** [,]" *id.* at 1286 (emphasis added), and Promoters admit they did neither. Dkt. 251 at p. 6. This failure settles the Rule 12(b)(1) issue decidedly against them. "The Fifth

Circuit has made plain that creditors must obtain leave of the bankruptcy court to assert veil-piercing claims that belong to bankruptcy estates." *In re Lanney*, No. 14-11278, 2016 Bankr. LEXIS 3591 at *24 (Bankr.M.D.La. Sept. 29, 2016) (distinguishing *Gibraltar Savings* because plaintiff "did not establish that it had even sought leave to sue from the trustee, much less leave of court").

Without question, the alter ego contract claims (Counts V-IX) belong**ed** to the bankruptcy estate, which is yet another point the Promoters concede, as they must. "An alter ego claim brought against the parent corporation [Alder Aqua] of a bankrupt entity [VBF] belong[s] to the bankruptcy estate and can only be asserted by the trustee." Dkt. 251 at p. 4. Likewise, Promoters acknowledge this rule governs Nevada corporations (VBF's place of incorporation) under *Trs. Of the Constr. Indus. & Laborers Health & Welfare Trust v. Vasquez*, 2:09-cv-02231-LRH-GWF, 2011 U.S. Dist. LEXIS 112041, *7-8 (D. Nev. Sept. 29, 2011), and in Texas under *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) (analyzing claim under Texas law). *Id*.

But Promoters have ignored Fifth Circuit instruction about how they might have gained leave to assert alter ego claims:

> A creditor may be able to seek a judicial declaration that corporate entities constitute the alter egos of the debtor, but only in certain circumstances. The **conditions necessary** for a creditor to pursue an alter ego claim include: (1) the **claim must be colorable**; (2) **the claim must be brought on behalf of the estate**; and (3) **the Trustee must have unjustifiably refused** to pursue the claim. If the creditor shows that these conditions are met, then the bankruptcy court may, in its discretion and after considering the benefit to the estate, grant the creditor leave to purse the claim on behalf of the estate.

*In re Packer*, 816 F.3d 87, 92 (5th Cir. 2016) (emphasis added). And it is not surprising why Promoters eschewed this course. During VBF's bankruptcy case an ad hoc committee sought but was denied standing to assert derivative claims on behalf of VBF against Alder Aqua and others

based on similar factual allegations. Dkt. 221 at App. 0288-0289, 0292.[1] The Bankruptcy Court found the derivative claims were not colorable and denied standing. Dkt. 221 at App. 0328-0329. Promoters dispute their affiliation with that committee (which is doubtful), but in any event, the Court's denial of standing helps to explain why Promoters have not sought leave themselves.[2]

Even if their claim were colorable, Promoters could never satisfy the second and third elements for creditor standing that "the claim must be brought **on behalf of the estate**" and the **Trustee unjustifiably refused** to pursue it. *In re Packer*, 816 F.3d at 92 (emphasis added). There is now no claim to bring "on behalf of the estate" because the Plan expressly and unequivocally released any claim VBF might have had against Alder Aqua, the Plan Sponsor, as part of the Debtor Releases. Dkt. 221 at App. 0103-04 (Section 9.14 of the Plan)[3]. And there has been no allegation that the Trustee unjustifiably refused to pursue the claim.[4]

Promoters' Response to the 12(b)(1) standing motion is plagued by other problems as well. They contend modifications to *release* provisions in the confirmed VBF Reorganization Plan also conferred them *standing*, but that argument wholly misses the mark. Carving out an exception to the release of direct third-party claims against Alder Aqua does not magically imbue

---

[1] *Compare* allegations in Amended Third-Party Complaint ("ATPC"), Dkt. 186 at ¶¶ 14-21, *with* allegations seeking standing in the bankruptcy, Dkt. 221 at App. 0296-97, 0306-08, 0310-18, and 0393.

[2] Despite Promoters' now distancing themselves from the ad hoc committee, the Bankruptcy Court had its doubts, noting Promoters' likely involvement behind the scenes:
> So to who we're representing and why we're representing them leads to further questions that have been identified about who's really driving the Ad Hoc Committee bus. Is it the original founders in support of their equity position or their litigation in Federal Court that's looming in the background? Or is it something else. I guess all that being said, I have enough questions about the participation of the Equity Security Committee as configured now and the position it's taking to, again, weigh in favor of the majority of you.

Dkt. 221 at App. 400.

[3] The Bankruptcy Court decided Plan confirmation with Alder Aqua as Plan Sponsor outweighed allowing non-colorable VBF derivative claims against Alder Aqua. Dkt. 221 at App. 0397-0399.

[4] The Trustee, for good reason, declined to support either the bringing of derivative claims or the appointment of the ad hoc committee as an official committee. Dkt. 221 at App. 0385-0386.

Promoters with *standing* to now assert previously un-asserted claims of the bankruptcy estate. The Plan released Alder Aqua *from the claims of third parties* in section 9.15, and the *agreed* modification only removed Promoters' claims in this lawsuit from that release. Dkt. 221 at App. 0199. But in no sense was *saving* claims tantamount to *granting* standing for claims the Promoters did not and do not own. Importantly, Promoters themselves recognize no alter ego claim was even raised in this lawsuit before the Plan was confirmed.  Dkt. 251 at p. 9. Never was the Bankruptcy Court asked to, nor did it, amend its earlier standing ruling.[5]

Promoters' contention that Alder Aqua should have returned to bankruptcy court to assert a violation of the automatic stay is equally wrong. Dkt. 251 at pp. 4-5. First, it was Promoters' burden to seek and obtain standing from the VBF Bankruptcy Court. *In re Packer*, 816 F.3d at 92. Second, were Promoters correct, then only bankruptcy courts would possess jurisdiction to dismiss debtor derivative claims under Rule 12(b)(1). But non-bankruptcy courts have dismissed similar claims for lack of standing *sua sponte* and even after a jury verdict—all without requiring the additional step of seeking relief for a stay violation.  *See, e.g.*, *Vasquez,* 2011 U.S. Dist. LEXIS 112041 at *7-8 (*sua sponte* dismissed claim "for lack of standing and as barred by the automatic stay"); *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2nd Cir. 1993) (dismissal under party Rule 12(b) motion); *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 610-12 (D. Del. 2018) (dismissed alter ego claim for lack of standing under Rule 12(b)(1)); *Raytheon C. v. Boccard USA Corp.*, 369 S.W.3d 626, 638 (Tex. App.—Houston [1st Dist.] 2012,

---

[5]    The ruling was made April 3, 2019, barring all parties in interest from asserting derivative claims based on those allegations. Dkt. 221 App. 0329. Promoters were parties in interest when the Order was entered. Dkt. 221 at App. 202-204.

Furthermore, Promoters' assertion that Alder Aqua failed to "inform the Court of [the modified plan] provision," Dkt. 251 at p. 8, is simply not true. Alder Aqua even cited the modifications and attached them to its Appendix. Dkt. 220 at pp. 4, 20; Dkt. 221 Exs. 3 and 4. Alder Aqua has no need to run away from these release carve outs, because that is all they are—exceptions to a release, not grants of standing.

pet. denied) (vacating judgment on jury verdict because third-party alter ego claimant lacked standing, depriving court of jurisdiction). Alder Aqua was not required to raise Promoters' lack of standing in the bankruptcy court.

Finally, Promoters citation to *In re Seven Seas Petroleum*, 522 F. 3d 575 (5th Cir. 2008) is of no consequence. That opinion involved *direct claims* by unsecured creditor bondholders against a third-party secured creditor that had promoted the bonds and already settled with the debtor's estate. 522 F. 3d at 581. In allowing the bondholder's claim to proceed, the circuit court determined the bondholders were asserting *their own* claim and not a claim belonging to the debtor's bankruptcy estate. *Id*. at 587. The case did not include a veil-piercing claim for alter ego liability.

For any and all of these reasons, the Court should dismiss Counts V-IX under Rule 12(b)(1), as no alter ego contract claims may be pursued against Alder Aqua as a matter of law.

## II.   The Response is silent about dismissal of breach of contract claims under 12(b)(6).

Alder Aqua's Motion to Dismiss included, *inter alia*, a 12(b)(6) motion to dismiss the breach of contract claims asserted against it. Dkt. 220 at § IV.C, pp. 12-15. Alder Aqua moved on the following grounds:

- Alder Aqua is not a party to any contract with Promoters, an essential element of a breach of contract claim. Dkt. 220 at pp. 12-13.
- Affirmative breach of contract claims against VBF were discharged, and when a claim against the underlying entity is invalid, it is invalid against its alter ego. Dkt. 220 at pp. 13-14.
- Alder Aqua could not breach VBF's contracts because Alder Aqua did not file suit against Promoters, and VBF filing a rescission suit is not a breach of VBF's contract. Dkt. 220 at pp. 14-15.
- Punitive damages are not recoverable for breach of contract. Dkt. 220 at p. 15.

Promoters respond to none of these Rule 12(b)(6) grounds. When an argument in a motion to dismiss is not briefed by a responding party, it is waived and the claim should be

dismissed. *Mayo v. Halliburton Co.*, No. H-10-1951, 2010 U.S. Dist. LEXIS 113816, at *18-19 (S.D. Tex. 2010); *Roberts v. Overby-Seawell Co.*, Civil Action No. 3:15-CV-1217-L, 2018 U.S. Dist. LEXIS 47821, at *43 (N.D. Tex. 2018)). The absence of a response is evident by the Table of Contents in their Response, Dkt. 251 at p. ii, and the lack of any argument addressing the breach of contract 12(b)(6) motion. Promoters furthermore do not counter Alder Aqua's authority that an alter ego remedy cannot lie when a claim against the underlying allegedly subservient entity is invalid. *See Campbell v. Adventist Health System/Sunbelt*, 946 S.W.2d 617, 627 (Tex. App.—Fort Worth 1997, no writ). Thus, the Court should dismiss Counts VI-IX.[6]

### III. Promoters' allegations that Alder Aqua completely controlled VBF negates any tortious interference claim.

The ATPC, taken as true, asserts that: as of July 2017, "Alder own[ed] a **controlling interest (54%) in VBF**" (¶16); "In July 2017, Alder became the **controlling shareholder** of VBF … thereby enabling [Alder directors] to **control decisions** of the board" (¶33); "… representatives of Alder were directly instructing … what funds to furnish VBF," how VBF could spend those funds, and "giv[ing] Alder **complete control over**" VBF's resources (¶41); and Alder was "VBF's **controlling shareholder**." (¶¶ 67, 87, & 99) (All emphasis added). Promoters then asset Alder used its position of control to induce or instruct VBF to breach its contracts with them. (Counts I-IV). Stock ownership of major shareholders like Alder, says the Fifth Circuit, "constitute[s] a superior economic interest which privileged" the actions of those major shareholders to induce the corporation to fire an employee. *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1195 (5th Cir. 1985) (quoting *Davis v. Alwac Int'l*, 369 S.W.2d 797, 801-802 (Tex. Civ. App. 1963, writ ref'd n.r.e.). Thus it is here. As the "controlling

---

[6] Promoters acknowledge that alter ego (Count V) is not a cognizable separate cause of action. Dkt. 251 at p. 10. There is no reason to allow Promoters to replead to omit a non-cognizable claim. It should simply be dismissed.

shareholder" exercising "complete control over" VBF, Alder was privileged as a matter of law to induce VBF into a breach (regardless of the fact such allegation is denied). So like the Deauville plaintiff, VBF "has no claim for tortious interference." *Id*. at 1196 (recognizing "stock ownership generally constitutes a superior financial interest … trigger[ing] privilege."), *see also Gillum v. Rep. Health Corp.*, 778 S.W.2d 558, 565 (Tex. App.—Dallas 1989, no writ) (corporation, as owner of hospital, "clearly had superior financial interest….").

Promoters' control allegations render them unable to allege Alder Aqua is legally capable of interference—that it is a stranger to the contract—which is a required element of their claim. *Community Health Sys. Prof'l Servs. Corp. v. Hansen,* 525 S.W.3d 671, 690 (Tex. 2017). Promoters defend here by challenging that because VBF was not a "wholly owned" Alder Aqua subsidiary, Alder Aqua was a stranger to VBF's contracts. Dkt. 251 at p. 11. Given the breadth of Promoters' control allegations, their counterpoint makes little sense. Regardless, a "wholly owned" connection is not the exclusive relationship for not being deemed a "stranger to a contract" as shown by the Fifth Circuit's approval of *Davis*, a case with three stockholders. After *Deauville*, a Dallas court deciding if two married owners could interfere with the underlying company's contracts found the "wholly owned" difference between that case and *Deauville* is a "distinction [too] … insignificant" because the two owners and their corporation had "a unity of interest" as to be "so closely aligned as to be one entity." *Schoellkopf v. Pledger*, 778 S.W.2d 897, 903 (Tex. Civ. App.—Dallas 1989, writ denied) ("We hold that [Defendants], as a matter of law, cannot have tortiously interfered with the contract…").

Indeed, if Promoters want to get technical about what is a "subsidiary," as they seem inclined, then they should understand "[a] 'subsidiary corporation' is one which is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of the

capital stock." *International Order of the Twelve Knights and Daughters of Tabor v. Fridia*, 91 S.W.2d 404, 405 (Tex. Civ. App.—Waco 1936, no writ).

In short, a subsidiary need not be wholly owned for purposes of "stranger to the contract." What matters to the legal question is whether "a unity of interests" exists, which it must given the level of complete control Alder Aqua allegedly held.

The whole premise of Promoters' claims is that Alder Aqua had control of VBF when VBF terminated Hall and Ted Rea in October 2017 and filed this lawsuit in July 2018. Under Promoters' pled theory of the case, Alder Aqua is not legally capable of interference.[7]

### IV. No underlying breach of a contract capable of interference has been alleged.

Promoters cannot state a claim for tortious interference against Alder Aqua if there is no valid breach of contract against VBF. *Delgado v. Methodist Hosp.,* 936 S.W.2d 479, 485-86 (Tex. App.—Houston [14th Dist.] 1996, no pet.). VBF did not, and could not, breach any Termination Agreements by simply filing suit against Hall and Ted Rea to rescind the agreements because there is no covenant not to sue in the Termination Agreements. *Nat'l Prop. Holdings, L.P. v. Westergren,* 453 S.W.3d 419, 428-29 (Tex. 2015). Promoters are not the first party to attempt navigating around an unfavorable *Westgren* decision by elevating a prior Texas court of appeals decision. *See Cypress Engine Accessories, LLC v. HDMS Ltd. Co.,* 283 F. Supp. 3d 580, 587-88 (S.D. Tex. 2017) (concluding *Ganske*—a prior intermediate appellate court decision—does not "provide a basis to circumvent *Westergren*" as later handed down by the Texas Supreme Court).

---

[7] Sensing their ATPC pleading problems Promoters attempt to switch horses mid-stream, arguing in the Response Alder Aqua's acts "were outside of its position as VBF's shareholder"—whatever that statement might mean. Response at 16. This attempt is futile. *See Roebuck v. Dothan Sec., Inc.*, 515 Fed. App'x. 275, 280 (5th Cir. 2013) (party may not amend via a response).

The Response further argues that an email *from a VBF director* is an actionable "fact" reflecting a "plan" *by Alder Aqua* to fabricate reasons for VBF to breach its contracts, (Resp. pp. 14-15), and hence, supports their cause of action for tortious interference. *See* ATPC, Dkt. 186 at ¶¶ 18-19, 46, 52, 59-61, 68, 70, 78, 80, 89, 100 & Ex. E. These and other conclusory depictions of VBF directors as lock-step Alder Aqua representatives are insufficiently pleaded to ascribe VBF's alleged bad acts to Alder Aqua. "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Assn's*, 987 F.2d 278, 284 (5th Cir. 1993). Not only are the allegations conclusory, Promoters' reading of the email is not "plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (plausibility standard, unlike the "probability requirement" requires more than sheer possibility defendant acted unlawfully). From a VBF director statement about seeking legal advice as to what is "legally permissible," Promoters implore the court to infer tortious conduct *by Alder Aqua* relating to, among other things, VBF's termination of James Rea in January 2018 for egregious cause. Dkt. 186 at ¶¶ 100-101 (egregious cause "fabricated"). The email, however, made reference to the October 27, 2017 Termination Agreements of Hall and Ted Rea, and it is undisputed those severance payments were made on November 15, 2017, nine days *after* the email. Dkt. 186 at ¶¶38-42, Ex. E. Thus there is nothing in the email to reasonably infer an actionable "willful interference" necessary to support a tortious interference claim against Alder Aqua. Promoters fail to state a claim for relief as matter of law.

V.     **Texas law does not allow the recovery of attorneys' fees in tort cases.**

Promoters argue, without authority, that they can recover attorneys' fees for tortious interference under section 38.001 of the Texas Civil Practice and Remedies Code. Dkt. 251 at p. 17. The Fifth Circuit has rejected this exact argument. *Marcus, Stowell & Beye Gov't Sec. Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 234 (5th Cir. 1986). Promoters also claim that they are

entitled to attorneys' fees as damages for their tortious interference claim, again relying on *Ganske*. Dkt. 251 at pp. 15-16. As other courts have observed, *Ganske* does not stand for the proposition that attorneys' fees incurred *in the same case* in which they are sought are recoverable as actual damages. *Haubold v. Med. Carbon Research Inst., LLC*, 03-11-00115-CV, 2014 WL 1018008, at *7 (Tex. App.—Austin Mar. 14, 2014, no pet.). Unlike the plaintiffs in *Ganske*, Promoters seek to recover fees incurred in defending VBF's claims *in the same lawsuit* from a non-party to the agreement.

**VI.   Alder Aqua was not served in strict compliance with the Hague Convention.**

Promoters effectively concede their lack of strict compliance with the directives of the Hague Convention by citing to decisions from courts located seemingly everywhere but the Fifth Circuit in support of their contention that Alder Aqua's actual notice cures such non-compliance. Courts in the Fifth Circuit have dismissed cases lacking strict compliance with the Hague Convention on Rule 12(b)(5) grounds. *See Flores v. Koster*, 3:11-CV-0726, 2013 U.S. Dist. LEXIS 7347, at *6-8 (N.D. Tex., Jan. 14, 2013); *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 537, 1990 U.S. App. LEXIS 123, at *15 (5th Cir. 1990) (concluding defendant's motion "insisting on service of process in accordance with the Hague Convention was well founded in fact and warranted by existing law, and was interposed for a legitimate purpose"). Because service of process on Alder Aqua was insufficient, dismissal is appropriate.

**VII.   Conclusion**

Third-Party Defendant Alder Aqua respectfully requests that the Court grant its Motion to Dismiss Amended Third-Party Complaint Under Rule 12(b), Dkts. 219 and 220; dismiss the claims asserted against Alder Aqua with prejudice; and grant it such other and further relief to which it is entitled.

Dated:  January 29, 2020.

Respectfully submitted,

By: /s/ John P. Kincade
    John P. Kincade, Esq.    SB# 11429600

2728 N. Harwood Street
Suite 500
Dallas, Texas 75201
(214) 745-5400
(214) 745-5390 (Fax)
Email:  jkincade@winstead.com

Elliot Clark
Texas Bar No. 24012428
eclark@winstead.com
**WINSTEAD PC**
401 Congress Avenue, Suite 2100
Austin, Texas 78701-3619
512-370-2800
512-370-2850 (Facsimile)

Kevin T. Keen
Texas Bar No. 24113386
kkeen@winstead.com
**WINSTEAD PC**
24 Waterway Avenue
Suite 500
The Woodlands, Texas 77380
(281) 681-5900
(281) 681-5901 (facsimile)

***ATTORNEYS FOR THIRD-PARTY DEFENDANT, ALDER AQUA, LTD.***

**CERTIFICATE OF SERVICE**

      I certify that on January 29, 2020, this document was filed and served via the Court's ECF system and that a copy was sent via electronic mail to all counsel of record for whom the ECF system did not send an automatic Notice of Electronic Filing.

      /s/ John P. Kincade
      One of Counsel