UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | § | |
|    Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
|    Defendants | § | |

**THIRD-PARTY DEFENDANT BJORN THELANDER'S REPLY IN SUPPORT OF
MOTION TO DISMISS THIRD-PARTY CLAIMS PURSUANT TO
RULES 12(B)(2) & 12(B)(6)**

## TABLE OF CONTENTS

A.   This Court lacks personal jurisdiction over Thelander. ....................................................... 1

   1.   The Third-Party Plaintiffs fail to establish general jurisdiction............................. 1

   2.   The Third-Party Plaintiffs fail to establish specific jurisdiction. ........................... 3

B.   The ATPC fails to allege sufficient facts to state a claim against Thelander. .................... 5

   1.   The ATPC fails to sufficiently allege Thelander was acting in his self-interest. ...................................................................................................................... 5

   2.   The Third-Party Plaintiffs make unreasonable inferences to support their exemplary damages claim. ..................................................................................... 6

   3.   The Third-Party Plaintiffs fail to state a claim for attorneys' fees. ....................... 6

   4.   There are no covenants not to sue in the Termination Agreements. ...................... 8

   5.   The Third-Party Plaintiffs cannot establish an underlying breach of contract to support their claims for tortious interference of contract. ...................... 9

   6.   VBF had a contractual right to terminate James Rea for Egregious Cause. ......... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly.*,
    550 U.S. 544 (2007) ............................................................................................................... 1

*Campbell v. Wells Fargo Bank, N.A.*,
    781 F.2d 440 (5th Cir. 1986) ................................................................................................. 6

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
    525 S.W.3d 671 (Tex. 2017) .................................................................................................. 5

*Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*,
    283 F. Supp. 3d 580 (S.D. Tex. 2017) ................................................................................... 9

*Fairchild v. Barot*,
    946 F. Supp. 2d 573 (N.D. Tex. 2013) .................................................................................. 4

*Freudensprung v. Offshore Tech. Servs, Inc.*,
    379 F.3d 327 (5th Cir. 2004) ............................................................................................. 3, 4

*Ganske v. WRS Grp., Inc.*,
    No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App.—Waco April 18, 2007, no pet.) ... 7, 8, 9

*Gipson v. Deutsche Bank Nat. Tr. Co.*,
    No. 3:13-CV-4820-L, 2015 WL 2079514 (N.D. Tex. May 4, 2015) ...................................... 5

*Haubold v. Med. Carbon Research Inst., LLC*,
    No. 03-11-00115-CV, 2014 WL 1018008 (Tex. App.—Austin Mar. 14, 2014, no pet.) ........... 7

*In re Kosmos Energy Ltd. Sec. Litig.*,
    955 F. Supp. 2d 658 (N.D. Tex. 2013) .................................................................................. 7

*Irvin v. S. Snow Mfg., Inc.*,
    517 Fed. App'x. 229 (5th Cir. 2013) ..................................................................................... 4

*Kaye/Bassman Int'l. Corp. v. Dhanuka*,
    418 S.W.3d 352 (Tex. App.—Dallas 2013, no pet.) .............................................................. 3

*Lawson v. Jason Pharm., Inc.*,
    No. 3:17-CV-2648-L, 2019 WL 2448849 (N.D. Tex. June 12, 2019) ............................. 6, 10

*Marcus, Stowell & Beye Gov't Sec. Inc. v. Jefferson Inv. Corp.*,
    797 F.2d 227 (5th Cir. 1986) ................................................................................................. 7

*Mumfrey v. CVS Pharmacy, Inc.*,
  719 F.3d 392 (5th Cir. 2013) .................................................................................................. 5

*Nat'l Prop. Holdings, L.P. v. Westergren*,
  453 S.W.3d 419 (Tex. 2015) .............................................................................................. 8, 9

*Ragan & Massey, Inc. v. Voluntary Purchasing Groups, Inc.*,
  No. 4:09-CV-00039, 2009 WL 3157468 (E.D. Tex. Sept. 28, 2009) .................................... 2, 3

*Sealed Appellant 1 v. Sealed Appellee 1*,
  625 Fed. App'x 628 (5th Cir. 2015) ........................................................................................ 4

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) ................................................................................................................ 3

*United States ex rel. Shupe v. Cisco Sys., Inc.*,
  759 F.3d 379 (5th Cir. 2014) .................................................................................................. 5

*Yasinosky v. River Oaks Farms Inc.*,
  No. 4:17-CV-214-A, 2017 WL 2709736 (N.D. Tex. June 22, 2017) ...................................... 1

**Statutes**

Section 38.001 of the Texas Civil Practice and Remedies Code .................................................... 7

Applying the wrong legal standard,[1] the Third-Party Plaintiffs contend they have (i) established general and specific jurisdiction over Thelander; and (ii) stated claims for tortious interference, attorneys' fees, and exemplary damages. But the Third-Party Plaintiffs fail to identify any minimum contacts in Texas made by Thelander in his individual capacity that are directly related to their claims or otherwise provide a basis to confer specific jurisdiction over Thelander. Moreover, the Amended Third-Party Complaint ("ATPC") fails to allege sufficient facts to state a claim against Thelander. Thelander's Motion to Dismiss (the "Motion") should be granted.

A.     **This Court lacks personal jurisdiction over Thelander.**

   1.     **The Third-Party Plaintiffs fail to establish general jurisdiction.**

Unlike specific jurisdiction, "[w]hen general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities within the forum state." *Yasinosky v. River Oaks Farms Inc.*, No. 4:17-CV-214-A, 2017 WL 2709736, at *2 (N.D. Tex. June 22, 2017). General jurisdiction exists if a "defendant's affiliations with the state are so continuous and systematic so as to render [him] 'essentially at home' in the forum state." *Id.* (citation omitted).[2] Thelander undisputedly is a Swiss national and is not domiciled in Texas. Nonetheless, the Third-Party Plaintiffs argue general jurisdiction exists based on three 2016 corporate filings submitted not by VBF, but by the Third-Party Plaintiffs on behalf of VBF

---

[1] The Founders apply the wrong legal standard to test the sufficiency of their claims—the "no set of facts" standard, see Resp. at 4, from *Conley v. Gibson*, which was retired by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*. 550 U.S. 544, 562-63 (2007).

[2] The Founders, in describing the test, inappropriately cite to language in *Daimler* regarding a corporation's—not an individual—"continuous corporate operations" that relate to general jurisdiction applicable to a "foreign corporation" rather than an individual. *See* Resp. at 5.

1

affiliates, wherein those entities listed a Texas address for Thelander, but these do not provide a sufficient basis for general jurisdiction. *See* Resp. at 7, 8-9.[3]

First, the filings were submitted by wholly-owned subsidiaries of VBF (when the Third-Party Plaintiffs controlled VBF)—not Thelander personally (and Thelander did not sign them). *See* Resp. Exs. A-8, A-9, A-11. Second, the Texas address listed on each of the filings is the address for VBF's Plano office[4] and is provided as an address for ***all*** directors, not just Thelander. Third, none of the filings suggest that the Texas address noted for Thelander is his personal address; indeed, it is clear that the Texas address is a business address ascribed by the Third-Party Plaintiffs to Thelander in his capacity as a director of the corporation, not individually. The mere listing of a Texas address for Thelander in his corporate capacity on three corporate filings, made during the Third-Party Plaintiffs' tenure, fails to demonstrate his contacts with Texas are so continuous and substantial that he is "essentially at home" in Texas.

Moreover, general jurisdiction based on these three isolated contacts alone is barred by the fiduciary shield doctrine, which generally prohibits a court from exercising personal jurisdiction over an individual for actions taken in a corporate capacity. *See, e.g., Ragan & Massey, Inc. v. Voluntary Purchasing Groups, Inc.*, No. 4:09-CV-00039, 2009 WL 3157468, at *5 (E.D. Tex. Sept. 28, 2009) (citation omitted). There are no allegations that the identification of a VBF corporate office as Thelander's address on corporate filings was effectuated outside of his capacity as a director of those entities or constituted tortious conduct that would support jurisdiction over

---

[3] The three corporate filings at issue are VBF IP, Inc.'s Amended and Restated Certificate of Formation and Iowa's First, Inc.'s Restated Articles of Incorporation and Application for Authority to Transact Business in Illinois.

[4] VBF's Plano office was originally located at 1507 Capital Avenue, Suite 101, Plano Texas 75074, until sometime in 2016, when it relocated its Plano office to 3369 Premier Drive, Suite 300, Plano, Texas 75023.

him in his individual capacity. *See id.*; *Kaye/Bassman Int'l. Corp. v. Dhanuka*, 418 S.W.3d 352, 359 (Tex. App.—Dallas 2013, no pet.) ("Absent pleading and proof that an officer's conduct was solely for the officer's benefit and contrary to the interest of the business entity, an officer's 'acts on the corporation's behalf are deemed corporate acts.'"). These three contacts alone cannot be used to establish general jurisdiction over Thelander individually.

### 2. The Third-Party Plaintiffs fail to establish specific jurisdiction.

For specific jurisdiction to exist, a defendant's contacts with the forum state must arise from or relate directly to the asserted cause of action. *Freudensprung v. Offshore Tech. Servs, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citations omitted).  Because the Third-Party Plaintiffs have no evidence of conduct by Thelander that was purposefully directed towards Texas, they rely instead on actions taken solely in his corporate capacity that neither arise from nor relate directly to their tortious interference claim against him. For instance, the Third-Party Plaintiffs point to Thelander's acceptance of a board position of a corporation with a principal office in Plano, and that as a board member, he attended "at least one Board meeting and participated in numerous other telephonically with the officers there."  Resp. at 8, 9, 12. However, mere acceptance of a board position of a company with a presence in Texas and participation in board meetings (most of which were attended telephonically) is wholly insufficient to establish purposeful availment. *See, e.g., Ragan,* 2009 WL 3157468, at *6 (citing *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977) (accepting position as officer or director does not demonstrate personal availment)).

Furthermore, the Third-Party Plaintiffs argue that specific jurisdiction exists because Thelander was "actively involved" in the negotiation of the underlying contracts.  Resp. at 9, 10-13. The Third-Party Plaintiffs do not assert a breach of contract claim against Thelander, and he is not a party, signatory, or third-party beneficiary under the alleged contracts.  The mere act of engaging in communications related to the execution and performance of a contract is insufficient

3

to establish the minimum contacts necessary to support specific jurisdiction over the nonresident defendant. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (citations omitted).

The Third-Party Plaintiffs also point to a November 6, 2017 email sent by another nonresident board member with Thelander as one of its recipients. Thelander did not author this e-mail, and there is no allegation that this email was sent, received, or forwarded to someone in Texas. Mere receipt of an e-mail, let alone one that was transmitted from one foreign defendant to another foreign defendant, likely outside the forum state, does not amount to purposeful direction of one's activities towards Texas. *See Fairchild v. Barot*, 946 F. Supp. 2d 573, 580 (N.D. Tex. 2013) ("[A] court does not have specific personal jurisdiction over a defendant alleged to have tortiously interfered with a contract, where that interference happened outside of the forum state.") (citations omitted). The Third-Party Plaintiffs also allege, without support, that Thelander allegedly agreed to participate in and carry out a scheme to "reach into the Northern District of Texas and breach legally binding contracts with the Third-Party Plaintiffs." Resp. at 11. The Court, however, need not credit the Third-Party Plaintiffs' conclusory allegations in determining whether they have presented a prima facie case. *See, e.g., Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. App'x 628, 631 (5th Cir. 2015) (footnote omitted).

To attribute to Thelander, a Swiss national, actions taken by the corporation and its representatives that have nothing to do with the Third-Party Plaintiffs' tortious interference claims would not comport with fair play and substantial justice. Such contacts are far too attenuated for him to reasonably anticipate being hauled into court in Texas. *See Irvin v. S. Snow Mfg., Inc.*, 517 Fed. App'x. 229, 231 (5th Cir. 2013) ("This purposeful availment requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or

attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.") (internal quotation marks and citation omitted).

**B.      The ATPC fails to allege sufficient facts to state a claim against Thelander.**

        **1.      The ATPC fails to sufficiently allege Thelander was acting in his self-interest.**

Under Texas law, an alleged corporate agent like Thelander cannot be liable for tortious interference with the corporation's contracts unless the plaintiff can show that he "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017), *reh'g denied* (Sept. 22, 2017) (citations and internal quotation marks omitted). Furthermore, the Fifth Circuit instructs that "[i]f a corporation does not complain about it's [sic] agents actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013) (citations omitted).

Here, the ATPC fails to sufficiently allege that Thelander was acting in his own self-interest or can otherwise be held liable for tortious interference with VBF's agreements. The Third-Party Plaintiffs have not alleged that VBF complained about Thelander's actions, and under the guidance provided by the Fifth Circuit, this means that Thelander "cannot be held to have acted contrary to the corporation's interests." *See id.* To find, based on the allegations in the ATPC, that Thelander was acting in his own self-interest at VBF's expense or can otherwise be held liable for tortious interference with VBF's agreements would be speculative, and the Third-Party Plaintiffs' factual allegations must "rise above mere speculation." *See, e.g.*, *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th Cir. 2014) (per curiam); *Gipson v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL 2079514, at *5 (N.D. Tex. May 4, 2015). The Court need only

5

make reasonable inferences in the Third-Party Plaintiffs' favor; inferences unsupported by facts cannot defeat a 12(b)(6) motion.

### 2. The Third-Party Plaintiffs make unreasonable inferences to support their exemplary damages claim.

The Third-Party Plaintiffs rely on allegations not in the ATPC or that do not specifically reference and/or identify Thelander in support of exemplary damages. Resp. at 25. For example, the Third-Party Plaintiffs argue the ATPC alleges that the "Alder Defendants (including Thelander) withheld funds from VBF's credit facility until the Third-Party Plaintiffs were terminated" and that "Thelander planned to create ways to avoid payments due to the Third-Party Plaintiffs under their agreements," *see id.* at 24 (citing ATPC ¶¶ 35, 46), but neither of these is true. Rather, paragraph 35 references another director by name—not Thelander—as representing to the other directors that an alleged VBF lender (Amstar) would no longer fund draws on VBF's credit facility. Absent from this paragraph is any allegation as to the party that was responsible for such withholding of funds. *Id.* Moreover, paragraph 46 merely alleges that "Ebstein, Wester, and Thelander" discussed ways to avoid payments under the Employment Agreements, it does not state that Thelander "planned to create ways to avoid" such payments. While the Court must indulge all reasonable inferences in favor of the plaintiff, the Court cannot assume that the plaintiff can prove facts it has not alleged. *See, e.g., Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986) ("It is not, however, necessary or proper to assume that the plaintiffs can prove facts that they have not alleged or that the defendants violated the [law] in ways that have not been alleged.") (citation omitted).

### 3. The Third-Party Plaintiffs fail to state a claim for attorneys' fees.

Statements in the ATPC regarding entitlement to attorneys' fees are legal conclusions that are "not entitled to the assumption of truth." *Lawson v. Jason Pharm., Inc.*, No. 3:17-CV-2648-

L, 2019 WL 2448849, at *3 (N.D. Tex. June 12, 2019) (citation omitted). Third-Party Plaintiffs argue, without authority, that they can recover attorneys' fees for tortious interference under section 38.001 of the Texas Civil Practice and Remedies Code. Resp. at 14. The Fifth Circuit has rejected this exact argument. *Marcus, Stowell & Beye Gov't Sec. Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 234 (5th Cir. 1986) ("[A]rticle 2226 [predecessor to 38.001] does not authorize recovery of attorneys' fees in tortious interference suits"). Moreover, the ATPC wholly failed to plead the specific statutory ground under Section 38.001 that serves the basis of James Rea's claim for attorneys' fees. James Rea's belated attempt to identify subsection (8) of section 38.001 as the statutory ground in the Response does not save his claim from dismissal, as a "plaintiff may not amend its complaint in response to a motion to dismiss." *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013). Further, James Rea's failure to allege prior presentment of a claim as required by Section 38.002 is also fatal to his claim for attorneys' fees.

The Third-Party Plaintiffs also cannot seek to recover attorneys' fees from ***Thelander*** personally under the contractual provisions in their respective agreements with ***VBF***, under Section 38.001 or otherwise. The Third-Party Plaintiffs cite no authority and allege no facts to support this proposition. The contractual provisions in Hall, T. Rea, and Wulf's respective termination agreements authorizing recovery of attorneys' fees clearly limit the persons from whom attorneys' fees can be recovered to a "Party" or the "Parties," a definition that does not include Thelander. *See* Ex. B at p. 1 and ¶ 7(i); Ex. C at p. 1 and ¶ 7(i); Ex. D at p. 1 and ¶ 7(i).

Finally, Third-Party Plaintiffs' reliance on *Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App.—Waco April 18, 2007, no pet.) (mem. op.) is misplaced. As other courts have observed, *Ganske* does not stand for the proposition that attorneys' fees incurred in the same case in which they are sought are recoverable as actual damages. *Haubold v. Med.*

7

*Carbon Research Inst., LLC*, No. 03-11-00115-CV, 2014 WL 1018008, at *7 (Tex. App.—Austin Mar. 14, 2014, no pet.). "In *Ganske* . . . the court held that the Ganskes could recover *prior* attorney's fees incurred in *prior* litigation defending claims brought by WRS, allegedly in breach of the parties' settlement agreement." *Id.* (citation omitted). In other words, the fees at issue were incurred in an earlier, separate lawsuit, and they were sought in a subsequent lawsuit brought directly against the contracting party in an action for breach of the settlement agreement. *See Ganske*, 2007 WL 1147357 at *1-3. Unlike the plaintiffs in *Ganske*, Third-Party Plaintiffs seek to recover fees incurred in defending VBF's claims in this instant lawsuit from a third party to the agreement, and they seek to do so in a tortious interference action; thus any claim for attorneys' fees are in the nature of costs, not damages. Furthermore, the language in the settlement agreement in *Ganske* was more specific than the language in the agreements in this case, as it expressly provided that it was entered into in order to "avoid costly and time costing [sic] litigation," rather than to generally "resolve any claims" the parties "may have against each other." *Ganske*, 2007 WL 1147357 at *3.

    **4.    <u>There are no covenants not to sue in the Termination Agreements.</u>**

The Texas Supreme Court has made clear that a party who releases a claim and later files suit on that claim does not necessarily breach the agreement containing the release. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428 (Tex. 2015). Rather, a court must review the "release language to determine whether [the] agreement includes a contractual obligation not to sue." *Id.* The Third-Party Plaintiffs incorrectly equate the language releasing and discharging claims with a covenant not to sue. The releases contain no promises not to sue. To the contrary, and like the agreement in *Westergren*, the Termination Agreements contemplate that the parties may bring suit by including language regarding the recovery of attorneys' fees in any litigation brought to enforce any provision of the agreement. *See, e.g.*, Ex. C at ¶ 7(i); Ex. D at ¶ 7(i). As the

8

Texas Supreme Court noted, such an attorneys' fees provision "indicates that a suit may be brought, even though the agreement is in effect, and in no way suggests that filing a suit concerning the [agreement's] release claims results in a breach." *Westergren*, 453 S.W.3d at 428. Indeed, there are other provisions in the Termination Agreements that unambiguously demonstrate that the parties contemplated future litigation. *See* Mot. at 15 n.4.

The Third-Party Plaintiffs ignore the above-referenced authorities from the Texas Supreme Court and point instead to *Ganske* for support—an unpublished case from the Waco Court of Appeals case (with no petition history) that *pre-dates* the *Westergren* opinion. Notably, the *Ganske* court did not undertake an analysis as to whether the agreement at issue included a contractual obligation not to sue, which *Westergren* instructs is the relevant inquiry. Furthermore, the *Ganske* case is factually distinguishable. And, as the Third-Party Plaintiffs concede "the language in the Ganske release was more specific." Resp. at 17; *see also Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*, 283 F. Supp. 3d 580, 587 (S.D. Tex. 2017) (holding that *Ganske* does not provide a basis to circumvent *Westergren*). Indeed, unlike the releases in this case, the settlement agreement in *Ganske* specifically provided that the Ganskes paid a sum to the other contracting party "solely to buy his peace and avoid costly and time costing [sic] litigation." *Ganske*, 2007 WL 1147357 at *3. *Ganske* has no precedential value and does not change that the Termination Agreements contain no contractual obligations not to sue.

### 5. The Third-Party Plaintiffs cannot establish an underlying breach of contract to support their claims for tortious interference of contract.

Thelander does not dispute that the Third-Party Plaintiffs' tortious interference claims against him were excluded from the release in paragraph 9.15 of VBF's Reorganization Plan. That those claims against Thelander were carved from the release, however, does not save the Third-Party Plaintiffs' claims from dismissal. The Third-Party Plaintiffs must still allege sufficient facts

to demonstrate a plausible claim to relief for tortious interference, which requires that they demonstrate that VBF breached the Termination Agreements. This they cannot do as their claims against VBF for breach of contract were discharged and released. Stated differently, the Third-Party Plaintiffs released the cause of action that they would need to prove in order to prove tortious interference. Furthermore, that paragraph 4 of the modification permits the Third-Party Plaintiffs to "plead any and all *defenses*" in this action does not permit them to plead any and all facts with respect to its affirmative *claims* in this case. Contrary to the Third-Party Plaintiffs' suggestion, breach of contract is not a defense to the claims asserted by VBF in the live complaint.

### 6. VBF had a contractual right to terminate James Rea for Egregious Cause.

The ATPC itself alleges that James Rea's employment contract permitted termination for Egregious Cause and that VBF terminated Rea pursuant to the Egregious Cause provisions. *See* ATPC ¶¶ 59-60. Even accepting as true the Amended Third-Party Complaint's allegations that the Egregious Cause was fabricated, the ATPC nonetheless fails to allege enough facts that Thelander played a part in the alleged sham investigation that served the basis of the "false claim of Egregious Cause" or otherwise played a role in fabricating a claim of Egregious Cause. *See id.* ¶ 100. Indeed, the ATPC describes the roles two other directors allegedly played in the alleged sham investigation, but is silent as to what role, if any, Thelander played in the alleged sham investigation. As noted by this Court, it is not required "to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *Lawson*, 2019 WL 2448849, at *3.

## CONCLUSION

Third-Party Defendant Bjorn Thelander respectfully requests that this Court grant the Motion and grant such other and further relief to which he may show himself justly entitled.

| | |
|---|---|
| Dated:  January 29, 2020 | */s/ Nicole Williams*<br>Nicole Williams<br>Texas Bar No. 24041784<br>nicole.williams@tklaw.com<br>William L. Banowsky<br>Texas Bar No. 01697125<br>bill.banowsky@tklaw.com<br>Jasmine S. Wynton<br>Texas Bar No. 24090481<br>jasmine.wynton@tklaw.com |

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-2102
214-999-9210 (facsimile)

*s/ Robert H. Lang*
Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com
Patrick Morales-Doyle
(appearing *pro hac vice*)
pmoralesdoyle@thompsoncoburn.com
Caroline Pritikin
(appearing *pro hac vice*)
cpritikin@thompsoncoburn.com
Eileen E. Boyle Perich
(appearing *pro hac vice*)
eboyleperich@thompsoncoburn.com
Adam C. Decker
(appearing *pro hac vice*)
adecker@thompsoncoburn.com

**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

**ATTORNEYS FOR THIRD-PARTY DEFENDANT BJORN THELANDER**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 29, 2020 this document was filed and served to all counsel of record via the Court's ECF system.

>                                  */s/ Nicole Williams*
>                                  Nicole Williams