UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN E. REA, AND KEITH DRIVER, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF VEROBLUE FARMS USA, INC.'S
MOTION TO COMPEL DISCOVERY FROM FOUNDER DEFENDANTS
AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND .................................................................................................... 1

III.    ARGUMENT & AUTHORITIES ........................................................................... 4

        A.      Requests for Production ............................................................................... 4

                1.      The Founder Defendants' belated and selective productions suggest
                        that they have not produced all communications with relevant third
                        parties. ................................................................................................... 5

                        a.      Cassels Brock and Sean Maniaci. .................................................. 5

                        b.      Communications with Certain VBF Board Members.................... 7

                2.      The Founder Defendants have not produced all responsive
                        documents regarding their financial information. ....................................... 8

                        a.      Bank Account Statements ............................................................. 8

                        b.      Tax Returns ................................................................................. 12

                        c.      Information Regarding Real Estate Properties and Income.......... 14

                        d.      Loan Applications ....................................................................... 14

                        e.      Information Regarding Conversion or Transfer of Assets........... 15

                3.      Other documents withheld based on improper objections. ...................... 16

                4.      The Founder Defendants should produce a chain of custody for
                        missing hard drives. ............................................................................... 17

        B.      Interrogatories ........................................................................................... 17

                1.      The Founder Defendants must specify, with sufficient detail,
                        documents referenced in their interrogatory responses. .......................... 18

                2.      Wulf has failed to adequately answer Interrogatory No. 2. ..................... 19

        C.      Wulf and Ted Rea should be ordered to reappear for depositions....................... 20

        D.      Miscellaneous Relief.................................................................................. 22

                1.      The Founder Defendants should produce their litigation holds
                        because of the lack of evidence they have produced. .............................. 22

                2.      The Founder Defendants must disclose all email addresses used
                        during the relevant time and produce responsive documents from
                        those accounts. ....................................................................................... 23

IV.     VBF IS ENTITLED TO FEES AND COSTS ....................................................... 25

V.      CONCLUSION..................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 WL 4262036
(N.D. Tex. Aug. 29, 2014) ........................................................................................15

*Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortg. Sec. Inc. v. Pink*, No.
7:18-CV-00020-O-BP, 2019 WL 399533 (N.D. Tex. Jan. 31, 2019) .......................5

*Folkenflik v. Chapwood Capital Inv. Mgmt, LLC*, No. 4:20-mc-00036, 2020 WL
9936142 (E.D. Tex. June 5, 2020) ...........................................................................24

*Hanan v. Crete Carrier Corp.*, 3:19-CV-149-B, 2019 WL 5837950 (N.D. Tex.
Nov. 6, 2019) (Horan, J.) .........................................................................................15

*Harris v. J.B. Hunt Transport, Inc.*, No. A-06-CA-097-LY, 2007 WL 9700745
(W.D. Tex. Sept. 18, 2007) ...................................................................................7, 15

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) ...........................................16

*In re Davis*, No. 07-33986-H3-7, 2008 WL 220121 (Bankr. S.D. Tex. Jan. 24,
2008) .........................................................................................................................24

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318
(GBD) (BCM), 2018 WL 4760345 (S.D.N.Y. Sept. 28, 2018) .........................12, 24

*Lopez v. Don Herring Ltd.*, 327 F.R.D. 567 (N.D. Tex. 2018) ......................................16

*McKinney/Pearl Rest. Partners, L.P. v. Metropolitan Life Ins. Co.*, No. 3:14-cv-
2498-B, 2016 WL 2997744 (N.D. Tex. May 25, 2016) ............................................4

*Meltzer/Austin Rest. Corp. v. Benihana Nat. Corp.*, No. A-11-CV-542-LY, 2013
WL 2607589 (W.D. Tex. June 10, 2013) .................................................................18

*Mir v. L-3 Communications Integrated Sys., L.P.*, 319 F.R.D. 220 (N.D. Tex.
2016) (Horan, J.) ........................................................................................................9

*Murillo Modular Group, Ltd. v. Sullivan*, 3:13-CV-3020-M, 2016 WL 6139096
(N.D. Tex. Oct. 20, 2016) ...................................................................................20, 21

*Parker v. Bill Melton Trucking, Inc.*, No. 3:15-cv-2528-G-BK, 2017 WL 6540908
(N.D. Tex. Feb. 3, 2017) .......................................................................................7, 15

*Tsanacas v. Amazon.com, Inc.*, No. 4:17-cv-00306, 2018 WL 324447 (E.D. Tex.
Jan. 8, 2018) ...............................................................................................................5

*VeroBlue Farms USA, Inc. v. Cassels Brock & Blackwell LLP*, No. 19-09015,
   Dkt. 44 (Bankr. N.D. Iowa Oct. 31, 2019)....................................................................6

**Rules**

Federal Rule of Civil Procedure 26 ........................................................................4, 7

Federal Rule of Civil Procedure 30 ...........................................................................20

Federal Rule of Civil Procedure 33 .....................................................................18, 19

Federal Rule of Civil Procedure 34 .......................................................................9, 16

Federal Rule of Civil Procedure 37 ...............................................................4, 20, 25

Plaintiff VeroBlue Farms USA, Inc. ("VBF") files this Motion to Compel Discovery ("Motion") from Defendants Leslie A. Wulf, Bruce A. Hall, James Rea, and John E. ("Ted") Rea (collectively, the "Founder Defendants," and with Defendant Keith Driver, the "Founders"). In support, VBF states as follows:

## I.   INTRODUCTION

Discovery has been ongoing for nearly three years. Through both written discovery and deposition testimony, VBF has requested that the Founders provide certain information directly related to VBF's allegations and claims of fraud, mismanagement, and corporate waste. In response to VBF's efforts to seek the discovery to which it is entitled, the Founder Defendants have (i) failed to produce certain responsive documents in their possession, custody, or control; (ii) failed to adequately answer or supplement interrogatory responses; (iii) refused to answer certain deposition questions; and (iv) failed to disclose relevant information related to litigation holds issued by their counsel. Therefore, VBF respectfully requests that this Court overrule the Founder Defendants' improper objections and compel the Founder Defendants to fully answer the interrogatories propounded by VBF and produce the specific categories of documents detailed below. VBF further requests that this Court order Ted Rea and Wulf to reappear for their depositions to answer questions they were improperly instructed not to answer.

## II.   BACKGROUND

VBF has issued a number of pointed requests for production ("RFPs"), requests for admission ("RFAs"), and interrogatories to the Founders, as well as various subpoenas to third-party entities involved in or with knowledge of the Founders' schemes. Among other discovery, VBF has sought: (i) documents relating to the Founders' communications with a number of individuals and entities the Founders used to help accomplish and conceal their fraudulent actions;

1

(ii) bank statements and tax returns from the Founders, their families, and any of their affiliated entities ("Affiliated Entities"); (iii) documents relating to the Founders' real estate and vehicles; and (iv) documents relating to the Founders' communications with a number of individuals and entities the Founders used to help accomplish and conceal their fraudulent actions. The Founder Defendants have not produced a number of documents regarding their assets and communications, and continuing to attempt to hide the depth of their misdeeds from VBF and the Court. As a result, VBF has been left no choice but to file a motion to compel the Founders to produce a number of highly relevant documents, and to comply with their discovery obligations.

Throughout these proceedings, the Founder Defendants have repeatedly stonewalled VBF's attempts at discovery. This is the second time VBF has been forced to compel discovery from the Founder Defendants, *see* Dkt. 135 (compelling responses to VBF's initial discovery requests to the Founder Defendants), and the Founder Defendants have twice moved to quash VBF's subpoenas, *see* Dkts. 37 and 360.

On October 19, 2020, VBF served its Second RFPs and Second RFAs to the Founder Defendants. The Founder Defendants responded on November 18, 2020, and Counsel for VBF sent the Founder Defendants a letter detailing deficiencies in the Founder Defendants' responses, and requesting a meet and confer. *See* Ex. 1, App. 004-15 (Dec. 18, 2020 letter to N. Nadler). That meet and confer was ultimately held on January 4, 2021. On January 12, 2021, the Founder Defendants amended their responses to VBF's Second RFPs, but several deficiencies remained.[1] During this time, both Wulf and Ted Rea were deposed by VBF, on January 7, 2021 and January

---

[1] VBF brought the deficiencies with the Founder Defendants RFAs before this Court through its Motion Challenging the Sufficiency of the Founder Defendants' Responses to VBF's Second Requests for Admissions and for Leave to Depose Defendants Leslie A. Wulf and John E. Rea. *See* Dkt. 368.

19, 2021 respectively. *See generally* Ex. 2, App. 016 (Wulf Dep.) and Ex. 3, App. 027 (Ted Rea Dep.).

VBF then served its Third RFPs on the Founder Defendants on March 9, 2021, and they responded on April 8, 2021. On May 14, 2021, the Founder Defendants amended those responses. *See* Ex. 4, App. 040 ("Third RFPs"). In response, VBF sent the Founder Defendants a letter on May 19, 2021 detailing the Founder Defendants' deficiencies in their responses to VBF's discovery requests and requesting to meet and confer. *See* Ex. 5, App. 051 (May 19, 2021 letter to N. Nadler). Prior to the meet and confer, the Founder Defendants served the following responses:

- Wulf, Hall, and James Rea's Second Amended Responses to VBF's Interrogatories dated June 28, 2021, and Ted Rea's Second Amended Responses to VBF's Interrogatories dated June 30, 2021, *see* Ex. 6A-6D, App. 059 ("Rogs");
- Founder Defendants' Responses to VBF's Fourth RFPs dated June 28, 2021, *see* Ex. 7, App. 117 ("Fourth RFPs");
- Supplemental Responses to VBF's Third RFP Nos. 1, 2, and 3 dated June 28, 2021, *see* Ex. 8, App. 123 ("Third RFPs"); and,
- First Amended Responses to VBF's First RFPs dated July 1, 2021, *see* Ex. 9, App. 128 ("First RFPs").

On July 13, 2021, the parties conferred regarding the issues addressed in the May 19 deficiency letter, which were further outlined in an email sent to counsel for the Founder Defendants on July 12 ahead of another meet and confer the following day. *See* Ex. 10, App. 162 (July 12, 2021 email from J. Wynton). Following the July 13 meet and confer, on July 21 and 22, the Founder Defendants produced a total of 61 additional documents—despite their previous representations that they had produced everything in their possession, custody, and control, with the exception of communications they were withholding on the basis of privilege. *See* Ex. 11, App. 179 (July 21, 2021 email from D. Heringer); *see generally* Ex. 4, App. 041-50. In addition, on July 22, 2021, the Founder Defendants served their Second Amended Responses to VBF's Second RFPs. *See* Ex. 12, App. 180 ("Second RFPs"). On July 23, 2021, the Founder Defendants additionally provided

3

a written response to VBF's email. *See* Ex. 10, App. 151 (July 23, 2021 email from N. Nadler). The following week, the Founder Defendants produced a privilege log, *see* Ex. 13, App. 195 (Founder Defendants' Privilege Log), and roughly 1,000 documents, many of which should have been produced prior to the Founders' depositions, but were not. *See* Ex. 14, App. 197 (July 30, 2021 email from D. Heringer). The issues addressed in this Motion are those remaining following the parties' extensive meet and confer process facilitated by VBF's communications.

## III.    ARGUMENT & AUTHORITIES

### A.    Requests for Production

The Federal Rules of Civil Procedure provide for broad discovery—parties are entitled to discover any non-privileged matter relevant to any party's claim or defense in proportion to the case's needs. *See* Fed. R. Civ. P. 26(b)(1). The burden is on "[t]he party resisting discovery [to] show specifically how each discovery request is not relevant or [is] otherwise objectionable." *See McKinney/Pearl Rest. Partners, L.P. v. Metropolitan Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 WL 2997744, at *4 (N.D. Tex. May 25, 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). When a party fails to answer a discovery request, the requesting party may move to compel an answer. *See* Fed. R. Civ. P. 37(a)(3).

The Founder Defendants assert a number of objections on the ground that the Requests are not proportional to the needs of the case, but the Founder Defendants fail to specify how the information sought is not proportional to the needs of the case, considering the factors outlined in Rule 26 of the Federal Rules of Civil Procedure. *See, e.g.,* Ex. 12, App. 185-186, 189,191-192 (Second RFP Nos. 13, 14, 29-31, 41-43). Federal courts interpreting Rule 26 have held that such general statements constitute impermissible boilerplate objections. *See, e.g., Tsanacas v. Amazon.com, Inc.*, No. 4:17-cv-00306, 2018 WL 324447, at *2 (E.D. Tex. Jan. 8, 2018) ("A party may not 'refuse discovery simply by making a boilerplate objection that it is not proportional.'"

4

(internal citations omitted)); *Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortg. Sec. Inc. v. Pink*, No. 7:18-CV-00020-O-BP, 2019 WL 399533, at *5 (N.D. Tex. Jan. 31, 2019) (party resisting discovery on relevance must come forward with specific information regarding proportionality factors). The Founder Defendants also failed to adhere to VBF's instructions (and their own demands of VBF which have cost VBF hundreds of thousands of dollars in data processing, review, and related work) to produce documents in a format that identifies a communication's attachments as part of that documents "family" as required to properly read them.  *See* Ex. 15, App. 205-206 (Founders' Third RFPs to VBF).[2] The Founder Defendants, however, are not immune from such costs as to their discovery obligations.

1.     **The Founder Defendants' belated and selective productions suggest that they have not produced all communications with relevant third parties.**

a.     <u>**Cassels Brock and Sean Maniaci.**</u>

VBF requested that the Founder Defendants produce "[a]ll communications with Sean Maniaci, Cassels Brock, or their Counsel." *See* Ex. 12, App. 191 (Second RFP No. 41). The Founder Defendants objected that the request seeks information "not relevant to the subject matter of the pending action" because "this entity had no affiliation with VBF." *Id.* The Founder Defendants also stated that they produced responsive documents in their possession, custody or control, except for documents being withheld on the basis of privilege. *Id.* Yet, the Founder Defendants belatedly produced – weeks after insisting they produced everything – a number of email communications with Maniaci and Cassels Brock. Moreover, VBF is aware of numerous

---

[2] The Founder Defendants have required that VBF comply with stringent production standards such as including TIFF images, *see* Dkt. 394 at 4, but fail to comply with VBF's instructions.  In effect, as a result of the Founders' deficient production, VBF is forced to use time and resources to identify, for example, which documents are attachments to communications because they were not produced consecutively with the email. The Court should require the Founder Defendants comply with VBF's production protocol.

documents that exist that the Founder Defendants should possess or control, but did not produce. For instance, a third party – FishDish LLC ("FishDish") – produced certain emails that both Maniaci and one of the Founder Defendants (or their counsel) sent or received, but which the Founder Defendants did not produce. *See*, *e.g.*, Ex. 16A-16C, App. 215-221 (Sampling of communications produced to VBF including the Founder Defendants but not produced by the Founder Defendants). Thus, it is unclear whether the Founder Defendants have indeed produced all responsive documents.[3]

Cassels Brock and Maniaci are highly relevant to the claims at issue in this litigation because they were hired by the Founder Defendants to represent VBF from 2014 through at least 2017, when the fraud and misrepresentation VBF has alleged occurred. *See*, *e.g.*, 3AC ¶ 714. Maniaci was also a preferred shareholder to whom the Founder Defendants sold stock at unconscionably low rates, and Cassels Brock represented some of the Founder Defendants' Affiliated Entities. *See VeroBlue Farms USA, Inc. v. Cassels Brock & Blackwell LLP*, No. 19-09015, Dkt. 44 at ¶¶ 18-20, 29 (Bankr. N.D. Iowa Oct. 31, 2019). Therefore, the requested documents are relevant, and to the extent the Founder Defendants are withholding any documents in response to Second RFP No. 41 based on relevance, those objections should be overruled. Further, under Rule 26 of the Federal Rules of Civil Procedure, any documents withheld on the basis of privilege must be logged. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

---

[3] Tellingly, the Founder Defendants' latest document production included a number of communications exchanged with Horwood, including one email revealing that the Founder Defendants stored a number of documents relevant to this case on a Dropbox cloud folder. *See* Ex. 17, App. 223 (Dec. 14, 2018 email from B. Hall to A. Hammer). Prior to the Founder Defendants' belated production, VBF was unaware of the existence of such a folder. Founder Defendants should be ordered to confirm, under oath, whether it has produced all of the Dropbox folder's contents that are responsive to VBF's document requests.

Finally, given the fact that other parties have produced documents in response to Second RFP No. 41 that the Founder Defendants have not produced, the Court should order the Founder Defendants to (i) conduct another search for any responsive, non-privileged documents, and, if none are found, (ii) attest under oath that no documents exist. *See, e.g.*, *Parker v. Bill Melton Trucking, Inc.*, No. 3:15-cv-2528-G-BK, 2017 WL 6540908, at *4 (N.D. Tex. Feb. 3, 2017) ("[A] responding party answering that existing documents could not be located must make a specific showing that after a diligent search for the requested documents, no such responsive documents have been located within its possession, control, or custody."); *Harris v. J.B. Hunt Transport, Inc.*, No. A-06-CA-097-LY, 2007 WL 9700745, at *3 (W.D. Tex. Sept. 18, 2007) (ordering defendant to state unequivocally that no further responsive documents exist as to this request, and further to state, under penalty of perjury, that it has made a diligent search for all responsive photographs, detailing the nature of the search, and by whom it was completed[.]").

### b.    Communications with Certain VBF Board Members.

In response to Second RFP Nos. 14, 42, and 43, the Founder Defendants assert that they are "withholding documents unrelated to VBF." *See* Ex. 12, App. 186, 191-192 (Second RFP Nos. 14, 42, and 43). From this response, it is unclear whether the Founder Defendants have produced all responsive documents in their possession, custody, and control, because "VBF" is not the scope of the RFPs.

- Second RFP No. 14 seeks all communications with Terry Lyons, a former VBF board member.
- Second RFP No. 42 seeks the Founder Defendants' communications, relating to any of their Affiliated Entities or VBF, with Gregg Sedun, who is a former VBF Board member directly involved in the Founder Defendants' misappropriation schemes.
- Second RFP No. 43 seeks all communications with Ken Lockard, both former VBF Board members who Lockard also led FishDish, one of VBF's largest investors.

*See id.*; *see also* 3AC ¶¶ 28, 76-86. With respect to Second RFP No. 42, the Founder Defendants should produce all communications with Gregg Sedun relating to VBF *or any Founder Affiliated*

***Entity*** given the relevance of such entities to this suit. *See*, *e.g.*, Dkt. 153 (finding various requests for information related to Founder Affiliated Entities relevant and proportional to this case). With respect to Second RFP Nos. 14 and 43, VBF contends that all Founder Defendant communications with Lyons and Lockard are likely relevant given the vast scope of the Founder Defendants' fraud and misrepresentations direct at each, however, for purposes of this Motion, VBF agrees to narrow the scope of Second RFP Nos. 14 and 43 to seek the Founder Defendants' communications—including emails and text messages—with Lyons and Lockard related to VBF, Canaccord, all Founder-Affiliated Entities, FishDish, and Fisheries Technology Associates, Inc. ("<u>FTAI</u>")[4] from January 1, 2014 through the present. VBF's allegations that both Lyons and Lockard were directly involved in communications with the Founder Defendants containing alleged misrepresentations. *See 3*AC ¶¶ 312, 317. Therefore, the Court should order the Founder Defendants to produce all documents responsive to RFP Nos. 14, 42, and 43, or, at a minimum, identify the scope of "related to VBF" such that VBF can identify what will and will not be produced.

### 2. The Founder Defendants have not produced all responsive documents regarding their financial information.

#### a. <u>Bank Account Statements</u>

VBF's First RFP No. 6 seeks "All Documents relating to all bank accounts and accounts at other financial institutions to which you, Defendants' Affiliated Entities, or Defendants' Family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds." In response, the Founder Defendants object on a number of grounds, including "to the extent it seeks

---

[4] The Founders' production suspiciously includes only one email related to FTAI which was forwarded to the Founder Defendants' counsel in November of 2020. The email is not included here because it has been improperly designated as confidential. There is no excuse for the delayed production of this communication, further suggesting that not all FTAI related documents have been produced, as detailed in VBF's Motion at Dkt. 368. The selective, piecemeal production is obvious and improper.

documents related to personal bank accounts other than the Founders or their spouses." *See* Ex. 9, App. 131-132 (First RFP No. 6). The Founder Defendants contend the financial information of family members other than spouses would not be in their possession, custody, and control, and therefore would not be produced by them. This argument is without merit.

As an initial matter, VBF previously moved to compel responses to First RFP No. 6 from the Founder Defendants, asserting that this information was relevant because VBF has alleged that the Founder Defendants misappropriated VBF assets and bank account information could serve as critical evidence of where VBF funds went. *See* Dkt. 135. This Court agreed and determined that "bank and other financial institution account documents from the Responding Founders and their related entities and ***family members*** are relevant to VBF's claims and proportional to the needs of the case . . . ." Dkt. 153 (Sept. 10, 2019) ("September 2019 Order") (emphasis added).[5] Importantly, the Court's September 2019 Order specifically states that financial documents related to the Founder Defendants' ***family members***—not just spouses—are relevant. *Id.* Moreover, as this Court previously explained, "Rule 34's definition of 'possession, custody, or control,' includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action." *Mir v. L-3 Communications Integrated Sys., L.P.*, 319 F.R.D. 220, 230 (N.D. Tex. 2016) (Horan, J.) (collecting cases). Thus, to the extent that the Founder Defendants have not produced statements from bank accounts belonging to them, their Affiliated Entities, and family members, on the basis that such records are not within their possession, control or custody, this argument fails.

---

[5] The Court's September 2019 Order resolved VBF's motion to compel discovery responses from the Founder Defendants regarding many of the same exact requests for production at issue here, including VBF's RFPs pertaining to the Founders' bank statements, tax returns, and financial documents related to entities the Founders owned or operated. *See generally* Dkt. 153.

Furthermore, it is apparent the Founder Defendants still have not produced all responsive bank statements for the relevant time period established by the Court (July 2014 to September 2019). *See* Dkt. 367. For example, the Founders Defendants, have represented in their sworn interrogatory answers that the universe of banks at which their (and the Founder Defendants' Affiliated Entities) held accounts during the relevant time period are: Wells Fargo, RBC Brokerage, Bank of America, Prosperity Bank, Kanza Bank, Capital One, Comerica Bank, and TD Bank, as well as other brokerage and retirement accounts such as Fidelity Investment Partnerships, Cambridge Investment Research, Inc., Pershing, and Advanta Roth IRA. *See* Ex. 6A-6D, App. 062, 076-077, 091-092, 105-106 (Wulf, Hall, James Rea and TED Rea's Second Amended Answers to VBF's Rogs). Yet, VBF has not received, for example, any bank statements for AccrediLink Solutions, Inc., an entity that Founder Defendants have identified as an Affiliated Entity in their interrogatory answers. *See id.*

Moreover, for several accounts, the Founder Defendants have produced only partial records or records that do not provide sufficient detail to enable VBF to fully assess the type of transactions that were made during the relevant time period. For instance, for Bruce Hall's spouse, Darienne Hall, Founder Defendants produced only year-end statements (in lieu of producing monthly or quarterly statements) for her Pershing and Cambridge Investment Research, Inc. SEP IRA accounts. Further, instead of producing full statements for the Capital One Account for BHDH Family L.P., the Founder Defendants selectively produced only a transaction summary showing monthly interest paid from July 31, 2014 to December 31, 2016 and one lone quarterly statement from July 1 to September 30, 2019 showing the account balance.[6] Additionally, with respect to

---

[6] Because the documents referenced in this section have designated confidential under the protective order in this case, they have not been included in the Appendix. In the even the Court

John Rea and Jodie Bruner's Comerica Bank account statements, on July 22, 2021, Founder Defendants recently produced statements from June 15, 2019 to September 30, 2019. However, just a month earlier, in response to a third-party subpoena, Comerica Bank produced statements dating back from June 2014 through October 15, 2019—more than what the Founder Defendants produced. Founder Defendants produced Comerica Bank Statements from J2 Capco, LLC from only July 1, 2019 to September 30, 2019. Upon information and belief this entity has existed since 2013, therefore, it is unclear whether they have produced all statements available for this account or entity during the relevant time period. Another example of Founder Defendants' selective production are the statements they produced from LAW Holdings LLC's RBC Wealth Management account, for which the Founder Defendants produced only an annual statement for 2014 and statements for the month of December for the years 2015 through 2018, failing to produce monthly statements from April 1, 2019 to September 30, 2019.

For other accounts, the Founder Defendants produced documents in formats that do not comply with VBF's instructions to produce all documents in their native format when necessary to "properly view, read or utilize the electronic data." *See* Ex. 19, App. 234. For example, for the Alltrades Industrial Properties, LLC and ATIGC, LLC accounts at Prosperity Bank, the Founder Defendants produced ledgers in PDF format, instead of producing them in a useful format, such as native excel files, as VBF's production protocol requested. *See* Ex. 19, App. 234. Also, for James Rea's accounts at TD Bank and at TD Canada Trust, they produced only screenshots—not actual bank statements—depicting only specific transactions on certain dates, leaving a question as to whether all account activity is captured. Additionally, despite designating certain bank

---

requires proof of the deficiencies with these documents, VBF will file a Motion to Seal in order to file the document in compliance with the agreed-to protective order in this case. *See* Dkt. 112.

statements as confidential – attorneys eyes only, the Founder Defendants have also unnecessarily redacted the account numbers, making it more difficult to track which statements belong to which accounts.

The Founder Defendants' selective and partial production of bank statements during the relevant time period flies in the face of this Court's holding that financial information from July 2014 to September 2019 are relevant to this litigation, *see* Dkt. 367. It is simply not credible for the Founder Defendants or their counsel to argue that only partial records are available to the Founder Defendants after a "diligent search" for records pertaining to these accounts, when it is clear that some of the statements were selectively produced. *See, e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2018 WL 4760345, at *9 (S.D.N.Y. Sept. 28, 2018) (finding claim of lost access to basic data was "not credible" where evidence established non movant's prior access to data). Indeed, the diligence with which the Founder Defendants searched for responsive bank records is questionable. For example, despite the Founder Defendants' clear affiliation with the VeroLube entities, they have not identified VeroLube as an affiliated entity in their discovery responses, nor have that produced any bank statements for this entity despite producing a wire transfer identifying a Bank of America account and account number for this entity. *See* Ex. 2, App. 021 (Wulf Dep. 10:23-25) (testifying under oath the he owned part of VeroLube). The Court should order the Founder Defendants to state under oath that they have produced all responsive bank account statements.

### b.     <u>Tax Returns</u>

VBF's First RFP No. 8 requested all documents relating to the Founder Defendants' federal and state income, including information relating to tax returns. *See* Ex. 9, App. 132 (First RFP No. 8). The Founder Defendants still have not produced all documents responsive to RFP No. 8, and their objection that the request seeks overbroad or irrelevant information is also clearly belied by

12

the Court's September 2019 Order. *See* Dkt. 153. There, the Court ordered production of all documents responsive to RFP No. 8 from July 2014 to September 2019, holding that RFP No. 8 is "reasonably particular" and seeks documents relevant to, and proportional to the needs of, VBF's claims. *See* Dkt. 153. In recent conferences, counsel for the Founder Defendants represented that it had no tax returns for many of the entities because they were either disregarded or pass-through entities or did not otherwise file tax returns,[7] but noted that some tax returns may have "slipped through the cracks," and that the Founder Defendants would confirm whether or not all responsive documents had been produced.

The Founder Defendants then produced additional returns for two Founder Affiliated Entities, Symfonia Ventures LLC, C3LV, Inc. and Direct Restoration Group, Inc. on July 21, 2021, but further objected "[t]o the extent the requests seek additional documents."[8] *See* Ex. 11, App. 179 (July 21, 2021 email from D. Heringer) and Ex. 10, App. 154 (July 23, 2021 email from N. Nadler). For the same reasons mentioned above, it is questionable whether the Founder Defendants have conducted a diligent search for all responsive tax returns during the

---

[7] The Founder Defendants represented there are no tax returns for 2014 through 2019 for the following entities: AccrediLink, AIP Eagle Court, LLC, and AIP Wylie Church, LLC, ChipMeds, Inc., Dragon Property Fund, Ltd., J2 Capco, LLC, Kiamichi Holdings LLC, Law Holdings, LLC (stating they ceased filing separate returns in 2017 and the 2018 and 2019 returns were filed under J2 Family LP, an entity wholly owned by J2 Family LP), MAPL Management, Inc., MAPL Yield Fund GP, Inc., MAPL Yield Fund LP, Northbound Advisory Partners, RGI Dragon, Texas One Industrial LLC. Further, Founder Defendants represented that there are no tax returns for 2014 through 2019 for Alltrades Industrial Parks, Inc. and Alltrades Industrial Properties Inc. because Alltrades Industrial Parks, Inc. was formed in 2018 and that its named was changed to Alltrades Industrial Properties Inc., and that they produced tax returns for 2018 and 2019 for Alltrades Industrial Properties, Inc. *See* Ex. 10, App. 154 (July 23, 2021 email from N. Nadler).

[8] Counsel for VBF informed Founder Defendants that it had also become aware that Les Wulf was closely affiliated with the entity Global Factors LLC, and requested any tax returns and bank statements for this entity. The Founder Defendants have represented that they have "no responsive documents." *See* Ex. 10, App. 155 (July 23, 2021 Email from N. Nadler).

relevant time period. Therefore, the Court should order the Founder Defendants to state under oath, that they have produced all tax returns for all their Affiliated Entities during the relevant time period.

### c.      Information Regarding Real Estate Properties and Income

The Founder Defendants also still have not produced all documents responsive to First RFP No. 9, objecting that it seeks overbroad or irrelevant information and producing only documents "sufficient to show which real estate they owned or received income from, if any, during the relevant time period." *See* Ex. 9, App. 132-133 (First RFP No. 9). The Founder Defendants object that the request is overbroad, and further state that they are "not producing all documents related to such properties." *Id.* The Founder Defendants should produce documents responsive to First RFP No. 9 in line with the September 2019 Order that the Founder Defendants produce all financial documents from July 2014 to September 2019 which are responsive to the "reasonably particular" First RFP No. 9. *See* Dkt. 153 at 5. Therefore, the Founder Defendants must withdraw their improper objection, which this Court already ruled on, and produce all financial documents response to First RFP No. 9.

### d.      Loan Applications

In Third RFP No. 3, VBF seeks any and all loan applications prepared by or submitted to any lender by any of the Founder Defendants or their Affiliated Entities. *See* Ex. 8, App. 125 (Third RFP No. 3). The Founder Defendants responded to this request that they had produced all responsive documents within the time frame established by the Court (July 2014 through September 2019). *Id.* However, upon information and belief, the Founder Defendants have not produced all responsive documents, as evidenced by the fact that VBF received a copy of a loan application from First National Bank of Texas that the Founder Defendants should have had or should have produced if they were in the Founder Defendants' possession. *See* Ex. 18, App. 226-

14

231 (Wulf Loan Application to First National Bank dated Feb. 8, 2016). It is simply not credible that the Founder Defendants have engaged in a diligent search for their own loan applications but have not been able to access any loan applications with their names or the names of entities they owned or operated. Therefore, the Court should order that the Founder Defendants conduct a diligent search for these documents, or state under oath that after a diligent search, no responsive documents exist. *See, e.g.*, *Parker*, 2017 WL 6540908, at *4; *Harris*, 2007 WL 9700745, at *3 (ordering defendant "to state unequivocally that no further responsive documents exist as to this request, and further to state, under penalty of perjury, that it has made a diligent search for all responsive photographs, detailing the nature of the search, and by whom it was completed[.]").

### e.    Information Regarding Conversion or Transfer of Assets

The Founder Defendants also improperly assert boilerplate objections that Fourth RFP Nos. 1, 3 and 4 are not relevant to the claims in the case and are not proportional. *See* Ex. 7, App. 119-120 (Fourth RFP Nos. 1, 3, and 4). These requests, however, are directly relevant and proportional, as they seek financial information related to the Founder Defendants and certain of their family members (i.e., their spouses), which the Court has stated is relevant and proportional to the needs of the case. *See* Dkt. 153. This is also relevant to the Founder Defendants' net worth and VBF's punitive damages claims. *See, e.g.*, *Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 WL 4262036, at *2 (N.D. Tex. Aug. 29, 2014) ("A defendant's net worth is relevant in a suit involving exemplary damages."); *see also Hanan v. Crete Carrier Corp.*, 3:19-CV-149-B, 2019 WL 5837950, at *8 (N.D. Tex. Nov. 6, 2019) (Horan, J.).   The Founder Defendants' objections to Fourth RFP Nos. 1, 3, and 4 should be overruled and they should be ordered to produce all responsive documents.

### 3.   Other documents withheld based on improper objections.

In response to Second RFP No. 6, the Founder Defendants assert that they "have non-privileged, responsive documents in their possession, custody, or control." *See* Ex. 12, App. 184. This response fails to indicate whether documents are being produced, leaving VBF "guessing and wondering as to the scope of the documents or information that will be provided as responsive will be." *Heller v. City of Dallas*, 303 F.R.D. 466, 487 (N.D. Tex. 2014). The Court should order the Founder Defendants to state whether responsive documents will be produced.

In response to Second RFP Nos. 12 and 13, the Founder Defendant's object that the requests are "blockbuster request[s] that make[] it impossible" to determine what documents are responsive. *See* Ex. 12, App. 185-186. Neither Second RFP No. 12, nor No. 13 are "all-encompassing demands" for "all documents which relate in any way to the complaint" or "relate to any of the issues," as this Court exemplified in *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575 (N.D. Tex. 2018). Instead, Second RFP No. 12 seeks documents relating to and communications between the Founder Defendants and VBF and/or VBF Canada investors who VBF alleges received the Founder Defendants misrepresentations. *See*, *e.g.*, 3AC ¶ 317; *see also* Ex. 12, App. 185. Second RFP No. 13 seeks documents and communications between the Founder Defendants and Canaccord Genuity, which became the sole investment banker for VBF during a relevant time period, and which VBF has alleged assisted the Founder Defendants in manufacturing false and misleading data about VBF's business operations (and concealing material facts). *See* 3AC ¶¶ 188-192, 240-257, 778-811. These requests provide enough specificity to "allow a reasonable person to ascertain which documents are required[,]" as required by Rule 34(b)(1)(A). *Lopez*, 327 F.R.D. at 575.

In addition, Second RFP Nos. 29 and 30 seek documents and information related to the Founder Defendants' Affiliated Entities, which the Court has already held are relevant and

proportional to the needs of the case. *See* Dkt. 153. Financial information related to such entities may serve as evidence of such misappropriation, and it is therefore highly relevant to VBF's claims. However, the Founder Defendants assert a number of unsupported boilerplate objections, including objecting that this is a blockbuster request. The Founder Defendants indicate that they are withholding documents on the basis of this objection, but state that they are producing some financial and tax documents, but not all, responsive to other requests. *See* Ex. 12, App. 189. At a minimum, Founder Defendants should be producing *all*, not "some," bank statements, tax returns, and financial statements related to these two Affiliated Entities, consistent with this Court's September 2019 order. *See* Dkt. 153.

### 4. The Founder Defendants should produce a chain of custody for missing hard drives.

Finally, the Founder Defendants have failed to provide a chain of custody in response to Third RFP No. 1, despite VBF's Instruction No. 9 requiring the Founder Defendants to provide such a chain of custody. *See* Ex. 19, App. 235 (VBF's Third RFPs dated March 9, 2021). The Founder Defendants assert boilerplate objections in response, but also indicate that the requested hard drives existed—although it is not clear how many—and fail to indicate why the hard drives are no longer in their possession, how the hard drives ceased being in their possession, and when the hard drives ceased being in their possession. *See* Ex. 8, App. 124-125 (Third RFP No. 1). Further, the Founder Defendants' assertion that "the only documents removed from the company laptop were personal documents," is inapposite in this case where VBF alleges that the Founder Defendants misappropriated VBF assets and resources for personal use. *See id.; see also*, *e.g.*, 3AC ¶ 126-134. The Founder Defendants' objections should be overruled and they should be ordered to provide information regarding the disposition of any missing hard drives.

### B.   <u>Interrogatories</u>

1.    **The Founder Defendants must specify, with sufficient detail, documents referenced in their interrogatory responses.**

In response to several of VBF's First Interrogatories, each Founder Defendant vaguely directed VBF to refer to its own records to ascertain the answer, at times asserting that the burden of ascertaining the answer is the same or less as the burden would be on the Founder Defendants. *See* Ex. 6A, App. 062-064 (Wulf's Rogs Nos. 3, 6, 7, 8); Ex. 6B, App. 077-079, 082-083 (Hall's Rogs Nos. 4, 6, 9-11, 19, 22); Ex. 6C, App. 093-094 (James Rea's Rogs Nos. 7, 12); and Ex. 6D, App. 107-109, 112 ( Ted Rea's Rogs Nos. 5, 8, 11, 21; ).

It is not a proper response to an interrogatory to refer a party to unspecified records, especially where, as here, the responding parties (as founders and former officers of VBF) know more information about VBF's records than its current management. Founder Defendants are obligated to provide a complete response even where referring to documents that VBF supposedly possesses. *See, e.g.*, Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); *Meltzer/Austin Rest. Corp. v. Benihana Nat. Corp.*, No. A-11-CV-542-LY, 2013 WL 2607589, at *7 (W.D. Tex. June 10, 2013) (finding interrogatory answers improper where party simply referred to the "Franchise Agreements" when asked to identify the particular provisions of those agreements on which the responding party "bases its allegations"). Therefore, it is in sufficient under Rule 33 to refer VBF to unspecified "board meeting minutes and other documents in VBF's possession (including the Founders' emails)," see Ex. 6D, App. 107-108 (Ted Rea's Rogs No. 8), or "refer[] VBF to the projection of fish sales in its possession" *see* Ex. 6A, App. 063-064 (Wulf's Rogs No. 6). Nor is it proper to assert that "[d]ocuments containing information responsive to this Interrogatory have been produced and other responsive documents may be in VBF's exclusive possession and/or control," and that "VBF can determine the answer. . . based on the Founders' documents that it

has in its possession." *See* Ex. 6D, App. 109 (Ted Rea's Rogs No. 11). To the extent the Founder Defendants refer VBF to documents they produced, Rule 33 expressly requires "a party responding to interrogatories by referring to documents, to 'specif[y] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.'"). *Id.* (quoting Fed. R. Civ. P. 33(d)(1)). Contrary to the Founder Defendants' assertions, it would certainly be more burdensome for VBF to sift through the millions of documents generated by the Founder Defendants during the time they controlled and operated the company, than for the Founder Defendants to do so. The Court should order the Founder Defendants to amend their responses to the following Interrogatories to make specific reference by bates number to the document(s) the Founder Defendants reference in their answers:

- Hall's Answers to Interrogatory Nos. 4, 6, 9-11, 19, 22;
- Ted Rea's Answers to Interrogatory Nos. 5, 8, 11, 21;
- James Rea's Answers to Interrogatory Nos. 7, 12; and
- Wulf's Answers to Interrogatory Nos. 3, 6, 7, 8.

### 2.     Wulf has failed to adequately answer Interrogatory No. 2.

Further, Wulf has failed to adequately answer Interrogatory No. 2 with the information requested by VBF. *See* Ex. 6A, App. 062 (Wulf's Rogs No. 2). Specifically, for the financial institutions that Wulf was requested to identify, he was further requested to provide "account numbers, name[s] of account holder(s), dates account has been held, and type of account." *Id.* Instead, stated he "is aware of the following bank accounts," followed by a vague list of financial institutions, not bank accounts. *Id.* The Court, and the Founder Defendants, have characterized this interrogatory as among VBF's "[r]equests for financial information, assets and bank accounts for Founder Defendants, their family members, affiliates, and business partners." *See* Dkt. 153 at 2-3 (characterizing VBF's Rog Nos. 1, 2, 3, 4, 13, 16-17, 20, and 22). This Court has already determined that financial information VBF seeks form the Founder Defendants is relevant to the

claims in, and proportional to the needs of, this case. *See* Dkt. 153 at 7. Therefore, Wulf should be ordered to respond fully to Interrogatory No. 2, providing account numbers, names of account holders, dates which each account was held, and account type. *See* Fed. R. Civ. P. 33(b)(3).

**C.     Wulf and Ted Rea should be ordered to reappear for depositions.**

A motion to compel an answer from a deponent who failed to answer a question asked under Rule 30 after they have appeared for their deposition is governed by Rule 37(a)(3)(B)(i). *See Murillo Modular Group, Ltd. v. Sullivan*, 3:13-CV-3020-M, 2016 WL 6139096, at *6 (N.D. Tex. Oct. 20, 2016). "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4); *see also Sullivan*, 2016 WL 6139096, at *6.

During their depositions, both Wulf and Ted Rea followed the advice of their counsel and refused to answers questions posed by VBF's counsel. *See* Ex. 3, App. 032-038 (T. Rea Dep. 136:23-139:15; 257:22-259:7) and Ex. 2, App. 022-024 (Wulf Dep. 283:11:9-285:14). Each refusal to answer VBF's questions was improper and both Wulf and Ted Rea should be ordered to reappear.

> Rule 30(c)(2) provides only three situations in which a deponent may properly be instructed not to answer a question – "only when necessary" (1) to preserve a privilege, (2) to enforce a limitation previously ordered by a court, or (3) to present a motion under Federal Rule of Civil Procedure 30(d)(3) to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.

*Sullivan*, 2016 WL 6139096, at *5. With respect to Ted Rea, he was instructed by his counsel not to answer twice. *See* Ex. 3, App. 032-035 (T. Rea Dep. 136:23-139:15) and *id.*, App. 036-038 (T. Rea Dep. 257:22-259:7). Initially, when asked about the nature of the allegations that led to a felony conviction that VBF alleges Ted Rea concealed from VBF shareholders and independent directors, Ted Rea's counsel cut off the questioning without presenting any reason for doing so.

*Id.*, App. 032-035 (T. Rea Dep. 136:23-139:15). Later, when asked about whether he had disclosed this litigation to potential or actual investors of Alltrades, a Founder-affiliated entity, Ted Rea's counsel instructed him not to answer based on relevance. *Id.*, App. 036-038 (T. Rea Dep. 257:22-259:7). Courts generally conclude "that it is improper to instruct a witness not to answer a question based on a relevancy objection[,]" unless the "questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner[.]" *Sullivan*, 2016 WL 6139096, at *5. Here, in this case about the Founder Defendants' misrepresentations and fraud, *see generally* 3AC, VBF's questions about Ted Rea's disclosure of his felony conviction to VBF and his disclosure of this litigation to current investors of founder-Affiliated Entities are relevant to VBF's claims, and certainly to do not go "so far beyond the realm of possible relevance" when VBF specifically alleges that Ted Rea, among the other Founder Defendants made material misrepresentations. Also, VBF's interrogatory about Alltrades could lead to Ted Rea's own summary of his understanding of this litigation, which is highly relevant.

With respect to Wulf, he was instructed by his counsel not to answer two questions from VBF regarding his lewd internet usage on VBF-owned computers.[9] *See* Ex. 2, App. 022-024 (Wulf Dep. 283:11:9-285:14). Wulf's counsel instructed him not to answer these questions because they have "nothing to do with this lawsuit" and that it was "harassing." *Id.* VBF's questions to Wulf, however, are highly relevant to VBF's claims for breach of fiduciary duty and misappropriation of VBF's resources. Indeed, they cannot be "so far beyond the realm of possible relevance" when

---

[9] It should be noted that Wulf's lewd internet usage was occurring at the same time (many times on the ***same day***) that Wulf was making allegations of impropriety against Jens Haarköetter. *See also* Dkt 296, ¶ 129; Dkt. 296-15 at 64-65. Further, this activity also shows that Wulf was not dedicating his attention to the management of VBF and its significant problems, as much of this internet activity occurred during work hours or otherwise on work days. *Id.*

VBF specifically alleges "that Wulf frequently used his VBF laptop to search pornographic, sexual escort, and other deviant websites at relevant times, often during work hours, demonstrating that he spent resources and time purportedly for VBF on decidedly non-VBF activities[.]" *See* 3AC ¶ 129. Therefore, questioning Wulf as to whether he advised the board of directors about his misuse of VBF property in violation of company is relevant to this lawsuit and was done for proper purposes. *See* Ex. 2, App. 023 (Wulf Dep. 284:9-11).

Moreover, the Founder Defendants have fought for, and won, the right to discover information about the allegations of sexual harassment against Haarköetter (Dkts. 401, 415). VBF will counter such allegations by demonstrating that Wulf contrived them, along with the other three Founder Defendants, to get Haarköetter off their trail at the very same time that Haarköetter was attempting to discover their fraud. For example, one VBF board member admitted that such allegations—even at the time before the Founders' fraud was known to VBF—appeared to be a "ruse" by the Founder Defendants. *See, e.g.*, Ex. 20, App. 245-247 (March 2018 Nelson Family Letter). Without further questioning of Wulf, VBF will be unfairly prejudiced in countering this allegation. Therefore, the Court should order Ted Rea and Wulf to reappear for depositions to answer questions they were improperly instructed not to answer, which would include follow-up questions that VBF would have asked had it been permitted to pursue these lines of inquiry at the depositions.

## D.      **<u>Miscellaneous Relief</u>**

### 1.      **The Founder Defendants should produce their litigation holds because of the lack of evidence they have produced.**

The Founder Defendants' limited production to date, their alleged "dog ate my homework" loss of hard drives storing data that was house on VBF's servers, and the Founder Defendants' resistance to providing certain basic documents like tax returns and bank statements on the grounds

that the Founder Defendants have produced all documents in their possession (despite the fact that these documents can be easily retrieved from banks, online banking accounts, emails, etc.), raise the specter that the Founder Defendants may have improperly withheld evidence from VBF, or the Founder Defendants have failed to preserve evidence that was essential to VBF's claims in this litigation. Accordingly, VBF requested the Founder Defendants produce information regarding its litigation holds, in the same manner as the Founder Defendants insisted of VBF. *See* Ex. 10, App. 164 (July 23, 2021 email from N. Nadler).

In response, the Founder Defendants stated that they "will provide information related to what instructions were made to preserve documents," *see* Ex. 10, App. 154 (July 23, 2021 email from N. Nadler), however VBF has not received sufficient information, if any, regarding the Founder Defendants litigation holds. Because there is reason to believe that the Founder Defendants are withholding relevant evidence, or relevant evidence has been destroyed, in accordance with the Court's order requiring VBF to produce information about its litigation holds, the Founder Defendants should produce (i) information about when they served and were served litigation hold notices and (ii) a privilege log of any withheld materials that have not been logged to date. *See* Dkt. 401.

**2.      The Founder Defendants must disclose all email addresses used during the relevant time and produce responsive documents from those accounts.**

In addition, VBF is aware that the Founder Defendants have used a number of different email addresses and domains, including email addresses associated with the Founder Defendants' multiple Affiliated Entities, and VBF believes that the Founder Defendants have improperly

withheld documents from alternative email addresses used.[10] These include, for example, les.wulf@maplfunds.com, and the Founder Defendants' personal Yahoo and Gmail accounts. These also include, but are not limited to, the following:

| Les Wulf | Bruce Hall | James Rea | Ted Rea |
|---|---|---|---|
| les@adroitinvest.com | bruce.hall@verolube.com | jrea@trilandinternational.com | trea@j2capco.com |
| les@verolube.com | brucearthurhall@gmail.com | jrea@wulfbank.com | ted.rea@verolube.com |
| law@wulfs.com | bhall@wulfbank.com | jrea@poweredbyssi.com | |
| les@wulfs.com | bhall@poweredbyssi.com | james@d-rg.com | trea@wulfbank.com |
| les@wulfbank.com | bhall@trilandinternational.com | jar@7reas.com | trea@poweredbyssi.com |
| | | jrea@j2capco.com | |

The Founder Defendants have represented that they searched all available email addresses for responsive documents. *See* Ex. 10, App. 154 (July 23, 2021 email from N. Nadler).

To the extent they are withholding documents or have not made a diligent search of these email addresses—or any other email addresses they have used within the relevant time period that may contain responsive documents—the Founder Defendants should be required to (i) disclose any other email addresses they have used and (ii) perform a diligent search and produce any relevant documents from those email addresses, or explain under oath why a diligent search is not possible. *See, e.g.*, *Folkenflik v. Chapwood Capital Inv. Mgmt, LLC*, No. 4:20-mc-00036, 2020 WL 9936142, at *6 (E.D. Tex. June 5, 2020) (granting motion to compel and ordering non-movant to search email accounts where movant presented evidence indicating non-movant was in possession of unproduced responsive documents); *Joint Stock Co.*, 2018 WL 4760345, at *9 (finding claim of lost access to basic data was "not credible" where evidence established non movant's prior access to data); *In re Davis*, No. 07-33986-H3-7, 2008 WL 220121, at *4 (Bankr. S.D. Tex. Jan. 24, 2008) (order non movant to state "that, after diligent search and request of all

---

[10] The Founder Defendants' recent, yet belated, production of documents includes an extensive amount of documents from the Founder Defendants non-VBF email addresses, calling into question why these documents were not previously produced.

entities to which he has access, he has produced all documents and as to any document not produced, the reason it is unavailable.").

## IV.   VBF IS ENTITLED TO FEES AND COSTS

VBF has diligently attempted to resolve these issues with the Founder Defendants without the need for court intervention. The Founder Defendants, however, continue to insist that they have produce all non-privileged, responsive documents yet they continue to make additional productions following VBF's inquiries into information it should have received but has not. Further, the Founder Defendants failed to answer questions at their depositions and failed to provide fulsome interrogatory responses. For the reasons set forth herein, the Founder Defendants' nondisclosure is also not substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A). Therefore, an award of VBF's attorneys' fees and expenses incurred in filing this Motion would be just.

## V.   CONCLUSION

VBF respectfully requests that the Court: (1) compel the Founder Defendants to produce documents pertaining to communications with Cassels and/or Sean Maniaci, tax returns, documentation regarding the chain of custody for external hard drives and the loan application, as described in this Motion; (2) compel the Founder Defendants to reproduce Defendant Wulf for a deposition to answer the certified questions described herein; (3) compel the Founder Defendants to reproduce Ted Rea for a deposition to answer the certified questions described herein; (4) provide supplemental and/or amended answers and responses to the interrogatories and document requests referenced herein; and (5) award VBF any further relief that may be just and proper.

Dated: August 6, 2021

Respectfully submitted,

/s/ *Nicole L. Williams*

Nicole L. Williams
Texas Bar No. 24041784
nwilliams@thompsoncoburn.com
Jasmine S. Wynton
Texas Bar No. 24090481
jwynton@thompsoncoburn.com

THOMPSON COBURN LLP
2100 Ross Avenue, Suite 600
Dallas, Texas 75201

/s/ *Robert H. Lang*

Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com
Caroline Pritikin
(appearing *pro hac vice*)
cpritikin@thompsoncoburn.com

THOMPSON COBURN LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

*ATTORNEYS FOR PLAINTIFF*
*VEROBLUE FARMS USA, INC.*

26

## **CERTIFICATE OF CONFERENCE**

In accordance with LR 7.1(a), on July 13, 2021 VBF's Counsel Jasmine S. Wynton conducted a teleconference with Counsel for the Founder Defendants Noah Nadler regarding the relief sought in this Motion. Following the teleconference, Counsel have exchanged emails in an attempt to resolve the outstanding disputes. VBF believes the Founder Defendants to be opposed to the relief sought in this Motion based on its communications with their counsel.

/s/ *Jasmine S. Wynton*
Jasmine S. Wynton

## **CERTIFICATE OF SERVICE**

I certify that this document was filed electronically on August 6, 2021, with the clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ *Nicole L. Williams*
Nicole L. Williams