IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-764-X |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff VeroBlue Farms USA, Inc. has filed an Expedited Motion for Protective Order from Certain of Founder Defendants' 30(b)(6) Deposition Notice Topics. *See* Dkt. No. 448 (the "MPO").

United States District Judge Brantley Starr has referred the MPO to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 447.

In the MPO, VBF asserts that "[c]ertain portions of the Topics the Founder Defendants included in the Notice improperly seek: (1) expert testimony; (2) legal conclusions; (3) information not known to, or reasonably available to, VBF; (4)

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

information that is not relevant; and (5) testimony that would be overly broad and unduly burdensome, and thus not proportional to the needs of this case." Dkt. No. 818 at 5.

More specifically, VBF contends that

(1)   Topic Nos. 2 and 4 improperly seek expert testimony;
(2)   Topic No. 2 improperly seeks legal conclusions;
(3)   Topic Nos. 1-2, 4-5, and 17-18 seek testimony regarding information not known to, or reasonably available to, VBF;
(4)   Topic Nos. 19 and 39 seek information that is irrelevant to the claims and defenses in this matter; and
(5)   Topic Nos. 4, 18-19, 24-25, and 37-39 are overly broad and unduly burdensome, and are thus not proportional to the needs of this case.

*Id.* at 5-17.

VBF requests as relief "that the Court enter a Protective Order limiting Topic Nos. 1-2, 4-5, 17-19, and 25, and protecting against the necessity of VBF designating and preparing a witness to testify as to Topic Nos. 24 and 37-39 in their entirety." *Id.* at 18.

The Founder Defendants filed a response, *see* Dkt. No. 454, and VBF filed a reply, *see* Dkt. No. 456.

For the reasons and to the extent explained before, the Court GRANTS in part and DENIES in part VBF's MPO.

## Background and Legal Standards

The parties and the Court are familiar with the background of this case, so the Court will not repeat it here. *See generally VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633 (N.D. Tex. 2020).

As background for this MPO, VBP explains that

VBF, a former sustainable fish farm ("aquaculture") business, has sued the Defendants and their co-defendant Keith Driver (collectively, the "Founders"). VBF has alleged, among other things, that the Founders misappropriated and misused VBF's assets for their own personal gain. VBF also alleges that the Founders knowingly misrepresented and concealed material facts about their now-admitted forgeries of third-party diligence reports and the viability of VBF's business model, including its technology, performance and operational metrics, finances, and the amount of technical expertise and experience behind VBF. VBF alleges that the Founders ultimately caused VBF to lose tens of millions of dollars.

On January 21, 2022, the Founder Defendants served a Notice of Deposition of Bjorn Thelander, Individually and as Corporate Representative of VeroBlue Farms, USA, Inc. (the "January Notice"), pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, even though VBF is a party. App. 004-012 (January Notice). The January Notice listed thirty-nine (39) topics for testimony upon which VBF would be required to designate an individual to provide testimony (the "Topics"). *Id.*

Prior to being formally served with the January Notice, VBF and the Founder Defendants (collectively, the "Parties") engaged in an extensive meet and confer process. Initially, on January 17, 2022, VBF provided its objections to each Topic in writing. App. 013-025 (Jan. 7, 2022 email from R. Lang to N. Nadler and attachment). Thereafter, the Parties discussed VBF's objections to the Topics during a call on February 3, 2022, and reached several agreements to limit various Topics. Further, VBF explained that it had not yet determined which individuals would testify as to the Topics, and that the Founder Defendants' designation of Mr. Thelander in the January Notice was improper.

On April 22, 2022, the Founder Defendants served an updated Notice of Deposition of the Corporate Representative of VBF (the "Notice") that reflected the Parties' agreements as to some of the Topics and removed Mr. Thelander as the specifically-noticed representative. App. 026-033 (Notice). The Parties could not resolve all disagreements as to the Topics, and VBF now moves the Court for protection from the objectionable portions of Founder Defendants' Topics. (Since serving the Notice, the Founder Defendants have withdrawn Topic No. 22. See App. 034-035 (May 6, 2022 email from N. Nadler to K. Anwar).)

Dkt. No. 448 at 1-2 (footnote omitted).

   In response, the Founder Defendants explain that

VBF's Third Amended Complaint ("TAC") is 281-pages long (plus
approximately 1,500 additional pages of exhibits) and contains 23
causes of action. VBF seeks approximately 100 million dollars from five
individual defendants with the damage model consisting of almost every
dollar that VBF obtained through loans or investments between 2014
and 2018. Dkt. No. 296 at ¶ 136; App. 004-05 (Ex. 2). VBF essentially
contends that the Founders were the sole cause of VBF's failure, and the
Founders are responsible for every dollar brought into VBF (regardless
of how the money was spent). The Founders have asserted numerous
affirmative defenses related to the untenable claims and damage
theories asserted by VBF.

   The Founders have served a Rule 30(b)(6) notice (the "Deposition
Notice") after making certain changes based on objections raised by
VBF. The Rule 30(b)(6) deposition topics relate to the claims and
damages asserted by VBF – as well as the defenses asserted by the
Founders. The scope of the issues in the lawsuit is, by VBF's own doing,
broad. As Magistrate Judge Stickney aptly explained, "[b]ecause
Plaintiffs have made at issue in this lawsuit many different topics,
Defendants in turn need to inquire into these topics in order to prepare
their defense." *Zenimax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-
1849-P (BF), 2016 WL 11476858, at *4 (N.D. Tex. Jan. 27, 2016)
(Stickney, M.J.).

   But VBF still objects to almost one-third of the topics in the
Deposition Notice and seeks protection from the Court. The Motion
seeks to restrict the Founders' ability to (a) fully understand the claims
and damages asserted by VBF and (b) develop the facts that will support
the defenses to VBF's claims. Specifically, VBF seeks protection because
it claims 13 of the topics, in whole or part, seek information:
   · related to damages that are being proven by VBF's expert;
   · not known or reasonably available to VBF;
   · calling for a legal conclusion; or
   · not proportional to the needs of the case and/or is overbroad.

Dkt. No. 484 at 1-2. The Founder Defendants assert that "VBF's arguments are

misplaced and/or could have been handled at the deposition (if they even came up) –

especially as it relates to arguments about expert testimony, legal conclusions, and

information not reasonably available to VBF"; that, "[a]s it relates to arguments about certain topics being overbroad or seeking information that is irrelevant or not proportional to the needs of the case, these arguments are not factually correct as each of the topics relate to claims asserted by VBF or defenses raised by the Founders"; and that "VBF therefore has failed to meet its burden to obtain a protective order," and "[t]he Court should deny the Motion." *Id.* at 2.

In reply, VBF argues that,

> [t]hrough their Response, the Founder Defendants attempt to rewrite several noticed deposition topics, misconstrue VBF's arguments and authorities, and ignore VBF's representations regarding the limited portions of the Topics upon which it would prepare its witness(es) to testify. VBF's Motion is procedurally proper, identifies the specific objectionable portions of each Topic, and demonstrates the bases for its objections. The Founder Defendants reviewed a draft of the Motion prior to its filing and withdrew only one Topic. Now, their Response describes the limitations for several Topics to which they should have agreed to prior to VBF's Motion. The Founder Defendants' conduct is without justification, and an award of fees and expenses pursuant to Federal Rule of Civil Procedure 37 is appropriate.

Dkt. No. 456 at 1.

As to VBF's objections to certain Federal Rule of Civil Procedure 30(b)(6) topics, the Court has laid out the standards that govern a Federal Rule of Civil Procedure 26(c) motion for protective order as to topics served for a Federal Rule of Civil Procedure 30(b)(6) corporate representative deposition, and the Court incorporates and will apply – but will not repeat – those standards here. *See Dennis v. United States*, No. 3:16-cv-3148-G-BN, 2017 WL 4778708, at \*7-\*8 (N.D. Tex. Oct.

23, 2017); *Pauls v. The Prudential Ins. Co. of Am.*, No. 3:16-cv-2116-M-BN, 2016 WL 6397564, at *3-*4, *8 (N.D. Tex. Oct. 28, 2016).

And, as recently amended, Rule 30(b)(6) requires that, "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." FED. R. CIV. P. 30(b)(6).

## Analysis

### I.   Objections that Topic Nos. 2 & 4 improperly seek expert testimony and that Topic No. 2 improperly seeks legal conclusions

- Topic No. 2: VBF's damages sought from the Founder Defendants, including (a) the cause(s) of such damages, (b) the amount of each category of damage, (c) the documents and facts supporting such damages, and (d) which of these damages were sustained by VBF versus its shareholders.

- Topic No. 4: VBF's assets allegedly misappropriated by any of the Founder Defendants, including the date of such misappropriation, whether the asset was owned by VBF, the value of the asset that was allegedly misappropriated, and the VBF board members who had knowledge of each alleged misappropriation.

VBF contends that it

does not object to Topic Nos. 2 and 4 to the extent they seek testimony regarding the "facts supporting" its damages and the underlying facts regarding the assets it alleges were misappropriated by the Founders, and VBF will appropriately prepare its corporate representative to testify on these subjects. However, VBF objects to Topic Nos. 2 and 4 to the extent they seek testimony regarding VBF's computation, calculation, valuation, and/or estimation of damages and

misappropriated assets, as well as causation testimony, because such testimony is not proper 30(b)(6) testimony. Rather, such topics are the proper subject of expert testimony. *See Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*, No. 6:19-CV-00059-RWS, 2020 WL 6803258, at *3 (E.D. Tex. Sept. 18, 2020) (granting a protective order as to certain noticed 30(b)(6) topics relating to damages because they were not "appropriate Rule 30(b)(6) testimony" and were instead "properly the subject of expert testimony"); *Tiemann v. Yeres*, No. A-18-CV-301-LY, 2019 WL 919013, at *3 (W.D. Tex. Feb. 22, 2019) (question of causation better suited for expert discovery than 30(b)(6) testimony).

Moreover, a 30(b)(6) deposition as to VBF's calculations of damages and valuation of assets is not only improper, but it is unnecessary, as the Founder Defendants already have discovery on these subjects through VBF's expert witness, Brandi Kleinman, CPA. Indeed, Ms. Kleinman has produced a report and provided deposition testimony regarding VBF's damages that encompasses the majority of Topic Nos. 2 and 4. *See* App. 046 (Kleinman Report) ("My analysis included … the quantification of damages suffered by VBF as a result of the alleged wrongful conduct of the Founders as outlined in VBF's Third Amended Complaint."); *id.* App. 132 ("I conclude to a reasonable degree of certainty that VBF's total damages caused by the Founders are $102,102,568."); *see also* App. 133-136 (Kleinman Deposition Cover Pages and Certificate).

Because Topic Nos. 2 and 4 seek testimony regarding VBF's computation, calculation, valuation, and/or estimation of damages and misappropriated assets, as well as the causation of VBF's damages, the Court may properly issue a protective order on the basis that such inquiries are proper subjects of expert testimony, not 30(b)(6) testimony. *See Lone Star Tech. Innovations*, 2020 WL 6803258, at *3.

VBF respectfully requests that the Court issue a protective order against the necessity of VBF designating a witness to testify as to the above-identified objectionable parts of Topic Nos. 2 and 4, because each is more suited for expert testimony, which VBF has already provided by Rule 26(a)(1) report, *see* App. 0336-132, and by a deposition of its damages expert. *See* App. 133-136.

Dkt. No. 448 at 5-7 (footnotes omitted).

VBF further contends that,

[t]he Notice includes topics that improperly seek legal conclusion testimony from VBF's corporate representative(s). Specifically, Topic

-7-

No. 2, listed above, which inappropriately seeks testimony from VBF's corporate representative regarding "VBF's damages sought from the Founder Defendants, including (a) the cause(s) of such damages" and the parties who sustained these damages. App. 031. VBF objects to Topic No. 2 because it seeks a legal conclusion as to causation with respect to VBF's damages.

Corporate representative deposition topics have been found "inappropriate" and "prohibited" when they require the witness to draw legal conclusions. *See Jenkins v. Rotobec, Inc.*, No. 1:09CV150HSO-JMR, 2010 WL 11527364, at *2 (S.D. Miss. July 6, 2010) ("The Court finds that the questions presented required the witness to draw legal conclusions which were inappropriate."); *Firefighters' Ret. Sys. v. Citco Group Ltd.*, No. CV 13-373-SDD-EWD, 2018 WL 2158769, at *5 (M.D. La. May 10, 2018), *aff'd*, No. CV 13-373-SDD-EWD, 2018 WL 5993471 (M.D. La. Nov. 14, 2018) ("It is also generally prohibited for a lay witness to interpret statutes and to give legal opinions.") (collecting cases).

Here, Topic No. 2 asks VBF to designate a 30(b)(6) witness to draw legal conclusions regarding the causation of VBF's damages. This topic is improper for a 30(b)(6) deponent. *See In re Teon Maria, LLC*, No. CIV.A. 12-2272, 2013 WL 5507286, at *4 (E.D. La. Sept. 30, 2013) (sustaining objection to 30(b)(6) topics that would "require the witness to testify on legal conclusions."). VBF therefore requests that the Court issue a protective order against the necessity of VBF designating a witness to testify as to the legal conclusion identified in Topic No. 2.

Dkt. No. 448 at 7-8.

The Founder Defendants respond that

VBF seeks protection from Topics 2 and 4 because it contends that the topics seek expert testimony and call for a legal conclusion. Motion at 5–8. Specifically, VBF objects to Topic Nos. 2 and 4 to the extent they seek testimony regarding "VBF's computation, calculation, valuation, and/or estimation of damages and misappropriated assets, as well as causation testimony, because such testimony is not proper 30(b)(6) testimony." *Id.* at 5. VBF contends "such topics are the proper subject of expert testimony." *Id.* (emphasis in original). VBF also contends that Topic 2 improperly calls for legal conclusions to the extent it calls for testimony related to the cause of VBF's damages.

The Court should reject VBF's request for a protective order. First, VBF has failed to meet its burden to demonstrate why a protective order is necessary as it relates to straight forward topics seeking

information related to VBF's damages. (VBF's authorities in support are all non-binding, factually inapposite, and unpersuasive. For example, the case *E.E.O.C. v. Tex. Roadhouse, Inc.*, No. CIV.A. 11-11732-DJC, 2014 WL 4471521, at *3 (D. Mass. Sept. 9, 2014), cited by VBF (Motion at fn. 2) quashed a 30(b)(6) deposition because notices "directed to a law enforcement agency involving the type of information Defendants seek in this case were, in effect, notices to depose opposing counsel, and would not be permitted." Obviously, no such facts are present here.) To the extent a question is asked in the deposition that VBF contends seeks expert testimony or legal conclusions, VBF's witness could refer to the expert report or its counsel could object to form and preserve the objection.

Second, the Founders are entitled to seek information related the amount of damages sought by VBF, the cause of such damages (i.e., how were the damages caused by the Founders or were they caused by someone else), and the facts supporting the claim for damages. *Frazier v. Carmike Cinemas, Inc.*, No. 2:08-CV-220, 2009 WL 10677183, at *2 (E.D. Tex. Sept. 24, 2009) ("Indeed, a corporation "has an obligation to educate its representative regarding [the corporation's] position on what, if any, damages or injuries [were] suffered as a result of the incident made the basis of this lawsuit. The Court finds the topic meets the reasonable particularity requirement of Rule 30(b)(6).").

While VBF has designated an expert to calculate damages, the Founders are entitled to ask VBF's 30(b)(6) witness related to the facts giving rise to its damages, whether the damages identified by VBF's expert are the sole damages sought by VBF in this lawsuit (as the TAC contains certain damages not included in the calculation provided by its expert), and the cause of the alleged damages. (Examples include the damages listed on pages 15 and 16 as well as pages 21 and 22 of the TAC, which are not included in the calculation of damages provided by VBF's expert. *See* Dkt. No. 296 at pages 15, 16, 21, 22.) As to the cause of the alleged damages, the Founders are entitled to VBF's position why it contends the alleged damages sustained by VBF were caused by the Founders. To the extent VBF is relying solely on its expert to provide a specific calculation or to prove causation, VBF's corporate representative could, when necessary, reference and rely upon VBF's damage expert's, Brandi Kleinman, findings. However, the Founders are entitled to VBF's corporate position on damages.

Third, while VBF cites several cases standing for the proposition that a 30(b)(6) witness is not required to draw legal conclusions, none of the cases cited by VBF support the position that a 30(b)(6) topic asking for facts related to the cause of damages is improper. The Founders are

-9-

entitled to ask questions related to who and what caused VBF's damages as this is a central question in the case. *See Hanan v. Crete Carrier Corp.*, No. 3:19-cv-149-B, 2019 WL 5837950, at *1 (N.D. Tex. Nov. 6, 2019) (Horan, M.J.) (allowing testimony as to the "cause of the accident").

VBF fails to carry its burden to be entitled to protection from Topics 2 and 4. If the Court is inclined to issue a protective order, however, the Court should preclude VBF from providing any factual testimony at trial related to computation, calculation, valuation, and/or estimation of damages and misappropriated assets, as well as causation (since VBF is contending this is solely the subject of expert testimony – not fact witness testimony).

Dkt. No. 454 at 3-5 (footnotes omitted).

VBF replies that

[t]he Founder Defendants assert that, rather than seek protection via its Motion, VBF's "counsel could object to form and preserve the objection" during its 30(b)(6) deposition(s), or that VBF's representative can testify that VBF cannot access or does not know the information requested. *See* Resp. at 4, 6. The Founder Defendants' suggested procedure does not adequately mitigate VBF's risk of having to re-present itself for a 30(b)(6) deposition. *See Dennis v. United States*, No. 3:16-CV-3148-G-BN, 2017 WL 4778708, at *5 (N.D. Tex. Oct. 23, 2017) ("[f]ailing to appear and testify as to designated topics for a Rule 30(b)(6) deposition 'is not excused [for purposes of sanction under Fed. R. Civ. P. 37(d)(2)] on the ground that the discovery sought was objectionable'") (internal quotations omitted). As VBF noted in its Motion, when a party finds deposition topics objectionable, seeking a protective order under Rule 26(c) is the proper method of obtaining protection from Rule 30(b)(6)'s requirement that the organization designate a witness to testify as to the noticed topics. *See* Mot. at 4 (citing *Pauls v. The Prudential Ins. Co. of Am.*, No. 3:16-CV-2116-M-BN, 2016 WL 6397564, at *4 (N.D. Tex. Oct. 28, 2016)).

Further, because the "[t]he majority of district courts who have considered the question have determined that 'Rule 30(b)(6) limits the subject matter the deponent is required to prepare for, but does not restrict the examining attorney's inquiry[,]'" a protective order would allow VBF both to limit inquiries by the Founder Defendants' counsel and to reduce VBF's time to prepare a representative regarding topics on which VBF should not be required to prepare. *See Willoughby v.*

*Cribbs*, No. CV H-13-1091, 2015 WL 12777188, at *1 (S.D. Tex. Feb. 6, 2015) (collecting cases); see also Fed. R. Civ. P. 30(c)(2) (permitting instruction to a witness not to answer in order "to enforce a limitation ordered by the court").

Dkt. No. 456 at 1-3.

VBF further replies that

[t]he Founder Defendants misconstrue VBF's arguments and authorities and ignore VBF's plain statement that it "does not object to Topic Nos. 2 and 4 to the extent they seek testimony regarding the 'facts supporting' its damages and the underlying facts regarding the assets it alleges were misappropriated by the Founders[.]" Mot. at 5. VBF has not attempted to assert "that a 30(b)(6) topic asking for facts related to the cause of damages is improper." Resp. at 5 (emphasis added). Instead, VBF objected to the portions of Topic Nos. 2 and 4 that extend beyond the factual bases for its damages and into improper 30(b)(6) testimony. With respect to Topic No. 2, "the documents and facts supporting [VBF's] damages" represents only one subsection of the topic:

> (2) VBF's damages sought from the Founder Defendants, including (a) the cause(s) of such damages, (b) the amount of each category of damage, (c) the documents and facts supporting such damages, and (d) which of these damages were sustained by VBF versus its shareholders.

App. 031 (emphasis added). While subsection (c) (to which VBF does not object) could encompass facts related to the cause of damages, which is also potentially part of subsection (a) upon which VBF would testify, the other subsections are objectionable on the grounds that each calls for expert testimony (subsections (a) & (b)) or legal conclusions (subsections (a) & (d)). *See id.*; *see also* Mot. at 6. With respect to Topic No. 4, VBF objects that "the value of the asset[s] that w[ere] allegedly misappropriated," is testimony that is properly directed at its damages expert. *See* Mot. at 6.

The Founder Defendants' only attempt at distinguishing VBF's cited authorities is a misreading of *E.E.O.C. v. Tex. Roadhouse, Inc.*, No. CIV.A. 11-11732-DJC, 2014 WL 4471521, at *3 (D. Mass. Sept. 9, 2014), in which they quote the court's discussion of another case rather than that court's actual holding. *See* Resp. at 4 n.2. In fact, under "Specific Rulings," the Texas Roadhouse court found that two deposition topics related to the calculation of damages were "unnecessary" in lieu of, inter

-11-

alia, "a deposition of the EEOC's expert on damages." 2014 WL 4471521 at *3-4.

Further, the Founder Defendants' citation to *Hanan v. Crete Carrier Corp.*, No. 3:19-CV-149-B, 2019 WL 5837950, at *1 (N.D. Tex. Nov. 6, 2019) is inapposite because VBF has not objected that any Topic seeks testimony protected by the attorney-client privilege or work-product doctrine. Unlike the defendant in *Hanan*, VBF is seeking protection from the need to prepare its 30(b)(6) witness(es) to testify as to legal conclusions regarding the causation of VBF's damages. *Compare* Mot. at 7 *to Hanan*, 2019 WL 5837950, at *1. In fact, Texas law requires expert testimony as to causation "when an issue involves matters beyond jurors' common understanding," which is likely applicable to many aspects of damages in the case, especially as to aquaculture metrics. *Mendez v. Tex.*, No. 3:14-CV-2034-L, 2015 WL 6468002, at *2 (N.D. Tex. Oct. 26, 2015) (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006)).

The Court should issue a protective order against the necessity of preparing VBF's witness(es) to testify as to its computation, calculation, valuation, and/or estimation of damages and the value of misappropriated assets, as well as causation testimony, because such testimony is not proper 30(b)(6) testimony except as to underlying facts. *See* Mot. at 5.

Dkt. No. 456 at 3-4.

The Court agrees that VBF was entitled and required to move for a protective order as to topics on which it wants to be relieved of the obligation to prepare its representative to testify and to have its representative be required to answer questions.

As the Court has explained, "[w]hen a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice must either move for a protective order regarding each topic or designate a person to testify regarding each topic"; "[f]ailing to appear and testify as to designated topics for a Rule 30(b)(6) deposition is not excused on the ground that the discovery sought was objectionable,

-12-

unless the party failing to act has a pending motion for a protective order under Rule 26(c)"; and "a pending motion for protective order only protects a party from designating a witness to appear and testify as to the particular topics addressed in the pending motion." *OrchestrateHR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2015 WL 1565716, at \*3 (N.D. Tex. Apr. 8, 2015) (cleaned up).

And "[a] party cannot fail to raise objections to Rule 30(b)(6) deposition notices, present a representative to testify on those topics, and then later raise objections to the scope or propriety of the topics." *OrchestrateHR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2015 WL 11120526, at \*2 (N.D. Tex. July 15, 2015).

Raising and preserving an objection to the form of a question or the nature of the answer sought by a question does not relieve a deponent from answering the question except in rare circumstances, based on Federal Rule of Civil Procedure 30's provisions that the Court has explained in a prior opinion in this case. *See VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-cv-764-X, 2021 WL 5176839, at \*10-\*11 (N.D. Tex. Nov. 8, 2021) ("And Rule 30(c)(2) provides only three situations in which a deponent may properly be instructed not to answer a question – 'only when necessary' (1) to preserve a privilege, (2) to enforce a limitation previously ordered by a court, or (3) to present a motion under Federal Rule of Civil Procedure 30(d)(3) to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. …. Because the plain language of Rule 30 is rather clear on what types of objections

-13-

counsel may make and when counsel may instruct a deponent not to answer a question, courts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection. However, if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner (i.e., in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), then it would be permissive to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3). The only ground for [a Rule 30(d)(3)] motion to limit or terminate the deposition is that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. And Rule 30(d)(3)(A) expressly limits the timing for a Rule 30(d)(3) motion: 'At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.'" (cleaned up)).

Otherwise, "[a]n objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." FED. R. CIV. P. 30(c)(2).

And the Court declines the Founder Defendants' invitation to declare that, if the Court finds that VBF has shown good cause to obtain a protective order against

-14-

requested discovery, the Court should, based on entering that order, also declare that VBF is precluded from introducing certain fact witness testimony or evidence at trial. This argument is at least premature, and, while Federal Rule of Civil Procedure 37 provides "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," FED. R. CIV. P. 37(b)(2)(A)(ii), as a sanction for disobeying a discovery order or (absent a protective order request) failing to provide information in response to, or failing to respond, to discovery requests, obtaining a Rule 26(c) protective order generally precludes, rather than warrants, such exclusionary sanctions

But the Court is not persuaded that Topic No. 2 requires VBF's corporate representative to give expert testimony or testify to legal conclusions or that Topic No. 4 requires VBF's corporate representative to give expert testimony.

Rather, as the Founder Defendants respond, Rule 30(b)(6) testimony regarding facts related to the cause of damages and specifically who and what caused VBF's damages are fair to ask of a corporate representative to obtain VBF's position on that matter – particularly where VBF's damages expert witness has submitted a report and has been deposed. *Accord Dennis*, 2017 WL 4778708, at *9 ("As the Court has previously concluded, a party cannot avoid discovery – whether by an interrogatory, a Rule 36 request, or Federal Rule of Civil Procedure 30(b)(6) deposition testimony – of its own views on a factual matter in dispute (or perhaps, in fact, not in dispute) simply because its view on that matter may be informed by consulting with its

retained experts. And the Court is not persuaded that the mere possibility that an expert report or expert witness's deposition may later adequately cover the same information is good cause for quashal or a protective order as to the Rule 30(b)(6) topic here." (cleaned up)).

The Court will grant a protective order only insofar as testimony under Topic No. 2(a) and 2(d) will be limited to who and what caused VBF's damages and who sustained the damages. And VBF's representative may defer to and testify that VBF adopts the conclusions, analysis, and testimony of its expert witness on any of these causation matters and on matters of the valuation of any damages or asserts. But, as the Founder Defendants contend, they are entitled to ask whether the damages identified by VBF's expert witness are the sole damages sought by VBF in this lawsuit and, if not, to ask more about any other damages that VBF seeks.

## II. Objections that Topic Nos. 1-2, 4-5, and 17-18 seek testimony regarding information not known to, or reasonably available to, VBF

- Topic No. 1: VBF's ownership, board member, and management structure from July 1, 2014 through April 1, 2021;

- Topic No. 5: Each VBF board member who approved or had knowledge of VBF's expenditure of funds set forth in Paragraphs 127-129 of the Complaint;

- Topic No. 17: Any documents or information VBF contends was provided to Alder Aqua, FishDish or their representatives prior to July 6, 2016 that was later relied upon by any VBF board member in making a decision; and,

- Topic No. 18: Any investigation, interest, due diligence, modeling, inquiry or review conducted into VBF on Alder Aqua, Ltd., FishDish and/or Alder Capital International, Ltd.'s behalf prior to July 6, 2016.

As to these topics, VBF contends that it

does not object to these topics to the extent they seek information or documents reasonably within VBF's knowledge or possession. To the extent that the above-listed topics seek testimony regarding facts that reach beyond the Third Amended Complaint ("TAC") [Dkt. 296] and seek information from VBF that is neither known nor reasonably available to VBF, however, VBF objects to these topics.

Under Rule 30(b)(6), VBF is only required to prepare its representative to testify about information that is "known or reasonably available" to VBF. *See* FED. R. CIV. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization."). When a deposition topic seeks "information within the control of third parties," this Court has properly sustained an objection and limited the deposition topic to information in the party's knowledge or that was provided to the party. *See Pauls v. The Prudential Ins. Co. of Am.*, No. 3:16-CV-2116-M-BN, 2016 WL 6397564, at *8 (N.D. Tex. Oct. 28, 2016); *see also Alvarado v. Air Sys. Components LP*, No. 3:19-CV-2057-N, 2022 WL 800731, at *5 (N.D. Tex. Mar. 15, 2022) (granting protective order where topic sought testimony regarding the knowledge of five individuals rather than the party itself). Here, Topic Nos. 1-2, 4-5, and 17-18 seek information not known to, or reasonably available to, VBF. Today, VBF is a non-operational entity with only two employees: (1) its Chief Executive Officer, who has only been with the company since June 2017 (after the occurrence of the vast majority of the misappropriations VBF alleges the Founders committed); and (ii) one staff member. Although VBF can prepare its corporate representative to testify as to the allegations in its TAC and information that has been disclosed to it in depositions and written discovery responses, it cannot reasonably prepare its corporate representative to testify regarding information beyond the TAC and what it has learned in depositions and written discovery responses. This is because the Founders almost exclusively ran VBF for the entire relevant time period and as alleged in its TAC, the Founders fraudulently concealed their misconduct. See TAC ¶¶ 196-400. Therefore, the two remaining employees at VBF, who were not privy to all of the Founders' misconduct, do not know all of the

documents, evidence, and information that may be relevant to the above topics, making VBF severely limited in its ability to prepare its representative with respect to these topics. Indeed, the witnesses from whom information beyond the TAC is reasonably available are now adverse parties to VBF in this litigation – the Founders themselves.

For example, Topic No. 1 seeks testimony regarding VBF's ownership, board member, and management structure during a period that includes two years when the Founders were the only owners, board members, and managers of the company – July 2014 to July 2016. App. 031; *see also* TAC ¶ 30. Topic No. 2 seeks documents and facts supporting VBF's damages, but as explained above, VBF's current management does not know all of the documents and evidence supporting its damages – indeed, the Founders have more knowledge than VBF's current employees regarding which documents and facts support VBF's damages.

Similarly, with respect to Topic No. 4, the Founder Defendants seek testimony regarding VBF's assets that were misappropriated, including the date of such appropriation and which VBF board members, if any, had knowledge of the misappropriations. App. 031. However, as alleged in the TAC, the Founders concealed these misappropriations, many of which predate VBF's current management. *See* TAC ¶¶ 196-400. Thus, to the extent Topic No. 4 seeks testimony from VBF beyond those facts that are alleged in the TAC and what VBF has learned in depositions and written discovery responses, they seek information regarding subject matters that are not known or reasonably available to VBF. The Founders are in a better position than VBF to account for all of the transfers of assets and stock that were misappropriated and who had knowledge of the same. Like Topic No. 4, Topic No. 5 improperly asks VBF to provide testimony on the knowledge of former board members. App. 031. Specifically, Topic No. 5 seeks testimony from VBF regarding former board members, who were members of the board between September 2014 and August 2017, regarding specific transactions identified in Paragraphs 127-129 of VBF's TAC. *Id.*; *see also* TAC ¶¶ 127-29. All but two transactions referenced in Paragraphs 127-129 of VBF's TAC occurred during or prior to August 2016 – nearly a year before VBF's only current executive began working for the company. *Id.*

Moreover, Topic Nos. 17 and 18 expressly seek testimony regarding VBF prior to July 6, 2016 – the period when the Founders were in control of VBF and that predates VBF's current management. App. 032; TAC ¶ 30. Further, Topic No. 18 seeks testimony about any investigations and due diligence third-party entities conducted into

-18-

VBF. App. 032. VBF does not object to this topic to the extent it only seeks testimony regarding these topics reasonably known or available to VBF. Otherwise, testimony on Topic No. 18 should be sought from those third-party entities regarding their investigations or due diligence reviews, not VBF.

Thus, because the testimony sought by Topic Nos. 1-2, 4-5, and 17-18 seek information not known or reasonably available to VBF, the Court should limit each Topic to testimony regarding information that is within VBF's knowledge, such as allegations described in VBF's TAC and what VBF has learned in depositions and written discovery responses. *See Pauls*, 2016 WL 6397564, at *8.

Dkt. No. 448 at 8-11.

The Founder Defendants respond that VBF

argues for protection from its corporate representative testifying about Topics 1, 2, 4, 5, 17, and 18, which relate to VBF's ownership, board members, and corporate structure; board approved expenditures of funds; and information provided to two parties that invested prior to their investment (as VBF is relying on this information to support its fraud claim). Motion at 8-11. VBF argues these topics seek testimony not known to VBF. Putting aside the incorrect factual statements made about VBF's knowledge, a motion for protection is not needed because, as this Court has noted, Rule 30(b)(6) only requires an entity to designate a witness to testify about "information known or reasonably available to the organization." *Fulbright v. Union Pacific Railroad Co.*, No. 3:20-CV-2392-BK, 2021 WL 3809103 at * 2 (N.D. Tex. 2021) (Horan, M.J.). To the extent that VBF "cannot access information held by third parties or does not know the information requested, it may testify as such." *Id.* at 3. During the meet and confer process, the Founders' counsel informed VBF that the Founders are only seeking information related to these six topics that is reasonably available to VBF. VBF therefore does not need a protective order.

Out of an abundance of caution, the Founders would note that VBF's contention related to what information it has available related to these topics is incorrect:

  • Topic 1 (VBF's ownership and board structure): VBF has corporate records that demonstrate the identity of shareholders, board members, and officers of VBF during all relevant time periods. VBF wholly fails to establish its own ownership and management structure are topics not known or easily accessible

to VBF. *See Quintel Tech. Ltd. v. Huawei Techs., Inc.*, No. 4:15-CV-307, 2017 WL 3712349, at *5 (E.D. Tex. June 12, 2017) (holding "Huawei China is obligated to prepare its designees to testify regarding the corporate structure and organizational responsibilities of Defendants and Huawei's subsidiaries and affiliate").

• Topic 2 (facts supporting VBF's damages): The fact that VBF contends it does not have information related to the damages it seeks in this case raises concerns about the validity of its claims and damages.

• Topic 4 (assets that were allegedly misappropriated by the Founders): VBF has asserted claims against the Founders for misappropriation and the Founders are entitled to the facts supporting such claims.

• Topic 5 (board member approval and knowledge): VBF has documents in its possession related to decisions and purchases approved by VBF's board. VBF also has the deposition testimony of several board members and access to talk with certain board members.

• Topics 17 and 18 (documents and information provided to Alder Aqua and Alder Capital (collectively, "Alder") and FishDish prior to their investment on July 7 2016): VBF has all emails sent by VBF during this timeframe and has access to the data room used by VBF during this time period (along with information showing what documents were accessed by Alder and FishDish representatives). Given that VBF has based its claims on what information was provided to third-parties during this time frame, its contention that this information is not available is disingenuous.

Because there is no dispute regarding the scope of Rule 30(b)(6), the Court should deny the request for protection.

Dkt. No. 454 at 5-7.

VBF replies that

[t]he Founder Defendants cite *Fulbright v. Union Pac. R.R. Co.*, No. 3:20-CV-2392-BK, 2021 WL 3809103, at *3 (N.D. Tex. June 29, 2021), for the proposition that VBF can testify that it does not know the information requested. Resp. at 6. But Topic Nos. 4-5 and 17-18 are more like the topic in *Pauls*, 2016 WL 6397564, at *8 for which the court sustained an objection that information sought was more properly

-20-

directed at third parties. In *Fulbright*, the topic related to the plaintiff's benefits during his employment with defendant, and the court overruled an objection regarding defendant's role in those benefits. See Fulbright, 2021 WL 3809103, at \*3. In *Pauls*, the objectionable topic sought testimony from an insurance company regarding "all medical exams given or caused to be given" to an individual. 2016 WL 6397564, at \*8. Like the insurance company that would not have control of information regarding the administration of any medical exams by other parties in *Pauls*, VBF does not have information about the individual knowledge of its independent board members (Topic Nos. 4-5 and 18) or Alder and FishDish (Topic No. 17). Further, just as the topics in *Pauls* were limited by the court to "information requested from or provided to [the insurance company] as a result of the relevant work by third parties," Topic Nos. 4-5 and 18 should be limited to information that VBF set forth in its TAC or has learned through discovery about the knowledge of its board members, Alder, and FishDish. *See id.* at \*8.

... 

Despite being provided with VBF's objections in January, conferencing on VBF's objections in February, and receiving a copy of VBF's Motion prior to its filing, the Founder Defendants refused to limit Topic Nos. 1-2, 4-5, and 17-18 to the information known to or reasonably available to VBF. The Founder Defendants now disingenuously assert that they "informed VBF that the Founders are only seeking information ... that is reasonably available to VBF." Resp. at 6. The Founder Defendants' counsel made clear during the meet and confer that they would ask questions about various board members' knowledge. Thus, the Founder Defendants and VBF are at odds as to what is known to or reasonably available to VBF. As stated in the Motion, what is known to or reasonably available to VBF is "those facts that are alleged in the TAC and what VBF has learned in depositions and written discovery responses," because the Founders concealed their misdeeds, many of which predated VBF's current management. Mot. at 10. And the Founder Defendants are aware that VBF is in the process of executing letters of request on former board members Terry Lyons and Gregg Sedun in Canada. *See* Dkt. Nos. 440-443. Thus, the knowledge of at least Lyons and Sedun cannot yet be reasonably available to VBF.

With respect to Topic No. 1, VBF can, and will, review its corporate records, including organizational charts and board meeting minutes, but because it was the Founders who exclusively managed VBF between July 2014 and July 2016, VBF is unable to testify as to the "management structure" the Founders' utilized on a day-to-day basis. (During the meet and confer process, the Founder Defendants

represented that they would seek only "high level" management structure information, but did not amend their Topic to reflect that limitation.) With respect to Topic No. 5, the Founder Defendants assert that VBF has "access to talk with certain board members," but this alone does not allow VBF to sufficiently prepare it witness(es) to testify as to the knowledge of "[e]ach board member," and, further, certain board members have refused VBF's attempts to obtain their testimony, necessitating letters of request. *See* Dkt. Nos. 440-443. Finally, without a protective order limiting Topic Nos. 17 and 18 to information in the TAC or obtained in written discovery or depositions, VBF's 30(b)(6) witness(es) will be without protection from questions about why individual board members made certain decisions (Topic No. 17) or questions asking VBF to step into the shoes of Alder Aqua, Alder Capital, or FishDish (Topic No. 18) to answer questions about due diligence conducted on their behalf. VBF should not be asked about the knowledge of specific individuals or other entities, and a protective order against these Topics is appropriate.

Rather than limit their Topics upon receipt of VBF's Motion, the Founder Defendants attempt to limit the Topics through their Response. For instance, the Founder Defendants characterize Topic Nos. 17 and 18 as seeking "documents and information provided to Alder Aqua and Alder Capital … and FishDish prior to their investment." Resp. at 6. But this characterization ignores that the Topics, as drafted and served, seek testimony regarding specific board member decision-making (Topic No. 17) and investigations and reviews of VBF conducted by other entities on behalf of Alder Aqua, Alder Capital, or FishDish (Topic No. 18). If Topic Nos. 17 and 18 were noticed as described by the Founder Defendants in their Response, VBF's need to seek relief as to those Topics could have been alleviated. Instead, the Founder Defendants have caused VBF to file a Motion, only to seemingly capitulate afterwards. VBF will, of course, accept the Founder Defendants' limitation of the scope of certain Topics at this stage, but would request the same be memorialized in this Court's order to avoid uncertainty.

Dkt. No. 456 at 2-3, 4-6 (footnote omitted).

As VBF persuasively argues in reply and requests that the Court order, the Court will grant a protective order that limits the scope of VBF's obligation to prepare for and present testimony on Topic Nos. 17 and 18 to "documents and information

provided to Alder Aqua and Alder Capital … and FishDish prior to their investment."

And the Court is persuaded that, insofar as Topic No. 4 seeks testimony on which VBF board members, if any, had knowledge of the alleged misappropriations. VBF's obligation to prepare for and present testimony on the portion of this topic regarding "the VBF board members who had knowledge of each alleged misappropriation" is limited to those facts that are alleged in the TAC and what VBF has learned in depositions and written discovery responses. And the Court limits VBF's obligation to prepare for and present testimony on Topic No. 1 is limited to those facts that are alleged in the TAC and what VBF has learned in depositions and written discovery responses and to VBF's review of its corporate records, including organizational charts and board meeting minutes.

As to Topic No. 2 (as limited in the prior section), VBF's obligation is to prepare its designee to the extent matters are reasonably available, whether from documents, past employees, or other sources. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-33 (5th Cir. 2006). If VBF, through those sources and what its current management knows or can reasonably discover, does not know or is not aware of all of the documents and evidence supporting its damages, VBF still will have fulfilled its obligation to prepare its representative if the representative is prepared to testify about information known or reasonably available to the organization.

As to Topic No. 5, the Court agrees with VBF that its access to talk with certain board members does not allow VBF to sufficiently prepare it witness(es) to testify as

to the knowledge of each board member. VBF's obligation to prepare for and present testimony on this topic is also limited to those facts that are alleged in the TAC and what VBF has learned in depositions and written discovery responses.

## III.  Objections that Topic Nos. 19 and 39 seek information that is irrelevant to the claims and defenses in this matter

- Topic No. 19: Any agreement between VBF and Alder Aqua, Ltd. and/or Alder Capital International, Ltd., including but not limited to the Series A Preferred Stock Purchase Agreement and all amendments and modifications thereto.

- Topic No. 39: The MC Consulting Agreement between [M Consult, LLC] and VBF, including but not limited to (a) the rights and obligations thereunder, (b) all amendments and modifications thereto, and (c) fees related to MC providing consulting services to VBF, as described in the MC Consulting Agreement.

VBF contends that these two topics "are not relevant to the claims and defenses in this matter" and explains that it

> objects to Topic No. 19 to the extent the Topic is not limited to the Series A Preferred Stock Purchase Agreement. Based on VBF's search of its document production database and review of deposition testimony, VBF is not aware of any agreement between VBF and Alder Aqua, Ltd. ("Alder Aqua") and/or Alder Capital International, Ltd. ("Alder Capital") other than the Series A Preferred Stock Purchase Agreement. (VBF is aware of agreements it had with Alder-affiliated entities that are not Alder Aqua or Alder Capital, but those agreements are beyond the scope of Topic No. 19.) Indeed, there are no other agreements between VBF and Alder Aqua or Alder Capital mentioned in the TAC or the Founder Defendants' Answer, Affirmative Defenses, and Original Counterclaims

-24-

[Dkt. 305] ("Answer"). Thus, there is no indication there are other agreements between VBF and Alder Aqua or Alder Capital that are relevant to the claims and defenses in this case. Therefore, Topic No. 19 should be limited to testimony regarding only the Series A Preferred Stock Purchase Agreement.

Likewise, Topic No. 39 seeks testimony regarding a consulting agreement between VBF and M Consult, LLC that was entered in or around January 2017. App. 033. This agreement, however, appears nowhere in the TAC or the Founder Defendants' Answer, thus there is no indication that it has any legitimate bearing on any claim or defense in this case.

VBF therefore respectfully requests the Court issue a protective order limiting Topic No. 19 to testimony regarding the Series A Preferred Stock Purchase Agreement and protecting VBF's corporate representative from testifying as to Topic No. 39.

Dkt. No. 448 at 11-12 (footnote omitted)

The Founder Defendants respond that

VBF seeks protection from VBF's corporate representative from testifying about agreements (if any) between VBF and Alder and any consulting agreement between VBF and M Consult LLC ("M Consult"). Motion at 11–12. VBF contends that certain information sought in these topics is not relevant.

Regarding agreements between VBF and Alder (which has been the sole shareholder of VBF since 2018), VBF contends that it is not aware of any agreements between VBF and Alder other than the Series A Preferred Stock Purchase Agreement. VBF therefore contends that the Court should limit Topic 19 to the Series A Stock Preferred Purchase Agreement because any other agreements would not be relevant. This argument should be rejected for two reasons. As a threshold matter, VBF's damages expert included in her damage model a $5.99 million long term note issued by Alder to VBF. *See* App. 002 (Ex. 1). Thus, VBF's statement about there being only one agreement between VBF and Alder is incorrect based on VBF's own expert's damage model.

In any event, VBF contends the Founders caused VBF to lose every dollar that was invested or lent to VBF (even for amounts brought in or lost after they left). The Founders have asserted as an affirmative defense that parties other than them, including Alder and its appointed shareholders, caused the company to fail. *See* Affirmative Defense 22 in Founders' Answer (Dkt. No. 305). The Founders therefore clearly are

entitled to information related to agreements between VBF and Alder (and how such agreements impacted VBF).

Regarding the consulting agreement between VBF and M Consult, this agreement was created to allow Dr. Otto Happel to assert control over the company. Dr. Happel was also the individual ultimately in charge of Alder and VBF's lender, Amstar Group, LLC ("Amstar"). Therefore, the consulting agreement between VBF and M Consult is relevant to the Founders' affirmative defenses regarding who controlled VBF and made decisions.

Dkt. No. 454 at 7-8.

VBF replies that

[t]he Founder Defendants attempt to rehabilitate the irrelevant portions of Topic No. 19 by identifying transactions included in VBF's expert report. Resp. at 7. However, the Founder Defendants' identification of transactions described in VBF's ledger as "long term notes payable" highlights the unspecific and vague nature of the Topic. If the Founder Defendants wanted VBF to prepare its 30(b)(6) witness(es) to testify about the transactions noted as "long term notes payable" in VBF's ledger, then they should have included that topic in the deposition notice.

Instead, the Founder Defendants improperly attempt to shoehorn these transactions into a Topic designed to elicit information regarding "[a]ny agreement between VBF and Alder Aqua, Ltd. and/or Alder Capital International, Ltd." The characterization of certain transactions in VBF's ledger does not equate to the existence of a written agreement between VBF and Alder, and if it did, then the Founder Defendants could have pointed to this particular issue when they received VBF's objections in January, when conferencing with VBF in February, or when VBF provided a copy of its Motion prior to filing. (After a reasonable search for a written agreement regarding the transactions referenced by the Founder Defendants, VBF remains unaware of any written agreement beyond the Series A Stock Purchase Agreement.) The Founder Defendants have failed to identify with painstaking specificity the Topics on which VBF should prepare its witness(es) to testify, and the Court should therefore limit Topic No. 19 to avoid the burden that such an overbroad Topic would impose. This circumstance demonstrates the necessity of the Motion – the Founder Defendants apparently believe that they can notice overbroad and generic topics and then later at the deposition, pick and choose what they meant the scope of each Topic to

-26-

actually entail. VBF cannot adequately prepare its 30(b)(6) witness(es) under such circumstances.

With respect to Topic No. 39, the Founder Defendants attempt to rewrite their affirmative defenses to include a reference to M Consult. *See* Resp. at 8. Without pointing to any specific affirmative defenses, the Founder Defendants assert that Topic No. 39 is relevant to "who controlled VBF and made decisions." *Id.* It appears that the Founder Defendants are referring to their Tenth Affirmative Defense; however, that defense asserts that VBF is bringing this lawsuit to allow certain individuals to "exert shadow management control over VBF," not that any consulting agreement allowed another party to control VBF prior to this lawsuit. *See* Founder Defendants Answer ¶ 530. Topic No. 39 is therefore irrelevant to any claim or defense in this matter and the Court should issue a protective order against the necessity of VBF preparing its witness(es) to testify on its subject matter.

Dkt. No. 456 at 6-8 (footnote omitted).

The Court is persuaded that, as written, Topic No. 19 fails to identify with painstaking specificity the matters on which VBF should prepare its witness(es) to testify, and, for the reasons that VBF asserts, the Court limits VBF's obligation to prepare for and present testimony on this topic to the Series A Preferred Stock Purchase Agreement.

But the Founder Defendants have persuasively demonstrated how the testimony sought through Topic No. 39 is relevant to their defenses, regardless of VBF's effort in reply to finely parse their Tenth Affirmative Defense, and the Court denies the request to issue a protective order against the necessity of VBF preparing its witness(es) to testify on this topic.

**IV.   Objections that Topic Nos. 4, 18-19, 24-25, and 37-39 are overly broad and unduly burdensome, and are thus not proportional to the needs of this case**

- Topic No. 24: VBF's efforts to restructure the Amstar secured debt.

- Topic No. 25: Any investor updates or business performance reports or communications sent by VBF to shareholders.

- Topic No. 37: Any actual or proposed loans or debt facilities offered by ING Bank to VBF, including any term sheets provided by ING and the decision by VBF to not finalize a loan with ING Bank.

- Topic No. 38: Happel's role in or relationship to VBF, whether formal or informal.

VBF contends that Topic Nos. 4, 18-19, 24-25, and 37-39 "are overly broad and unduly burdensome" and explains that,

> [f]irst, VBF objects to Topic No. 4 on the basis that is unduly burdensome for VBF to prepare its corporate representative to testify as to the facts underlying the misappropriation of VBF's assets beyond those alleged in the TAC and what VBF has learned in depositions and written discovery responses. For example, in order to prepare its corporate representative to provide testimony as to facts regarding VBF assets the Founders misappropriated that are not already known to VBF, down to the date of the misappropriation, VBF would need to run searches for relevant documents in its document production database, which currently holds over 871,671 produced documents. *See* App. 137 (N. Murphy Decl. ¶ 4). Preliminary searches for the following terms (without including families) resulted in tens of thousands of hits for documents potentially relevant to Topic No. 4, as shown below:
> - Expense! – 58,169 hits
> - Reimburs! – 17,826 hits
> - Asset! – 39,433 hits
> - Loan! – 36,523 hits
> - Bonus! – 11,136 hits

    ○ Payment! – 85,400 hits

*See id.* ¶ 6; App. 138.

   Even more overbroad and unduly burdensome is Topic No. 18, which potentially seeks testimony regarding matters not known or reasonably available to VBF. Topic No. 18 seeks testimony regarding any "investigation, interest, due diligence, modeling, inquiry, or review conducted into VBF," prior to July 6, 2016. App. 032. VBF therefore also objects to this Topic on the basis that it overbroad and would be unduly burdensome for VBF to prepare its corporate representative to testify regarding every single "inquiry," "interest," or "review" into VBF during the time period that the Founders controlled VBF. (VBF also objects to Topic No. 18 as vague as to what constitutes an "interest" or a "review.") If VBF is required to provide testimony regarding such an overbroad topic, VBF would likely have to spend significant time and expense searching for relevant documents, reviewing them, and preparing its corporate representative to testify regarding those documents. For example, preliminary searches for the following terms (without including families) resulted in tens of thousands of hits for documents potentially relevant to Topic No. 18:

    ○ Investigat! – 9,280 hits
    ○ "due diligence" – 9,191 hits
    ○ "DD" – 6,492 hits
    ○ Model! – 19,957 hits
    ○ Review* – 41,795 hits
    ○ Inquir! – 7,638 hits

*See* App. 138 (N. Murphy Dec. ¶ 7). Thus, preparing a witness to testify as to Topic Nos. 4 and 18, as written, imposes an undue burden on VBF that is disproportionate to the needs of this case. VBF can reasonably prepare its corporate witness to testify as to misappropriated assets, investigations, and due diligence conducted into VBF that VBF is aware of, i.e., allegations in the TAC and what it has learned in depositions and written discovery responses, but to require VBF to do anything beyond that would be unduly burdensome.

   Further, VBF objects to Topic No. 19 on the basis that it is overly broad and not appropriately limited in scope to specific agreements or allegations in the TAC such that VBF can reasonably prepare its corporate witness to testify to this topic without incurring significant burden and expense. Indeed, this topic seeks testimony regarding any agreements between VBF and certain Alder entities. App. 032. The time and expense that would be required for VBF to locate and analyze documents and communications relating to unidentified agreements with Alder and then prepare a witness to testify as to these agreements

is not proportional to the needs of this case. Preliminary searches for combinations "Alder Aqua, Ltd" or "Alder Capital International Ltd" and "VeroBlue Farms" and "Agreement" resulted in 3,128 documents. *See* App. 141 (D. Fentress Decl. ¶ 6). Further, searches of depositions transcripts in this matter only revealed references to the Series A Preferred Stock Purchase Agreement. *Id.* at ¶ 7; App. 141. VBF need only prepare its corporate representative to testify as to the agreements known to or reasonably available to VBF. *See Tiemann*, 2019 WL 919013, at *2-3 (30(b)(6) witnesses are not obligated to learn all information relating to a particular topic, but only such information "reasonably available" to the entity).

The same is true for Topic Nos. 24 and 37 which seek testimony about VBF's efforts to restructure debt with Alder and Amstar as well as "[a]ny actual or proposed loans or debt facilities offered by ING Bank to VBF." App. 032-033. ING Bank appears in neither VBF's TAC nor the Founder Defendants' Answer. Although Alder and Amstar are referenced in the Founder Defendants' Answer, they are referenced in relation to their affirmative defenses regarding their due diligence before lending to VBF. *See* Dkt. 305, ¶¶ 523, 529. That these topics would allow the Founder Defendants to explore matters not germane to any claims or defenses in this case indicates that a protective order is appropriate. *See Zenimax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-1849-P (BF), 2016 WL 11476858, at *4 (N.D. Tex. Jan. 27, 2016) (citing *Arters v. Univision Radio Broadcasting TX, LP*, No. 3:07-CV-957-D, 2009 WL 1313285, at *3 (N.D. Tex. May 12, 2009) ("[C]ourts should not allow parties to 'roam in the shadow zones of relevancy to explore matter which does not presently appear germane on the theory that it might conceivably become so."). The burden on VBF imposed by the time and expense to locate, review, and produce documents relating to VBF's debt restructuring efforts, and to prepare a witness to testify regarding the same, outweighs any potential benefit such information would have for any party in this case.

VBF objects to Topic No. 25 as overly broad and unduly burdensome because it is not appropriately limited in scope and seeks information beyond the claims and defenses at issue in this case. For example, Topic No. 25 seeks testimony regarding not just investor updates and business performance reports, but also unspecified "communications sent by VBF to shareholders." App. 032. It would be unduly burdensome to require VBF to prepare its corporate representative to testify regarding every single communication VBF sent to its shareholders. Indeed, not every communication VBF sent to its shareholders is necessarily relevant to the claims and defenses at

issue in this case, and this topic should be limited to those that are relevant and known or reasonably know to VBF. *See Krantz v. State Farm Fire & Cas. Co.*, No. CA 15-56-JJB-RLB, 2016 WL 320148, at *5 (M.D. La. Jan. 25, 2016) (limiting deposition topic seeking all reports issued to management to those reports related to claims at issue).

Moreover, VBF objects to Topic Nos. 38 and 39 as overly broad and unduly burdensome because neither Topic seeks information that is important to the resolution of this case and will require VBF to incur a substantial burden for no benefit. With respect to Topic No. 38, Dr. Happel's "role in VBF," sweeps too broadly to meet the requirement of identifying subject areas with "painstaking specificity." (The Founder Defendants' attempt to cast the widest net possible with respect to Dr. Happel presumably coincides with the Founder Defendants' repeated assertions regarding Dr. Happel's wealth. See App. 034-035 (May 6, 2022 Email from N. Nadler to K. Anwar); App. 142 (Oct. 7, 2020 Email from N. Nadler to R. Lang). The broad phrasing of Topic No. 38 could allow for questions regarding Dr. Happel's personal net worth, which is not only wholly irrelevant to VBF's claims regarding the Founders' concealments, fraudulent misrepresentations, misappropriations, and breaches of fiduciary duty alleged in the TAC, but is also not a topic that is reasonably within the knowledge of VBF.) The burden of identifying every role that Dr. Happel, (who was not a VBF board member, officer, or employee), played in VBF, whether "formal or informal," would far outweigh any potential benefit to any party in this matter. Indeed, Dr. Happel is mentioned only once in VBF's TAC as someone from whom the Founders' were attempting to conceal information, see TAC ¶ 378, and once in the Founder Defendants' Answer in relation to their incoherent affirmative defense that VBF is bringing this lawsuit in order "to enable its investors and shareholders, including Eva Ebstein, Jens Haarkoetter, Bjorn Thelander, Anders Wester, Norman McCowan, Dr. Otto Happel, and Alder Aqua, to exert shadow management control over VBF." See Answer ¶ 530. Further, Topic No. 39 seeks information about the "MC Consulting Agreement," which appears in neither the TAC or the Founder Defendants' Answer. Therefore, the burden of preparing a witness to testify as to any contractual relationship created by this document is outweighed by the lack of any benefit to any party when such testimony will serve little to no purpose in resolving the issues in this matter.

Topic Nos. 4, 18-19, 24-25 and 37-39 are therefore not proportional to the needs of the case. *See* FED. R. CIV. P. 26(b)(1) (proportionality measured in part by "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

discovery outweighs it likely benefit"). VBF respectfully requests the Court issue protective order against the necessity of VBF's corporate representative testifying as to Topic Nos. 4, 18, 19, and 25, except to the extent relevant information is known or reasonably available to VBF; and Nos. 24 and 37-39 in their entirety.

Dkt. No. 448 at 12-17 (cleaned up).

The Founder Defendants respond that

VBF asserts that Topics 4, 18-19, 24-25, and 37-39 are overbroad, unduly burdensome, and not proportional to the needs of the case. Motion at 12–17. The Court should reject this argument for three reasons.

First, VBF has not met its burden to show these requests are unduly burdensome and overbroad. As this Court has stated in *Dennis v. United States*, No. 3:16-cv-3148, 2017 WL 4778708 (N.D. Tex. 2017) (Horan, M.J.), VBF had the burden to show with evidence (including affidavits) how the requested depositions topics are overly broad and unduly burdensome….

The only declarations submitted by VBF listed the number of hits on certain search terms performed in VBF's database of over 700,000 documents that purportedly relate to three topics. See Dkt. No. 449 at App. 137-41. These declarations do not contain relevant information because (a) preparing a witness for a deposition is different than producing documents, (b) given the number of documents in the database, any search term is likely to bring back a significant number of documents, (c) the search terms used did not include connectors or time limitations (with searches such as "asset", "loan", "payment", and "expense" not being reasonable terms) – with the sole goal aimed at showing a large number of hits (i.e., this could have been done for any topic), and (d) VBF's counsel has already conducted significant document review in this case and clearly knows the key documents to provide to the witness. Thus, these declarations are not sufficient to meet VBF's burden to demonstrate that these topics are unduly burdensome and overbroad.

Second, VBF has filed an extremely long lawsuit and asserted claims seeking approximately 100 million dollars. The claims involve every decision that was made by the company from July 2014 to September 2018 because VBF contends that the Founders were the sole cause of VBF's failure. *See* TAC at ¶ 1 (Dkt. No. 296). The damage theory is even broader as VBF contends that it is entitled to recover from the

Founders every dollar that was invested into the company. See App. 004-05 (Ex. 2). Yet now VBF wants the Court to protect it from 8 topics that VBF claims will be too burdensome for VBF's corporate representative to learn. An analysis of overbreadth, undue burden, and proportionality with respect to protection from discovery is balanced against, inter alia, the issues at stake and the amount in controversy. *See Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015) (Horan, M.J.) (analyzing Rule 26 amendment and explaining the party resisting discovery still bears burden to come "forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

The Founders vehemently disagree with the entire substance and characterization of their conduct as alleged by VBF, but it cannot be disputed that the allegations, amount in controversy, and issues in this case are important and serious. More specifically, Topics 4, 18-19, 24-25, and 37-39 fall squarely within the factual and legal issues raised by VBF in this high-stakes lawsuit. In denying in part a motion for protective order as to 86 different corporate representative deposition topics, Magistrate Judge Stickney's discussion is compelling and worth quoting at length…. *Zenimax Media, Inc.*, 2016 WL 11476858, at *4 (emphasis added).

If 86 deposition topics arising out of a 200-paragraph complaint with 8 claims against three defendants were not too excessive or burdensome, then neither are the Founders' 39 topics arising out of VBF's 1,021 paragraph complaint with 23 claims.

Third, a motion for protection is not necessary because to the extent the topics are overly broad, the limitations of Rule 30(b)(6) itself provide VBF the necessary protection. VBF must prepare a deponent to testify about only "information known or reasonably available to the organization." *See Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*, 6:19-CV-00059-RWS, 2020 WL 6803258, at *3 (E.D. Tex. Sept. 18, 2020) (citing Fed. R. Civ. P. 30(b)(6)).

Finally, the topics listed by the Founders are proportional to the needs of the case and the request for protection is simply aimed at attempting to restrict discovery into claims and defenses asserted in this lawsuit:

1. Topic 4 (Alleged Misappropriation of Assets by the Founders):

VBF contends that it is unduly burdensome to prepare its corporate representative to testify as to the facts underlying any misappropriation of VBF's assets beyond those alleged in the TAC and what VBF has learned in discovery. This request for protection is not necessary. The Founders are entitled to know (a) the facts supporting the alleged misappropriations for which VBF seeks damages in this lawsuit and (b) that there are no other alleged misappropriations for which VBF is seeking damages. The Founders do not intend to ask questions related to misappropriations unknown to VBF (as those are not at issue in this case).

2. Topic 18: Investigation or Due Diligence Conducted into VBF by Alder and Fish Dish

VBF contends that it would be unduly burdensome to prepare its 30(b)(6) witness to testify regarding every single "inquiry", "interest", or "review" by all potential or actual investors into VBF while the Founders controlled VBF. But VBF's argument is based on a misstatement on the scope of Topic 18. Topic 18 is limited to the due diligence and investigation performed by two parties that actually invested into VBF (Alder and FishDish):

> Topic 18: Any investigation, interest, due diligence, modeling, inquiry or review conducted into VBF on Alder Aqua, Ltd., FishDish and/or Alder Capital International, Ltd.'s behalf prior to July 6, 2016.

VBF's theory of fraud is based on the premise that the Founders made certain misstatements to Alder and FishDish prior to July 7, 2016. *See generally*, TAC at § VII (Dkt. No 296). The Founders therefore clearly are entitled to ask VBF's corporate representative questions related to the due diligence, modeling, and review conducted by these parties (to the extent such information is within VBF's possession, custody or control). This topic also is directly relevant to the affirmative defenses asserted by the Founders. *See* Founders' Answer (Dkt. No. 305) at Third Affirmative Defense ("One or more of the actions alleged in VBF's Third Amended Complaint were . . . disclosed to VBF's lead, and later, majority investor, Alder Aqua, prior to its 2016 investment in VBF . . . .") and Ninth Affirmative Defense ("These actions were disclosed to VBF's lead, and later, majority investor, Alder Aqua, in due diligence prior to its investment in VBF in 2016"). VBF therefore is not entitled to a protective order.

3. Topic 19 (Agreements between VBF and Alder)

VBF argues that Topic 19 is unduly burdensome. But this argument is belied by its own contention that it is only aware of one agreement between Alder and VBF. *See* Motion at 11 ("VBF is not aware

of any agreement between VBF and Alder Aqua, Ltd. ('Alder Aqua') and/or Alder Capital International, Ltd. ('Alder Capital') other than the Series A Preferred Stock Purchase Agreement."). VBF therefore has failed to demonstrate that this topic is unduly burdensome. Additionally, VBF's own damages expert has contended that there was another agreement between VBF and Alder (and that VBF sustained 5.99 million in damages due to that agreement). *See* App. 004-05 (Ex. 2). The Founders therefore clearly are entitled to the information set forth in Topic 19.

4. Topics 24 and 37 (Efforts to restructure the Amstar debt and the actual or proposed loans offered by ING):

VBF contends that information related to the attempts to restructure the Amstar debt and the potential to obtain a loan with lower interest from ING is not relevant to any claims or defenses in this case. VBF therefore argues that these topics seek information not germane to this lawsuit, which necessitates a protective order.

VBF's argument is misplaced. Topics 24 and 37 relate directly to Affirmative Defense 22, which states that, "VBF's claims are barred, in whole or part, to the extent the VBF's alleged injuries were not caused, actually or proximately, or contributed to by any acts on the part of the Founder Defendants." Founders' Answer (Dkt. No. 305 at Affirmative Defense No. 22). VBF's board member, Ken Lockard, testified that VBF had the opportunity to replace the Amstar debt in 2017 with a loan from ING that had lower interest, but Alder and Dr. Happel refused to allow this to happen (which negatively impacted VBF because it could have saved significant costs since the interest rate would have been cut in half): .... App. 011-13 (Ex. 3 at 242:13-244:16).

Because these topics relate directly to an affirmative defense asserted by the Founders as to the cause of damages (and are supported by the testimony obtained in this case), the Court should deny the request for protection as to these topics not being proportional to the needs of the case.

5. Topic 25 (Investor updates or business performance reports or communications sent by VBF to shareholders):

VBF contends Topic 25 is unduly burdensome because it seeks information related to all communications sent to VBF's shareholders. VBF agues this topic should be limited to those communications that are relevant and reasonably known to VBF. The Founders only intend to ask questions related to communications relevant to their defenses or the claims asserted by VBF. Thus, it is not clear what protection VBF actually seeks. In any event, this topic relates directly to Affirmative Defense 3 asserted by the Founders. See Third Affirmative Defense in

Founders' Answer (Dkt. No. 305) ("One or more of the actions alleged in VBF's Third Amended Complaint were either: i) disclosed to VBF's lead, and later, majority investor, Alder Aqua, prior to its 2016 investment in VBF, and/or ii) presented to, approved by, and/o was ratified in writing by VBF's Board of Directors, representatives of Alder Acqua and/or representatives of VBF's primary lender Amstar Group."). Specifically, Topic 25 relates to the Founders' defense that Alder was informed and approved of many of the decisions for which VBF contends were not disclosed. The Court therefore should deny protection.

6. Topics 38 and 39 (Happel's and M Consult's relationship with VBF)

While VBF argues that Topics 38 and 39 do not relate to relevant issues, these topics relate directly to the affirmative defenses asserted by the Founders. These affirmative defenses include Affirmative Defense 10 (VBF is not bringing this suit to be compensated for damages inflicted by the Founders, but instead "to enable its investors and shareholders, including Eva Ebstein, Jens Haarkoetter, Bjorn Thelander, Anders Wester, Norman McCowan, Dr. Otto Happel, and Alder Aqua, to exert shadow management control over VBF.") (emphasis added); Affirmative Defense 22 ("VBF's claims are barred, in whole or part, to the extent the VBF's alleged injuries were not caused, actually or proximately, or contributed to by any acts on the part of the Founder Defendants."). Specifically, the Founders contend that Dr. Happel and representatives of his companies exerted significant control over VBF and caused the damages sustained by VBF. This is supported by the deposition testimony of VBF's independent board member, Ken Lockard, who testified that the decisions made by Alder and Dr. Happel contributed to the failure of VBF's business:

Q. Do you believe that some of the decisions made by Alder and Otto Happel contributed to the business failing?

…

A. I believe they were partially responsible.

App. 010 (Ex. 3 at 213:9-15).

For the reasons discussed above, the Founders are entitled to discovery into these topics and the attempts by VBF to limit such topics should be rejected. VBF has asserted an extremely broad set of claims and in seeking discovery it has contended that all information related to VBF (along with also seeking information related to the Founders personal finances and other businesses) is relevant. VBF should not be allowed to now limit discovery by arguing undue burden..

Dkt. No. 454 at 8-16.

VBF replies that

[t]he Founder Defendants attempt to shift their failure to "designate, with painstaking specificity, the particular subject areas" on which they request testimony onto VBF with a circular argument. *See Pauls*, 2016 WL 6397564, at *4. As VBF explained, in order to adequately prepare its 30(b)(6) witness(es) to provide testimony on the Topics, VBF needs to show any witness(es) key documents relevant to each Topic. Mot. at 14. This is particularly true given the information imbalance in this case caused by the Founder Defendants' exclusive control of VBF during most of the relevant period and their concealments, misrepresentations, and misappropriations during that time. The Founder Defendants complain that VBF "did not include connectors or time limitations" in its searches, see Resp. at 9, but the burdensome amount of documents that are potentially relevant to Topic Nos. 4 and 18 is the result of the each Topic's lack of specificity.

The Founder Defendants are correct that VBF's counsel has already undertaken the burden of reviewing a significant amount of documents and responding to discovery in this matter, which is why VBF has asked that Topic Nos. 4, 18-19, and 25 be limited to what VBF has learned in depositions and written discovery responses that it has prepared and received, or what is included in its TAC. The Founder Defendants' overly broad and burdensome Topics would have VBF incur the substantial additional burden of reviewing every document in its database that is potentially relevant to the Topics for the purpose of preparing a corporate representative.

The Founder Defendants cast aside the declarations and evidence that VBF set forth in its Motion and assert that VBF has not met its "burden to demonstrate that the[] topics are unduly burdensome and overbroad." Resp. at 9. In particular, the Founder Defendants rely on an irrelevant passage from *Zenimax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-1849-P (BF), 2016 WL 11476858, at *4 (N.D. Tex. Jan. 27, 2016) in which the court – after ordering the noticing party to amend nine deposition topics to "be further tailored to the issues in the lawsuit," – overruled the movant's "argument that the number of topics in the Rule 30(b)(6) notices [were] excessive[.]" *Id.* at *2-4. VBF has not objected that the Founder Defendants' thirty-nine topics are excessive; instead, VBF objected to the overboard and unduly burdensome nature of the Topics. Mot. at 12-17. Like the nine topics in *Zenimax*, the Topics addressed in the Motion should be "further tailored to the issues in this lawsuit." *Id.* at *3. That the circumstances of the Founder Defendants' misdeeds require a lengthy complaint to set forth claims with particularity

pursuant to Federal Rule of Civil Procedure 9(b) does not alleviate the requirement that the Founder Defendants "take care to designate, with painstaking specificity, the particular subject areas" for testimony. *Pauls*, 2016 WL 6397564, at *4.

In addressing each Topic that VBF argued was not proportional to the needs of this case, the Founder Defendants attempt to rewrite each Topic or mischaracterize VBF's arguments:

- Topic No. 4: The Founder Defendants attempt simplify this topic to "the facts supporting the alleged misappropriations for which VBF seeks damages in this lawsuit," (which is only one portion of the topic) and then add an unnoticed aspect, asserting they want to know "that there are no other alleged misappropriations for which VBF is seeking damages." Resp. at 11. The Court should not allow this expansion of Topic No. 4, and instead should limit it to the Founder Defendants' own description of the originally-noticed Topic.

- Topic No. 18: The Founder Defendants falsely assert that Topic No. 18 is limited to "due diligence and investigation performed by two parties that actually invested in VBF (Alder and FishDish)." Resp. at 11-12. It is not. By including those who may have conducted diligence on the behalf of Alder and FishDish, the Founder Defendants include an unknown number of parties with whom VBF could have communicated or to whom VBF could have provided information because VBF cannot know who may have been making inquiries or conducting reviews on behalf of Alder or FishDish. The Court should accordingly limit Topic No. 18.

- Topic No. 19: VBF should not have to conduct burdensome searches on its database and prepare its witness(es) on an unknown number of "agreements," thus Topic No. 19 should be limited to the Series A Preferred Stock Agreement. The Founder Defendants' failure to specify that they wanted VBF to prepare its witness(es) to testify about specific transactions prior to filing their Response should not require VBF to incur the undue burden of preparing for a vague Topic.

- Topic Nos. 24 and 37: The Founder Defendants attempt to rewrite their 22nd affirmative defense in arguing that Topic Nos. 24 and 37 are related to whether VBF's injuries "were not caused, actually or proximately, or contributed to by any acts on the part of the Founder Defendants." Resp. at 13. Asserting that VBF's injuries were the result of decisions about financing in their Response does not equate to the assertion that the Founder Defendants did not cause or contribute to VBF's injuries.

- Topic No. 25: As drafted, Topic No. 25 seeks "[a]ny investor updates or business performance reports or communications sent by VBF to shareholders," App. 033, but as described in their Response, Topic No. 25 "relates to the Founders' defense that Alder was informed and approved of many of the decisions for which VBF contends were not disclosed." Resp. at 15. The Court should limit Topic No. 25 to the Founder Defendants' own description of the same.
- Topic Nos. 38 and 39: The Founder Defendants falsely assert that VBF "argues that Topics 38 and 39 do not relate to relevant issues." Resp. at 15. VBF did not. In a footnote, VBF described the potential motivation for the Founder Defendants to notice a Topic that VBF argued was not proportional to the needs of the case. See Mot. at 16-17 & n.5. As VBF stated, the burden of preparing its witness(es) to testify as to Topic Nos. 38 and 39 would outweigh the benefits because "neither Topic seeks information that is important to the resolution of the [case.]" Mot. at 16. The Court should issue a protective order against each.

Dkt. No. 456 at 8-10.

The Court will grant a protective order that limits the scope of VBF's obligation to prepare for and present testimony on the portion of Topic No. 4 (as limited in part above) regarding "the date of such misappropriation" to those facts that are alleged in the TAC and what VBF has learned in depositions and written discovery responses, as part of VBF's obligation under Topic No. 4 to testify to the facts supporting the alleged misappropriations for which VBF seeks damages in this lawsuit and – what appears to be necessarily logically encompassed in defining the scope of that testimony that – that there are no other alleged misappropriations for which VBF is seeking damages.

The Court has already determined to grant a protective order that limits the scope of VBF's obligation to prepare for and present testimony on Topic No. 18 to

"documents and information provided to Alder Aqua and Alder Capital ... and FishDish prior to their investment" and now further limits it to due diligence and investigation performed by Alder and FishDish.

As to Topic No. 19, the Court has already determined to limit VBF's obligation to prepare for and present testimony on this topic to the Series A Preferred Stock Purchase Agreement.

But the Founder Defendants have persuasively demonstrated how the testimony sought through Topic Nos. 24, 37, 38, and 39 is relevant to their defenses, and the Court denies the request to issue a protective order against the necessity of VBF preparing its witness(es) to testify on these two topics.

The Court will grant a protective order that limits the scope of VBF's obligation to prepare for and present testimony on the portion of Topic No. 25 to facts relevant to the Founder Defendants' defense that Alder was informed and approved of many of the decisions for which VBF contends were not disclosed.

## V.   Award of Reasonable Expenses

VBF asserts in reply that,

[u]nder Federal Rule of Civil Procedure 37(a)(5)(A), in the event the Court grants VBF's Motion, the Court should award VBF its reasonable expenses and fees associated with bringing the same because the Founder Defendants' conduct necessitated this Motion, especially as to Topics that they agree to limit in their Response. See Fed. R. Civ. P. 37(a)(5)(A). The Founder Defendants refused to limit certain Topics until responding to this Motion, despite VBF providing its objections in writing in January, conferencing on them in February, and providing a copy of this Motion prior to filing the same. An award of fees is therefore appropriate.

Dkt. No. 456 at 10.

But, because the Court has granted in part and denied in part the MPO, the Court determines that, under Federal Rules of Civil Procedure 37(a)(5)(C) and 26(c)(3), considering all of the circumstances here, the parties will bear their own expenses, including attorneys' fees, in connection with VBF's MPO.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Plaintiff VeroBlue Farms USA, Inc.'s Expedited Motion for Protective Order from Certain of Founder Defendants' 30(b)(6) Deposition Notice Topics [Dkt. No. 488].

SO ORDERED.

DATED: May 23, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE