**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-X |
| | § | |
| LESLIE A. WULF, ET. AL, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF VEROBLUE FARMS USA INC.'S RESPONSE TO
DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY
OF BRANDI KLEINMAN [ECF No. 464, 492]**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT LEGAL STANDARD ................................................................... 2

III. BACKGROUND ................................................................................................ 3

     A.   Kleinman's Expert Qualifications.............................................................. 3

     B.   Kleinman's Opinions and Analyses in this Matter .................................... 3

IV.  ARGUMENT & AUTHORITIES ...................................................................... 5

     A.   Kleinman's opinions are relevant to VBF's claims, injuries, and damages
          and are reliable. ......................................................................................... 5

          1.   Kleinman's calculations and conclusions reflect VBF's damages. ........... 6

          2.   The Founders' fraudulent misrepresentations are not imputed to
               VBF................................................................................................... 8

          3.   VBF's damages amount need not be broken down by Founder or
               claim................................................................................................. 9

          4.   Kleinman's calculations and opinion appropriately evaluate the
               out-of-pocket damages caused to VBF by the Founders. ........................ 10

          5.   Kleinman may assume liability and opine about the extent of
               damages based on that assumption. ......................................................... 13

     B.   Kleinman is a financial expert qualified to opine about VBF's finances. ............ 13

          1.   Kleinman appropriately relies on her decades of experience and
               training. ............................................................................................ 14

          2.   Kleinman's opinions appropriately rely on other experts' analyses
               and conclusions.................................................................................. 15

     C.   Kleinman's financial opinions are reliable and will assist the trier of fact.......... 16

     D.   The Founders' other criticisms go to the weight to be assigned, rather than
          the admissibility of, Kleinman's opinions. ......................................................... 23

     E.   Driver's Notice of Joinder is improper and should not be considered. ................ 25

V.   CONCLUSION.................................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arcoren v. United States*, 929 F.2d 1235 (8th Cir. 1991) ................................................................2

*Askanase v. Fatjo*, 828 F. Supp. 465 (S.D. Tex. 1993)..................................................................9

*Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 7665773 (E.D. Tex. July 19, 2016) ........................................................................................................................16

*CBIF LP v. TGI Friday's Inc.*, 05-15-00157-CV, 2017 WL 1455407 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. Op)...........................................................9

*Century 21 Page One Realty v. Naghad*, 760 S.W.2d 305 (Tex. App.—Texarkana 1988, no writ)...........................................................................................................10

*City of Allen, Tex. v. Time Warner Cable Tex., LLC*, No. 6:19-CV-345-ADA-JCM, 2021 WL 8442040 (W.D. Tex. Oct. 5, 2021) ................................................22

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001) ..............................................10

*Curlee v. United Parcel Serv.*, 3:13-cv-00344-P, 2014 WL 11516719 (N.D. Tex. Dec. 12, 2014)......................................................................................................22

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................................................2

*DSC Comm'ns Corp. v. Next Level Comm'ns*, 107 F.3d 322 (5th Cir. 1997) ..............................10

*ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015 (S.D. Tex. Apr. 19, 2018) ......................................................................13

*F.D.I.C. v. Nathan*, 804 F. Supp. 888 (S.D. Tex. 1992) ..............................................................19

*Floyd v. Hefner*, 556 F. Supp. 2d 617 (S.D. Tex. 2008)..............................................................12

*Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495588 (W.D. Tex. Oct. 6, 2004) .....................................................................17

*Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757 (Tex. 2003).........................................10

*Grinnell Mut. Reinsurance Co. v. Jungling,* 654 N.W.2d 530 (Iowa 2002).................................10

*Gutierrez v. Excel Corp.*, 106 F.3d 683 (5th Cir. 1997) ..............................................................13

*Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV. A. H 07-3973, 2008 WL 5273713 (S.D. Tex. Dec. 17, 2008) .....................................................................14

*GWTP Investments, L.P. v. SES Americom, Inc.*, Civ. A. No. 3:04-CV-1383-L, 2007 WL 7630459 (N.D. Tex. Aug. 3, 2007) ................................................................15, 20

*Huss v. Gayden*, 571 F.3d 442 (5th Cir. 2009) ...............................................................15

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) ...................................2

*In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231 (Bankr. S.D.N.Y. 2008) ........................9

*In re BP P.L.C. Securities Litig.*, MDL No. 4:10-MD-2185, 2016 WL 3090779 (S.D. Tex. May 31, 2016) ...............................................................................................22

*In re Inv'rs Funding Corp. of New York Sec. Litig.*, 523 F. Supp. 533 (S.D.N.Y. 1980) ...........................................................................................................................6

*In re Latin Inv. Corp.,* 168 B.R. 1 (Bankr. D.D.C. 1993) ................................................6

*In re Safety Int'l*, 775 F.2d 660 (5th Cir. 1985) ..............................................................8

*In re Seven Seas Petroleum, Inc.,* 522 F.3d 575 (5th Cir. 2008) .....................................8

*In re Sunpoint Sec., Inc.,* 377 B.R. 513 (Bankr. E.D. Tex. 2007).....................................8

*In re W. World Funding, Inc.*, 52 B.R. 743 (Bankr. D. Nev. 1985) *aff'd in part, rev'd in part on other grounds sub nom. Buchanan v. Henderson*, 131 B.R. 859 (D. Nev. 1990), *rev'd on other grounds*, 985 F.2d 1021 (9th Cir. 1993) ......................19

*In the Matter of Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir. 1988) ...............21

*Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377 (5th Cir. 2017)...........................23

*Jones v. Harley-Davidson, Inc.*, No. 2:14-CV-694-RWS-RSP, 2016 WL 5242993 (E.D. Tex. Sept. 22, 2016) ...........................................................................................16

*Koenig v. Beekmans*, No. 5:15-CV-0822-OLG, 2017 WL 7732833 (W.D. Tex. Aug. 16, 2017) .............................................................................................................16

*Lewis v. Knutson*, 699 F.2d 230 (5th Cir. 1983) ............................................................7

*LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450 (5th Cir. 2011)..............................................................................................................12

*Matter of Lamar Haddox Contractor*, 40 F.3d 118 (5th Cir. 1994) .............................20

*Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814 (10th Cir. 2010)................15

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Smith Tank & Steel, Inc.*, Civ. Action No. 3:11-CV-00830, 2014 WL 5794952 (M.D. La. Nov. 6, 2014) ............................16

*Nova Consulting Group, Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727 (5th Cir. 2008) ........................................................................................................2

*Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776 (N.D. Tex. 2013) ..................................15

*Reilly v. Anderson*, 727 N.W.2d 102 (Iowa 2006) ........................................................................10

*Reneker v. Offill*, Civ. A. No. 3:08-CV1394, 2012 WL 2158733 (N.D. Tex. June 14, 2012) .......................................................................................................................9

*Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009) ...........................................................................................................................8

*Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096 (8th Cir. 2006) ................................................2

*Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ..............................................................2, 13, 20, 23

*Rodriguez-Rodriguez v. Big Bird Tree Serv., Inc.*, No. 3:15-CV-3815-L, 2017 WL 1047576 (N.D. Tex. Mar. 20, 2017) ............................................................................25

*Roil Energy, LLC. v. Edington*, 195 Wash. App. 1030 (2016) ......................................................12

*Salinas v. State Farm Fire & Cas. Co.*, No. CIV. A. B-10-194, 2012 WL 5187996 (S.D. Tex. Feb. 23, 2012) .....................................................................................14

*Sawyer v. Fitts,* 630 S.W.2d 872 (Tex. App.—Fort Worth 1982, no writ) ....................................12

*Schacht v. Brown*, 711 F.2d 1343 (7th Cir. 1983) ..........................................................................9

*Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ..................................................................................................11, 12

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546 (5th Cir. 1996) ...........................................................................................................................22

*Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427 (5th Cir. 2013) ..............................................18

*Stevens v. Lowder*, 643 F.2d 1078 (5th Cir. 1981) ..........................................................................6

*Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623 (S.D. Tex. 2009) ...................................................................................................14

*Talbert v. City of Chicago*, 236 F.R.D. 415 (N.D. Ill. 2006) ........................................................22

*Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848 (N.D. Tex. July 31, 2020) .........................................................................................7, 9

*Tesco Corp. v. Weatherford Int'l Inc.*, 750 F. Supp. 2d 780 (S.D. Tex. 2010) ............................14

*Tompkins v. Cyr*, 202 F.3d 770 (5th Cir. 2000) ...............................................................10

*Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566 (E.D. Pa. 2004)................................17

*U.S. v. M/Y Galactica Star*, 13 F.4th 448 (5th Cir. 2021)...........................................7, 18

*United States v. 14.38 Acres of Land, More or Less, situated in Leflore Cnty., Miss.*, 80 F.3d 1074 (5th Cir. 1996)....................................................................................2

*United States v. Hicks*, 389 F.3d 514 (5th Cir. 2004) ...................................................14

*United States v. Wen Chyu Liu*, 716 F.3d 159 (5th Cir. 2013) ....................................15

*Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867 (5th Cir. 2013) ..................................12

*Wellshire Fin. Servs., LLC v. TMX Fin.*, No. CV H-17-2786, 2019 WL 1177728 (S.D. Tex. Feb. 5, 2019)................................................................................................16

**Statutes and Constitutional Provisions**

11 U.S.C. § 101 ...............................................................................................................20

Iowa Code § 684.8 ..........................................................................................................18

Tex. Bus. & Comm. Code § 24.003.................................................................................20

Tex. Bus. & Comm. Code § 24.009.................................................................................18

**Rules**

Fed. R. Civ. P. 26............................................................................................................13

Fed. R. of Evid. 702 ................................................................................................2, 14, 15

Plaintiff VeroBlue Farms USA, Inc. ("VBF") submits this Response in opposition to Defendants Leslie A. Wulf's ("Wulf"), Bruce A. Hall's ("Hall"), James Rea's ("James Rea"), and John E. Rea's ("Ted Rea") Motion to Exclude Expert Testimony of Brandi Kleinman [ECF No. 492] ("Motion") and Defendant Keith Driver's ("Driver") Notice of Joinder in the Motion [ECF No. 464].[1] Wulf, Hall, James Rea, Ted Rea, and Driver are collectively referred to as the "Founders."

## I.  INTRODUCTION

The Founders seek to exclude VBF's financial expert Brandi Kleinman ("Kleinman") from providing any testimony in this case. But their entire Motion mischaracterizes her report, her calculations, and the relevant legal standard. At its core, the Motion rehashes legal arguments the Founders already made and lost at the motion to dismiss stage, and the Founders' criticisms of Kleinman's expert opinions go to the potential weight they should be afforded by the jury, not to their admissibility. Kleinman is a Certified Public Accountant with a designation of Certified in Financial Forensics form the American Institute of Certified Public Accountants[2] who is qualified as a financial and damages expert. She has been retained as a testifying expert in these areas many times and (unlike the Founders' financial expert, Gary Durham), and has never been excluded by a court in whole or in part.[3] As explained below, her opinions are reliable and relevant to the claims asserted by VBF; she appropriately relies on data and evidence, as well as on other expert opinions, to support her conclusions; and her testimony will assist the trier of fact in understanding the

---

[1] Driver improperly seeks to join the Founders' Motion via a one-page "Notice" that he filed without leave of court, before the Founders' Motion was even filed, and without conferring with VBF. It should not be considered by this Court. *See* Section E, *infra*.

[2] VBF RESP. APP. 018, Amended Expert Report of Brandi Kleinman, dated October 18, 2021 ("Amended Kleinman Report") at 3 ¶ 5 and Appendix A.

[3] VBF RESP. APP. 667-673, Kleinman Dep. at 12:11 to 18:19; VBF RESP. APP. 820, Durham Dep. at 21:23-25.

complex financial fraud and breaches of fiduciary duty that inflicted more than $90 million in damages on VBF. The Motion should be denied.

## II.  RELEVANT LEGAL STANDARD

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[4]

It is a rule of "admissibility rather than exclusion."[5] When an expert's methodology is sound, and the evidence relied upon is sufficiently tied to the facts, disputes about the degree of relevance or accuracy go to the testimony's weight, not its admissibility.[6] "[T]he rejection of expert testimony is the exception rather than the rule."[7] Furthermore, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[8] "[I]t is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony."[9]

---

[4] FED. R. EVID. 702.

[5] *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991).

[6] *Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553 at *7 (E.D. Tex. Apr. 10, 2017) ("'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration.'") (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) and *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012)).

[7] *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quoting FED. R. EVID. 702 Adv. Comm. Note ¶ 6 (2000)).

[8] *United States v. 14.38 Acres of Land, More or Less, situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996).

[9] *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010); *see also Nova Consulting Group, Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 733 (5th Cir. 2008); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony") (internal quotations omitted).

### III. BACKGROUND

**A.   Kleinman's Expert Qualifications**

Kleinman is a Certified Public Accountant and Certified Financial Forensic Accountant.[10] She has over twenty years of general finance, accounting, and consulting experience, including in providing forensic accounting and litigation support services.[11] She specializes in developing and analyzing damage claims, conducting fraud and forensic accounting investigations, and evaluating complex data sets involved in financial misrepresentation, tortious interference, fraud, and breach of contract claims.[12] Kleinman has developed and analyzed loss calculations under a variety of damages theories[13] across many industries, including the agribusiness, construction, real estate, high-tech, energy, manufacturing, and telecommunications industries, among others.[14] Neither she nor any of her opinions have ever been stricken or excluded by a court.[15]

**B.   Kleinman's Opinions and Analyses in this Matter**

Kleinman's opinions in this case relate to two measures of damages to VBF, as well as an analysis of the Founders' overstatement of EBITDA and VBF's overall financial condition throughout the relevant time period.[16] The first measure of damages on which she opines is VBF's losses due to the Founders' devaluation and waste of VBF's assets, which Kleinman concludes are at least $93,076,564.[17] VBF alleges that the Founders' misconduct devalued and wasted all of

---

[10] VBF RESP. APP. 018, Amended Kleinman Report at 3 ¶ 5.
[11] VBF RESP. APP. 018, Amended Kleinman Report at 3 ¶¶ 5-7.
[12] VBF RESP. APP. 018-19, Amended Kleinman Report at 3-4 ¶ 7.
[13] VBF RESP. APP. 019, Amended Kleinman Report at 4 ¶ 8.
[14] VBF RESP. APP. 018-19, Amended Kleinman Report at 3-4 ¶ 7.
[15] VBF RESP. APP. 667-673, Kleinman Dep. at 12:11 to 18:19.
[16] VBF RESP. APP. 022; 038-39; 091; 107-08, Amended Kleinman Report at 7 ¶ 10; 23-24 ¶ 59 and Table 10; 76 ¶¶ 187-189 and Table 38; and 92-93 ¶¶ 244-247 and Tables 43 and 44.
[17] *See* VBF RESP. APP. 038-39; 092; 108, Amended Kleinman Report at 23-24 ¶¶ 57 and Table 10; 77 ¶¶ 190-191 and Table 39; and 93 ¶ 245 (citing in Tables 11, 15, 16, and 18 and Section VII.C).

VBF's assets, ultimately resulting in VBF's filing for Chapter 11 Bankruptcy on September 21, 2018.[18] Kleinman opines that if VBF is correct, the Founders wasted all of VBF's assets—which is reflected by the total debt and equity taken in by VBF that became VBF's assets.[19] That amount is offset by the value received for those assets, which Kleinman opines is reflected in the $10 million that VBF received for the sale of its remaining assets (other than this lawsuit) in a transaction with third party Natural Shrimp following the bankruptcy.[20] The second measure of damages is specifically-identified misappropriations of certain of VBF's assets for the personal benefit of the Founders in the amount of at least $9,026,004.[21] Kleinman also opines that VBF's EBITDA while under the control of the Founders was artificially inflated and misrepresented the actual financial data and position of the company and that VBF was insolvent from at least 2014.[22]

To render her opinions, Kleinman conducted a forensic accounting of VBF's books and records (including VBF's QuickBooks and NetSuite data, which is financial management software used by many businesses) to identify transactions that improperly wasted VBF's assets and/or diverted money from VBF to the Founders, entities they owned or controlled, and their family members or close friends.[23] As part of that analysis, Kleinman created a summary document titled

---

[18] *See generally* Third Am. Compl. Dkt. No. 296; *see also* VBF RESP. APP. 058, Amended Kleinman Report at 43 ¶ 101.

[19] VBF RESP. APP. 017, Amended Kleinman Report at 2, ¶ 2(b) ("The Founders caused the devaluation and waste of VBF's assets totaling $93,076,564, which represents what I have identified as the total debt and equity investment in VBF."); *see also* VBF RESP. APP. 833-34, Durham Dep. at 123:15-124:8 (Defendants' expert agrees, from accounting standpoint, when company takes an investment it becomes an asset of the company).

[20] VBF RESP. APP. 017; 108, Amended Kleinman Report at 2, ¶ 2(d); 93 ¶ 247.

[21] VBF RESP. APP. 017; 038; 107-08, Amended Kleinman Report at 2, ¶ 2(c); 23 ¶ 58 and Table 9; 92-93 ¶¶ 244, 246 and Table 43.

[22] VBF RESP. APP. 018; 091-92, Amended Kleinman Report at 7 ¶ 10; 76 ¶¶ 187-189 and Table 38; 77 ¶ 190.

[23] VBF RESP. APP. 018-19; 029-30, Amended Kleinman Report at 7-8 ¶¶ 10-12; 14-15 ¶¶ 26-29.

"VBF Transaction Detail" from the QuickBooks files, the NetSuite general ledger, and the 2018 detailed transaction ledger that were produced by VBF.[24] The VBF Transaction Detail contains a listing of every accounting transaction that was recorded in the QuickBooks files, the NetSuite general ledger, or the 2018 detailed transaction ledger that were produced by VBF.[25] Kleinman exported detailed transaction information and reports, including balance sheets, directly out of the QuickBooks system that was used by all VBF entities as part of her forensic accounting analysis.[26] Kleinman also reviewed multiple financial models created by the Founders.[27]

There is nothing unusual or improper about the analyses conducted by Kleinman. Her conclusions are based on her examination of VBF's financial data, her extensive experience as a CPA and forensic accountant, presentations and models created by the Founders, conclusions of other experts (who have not been challenged by the Founders), and evidence indicating those presentations and models were false and based on false data—including expert conclusions solicited by the Founders themselves. She relied on standard types of data and evidence, and relied on actual statements and evidence adduced from discovery in this case.

## IV. ARGUMENT & AUTHORITIES

**A.   Kleinman's opinions are relevant to VBF's claims, injuries, and damages and are reliable.**

The Motion dedicates significant time to rehashing the Founders' repeated complaints about the law applicable to VBF's claims. This approach takes several forms, including arguments that Kleinman's opinions are not relevant (Mot. at 8-16), that she improperly assigns investor harm

---

[24] VBF RESP. APP. 007, Declaration of B. Kleinman ("Kleinman Dec.") at ¶¶ 8-10.
[25] VBF RESP. APP. 007, Kleinman Dec. at ¶¶ 8-10.
[26] VBF RESP. APP. 007, Kleinman Dec. at ¶ 11.
[27] VBF RESP. APP. 008, Kleinman Dec. at ¶¶ 13-16; VBF RESP. APP. 061-64, Amended Kleinman report at 46-49 ¶¶ 109-114 and Tables 20 and 21.

to VBF's damages (Mot. at 8-10), and that she does not sufficiently parse the individual liability of the co-conspirator group of Founders (Mot. at 11-16). None is a basis to exclude Kleinman's opinions.

### 1.    Kleinman's calculations and conclusions reflect VBF's damages.

The Founders claim Kleinman's report is irrelevant because, according to them, the $93 million in waste and devaluation damages in the Amended Kleinman Report were suffered by VBF's investors and lenders, not VBF.[28] This argument is a re-hash of the standing argument the Founders made, and lost, in their motion to dismiss. The Court has already recognized the general rule, under both Texas and Iowa law, that a "corporation may sue its directors for mismanagement" and specifically found that "VeroBlue has standing to contest the waste of its corporate assets."[29] VBF has standing to recover damages for the Founders' mismanagement and waste and misappropriation of its corporate assets, including claims of breach of fiduciary duty and fraud.[30]

This is exactly what Kleinman evaluated—VBF's own lost assets and value of the company.[31] In order to make these calculations, Kleinman had to look at VBF's assets, which

---

[28] *See* Mot. at 9 ("If $93,076,564 was lost, it was lost by VBF's investors and lenders and they are not parties here.").

[29] Dkt. 291 at 2, 19-20 (June 5, 2020 Order).

[30] *See Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981) (finding alleged injuries for "breach of a confidential relationship with the Directors and [the corporation]; a conspiracy to destroy [the corporation] and acquire its assets; and fraud in the purchase of [the corporation's] assets" were "injury directly to the corporation"); *see also In re Latin Inv. Corp.,* 168 B.R. 1, 5 (Bankr. D.D.C. 1993) (rejecting defendants' argument that "mismanagement of the corporation and misuse of corporate assets … are bottomed on fraud on the individual investors."); *In re Inv'rs Funding Corp. of New York Sec. Litig.*, 523 F. Supp. 533, 541 (S.D.N.Y. 1980) (holding that "any damage suffered by IFC as a result of mismanagement of the proceeds of sales of securities cannot be the basis of a federal securities laws claim" by the investors of the company).

[31] *E.g.*, VBF RESP. APP. 016; 017; 108, Amended Kleinman Report at 1 ¶ 1 ("I have been asked to quantify damages suffered by VBF as a result of the alleged wrongful conduct of the Founders as outlined in VBF's Third Amended Complaint."); 2 ¶¶ 2(b-d) (referring to "Founders caused devaluation and waste of VBF's assets," "Founders' self-dealing and misappropriation of VBF's stock, cash, and other assets [that] resulted in direct losses," and "VBF's total damages caused by

necessarily included money taken in from investments and loans,[32] but that analysis does not transform VBF's lost assets into third party damages. Once the company took in funds from the investors, those funds became VBF's assets.[33] And when the Founders wasted and devalued those assets, damage was done to VBF.

It is irrelevant whether VBF's investors and lenders also were injured by the Founders' conduct because it does not preclude or affect the fact that VBF itself was injured by the loss of VBF's own assets and property at the hands of the Founders.[34] When a corporation's officers intentionally mismanage and misuse funds deposited by investors to their own personal benefit, the corporation may maintain a cause of action against those directors regardless of any injury to the investors.[35] VBF is legally entitled to seek the damages for the harm to and loss of its assets

---

the Founders."); 93 ¶¶ 245-247.  Defendants' expert agreed at his deposition that certain types of transactions that are part of Kleinman's opinion would not have provided value to a company or could be damages to a company.  *See* VBF RESP. APP. 823-32, Durham Dep. at 109:5-110:14, 112:4-116:8, 120:23-122:15 (Defendants' expert agrees it is possible for certain expenditures at issue here to not provide value to and harm VBF)

[32] *See* VBF RESP. APP. 682-83; 724-25, Kleinman Dep. 107:25-108:8; 257:25-258:15 (noting she did not tie damages she assessed to specific investments, but instead concluded that there were "wasted expenditures and money misappropriated, and VBF suffered as a result")); VBF RESP. APP. 017; 029-30, Amended Kleinman Report at 2 ¶ 2(b) ("The Founders caused the devaluation and waste of VBF's assets totaling $93,076,564, which represents what I have identified as the total debt and equity investment in VBF."); 14-15 ¶¶ 26-28 ("After VBF received approximately $85.81 million in debt and equity investments from Corporate Investors, the Founders continued to expend funds on operations and wasted and misappropriated VBF's stock, cash, and other assets.").

[33] *See U.S. v. M/Y Galactica Star*, 13 F.4th 448, 457 (5th Cir. 2021) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.... An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets....").

[34] Defendants' own expert agrees that harm to investors or creditors does not mean there is not harm to the company also. VBF RESP. APP. 836-37, Durham Dep. 131:8-132:5.

[35] *See Lewis v. Knutson*, 699 F.2d 230, 237-38 (5th Cir. 1983) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)) ("When an officer, director, or controlling shareholder breaches a fiduciary duty to the corporation, the shareholder has 'no standing to bring [a] civil action at law against faithless directors and managers,' because the corporation and not the shareholder suffers the injury."); *Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848 at *3 (N.D.

based on the Founders' conduct, regardless of who else may also be able to bring claims or seek damages.[36]  Kleinman's opinions are directly relevant to the claims put forward by VBF in this case and the damages VBF is legally entitled to seek.

### 2.   The Founders' fraudulent misrepresentations are not imputed to VBF.

The Founders also assert that Kleinman's opinions must be excluded because they were "at all times acting on behalf of VBF when the alleged fraud occurred" and thus equity precludes VBF from recovering as a beneficiary of "ill-gotten gains." Mot. at 13-14.[37] Here, too, the Founders' issue is with the law, not Kleinman's opinions, and they are wrong about the law.

The rule of imputation "loses its applicability when the agent is acting fraudulently toward his principal. In that situation, the agent's knowledge is not binding on the principal and one who avails himself of the fraudulent services of the agent cannot claim that the agent's acts or knowledge bind the defrauded principal."[38] "[I]f the agent is acting adversely to the corporation, the corporation may not be bound by the agent's activity or representation."[39] "Courts have refused

---

Tex. July 31, 2020) (denying a motion to dismiss claims brought by receiver on behalf of the company to redress the aiding and abetting of breaches of fiduciary duty by corporation's principals while acknowledging simultaneous SEC action against corporation's principals on behalf of investors); *Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 804134 at *6 (N.D. Tex. Mar. 26, 2009) (holding receiver had standing, on behalf of entities, to bring a breach of fiduciary duty claim to recover professional fees that the entities paid to the defendant).

[36] *In re Seven Seas Petroleum, Inc.,* 522 F.3d 575, 587 (5th Cir. 2008) ("But the bondholders' claims and the estate's claims are not mutually exclusive: there is nothing illogical or contradictory about saying that Chesapeake might have inflicted direct injuries on both the bondholders and Seven Seas during the course of dealings that form the backdrop of both sets of claims.").

[37] Founders' reliance on *In re Safety Int'l*, 775 F.2d 660 (5th Cir. 1985) is misplaced as it does not stand for the proposition that all transactions involving directors are automatically ratified by the corporation. In that case, a trustee sued two directors and the only two shareholders for usurping a corporate opportunity for themselves. The Court found that the usurpation was ratified after specifically finding that (1) the "challenged transaction did not cause" the company's subsequent bankruptcy; and (2) "the bankruptcy court specifically stated that no fraud was involved." Here, VBF alleges fraud and that the self-dealing and fraudulent transactions caused VBF's bankruptcy.

[38] *In re Sunpoint Sec., Inc.,* 377 B.R. 513, 563 (Bankr. E.D. Tex. 2007).

[39] *Id.*

to impute the knowledge of principals to controlled entities where the officers 'allegedly filled their own pockets while fraudulently extending the life of the institution they continued to milk' and where they 'systematically looted [the company] of its most profitable and least risky businesses as well as millions of dollars in income[.]'"[40]

Further, the allegations and evidence, including that considered by Kleinman in reaching her conclusions, establish VBF was injured by, and did not benefit from, the Founders' fraudulent behavior.[41] Where there is a far-reaching scheme to use fraudulent means to maintain an insolvent company in existence beyond when it should remain in existence, there is no benefit to the company.[42] "[T]he fact that [a company's] existence may have been artificially prolonged pales in comparison with the real damage allegedly inflicted by the diminution of its assets and income."[43] There is no basis to exclude Kleinman's opinions on this ground.

### 3.   VBF's damages amount need not be broken down by Founder or claim.

The Founders also criticize Kleinman for not tying specific damages to specific defendants, arguing that it "results in each defendant being liable for the same amount of damages regardless of a defendant's involvement in the alleged misconduct." Mot. at 11.  But the Founders are wrong about the law.  If found to be joint tortfeasors who caused indivisible injury to VBF, the Founders

---

[40] *Taylor*, 2020 WL 4432848 at *3 (quoting *Askanase v. Fatjo*, 828 F. Supp. 465, 471 (S.D. Tex. 1993)); *see also Reneker v. Offill*, Civ. A. No. 3:08-CV1394, 2012 WL 2158733 at *11 (N.D. Tex. June 14, 2012) ("imputation turns on whether the agent was acting for or against the principal's interests; knowledge acquired by an agent acting adversely to his principal is not attributable to the principal").  The Founders' reliance *In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231 (Bankr. S.D.N.Y. 2008), is misplaced because it involved New York and Bermuda law and is based on there being *no* decision-maker not also accused of fraud.
[41] *See* VBF RESP. APP. 017; 024-037, Amended Kleinman Report at 2 ¶ 2(b-d); 9-22 ¶¶ 14-56 and Table 9.
[42] *See Askanse v. Fatjo*, 828 F. Supp. 465, 471 (S.D. Tex. 1993) (citing *Schacht v. Brown*, 711 F.2d 1343, 1348 (7th Cir. 1983) and *F.D.I.C. v. Nathan*, 804 F. Supp. 888, 894 (S.D. Tex. 1992)).
[43] *Schacht v. Brown*, 711 F.2d 1343, 1348 (7th Cir. 1983).

can be held jointly and severally liable.[44]   Further, VBF's conspiracy claim provides an additional basis to impose joint and several liability of the Founders.[45]   There also are some damages accounted for by individual Defendant. Kleinman breaks out certain transfers and expenditures by individual Founder in her Amended Report, the support for which can be found in the VBF Transaction Detail.[46]   Regardless, assigning relative liability amongst the Founders is an issue for the jury's determination and is not a basis to exclude Kleinman's opinion.  Similarly, assigning damages by cause of action is a jury determination.[47]

### 4.   Kleinman's calculations and opinion appropriately evaluate the out-of-pocket damages caused to VBF by the Founders.

Texas law "permits a trial court to instruct the jury under either the out-of-pocket rule or the benefit of the bargain rule, whichever will more fully compensate the defrauded party."[48]   The Founders assert that Kleinman did not do either an out-of-pocket or benefit-of-the-bargain

---

[44] *See, e.g., CBIF LP v. TGI Friday's Inc.*, 05-15-00157-CV, 2017 WL 1455407 at *1 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. Op) ("When a defendant knowingly participates in the breach of a fiduciary duty, he becomes a joint tortfeasor and is liable as such."); *Century 21 Page One Realty v. Naghad*, 760 S.W.2d 305, 310 (Tex. App.—Texarkana 1988, no writ) (holding defendants jointly and severally liable for making fraudulent misrepresentations); *Grinnell Mut. Reinsurance Co. v. Jungling*, 654 N.W.2d 530, 543–44 (Iowa 2002) (finding each defendant was jointly and severally liable for the judgment in a fraudulent misrepresentation case).

[45] *See, e.g., Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000) (each of the losing defendants was held jointly and severally liable under Texas law, where all were found to be co-conspirators in a civil conspiracy); *Reilly v. Anderson*, 727 N.W.2d 102, 110 (Iowa 2006) (holding that defendants acting in concert are jointly and severally liable for all damages).

[46] VBF RESP. APP. 092-108, Amended Kleinman Report at 77-93 ¶¶ 192-244 and Tables 42-43.

[47] *See DSC Comm'ns Corp. v. Next Level Comm'ns*, 107 F.3d 322, 330 (5th Cir. 1997) ("The damage model Sears presented showed the total damages allocated to Next Level's alleged wrongful conduct. The jury then allocated damages to each different cause of action. DSC was not obligated to precisely apportion damages for each instance of wrongful conduct it alleged, as unitary damages models are permissible under Texas law."); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003) ("[W]hether to award damages and how much is uniquely within the factfinder's discretion."); VBF RESP. APP. 822, Durham Dep. 108:7-21 (Defendants' expert gives damages opinions not designated by claim).

[48] *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 453 (5th Cir. 2001).

analysis, but that is not true. Mot. at 12-13.  Under Texas law, "[o]ut of pocket damages, which derive from a restitutionary theory, measure the difference between the amount the buyer paid and the value of the property the buyer received."[49]  Kleinman's analysis supports an award of out-of-pocket losses for the assets VBF actually lost.

Kleinman's opinion clearly states that she is opining on the amount of VBF's assets that were devalued and wasted, and that were directly lost through misappropriation of VBF's cash and other assets. Specifically, Kleinman details her analysis of how she identified funds that flowed *out of* VBF's pocket and flowed into (1) wasteful endeavors that could never succeed because, among other things, the Founders' underlying OFT technology was useless[50]; and (2) the pockets of the Founders in the form of living expenses and travel,[51] a lake house,[52] excessive and improper compensation,[53] and payments for personal expenses,[54] among others.[55] These amounts were wrongfully taken out of VBF's accounts, and thus constitute losses VBF would not have sustained but for the Founders' malfeasance.[56]

---

[49] *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

[50] VBF RESP. APP. 059-60, 070-71, Amended Kleinman Report at 44-45 ¶¶ 103-06; 55-56 ¶¶ 130-133 and Table 25; *see also* VBF RESP. APP. 183-84, Supplemental Report of Brandi Kleinman, dated March 18, 2022 ("Suppl. Kleinman Report"), at 6-7 ¶ 15.

[51] VBF RESP. APP. 037-38, 106-07, Amended Kleinman Report at 22-23 ¶¶ 54-55; 91-92 ¶¶ 235-43 and Tables 9 and 43.

[52] VBF RESP. APP. 033, Amended Kleinman Report at 18, ¶¶ 39-40 and Table 9.

[53] VBF RESP. APP. 037, 101, 104-05, Amended Kleinman Report at 22 ¶ 53; 86 ¶¶ 215-17; 89-90 ¶¶ 231-34 and Tables 9 and 42.

[54] VBF RESP. APP. 097, 101-02, 107-08, Amended Kleinman Report at 82, ¶¶ 207-209; 86-88, ¶¶ 215-222; 91-92, ¶¶ 235-243; and Table 41.

[55] VBF RESP. APP. 180-85, Suppl. Kleinman Report at 3-8 ¶¶ 10-20 and Tables 45-48.

[56] VBF RESP. APP. 821-22, 837-39, Durham Dep. 106:7-107:8 (Founders' expert agrees that if funds were expended by VBF and no value received, that would be damages to VBF and could be out-of-pocket loss); 132:6-134:19 (Founders' expert agrees a "but for" scenario for damages could "probably" look at what funds the company would not have spent but for one of its management's breaches of fiduciary duty or fraud).

Further, Kleinman looked at and considered for her opinion the myriad of fraud and breach of fiduciary duty allegations and evidence against the Founders and its effect on VBF's EBITDA, and could properly conclude that the nature and extent of the fraud and breaches of fiduciary duty amounted to waste and devaluation of all or the majority of VBF's assets.[57] Under Texas law, damages for "breach of fiduciary duty are defined broadly to include 'any loss' suffered by the corporation as a result of the director's wrongful conduct" and in such cases, "litigants and courts must be flexible and imaginative in calculating the proper measure of damages."[58] The "value received" component can be zero, and out-of-pocket damages can return the full amount paid.[59]

As explained above, once the funds flowed into VBF's pockets from investors and lenders, those funds became assets of VBF. The damage inflicted on VBF was the wrongful waste and misappropriation of those funds by the Founders. Where a damages model is "not uncertain as a matter of fact," it "may be submitted to a jury."[60] Here, Kleinman's conclusion that millions in

---

[57] VBF RESP. APP. 024-038, Amended Kleinman Report at 9-23 ¶¶ 14-56 and Table 9.

[58] *Floyd v. Hefner*, 556 F. Supp. 2d 617, 651-52 (S.D. Tex. 2008) (citing *Meyers v. Moody*, 693 F.2d 1196, 1214 (5th Cir. 1982) and *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 487 (5th Cir. 2000)) (denying summary judgment on breach of fiduciary duty claim against company directors who "chose to pursue an incredibly risky project" they knew was likely to fail); *see also Roil Energy, LLC. v. Edington*, 195 Wash. App. 1030 (2016) (analyzing breach of fiduciary duty for Nevada corporation and finding that a plaintiff "will be awarded damages for all losses proximately caused by the defendant's wrong."); *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 462 (5th Cir. 2011) ("[t]he recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including … pecuniary loss suffered otherwise as a consequence of the recipient's reliance on the misrepresentation").

[59] *Siddiqui*, 504 S.W.3d at 375 (awarding out-of-pocket damages for full amount of fraudulently induced interest in partnership where the "value received component . . . was zero at the time the investments were made"); *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 880 (5th Cir. 2013) (finding damages for full value of business appropriate where wrongdoing "totally or almost totally destroyed" business); *Sawyer v. Fitts*, 630 S.W.2d 872, 874–75 (Tex. App.—Fort Worth 1982, no writ) ("[T]he proper measure of damages for destruction of a business is measured by the difference between the value of the business before and after the injury or destruction.").

[60] *Floyd*, 556 F. Supp. 2d at 652.

VBF's asserts were wasted by the Founders is definitely not "uncertain as a matter of fact." She has accounted for every single penny that underlies her opinions.

### 5. Kleinman may assume liability and opine about the extent of damages based on that assumption.

The Founders also claim Kleinman improperly testifies that the Founders caused VBF's damages. Mot. at 14-16. Although Kleinman used the words "cause" and "causation" in her deposition, she has not been identified as an expert on causation for VBF's claims, nor is VBF offering her testimony for that purpose.[61] The jury will ultimately determine whether the Founders caused the injuries to VBF.[62] Kleinman assumed VBF will prove liability,[63] and she is permitted to do so.[64] "[I]t is perfectly permissible for an expert to assume liability (of which causation is an element) and simply focus on the issue of damages."[65]

### B. Kleinman is a financial expert qualified to opine about VBF's finances.

The Founders do not challenge Kleinman's qualifications as a financial or damages expert. Instead, they argue that because she is not an *aquaculture* expert, she cannot opine about their financial misdeeds and the financial health of VBF. Mot. at 16, 19-22. This is not correct.

---

[61] VBF RESP. APP. 730, VBF's Rule 26 Expert Disclosures ("Expert Disclosures") at 56.

[62] *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) (noting that "[c]ausation is a question of fact for the jury").

[63] VBF RESP. APP. 675-76, 716-18, Kleinman Dep. 46:7-47:16 (testifying that she assumed liability and performed an independent evaluation of materials provided and has not seen anything inconsistent with liability); 282:23-284:11 (testifying that she is not opining on liability).

[64] *See ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015 at *8 (S.D. Tex. Apr. 19, 2018) ("'Experts are permitted to assume the fact of liability and opine about the extent of damages.' An expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible. When 'the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.'") (citing *Nova Consulting Grp. Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 733 (5th Cir. 2008)); *Robroy Indus.,* 2017 WL 1319553 at *4-5 (collecting cases to support damages experts being permitted to assume liability).

[65] *Robroy Indus.*, 2017 WL 1319553 at *4; *see also* VBF RESP. APP. 829, Durham Dep. at 116:3-8 (Defendants' expert testified that "probably in most cases, I assume liability is found").

1.       **Kleinman appropriately relies on her decades of experience and training.**

VBF has not designated Kleinman as an aquaculture expert, and Kleinman does not purport

to testify as one.[66] She is a CPA, forensic accountant (with an AICPA certification), and financial

and damages expert.[67] She does not need to have expertise in aquaculture in order to opine as a

financial and damages expert regarding VBF's finances. "Rule 702 does not require the extreme

specificity of expertise" that the Founders propose.[68] To the contrary, an expert witness "need not

have specialized expertise in the area directly pertinent to the issue in question if the witness has

qualifications in the general field related to the subject matter in question."[69] "[T]o qualify as an

expert, the witness must have such knowledge or experience in his field or calling as to make it

appear that his opinion or inference will probably aid the trier in his search for truth."[70] The "key"

is whether an expert's "general background can still help."[71]

Kleinman's opinions, while addressing a company in the aquaculture industry, are not

about aquaculture. Her opinions are about EBITDA, financial modeling, financial condition,

financial practices (including compensation), and damages, which are all within the scope of her

expertise and can be applied to any industry.[72] It is permissible for a financial expert to testify

---

[66] *See* VBF RESP. APP. 731-35, Expert Disclosures at 57-61 (identifying Whitehair as aquaculture expert and Kleinman as damages expert); VBF RESP. APP. 018-19, 022-23, 038-39, 109-16, Amended Kleinman Report at 3-4 ¶¶ 4-8 and Appendix A (re qualifications); 7-8 ¶¶ 10-12; 23 ¶¶ 57-59 (re scope of report).

[67] VBF RESP. APP. 018, 109-16, Amended Kleinman Report at 3 ¶ 5 and Appendix A.

[68] *Tesco Corp. v. Weatherford Int'l Inc.*, 750 F. Supp. 2d 780, 795-96 (S.D. Tex. 2010).

[69] *Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV. A. H 07-3973, 2008 WL 5273713 at *15 (S.D. Tex. Dec. 17, 2008); *see also Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 665 (S.D. Tex. 2009) ("Courts allow experts to testify to matters within their general expertise even when they lack qualifications as to specific matters within that field if their general expertise allows them to give relevant and reliable opinions.").

[70] *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004).

[71] *Salinas v. State Farm Fire & Cas. Co.*, No. CIV. A. B-10-194, 2012 WL 5187996 at *4 (S.D. Tex. Feb. 23, 2012).

[72] VBF RESP. APP. 017, Amended Kleinman Report at 2 ¶ 2.

regarding financial issues of different industries, especially where, as here, Kleinman consulted with VBF's designated aquaculture expert (who has not been challenged by the Founders).[73] The same is true as to specific company transactions she addresses, such as executive compensation.

Furthermore, "differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[74] Thus, "a lack of personal experience"—here, in the very narrow area of aquaculture industry—"should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702: 'knowledge, skill, experience, training, *or* education.'"[75] Likewise, "[a] lack of specialization should generally go to the weight of the evidence rather than its admissibility and 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[76]

### 2. Kleinman's opinions appropriately rely on other experts' analyses and conclusions.

After criticizing Kleinman for not being an expert in aquaculture, the Founders then attack her analysis because the underlying "assumptions are all improperly premised on the Whitehair

---

[73] *E.g.*, *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 792-93 (N.D. Tex. 2013) (admitting expert testimony by accountant about the financial damages suffered from damaged machines); *GWTP Investments, L.P. v. SES Americom, Inc.*, Civ. A. No. 3:04-CV-1383-L, 2007 WL 7630459 at *4 (N.D. Tex. Aug. 3, 2007) ("[I]t is proper for a business appraiser who lacks industry-specific experience to take steps to acquire the necessary knowledge. This may be accomplished by consulting with another expert."). *See also, e.g.,* VBF RESP. APP. 022-23, Amended Kleinman Report at 7 ¶ 0(jj); 8 ¶ 11.

[74] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

[75] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013) (quoting FED. R. EVID. 702) (emphasis in original).

[76] *Wen Chyu Liu*, 716 F.3d at 168-69 ("Thus 'an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight.'").

Report." Mot. at 16 n.51, 22 n.82[77] Kleinman, however, "may also rely upon the opinion of another expert, as long as the other expert opinion 'upon which [the] expert bases an opinion or inference . . . [are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"[78] This is because "an expert cannot be an expert in all fields" and thus, "it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion."[79] Kleinman relied on expert data from Whitehair for another field of expertise—aquaculture—to the extent it was relevant to her analyses and conclusions.[80] The Founders have not moved to exclude Whitehair's opinions.

**C.    Kleinman's financial opinions are reliable and will assist the trier of fact.**

Each of Kleinman's opinions is reliable and based on specific evidence and data produced in this case.  They also will assist the trier of fact in evaluating whether the multiple years' worth

---

[77] The Motion quotes *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820 (10th Cir. 2010) out of context.  In *Mooring*, the court struck the expert's testimony because he relied on a lay witness's opinion testimony without examining the validity of her assumptions. Here, as Kleinman testified, "to say that I did no independent evaluation of [the Whitehair opinions], I would say is incorrect," as she was provided with information that allowed her "to be able to confirm the reasonableness of the Whitehairs' opinion." VBF RESP. APP. 677-79, Kleinman Dep. 56:2-58:10; *see also* VBF RESP. APP. 697-701, Kleinman Dep. 188:13-192:5 (noting that "[t]here was some independent analysis done," of the Whitehairs' numbers, and that "the Whitehairs' inputs . . . were consistent with the documents that we could review. . . . We also reviewed other information that corroborated that they were reasonable and implemented them.").

[78] *Jones v. Harley-Davidson, Inc.*, No. 2:14-CV-694-RWS-RSP, 2016 WL 5242993 at *2 (E.D. Tex. Sept. 22, 2016); *see also Wellshire Fin. Servs., LLC v. TMX Fin.*, No. CV H-17-2786, 2019 WL 1177728 at *5 (S.D. Tex. Feb. 5, 2019) ("Also rejected is Defendants' argument that Solomon could not rely on Bernhardt's survey results and his opinions in formulating his damages model."); *Koenig v. Beekmans*, No. 5:15-CV-0822-OLG, 2017 WL 7732833 at *2 (W.D. Tex. Aug. 16, 2017) ("…Fifth Circuit precedent has established that an expert can rely upon otherwise inadmissible evidence as long as it is of a type "reasonably relied upon by experts in the particular field."); *Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 7665773 at *10 (E.D. Tex. July 19, 2016) (expert on damages could rely on opinions of another expert).

[79] *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Smith Tank & Steel, Inc.*, Civ. Action No. 3:11-CV-00830, 2014 WL 5794952 at *4 (M.D. La. Nov. 6, 2014).

[80] VBF RESP. APP. 677-79, 697-701, Kleinman Dep. 56:2-58:10, 188:13-192:5.

of transactions directed and controlled by the Founders were improper and/or wasteful. The average juror is not trained in corporate accounting or forensic accounting. Nor can jurors be expected to understand and analyze hundreds of thousands of financial transactions undertaken over the course of more than three years totaling more than $90 million in assets and expenditures. This a complex case involving multiple related entities, allegations of widespread fraud and breaches of fiduciary duties, multiple different financial models created by the Founders themselves, and multiple sources of financial data that were analyzed by Kleinman.[81] It is exactly the kind of case in which Kleinman's expertise is both appropriate and needed to help the jury understand the technical financial issues.[82]

*The Wasted and Lost Assets Damages*. As discussed above, Kleinman conducted a forensic accounting analysis to determine the total value of assets that were infused into VBF and then wasted or otherwise lost due to the Founders' misdeeds. She also appropriately offset those losses through the value she found was provided to VBF through a later sale of assets. Every part of Kleinman's analysis is detailed in her reports as are all of the data inputs on which she relied.

---

[81] *See, e.g,* VBF RESP. APP. 006-08, Kleinman Dec. at ¶¶ 7-11 (describing creation of VBF Transaction Detail from multiple QuickBooks files, NetSuite general ledger, and 2018 detailed transaction ledger and reports run from QuickBooks), ¶¶ 13-16 (describing multiple versions of financial models and complex Excel workbooks); VBF RESP. APP. 117-74, Amended Kleinman Report, Appendix B (showing extensive documents reviewed).

[82] *See, e.g.*, *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd*., 2004 WL 5495588, at *5 (W.D. Tex. Oct. 6, 2004) ("Given its complexity and cumbersome nature, Stich's compilation of this information and documentation into a presentable format is 'helpful' in that it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.' Further, Stich's testimony will assist the jury in extracting relevant information from the accounting documents given and will facilitate its understanding of the evidence presented."); *see also Total Control, Inc. v. Danaher Corp*., 338 F. Supp. 2d 566, 569 (E.D. Pa. 2004) (rejecting argument that financial analyst's testimony should be excluded because his calculations were based on arithmetic and finding that his "ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the jury").

*The Misappropriations Damages.* Kleinman's more than $9 million misappropriations calculation is a specific calculation of monies wrongfully taken from VBF to benefit the Founders. The Founders assert that because they misappropriated some of this money[83] through their own shell companies or their friends and family means that the money was "not even paid to the Founders." Mot. at 20. But an owner of a corporation cannot "disregard the corporate entity when it is advantageous" and "on the other hand, benefit from the corporate entity when it wishes."[84] Further, under the plain language of the statutes that are the basis for VBF's fraudulent transfer claims, VBF may recover the value of the asset transferred from a person for whose benefit the transfer was made.[85]

The Founders' specific complaints about Kleinman's opinions regarding the excessive compensation they paid themselves fare no better. Kleinman's Amended Report discusses the Founders' compensation and the reasons why it was not reasonable,[86] noting "the Founders had no previous experience in aquaculture" but were paying themselves substantial compensation ($300,000 per year for Founders other than Driver; $240,000 per year for Driver), in addition to travel advances and substantial severance packages.[87] She provides a point of reference for her conclusions, specific to VBF, noting that "all five of the Founders were effectively replaced by

---

[83] It is important to note that this argument does not apply to all of the misappropriations identified by Kleinman, as some were transferred directly to the Founders. *See* Motion at 20 (addressing only $2.8 million of the funds sent to affiliated entities and recognizing "exception" even within that number).

[84] *U.S. v. M/Y Galactica Star*, 13 F.4th 448, 457-58 (5th Cir. 2021).

[85] *See* TEX. BUS. & COMM. CODE § 24.009(b)(1) ("[T]he creditor may recover judgment for the value of the asset transferred… against … the person for whose benefit the transfer was made."); *see also Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 440 (5th Cir. 2013) (transfer of asset to entity was made for benefit of entity's owner); Iowa Code § 684.8(2)(a)(1) (same).

[86] VBF RESP. APP. 104-05, Amended Kleinman Report at 89-90 ¶¶ 231-34.

[87] VBF RESP. APP. 105, Amended Kleinman Report at 90 ¶¶ 231-33 and Table 42.

- 18 -

President, Norman McCowan, who was paid $250,000, and to a limited extent, a financial employee, Mr. Rodriguez, who was paid $135,000 annually."[88] Also, the evidence indicates that the Founders spent the ***entirety*** of their tenure at VBF committing fraud and breaching their fiduciary duties, which supports a conclusion that they brought ***no value*** to VBF. And contrary to what they suggest, the Founders cannot approve their own misappropriations or fraud.[89]

*The Overstated EBITDA.* The Founders attempt to discredit Kleinman's EBITDA analysis by arguing she used a "random 2016 Model" for her EBITDA calculation and "fail[ed] to use financial projections that were part of the 2016 stock purchase agreement." Mot. at 21-22. This is incorrect. As Kleinman testified, she used the 2016 Model because it was "the model sent to all of the investors prior to closing" of the Stock Purchase Agreement ("SPA") and when it was sent, it was noted that this was an updated version, "meaning it would supersede other information that was previously sent."[90] She also reviewed multiple models before determining which one was most appropriate for her analysis.[91]

The "business plan" or "projections" that the Founders claim Kleinman should have used instead is a three-page Executive Summary containing only a snapshot summarizing data that is similar to the information contained, with more detail, in the financial models that Kleinman used

---

[88] VBF RESP. APP. 105-06, Amended Kleinman Report at 90-91 ¶ 234.

[89] "A breach of fiduciary duty to the principal is 'incapable of ratification.'" *FDIC v. Nathan*, 804 F. Supp. 888, 896-97 (S.D. Tex. 1992); *see also In re W. World Funding, Inc.*, 52 B.R. 743, 771 (Bankr. D. Nev. 1985) *aff'd in part*, *rev'd in part on other grounds sub nom. Buchanan v. Henderson*, 131 B.R. 859 (D. Nev. 1990), *rev'd on other grounds*, 985 F.2d 1021 (9th Cir. 1993) (ratification does not apply where "an insider who attempts to invoke the doctrine against the corporation, particularly as a defense to his liability for breach of duty to his principal").

[90] VBF RESP. APP. 702-10, Kleinman Dep. 194:17-202:10; VBF RESP. APP. 008-09, Kleinman Dec. at ¶¶ 13-19.

[91] VBF RESP. APP. 008, Kleinman Dec. at ¶¶ 13-15.

as part of her analysis.[92] The Founders' suggestion that Kleinman should have relied on a summary of data rather than the underlying data itself is absurd. The Founders' "business plan" also contains inaccurate information that makes clear it is not reliable for any expert to rely upon.[93] Regardless, Kleinman did review and consider the "financial projections" in the Executive Summary, as well as an identical copy of the Executive Summary itself.[94] She simply chose not to rely upon it for her analysis and to go directly to the underlying data, and this decision was reasonable.[95] In any event, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration."[96]

*VBF's Insolvency*. The Founders attack Kleinman's use of a "balance sheet test" to determine insolvency. Motion at 3, 24-25. But Texas law defines "insolvency" as existing when "the sum of the debtor's debts is greater than all of the debtor's assts at a fair valuation."[97] The federal test also relies on a "fair valuation."[98] "Courts often refer to this test as a balance sheet test,

---

[92] *See* VBF RESP. APP. 009, Kleinman Dec. at ¶ 19. As a point of comparison, the model used by Kleinman for her assessment of EBITDA and her opinion is an Excel spreadsheet with 26 tabs of financial data, which stands in stark contrast to the three-page "teaser" that the Four Founders misleading characterize as a "model." VBF RESP. APP. 008, Kleinman Dec. at ¶ 16.

[93] For example, the Executive Summary states that "VBF has secured a debt commitment for $26 million from (1) Generation Investment management (Al Gore Green Fund), and (2) M&G Investments (owned by Prudential)," but by the time of the SPA, these two potential investors had already walked away from the deal. VBF RESP. APP. 737-808, Kleinman Dep. Ex. 46 (VBF-01095482-84); VBF RESP. APP. 009, Kleinman Dec. at ¶ 19.

[94] VBF RESP. APP. 008-09, Kleinman Dec. at ¶¶ 17-18; VBF RESP. APP. 119, Amended Kleinman Report, Appendix B at 3.

[95] VBF RESP. APP. 008-09, Kleinman Dec. at ¶¶ 17-19.

[96] *Robroy Indus.*, 2017 WL 1319553 at *7 (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) and *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012)); *see also GWTP Investments*, 2007 WL 7630459 at *8 (objections to assumptions made by an expert "go to the weight to be afforded" expert's opinion, "not to its admissibility.").

[97] TEX. BUS. & COMM. CODE § 24.003.

[98] *See* 11 U.S.C. § 101 (32) (defining insolvency).

and then engage in the 'fair valuation' of the debts and property shown on the balance sheet, as required by the statute."[99]

The Founders contend that Kleinman is required to perform an independent fair market valuation of each of VBF's individual assets as part of her evaluation of solvency. Mot. at 3, 24-25. But VBF is not aware of any such requirement, nor does the Motion cite any cases supporting such a requirement. Moreover, Kleinman's analysis *did* account for the fair market value of VBF's assets, through the third-party Natural Shrimp transaction and the statement made to the Bankruptcy Court by VBF.[100] Kleinman testified that the $10 million purchase of VBF's remaining assets by Natural Shrimp represented the value of VBF's assets after the Founders' misappropriations.[101] Her report also includes this transaction.[102]

The Founders rely on an out-of-context quotation from *In the Matter of Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir. 1988) and the imprimatur of Judge Posner. But *Xonics* merely stands for the proposition that, in a balance sheet test for solvency, the value of contingent liabilities should not be face value, and should be discounted based on the likelihood of the contingency's occurrence.[103] Contingent liabilities are not what made VBF insolvent; thus, the holding in *Xonics* is inapplicable. In any event, this challenge goes to the weight of Kleinman's opinion, not its admissibility.

The Founders also argue that Kleinman's insolvency opinion is untimely and "new." But Kleinman opined in her Amended Report that "VBF lost money in each and every month of its

---

[99] *Matter of Lamar Haddox Contractor*, 40 F.3d 118, 121 (5th Cir. 1994).
[100] VBF RESP. APP. 017, 058, 108, Amended Kleinman Report at 2 ¶ 2(d); 43 ¶ 101; 93 ¶ 247.
[101] VBF RESP. APP. 674, Kleinman Dep. at 36:14-24.
[102] VBF RESP. APP. 017, 058, 108, Amended Kleinman Report at 2 ¶ 2(d); 43 ¶ 101; 93 ¶ 247.
[103] 841 F.2d at 200-201.

existence and was insolvent the majority of this time"[104] and was designated by VBF as an expert on its "financial condition."[105] Kleinman merely expanded upon her prior opinion in the Supplemental Report "to give some additional context."[106] Moreover, the ten-page Supplemental Report was served prior to Kleinman's deposition and the Founders' counsel questioned her about it, choosing to proceed with her deposition 4 months before the expert discovery deadline.[107] Courts have permitted supplementation of expert reports that are "well within the period for expert discovery, and [where] any resulting judicial economy concerns and prejudice to Defendants are limited."[108] Tellingly, the Founders do not argue they will be prejudiced by consideration of the Supplemental Report.

Nor do the Founders articulate, much less apply, the appropriate legal standard. When determining whether an expert's opinion should be excluded as untimely, courts in the Fifth Circuit considers four factors: (1) the importance of the witness's testimony; (2) the prejudice to the opposing party if the Court allows the testimony; (3) the possibility of curing the prejudice with a

---

[104] VBF RESP. APP. 104, Amended Kleinman Report at 89 ¶ 230.

[105] VBF RESP. APP. 734, Expert Disclosures at 60.

[106] VBF RESP. APP. 722-24, Kleinman Dep. at 293:20-295:11.

[107] *See*, *e.g.*, VBF RESP. APP. 684-96, 718-27, Kleinman Dep. at 125:15-129:8, 162:17-166:16, 170:7-172:18, 284:13-287:5, 293:20-296:12, 303:21-304:6; Dkt. 406 at ¶ 8.

[108] *In re BP P.L.C. Securities Litig.*, MDL No. 4:10-MD-2185, 2016 WL 3090779 at *31 (S.D. Tex. May 31, 2016) ("The Court declines to exclude the Alternative Analysis. As Plaintiffs correctly respond, Coffman proffered his supplementation well within the period for expert discovery, and any resulting judicial economy concerns and prejudice to Defendants are limited."). *See also Talbert v. City of Chicago*, 236 F.R.D. 415, 418-21 (N.D. Ill. 2006) (permitting supplementation of expert report before the close of expert discovery where the amended report does not substantively alter the theory of the case, but merely "make[s] the report better); *Curlee v. United Parcel Serv.*, 3:13-cv-00344-P, 2014 WL 11516719 at *8 (N.D. Tex. Dec. 12, 2014) (admitting amended report where initial report included interview technique and amended report confirmed the company used that interview technique); *City of Allen, Tex. v. Time Warner Cable Tex., LLC*, No. 6:19-CV-345-ADA-JCM, 2021 WL 8442040 at *7 (W.D. Tex. Oct. 5, 2021*)* (holding untimely supplementary disclosures that do not rely on new information but reiterate past opinions are admissible).

continuance; and (4) the explanation for the failure to comply with the discovery rules.[109] These factors weigh in favor of permitting Kleinman to testify about VBF's insolvency at trial. Kleinman's testimony goes directly to an element of VBF's fraudulent transfer claims.[110] Permitting Kleinman's testimony would not result in unfair prejudice to the Founders. They had notice of VBF's position and Kleinman's opinion well before expert discovery ends, they questioned her about it during her deposition, and they have had months to continue conducting expert discovery since receiving the Supplemental Kleinman Report.[111] Likewise, there is no need for a continuance because there has been no prejudice.

### D.   The Founders' other criticisms go to the weight to be assigned, rather than the admissibility of, Kleinman's opinions.

The Founders also nitpick various specific elements of Kleinman's damages calculations. "[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration."[112] The Founders' laundry list reads more like an outline for cross-examination at trial rather than providing a valid basis to exclude expert testimony. That is the case for all of the Founders' additional arguments.

*The $5.6 million in Initial Investments.* The Founders argue that Kleinman improperly

---

[109] *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996) (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)).

[110] *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 387 (5th Cir. 2017) ("Under TUFTA, it is a badge of fraud if 'the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.'") (quoting TEX. BUS. & COMM. CODE § 24.005(b)(9)).

[111] *BP p.l.c. Secs. Litig.*, 2016 WL 3090779 at *31 ("The Court declines to exclude the Alternative Analysis. As Plaintiffs correctly respond, Coffman proffered his supplementation well within the period for expert discovery, and any resulting judicial economy concerns and prejudice to Defendants are limited.").

[112] *Robroy Indus.*, 2017 WL 1319553, at *7 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

includes $5.6 million in investments in VBF's parent company. Mot. at 17. But nearly all of the initial investments into VBF Canada before July 2016 were ultimately transferred to or used for VBF USA,[113] and thus became VBF's assets at the time they were transferred.[114]

   *The $5.9 million borrowed after the Founders' terminations.* The Founders also claim "at least $5,990,000 was borrowed by VBF after January 2018, by which time all of the Founders had been terminated[,]" and that Kleinman does not provide a basis to include that money in her damages calculation. Mot. at 17-18. Kleinman testified about this issue in her deposition and explained that she was accounting for "obligations . . . that the founders caused. The expenditure of those dollars was "required by the condition that the company was left in" at the time of the Founders' departure.[115]

   *Loan from Amstar/Broadmoor.* The Founders also challenge Kleinman's inclusion of the loan received by VBF from Amstar, which was later purchased by Broadmoor Financial, LP, because they claim the funds were borrowed by VBF's subsidiaries, VBF Operations, Inc. and Iowa's First, Inc."[116] Mot. at 17-19. But this loan is reflected on the balance sheet of VBF USA only, and is not reflected on the balance sheet of any VBF USA subsidiary.[117] Therefore, Kleinman reasonably concluded the loan from Amstar Group, LLC was the debt of VBF USA, not any

---

[113] VBF RESP. APP. 041-43, Amended Kleinman Report at 26-28 ¶¶ 68-70 and Tables 11, 12, and 13.

[114] *See also* VBF RESP. APP. 835, Durham Dep. at 126:2-7 (Defendants' expert agrees, if VBF Canada transferred cash to VBF USA, it became an asset of VBF USA from an accounting perspective).

[115] VBF RESP. APP. 680-81, 711--13, Kleinman Dep. at 81:14-82:22; *see also*, 250:10-252:14.

[116] Note that the Motion itself contains signs that the Founders' complaints about this loan are manufactured. The testimony excerpted in the Motion (at 18) shows the Founders' counsel asking, "VBF USA owed that money back to a lender, correct?" The question demonstrates that even the Founders' counsel is aware that VBF is ultimately on the hook for the amount that was borrowed.

[117] VBF RESP. APP. 008, Kleinman Dec. at ¶ 12.

subsidiary entity. Further, VBF and its affiliates, including these two subsidiaries, collectively filed for Chapter 11 bankruptcy,[118] the Bankruptcy Plan of Reorganization required VBF to pay to settle the secured portion of the claim.[119]  Thus, the amount of the loan was a liability for, and caused consequent damage to, VBF.  Any of the Founders' issues regarding amounts of, or value to be assigned to, these transactions, go to the weight, and not admissibility, of Kleinman's opinions.

**E.    Driver's Notice of Joinder is improper and should not be considered.**

Driver filed a "Notice of Joinder in [the Founder's] Motion to Exclude" VBF's Expert, stating the he "adopts, joins in and incorporates by reference as if fully set forth herein" the Founders' Motion.  Dkt. 464 at 1.  Although styled as a "Notice," Driver's filing is a motion because it seeks affirmative relief. It is therefore subject to both this Court's order requiring the parties to seek leave before filing any non-dispositive motions,[120] and Local Civil Rule 7.1's conference requirement for motions to strike.  Driver did not comply with either.  Nor does Driver's notice satisfy Rule 7(b)(1)(B)'s requirement that "a motion 'state with particularity the grounds for seeking the order.'"[121]  Driver's decision to file only a one-page "notice" incorporating another party's briefing by reference—*before* that brief was even filed—also ignores this Court's instructions in the May 6, 2020 hearing, that all parties "brief up" their arguments.[122]  Driver did not brief any of his arguments at all, and his "Notice of Joinder" should be disregarded.

### V.  <u>CONCLUSION</u>

VBF respectfully requests that the Court deny the relief sought in the Motion and Notice.

---

[118] VBF RESP. APP. 058, Amended Kleinman Report at 43 ¶ 101.
[119] *See id.*
[120] Dkt. at 423.
[121] *Rodriguez-Rodriguez v. Big Bird Tree Serv., Inc.*, No. 3:15-CV-3815-L, 2017 WL 1047576, at *3 (N.D. Tex. Mar. 20, 2017).
[122] *See* VBF RESP. APP. 812-13, May 6, 2020 Hearing Tr., at 31-32.

Dated:  August 1, 2022          Respectfully submitted,

/s/ *Nicole L. Williams*
Nicole L. Williams
Texas Bar No. 24041784
nwilliams@thompsoncoburn.com
Jasmine S. Wynton
Texas Bar No. 24090481
jwynton@thompsoncoburn.com
Kamran Anwar
Texas Bar No. 24119217
kanwar@thompsoncoburn.com

THOMPSON COBURN LLP
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201

/s/ *Robert H. Lang*
Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com

THOMPSON COBURN LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

*ATTORNEYS FOR PLAINTIFF*
*VEROBLUE FARMS USA, INC*

## CERTIFICATE OF SERVICE

I certify that this document was filed electronically on August 1, 2022, with the clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ *Kamran Anwar*
Kamran Anwar

- 26 -