IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-764-X |
| | § | |
| LESLIE A. WULF, ET AL., | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**[1]

Plaintiff VeroBlue Farms USA, Inc. has filed a Motion to Strikes Defendants' Experts, *see* Dkt. No. 495 (the "Experts Motion"), in which "VBF moves to strike certain expert witnesses designated by Defendants Leslie A. Wulf, Bruce A. Hall, John E. Rea, James Rea (collectively, the "Four Founders") and Defendant Keith Driver ("Driver") [(collectively, "Founders" or "Defendants")].

Specifically, VBF seeks to strike (1) Gary Durham ("Durham"), designated as a retained expert witness by the Four Founders; and (2) (a) Mark Nelson ("Mr. Nelson") and (b) Rick Sheriff ("Mr. Sheriff"), designated as a nonretained expert

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

witnesses by Four Founders; and (c) Driver, designated as a nonretained expert witness by Driver himself, *see id.* at 1.

VBF asserts that, "[b]ecause Mr. Durham's testimony is unreliable, and Mr. Nelson's, Mr. Sheriff's, and Driver's disclosures are deficient, the Court should strike Founders' designation of these four expert witnesses and preclude them from offering expert opinions and testimony at trial." *Id.*

More specifically, VBP contends that the Court should strike the expert testimony of Durham as unreliable under Federal Rule of Evidence 702 because his expected testimony is based on incorrect or insufficient information; because his opinions are unproven and unsupported assertions resting only on his authority and should be excluded; and because a number of his opinions should be excluded as the improper subject of expert testimony. *See id.* at 6-12.

And VBF asserts that the Court should strike the expert testimony of Founders' nonretained witnesses because their Federal Rule of Civil Procedure 26(a)(2)(C) disclosures are deficient for Mark Nelson, Rick Sheriff, and Keith Driver; because, even if properly disclosed, Founders' nonretained witnesses are not qualified under Rule 702 to give expert testimony; and because the Founders' failure to comply with Rule 26 is not substantially justified or harmless. *See id.* at 12-22. And, VBF explains,

> Driver designated two witnesses to provide expert testimony: (1) his counsel, Mr. R. Heath Cheek, to provide testimony regarding Driver's request for attorneys' fees; and (2) Driver himself as a nonretained witness to testify regarding "his experience at VBF, including the

technical knowledge and opinions regarding VBF's performance." Although Driver purports to "cross-designate[ ] all retained and non-retained experts designated by Plaintiff and other Defendants," VBF is not aware of any authority, and Driver cites none, that suggests that he may cross-designate other parties' experts without providing the required report(s) or disclosure(s) for such experts under Rule 26(a)(2). Accordingly, VBF only addresses Driver's designation of himself as nonretained witness for purposes of this Motion. [VBF is not challenging Driver's designation of Mr. R. Heath Cheek, who "may testify regarding whether Driver's attorneys' fees and expenses are reasonable and necessary." Driver's First Amended Rule 26 Initial Disclosures, Ex. 2 at 5; App. at 052. VBF understands that the issue of attorneys' fees and costs will be determined in accordance with Rule 54(d)(2) of the Federal Rules of Civil Procedure.]

*Id.* at 2 & n.1 (cleaned up).

The Founders filed a response to the Experts Motion, *see* Dkt, No. 501, arguing that it "should be denied for the following reasons: [A] VBF failed to, and cannot, establish that Gary Durham's expert report is unreliable; [B] The Court's role is to determine whether Mr. Durham's testimony is admissible, not credible; [C] Mr. Durham's testimony assists the jury in understanding (1) VBF's position as it relates to its alleged damages and (2) that Brandi Kleinman's – and, therefore, VBF's – damage model is fatally flawed; [D] Mr. Durham was not required to review every single document Ms. Kleinman purportedly did; [E] Mr. Durham's expert report is a proper expert rebuttal report; and [F] Mr. Durham's opinions are not 'encroaching upon a legal conclusion, but rather, are either mere factual observations or opinions centering on financial causation." Dkt. No. 501 at 1-2 (cleaned up).

According to the Founders,

-3-

VBF's motion to strike the Founders' retained financial expert rests on the fundamental flaw that a rebuttal expert has to reinvent the wheel. In other words, VBF thinks a rebuttal expert must create an independent damages model in order to identify flaws in the proponent's damage model. The Founders are not legally required to proffer an expert that sponsors a viable damage model. The role of the rebuttal expert is instead to identify problems and errors with the proponent's methodology, but he does not have to fix it. The truth here is that because VBF's expert offers such an error-riddled off-the-wall damages theory, it did not require that the Founders' expert, Gary Durham, painstakingly pour over a gazillion documents.

VBF's chief complaint about Mr. Durham's report is that it does not clean up the mess made by VBF's expert, Brandi Kleinman. VBF brands Mr. Durham's report as unreliable because (1) it is "largely argumentative rather than technical or accounting-based"; (2) Mr. Durham did not review all documents that Ms. Kleinman allegedly reviewed; (3) Mr. Durham challenges Ms. Kleinman's opinions and conclusions without providing his independent analysis or outlining what Ms. Kleinman should have done; and (4) "Mr. Durham's opinions are encroaching upon a legal conclusion, which is improper." As for the first three points, VBF confuses what (a) this Court's role is in determining an expert's admissibility and (b) who – the Court or the jury – determines Mr. Durham's credibility. As for VBF's fourth issue, Mr. Durham pointing out that VBF's investors are not parties to this lawsuit is not a legal conclusion, it is a fact. And Mr. Durham observing that Ms. Kleinman failed to provide a proper financial causation analysis also is not a legal conclusion. None of this is accurate and, for the reasons set forth below, Mr. Durham's report falls squarely within the boundaries of a proper expert rebuttal report.

VBF also complains that the Founders failed to comply with Rule 26 in designating Mark Nelson as a non-retained expert. The Founders designated Mr. Nelson as a non-retained expert witness because, while his testimony is largely based on his knowledge as a fact witness, VBF will predictability gripe that he is purporting to offer an opinion. Regardless, the Founders' disclosures suffice under Rule 26. The Court can more efficiently evaluate Mr. Nelson's testimony at trial. Any technical non-compliance with Rule 26 is harmless, in any event.

Dkt. No. 502 at 1-2 (cleaned up).

The Founders explain that "VBF also contends that the Founders failed to comply with Rule 26 concerning their disclosure of Rick Sheriff as a non-retained expert. The Founders, however, withdraw their designation of Mr. Sheriff as a non-retained expert witness and therefore will not be addressing VBF's arguments regarding Mr. Sheriff in this Response." *Id.* at 2 n.2.

Driver filed a response to the Experts Motion, *see* Dkt, No. 504, arguing that he

> was the Chief Operating Officer for VeroBlue during part of the time in which VeroBlue now alleges that fraudulent representations and omissions were made regarding VeroBlue's operations. Driver designated himself as a non-retained expert with regard to several aspects of VeroBlue's operations because he is the single most knowledgeable person to testify about VeroBlue's operations prior to September 2016, the representations he allegedly made regarding such operations, whether his representations were accurate, and the information available to him at the time as it relates to VeroBlue's operations. This expert testimony is critical to Driver's defense against VeroBlue's sixteen causes of action against him for which it seeks over 100 million dollars, all relating to his short 3-month stint as VeroBlue's Chief Operating Officer.
>
> Driver's designation satisfies Rule 26's requirements as he designated the topics on which he would be providing expert testimony on and referred VeroBlue to his January 2021 deposition for a summary of such opinions. Since January 2021, VeroBlue has not sought any clarification, supplementation, or additional deposition time with regard to Driver's expert opinions. Instead, VeroBlue waited over a year to file this Motion to Strike, arguing such disclosures were insufficient and Driver is not qualified to provide the expert opinions. However, under this Court's precedent, referring to a deposition for the summary of your expert opinions satisfies Rule 26's disclosure requirements. Additionally, despite VeroBlue's cherry-picked out-of-context deposition excerpts it includes in its Motion to Strike, Driver is well qualified to provide his expert opinions, as shown in the deposition testimony attached.

> Accordingly, VeroBlue's Motion to Strike Driver's designation of himself as a nonretained expert should be denied.

Dkt. No. 504 at 1-2.

> VBF filed a reply, *see* Dkt, No. 522, asserting that

> > [t]he Court's gatekeeping role under Rule 702 is to "permit only reliable and relevant testimony from qualified witnesses." *Fracalossi v. MoneyGram Pension Plan*, No. 3:17-CV-003336-X, 2021 WL 5505604, at *4 (N.D. Tex. Nov. 24, 2021). Defendants' proposed experts all fail at least one of these requirements.
> > **1. Defendants' "non-retained experts" are fact witnesses, not experts.**
> > Neither Nelson, Sheriff, nor Driver is qualified as an expert; each is instead a fact witness who participated in the operation of VBF during the time in question. Allowing any of them to present "expert" testimony would violate Rule 702 and cause prejudice to VBF.
> > **a. Defendants agree that Sheriff should not be an expert witness.**
> > The Four Founders have "withdraw[n] their designation of Rick Sheriff as a non-retained expert witness." Founders Br. at 2, n.2, 13. The Court may grant the Motion with respect to him.

Dkt. No. 522 at 1-2. And VBF further replies that:

- "Nelson is not qualified, and his opinions are not reliable";

- "Driver is not qualified, and his opinions are not reliable";

- "Durham's opinions are not reliable and will not assist the jury"; and

- "Defendants' experts were not properly disclosed," where "[t]he opinions of Nelson and Driver are not appropriately identified" and where "Durham's non-written opinions, which VBF became aware of after VBF's [Experts] Motion was filed, were not properly disclosed and should be barred."

*Id.* at 1-10.

United States District Judge Brantley Starr has referred the Experts Motion to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 533; *see also Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be ""referred to a magistrate judge to hear and decide"" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

For the reasons and to the extent explained below, the Court grants in part and denies in part Plaintiff VeroBlue Farms USA, Inc.'s Motion to Strikes Defendants' Experts [Dkt. No. 495].

## Background and Legal Standards

The parties and the Court are familiar with the background of this case, so the Court will not repeat it here. *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633 (N.D. Tex. 2020).

As Judge Starr recently laid out,

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D.

Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe*, 516 F. Supp. 3d at 679-80 (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL

3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the ipse dixit [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up).

"[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 807-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and based his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up). "Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of Daubert that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

-12-

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up). "The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). "The Fifth Circuit has recognized that [t]he *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's opinion,'" and "an opinion based on insufficient, erroneous information, fails the reliability standard." *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the

proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). "Even when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

The Court cannot accept arguments that "urge[] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F.

Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). "But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up).

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). And, "[p]articularly in a

jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up). Generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

As for the required disclosures for nonretained experts under Federal Rule of Civil Procedure 26(a)(2)(C), Judge Starr recently explained that Federal Rule of Civil Procedure

> 26(a)(2)(A) requires parties to disclose "the identity of any witness it
> may use at trial to present evidence under Federal Rule of Evidence 702,

703, or 705." If the expert witness is not required to provide a written report, the party's disclosure must provide "the subject matter on which the witness is expected to testify" and "a summary of the facts and opinions to which the witness is expected to testify." The advisory committee report notes clarify that Rule 26(a)(2)(C) "mandate[s] summary disclosures of the opinions to be offered by the expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions." While this summary is "considerably less extensive than the report required by Rule 26(a)(2)(B)[,] and [c]ourts must take care against requiring undue detail," "[t]his less extensive disclosure standard ... does not obviate the need to provide the disclosures expressly required by this rule."

*Fracalossi v. MoneyGram Pension Plan*, No. 3:17-cv-336-X, 2021 WL 5505604, at *13 (N.D. Tex. Nov. 24, 2021) (cleaned up). Rule 26(a)(2)(C) "is intended to ensure that an opposing party has some notice of what an expert witness who is not retained or specially employed will testify about," and "[t]he disclosure must at least state opinions, not merely topics of testimony[,] and contain ... a summary of the facts upon which the opinions are based." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up). "[T]he requirement of a 'summary' may be satisfied by an abstract, abridgement, or compendium of the opinion and facts supporting the opinion," and "[t]he court must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id.* (cleaned up).

If a party fails to comply with Rule 26, the Court may strike the evidence unless the failure was substantially justified or is harmless. Exclusion is not mandatory but within the Court's discretion. The Court looks to four factors in deciding whether to exercise its discretion: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by

granting a continuance; and (4) the explanation for the party's failure to disclose."

*Fracalossi*, 2021 WL 5505604, at *13 (cleaned up). "The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 757 (N.D. Tex. 2021) (cleaned up). "[T]he exclusion of evidence is a harsh penalty and should be used sparingly." *Id.* at 758 (cleaned up).

And, as to allegedly untimely supplemental expert reports, Federal Rule of Civil Procedure 26(e)(1) provides that "[a] party who has made a disclosure under Rule 26(a)... must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court."

"[T]he line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction ... depends on the facts of the case." *Aircraft Holding*, 2022 WL 3019795, at *2 (cleaned up). But "[c]ourts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures and disclosure 'departs from [or] expands upon [the] original report in [any] material respects." *Holcombe v. United States*, 516 F. Supp. 3d 660, 670 (W.D. Tex. 2021) (cleaned up). "The purpose of supplementary disclosures is just that – to supplement.

Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Aircraft Holding*, 2022 WL 3019795, at *2 (cleaned up). "Thus [w]hen the analysis and opinions in the second report [are] largely new rather than supplementary, they cannot qualify as a supplemental expert report under Rule 26(e)." *Id.* (cleaned up).

And, even if an allegedly supplemental report is untimely, "[i]n assessing whether to permit testimony based on an untimely supplemental expert report, the court, in exercising its discretion, considers (1) the explanation for making the supplemental disclosure at the time it is made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to an opposing party; and (4) the availability of a continuance to mitigate any prejudice." *Id.* at *3 n.3 (cleaned up).

## Analysis

As explained above, the Court should not, in its gatekeeping role under Rule 702 and *Daubert*, exclude a proffered expert witness's opinion or testimony because (1) it is not correct; (2) it contradicts other expert testimony or relies on a sets of facts that conflicts with that relied on by contradictory expert testimony, even if that contradictory expert testimony has been found to be reliable; or (3) it does not conclusively prove the proponent's theory of its case or an element of a claim or defense.

But the Court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.

And the party offering the expert testimony bears the burden of proof, by a preponderance of evidence, to show that a qualified expert's testimony is relevant (that is, the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, and the expert's reasoning or methodology properly can be applied to the facts in issue) and reliable (that is, the testimony is based on sufficient facts or data and is the product of reliable principles and methods).

The Court should exclude expert testimony where (1) the expert cannot bring to the jury, on a matter of relevance, more than the lawyers can offer in argument; (2) the expert testimony is based only on subjective belief or unsupported speculation or is connected to existing data only by the unproven assertion of the expert, resting solely on the expert's authority; (3) there is simply too great an analytical gap between the basis for the expert opinion and the opinion proffered (such as if the studies that the expert relies on are so dissimilar to the facts presented that the expert's opinions cannot be sufficiently supported by the studies); (4) the expert testimony is based on indisputably wrong or erroneous or insufficient facts; (5) the proponent fails to provide some objective, independent validation of the expert's methodology; (6) the source on which an expert's opinion relies is of such little weight

that the jury should not be permitted to receive that opinion; or (7) the expert relies on assumptions that have no factual basis in the record or no underlying rationale.

## I.   <u>Gary Durham</u>

VBF explains that Durham's Rebuttal Report "is largely argumentative rather than technical or accounting-based" and that "Durham gives his opinion that the opinions and conclusions set forth in the Kleinman Report are 'flawed, improper, speculative and unreliable'" and asserts that "Mr. Durham's testimony is unreliable because it is based on incorrect or insufficient information" where he "offers opinions as to various facts and conclusory and argumentative statements regarding the Kleinman Report based on a very limited review of documents in this case." Dkt. No. 495 at 6, 7.

But challenges to the quantity or breadth of the sources and bases for Durham's expert opinion go to the weight that it may be afforded and not to its admissibility. And the Court agrees with the Founders that, as a rebuttal expert, Durham is not required, in "point[ing] out [alleged] flaws in Ms. Kleinman's report," to "(1) hav[e] reviewed all the documents Ms. Kleinman purportedly did and (2) offer[] an alternative methodology as to what the proper analysis should have been." Dkt. No. 502 at 8-9. And his not having done so does not "make[] his opinion amount to nothing more than subjective belief or unsupported speculation." Dkt. No. 495 at 11.

And the Court is not persuaded that Durham's challenges to Kleinman's opinions regarding who suffered losses or damages amount to improper legal

conclusions, for the reasons that the Founders persuasively explain in response. *See* Dkt. No. 502 at 10-12.

In reply, VBF clarifies that the core of its challenge to Durham's Rebuttal Report is that "[w]hat Durham is actually doing is pointing out what he perceives to be 'flaws' in Kleinman's conclusions, much like what opposing counsel would do in the course of cross-examination" but "[h]e is doing so … without the benefit of reviewing any of her underlying materials and based on fundamental misunderstandings of what Kleinman actually did," where, "[f]or example, Durham asserts that Kleinman assumed VBF's investors were also plaintiffs, but she made no such assumption," and "also stated that there was no independent data for Kleinman's misappropriations calculation, but she cited specifically to the transactions and evidence that result in that number, which he did not review." Dkt. No. 522 at 7-8 (cleaned up). VBF contends that "[t]hese misunderstandings of Kleinman's report render Durham's conclusions about that report unreliable" and "also render Durham's conclusions unhelpful to the jury because they are contrary to the actual evidence and simply reflect a 'dressed-up' line of cross examination questioning." *Id.* at 8 (cleaned).

But VBF's challenges to Durham's conclusions and his support for them do not show a failing under Rule 702's reliability requirement but rather matters for cross-examination at trial.

And, to "[a]ssist[] the trier of fact," Durham must "bring to the jury more than

the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Puga*, 922 F.3d at 293-94 (cleaned up). The Court is not persuaded that Durham's rebuttal opinions as to Kleinman's damages opinions are on the level of his acting as "merely a party's lawyer's avatar." Dkt. No. 522 at 8 (cleaned up).

The Court denies VBF's request to exclude Durham's timely-disclosed expert testimony.

But the Court is persuaded that Durham's late-disclosed supplemental opinion is untimely and must be excluded under Rule 26, where, as VBF explains, the "Founders have not offered any explanation for why they have not provided a written report containing Durham's new opinions or why these opinions were first disclosed at his deposition on July 29, 2022"; "[t]The prejudice of allowing Durham to testify at trial to opinions that he has not even reduced to a written report as required by Rule 26 and on which VBF therefore had no opportunity to meaningfully depose him, or respond to, is significant"; "[e]xpert discovery has now closed"; and the Founders "had four months from the receipt of Kleinman's Supplemental Report to disclose a new opinion and provide a written report" and failed to do so. Dkt. No. 522 at 10 (cleaned up).

The Court excludes Durham's "supplemental" expert opinion that was not in his written report and was not disclosed until his deposition, along with any testimony relating to it.

## II.   <u>Mark Nelson and Rick Sheriff</u>

"The Founders withdraw their designation of Rick Sheriff as a non-retained expert witness." Dkt. No. 502 at 13. VBF asks the Court to therefore grant the motion to exclude as to him, but the Court will deny the motion as moot as to Sheriff.

As to Nelson, VBF asserts that "[t]he Founders' disclosures regarding their nonretained witnesses fail to comply with Rule 26(a)(2)(C)'s requirement to provide a summary of the facts and the opinions as to which the expert is expected to testify" where the "summaries are vague and inadequate to give VBF proper notice of Founders' nonretained experts testimony and should therefore be stricken." Dkt. No. 495 at 12-13.

The Founders respond that "Nelson is primarily a fact witness" but "has specialized knowledge regarding the performance of fish and growing technologies that were implemented at VBF's facilities" and "regarding the capabilities and actual results achieved by using the technology implemented by VBF." Dkt. No. 502 at 13-14. According to the Founders, "[a]s it relates to Mr. Nelson potentially providing expert testimony that refutes the conclusions reached in the Whitehair Report about VBF's operations, technology and the projections, this testimony would be based on statements made by Mr. Nelson himself in correspondence and his involvement in VBF – i.e., based on his personal experience and specialized knowledge." *Id.* at 16.

But none of the Founders' explanations regarding Nelson's qualifications and possible limited expert testimony cure their deficient Rule 26(a) disclosures that are

limited to, at best, and even with the explanations in their response, broad topics. For purposes of Rule 26(a)(2)(C), "disclosure must, at the very least, state opinions, not merely topics of testimony, and contain ... a summary of the facts upon which the opinions are based." *Galvez*, 575 F. Supp. 3d at 756 (cleaned up).

And the Court does not find the Founders' non-compliance to be harmless, considering (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.

The Founders contend only that "[a]ny non-compliance with Rule 26 by the Founders has not harmed VBF" where "[t]he Founders timely disclosed Mr. Nelson as a non-retained expert, and VBF deposed Mr. Nelson and had the opportunity to inquire about Mr. Nelson's experience and opinions." Dkt. No. 502 at 16.

That rings hollow where, even today, as VBF points out, the Founders' disclosure provides no expert opinions that Nelson may testify to, and neither does its response. *See* Dkt. No. 522 at 9. In the face of that reality, whatever the importance of "the potential that his testimony might include limited opinion testimony," Dkt. No. 502 at 13-14, the prejudice to VBF is considerable, and the Founders have offered no explanation for their failure to properly disclose. *See* Dkt. No. 502 at 17 ("Separately, the Founders will be relying on Mr. Nelson primarily, if not exclusively, as a fact witness, which renders VBF's complaints regarding the Founders' disclosure of Mr. Nelson moot.").

The Court excludes any expert testimony by Nelson.

## III.  <u>Keith Driver</u>

VBF challenges Driver's designation of himself as a nonretained witness to testify regarding "his experience at VBF, including the technical knowledge and opinions regarding VBF's performance," and "regarding feed conversion ratios, pricing, water treatment, mortality rates, the fish market, and opposing flow technology" and "regarding his representations about these and other subjects" and "to testify and opine consistent with his deposition in this matter" as deficient and failing to comply with Rule 26(a)(2)(C).

The Court agrees, where "Driver broadly identifies the subject matter his expected testimony" but "provides no summary of the facts and the substantive opinion to which he is expected to testify, as required by Rule 26(a)(2)(C)"; "does not state what his opinions are regarding any of the topics he identifies"; "does not state what his view or judgment is regarding any of the topics he identifies in his disclosure"; and "does not articulate a summary of the facts supporting any of his opinions, as required by Rule 26(a)(2)(C)." Dkt. No. 495 at 16.

These disclosures provide less than the combination of pointing to deposition testimony and a bullet-point list of opinions that the Court found sufficient in *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 3:14-cv-1028-D, 2017 WL 90366, at *2-*3 (N.D. Tex. Jan. 10, 2017).

And the Court does not find Driver's non-compliance to be harmless,

considering (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.

Driver protests that he "is the single most knowledgeable person to testify about VeroBlue's operations because he is the single most knowledgeable person to testify about VeroBlue's operations prior to September 2016, the representations he allegedly made regarding such operations, whether his representations were accurate, and the information available to him at the time as it relates to VeroBlue's operations." Dkt. No. 504 at 6. But, as VBF notes in reply, "[n]one of those topics require any specialized knowledge, skill, training, or education," and "[t]hree of the four describe factual testimony – what Driver said and heard during his time at VBF." Dkt. No. 522 at 3.

And Driver "can still testify as a fact witness" – "he simply would not be allowed to testify to the jury about technical matters to which he is not qualified to testify about." Dkt. No. 495 at 21. "Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony." *Arnold*, 2022 WL 2392875, at *18.

But, for the reasons explained above, Driver's disclosures do not provide sufficient notice of the subject matter, opinions, and facts he is expected to testify on as an expert witness, however much time has passed since Driver's deposition, resulting in prejudice to VBF.

The Court excludes any expert testimony by Driver.

## Conclusion

For the reasons and to the extent explained above, the Court grants in part and denies in part Plaintiff VeroBlue Farms USA, Inc.'s Motion to Strikes Defendants' Experts [Dkt. No. 495].

SO ORDERED.

DATED: January 20, 2023

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE