UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-0764-X |
| | § | |
| LESLIE A. WULF, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions for summary judgment and one motion for partial summary judgment. Defendants Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), James Rea ("James"), and John E. Rea ("Ted") (collectively, the "Founders") filed one motion for summary judgment (the "Founders' motion for summary judgment"). [Doc. No. 469]. Defendant Keith Driver ("Driver") filed one motion for summary judgment ("Driver's motion for summary judgment"). [Doc. No. 465]. And plaintiff VeroBlue Farms USA, Inc. ("VeroBlue") filed one motion for partial summary judgment ("VeroBlue's motion for summary judgment"). [Doc. No. 476]. For the reasons below, the Court **DENIES** the Founders' motion for summary judgment and **DENIES** Driver's motion for summary judgment. The Court **GRANTS IN PART** and **DENIES IN PART** VeroBlue's motion for summary judgment.

## I. Factual Background

The Founders and Driver formed VeroBlue Farms, Inc. ("VBF Canada") on May 1, 2014. VeroBlue, a Nevada corporation and subsidiary of VBF Canada,

operates as a sustainable fish farm business in Webster City, Iowa. Until July 7, 2016, Wulf, Driver, Hall, and James were the only individuals serving as officers and directors of VeroBlue. In July 2016, VeroBlue received large investments from Alder Capital International Ltd. ("Alder") and FishDish, LLC ("FishDish"). After the transaction closed on July 7, 2016, VeroBlue's board increased to seven directors comprised of the following: two of the Founders, two Alder representatives, one FishDish representative, and two Founder-selected, independent board members.

A few months later, on November 16, 2016, following his removal from his position as Chief Operating Officer of VeroBlue, Driver sent VeroBlue a letter claiming VeroBlue breached his Employment Agreement and that he desired to negotiate a new employment agreement. On January 13, 2017, VeroBlue and Driver entered into a Business Relationship Restructuring Agreement (the "Restructuring Agreement"). The Restructuring Agreement did three things: (1) terminated Driver's Employment Agreement with VeroBlue, (2) established Driver as a consultant, and (3) included a mutual release of employment claims. Both Driver and Wulf— VeroBlue's CEO at the time—executed the Restructuring Agreement.

On June 24, 2017, VeroBlue hired Norman McCowan as director of post-production, and he began to suspect VeroBlue's Feed Conversion Ratio (a measurement of productivity of livestock by comparing the input required to produce output) was not accurate. Acting on this suspicion, McCowan tested the Feed Conversion Ratio further and recognized that the Founders' representations might be false. McCowan reported his worries to the board, and, by September 2017, the

board began to become suspicious of the Founders.  In late 2017, after VeroBlue experienced both tank technology issues and other general performance issues, Alder took over the majority ownership of VeroBlue and, subsequently, control of the board. Having lost control, all the remaining Founders were fired.

After terminating the Founders, VeroBlue further investigated the Founders' alleged misconduct.  The investigation concluded that the Founders were fraudulently concealing their misconduct from VeroBlue.  Through its investigation, VeroBlue allegedly discovered numerous schemes consummated by the Founders since VeroBlue's incorporation and that those schemes continued through the Founders' termination.  VeroBlue brought this suit alleging that the Founders orchestrated many of these schemes by ordering VeroBlue to make loans or investments into other stocks and companies that the Founders owned.  VeroBlue also alleges that the Founders misappropriated funds for personal use including living expenses, personal cell phone bills, and non-business travel expenses, *inter alia*.

The Court now has multiple motions for summary judgment before it—Driver's motion for summary judgment, the Founders' motion for summary judgment, and VeroBlue's motion for summary judgment.  Regarding Driver's motion for summary judgment, Driver argues he is entitled to summary judgment based upon the signed mutual release provision found within Section 5 of the Restructuring Agreement. Driver asserts that the mutual release provision bars each of the sixteen causes of action because the broad language of the release provision covered all "known and

unknown" causes of action between VeroBlue and Driver.[1]  Driver also asserts that, even after becoming aware of the alleged fraudulent acts, VeroBlue still decided to ratify the release provision.

Regarding the Founders' motion for summary judgment, the Founders allege that VeroBlue does not have evidence of damages and that its claims—in light of "flawed and unreliable" expert's testimony—are wholly unsubstantiated.[2]

VeroBlue's motion for summary judgment argues against several of the defendants' affirmative defenses and attempts to establish parts of VeroBlue's affirmative claims.

## II. Legal Standard

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[4]

## III. Analysis

The Court will consider each motion for summary judgment in turn.

### A. Driver's Motion for Summary Judgment

Driver argues that the release provision bars VeroBlue's claims against him because it released him from all claims known or unknown.  Driver points the Court

---

[1] Doc. No. 465 at 7.

[2] Doc. No. 470 at 36.

[3] FED. R. CIV. PROC. 56(a).

[4] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

to the release provision itself and asserts that the broad language of the release provision renders it to be a "complete, full, and final" release of all claims related to Driver's employment at VeroBlue.[5]

VeroBlue responds that the release provision is void because it was "animated by a fraudulent purpose."[6]  According to VeroBlue and its evidence, Wulf and Driver conspired against VeroBlue for years, and they subsequently signed the release as a coverup for their illicit dealings.  For support, VeroBlue directs the Court to deposition testimony, interrogatories, and other exhibits that demonstrate a dispute over the legitimacy of the release provision.[7]  Specifically, looking to the Restructuring Agreement, despite telling Driver that his incompetence was one of the grounds for his termination, Wulf agreed for VeroBlue to do all of the following: (1) pay Driver $550,000 in exchange for his shares, and another $500,000 in five installments; (2) keep Driver on at a six figure salary as a "consultant" in the very areas in which Driver had already been deemed incompetent, and (3) agreed to a mutual release whereby Driver gave up certain employment related claims in exchange for a broad form release.[8]  This amounts to some evidence disputing the legitimacy of the release provision.

In the alternative, Driver argues that VeroBlue ratified the mutual-release provision *after* becoming aware of the alleged fraud.  According to Driver, VeroBlue

---

[5] Doc. No. 466 at 15.

[6] Doc. No. 514 at 25.

[7] *See id.* at 11–14.

[8] Doc. No. 467 at 5–7.

ratified the mutual-release provision in a letter from December 28, 2017 and an email from January 12, 2018. VeroBlue denies Driver's claims that it ratified the agreement because it did not have knowledge of all material facts at the time of the ratification. Regarding the December 28 letter, Driver argues, while the December letter terminated his consulting agreement, the letter also specifically stated the release provision would survive the termination. VeroBlue directs the Court to the appendix of the brief in support of Driver's MSJ as evidence to show that the "[n]either the [Restructuring Agreement] nor its release language is mentioned in the December 28, 2017 McCowan letter."[9]

Regarding the January 12 email, VeroBlue responds that Driver confuses the email with a letter from February 2 and that "[t]hose communications refer to the [Restructuring Agreement] but not to its release provisions."[10] VeroBlue adds that "[t]he January email was sent directly from McCowan to Driver and stated that the company's forensic investigations were '*ongoing*,'" meaning that they did not have full knowledge of the facts when writing the letter.[11] In McCowan's January letter, he writes that VeroBlue is "suspending all future payments to [Driver] under the Termination Agreement until its forensic investigation is completed and any obligation thereunder are resolved."[12] Meanwhile, the February 2 letter states that "[VeroBlue] is allowed to cancel any payments due to Mr. Driver under Section 6(a)

---

[9] Doc. No. 514 at 46.

[10] *Id*. at 47.

[11] *Id*.

[12] Doc. No. 467 at 87.

6

of the Severance Agreement where Mr. Driver breaches Section 4 of the Severance Agreement," and "[VeroBlue] has received information that Mr. Driver has breached, and continues to breach, the non-compete provisions of Section 4."  The Court concludes both letters are some evidence that VeroBlue did not have full knowledge of the facts at the time of the alleged ratification.[13]

Accordingly, a genuine dispute of material fact exists, and therefore the Court **DENIES** Driver's motion for summary judgment.

### B. The Founders' Motion for Summary Judgment

The Founders' motion for summary judgment includes multiple arguments as to why their motion should be granted.  The Court will cover each argument.

First, the Founders' motion for summary judgment argues that VeroBlue failed to show that it suffered $93 million in injuries, and therefore summary judgment is warranted.  Specifically, the Founders assert that VeroBlue's damage model fails as a matter of law both because the damages sought by VeroBlue are actually damages to third parties and because the model is based on flawed expert testimony.  Since the Court denied the Founders' motion to exclude Kleinman's testimony, the relevant controversy for this issue is the damages sought.

In its response, VeroBlue argues that it did indeed suffer injuries because it can be true both that third parties were defrauded and that the Founders breached their fiduciary duties to VeroBlue.  To demonstrate its injuries, VeroBlue highlights that lost or misappropriated assets are reflected in VeroBlue's financial documents

---

[13] *Id.* at 88.

and Kleinman's report including, *inter alia*, (1) at least $30 million paid to expand and construct various projects of VeroBlue's including its Urban Farm and Blairsburg Nursery; (2) at least $6.6 million for additional tanks, and (3) $3.6 million paid for tank technology such as Opposing Flows Technology.  Upon reviewing this evidence, the Court agrees that a genuine dispute of material facts on damages exists.

Second, the Founders assert the Court should use its equitable power to prevent recovery under the *Bangor Punta* doctrine.  The *Bangor Punta* doctrine exists to "deny unjust enrichment which might otherwise occur when those who buy stock at a price reflecting pre-purchase corporate misconduct, seek to convert that price into a profit-producing claim for damages."[14]  According to the Founders, the *Bangor Punta* doctrine applies for the following reason: Should VeroBlue prevail, it will receive a windfall and be unjustly enriched.

The Court disagrees.  In *Bangor Punta*, the plaintiff seeking damages acquired an overwhelming amount of its shares "well after the alleged wrongs were said to have occurred."[15]  Here, VeroBlue's remaining shareholder acquired its shares during the alleged mismanagement and misappropriations.  Thus, "even if [the shareholder] were the principal beneficiary of any recovery in this case, it still could not fairly be considered the beneficiary of a windfall."[16]

Third, the Founders argue that VeroBlue's fraudulent-concealment and

---

[14] *Rivercity v. Am. Can Co.*, 600 F. Supp. 908, 917 (E.D. La. 1984), *aff'd*, 753 F.2d 1300 (5th Cir. 1985).

[15] *Bangor Punta Operations, Inc.  v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703, 711 (1974).

[16] *Meyers v. Moody*, 693 F.2d 1196, 1207–08 (5th Cir. 1982) (cleaned up).

misrepresentation claims warrant summary judgment.  The Founders attempt to support this argument by showing four things: (1) fraudulent concealment is not an affirmative cause of action; (2) there is no allegedly fraudulent concealment because actionable conduct occurred before July 7, 2016; (3) there is no evidence of VeroBlue's justifiable reliance on the Founders' post July 7, 2016 conduct; and (4) there is no evidence to support causation for fraudulent conduct prior to July 7, 2016.  The Court disagrees.

Initially, under Texas law, fraudulent concealment is interchangeable with fraud by nondisclosure.[17]  Specifically, VeroBlue asserts it is pursuing a claim of fraud by nondisclosure and that it has sufficiently pled the elements of that claim.  As evidence, it directs the Court to, among other things, the "nondisclosure of criticisms by aquaculture experts Dr. Michaels, Dr. Fitzsimmons, and FTAL."[18]  Accordingly, VeroBlue has a fraud by nondisclosure claim, which is valid under Texas law.

Likewise, there is some evidence of fraudulent conduct (and causation) before July 7, 2016.  VeroBlue points the Court to "evidence that those associated with VeroBlue did receive fraudulent statements (or were subject to fraudulent concealments) prior to July 7, 2016."[19]  For example, VeroBlue shows that Kenneth Lockard, a director appointed before July 2016, relied on misrepresentations and concealments even after joining the board.  Lockard stated at his deposition that he

---

[17] *See United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 567–68 (5th Cir. 2005) ("Courts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation[.]").

[18] Doc. No. 513 at 45.

[19] *Id.* at 48.

"relied on the foundational comments that were in the [December 21, 2015 marketing] deck like the growth ratios, the water and the feed ratios."[20] Furthermore, he stated, "[e]ven when I was a board member, I relied on the foundational facts that were set out in the deck because I remembered those. . . . [T]hat's how we created the budget[.]"[21]   At the summary judgment stage, this evidence of pre-2016, non-Founder officers and directors relying on fraudulent statements demonstrates a genuine dispute of material fact exists regarding this claim.

Regarding conduct occurring after July 7, 2016, the Founders argue that VeroBlue cannot, either legally or factually, establish actual and justifiable reliance. They are wrong on both fronts.  Legally, VeroBlue is correct that the Founders' knowledge of wrongdoing is not imputed to the entity.[22]  The law is clear: "Courts have refused to impute the knowledge of principals to controlled entities where the officers allegedly filled their own pockets while fraudulently extending the life of the institution they continued to milk and where they systematically looted [the company] of its most profitable and least risky businesses as well as millions of dollars in income[.]"[23]  Factually, VeroBlue explains how the non-Founder board members and shareholders continued to rely on the Founders' misrepresentations

---

[20] Doc. No. 516-3 at 140.

[21] *Id.*

[22] Doc. No. 513 at 50.

[23] *Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848, at *3 (N.D. Tex. July 31, 2020) (Fitzwater, J).

because the misrepresentations were "material to [VeroBlue]'s decisions regarding continued operations, intake and expenditure of [VeroBlue] corporate funds, and its management."[24]  VeroBlue evidences the reliance of the independent board members in multiple ways.[25]  One of the pieces of evidence to which it points is how, from August 2016 to October 2017, the Founders both misrepresented and concealed important data (including Feed Conversion Ratio data, mortality data, and density data) from monthly management reports sent to VeroBlue's independent directors.[26]  Accordingly, the Court finds a dispute exists here.

Fourth, the Founders argue summary judgment is appropriate for VeroBlue's fiduciary-duty and constructive-fraud claims.  To support their claim, the Founders provide three justifications: (1) The Founders' legal duties ran to VeroBlue's parent company, VeroBlue Canada, (2) the Founders' duties, to the extent VeroBlue was insolvent, ran to the creditors, and (3) VeroBlue has failed to establish damage for its claims.  VeroBlue opposes these assertions by arguing the Founders owed VeroBlue fiduciary duties, as a matter of law, during the relevant time period.  Specifically, VeroBlue highlights that the law in Delaware, Nevada, and Texas is clear: directors and officers owe fiduciary duties to the corporation.[27]  Similarly, VeroBlue's

---

[24] Doc. No. 513 at 52.

[25] *Id.* at 18–19.

[26] *See* Doc. No. 517-13 at 211–347.

[27] *Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015) ("Directors, or those acting as directors, owe a fiduciary duty to the corporation in their directorial actions[.]") (cleaned up); *Midwest Janitorial Supply Corp. v. Greenwood*, 629 N.W.2d 371, 375 (Iowa 2001) ("[D]irectors and officers of a corporation have a fiduciary duty to act in all things wholly for the benefit of the corporation."); *Chur v. Eighth Judicial Dist. Court in & for Cnty. of Clark*, 136 Nev. 68, 72 (Nev. 2020) ("In Nevada, directors and officers owe the fiduciary duties of care and loyalty to the corporation.").

insolvency status does not create a genuine dispute of material fact.  When a company becomes insolvent, the company's officers and directors take on an additional fiduciary duty to the company's creditors,[28] but their prior fiduciary duties to the corporation remain.[29]  For the foregoing reasons, as a matter of law, the Court agrees that the directors owed a fiduciary duty to VeroBlue and cannot grant summary judgment to the Founders on VeroBlue's fiduciary-duty and constructive-fraud claims.

Fifth, the Founders argue summary judgment is appropriate for the fraudulent-transfer claim because VeroBlue "made or authorized" the transfers.[30]  In effect, the Founders argue that VeroBlue is acting as both the debtor and creditor in each of its fraudulent transfer claims.  Accordingly, by seeking to void the transfer, VeroBlue is seeking to void a transfer to itself.  In response, VeroBlue claims only to be the creditor in the alleged fraudulent transfers.  VeroBlue supports this claim in two ways.  First, it explains the definition of "creditor" under Texas and Iowa law, and second, it points to evidence they provided that the transfers VeroBlue made (at the direction of the Founders) were for the Founders' benefit and that the Founders retained control of the transferred property.[31]  The Court agrees with VeroBlue and cannot grant summary judgment on this issue.

Sixth, the Founders argue the Court should grant their motion for the civil-

---

[28] *Petras v. Mole*, No. 3:11-CV-1402-N, 2012 WL 13103200, at *9 (N.D. Tex. May 17, 2012) (Godbey, J.).

[29] *See id.*

[30] Doc. No. 470 at 54.

[31] Doc. No. 513 at 42–44.

conspiracy claim. In support, the Founders argue the intracorporate conspiracy doctrine bars VeroBlue's conspiracy claim. VeroBlue argues the intracorporate conspiracy doctrine does not apply given two exceptions: (1) The conspirators have an independent stake in achieving the object of the conspiracy, or (2) the conspirators are acting for their own personal purpose.[32]

The Court agrees with the Fifth Circuit precedent containing these exceptions to the intracorporate conspiracy claim, which precludes summary judgment on the conspiracy claim. Both exceptions involve prevalent fact issues here. VeroBlue provided evidence, through multiple depositions, that the Founders acted in their personal interest.[33] For example, John Brobjorg stated in his deposition that VeroBlue misappropriated $174,533 in excessive interest for a loan through a Founder-related company in which multiple VeroBlue officers including "Mr. Hall, Ted Rea and Mr. Wulf, hold an ownership interest."[34] VeroBlue also provided evidence through Tracy Abranas' statements at her deposition that Wulf misappropriated $110,320.00 to reconstruct his personal lake house.[35] Accordingly, a genuine dispute of material fact exists for the conspiracy claim.

In their penultimate argument, the Founders argue summary judgment should be awarded as to VeroBlue's claims for unjust enrichment, equitable

---

[32] Doc. No. 513 at 52; *H & B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978); *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) ("A possible exception to the intracorporate conspiracy doctrine exists when corporate employees act for their own personal purposes.").

[33] *See* Doc. No. 513 at 12.

[34] Doc. No. 515 at 34–35.

[35] *Id*. at 18–19.

accounting, restitution, and declaratory relief. Regarding unjust enrichment, Texas law is unclear on whether unjust enrichment may qualify as an independent cause of action,[36] however, the Court agrees with VeroBlue's argument that it would be entitled to an unjust enrichment claim through finding the Founders furthered a fraudulent scheme. Accordingly, because the underlying claims should not be dismissed, VeroBlue's unjust enrichment theory survives. Under the same analysis, all of VeroBlue's equitable claims survive because they are permissible remedies for claims going to trial. Of course, the Court will fashion the jury charge to avoid any double recovery.

Finally, the Founders assert VeroBlue's RICO claim should be dismissed. They argue VeroBlue is acting as both the enterprise and the perpetrator since "[VeroBlue] alleges it was the Founders and the Founders were [VeroBlue]."[37] Likewise, the Founders assert there is no proximate causal relation between the predicate acts and the alleged damages because the alleged predicate acts were used to "generate funds for [VeroBlue]" not to damage it.[38] VeroBlue contests the Founder's claim that it is acting as both the enterprise and the perpetrator and calls into question whether the Founders are an association-in-fact enterprise. VeroBlue explains how the Founders are their own enterprise by referencing the Founders' own motion which states they "have worked together for many years pursing various business opportunities."[39]

---

[36] *See Janvey v. Alguire*, 846 F.Supp. 2d 662, 673-74 (N.D. Tex. 2011) (Godbey, J.) (collecting cases).

[37] Doc. No. 470 at 59.

[38] *Id.* at 60 (emphasis omitted).

[39] Doc. No. 513 at 57.

This quote, VeroBlue argues, demonstrates VeroBlue and the Founders are not the same—they just worked together.   Additionally, VeroBlue directs the Court to evidence that appears to demonstrate that the Founders' ventures go back as far as 2003—before VeroBlue even existed.[40]   VeroBlue has marshalled some evidence that the Founders are a separate enterprise from VeroBlue for purposes of the Civil RICO claim.

These genuine disputes of material facts demand that the Court **DENIES** the Founders' motion for summary judgment.

### C. VeroBlue's Motion for Summary Judgment

VeroBlue seeks partial summary judgment on multiple issues, and the Court will address them one by one.   However, as a preliminary matter, the Founders withdrew their affirmative defenses of accord and satisfaction, superseding/intervening cause, laches, statute of limitations, and conditions precedent.[41]   Accordingly, the Court **FINDS AS MOOT** VeroBlue's request for summary judgment on these issues.

In VeroBlue's next argument, it contends it is entitled to summary judgment on the first element of its affirmative claim for breach of fiduciary duty: that the Founders and Driver owed VeroBlue a fiduciary duty.   In other words, VeroBlue argues solely for the existence of a fiduciary duty.   This is a question of law.   Driver did not contest this argument, but the Founders do.   They argue summary judgment

---

[40] *Id.*

[41] Doc. No. 499 at 42.

must be denied because VeroBlue does not establish which state's fiduciary duty laws applies.  However, as already explained, fiduciaries maintain duties to an insolvent corporation in Texas, Iowa, and Nevada, so any fact issues on insolvency are irrelevant.[42]  For the foregoing reasons, as a matter of law, the Court **GRANTS** summary judgment as to the existence of the element of VeroBlue's fiduciary duty claim that the Founders owed VeroBlue a fiduciary duty.

Next, VeroBlue argues it is entitled to summary judgment on the Founders' First, Fourth, Fifth, Eighteenth, Nineteenth, Twenty-Seventh, Twenty-Eight, and Thirty-First affirmative defenses and Driver's First and Sixth affirmative defenses because they fail to provide VeroBlue with fair notice.  The Founders assert they did provide fair notice because they pled the affirmative defenses by name.  The Fifth Circuit has held that "merely pleading the name of the affirmative defense[s] . . . may be sufficient" to provide the plaintiff with fair notice and ensure the plaintiff is not a victim of unfair surprise.[43]  Here, the Founders' pleadings made it sufficiently clear what affirmative defenses they intended to raise, effectively putting VeroBlue on notice.  Specifically, the Founders noted in their response they intended to raise these affirmative defenses.[44]  Accordingly, VeroBlue's request for summary judgment to dismiss or strike the Founders' First, Fourth, Fifth, Eighteenth, Nineteenth, Twenty-Seventh, Twenty-Eight, and Thirty-First affirmative defenses and Driver's First and Sixth affirmative defenses is **DENIED**.

---

[42] *See supra* II.B.

[43] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

[44] Doc. No. 499 at 28–29.

In its next argument, VeroBlue asserts it is entitled to summary judgment on the following affirmative defenses: reasonably equivalent value, fair consideration, and authorized by law affirmative defenses. The Founders respond, however, that fact disputes preclude summary judgment here. They contest VeroBlue's argument that the Founder's affirmative defenses only apply to fraudulent transfer claims by explaining how "it will be [VeroBlue's] burden to succeed on its fraud and fiduciary duty claims, inter alia, to show that the alleged acts caused harm to [VeroBlue]."[45] The Founders continue by saying VeroBlue "will have to prove . . . whether the expenditures and transactions [VeroBlue] complains of provided [VeroBlue] with reasonably equivalent value or fair consideration."[46]  Furthermore, they direct the Court to Kleinman's (who is VeroBlue's expert) deposition in which she stated, "every expenditure by the Founders was waste and constitutes a damage to [VeroBlue]."[47] The Court agrees that, in order to demonstrate that VeroBlue was actually harmed in the amount it claimed, VeroBlue must carry the burden to establish for each cost or expense the lack of value received.  Regarding the same affirmative defenses, VeroBlue additionally argues that the Founders provided no evidence of either element (reasonably equivalent value or good faith) of these affirmative defenses. However, the Founders direct the Court to VeroBlue's own bankruptcy filings to support that VeroBlue indeed received a valuation and even sold out of bankruptcy

---

[45] *Id.* at 34.

[46] *Id.*

[47] *Id.*

17

for $10,000,000.00.[48]   Therefore, a dispute over reasonably equivalent value exists here, and the Court **DENIES** summary judgment on these affirmative defenses.

Regarding the affirmative defenses of ratification, waiver, and estoppel, the Founders effectively rebut VeroBlue's arguments.   For example, VeroBlue argues ratification is not a proper defense to a breach of fiduciary duty claim because a breach of a fiduciary duty is incapable of ratification.   However, the Founders correctly respond that summary judgment on the ratification defense cannot be granted unless the underlying claim of fraud is proven, and the Court already said there is a genuine dispute of material fact regarding whether the fraud occurred.

Similarly, VeroBlue argues the Court should dismiss the waiver and estoppel affirmative defenses because the alleged release in the Restructuring Agreement was void and unenforceable.[49]   However, the Founders continue to assert the release is both valid and enforceable based on numerous documents and depositions.[50]   The Court has reviewed the record evidence and concludes a genuine dispute of material fact exists as to the enforceability of provisions in the Restructuring Agreement.   The Court **DENIES** summary judgment on ratification, waiver, and estoppel.

VeroBlue makes another challenge to the business judgment rule and unclean hands affirmative defenses.   Specifically, VeroBlue argues the business judgment rule only applies to claims "for breach of fiduciary duty," and it also argues the Court should remove the unclean-hands defense for all VeroBlue's claims—excluding unjust

---

[48] *Id.* at 35 (referencing Doc. No. 463-3 at 246).

[49] Doc. No. 506 at 26.

[50] *Supra* III.A.

enrichment, equitable accounting, rescission, and restitution.[51]

Regarding the business judgment rule affirmative defense, VeroBlue asserts the Founders have no evidence that their alleged misconduct arose out of the honest exercise of their business judgment.   The Founders respond with evidence of legitimate reasons for why they completed the transactions that allegedly breached their fiduciary duties.   Specifically, the Founders point out that the allegedly forged FTAI reports resulted in VeroBlue being enriched by $93 million dollars.[52] Accordingly, there is a genuine dispute of material fact regarding the Founders' business judgment and decision making.

Regarding the unclean hands defense, VeroBlue is correct in arguing the unclean hands defense is an equitable defense to an equitable recovery.   Accordingly, the Court **GRANTS** VeroBlue's motion and will only allow the equitable defense of unclean hands to apply to VeroBlue's theories of equitable recovery.

For the preceding reasons, the Court **DENIES** VeroBlue's request for summary judgment the affirmative defenses of reasonably equivalent value, ratification, waiver, estoppel, and business judgment rule.   But the Court **GRANTS** VeroBlue summary judgment by only allowing the unclean hands defense against its equitable theories.

Lastly, VeroBlue asserts it is entitled to summary judgment both on James's counterclaim (regarding his alleged right to recoupment and setoff of his pay) and his

---

[51] Doc. No. 477 at 32, 45–46.

[52] *Id*. at 46.

related recoupment affirmative defense.  To support its argument, VeroBlue notes it has "conclusively established that its termination of James Rea's Employment Agreement was for 'Egregious Cause'" and that the Founders fail to offer any contrary evidence.[53]  The Founders oppose this contention by showing their own evidence regarding the alleged "egregious cause" of James receiving double payment on his July 2016 salary.  Specifically, the Founders claim that VeroBlue's spreadsheet shows the double salary payment was made to "RGI Dragon" and not James.[54]  This represents a genuine dispute of material fact.  Accordingly, the Court **DENIES** VeroBlue's request for summary judgment as to James's counterclaim and the related recoupment affirmative defense.

For the foregoing reasons, VeroBlue's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## IV. Conclusion

The Court **DENIES** Driver's motion for summary judgment and the Founders' motion for summary judgment.  The Court **FINDS AS MOOT** VeroBlue's motion for summary judgment regarding the Founders' five, withdrawn affirmative defenses of accord and satisfaction, superseding/intervening cause, laches, statute of limitations, and conditions precedent.  Finally, the Court **GRANTS** VeroBlue's motion for summary judgment on exclusively the first element of its affirmative claim for breach of fiduciary duty: that the Founders and Driver owed VeroBlue a fiduciary duty.  And

---

[53] Doc. No. 527 at 24.

[54] Doc. No. 499 at 26.

the Court **GRANTS** VeroBlue summary judgment by only allowing the unclean hands defense against its equitable theories.  However, the Court **DENIES** all remaining parts of VeroBlue's motion for summary judgment.

      **IT IS SO ORDERED** this 13th day of March, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE